

275 Seventh Avenue Suite 1506, New York, NY 10001-6860
ph: 212-633-6967   fax: 212-633-6371   www.nclej.org

May 28, 2019

*Via ECF*

The Honorable Christina Reiss
United States District Court, District of Vermont
P.O. Box 446
Burlington, VT 05402-0446

Re:  *Black Love Resists in the Rust et al. v. City of Buffalo et al.*; No. 18-CV-719

Dear Judge Reiss:

In accordance with our May 6, 2019 letter motion (Dkt. # 22), Plaintiffs write to summarize the outstanding discovery disputes we would like to raise at the May 30 telephone conference.[1]

    I.    <u>The Course of Dealings between the Parties and Defendants' Production So Far</u>

On November 5, 2018, Plaintiffs served their first set of Requests for Production of Documents (the "Request" attached hereto as Exhibit A). Plaintiffs then sought to confer with Defendants regarding their search for responsive documents and ESI as provided for in the Local Rules. *See* Local Civ. R. 34 (e) (parties must "discuss and attempt to reach agreement as to the method of searching [for ESI], and the words, terms, and phrases to be searched and any restrictions as to scope and method . . ."). Plaintiffs also proposed that the parties streamline production by entering into a stipulation governing production of ESI and a Confidentiality Order, which would permit disclosure of certain confidential or protected information.

On November 8 and 26, the Parties conferred, but Defendants refused to enter into any stipulations and/or provide any details about their search methodologies or the expected timing of production of ESI.

On December 5, Defendants served their Responses and Objections to the Requests ("Responses") and their initial tranche of responsive documents, which contained no ESI and primarily consisted of materials that Defendants had already provided to Plaintiffs prior to litigation. The Parties conferred on December 14 and 19, and although Defendants agreed to supplement their production, they refused to discuss their ESI search process. At the December 21 Court conference, Plaintiffs raised concerns with Defendants' production, and Defendants represented that they would soon supplement their production. The Court declined to intervene at

---

[1] The Parties' conferral as to certain other areas of dispute remains ongoing, and Plaintiffs will continue to attempt to resolve these disputes to avoid the need for further judicial intervention. Plaintiffs reserve their right to seek further judicial intervention in the event that the Parties cannot resolve these other disputes.

that time, but directed the Parties to contact the Court within 30 days about any unresolved issues.

The Parties conferred on January 4, 18, and 29. On January 29, Plaintiffs advised the Court that Defendants had agreed to "make their first production of ESI within thirty days from the date Plaintiffs propose additional search terms" and to make "subsequent productions on a schedule to be mutually determined by the Parties." *See* ECF No. 21. At the time, Defendants had represented that they used Outlook for email and would be searching by entering single keywords into the Outlook search box. Accordingly, on February 4, Plaintiffs provided search terms consistent with this methodology.

On March 6—four months after receipt of the Requests—Defendants informed Plaintiffs for the first time that BPD uses Lotus Notes, not Outlook, and that they did not know how to search for and collect responsive ESI. Defendants provided no explanation for their failure to search for and produce ESI not stored within Lotus Notes, such as material stored on desktop computers and central servers. Defendants subsequently informed Plaintiffs that they intended to contract with an ESI vendor to facilitate their collection and production of ESI. The parties conferred on March 8, 22, and 29, April 12 (when Defendants advised that they had hired the vendor) and April 30. Plaintiffs repeatedly asked for a representative of the vendor to join a call regarding the ESI search to ensure mutual understanding of the vendor's search capabilities, protocols, and methodologies, but Defendants did not make a vendor representative available. Defendants requested that Plaintiffs provide a list of proposed custodians and search terms, which Plaintiffs did on May 9. Defendants have neither responded to Plaintiffs' proposal nor provided any updates about the status of their search for ESI.

During this time frame, Defendants served Supplemental Responses on March 15, 2019, reflecting several interim productions and the addition of reference to documents by bates numbers. Plaintiffs attach these Responses as Exhibit B. On April 19, Plaintiffs served a second set of Requests for Production of Documents. On May 19, Defendants served responses and produced additional documents, primarily budget documents, copies of statutes and ordinances, and other information that is publicly available online.[2] Defendants continue to withhold production of ESI and relevant documents that are not publicly available. Moreover, Defendants have not provided a privilege log despite repeated requests that they do so.

    II.    <u>Plaintiffs Request a Court-Imposed Schedule for Production of ESI</u>

Plaintiffs expect that an effective search for ESI would generate responsive documents to nearly all of Plaintiffs' requests. These documents are materially relevant regarding Defendants' uniform policies and practices, both for class certification and Plaintiffs' *Monell* claims, especially where Defendants' actual practice departs from or is not addressed by BPD's Rules and Regulations and Manual of Procedures. For example:

- Requests 1-8 seek information relating to the creation and purpose of the Strike Force, Housing Unit, and the Buffalo Traffic Violations Agency ("BTVA"), Defendants'

---

[2] Of the 9,701 pages Defendants produced so far, only 1,718 were neither previously produced to Plaintiffs via FOIL nor otherwise publicly available.

decision to establish and conduct checkpoints, and Defendants' decision to end the Strike Force Unit. Plaintiffs expect that policymakers and leadership at the BPD, the BTVA, and the Mayor's Office communicated regarding these issues, including by email or through the creation of memoranda or other documents that likely exist as ESI.

- Requests 9, 27-28, 31-32, and 45 seek documents and communications actually consulted by the BPD to determine the physical location of each Checkpoint or Group of Checkpoints, as well as reports or data compilations concerning Defendants' operation of Checkpoints and issuance of traffic tickets. Given the thousands of Checkpoints operated and tickets issued since 2013, Defendants likely possess ESI regarding these matters.

- Requests 10-16 and 20-21 seek copies of the statistical information that Strike Force, Housing Unit, and Traffic Enforcement officers provide to their superior officers in order to document their aggregate enforcement activity (i.e. the total number of arrests made, traffic citations issued, cars impounded, etc) during a given day, week, month, etc. Defendants partially responded to one of these requests, but Defendants have much more responsive information that they have not yet provided. During the course of the Parties' conferrals, Defendants identified daily reports made by the BPD's Strike Force and Housing Units that contain such compilations of activities. These compilations are transmitted and stored electronically. Defendants have yet to conduct an adequate search for Strike Force monthly reports (which may exist) and daily or monthly reports of the Traffic Enforcement unit.

- Requests 22 and 23 seek documents relating to the evaluation of BPD personnel, including BPD policies and procedures as well as performance evaluations for Strike Force and Housing Unit officers. Plaintiffs expect that these subjects would be contained in various sources of ESI, including email communications.

- Request 34 seeks documents and communications relevant to a published academic study of the BPD's use of Checkpoints. Based on the detailed information reported in the study, Plaintiffs expect that the study authors would have communicated with BPD officials electronically.

- Requests 35-40 seek documents and communications containing policies, procedures, protocols, directives, and training materials regarding: Defendants' operation of Checkpoints and the selection of their locations; Defendants' enforcement of the NY VTL and other traffic enforcement activities; Defendants' operation of and storage of data related to Automatic License Plate Readers ("ALPRs"); Defendants' compliance with Constitutional requirements; Defendants' policies regarding racial profiling, biased policing, and/or the use of race in law enforcement decision-making. Defendants have produced only their Rules and Regulations, Manual of Procedures, Policy Academy contract, and collective bargaining agreements, but have produced no other policy and training documents. Plaintiffs expect that policy and training documents responsive to

this inquiry would have been communicated electronically and exist as ESI, along with relevant email communications.

As explained above, Plaintiffs have attempted to confer with Defendants regarding their collection and production of ESI for more than six months. Defendants have refused to articulate the search methodologies they intend to employ, in violation of Local Civ. R. 34 (e). Even if Defendants have begun the search process, Plaintiffs have no way to assess the adequacy of their search. Plaintiffs request the Court to order Defendants to clarify whether they intend to employ the search terms and custodians that Plaintiffs proposed on May 9 and, if not, that they provide a written explanation of their proposed search methodology.

With respect to timing, Defendants have not offered any details about when they will even *start* to collect ESI, let alone produce it. Federal Rule of Civil Procedure 34(b)(2)(B) requires a Party responding to requests for production of documents to complete its production "no later than the time for inspection specified in the request or another reasonable time specified in the response." Plaintiffs have repeatedly requested Defendants to specify a "reasonable time" by which they will have completed their production. Most recently, in advance of their May 6 letter to the Court, Plaintiffs proposed the following schedule to Defendants, but Defendants did not agree to this proposal and offered no alternative:

| **Deadlines** | **Proposed Date** |
|---|---|
| Deadline for Defendants to produce first tranche of ESI responsive to Plaintiffs' First and Second Sets of Requests for Production of Documents | 30 days from entry of modified schedule |
| Deadline for Defendants to produce second tranche of ESI responsive to Plaintiffs' First and Second Sets of Requests for Production of Documents | 30 days following production of first tranche of ESI |
| Deadline for Defendants to substantially complete production of ESI responsive to Plaintiffs' First and Second Sets of Requests for Production of Documents | 30 days following production of second tranche of ESI |

Accordingly, Plaintiffs respectfully request that this Court impose a schedule setting forth interim and final deadlines for Defendants' production of ESI.

  III. <u>Defendants' Objections to Producing Citizen Complaints Are Without Merit</u>

Plaintiffs also intend to request the Court's intervention to resolve Defendants' objections to Requests 41-44, which seek all documents and communications relating to verbal or written complaints, grievances, or concerns received by the City of Buffalo concerning (i) Checkpoints established by the Strike Force or Housing Unit; (ii) racial profiling, bias or discrimination by

4

BPD officers; (iii) BPD traffic stops, traffic ticketing or other traffic enforcement practices; and (iv) traffic safety issues, including requests for increased traffic enforcement. *See* Ex. A, at 23. During conferrals, Defendants identified two main repositories of potentially responsive documents: [3] BPD's Internal Affairs division, which contains records of complaints against specific BPD officers, and the City's 311 system, which contains records of general complaints to the City. Defendants have objected to producing documents relating to both systems.

### A. Internal Affairs Complaints

Defendants have objected to producing any Internal Affairs records on grounds that such production would be barred by New York Civil Rights Law § 50-a. This objection is without merit. Section 50-a provides that "[a]ll personnel records used to evaluate performance toward continued employment or promotion" of individuals employed as police officers in New York State, "shall be considered confidential and not subject to inspection or review without the express written consent of such police officer. . . *except as may be mandated by lawful court order*, " N.Y. Civ. Rights Law § 50-a(1) (emphasis added). The courts of this and other districts within the Second Circuit have repeatedly held that because federal, not state, law of privilege applies in § 1983 actions, § 50-a does not prohibit discovery of police officer personnel records, and such records must be produced if they are relevant to the claims and/or defenses in those actions. *Martin v. Lamb*, 122 F.R.D. 143, 145-47 (W.D.N.Y. 1988) (citing *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988); *see also Mitchell v. Whitenight*, 11-cv-0684, 2013 WL 5936978, *1-2 (W.D.N.Y. Nov. 4 2013); *Worthy v. City of Buffalo*, 11-cv-872a, 2014 WL 4640884, *3 (W.D.N.Y. Sep. 16, 2014); *Dobson v. Dougherty*, 17-cv-1014, 2018 WL 63213909, *3-4 (W.D.N.Y. Dec. 4, 2018).

Here, civilian complaints of BPD officer misconduct related to checkpoints, racial profiling or biased policing, and/or traffic stops or ticketing that were received and investigated by IAD, whether substantiated or not, are relevant to Plaintiffs' *Monell* claims against Defendant City of Buffalo and thus discoverable notwithstanding §50-a. *See, e.g.*, *Sowell v. Chappius*, No. 07-CV-6355, 2010 WL 1404004, *1 (W.D.N.Y. Mar. 31, 2010) ("[P]rior complaints made against the defendants, *whether substantiated or not*, are discoverable in § 1983 civil rights actions so long as the complaints are similar to the constitutional violations alleged in the complaint")(emphasis added); *Dobson*, 2018 WL 63213909 at * 3-4 (noting "there is a stronger argument in favor of disclosure of unsubstantiated complaints in cases [] which involve a Section 1983 claim against a municipality" and ordering production of prior unsubstantiated officer misconduct complaints involving conduct similar in nature to the behavior alleged in the lawsuit); *Bradley v. City of New York*, 04 Civ. 8411, 2005 WL 2508253, *2 (S.D.N.Y. Oct. 3, 2005) ("the courts have repeatedly directed production of such complaints, whether substantiated or unsubstantiated or even withdrawn. . . and that documentation has frequently played a role in the courts' analysis of

---

[3] Plaintiffs understand that people may also file complaints directly with police precincts. At this time, Plaintiffs do not know whether these types of complaints would be contained within the Internal Affairs universe or whether there are additional repositories of potentially responsive complaints that Defendants have not yet searched or identified.

5

the merits of an array of claims under section 1983"); *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006) ("Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus discoverable."). Indeed, citizen complaints about racially-biased policing and/or misconduct of BPD officers related to checkpoints or traffic stops or ticketing, whether substantiated or not, are directly relevant to Plaintiffs' allegations in paragraphs 118-124 of our Complaint, *see* Dkt # 1 at 22-23, that the City of Buffalo and Defendants Brown, Lockwood and Derenda had notice of public concerns about and potential problems with unconstitutional and racially discriminatory vehicle checkpoint and traffic enforcement practices of the BPD, and such notice would be probative evidence supporting Plaintiffs' § 1983 municipal liability claims. *See Harper v. Port Auth. of N.Y. & N.J.* , No. 05 Civ. 5534, 2006 WL 1910604, * 2 (S.D.N.Y. July 10, 2006) (holding that "because Harper asserts claims based on *Monell,* the Port Authority's knowledge of, and response to, defendants' behavior and complaint history is relevant" and ordering production of substantiated and unsubstantiated officer complaint records); *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (" The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that . . . the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights."). Moreover, to the extent unsubstantiated IAD complaint files reveal a failure on the part of IAD to investigate racial bias and checkpoint and traffic enforcement misconduct allegations thoroughly or at all, those files could contain evidence relevant to Plaintiffs' municipal liability claims. *See Floyd v. City of New York*, 959 F.Supp.2d 540, 619-20 (S.D.N.Y. 2013) (finding that NYPD's failure to investigate prior racial profiling complaint against officer who stopped one of the plaintiffs was evidence of City's deliberate indifference to unconstitutional and racially discriminatory stop-and-frisk practices of its officers).

Finally, any concerns about protecting police officer privacy and not exposing officers to unwarranted embarrassment and harassment can be addressed through entry of a confidentiality order that prohibits disclosure to non-parties. *See Hamilton v. Ross*, CIV-89-431T, 1991 WL 327520, at *3 (W.D.N.Y. Nov. 5, 1991); *Robinson v. New York*, 08-CV-00908(S)(M), 2010 WL 1930657, at *2 (W.D.N.Y. May 12, 2010). Plaintiffs proposed and circulated the draft of such an order to Defendants in October of last year, but Defendants refused to sign it. Plaintiffs continue to believe such an order is warranted and would consent to its entry by this Court.

Accordingly, Plaintiffs believe there is no legitimate basis for Defendants to withhold production of the requested IAD complaint files and request that the Court direct Defendants to produce all such files that are responsive to Requests 41-43.

    B.  311 Complaints

Defendants asserted in response to an Interrogatory that Checkpoint locations are chosen in part based on "citizen complaints," and have made similar statements to the media. Accordingly, Plaintiffs have a right to discovery of these complaints and to test the relationship, if any,

between citizen complaints and BPD's traffic enforcement practices. Furthermore, 311 records could contain general complaints regarding Defendants' ticketing practices or racially biased policing, which would be relevant to Plaintiffs' *Monell* claims, as discussed above.

Complaints to the City's 311 system are logged into an electronic database. No privilege applies to any information stored in the 311 database. Defendants have produced an electronic spreadsheet generated from this database concerning complaints about traffic and policing, *see* example at Exhibit C, but have withheld production of the "complaint detail field," which is where all the specific information about the complaint is stored. Without this field, the information produced is so vague as to be meaningless.

In conferrals, Defendants stated that they withheld production of the complaint detail field because not all complaints are responsive and it would be too burdensome for them to redact for responsiveness. But in the Second Circuit, Defendants may not selectively redact portions of documents—such as the complaint detail field for the selected group of complaints—for nonresponsiveness. *See, e.g. Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) ("The weight of the authority in this Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'"); *Durling v. Papa John's Int'l, Inc.*, No. 16-CV-03592 (CS) (JM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018) ("[R]edactions on grounds of non-responsiveness or irrelevance are generally impermissible . . . ."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege."). And the Federal Rules simply do not permit Defendants to withhold production of relevant and responsive information because the same document may also include nonresponsive but unprivileged information. *IDC Fin. Publ'g, Inc. v. Bonddesk Grp., LLC*, No. 15-cv-1085-pp, 2017 WL 4863202, at *3 (E.D. Wis. Oct. 26, 2017).

To the extent that the 311 records may contain personal information of Buffalo residents, such as names and addresses, a confidentiality order adequately addresses those concerns. *In re Penthouse Exec. Club Comp. Litig.*, No. 10 CV 1145(KMW), 2012 WL 1511772, at *1 (S.D.N.Y. Apr. 30, 2012).[4]

Accordingly, Plaintiffs request that this Court direct Defendants to produce the complaint detail field in its entirety.

---

[4] Prior to litigation, Defendants produced this same electronic spreadsheet to Plaintiffs' counsel in response to a FOIL request. At the time, Plaintiffs sought disclosure of the complaint detail field and Defendants objected, asserting that this field contained citizens' names and would therefore require extensive redaction under FOIL. The same concerns do not come into play under the Federal Rules, where Defendants have broad discovery obligations, no privilege applies, and this Court may enter a confidentiality order to address privacy concerns.

### IV. Plaintiffs Seek Judicial Guidance on the Scope of Defendants' Redactions

Defendants have repeatedly asserted, in a variety of contexts, that broad redactions to documents are both necessary and unduly burdensome. Defendants' belief that these redactions are necessary has substantially slowed the pace of discovery. An example is the 311 complaint records, as discussed above. In that instance, Plaintiffs believe that redaction is inappropriate, but that Defendants may elect to produce documents under a confidentiality order.

Similarly, Defendants insist that the Strike Force and Housing Unit monthly and daily activity reports include narratives from which Defendants will need to redact some information, *see* example at Exhibit D. The parties have discussed the scope of redactions but have not reached agreement.

Plaintiffs' position is as follows:

- The redaction of the following information from these documents is appropriate under governing laws: (1) personal identifying information of complainants, witnesses, arrestees, and confidential informants; (2) information relevant to *ongoing* investigations. Plaintiffs would consent to such redactions.

- The law does not require, and the federal rules do not countenance, redaction of any other information, including: (1) information related to past investigations that are now closed; (2) historical information such as the locations where checkpoints or tickets were issued or where another event took place; (3) personal identifying information of BPD officers, third party contractors such as towing companies, and other City personnel; (4) information that Defendants unilaterally deem irrelevant or nonresponsive.

Defendants have not agreed to Plaintiffs' position but also have not proposed any alternative.

Plaintiffs respectfully suggest that clarifying the scope of redactions now may streamline the discovery process. Plaintiffs also respectfully request that this Court direct Defendants to comply with their obligations to provide a privilege log comporting with the Federal Rules, stating the basis for each and every redaction.

### V. Defendants Must Produce Documents Relevant to Attorney General Investigation

Finally, in Plaintiffs' Second Set of Requests for Production of Documents ("Second Requests"), Plaintiffs sought documents and communications related to a recent investigation by the New York State Attorney General's Office of the Buffalo Police Department, which centered in part around checkpoints, traffic enforcement, and allegations of racial bias. Such documents clearly are relevant to the claims at issue in this lawsuit. Defendants have propounded a variety of boilerplate objections and have refused to produce any documents.

Plaintiffs requested that Defendants confer with respect to their responses to the Second Requests in advance of the May 30 conference, but Defendants did not respond to this request. Plaintiffs are not aware of any privilege that would provide broad protection from disclosure of the kind Defendants assert. Plaintiffs believe that a brief discussion of this issue now could avert motion practice later.

Plaintiffs appreciate the time the Court has set for discussing these issues and Plaintiffs' proposed consented-to schedule modifications during the May 30 conference.

Respectfully Submitted,

*Claudia Wilner*

Claudia Wilner
Senior Attorney

Cc:    All counsel of record (via ECF)