UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X
                                                      :

BLACK LOVE RESISTS IN THE RUST, et al.,  :

                    Plaintiffs,  :     Case No. 1:18-cv-00719-CCR

          v.  :

CITY OF BUFFALO, N.Y., et al.,  :

                  Defendants.  :

-------------------------------------------------------- X

## PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION TO DEFENDANT CITY OF BUFFALO, N.Y.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, plaintiffs Black Love Resists in the Rust, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, and Jane Doe (collectively, "Plaintiffs"), by their undersigned attorneys, hereby serve the following First Set of Requests for Production of Documents ("Requests") upon each defendant. Plaintiffs request that, within thirty (30) days of service of these Requests, or on a date mutually agreed to by the parties, each defendant make available for inspection and copying the Documents described in Schedule B, in accordance with the definitions and instructions set forth in Schedule A, at the offices of the Western New York Law Center, 237 Main Street, Suite 1130, Buffalo, NY 14203. Plaintiffs reserve the right to serve additional Requests as discovery progresses.

Dated: November 5, 2018


_/s/ Claudia Wilner_____
Marc Cohan
Travis W. England
Claudia Wilner

Britney Wilson
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
cohan@nclej.org
wilner@nclej.org
england@nclej.org
wilson@nclej.org


Joseph Keleman
Keisha Williams
WESTERN NEW YORK LAW CENTER
Main Seneca Building
237 Main Street, Suite 1130
Buffalo, NY 14203
Tel: (716) 828-8415
Fax: (716) 270-4005
jkeleman@wnylc.com
kwilliams@wnylc.com


Baher Azmy
Darius Charney
Chinyere Ezie
Anjana Malhotra (cooperating counsel)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6439
BAzmy@ccrjustice.org
DCharney@ccrjustice.org
CEzie@ccrjustice.org
anjana.malhotra@gmail.com

**Schedule A**

<u>DEFINITIONS</u>

1.      The Uniform Definitions for all Discovery Requests set forth in Local Civil Rule

26(c) of the Local Rules of Civil Procedure of the United States District Court for the Western

District of New York (the "Local Civil Rules") apply to these Requests, including without

limitation the definitions and instructions set forth below:

      a.      The term "Document" is defined to be synonymous in meaning and equal

in scope to the usage of this term in Fed.R.Civ.P. 34(a), including, without

limitation, electronic or computerized data compilations.[1] A draft or non-

identical copy is a separate document within the meaning of this term.

      b.      The term "Communication" means the transmittal of information (in the

form of facts, ideas, inquiries or otherwise).

      c.      When referring to a person, "identify" means to give, to the extent known,

the person's full name, present or last known address, and when referring

to a natural person, the present or last known place of employment.  Once

a person has been identified in accordance with this subsection, only the

person's name need be listed in response to subsequent discovery

requesting the identification of that person.

---

[1] Fed. R. Civ. P. 34(a) further references "documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form" and "any designated tangible things." *Id.* 34(a)(A)–(B).

d.      When referring to documents, "identify" means to give, to the extent

known, the (i) type of document; (ii) general subject matter; (iii) date of

the document; and (iv) author(s), addressee(s), and recipients(s).

e.      The terms "Plaintiff" and "Defendant," as well as a party's full or

abbreviated name or a pronoun referring to a party, mean the party and,

where applicable, its officers, directors, employees, partners, corporate

parent, subsidiaries, or affiliates.  This definition is not intended to impose

a discovery obligation on any person who is not a party to the litigation.

f.      The term "Person" is defined as any natural person or any business, legal

or governmental entity, or association.

g.      The term "concerning" means relating to, referring to, describing,

evidencing or constituting.

h.      The connectives "and" and "or" shall be construed either disjunctively or

conjunctively as necessary to bring within the scope of the discovery

request all responses that might otherwise be construed to be outside of its

scope.

i.      The use of the singular form of any word includes the plural and vice

versa.

2.      In addition, the following definitions and constructions apply:

a.      "All" means "any and all" and "any" means "any and all."

b.      "Refer," "relate," or "reflect" means all Documents that comprise,

evidence, concern, constitute, describe, explicitly or implicitly refer to,

were reviewed in conjunction with, or were generated as a result of the

4

subject matter of the Request, including, but not limited to all Documents that reflect, record, memorialize, discuss, evaluate, consider, review, or report the subject matter of the Request.

      c.    The term "including" as used herein means including without limitation.

3.      The term "BPD" means the Buffalo Police Department, including its officers, supervisors, commanders, captains, chiefs, units, departments, districts, divisions, bureaus, task forces, squads, sections, employees, and agents.

4.      The term "BPD Housing Unit Monthly Statistics Report" means the Buffalo Police Department Housing Statistics Report, and any prior or subsequent versions of this Document, which the BPD used to record statistics relating to e.g., arrests, tickets issued, and weapons recovered by the Housing Unit.

5.      The term "BPD Roadblock Directive" means the Buffalo Police Department Roadblock Directive, and any prior or subsequent versions of this Document, which the BPD gave to personnel in connection with Checkpoints.

6.      The term "Buffalo Traffic Violations Agency" means the Executive Department of the City of Buffalo, which operates under the direction and control of the Mayor of Buffalo, including its officers, supervisors, commanders, units, departments, divisions, bureaus, task forces, squads, sections, employees, and agents.

7.      The term "Checkpoint" means any vehicle checkpoint planned, authorized, or conducted by the BPD.

8.      The term "Division of Traffic Enforcement" means the Division of Traffic Enforcement of the BPD, including its officers, supervisors, commanders, units, departments, divisions, bureaus, task forces, squads, sections, employees, and agents.

9.      The term "Employment History" means a person's date of hire; the names and dates of all positions held; the date and basis of any discipline received; and the date and basis of their separation (where applicable).

10.     The term "Housing Unit" means the Housing Unit of the BPD, including its officers, supervisors, commanders, units, departments, divisions, bureaus, task forces, squads, sections, employees, and agents.

11.     The term "Location" means the address, street segment, and/or intersection and includes the greatest level of detail for which the information is available.

12.     The term "relating to" means concerning, reflecting, referring to, describing, evidencing, constituting, consisting of, or being in any other way connected with or involved in the matters set forth. The term "Strike Force" means the Strike Force Unit of the BPD, including its officers, supervisors, commanders, units, departments, divisions, bureaus, task forces, squads, sections, employees, and agents.

13.     The term "Strike Force" means the Strike Force Unit of the BPD, including its officers, supervisors, commanders, units, departments, divisions, bureaus, task forces, squads, sections, employees, and agents.

14.     The term "Traffic Safety Checkpoint Tally Sheet" means the Traffic Safety Checkpoint Tally Sheet, and any prior or subsequent versions of this Document, which the BPD used to record statistics relating to Checkpoints, e.g., traffic summonses issued, arrests made, and seizures made.

15.     "Traffic Ticket" means any ticket or summons issued by the BPD for a violation of any section of the New York State Vehicle and Traffic Law ("VTL") and/or Chapter 479 of the Municipal Code of the City of Buffalo, New York.

6

16.     The term "You" or "Your" means Defendant City of Buffalo, N.Y., Defendant Byron B. Brown, Mayor of the City of Buffalo, in his individual and official capacities, Defendant Byron C. Lockwood, Defendant Commissioner of the Buffalo Police Department, in his individual and official capacities, Defendant Daniel Derenda, former Commissioner of the Buffalo Police Department, in his individual capacity, Defendant Aaron Young, Kevin Brinkworth, Defendant Philip Serafini, and Defendant Robbin Thomas, and any Person or entity acting on their behalf on under their control, including, but not limited to, any of their employees, agents, consultants, representatives, or advisors, and any and all of their respective predecessors and successors.

## <u>INSTRUCTIONS</u>

1.     Unless otherwise specified, the time period applicable to these Requests is **<u>January 1, 2013 to the present</u>**.

2.     Any Request seeking the production of Documents should be construed as a request for Documents and Communications, as those terms are defined in Local Rule 26(c)(3).

3.     In responding to these Requests, You must produce all responsive Documents and Communications that are in Your possession, custody, or control, or in the possession, custody, or control of any person acting on Your behalf.  All Documents and Communications that respond, in whole or in part, to any portion of any of these Requests shall be produced in their entirety, without abbreviation or redaction.

4.     In responding to these Requests, You must produce all responsive Documents and Communications available at the time of production, and You must supplement Your responses as required by Federal Rule of Civil Procedure 26(e).

5.    If You find that any term is ambiguous, You should define the term as You understand it, provide a response using that definition, and include Your definition in Your response.

6.    Each Request shall be construed according to its own terms in accordance with these Definitions and Instructions.  Although there may be some overlap, no Request should be understood to limit any other.

7.    Plaintiffs request that You produce responsive Documents and Communications on a rolling basis as Documents and Communications are identified and made ready for production.

8.    Non-ESI Documents and Communications shall be produced as required by Federal Rules of Civil Procedure 34(b)(2)(E)(i). Regardless of the option under Rule 34(b)(2)(E)(i) that is selected for production, the file location from which every Non-ESI Document was produced and the Custodian of every non-ESI Document must be identified.

9.    Identical copies of non-ESI Documents that exist in separate file locations must be produced separately, but multiple identical copies in the same file location need only be produced once.

10.    Absent a stipulation by all the Parties that expressly supersedes these instructions, You shall produce all Documents and Communications responsive to these Requests as follows:

    a.    <u>Color Documents.</u> Photographs, color brochures, color emails, and Documents and Communications that are in color shall be scanned or converted to JPEG files at 300 d.p.i. You will honor reasonable requests for either the production of the original document for inspection and copying or production of any color image of

the document, thing or ESI. All images shall be saved in a directory named
IMAGES.

b.  Black and White Documents. Documents and Communications that can be
accurately represented in black and white (including emails, other forms of ESI,
and hardcopy paper materials) shall be scanned or converted to single page
Tagged Image File Format ("TIFF" or ".tiff format") files, using CCITT Group
IV compression. All images shall be scanned or converted at 300 d.p.i. and
reflect, without visual degradation, the full and complete information contained
on the original document.

c.  Spreadsheets and Presentations. Spreadsheets (e.g., Excel, Quattropro, or .csv)
and presentations (e.g., Powerpoint) shall be produced in native form. In the event
that You need to redact a portion of a Document or Communication for which
only a native file is being produced, You will meet and confer with Plaintiffs
regarding its production. Spreadsheets and presentations should not be imaged,
but a single-page TIFF placeholder file must be included to represent the
spreadsheet or presentation. Native files shall be saved in a directory named
NATIVE with the proper Windows associated extension.

d.  Video, Audio, Databases, and Proprietary Files. You will meet and confer with
Plaintiffs regarding the production of video, audio, databases, and any proprietary
file formats (non-Microsoft or Corel Suite compatible files).

e.  Other Files. Other electronic Documents and Communications not specifically
discussed above will be produced as single page Tagged Image File Format

("TIFF" or ".tiff format") files, using CCITT Group IV compression with related text files as described above.

f.  <u>Bates Numbering.</u> You will produce all imaged Documents and Communications with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in the lower right hand corner or at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates numbering convention shall be in the format "X########" where "X" represents the short character abbreviation for relevant Defendant and "########" represents the eight-digit sequential number of the page being produced by that Defendant. Documents produced by Defendants shall be abbreviated consistently, e.g., "BPD" for all Documents produced by the Buffalo Police Department. Thus, the first Bates labeled document produced by the Buffalo Police Department should be labeled "BPD00000001". Images shall be named as the [Bates Number].tif or [Bates Number].jpg. Native files shall be named as [Bates Number].ext.

g.  <u>Duplicates</u>: Identical copies of ESI files need only be produced once. You will provide MD-5 hash values for Documents and Communications that exist as native ESI files. MD-5 hash values will be calculated at the time of processing for all categories of ESI.

h.  <u>Metadata.</u> Where the metadata exists in connection with any responsive Documents and Communications (including emails, other forms of ESI, and hardcopy paper materials),  You shall provide it to Plaintiffs as a "load file" containing Custodian, All Custodians (i.e., the name(s) of the person(s), in

addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated), Folder/File Path, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, Time Created, Time Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Begin, and Attachment End (or the equivalent thereof). The load file shall be provided in a directory named DATA, in a Concordance .DAT file format with standard delimiters. You will not include Optical Character Recognition (OCR)/extracted text in the .DAT file.

i.  <u>Documents Containing Fixed Notes.</u> For Documents and Communications that contain fixed notes (*e.g.*, post-it notes), the pages will be scanned both with and without the notes. Those pages will be treated as part of the same document.

j.  <u>Related Documents.</u> Documents and Communications responsive to these Requests shall be produced together with any and all drafts, non-identical copies, and parent or children files (*e.g.*, cover letters/emails, attachments, archive files such as zip, files with embedded Documents or Communications, enclosures, Documents and Communications in a binder or folder). All such Documents and Communications shall be produced as separate files, but be assigned the same attachment range as a way of identifying the parent-child relationship. Documents and Communications attached to each other, including by staple, clip, tape, or maintained together in physical folders or binders, shall also be treated as related documents for purposes of this paragraph, and any labels, text, or markings on the folder or binder must be scanned and produced.

k. <u>Image Cross Reference File.</u> You shall produce an "image cross reference file" in Concordance Opticon .log format, to accompany any produced images. The image cross reference file shall provide the Bates Numbers, relative path to images, and document break indicators. The image cross reference file shall be provided in a directory named DATA.

l. <u>Corresponding Text Files.</u> For electronic Documents and Communications that exist as native files and do not require redaction, You shall produce extracted text files reflecting the full text that was electronically extracted from the native file, regardless of whether the document is being produced in native form. For all Documents and Communications which are scanned hard-copies or native files that require redaction or for which text is not available (*e.g.*, graphic files and some PDFs), You will produce corresponding OCR text files, regardless of whether the document is being produced in native form. The OCR and extracted text files shall be produced in ASCII text format and shall be labeled and produced on Production Media in accordance with the specifications below. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR and extracted text files shall be produced in a manner suitable for importing the information into Concordance. OCR and extracted text files shall be saved in a directory named TEXT. All Documents should have an accompanying text file even if zero size.

m. <u>Production Media.</u> You may produce Documents and Communications to Plaintiffs using FTP, CD-ROM, DVD, or external hard drive (the "Production

Media"), depending on the volume of the production. Each piece of Production Media shall identify a production number corresponding to the production "wave" and a number of the volume of material in the wave. For example, if Your first production comprises document images on three hard drives, You shall label each hard drive in the following manner in numeric sequence: "001.001"; "001.002"; "001.003." If the second production comprises three DVDs, You shall label each DVD in the following manner in numeric sequence: "002.001"; 002.002"; "002.003." Additional information that shall be identified on the physical Production Media includes: (1) the case number, (2) relevant Defendant's name, and (3) the production date. The type of materials on the media (*e.g.*, "Documents", "OCR Text", etc.) and the Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, or where not practicable to do so, may be provided in an accompanying letter. Production Media shall be encrypted, with the password provided to Plaintiffs by email.

n.  <u>Encryption.</u>  You shall remove encryption or password protection of any file or locate and provide the passwords to Plaintiffs. If non-standard software is required to open encrypted files, You must provide the software.

o.  <u>Native Files.</u>  Plaintiffs reserve the right to request native versions of imaged documents.

11.    You shall produce responsive Documents and Communications as they have been kept in the usual course of business or organize and label them to correspond with the enumerated Requests in this demand.

12.     You will meet and confer with Plaintiffs as soon as practicable regarding search processes and criteria (such as date ranges, custodians, search locations, key words, etc.) to identify responsive Documents and Communications in advance of Your deadline to respond to these Requests so as to facilitate the expeditious production of responsive Documents and Communications.

13.     If there are no responsive Documents or Communications for a particular Request or part of a Request, You will state so in writing.

14.     Whenever Documents or Communications are not produced in full or are produced in redacted form, so indicate on the Document or Communication, state with particularity the reason or reasons it is not being produced, and describe with particularity those portions of the Document or Communication not being produced.

15.     To the extent that You object to any Request herein, specify (i) whether Documents and Communications are being withheld on the basis of the objection, and (ii) if any Documents and Communications are being produced notwithstanding the objection.  If You object to any Request herein only in part, specify the portion of the Request You deem objectionable and produce all Documents and Communications responsive to the remainder of the Request.

16.     If You withhold any Document or Communication on grounds of attorney-client privilege, work product, or any other claim of immunity from discovery, then provide a privilege log including at least the information required by Local Civil Rule 26(d), as well as (a) the name, address, occupation, title, and business affiliation of each person who prepared, received, viewed, and has or has had possession, custody, or control of the document, (b) a statement of

14

the basis upon which the privilege or work product claim is made, and (c) the paragraph(s) of this Request that call for its production.

      17.     Whenever necessary to bring within the scope of these Requests Documents or Communications that might otherwise be construed to be outside their scope: (i) the use of any verb in any tense shall be construed as the use of that verb in all other tenses; and (ii) all date ranges shall be inclusive of the first and last dates identified.

**Schedule B**

REQUESTS FOR PRODUCTION

1.      All Documents and Communications relating to the creation of the Strike Force, including but not limited to the reasons for or purposes of the Strike Force's creation, without limitation to time period.

2.      All Documents and Communications relating to the purpose, mandate, goal, function, or mission of the Strike Force, without limitation to time period.

3.      All Documents and Communications relating to the creation of the Housing Unit, including but not limited to the reasons for or purposes of the Housing Unit's creation, without limitation to time period.

4.      All Documents and Communications relating to the purpose, mandate, goal, function, or mission of the Housing Unit, without limitation to time period.

5.      All Documents and Communications relating to the creation of the Buffalo Traffic Violation Agency (BTVA) without limitation to time period, including but not limited to the reasons for or purposes of the BTVA's creation.

6.      All Documents and Communications relating to the purpose, mandate, goal, function, or mission of the BTVA, including but not limited to BTVA annual reports, without limitation to time period.

7.      All Documents and Communications relating to the BPD's decision to establish or conduct Checkpoints, without limitation to time period.

8.      All Documents and Communications relating to the BPD's decision to end the Strike Force.

9.      All Documents and Communications consulted or reviewed by the BPD in order to determine the physical location of each Checkpoint or group of Checkpoints, including any Documents and Communications referring or relating to strategy or other considerations in determining Checkpoint location.

10.     All BPD Housing Unit Monthly and Weekly Statistics Reports.

11.     All BPD Housing Unit Daily Reports, including but not limited to Daily Statistical Reports.

12.     All BPD Strike Force Monthly and Weekly Statistics Reports.

13.     All BPD Strike Force Unit Daily Reports.

14.     All BPD Division of Traffic Enforcement Monthly and Weekly Statistics Reports.

15.     All BPD Division of Traffic Enforcement Daily Reports.

16.     All Documents and Communications containing statistical, demographic, or other information regarding the operation of Checkpoints by any part of the BPD, to the extent not already responsive to Requests 10 through 15.

17.     All completed BPD Roadblock Directives.

18.     All completed Traffic Safety Checkpoint Tally Sheets.

19.     All other completed directives, tally sheets, and/or similar Documents and Communications discussing the date, time, location, and/or results of Checkpoints carried out by the BPD, to the extent not already responsive to Requests 17 and 18.

20.     For each officer assigned to the Housing Unit, all activity reports and other Documents and Communications completed by Housing Unit Officers to record their enforcement activity (tickets, arrests, traffic stops) on a daily, weekly, monthly, quarterly, and annual basis.

21.     For each officer assigned to the Strike Force, all activity reports and other Documents and Communications completed by Strike Force Officers to document their enforcement activity (tickets, arrests, traffic stops) on a daily, weekly, monthly, quarterly, and annual basis.

22.     All Documents and Communications concerning the procedures, information, and criteria used to evaluate the performance of Housing Unit and Strike Force officers.

23.     For each officer assigned to the Housing Unit and/or Strike Force, copies of all monthly, quarterly and annual performance evaluations of that officer conducted while he or she was assigned to the Housing Unit and/or Strike Force.

24.     Electronic or computerized data compilations sufficient to show for each Checkpoint conducted by the BPD:

        a.     The number of license plates checked, by an automated license plate reader or otherwise, at the Checkpoint;

        b.     The unit or division within BPD that conducted the Checkpoint;

        c.     The date, time, duration and Location of the Checkpoint;

        d.     The number of Persons selected for a secondary stop at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each such Person;

        e.     The number of Persons who received a Traffic Ticket at the Checkpoint, the number of tickets each such Person received, and the race, ethnicity, national origin, and any other demographic data recorded for each such Person;

f.       The number of firearms confiscated at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each such Person;

g.       The number of Persons arrested for a traffic misdemeanor at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each such Person;

h.       The number of Persons arrested for a non-traffic misdemeanor at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each such Person;

i.       The number of Persons arrested for a felony at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each such Person;

j.       The number of vehicles towed following a stop at the Checkpoint, the reason for towing the vehicle, and the race, ethnicity, national origin, and any other demographic data recorded for the driver of each such vehicle;

k.       The number of vehicles impounded following a stop at the Checkpoint, the reason for impoundment, and the race, ethnicity, national origin, and any other demographic data recorded for the driver of each such vehicle;

l.       The number of vehicles released from impound following a stop at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each Person whose vehicle was released following a stop at the Checkpoint; and

m.  The number of vehicles auctioned following a stop at the Checkpoint and the race, ethnicity, national origin, and any other demographic data recorded for each Person whose vehicle was auctioned following a stop at the Checkpoint.

25.  Electronic or computerized data compilations sufficient to show for each and every Traffic Ticket issued and/or traffic-related arrest:

a.  The identity of the person(s) stopped, ticketed or arrested (names may be anonymized but stops, tickets, and arrests must be traceable at the individual level);

b.  The identity of the officer issuing the ticket or arrest (Name, Unit, and Badge Number);

c.  The date, time, and Location of the stop giving rise to the ticket or arrest;

d.  Whether the stop occurred at a Checkpoint;

e.  The race of the person(s) stopped, ticketed, or arrested;

f.  The gender of the person(s) stopped, ticketed, or arrested;

g.  The age of the person(s) stopped, ticketed, or arrested;

h.  All VTL and/or City of Buffalo Municipal Code violations for which the person was ticketed and/or arrested;

i.  All misdemeanor, traffic misdemeanor, and felony arrests made as a result of the stop, including the specific provision(s) forming the basis for the arrest;

j.  All weapons seized as a result of the stop, including the nature of the weapon;

k.  The total amount of cash seized as a result of the stop;

26.  Copies of all Traffic Tickets issued by the BPD.

27.     All Documents and Communications relating to any reports, notes, memoranda, files, data sets, databases, or other paper or electronic mechanisms used by You to record, transmit, maintain, tabulate, aggregate, analyze, and/or review information relating to any Checkpoint conducted by the BPD.

28.     All Documents and Communications relating to any reports, notes, memoranda, files, data sets, databases, or other paper or electronic mechanisms used by You to record, transmit, maintain, tabulate, aggregate, analyze, and/or review information relating to Traffic Tickets issued and/or misdemeanor and/or felony traffic arrests made by BPD officers.

29.     All Documents and Communications showing the dates, times, offense categories and Locations of all reported crimes in the City of Buffalo.

30.     All Documents and Communications showing the dates, times and Locations of all traffic accidents that occurred in the City of Buffalo.

31.     All Documents and Communications relating to the time individuals waited during Checkpoints ("wait times"), average wait times, and/or or other measures of individual or aggregate waiting times, for Persons driving through a Checkpoint established by the Strike Force or Housing Unit.

32.     All Documents and Communications relating to the average wait times, or other measures of individual or aggregate waiting times, for Persons pulled over for a secondary stop at a Checkpoint established by the Strike Force or Housing Unit.

33.     All Documents and Communications relating to BPD's use of computer software and/or technology to issue traffic tickets.

34.     All Documents and Communications relating to the academic study by Andrew P. Wheeler and Scott W. Phillips referenced at paragraph 56 and n.7 of the Complaint, including all

communications, data, and Documents and Communications shared with the study authors and/or their staff and interns.

35.     All Documents and Communications relating to BPD policies, procedures, protocols, directives, forms, guidelines, standards, rules, regulations, orders, training materials or instructions relating to Checkpoints, including but not limited to, deciding where and when to conduct a Checkpoint, conducting initial and secondary stops, performing searches, issuing Traffic Tickets, making misdemeanor and felony arrests, and/or towing or impounding cars at Checkpoints.

36.     All Documents and Communications relating to BPD policies, procedures, protocols, directives, forms, guidelines, standards, rules, regulations, orders, training materials or instructions relating to enforcing the Vehicle and Traffic Law, including but not limited to conducting traffic stops, performing searches of vehicles, issuing Traffic Tickets, making misdemeanor and felony arrests following traffic stops, and/or towing or impounding vehicles following traffic stops.

37.     All Documents and Communications relating to BPD policies, practices, directives, forms, guidelines, standards, rules, regulations, orders, training materials or instructions relating to the use of Automatic License Plate Readers and storage of ALPR data.

38.     All Documents and Communications relating to BPD policies, procedures, protocols, directives, forms, guidelines, standards, rules, regulations, orders, training materials or instructions relating to compliance with the Fourth and Fourteenth Amendment of the United States Constitution, including the rights to due process and equal protection.

39.     All Documents and Communications relating to BPD policies, procedures, protocols, directives, forms, guidelines, standards, rules, regulations, orders, training materials or

instructions relating to racial profiling, biased policing, and/or the use of race in law enforcement decision-making.

40.     All Documents and Communications relating to BPD policies, procedures, protocols, directives, forms, guidelines, standards, rules, regulations, orders, training materials or instructions relating to supervisory review of the traffic enforcement activities, including, but not limited to, Checkpoints, traffic stops, traffic tickets, and traffic misdemeanor arrests, conducted by BPD officers.

41.     All Documents and Communications relating to any comments, complaints, grievances, or concerns You received verbally or in writing about any Checkpoint established by the Strike Force or Housing Unit.

42.     All Documents and Communications relating to any comments, complaints, grievances, or concerns You received verbally or in writing related to alleged racial profiling, bias or discrimination by the BPD.

43.     All Documents and Communications relating to any comments, complaints, grievances, or concerns You received verbally on in writing related to BPD traffic stops, traffic ticketing, and/or other traffic enforcement practices.

44.     All Documents and Communications relating to any comments, complaints, grievances, or concerns You received verbally or in writing about traffic safety, including but not limited to requests from the public for increased traffic enforcement.

45.     All Documents and Communications relating to any analysis, evaluation, review, recording, or study of Checkpoints, including the race, ethnicity, national origin or other demographic data of individuals who drove through and/or were stopped at Checkpoints and the extent to which such Checkpoints enhanced or detracted from traffic safety.

46.     All Documents and Communications relating to the September 18, 2018 report provided by the Buffalo Police Advisory Board to the Buffalo Common Council Police Oversight Committee.

47.     Documents and Communications sufficient to show all federal financial assistance received by the Buffalo Police Department.

48.     All Documents and Communications concerning the defenses asserted in Defendants' Answer, including Documents and Communications that support or refute the defenses.

49.     All Documents identified in response to Plaintiff Black Love Resists' First Set of Interrogatories to Defendant City of Buffalo, N.Y.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 5, 2018, a true and correct copy of the foregoing document

was served on the following via electronic mail:

    Robert E. Quinn
    Assistant Corporation Counsel
    65 Niagara Square, 11th Floor
    Buffalo, New York 14202
    (716) 851-4326
    rquinn@city-buffalo.com

Dated: November 5, 2018

                                       */s/ Claudia Wilner*
                                       Claudia Wilner
                                       NATIONAL CENTER FOR LAW
                                       AND ECONOMIC JUSTICE
                                       275 Seventh Avenue, Suite 1506
                                       New York, NY 10001
                                       (212) 633-6967
                                       wilner@nclej.org