1

1        UNITED STATES DISTRICT COURT

2        WESTERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - - - - -X
    BLACK LOVE RESISTS IN THE RUST, by          18-CV-719(CCR)
5   and through its co-directors Natasha
    Soto and Shaketa Redden and on
6   behalf of its members agent Just
    Resisting; Dorethea Franklin; Taniqua
7   Simmons; De'Jon Hall; and Jane Doe,
    individually and on behalf of a class
8   Of others similarly situated,
                        Plaintiffs
9   vs.
                                            Buffalo, New York
10  CITY OF BUFFALO, NY; BYRON B. BROWN,        October 9, 2018
    Mayor of the City of Buffalo, in his        2:49 p.m.
11  individual and official capacities;
    BYRON C. LOCKWOOD, Commissioner of the
12  Buffalo Police Department, in his
    individual capacity; DANIEL DERENDA,
13  former Commissioner of the Buffalo
    Police Department, in his individual
14  capacity; AARON YOUNG, officer of the
    Buffalo Police Department, in his
15  individual capacity; KEVIN BRINKWORTH,
    PHILIP SERAFINI, officer of the Buffalo
16  Police Department, in his individual
    capacity; UNKNOWN SUPERVISORY PERSONNEL
17  1-10, officers of the Buffalo Police
    Department, in their individual capacities;
18  and UNKNOWN OFFICERS 1-20, officers of the
    Buffalo Police Department, in their
19  individual capacities,
                        Defendants.
20  - - - - - - - - - - - - - - - - - - X

21

             TRANSCRIPT OF VIDEO CONFERENCE
22      BEFORE THE HONORABLE CHRISTINA CLAIR REISS
             UNITED STATES DISTRICT JUDGE

23

24

25

1                      **A P P E A R A N C E S**

2

3

    CENTER FOR CONSITITONAL RIGHTS
4   BY: CLADIA WILNER, ESQ.
         DARIUS CHARNEY, ESQ.
5        ANJANA MALHOTRA, ESQ.
    666 Broadway, Floor 7
6   New York, New York 10012
    Appearing on behalf of the Plaintiffs
7

8   CITY OF BUFFALO DEPARTMENT OF LAW
    BY: ROBERT M. QUINN, ESQ.
9   65 Niagara Square
    Buffalo, New York 14202
10  Appearing on behalf of the Defendants

11

12  AUDIO RECORDER:    Jane Kellogg

13
    TRANSCRIBER:         Christi A. Macri, FAPR-CRR
14                       Kenneth B. Keating Federal Building
                         100 State Street, Room 2120
15                       Rochester, New York 14614

16

17

18  (Proceedings recorded by electronic sound recording,
    transcript produced by computer).
19

20

21

22

23

24

25

<u>**P R O C E E D I N G S**</u>

\*   \*   \*

**THE CLERK:** All rise.  Court is now in session.  The Honorable Christina Reiss presiding.  You may be seated.

Your Honor, we're here in the matter of Black Love Resists in the Rust, et al. vs. The City of Buffalo, et al., Docket No. 18-CV-719.

Counsel, please state your name and the party you represent for the record.

**MS. WILNER:** Good afternoon, Your Honor.  Claudia Wilner from the National Center for Law and Economic Justice for the plaintiffs.

**MR. CHARNEY:** Good afternoon, Your Honor, Darius Charney from the Center for Constitutional Rights also for the plaintiffs.

**MS. MALHOTRA:** Good afternoon, Your Honor.  Anjana Malhotra, cooperating counsel with the Center For Constitutional Rights as counsel for the plaintiffs.

**MR. QUINN:** And Robert Quinn on behalf of the defendants.  Good afternoon, Your Honor.

**THE COURT:** Good afternoon.  Today I want to talk about whether or not your joint proposed discovery plan is realistic and also whether or not we could shorten any dates or whether this is something where you've exchanged information.

1         So in assisting the Western District of New York,

2    we have the -- the judges of Vermont have agreed to do things

3    your way and follow your local rules, but I've noticed that

4    some of the discovery schedules are abnormally long for no

07:49:42AM 5    particular reason.

6         So, for example, in this case your dispositive

7    motions would be due today next year.  And in reading the

8    complaint it looked to me like the data was historical and had

9    been reasonably preserved.  But it also looked to me like

07:50:14AM 10    there would be a fairly significant factual discovery phase

11    prior to class determination.

12         And I didn't see anything in the discovery schedule

13    that factored in determining whether or not this proceeds as a

14    class action, which would change things considerably.

07:50:50AM 15         So I'm wondering if it is sufficiently phased or if

16    you've thought about those and decided upon those kind of

17    bare-bones approach, and if I'm missing something.

18         I'm also interested in -- we have an ADR process

19    that is different from your process and it looks to me like

07:51:16AM 20    that is not anywhere in the discovery schedule.  It may be

21    that this is a case that does not fall within it.  But we do

22    what's called "early neutral evaluation," so we do it sooner

23    rather than later in the case.

24         I looked at the complaint and I saw the due process

07:52:05AM 25    claim, it was not clear to me whether we were talking about

1   substantive or procedural due process.  So I'm hoping you can

2   clarify that for me.

3        And I just want to point out that in the

4   defendants' answer it's Black Love "Resits" in the Rust as

07:52:58AM 5   opposed to "Resists" in the Rust.  So you might want to check

6   your caption so you don't duplicate that for further filings.

7        So let's start with the plaintiffs, and it would be

8   helpful for me if you announced who you are each time you

9   speak just so I can get your names down.  I do have a good

07:53:53AM 10   idea who is litigating in this case.

11        **MS. WILNER:** Thank you, Your Honor.  This is Claudia

12   Wilner for the plaintiffs.

13        And I -- we -- both sides have discussed the

14   schedule.  We do think there's going to be a fair amount of

07:54:15AM 15   discovery involved in the case.  And specifically in terms of

16   deadlines for class action, we would need to do class

17   discovery before we would be in a position to file the motion.

18        I also think there's a fair amount of -- you had

19   mentioned that there was a fair amount of historical data in

07:54:47AM 20   the complaint, and that is true insofar as we have some data

21   about locations of checkpoints.

22        But I wanted to clarify for the Court that our case

23   not only involves the checkpoints, but discriminatory

24   ticketing practices that occur outside of checkpoints and we

07:55:09AM 25   are going to be seeking from the City data that concerns

1  ticketing practices generally, not just at checkpoints, which

2  is not an area of data that we've had an opportunity to

3  explore yet.

4          So we do expect there to be quite a bit more

07:55:27AM 5  statistical data and information that we'll be seeking from

6  the City than is currently present in the complaint.  I don't

7  know if that helps.

8          **THE COURT:** It does a little bit.  It's your

9  perception that the defendants agree that this should proceed

07:55:50AM10  as a class action?  Because I don't see that built into your

11  discovery schedule.

12          So if it is going to proceed as a class action, you

13  obviously have broader discovery rights than you do if you're

14  dealing with individual plaintiffs.

07:56:09AM15          **MS. WILNER:** Mm-hmm.

16          **THE COURT:** And I just don't see where that

17  threshold determination would be made in this discovery

18  schedule.  And maybe if you're comfortable leaving it loose,

19  that might be fine with me, but I bet we will get to a

07:56:25AM20  decision point pretty quickly when you ask for something and

21  it's outside the normal scope of discovery, but might be

22  within the scope of discovery for a class action.

23          **MS. WILNER:** Mm-hmm.  Well, we absolutely do intend

24  to proceed on a class action basis and we expect to begin

07:56:53AM25  class discovery, you know, imminently when the conference is

1    over.  Some of the earliest discovery that we plan to do is

2    about ascertaining the size of the class and who our class

3    members would be.

4            **THE COURT:** Okay.  That didn't really answer my

07:57:19AM 5    question about are you comfortable leaving it this loose and

6    bare-bones?

7            **MS. WILNER:** I think for now, Your Honor, we are.

8            **THE COURT:** Okay.  Anybody else from the plaintiffs'

9    side that wants to speak?

07:57:38AM 10    **MS. WILNER:** Oh, yes.  Well, you've had a -- there

11    are a couple of other questions that you had raised.  One had

12    to do with the ADR process.

13            So we have been expecting and we've talked to

14    defense counsel about this to follow the ADR process and the

07:57:57AM 15    rules that are present in the Western District.  So we

16    expect -- we assume that we would be following the timing and

17    the schedule that's set forth in the local ADR plan.  So we

18    were planning to proceed with that process.

19            I think we just didn't understand that you would

07:58:19AM 20    want to see those dates included in the discovery plan.

21            **THE COURT:** Let me ask you about that because having

22    sat on a number of these cases, I am seeing discovery plans.

23    Is it required by the local rules?

24            **MS. WILNER:** My understanding is that there is a

07:58:57AM 25    local ADR plan that is required for the local rules unless

1    there are certain kinds of cases that can be opted out.

2         I don't believe our case is the type that normally

3    is opted out.  And we have discussed mediation; I think both

4    sides are -- I don't want to speak for opposing counsel, but

07:59:31AM 5    my understanding is both sides are open to mediation.

6         So we discussed -- yeah, we did.  According to the

7    local schedule, I think we discussed conferring and selecting

8    a mediator by October 23rd, and having an initial mediation

9    session by December 1st and continuing with mediation, you

08:00:11AM 10    know, up until the time of trial or until the parties decide

11    that it doesn't make sense to continue.

12         **THE COURT:** Okay.  And then my last question is, is

13    it a procedural due process claim?  Is it a substantive due

14    process claim?  Have you not made that determination?

08:00:38AM 15         **MS. WILNER:** I think it would qualify as a

16    substantive -- you know, honestly, Your Honor, I am not sure

17    whether it -- it qualifies as substantive or procedural, but

18    it derives from the line of Supreme Court cases, I believe

19    *Marshall vs. Jerrico* and the other cases that have to do with

08:01:05AM 20    the impartiality of the tribunal and the importance of the --

21    essential importance of having fairness in the process both

22    from the tribunal and the prosecutors and the officers -- this

23    would include the police officers who are appearing in the

24    process.

08:02:39AM 25         So I -- I actually haven't seen in the case law

1  whether they call it substantive or procedural, and there's a

2  different standard protesting those kinds of claims.

3          **THE COURT:** Right.  And that's -- when I was trying

4  to stretch out what your claims were, that was my stopping

08:03:00AM 5  point because I don't think -- I didn't get the impression it

6  was about the impartiality of the tribunal.  I don't know that

7  that shows up in the due processes claims, but I didn't look

8  specifically for that argument.

9          But breezing through it right now, I -- defendants

08:03:34AM 10  will again violate their Fourth Amendment rights by subjecting

11  them to track enforcement solely for pecuniary gain.

12          So, anyway, you'll get to that point where you're

13  clarifying and go from there.

14          **MS. WILNER:** And if I can --

08:04:59AM 15          **THE COURT:** Go ahead.

16          **MS. WILNER:** -- just to clarify, our claim is really

17  directed not so much at the tribunal, but at the improper

18  pecuniary motivations that are in place at the police officer

19  level.  So it's about the prosecutor and the policing as

08:05:23AM 20  opposed to the judges.

21          **THE COURT:** Okay.  (Indiscernible) it was the

22  judges, but when you said "impartiality of the tribunal," I

23  guess that's what I was looking for.  Okay.

24          I'm sure we'll get to the point of narrowing what's

08:07:14AM 25  at issue and it's a very comprehensive complaint.  So I had a

1    lot of information going into this conference.

2         Let's talk -- let me talk to defense counsel, and

3    are you in agreement that a schedule that's bare-bones is

4    going to work for you, at least in the short-term?

08:07:34AM 5         **MR. QUINN:** In the short-term we would say yes.  We

6    actually had not discussed the discovery schedule of the class

7    certification.  I believe we were just working off of the --

8    the format of the joint proposed discovery plan and the other

9    plan.

08:07:54AM 10         I've seen it both ways.  I do think, you know,

11   plaintiff is going to put on a case that they see fit, but I

12   have seen instances where the class certification and class

13   discovery is completed before and then the rest of the case

14   proceeds.

08:08:17AM 15         I don't know that we've discussed this really.  I

16   don't know if plaintiff has a preference one way or the other

17   or the Court for that matter.  I don't want to make things

18   difficult, but I would like them to proceed in an orderly

19   manner and just big picture.

08:08:37AM 20         From my discussions with the plaintiff, I expect

21   that there are going to be quite extensive discovery requests,

22   and I believe that the dates in the -- in the proposed plan

23   are relatively ambitious.  We certainly will do our best to

24   comply with them, but just, you know, from speaking with them

08:09:00AM 25   it sounds like they want to do a lot of depositions, a lot of

1    paper discovery and the wide-ranging nature of the complaint

2    might -- might cause the deadlines to have to be adjusted as

3    we go forward.

4            Whether or not it makes more sense to have the

08:09:18AM 5    class certification done first, I could see a situation where

6    it would, but I don't really know that and we had not really

7    discussed that.

8            **THE COURT:** Okay.  Well, having just finished the

9    Northeast Dairy Farmers class action certification case, I

08:09:42AM10   think that the preferable practice is if you're asking for

11   class certification and you want to end up at trial on that

12   basis, you should be factoring that into a discovery schedule

13   because you're entitled to certain things in a class action

14   lawsuit that you're not entitled to on behalf of individual

08:10:17AM15   plaintiffs, and it's going to start shaping the case quite

16   quickly.

17           The first time you file your discovery and

18   defendant says you don't -- you're not entitled to this

19   discovery, we're going to hit that point.

08:10:36AM20           Also, in my experience the class proceedings take

21   up a fair amount of time and so you have to plan on that kind

22   of hearing if you want to go in that direction.

23           So I -- I don't hear any particular anxiety on

24   either parties' part about having a bare-bones schedule that I

08:11:15AM25   would see in a personal injury case or any other case in the

Western District of New York.  And if you are happy enough to

proceed on that basis for the time being, that's fine with me.

One thing that you should understand is, especially

if we're going to have a class action, that judges, you know,

play a much different role than in a typical case.  The judge

is a fiduciary on behalf of the absent class action members

and really needs to manage the proceedings so that the

attorneys' fees are not completely out of bounds, so that the

class is not waiting forever for a resolution, all that good

stuff.

So I will take a more aggressive approach to case

management.  So that will be the head's up.  And I anticipate

we're going to have status conferences along the way to make

sure things are moving forward.

So for today I'm happy to sign off on your joint

discovery plan and I think we'll be back at least by telephone

in 60 days to see where you're at and whether or not you have

come to a more detailed understanding of how the case is going

to flow from here.

There was a mention of a protective order.  Do you

have that in draft at this point?

**MR. CHARNEY:**  Yes, Your Honor, this is Darius

Charney again for the plaintiffs.

We have -- we did draft an order that we've

exchanged with defendants and we've had a couple of phone

1  conversations about the order.

2            At this point there are a couple of issues which I

3  think we've basically reached an impasse on.  I don't know if

4  Your Honor would like to hear about those today or if you'd

08:18:54AM 5  like us to apprise you of it by -- in writing.  What is your

6  preference?

7            THE COURT: Well, are you prepared to talk about it

8  today?

9            MR. CHARNEY: Yes, I believe we are.  So I can --

08:19:14AM 10            THE COURT: Let me ask -- go ahead, sorry.

11            MR. CHARNEY: Oh, no, you want to ask the defendants

12  or --

13            THE COURT: I do want to ask the defendants if

14  they're ready to talk about the protective order as well.

08:19:27AM 15            MR. QUINN: Of course, Your Honor, I'm happy to

16  discuss it.

17            THE COURT: Okay.  So let's go back to the

18  plaintiffs and what's the issue with the protective order?

19            MR. CHARNEY: Sure.  So the first issue has to do

08:19:42AM 20  with what categories of information we want to designate as

21  confidential.  We had proposed four categories which my

22  understanding was the defendants were fine with those four

23  categories.

24            They wanted to add in an additional category that

08:20:11AM 25  we are not okay with, and so that's one of the issues.  The

1    category that the defendants would like to designate as

2    confidential would be data related to the location of the

3    checkpoints that are conducted by the Buffalo Police

4    Department.

08:20:37AM  5        We are of the view that that is not appropriate.

6    They cited for us the so-called law enforcement privilege,

7    which we don't think is applicable here, and I can go into

8    why.  I can cite case law to that effect as well.

9        And in addition, we think it's -- just as a

08:21:09AM 10   practical matter doesn't make any sense given that these

11   checkpoints are very public events where hundreds of people go

12   through them, they're very -- their locations are very

13   well-known to the people of Buffalo; there's even social media

14   postings about them.

08:21:34AM 15       So to say that they should be kept confidential

16   doesn't really make any sense to us.  So that's -- that's the

17   first area of disagreement.

18       **THE COURT:** So let me stay on that issue with you,

19   and having not seen your case law --

08:21:50AM 20       **MR. CHARNEY:** Mm-hmm.

21       **THE COURT:** -- and if this is supposedly a crime

22   fighting mechanism, how is it different from a DUI checkpoint

23   which you would not announce in advance we're going to be out

24   on this road at this particular time doing this, because

08:22:36AM 25   people then just divert their path of travel around it?

1          So why is this different than that?

2          **MR. CHARNEY:** I guess maybe to clarify, the data we

3     would be asking for would be for checkpoints that have already

4     been held.  So obviously when they're planning to do a

08:22:53AM 5     checkpoint, I mean, I don't even know if they keep data in

6     advance of when they conduct the checkpoint.  But once the

7     checkpoint happens they record that data.

8          And so that's the data that we -- we will be asking

9     for and would like to receive and not have it be restricted in

08:23:16AM 10     terms of its confidentiality.  So I don't know if that gets at

11     the question of, you know, well, these have to be a surprise.

12     We would be asking for data on checkpoints that have already

13     taken place so that element of --

14          **THE COURT:** So what's --

08:23:51AM 15          **MR. CHARNEY:** -- surprise is not really an issue in

16     our view.

17          **THE COURT:** Let's hear from defense counsel.

18          **MR. QUINN:** On that specific issue, Your Honor, we

19     have -- there have been previous FOIA requests and we've

08:24:12AM 20     raised this concern prior to and in discussions in the context

21     of this lawsuit.

22          The concerns are officer safety and the adequacy

23     and the effectiveness of checkpoints should they happen in the

24     future.  Those are the concerns that we've raised.

08:24:30AM 25          I think it's important to remember what we're

talking about here is a stipulation to confidentiality.  If

plaintiff doesn't want to stipulate to that, you know, I can't

force them to.

The issue, as I see it with respect to --

08:24:47AM **THE COURT:** So then tell me what officer safety

could there be for historical data?

**MR. QUINN:** For historical data the possibility

arises, Your Honor, that certain locations would, for whatever

reason, have been determined to be effective locations based

08:25:10AM on, you know, the reasons that they hold those checkpoints and

that they occur at that location in a pattern manner -- or in

a frequent manner, something like that, so that using

historical data you could try to foresee going forward the

manner and locations and times in which the checkpoints would

08:25:35AM be conducted.

But if that answers your question, I did want to

sort of address the -- as I see it, the issue regarding the

stipulation of confidentiality is whether or not it is going

to be an exclusive stipulation or if it's just going to

08:25:56AM pertain to the things that are identified in that document.

I think it is laudable and we should try to agree

on things that would be kept confidential largely as it's

currently drafted, that's proposed to be mostly personal

information of both plaintiffs and defendants.  That seems

08:26:19AM reasonable.

1          What I want to avoid is for that to change --

2    should other issues come up in the future, change in any way

3    the manner in which confidential or privileges or things of

4    that nature are addressed.  I want the order to be a

08:26:36AM 5    stipulation of things that we can agree on, not an exclusive

6    here's the only thing that's going to be confidential because

7    as we sit here we don't know -- I don't know what the

8    plaintiff is going to request.

9          We have not received any discovery requests.  I

08:26:50AM 10    don't know how far they're going to look as far as data.

11    They've already indicated that it is going to be wide-ranging

12    and it's not just limited to the location of checkpoints.

13          So I don't know.  I don't think it's going to be a

14    huge issue, but, you know, these are records that go a long

08:27:08AM 15    ways.  So I just don't want to be limited as we move forward

16    in the lawsuit.  That's what I see as the issue regarding

17    the -- the confidential order.

18          **THE COURT:** Okay.  I don't think that historical

19    data should be confidential as a per se category on the

08:27:56AM 20    thought that maybe they're going to choose the same location

21    at some time in the future.  That doesn't seem to me that

22    would warrant true confidential status.

23          I don't think this protective order limits the

24    defendant from coming back to the Court and asking for a

08:28:22AM 25    different protective order.  Protective orders, as you know,

1  don't have to be mutual.  If you get to a sticking point, you

2  can ask for an *in camera* inspection and have the Court make

3  determinations.

4          So what I don't want is protracted negotiations

08:28:43AM 5  over a protective order where all discovery comes to a

6  standstill and you don't go forward because you don't have

7  this signed.

8          So there's a mechanism in the rules for something

9  that one party finds confidential and the other does not.  You

08:29:02AM 10  can submit it on an expedited basis and I'll give you an

11  expedited ruling.

12          What's the next issue with regard to the protective

13  order?

14          **MR. CHARNEY:** So it actually builds off your last

08:29:15AM 15  comment there, which is we had put some general language at

16  the end of the order which basically preserves both sides'

17  right to add additional categories of confidential information

18  as well as for, you know, each side if they oppose such

19  additional designations to oppose those and then the party

08:29:38AM 20  seeking the designation would go to the Court.

21          So in other words, create -- trying to, you know,

22  put down in writing the process which you just articulated.

23  We thought this language was pretty standard in protective

24  orders and stipulations we've seen in other cases.  So we're,

08:30:07AM 25  frankly, a little bit confused as to why the defendants

1    wouldn't want such language in this agreement.

2              It would basically provide for a process to Your

3    Honor's point where if a party wants to designate another

4    category and the other side doesn't agree with it they would,

08:30:26AM 5    you know, meet-and-confer.  And if they can't agree, then the

6    party that's seeking the designation would go to the judge to

7    seek an order to declare it confidential.

8              So it seems pretty uncontroversial to us, but the

9    City was not willing to agree to that language here.

08:30:53AM 10             **THE COURT:** Let's here from defense counsel.

11             **MR. QUINN:** Your Honor, I think as you stated, are

12    correct.  I mean, there are mechanisms in place for when

13    someone thinks something is confidential.

14             This agreement changes those mechanisms and I just

08:31:15AM 15    don't think it should go that far.  I think there are things

16    that we can agree on and that should be it.  It should not

17    change what I or plaintiff has to do should other issues arise

18    in the future.

19             There are already mechanisms in place for that, and

08:31:34AM 20    I think this agreement does change it.  And that's the only

21    sticking point from our perspective.  I don't see why it needs

22    to happen.

23             **THE COURT:** Okay.  I don't see that it needs to be

24    in there because the Federal Rules of Civil Procedure provide

08:31:48AM 25    mechanisms for going to the Court and asking for a protective

20

1   order or withholding documents or other information based on

2   privilege, what's required and I'm happy enough to have that

3   be the Court's guiding post.

4           It doesn't sound to me like it's a real material

08:32:12AM 5  change because if you are seeking confidentiality and

6   non-production, you do have an obligation to go to the Court

7   and ask for a protective order.  You have an obligation to

8   meet-and-confer.

9           But I don't see that you should hold up the

08:32:30AM 10 protective order based on a clause that is adequately covered

11  by the Federal Rules of Civil Procedure.

12          Any other issues with the protective order?

13          **MR. CHARNEY:** No, I don't think so, Your Honor.

14          **MR. QUINN:** I don't think so either, Your Honor.

08:32:48AM 15  **THE COURT:** Okay.  You will be hearing from me in 60

16  days.  We'll be talking by telephone preferably, even though

17  that's not my preferred way of communication.  I will be just

18  checking in to see if the landscape has shifted in terms of

19  our working discovery schedule.

08:33:21AM 20         I'm happy to go bare-bones and you might tell me

21  that that's working out fine.  And if not, I want to be

22  proactive in getting a nailed down discovery schedule that has

23  a more case related approach to a case that looks to me like

24  it will be relatively complicated.

08:33:56AM 25         Anything else that we can address today?

1            **MR. CHARNEY:** I don't believe so.

2            **MS. WILNER:** No, Your Honor, not from the

3    plaintiffs.  Thank you.

4            **MR. QUINN:** Not at this time, Your Honor, thank you.

08:34:17AM 5            **THE COURT:** All right.  And then the last thing I

6    would say is in my cases I do not have a problem if you hit a

7    stumbling block for you to call me outside of a scheduled

8    conference.  So as long as both sides are on the phone, you

9    shouldn't hesitate to place that call.  We can sometimes

08:34:38AM 10   address issues much more quickly and less expensively than

11   having people file motions.

12           So if that happens, the invitation stands and I'd

13   be happy to talk to you by telephone.  We'll probably record

14   it here or do it with the Western District of New York with a

08:35:24AM 15   court -- court reporter, but if you want to have a chambers

16   conference, let me know as well.

17           All right, I thank you and I look forward to

18   working with you on this interesting case further.

19           **MR. CHARNEY:** Thank you, Judge.

08:35:40AM 20           **MS. WILNER:** Thank you, Your Honor.

21           **MR. QUINN:** Thank you, Your Honor.

22           (**WHEREUPON**, proceedings adjourned at 3:28 p.m.)

23                        *    *    *

24

25

1

### CERTIFICATE OF TRANSCRIBER

2

3          In accordance with 28, U.S.C., 753(b), I certify that

4   this is a true and correct record of proceedings from the

5   official electronic sound recording of the proceedings in the

6   United States District Court for the Western District of New

7   York before the Honorable Christina Clair Reiss on October

8   9th, 2018.

9

10  S/ Christi A. Macri

11  Christi A. Macri, FAPR-CRR
    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25