1

```
 1                UNITED STATES DISTRICT COURT

 2                WESTERN DISTRICT OF NEW YORK

 3

 4  - - - - - - - - - - - - - - - - -X
    BLACK LOVE RESISTS IN THE RUST, by          18-CV-719(CCR)
 5  and through its co-directors Natasha
    Soto and Shaketa Redden and on
 6  behalf of its members agent Just
    Resisting; Dorethea Franklin; Taniqua
 7  Simmons; De'Jon Hall; and Jane Doe,
    individually and on behalf of a class
 8  Of others similarly situated,
                        Plaintiffs
 9  vs.
                                                Buffalo, New York
10  CITY OF BUFFALO, NY; BYRON B. BROWN,        December 21, 2018
    Mayor of the City of Buffalo, in his        11:02 a.m.
11  individual and official capacities;
    BYRON C. LOCKWOOD, Commissioner of the
12  Buffalo Police Department, in his
    individual capacity; DANIEL DERENDA,
13  former Commissioner of the Buffalo
    Police Department, in his individual
14  capacity; AARON YOUNG, officer of the
    Buffalo Police Department, in his
15  individual capacity; KEVIN BRINKWORTH,
    PHILIP SERAFINI, officer of the Buffalo
16  Police Department, in his individual
    capacity; UNKNOWN SUPERVISORY PERSONNEL
17  1-10, officers of the Buffalo Police
    Department, in their individual capacities;
18  and UNKNOWN OFFICERS 1-20, officers of the
    Buffalo Police Department, in their
19  individual capacities,
                        Defendants.
20  - - - - - - - - - - - - - - - - - X

21
              TRANSCRIPT OF TELEPHONE CONFERENCE
22         BEFORE THE HONORABLE CHRISTINA CLAIR REISS
                  UNITED STATES DISTRICT JUDGE
23

24

25
```

```
 1                    A P P E A R A N C E S

 2


 3
   CENTER FOR CONSITITONAL RIGHTS
 4 BY: CLADIA WILNER, ESQ.
       DARIUS CHARNEY, ESQ.
 5     ANJANA MALHOTRA, ESQ.
       BRITTNEY WILSON, ESQ.
 6 666 Broadway, Floor 7
   New York, New York 10012
 7          - and -
   NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
 8 BY: TRAVIS W. ENGLAND, ESQ.
   275 7th Avenue, Suite 1506
 9 New York, New York 10001
   Appearing on behalf of the Plaintiffs
10


11


12 CITY OF BUFFALO DEPARTMENT OF LAW
   BY: ROBERT M. QUINN, ESQ.
13 65 Niagara Square
   Buffalo, New York 14202
14 Appearing on behalf of the Defendants

15


16 AUDIO RECORDER:      Jane Kellogg

17
   TRANSCRIBER:         Christi A. Macri, FAPR-CRR
18                      Kenneth B. Keating Federal Building
                        100 State Street, Room 2120
19                      Rochester, New York 14614

20


21


22 (Proceedings recorded by electronic sound recording,
   transcript produced by computer).
23

24

25
```

```
 1                    P R O C E E D I N G S
 2                         *    *    *
 3              THE COURT: Good morning, this is Judge Reiss.
 4              THE CLERK: Good morning, Judge Reiss.  This is Jane
 5    Kellogg.  Would you like me to call the case?
 6              THE COURT: Yes, please.
 7              THE CLERK: Your Honor, we're here in the matter of
 8    Black Love Resists, et al., vs. The City of Buffalo, et al.,
 9    Docket No. 18-CV-719.
10              All the attorneys are present on -- via the
11    telephone, so if we could have each attorney please state your
12    name and the party you represent for the record, and we'll the
13    start with the plaintiffs' attorneys.
14              MS. WILNER: This is Claudia Wilner from the
15    National Center for Law and Economic Justice for the
16    plaintiffs.
17              MR. ENGLAND: This is Travis England with the
18    National Center for Law and Economic Justice for the
19    plaintiffs.
20              MS. WILSON: This is Brittney Wilson with the
21    National Center for Law and Economic Justice for the
22    plaintiffs.
23              MR. CHARNEY: Good morning, Your Honor.  This is
24    Darius Charney from the Center for Constitutional Rights also
25    for the plaintiffs.
```

|   |   |
|---|---|
| 1 | **MS. EZIE:** And hello.  This is Andrea Chinyere Ezie |
| 2 | from the Center for Constitutional Rights for the plaintiffs. |
| 3 | **MS. MALHOTRA:** Anjana Malhotra from the Center for |
| 4 | Constitutional Rights for the plaintiffs. |
| 08:47:23AM 5 | **MR. QUINN:** This is Robert Quinn on behalf of the |
| 6 | defendants. |
| 7 | **THE COURT:** Okay.  So what I'd like to ask is that |
| 8 | (distorted audio) each time you speak you identify yourself |
| 9 | (distorted audio) spokesperson for the plaintiffs, let me |
| 08:48:45AM 10 | know.  It's really hard to do these on the telephone, but it |
| 11 | does not make sense to have you all come in during this busy |
| 12 | time. |
| 13 | So I do know last time we talked I told you I was |
| 14 | going to keep an eye on what was going on with regard to |
| 08:49:11AM 15 | discovery.  You advised me that you thought that you needed a |
| 16 | lot of discovery before class certification. |
| 17 | And so I'm checking on this now to determine how |
| 18 | that is going and I'm going to start with the spokesperson |
| 19 | from the plaintiffs. |
| 08:49:33AM 20 | **MS. WILNER:** Thank you, Your Honor.  This is Claudia |
| 21 | Wilner with the National Center for Law and Economic Justice. |
| 22 | The plaintiffs served discovery requests on the |
| 23 | defendants.  As Your Honor suggested and we spoke about last |
| 24 | time, our requests were very much focused on the information |
| 08:49:56AM 25 | that we need to develop in order to get our class certified. |

1                We are very disappointed in what we have received
2   so far from the defendants.  We have had several
3   meet-and-confer by telephone with the defendants.  My
4   understanding is that they do -- their searches are ongoing
08:50:30AM 5   and they do intend to continue production.  So far the
6   production has been extremely minimal and has not included any
7   ESI materials at all.
8                But we've also identified some areas of -- I'll say
9   disagreement in terms of the scope of our requests, certain
08:51:30AM 10  information that we're entitled to.  And so we were hoping
11  that we might be able to clarify some of those disputes today.
12               And the only other thing I guess I'd say is
13  that our requests were fairly broad and we're expecting
14  that -- that the process will be staged, and so the fact that
08:52:02AM 15  we're not waiving things in the early initial call doesn't
16  mean that there aren't other issues that we may not need to
17  raise down the line.
18               **THE COURT:** Let me hear from -- do we need any other
19  spokesperson for the plaintiffs?
08:52:34AM 20           **MS. WILNER:** I expect that for some of the issues we
21  want to discuss Darius Charney from the Center for
22  Constitutional Rights will also speak.
23               **THE COURT:** All right.  Let's check with the
24  defendant about the status on that issue.
08:53:22AM 25           **MR. QUINN:** So the discovery requests were served --

1           **THE COURT:** This is who?
2           **MR. QUINN:** This is Robert Quinn on behalf of
3 defendants.  Sorry, Judge, I'm the only one here.
4           The -- the discovery requests were served on
5 November 4th or 5th.  We responded in a timely manner on
6 December 5th.  We responded with thousands of pages of
7 documents.  We did so in an attempt to keep things moving as
8 opposed to ask for an extension of time.
9           The discovery requests, as the Court I believe
10 would imagine, are wide-ranging, extensive and basically
11 asking for a huge amount of documents.
12          We previously indicated and I thought this was the
13 understanding, I might be mistaken given the plaintiffs'
14 indication that they are somehow disappointed, that this would
15 be part of an ongoing, sort of a rolling discovery response,
16 like I said, as opposed to just asking for continuous
17 extensions of time, but to try to get things moving.
18          I did that, as I said, in a timely manner.  We
19 produced a large volume of documents.  We've had two
20 meet-and-confers since then where numerous things have been
21 discussed.  At each time for some reason the plaintiffs have
22 five or six attorneys on the phone as they do here.
23          In an attempt to move things forward I indicated
24 that discovery responses will continue.  I've tried to work
25 through any types of issues that the -- that the plaintiffs

```
 1  have raised, and we continue to look for documents.
 2            But given who we are, what is being asked for, this
 3  is going to take some time.  I don't think we're being in any
 4  way, shape or form unreasonable.  I think we've gone above and
 5  beyond in trying to get this moving.
 6            I can't think of another defense firm that wouldn't
 7  have asked for more time given the responses that were there.
 8  So we disagree.  With that said, I don't mean this to be
 9  argumentative.  We are trying to work through this and I
10  expect that, you know, I'm hopeful that we will be able to do
11  that.
12            THE COURT:  Okay.  (Distorted audio) ambush for both
13  the Court and defendant to adjudicate discovery disputes at
14  this point in time.  So the way -- I currently have an
15  (distorted audio) anti-trust case and the way it is proceeding
16  is working well for us and (distorted audio) meet-and-confer
17  will narrow the issues that need my involvement.  I -- you
18  (distorted audio) send me a letter (distorted audio) this is
19  what I need, this is what I'm not getting, and I will set up a
20  telephone conference or a video conference and say yes, no,
21  yes, no and we can bypass the whole motion to compel process
22  that way.
23            If you get down to a motion to compel, we don't
24  have them in the District of Vermont, but I won't hesitate if
25  I see wholesale (distorted audio) non-compliance or sizable
```

```
           1  attorneys fees (distorted audio).  Likewise if the requests
           2  are, you know, ridiculously broad and will put anybody to an
           3  undue burden (distorted audio) I know it when we see it
           4  because we just don't have this kind of disputes on an
09:00:50AM 5  ordinary basis.
           6           So the smart money is on really narrowing the
           7  disputes for something that you can't possibly resolve on your
           8  own (distorted audio).  So I expect you to oblige the rules
           9  and meet-and-confer in a (distorted audio) basis to bypass
09:01:37AM10  that process and my understanding from what I'm (distorted
          11  audio) from both of you is that you haven't reached that
          12  (distorted audio).
          13           So I'm kind of diametrically opposed to what
          14  development that (distorted audio) has happened so far
09:02:49AM15  (distorted audio) with that guidance you couldn't go forward
          16  and say two weeks to 30 days you bring back to me anything you
          17  can't resolve.
          18           MS. WILNER: That sounds like a reasonable process
          19  to us , Your Honor.
09:03:37AM20           THE COURT: (Distorted audio). This is Ms. Wilner?
          21           MS. WILNER: Yes, I apologize.  This is Claudia
          22  Wilner.  And, yes, that timeframe sounds reasonable to us.
          23           I will say, if I may, that the thousands of pages
          24  consisted of information that was previously provided to us
09:04:05AM25  under the Freedom of Information Law as well as the rules and
```

```
 1  regulations of the police department and the content -- a
 2  single contract.  So although it may have been thousands of
 3  pages, much of it was information that we already had.
 4              THE COURT: But did the defendants know that?
 5              UNIDENTIFIED SPEAKER: Yes.
 6              MS. WILNER: Yes, they (indiscernible) that same
 7  information to us previously under the Freedom of Information
 8  Law.
 9              THE COURT: Okay.
10              MR. QUINN: Which is why it was available and able
11  to be produced in the time period given the scope of it.
12              THE COURT: And is this Mr. Quinn?
13              MR. QUINN: It is.  I'm sorry, Judge.
14              THE COURT: Okay.  Mr. Quinn, do you think that you
15  can meet-and-confer and then get back to me with (distorted
16  audio) disputes?
17              MR. QUINN: I do.  I think that is the reasonable
18  approach.  I think -- I don't think we're actually that far
19  off.  A lot of these sort of, you know, quote/unquote,
20  disputes have to do with breadth and burden and things like
21  that.
22              And on my end I'm still sort of working through
23  exactly what it takes to find all of this information.  So I
24  think it does make sense to meet-and-confer and then report
25  back.
```

                    **THE COURT:** Okay.  All right.  So what I'm going to do is I'm going to let you meet-and-confer.  I am going to wait until you contact me and then we're going to arrange a telephone call from (distorted audio) maybe something in person after I see the magnitude of the dispute.

                    So what my other (distorted audio) sending me a three-page letter describing what they think is the problem, they might have some exhibits.  Please do not send me 5,000 pages of exhibits (distorted audio) it's a recent trend and sometimes people are submitting disk drives.  That is not going to be helpful.  So narrow the dispute, show me what you need me to see to adjudicate it and we'll go from there, okay?

                    **MR. CHARNEY:** Your Honor, this is Mr. Charney.  Just one clarifying question, if I may?  So would each side submit separate letters or is your expectation some sort of joint submission where each side kind of lays out its position?

                    **THE COURT:** I am not so unreasonable to expect a joint submission (distorted audio).  That would be expecting too much.  So separate letters is fine.

                    **MR. CHARNEY:** Thank you, Your Honor.

                    **THE COURT:** All right.  Then that's our plan forward (distorted audio) and I will hear from you first and then you will hear from me.

                    **MR. CHARNEY:** Thank you, Your Honor.

                    **THE COURT:** Anything further?

```
 1              MR. CHARNEY:  I don't believe so.
 2              MR. QUINN:  Not on behalf of the defendants at this
 3   time, Your Honor.
 4              THE COURT:  Okay.  Happy holidays to all of you.
 5              MR. CHARNEY:  You as well, Your Honor.
 6              THE COURT:  Thank you.
 7              (WHEREUPON, proceedings adjourned at 11:13 a.m.)
 8                              *    *    *
 9
10                     CERTIFICATE OF TRANSCRIBER
11
12         In accordance with 28, U.S.C., 753(b), I certify that
13   this is a true and correct record of proceedings from the
14   official electronic sound recording of the proceedings in the
15   United States District Court for the Western District of New
16   York before the Honorable Christina Clair Reiss on December
17   21st, 2018.
18
19   S/ Christi A. Macri
20   Christi A. Macri, FAPR-CRR
     Official Court Reporter
```