1

1          UNITED STATES DISTRICT COURT

2         WESTERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - - - - - -X
    BLACK LOVE RESISTS IN THE RUST, by          18-CV-719(CCR)
5   and through its co-directors Natasha
    Soto and Shaketa Redden and on
6   behalf of its members agent Just
    Resisting; Dorethea Franklin; Taniqua
7   Simmons; De'Jon Hall; and Jane Doe,
    individually and on behalf of a class
8   Of others similarly situated,
                       Plaintiffs
9   vs.
                                                 Buffalo, New York
10  CITY OF BUFFALO, NY; BYRON B. BROWN,         May 30, 2019
    Mayor of the City of Buffalo, in his        3:30 p.m.
11  individual and official capacities;
    BYRON C. LOCKWOOD, Commissioner of the
12  Buffalo Police Department, in his
    individual capacity; DANIEL DERENDA,
13  former Commissioner of the Buffalo
    Police Department, in his individual
14  capacity; AARON YOUNG, officer of the
    Buffalo Police Department, in his
15  individual capacity; KEVIN BRINKWORTH,
    PHILIP SERAFINI, officer of the Buffalo
16  Police Department, in his individual
    capacity; UNKNOWN SUPERVISORY PERSONNEL
17  1-10, officers of the Buffalo Police
    Department, in their individual capacities;
18  and UNKNOWN OFFICERS 1-20, officers of the
    Buffalo Police Department, in their
19  individual capacities,
                       Defendants.
20  - - - - - - - - - - - - - - - - - - X

21

            TRANSCRIPT OF TELEPHONE CONFERENCE
22        BEFORE THE HONORABLE CHRISTINA CLAIR REISS
              UNITED STATES DISTRICT JUDGE
23

24

25

1                        **A P P E A R A N C E S**

2

3

CENTER FOR CONSITITONAL RIGHTS
4  BY: CLAUDIA WILNER, ESQ.
         DARIUS CHARNEY, ESQ.
5        ANJANA MALHOTRA, ESQ.
   666 Broadway, Floor 7
6  New York, New York 10012
   Appearing on behalf of the Plaintiffs
7

8

9  CITY OF BUFFALO DEPARTMENT OF LAW
   BY: ROBERT M. QUINN, ESQ.
10 65 Niagara Square
   Buffalo, New York 14202
11 Appearing on behalf of the Defendants

12

13 AUDIO RECORDER:    Jane Kellogg

14
   TRANSCRIBER:       Christi A. Macri, FAPR-RMR-CRR
15                    Kenneth B. Keating Federal Building
                      100 State Street, Room 2120
16                    Rochester, New York 14614

17

18

19 (Proceedings recorded by electronic sound recording,
   transcript produced by computer).
20

21

22

23

24

25

1          **P R O C E E D I N G S**

2                        *    *    *

3          **THE CLERK:** Your Honor, we're here in the matter of

4  Black Love Resists, et al. vs. The City of Buffalo, et al.,

5  Docket No. 18-CV-719.  This matter is on for a status

6  conference.

7          Counsel, please state your name and the party you

8  represent for the record, and we'll start with the plaintiffs.

9          **MS. WILNER:** This is Claudia Wilner from the

10  National Center for Law and Economic Justice for the

11  plaintiffs.

12          **MR. CHARNEY:** This is Darius Charney and (inaudible)

13  Center for Constitutional Rights also for the plaintiffs.

14          **MS. MALHOTRA:** And this is Anjana Malhotra also

15  cooperating counsel from the Center for Constitutional Rights

16  for the plaintiffs.

17          **MR. QUINN:** And this is Robert Quinn on behalf of

18  the defendants.

19          **THE COURT:** Good afternoon.  It would be helpful --

20  this is Judge Reiss -- if each time you speak you announce who

21  you are.  The phone is not my favorite way of doing things --

22  it's my least favorite way, but it's the easiest way to get

23  people together quickly.

24          As you know, the plaintiffs have filed a document

25  24, which is a letter summarizing outstanding discovery

1  disputes.  To the extent that the plaintiffs wanted it to be

2  treated as a motion to compel, we directed them to file it as

3  a motion.  It's quite extensive, so it's a little bit beyond

4  what I was contemplating when I said that if you ran into

5  trouble you could send me competing letters.

6          We haven't been able to -- because it was just

7  filed on the 29th, the defendant hasn't had an opportunity to

8  respond.  So there's only going to be so much we can

9  accomplish in this status conference, but I do want to have a

10  path going forward because these issues were raised at our

11  last status conference.

12          You thought you could work them out, and it looks

13  to me like we have numerous outstanding discovery issues

14  pertaining primarily to ESI and no path forward.  Now, I've

15  only seen one side of the dispute, so I might be wrong about

16  all of that.

17          So I'm going to start with the defendant.

18          **MR. QUINN:** Yes, Your Honor.  We have had

19  multiple --

20          **THE COURT:** So remember announce yourself if you

21  would?

22          **MR. QUINN:** I apologize, this is Robert Quinn on

23  behalf of the defendants and I'm the only one on behalf of

24  defendants, but I will try to announce myself.

25          So following the last conference we have had

1    multiple meet-and-confers, we had multiple discussions.

2    The -- what I view as the biggest problem that we're sort of

3    trying to get through and work through is just the sheer scope

4    and size of the requests, particularly on the ESI.

5              And I think when we're talking about ESI now we're

6    largely talking about e-mails.  It does extend a little bit

7    beyond that, but just so the Court knows, there have been

8    multiple subpoenas issued to various entities who have

9    produced ESI-type information; large, large responses of

10   information regarding any number of these requests.

11             But what we're talking about now I think is largely

12   related to e-mails and the problem that the defendants have

13   encountered is just the size of it.  So we did recently talk

14   about, you know, how many custodians they were looking for,

15   the terms that were going to be used for searches; and it's

16   136 custodians that have been identified and 85 numbered

17   requests, which include multiple different search terms that

18   they want to search.

19             And we just after, you know, extensive review and

20   looking into it, we just didn't have the capacity to do that.

21   So I have reached out to see if we could have some, you know,

22   other entity help us with this.

23             We haven't accomplished it yet and we are still

24   trying to work through these things, but that is really the

25   biggest issue on the ESI that we've encountered.  Once you get

1  sort of past that you do have to dial down into what

2  information they're entitled to, whether or not they are

3  entitled to search 136 custodians' e-mail accounts and whether

4  or not they've made that showing.  Those are things we would

5  have to address, whether or not they need to search 85

6  numbered terms and those specific terms that are in there.

7          But that's the big issue on ESI that the defendants

8  have encountered and that is the reason for any delay at this

9  point.

10         I have conveyed all of this to plaintiffs' counsel

11 and we have tried to work through it, but that is sort of the

12 hang up from our perspective on that.

13         **THE COURT:** All right. Let's hear from the

14 plaintiffs and please announce yourself.

15         **MS. WILNER:** Yes, this is Claudia Wilner for the

16 plaintiffs.  And I do think it's true that they have had some

17 technological limitations on their side.

18         However, we have attempted to confer on ESI with

19 them starting from when we first served our first requests and

20 have really just been met with a lot of delay and we'll get to

21 it, we'll get to it and it wasn't until only last -- in April

22 that the defendants even articulated that they were going to

23 have difficulty searching for e-mails.

24         And it -- and the search terms is another example.

25 We've provided a list of proposed custodians and search terms

1  to the defendants on May 9th, which was -- looks like getting

2  on three weeks ago.  We asked defendants to confer on those

3  terms.  They have not done so.

4        We would talk to them -- be willing to talk to them

5  about, you know, custodians and terms, but they have not been

6  willing to engage in that conversation.  We've asked to speak

7  to their vendor about search capabilities and, honestly, 138

8  custodians, if you're working with modern, you know, material

9  is not hard for them to search through, you know, that amount.

10  I don't think it's an usually large number.

11        So -- so that's where we are, we're about six

12  months into discovery.  We haven't received a single e-mail or

13  any kind of internal communication, no press release, no draft

14  documents, no internal memos, nothing that would show the

15  policies, the practices of the Buffalo Police Department's

16  policing programs.

17        **THE COURT:** All right.  So I've had this come up in

18  other cases and one of the things that I have found successful

19  in getting the ball rolling, so I would usually direct one

20  side, the plaintiffs, to pick 20 custodians and 20 search

21  terms most important to you, and then I would require the

22  defendant, because it's such a narrowed inquiry, to get right

23  to it.  So a response coming out in a much shorter time than

24  you would otherwise be allotted.

25        And then we kind of do a rolling production because

1    it -- you can't really, as you well know, test the breadth of

2    the search term until you've actually put it into a request

3    and see how many documents you get back.

4              And my guess is there might be 136 custodians, but

5    there are certain custodians that are more important than

6    others and there are certain search terms that are more

7    important than others and as opposed to taking it on a

8    document-by-document request in terms of you've asked for this

9    and we're gonna use it that way, even if we can get a rolling

10   production under way.

11             Is there any reason why that approach would not

12   work in this case?  And let me start with the plaintiffs.

13             **MS. WILNER:** That approach sounds great to us, Your

14   Honor.

15             **THE COURT:** Okay.  And any reason why that won't

16   work from defense counsel's perspective?

17             **MR. QUINN:** Not that I can see, Your Honor.  We have

18   explored any number of technological, you know, hang ups and I

19   think we've worked through most of them at this point.  So I

20   don't see any issues.

21             **THE COURT:** Okay.  So the way it's going to work is

22   the plaintiffs are going to pick 20 custodians, 20 terms and

23   the defendants are going to have two weeks to make a

24   production that's responsive to that.  If you are getting, you

25   know, 50,000 hits that's obviously not going to be a good

1  search term, but I want to see some good faith, you know,

2  you're going to be able to see what's working and what's not

3  working and that will help us narrow the scope of the ESI for

4  less important custodians.

5           And then we're going to come back in 90 days and

6  see how that's going.  If things have gone off the rails

7  between now and then, we'll have another status conference,

8  but we're going to see if we can get this under way.

9           Any reason why that approach will not work?

10          **MR. QUINN:** Robert Quinn.  No issues from our end,

11  Your Honor.

12          **THE COURT:** How about from the plaintiffs?

13          **MS. WILNER:** I think that will work for us, Your

14  Honor.

15          **THE COURT:** Okay.  So 20 search terms, 20

16  custodians, two weeks for defendants' response.  We're going

17  to come back in 90 days for a status conference to see how

18  this is working.  And I'm not going to --

19          **UNIDENTIFIED SPEAKER:** (Indiscernible).

20          **THE COURT:** -- I'm now hearing an echo, but I'm not

21  going to treat your May 28th, 2019 submission as a motion to

22  compel at this time.

23          So I would rather the defendants get on the

24  bandwagon of producing documents.  It doesn't mean that it

25  cannot be converted to a motion to compel thereafter, but I

1 would have to wait for a response and everything.

2          Does that work as well for the plaintiffs?

3          **MS. WILNER:** It does, although there were a few

4 issues -- and we didn't file this necessarily intending it to

5 be a motion to compel, but there were a few issues that we

6 raised in the letter that are issues that we've discussed many

7 times in the meet-and-confers with defendants where some

8 guidance from the Court might be helpful at the outset.

9          **THE COURT:** Like the issue of citizens complaints?

10          **MS. WILNER:** Yes.

11          **MR. CHARNEY:** Yes.

12          **THE COURT:** Yeah, I don't see how that would not be

13 within the scope of discovery.  You're going to have to tell

14 me why, especially in the nature of this action, the

15 defendants would say consumer complaints or citizens

16 complaints are not going to be within the scope of production.

17          **MR. QUINN:** We have not, Your Honor.  This is Robert

18 Quinn on behalf of the City.

19          The problem as with the ESI with the citizen

20 complaints, and we have discussed this at length, is just the

21 search capacity to do that.  So as identified in the

22 plaintiffs' letter there's sort of two avenues in which these

23 complaints generally can be received and the ones identified

24 are through Internal Affairs or through the 311 complaint

25 system.

1          Now, I have undertaken extensive, you know,

2 investigation into these things and the problem that I've run

3 into is just there is no box or, you know, specific place

4 where a complaint about this type of issue would go.  So there

5 would be some type of search necessary.

6          Regarding the Internal Affairs complaints, we've

7 looked into the Internal Affairs complaints for the time

8 period at issue and there are approximately 6,000 of them.

9          Within that 6,000, approximately 6,000

10 Internal Affairs files, there's any number of things which

11 have nothing to do with this issue.  There's lots of car

12 accidents, there's internal things, various things that have

13 nothing to do with this.

14          There's a program which we've identified in our

15 discovery responses and we've talked at length with

16 plaintiffs' counsel called IAPro.  IAPro, which you can search

17 by key word term, but as I indicated to plaintiffs' counsel in

18 an e-mail of -- I think it was March 31st, searching through

19 there is difficult because if you search something like

20 traffic, you get any number of responses which don't have

21 anything to do with actual traffic ; they can refer to drug

22 traffic or things like that.

23          So we were having difficulty identifying the

24 specific complaints related to the allegations in the

25 plaintiffs' complaint.  There's sort of a separate subsection

1   in that they're looking for complaints related to broadly

2   speaking constitutional violations, which is kind of difficult

3   to interpret.

4          So what I proposed to the plaintiffs is to try to

5   sort of narrow it down through the use of the IAPro system and

6   then we could go through the actual files to see if they were

7   responsive.

8          Where we sort of got hung up and we do have

9   potentially a 50(a) issue somewhere in the future, that's not

10  the particular argument that we're raising, where we got hung

11  up is how we go about doing that, how we go about specifically

12  identifying the potentially responsive complaints in the

13  Internal Affairs Department.

14         And, you know, I think we can work through this and

15  I hope that we would be able to work through this.  We have

16  not been able to do that yet.

17         With regards to the -- and maybe if you want to

18  address that first because there is sort of the separate 311

19  issue, which is a little bit different.

20         **THE COURT:** All right.  So why would not the same

21  approach of the plaintiffs pick their ten best terms, I think

22  of some while I'm sitting here, and they apply those ten best

23  terms to your system? If they're not pulling up things, that's

24  on them because they haven't picked the best terms.

25         If traffic is one of their terms and it produces

1  6,000 responses, that's not going to help anybody.  So why

2  can't we run the same kind of system with this system?

3          **MR. CHARNEY:** Your Honor, this is Darius Charney for

4  the plaintiffs.

5          I think that makes sense.  I guess just so that

6  we're clear, because I want to understand the process, if Mr.

7  Quinn does the search and let's say, I don't know, 700 or 800

8  complaints come back, I guess what we want to make sure is

9  that we're going to get the complaints that are actually

10 responsive.

11         And so I -- I was trying to figure out would the

12 process then involve at some point an actual review of the

13 complaints themselves to differentiate between those that are

14 not responsive and those that are?

15         Because we need -- Mr. Quinn is correct, we had

16 these discussions and we discussed a process similar to what

17 you're articulating now, but Mr. Quinn also expressed to us

18 that he didn't want to be put in a position of having to go

19 through the complaints by hand, but then at the same time he

20 did, you know, to his credit, I think he was honest about the

21 fact that you may have to go through some of these by hand to

22 really figure out what they're -- what they're about, what the

23 subject matter is.

24         And so I -- I want to -- I want to make sure

25 that that -- that that kind of second layer of review is going

1  to happen so that we are getting the -- those complaints that

2  are responsive to our request.

3          And, you know, we don't want to have to come back

4  three weeks again and say, well, you know, we're still kind of

5  fighting over what number is too big and what number is

6  reasonable to have to go through and so --

7          **THE COURT:** All right.  So I'll throw you a

8  ballpark, say you -- your search term is civil rights and it

9  pulls up 200 complaints.  I would expect 200 complaints to be

10 reviewed.

11         I would not expect 500, I would not expect 2,000.

12 Then we're going to have to narrow it down and I'm sure you've

13 been to ESI seminars as I have, it's going to be imperfect.

14 It's just the way it is.

15         And the goal is to come at it enough different ways

16 that you're going to get, you know, 200 for civil rights, but

17 if you type in a particular officer's name and you get five,

18 you're going to be -- between the two of those search methods

19 you're going to hit on something.

20         So I will have proportionality in mind and I do not

21 expect Mr. Quinn or his client to be reviewing 2,000

22 documents.

23         **MR. CHARNEY:** Got it.

24         **THE COURT:** With regard to the redactions, I'm

25 happy -- there's a privilege log requirement under the Federal

1   Rules of Civil Procedure.  I'm happy to do your *in camera*

2   inspection as long as you're reasonable with what you're

3   asking me to do, but I will be -- you know, that's the best

4   way to handle it.

5           If there's a claim of privilege and you have to

6   have a privilege log and enough in the privilege log for the

7   person asserting the privilege to explain kind of baseline why

8   it might apply so the other person can challenge it, I'm happy

9   to do -- I shouldn't say "happy," that's an overstatement -- I

10  will do an *in camera* inspection and have done it many times.

11  I've got it in an anti-trust case right now.

12          So that will resolve the redaction problem and

13  there's an incentive for Mr. Quinn not to overredact because I

14  will be looking for a privilege log which takes a lot of work.

15          Let's talk about the 311 -- is that what it's

16  called -- system?

17          **MR. QUINN:** Robert Quinn on behalf of the

18  defendants.  It's the 311 mayor's complaint line I think is

19  the formal title, but 311 is the phone number that is called.

20          So what I think the primary issue in this sort of

21  discovery issue is, is prior to this lawsuit there was a FOIA

22  request made by National Center for Law and Economic Justice

23  and they asked all 311 complaints pertaining to police -- I

24  don't know exactly what their request was, but generally

25  relating to police issues.

1          And what was produced was a document that was

2   created by the 311 system which contained 6,051 entries.  Now,

3   these entries were all taken from a queue, a particular type

4   of entry that just generally relates to -- I'm sorry, I was

5   looking at the wrong -- I was looking at the wrong number.

6          The actual number of 311 responses was 14,763.  And

7   they relate, generally speaking, to the Buffalo Police

8   Department.  Within that are various types of issues: Quality

9   of life issues, requests for police services, you know,

10  compliments, all kinds of things that could be contained

11  within this document that was prepared, created and produced

12  in response to this FOIA request.

13         There were -- there is information in the 311

14  system that was not produced, things like a person's -- the

15  complainant's -- the person making the call -- personal

16  information, phone numbers, things like that.

17         And there's also a complaint data field.  Now, the

18  complaint data field is, generally speaking, searchable as it

19  exists in the system, but what was produced and created as

20  part of this FOIA response contains everything, all the

21  complaints, not just related to specific issues.

22         And we would run into sort of that same -- the same

23  problem of having to do the search to find ones that are

24  responsive and then you would have to deal with the personal

25  information that might be contained within those responses.

1          Now, I don't want to speak for plaintiffs' counsel,

2     but they've taken the position that this -- this -- this --

3     this document is a document that has to be produced in its

4     entirety, where I would say that it was something that was

5     created in response to a FOIA response and, therefore, it is

6     not really a document; it's just a collection of information

7     that was taken and all of this stuff is not -- most of it is

8     not in any way responsive to the plaintiffs' demand or

9     relevant to the issues in this complaint.

10         **THE COURT:** So if the document exists, it's already

11    been produced in response to FOIA, what's -- what's the

12    rational purpose of not producing the document?  And then they

13    can go through it and they can hone their -- they have no

14    interest and no benefit in I think the police are doing a

15    great job and the water tastes great complaints, but it's up

16    to them to then go through the document and decide where they

17    want to fix their interest.

18         If you've already produced it in this particular

19    form, I don't see any basis for claiming it's privileged,

20    though, I hear your objection being noted.  What's the hold

21    up?

22         **MR. QUINN:** The entire document was not produced.

23         **THE COURT:** Okay.

24         **MR. QUINN:** The only thing that was produced was a

25    portion of it.  So the complaint data field was not produced;

1  the personal information of the complainant was not produced.

2  So that information was not produced.

3          I would say -- and plaintiff talks about a -- a --

4  some type of a protective order, something like that.  I don't

5  think I can turn over this information, this personal

6  information of people who are not parties to this lawsuit

7  without potentially subjecting myself to some type of, you

8  know, complaints about this.

9          **THE COURT:** Okay.  Well, we probably do need a

10  protective order.

11          Let me turn to plaintiffs and ask, you have this

12  document, you have information in it to allow you to narrow

13  your search.  So I think in some cases a person's name and the

14  location where the event occurred and the police officer's

15  identification will be important, but not everybody in the

16  database.

17          Why don't you have enough information to sort of

18  narrow your inquiry?

19          **MS. WILNER:** This is Claudia Wilner, Your Honor.

20  And an example of what was produced to us was actually filed

21  as Exhibit 3 and it might be helpful for the Court to take a

22  look at that.

23          So this is a copy of the complaint to 311 that

24  related to police issues.  So this is already a great -- a

25  huge narrowing of all the possible complaints that there could

1  be in the 311 database, which would cover everything related

2  to the City of Buffalo.  These are just the police related

3  complaints.

4          And as you can see, you can't see any of what

5  they're about because the most detail it gets into is if it's

6  police issue or quality of life issue.

7          And there is another field which was suppressed

8  which is -- contains free form data entry which is the notes

9  of what the complaint was about.  And that is the field that

10  we requested be produced.

11          And, you know, and I don't --

12          **THE COURT:** So (talking at the same time) --

13          **MS. WILNER:** (Talking at the same time).

14          **THE COURT:** -- let's stay on just that particular

15  issue.  Why can't the nature of the complaint be produced?

16  Because I'm looking at it and I assume some of the

17  intersections mentioned will be ones in which the plaintiffs

18  have some interest, but since your categories are requests for

19  police services, BPD police issues and quality of life issues,

20  there's really not much ability to narrow it.

21          Why aren't you producing the nature of the

22  complaint?

23          **MR. QUINN:** So -- and when you say "the nature of

24  the complaint ," Your Honor, I assume you're referring to the

25  complaint data field?  Like that's the free form entry.

1          **THE COURT:** Yes.

2          **MR. QUINN:** So what they do with that is someone

3     calls and they type in what the complaint is.  So in that

4     data -- I'm just reading from a few now -- there's one that

5     says hoop at curb.  So they're referring to a basketball hoop

6     at curb.  Obviously we'd argue that that's not relevant.

7          Some of the other ones are they're selling drugs

8     here.  It just says they are selling drugs here.  Some of the

9     others are residents downstairs are chaotic.  We would say

10    that stuff is not relevant, it's not responsive to any

11    document requests and it shouldn't be produced.

12         Beyond that then and because, you know, the Court

13    might say, well, why don't you just turn it over, what's the

14    harm?  Within that -- within these 14,000 entries there are

15    things like John Doe at such and such address is selling drugs

16    or this person did this to me.  The concern there would be

17    that this is information that really should not be turned

18    over.

19         I don't know if it's true or if it's not true, if

20    it's problematic in that it's not something that is responsive

21    and it's not something that should be produced that I would

22    say to some other party when it's not relevant to the lawsuit.

23         **THE COURT:** How are you going to -- how are you

24    going to segregate out that?  Because I understand, you know,

25    they need to be able to narrow it, you want to protect those

1 | people.  What can you do to make that happen?

2 |     **MR. QUINN:** What I propose would be the same thing

3 | for the Internal Affairs, whether it be a key word search of

4 | some kind proposed, you know, 20 terms; if they are

5 | responsive, say all that information within that, then I can

6 | provide the complaint data field for that information.

7 |     I guess then the next step would be whether or not

8 | the -- the location of the complainant, whether or not that

9 | stuff would be -- would be responsive and discoverable, but I

10 | think one way to do it would be to provide search terms, I'll

11 | provide those -- the hits for that, and then we can talk about

12 | whether or not the personal information of the person making

13 | that complaint would be necessary and whether or not certain

14 | information within those complaint entries would have to be

15 | redacted.

16 |     **THE COURT:** Okay.  That's going to be our plan

17 | and -- go ahead.

18 |     **MS. WILNER:** Yes, I'm sorry, Your Honor, but I don't

19 | know that for this particular database that that plan is going

20 | to work for us.  Part of it is that, you know, the City has

21 | made representations that the citizen complaints are part of

22 | how it deploys its police resources.

23 |     And we need to be able to assess the universe of

24 | complaints.  I don't think that just running a few search

25 | terms is going to be, you know, adequate for doing that and I

1  don't think that we should have to rely on defendants'

2  assessment of what may be relevant or not relevant.

3            For example, accusations of selling drugs or

4  chaotic residences may be highly relevant to our claim.  And

5  so it would be important for us to see the entire universe of

6  complaints.

7            There is no privilege that attaches to the

8  information in this database.  People do not sign anything.

9  The City is not pledging to keep their information

10  confidential when they call 311.  And we are happy to have

11  them produced under a protective order so that -- so that it

12  can't be publicly released, but viewing the entire universe of

13  complaints is important to us.

14            **THE COURT:** I understand it's important.  I

15  understand it's not privileged.  But there is a duty on the

16  Court's part to protect third parties from undue

17  embarrassment, harassment, you know, they are calling the

18  police to report an issue.  It doesn't mean that they

19  consented to have that disclosed to you.

20            So we're going to try this approach of -- in the

21  case of the custodians, it's 20 custodians, 20 search terms,

22  this is going to be ten search terms.

23            Let's see what happens.  And if it proves to be not

24  helpful and non-responsive, we'll come up with a different

25  approach.  So we're going to do this by trial and error and

1  then we're going to see whether the entire universe of

2  complaints should be produced.

3         But I'm not persuaded in looking at the complaint

4  that you have in this particular case that you need every, you

5  know, 14,000 complaints of this nature, especially since you

6  are going to be getting other forms of the same information

7  from other sources.

8         I want to take up -- I have another conference call

9  at 4:00, I want to take up the Attorney General's information

10  next and I'm going to ask why, Mr. Quinn, the Attorney

11  General's information would not be disclosed?

12         **MR. QUINN:** Well, I mean, it asks for all

13  information.  I'll start with I don't see how it's relevant

14  the fact that some potential maybe investigation at this

15  point.  We don't know much about it, it has not been, you

16  know -- there has not been any testimony about it, there

17  hasn't been any reference to it, any of the documents that

18  have been produced, it, you know, it happened sort of after

19  the basis -- sort of the factual allegations in the complaint,

20  generally speaking, occurred.  And then -- so I don't see how

21  it's really relevant.

22         And then what they're looking for is -- is

23  information which I think would potentially be privileged; a

24  lot of potential attorney-client information, a lot of

25  potentially deliberative process-type information, which we're

1    not really relying on it, it would be more so -- be the

2    attorney-client type of information.

3            And I don't know that at this point in the lawsuit

4    there has been any showing that investigation went anywhere,

5    the basis for the -- the supposed investigation or anything

6    like that.  So I think at this point in the lawsuit, you know,

7    maybe it does become relevant some time further down the line.

8            I think at this point there really hasn't been that

9    showing that that would be discoverable or necessary material,

10   those types of things.  I don't know that that showing has

11   been made.

12           And then there is like the big concern about

13   attorney-client (indiscernible).

14           **THE COURT:** Well, the attorney-client privilege, you

15   know, you -- my guess is there're not that many documents and

16   there's certainly probably very few that are attorney-client

17   privilege that were produced already to the Attorney General.

18   I assume you asserted that privilege already, so that's been

19   covered.

20           What do you think the universe of documents is?

21   How many?

22           **MR. QUINN:** Robert Quinn from the City.  I don't

23   think it would be a lot.  I can say, you know, because I am

24   familiar with it, there were a few letters I believe that came

25   in and there was a response that was provided to the Attorney

1    General's Office.  I think (indiscernible) might have that

2    information already based on representations that they've

3    made.  So that information does exist and that was -- was

4    produced.

5              We probably could produce that if -- if it would

6    help move things along, and I don't know that there would be a

7    lot beyond that because I don't know -- like I said, I don't

8    know how relevant this investigation would be.

9              **THE COURT:** I'm not too worried about relevance

10   because that's my job.  I don't think we're talking about a

11   lot of documents either, correct?

12             **MR. QUINN:** I think that's correct, Your Honor.

13             **THE COURT:** Okay.  So, plaintiffs, I'm going to

14   order that those documents be produced.  If there's a

15   privilege, it will be claimed on a privilege log and you

16   should expect to get those documents, some of which maybe

17   duplicative, I'm finding that they're sufficiently relevant

18   that they will be produced.

19             So does everybody know what we're going to do going

20   forward?

21             **MR. CHARNEY:** Yes, Your Honor.  This is Darius

22   Charney again for the plaintiffs.  Just a couple of clarifying

23   questions.

24             One is under the timing for the IAPro citizen

25   complaint production.  I mean, since we're going to do it I

1 guess on a rolling basis, the same kind of two week timeline

2 that you had set for ESI?

3         **THE COURT:** Yes.

4         **MR. CHARNEY:** Okay.

5         **THE COURT:** Yes.  You generate the terms, they have

6 two weeks to turn it around.  I do expect you to be reasonable

7 with each other, but really it will be kind of a hit count and

8 I'm going to be reasonable to the defendants.  So as I said,

9 you know, I think 200 is about the ballpark of what I would

10 expect anybody to be reviewing.

11         I don't expect them to be reviewing and producing

12 thousands of documents at a time.  That means if you're

13 getting a thousand hits, we need to review.

14         **MR. CHARNEY:** Got it.

15         **THE COURT:** Okay?

16         **MR. CHARNEY:** Got it.

17         **THE COURT:** So let's see how this works.  Go ahead.

18         **MR. CHARNEY:** Your Honor, just one more similar

19 question on the timing for the redaction issue where you

20 would, I guess, be willing to look at things *in camera*.

21         You -- is there a timeline you have in mind for

22 when Mr. Quinn should provide those documents?  Because these

23 are documents we had asked for since October.  I'm talking

24 specifically about Housing and Strike Force daily reports,

25 which -- which I know he -- Mr. Quinn had said he wants to

1  redact certain information on those.

2           **THE COURT:** So he needs to produce -- if he wants to

3  redact, he has to provide a privilege log.  As soon as you get

4  that privilege log, you can ask for an *in camera* inspection

5  and I'll do it.

6           **MR. CHARNEY:** Okay.

7           **MR. QUINN:** Just so -- I don't believe the Strike

8  Force and Housing Unit reports have been discussed.  I might

9  be wrong on this at this conference.  I think Darius is

10 referring to something that we have not previously addressed,

11 which is in the letter, but has not been discussed yet.  It is

12 not a citizen complaint, it is not anything like that.

13          We have additional objections to those documents.

14 So that might be something -- recognizing the Court might have

15 to go, that might be something that has to be addressed at

16 another time from my perspective.

17          **THE COURT:** Okay.  I wasn't talking about it in a

18 particular group.  I was talking about what happens with the

19 redactions.  You get a redacted document, it needs to be

20 accompanied by a privilege log that complies with the Federal

21 Rules of Civil Procedure.  As soon as you get that privilege

22 log, you can ask me to do an *in camera* inspection and I will.

23          **MR. CHARNEY:** All right, Your Honor, and I apologize

24 again -- this is Mr. Charney, just because I know you have to

25 go, but this is the first that we're hearing from Mr. Quinn

1 | that he has additional objections to production of those

2 | Housing and Strike Force reports.  So, I mean, we may need to

3 | burden you again very soon with that issue because --

4 |       **THE COURT:** That's fine.  We'll keep on this.

5 | You'll find me -- some people say tenacious, my husband says

6 | relentless.  So don't worry, I will stay on this issue.  We're

7 | going to come back at least in 90 days, and if we need to come

8 | back sooner we will.

9 |       **MS. WILNER:** And, Your Honor, this is Claudia

10 | Wilner.  And we had also just requested a general extension of

11 | deadlines in the case, and we had made a proposal that was in

12 | the first letter, document 22.  I'm not aware that defendants

13 | had any objections to that proposal, but we wanted to get the

14 | reaction of the Court.

15 |       **THE COURT:** So if you agree on a revised schedule,

16 | that's fine.  I will sign off on it.  If you are in

17 | disagreement, you need to file a motion for a revised

18 | discovery schedule and I'll see what's proposed and I will

19 | pick between the discovery schedules.

20 |       It probably is not going to work in a case like

21 | this to be too informal about things.  So in any other case if

22 | you wanted to extend the discovery schedule, you would reach

23 | out to the other side and see if they consent and present it

24 | to the Court by way of stipulation or motion if there's no

25 | consent.  That's what I want you to do in this case.  It's --

1   I couldn't tell if I was being asked to compel production, I

2   was just being advised as to what was going on.

3              So let's -- where a motion would otherwise be

4   filed, let's file a motion, okay?

5              **MR. CHARNEY:** Thank you.

6              **MS. WILNER:** Okay, thank you, Your Honor.

7              **THE COURT:** All right, thank you.  Sorry I have to

8   go.  We can come back within the 90 day period if we need to.

9              **MR. QUINN:** Thank you, Judge.

10             **THE COURT:** All right.

11             **MS. WILNER:** Thank you.

12             (**WHEREUPON**, proceedings adjourned at 4:07 p.m.)

13                        *    *    *

14             **CERTIFICATE OF TRANSCRIBER**

15

16             In accordance with 28, U.S.C., 753(b), I certify that

17   this is a true and correct record of proceedings from the

18   official electronic sound recording of the proceedings in the

19   United States District Court for the Western District of New

20   York before the Honorable Christina Clair Reiss on May 30th,

21   2019.

22

23   S/ Christi A. Macri

24   Christi A. Macri, FAPR-CRR
     Official Court Reporter

25