# Travis England

| | |
|---|---|
| **From:** | Travis England |
| **Sent:** | Thursday, November 15, 2018 4:38 PM |
| **To:** | Quinn,Robert E |
| **Cc:** | Claudia Wilner; Darius Charney |
| **Subject:** | BLRR v Buffalo - Plaintiffs' Discovery Requests |
| **Attachments:** | BPD - First set of Rogs 11-5-2018 FINAL.docx; BPD - First Set of RFPs 11-5-2018 FINAL.docx; Draft ESI Stip_11.12.18.DOCX |

Rob,

I write to follow up on last Thursday's meet and confer regarding Plaintiffs' first set of Requests for Production (the "Requests"). During our call, we discussed issues surrounding the form of production of documents and electronically stored information ("ESI") responsive to the Requests, as well as Plaintiffs' expectations regarding the likely sources where discoverable information may exist and Defendants' methodologies for searching for this information.

As to the form of production, as we discussed, Plaintiffs included specific instructions in the Requests directing Defendant to scan and serve documents and ESI to us electronically as TIFFs/JPEGs/spreadsheets/Native Files with corresponding text files, and to preserve and produce metadata associated with responsive documents and ESI. I have attached a revised proposed ESI stipulation, which includes specific modifications regarding the form of production based on your representations regarding Defendants' production capabilities. Please review and confirm that these modifications are sufficient.

Also during our call we went through each of Plaintiffs' Requests to explain to you: (1) the information sought by each Request; (2) Plaintiffs' current understanding of likely sources where such information could be located; and (3) whether Plaintiffs believe that specific search terms may facilitate the identification and production of responsive documents and ESI.

Plaintiffs explained that as to most of the Requests, they believe that responsive documents and ESI will be in the possession of each Defendant, as well as various locations within the Buffalo Police Department ("BPD") and the City of Buffalo, including emails, digital and physical files, computers, backup servers, and similar locations of: (1) current and former Strike Force personnel and their supervisors; (2) current and former Housing Unit personnel and their supervisors; (3) current and former Division of Traffic Enforcement personnel and their supervisors; (4) current and former BPD Commissioners and their senior staff; (4) current and former Buffalo Traffic Violations Agency personnel; and (5) current and former staff of Defendant Brown overseeing BPD and BTVA activities. Plaintiffs also proposed sending to you a list of proposed search terms for certain of the Requests. Plaintiffs also proposed conducting a limited 30(b)(6) deposition (which would not count toward the Plaintiffs' deposition limit) specifically focused on Defendants' data systems and record keeping in order to facilitate identification and collection of responsive documents and ESI.

Although you stated that you need to more thoroughly review each of the Requests to identify more specific questions, you raised some questions and concerns regarding certain requests. Below I have memorialized a number of these questions and concerns, as well as Plaintiffs' preliminary responses based on their current understanding of information in Defendants' possession, custody, or control.

- **Request No. 9**: You asked whether this request encompasses only those BPD officers and personnel who "have a say" in determining the location of the checkpoint. Plaintiffs responded that this request would include documents from all SF and HU personnel, regardless of whether they actually made any determination regarding the location of any Checkpoint. However, the Request specifically seeks documents that were actually used by personnel to determine locations, which is likely a smaller universe.

- **Request Nos. 17 -19**: You asked whether these Requests sought documents that Plaintiffs' counsel had obtained through pre-litigation Freedom of Information Law requests. Plaintiffs confirmed that these requests sought the same documents, but without redaction.
- **Request Nos. 20-21:** You stated your belief that these requests are broad and would include many communications from the SF/HU personnel. Plaintiffs suggested that the parties continue to confer regarding the application of search terms that may narrow the scope of responsive documents and ESI.
- **Request Nos. 22-23**: You stated your belief that these requests may conflict with Section 50A of the New York Civil Rights Law. Plaintiffs disagreed with your characterization of 50A's coverage, but nonetheless offered that any protected information sought by these Requests could be covered by the Parties' Confidentiality Order, about which the parties are continuing to confer. Please advise as to Defendants' position on the Confidentiality Order as soon as possible.
- **Request No. 26:** You stated your belief that this request is overbroad. Plaintiffs responded that the Requests' Definitions section specifically defines the traffic tickets that are sought through this Request, which are of central relevance to Plaintiffs' claims.
- **Request Nos. 29-30:** You stated your concern that you may be required to withhold certain information relating to specific reported crimes. Plaintiffs responded that these requests seek only certain information, and that Defendants should be able to narrow or limit information produced from their databases based on these limitations to exclude protected information. In any event, such information could be included as part of the Parties' negotiated confidentiality order. Plaintiffs have made clear that they are willing to consider additional reasonable categories of information within the confidentiality order.

We agreed to next speak on Monday, November 19, at 11:00 AM to continue our conferral and for you to update us on the status of Defendants' search for responsive documents and ESI. On Monday's call, we specifically would like an update on: (a) your position on the draft Confidentiality Order (which we intend to move to have entered next week); (b) the specific sources of information and databases where you believe responsive documents and ESI exist; (c) an estimate of timing for you to start producing responsive documents and ESI. In the meantime, please feel free to reach out with any additional questions you may have regarding the Requests.

As I mentioned on the call, I have also attached courtesy word versions of our Requests for Production and Interrogatories.

Regards,

Travis



**Travis W. England**
Senior Attorney
National Center for Law and Economic Justice
275 Seventh Avenue, Suite 1506, New York, NY 10001-6860

212-633-6967 | england@nclej.org | www.nclej.org

 

**Confidentiality Note**: This e-mail (including attachments) is intended only for the addressee and may contain information that is privileged and/or confidential. Distribution or copying of this e-mail or its attachments by anyone other than the intended recipient is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at 212-633-6967 or e-mail at info@nclej.org and destroy the original message and all copies.

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BLACK LOVE RESISTS IN THE RUST, et al.,

       *Plaintiffs,*

     Case No. 1:18-cv-719

   - vs -

CITY OF BUFFALO, N.Y., et al.,

       *Defendants*.
-------------------------------------------------------------x

## STIPULATION REGARDING DISCOVERY

 Plaintiffs and Defendants (collectively "Parties") mutually seek to reduce the time, expense, and other burdens of discovery of documents, things and electronically stored information ("ESI"). Therefore, the Parties are entering into this Stipulation to govern certain discovery obligations in this action.

 The Parties stipulate as follows:

 1) **Scope of the Stipulation**

 This Stipulation governs the form and manner of production in this case. It is not an agreement by the parties that they will produce all information described herein, notwithstanding claims of privilege or other available objections to production of that information, but rather an agreement to produce such information in a certain form and manner, if production is made. The parties do not waive any claim of privilege or other available objection to discovery, including objections on the basis of relevance, overbreadth, or undue burden.

2) **Provisions for the Production of All Documents and ESI**

a. <u>Form and Manner of Production of All Documents and ESI.</u> The parties agree that:

    i. <u>Documents.</u> If produced, documents and ESI shall be scanned or converted to single page Portable Document Format ("PDF" or ".pdf") files at 300 d.p.i. and reflect, without visual degradation, the full and complete information contained on the original document. The parties will honor reasonable requests for either the production of the original document for inspection and copying or production of any color image of the document, thing, or ESI. If produced, all images shall be saved in a directory named IMAGES.

    ii. <u>Emails.</u> All emails shall be produced as native files in .MSG format and shall include all original attachments. For each .MSG file that is not assigned a unique "Bates Number" as described in paragraph 2(b), that .MSG file shall include an assigned individual control number to be included in the excel spreadsheet described in paragraph 2(a)(iii) below.

    iii. <u>Identification of Electronic Files</u>. For all electronic files produced by the parties, the producing party will provide a spreadsheet in Excel (.XLS or .xlsx) format that provides for each individual document: a unique document identifier ("Bates Number" or individual control number), the folder or location in which the document was originally located, the individual file name, the proper Windows associated file extension, any and all custodians of the document, and, if applicable, the beginning Bates Number or individual control number of any parent file, as described in paragraph 2(a)(viii) below.

    iv. <u>Spreadsheets and Presentations.</u> If produced, spreadsheets (e.g., Excel, Quattropro, or .csv) and presentations (e.g., Powerpoint) shall be produced in native form. To the extent possible, production of documents will preserve the original folder structure from which the document was produced. In the event that a Party needs to redact a portion of a

document for which only a native file is being produced, the Parties will meet and confer regarding production of the redacted document. Native files shall be saved in a directory named NATIVE with the proper Windows associated extension.

  v. <u>Video, Audio, Databases, and Proprietary Files.</u> The parties will meet and confer regarding the production of video, audio, databases, and any proprietary file formats (non-Microsoft or Corel Suite compatible files).

  vi. <u>Other Files.</u> Other electronic documents not specifically discussed above will, if produced, be produced as single page Portable Document Format ("PDF" or ".pdf format") files with related text files as described in paragraph 2(a)(ix) below. If said documents in their original form cannot be converted to PDF as described above, the Parties promptly will meet and confer concerning the form of such production.

  vii. <u>Metadata.</u> Where the metadata exists, is associated with produced documents and ESI it will be provided with the associated documents and ESI. Where it is determined that metadata exists and is associated with produced documents, the parties will meet and confer as to the appropriate format and method of production.

  viii. <u>Related Documents.</u>

    A. To the extent documents being produced have children (*e.g.*, emails with attachments, archive files such as zip, files with embedded documents, cover letters with enclosures, documents in a binder or folder), the parent and child documents shall be produced as separate documents, with identification of the parent-child relationship in the spreadsheet described in 2(a)(iii) above.

    B. If a responsive document has parents and/or children, such parents and/or children are deemed responsive and may only be withheld pursuant to a

        claim of privilege or other immunity from production, which must be logged.

    C. For physical documents contained in physical folders or binders, the folder or binder is a "parent" document within the meaning of this paragraph, and any labels or other text or markings on the folder or binder must be scanned and produced (unless, as above, otherwise subject to a claim of privilege or other immunity from production).

    ix. <u>Corresponding Text Files.</u> For electronic documents that exist as native files and do not require redaction, the Parties shall produce extracted text files reflecting the full text that was electronically extracted from the native file, regardless of whether the document is being produced in native form. For all scanned hard-copy documents, electronic documents that exist as native files and require redaction prior to production, and electronic documents that exist as native files for which native text is not available (*e.g.*, graphic files and some PDFs), the Parties shall meet and confer as to the format and method of production.

    x. <u>Reservation of Rights.</u>  The Parties reserve their right to request that ESI be produced in a different format, including but not limited to requesting that native files be produced.

b. <u>Bates Numbering.</u> Except as otherwise provided in this agreement, the Parties agree to produce all imaged documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in the lower right-hand corner or at a location that does not obliterate, conceal, or interfere with any information from the source document. The Bates numbering convention shall be in the format "X########" where "X" represents the short character abbreviation for the producing party and "########" represents the eight-digit sequential number of the page being produced by that party.

Documents produced by the parties shall be abbreviated consistently, e.g., "BPD" for all documents produced by the Buffalo Police Department. Thus, the first Bates labeled document produced by the Buffalo Police Department should be labeled "BPD00000001". PDF documents shall be named as the [Bates Number].pdf. Native files shall be named as [Bates Number].ext.

    c.    <u>Production Media.</u> The Parties agree to produce documents on CD-ROM, DVD, or external hard drive, (the "Production Media"), depending on the volume of the production. Each piece of Production Media shall identify a production number corresponding to the production "wave" and a number of the volume of material in the wave. For example, if the first production wave by a Party comprises document images on three hard drives, the Party shall label each hard drive in the following manner in numeric sequence: "001.001"; "001.002"; "001.003." If the second production comprises three DVDs, the Party shall label each DVD in the following manner in numeric sequence: "002.001"; 002.002"; "002.003." Additional information that shall be identified on the physical Production Media includes: (1) the case number, (2) the producing party's name, and (3) the production date. The type of materials on the media (*e.g.*, "Documents", "OCR Text", etc.) and the Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, or where not practicable to do so, may be provided in an accompanying letter. Production Media shall be encrypted, with the password provided to the receiving Party by email.

    d.    <u>No Production to FTP, SFTP or Other Hosted Locations.</u> All parties agree to produce documents and ESI as described in paragraph 2(a)-(c), above. Parties agree not to produce documents or ESI using FTP, SFTP, or other hosted locations without written agreement of all parties.

    e.    <u>Encryption.</u> The parties will make reasonably diligent efforts to remove encryption

or password protection of any file or to locate and provide the passwords to the requesting party. If non-standard software is required to open encrypted files, the Party producing the encrypted files must provide the software. No party is required to produce information in an encrypted or password protected file if the information is not reasonably accessible because of undue burden or cost relating to decryption of the file or inability to locate the file's password following reasonably diligent efforts to do so.

f.  <u>Shared Discovery.</u> Irrespective of which Party issued the requests for production of documents, things, and ESI, the producing Party shall serve a copy of responsive production to each of the other Parties.

g.  <u>Rolling Production.</u> The parties will produce documents, things and ESI on a rolling basis.

3)  **<u>Electronically Stored Information</u>**

a.  <u>Search Process and Criteria.</u> The Parties agree to promptly meet and confer regarding search processes and criteria following receipt of discovery requests. Either party may initiate a conference to discuss the Parties' search of ESI, including search criteria such as date ranges, custodians, search locations, key words, etc. The Parties agree that the use of any agreed-upon search process or criteria shall not be construed as a waiver of any Party's right to request subsequent searches and productions; particularly where there is a showing that the agreed-upon search process and criteria have resulted in inadequate productions or failed to identify relevant materials. The Parties reserve their right to object to any additional requests or subsequent searches. The Parties further agree that documents identified by search processes may be reviewed for privilege, confidentiality, relevance or responsiveness prior to production.

4) **Paper Documents**:

a.      Document Unitization. To the extent possible, each page of a hard copy document shall be scanned into an image. If a document is more than one page, the unitization of the document shall be maintained as it existed in the original when creating the image file. Multi-level parent-child relationships (such as documents in a binder that contains separate tabs) shall be identified in the spreadsheet referred to in Paragraph 2(a)(iii). *See also* Paragraph 2(a)(viii)(C).

b.      Documents Containing Fixed Notes. For documents that contain fixed notes (*e.g.*, post-it notes), the pages will be scanned both with and without the notes. Those pages will be treated as part of the same document.

5)      **Other Preservation Obligations Not Affected**. Nothing in this Stipulation shall affect any other obligations of the Parties to preserve documents, things, and ESI for other purposes, such as pursuant to court order, administrative order, statute, regulation, existing retention policies, or in response to other anticipated litigation.

6)      **Preservation Does Not Affect Discoverability or Claims of Privilege**. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege. Except as otherwise provided in paragraph 7, nothing in this Stipulation shall alter the responsibilities or obligations of the Parties to provide a privilege log for material withheld under a claim of privilege.

7)      **Privilege Logs**. The Parties agree that for each document, thing, or ESI withheld based on an asserted claim of privilege, the Party asserting the privilege must produce a privilege log pursuant to Rule 26(b)(5)(a) of the FRCP. The privilege log must contain the type of document or ESI, whether the document or ESI contains any attachments, the date, authors, recipients, copyees, privilege(s) claimed, the title of the document or ESI, the

purpose of the document or ESI and the basis for the claimed privileges or protections with information sufficient to establish the elements of each asserted privilege. An embedded email should be separately identified and logged. E-mail attachments should be identified as attachments and separately logged.

8) **Inadvertent Production of Documents and Clawback**:

a.  Clawback. The Parties agree that a disclosure of communications, documents, things, and ESI covered by the attorney-client privilege, work product protection or governmental privileges does not operate as a waiver in this proceeding if:

i. The disclosure is inadvertent and is made in connection with this litigation; and

ii. The holder of the privilege or protection took reasonable steps to prevent disclosure and promptly took reasonable steps, once the holder knew or should have known of the disclosure, to rectify the error.

b.  Inadvertent Production.

i. If a producing Party discovers that it has inadvertently produced material that includes privileged or protected information, the producing Party may request in writing that such materials be returned or destroyed within 14 days of discovery of the inadvertent production. Upon such written request, and except in the event that the requesting Party disputes the claim of privilege or protection, any materials which the producing Party deems to contain inadvertently disclosed materials shall be promptly returned to the producing Party or destroyed at the producing Party's option. This includes all copies, electronic or otherwise, of any such materials, and the Parties agree that no further copies of the inadvertently disclosed materials will be made. In the event that copies of inadvertently produced materials that are privileged or protected are captured on a Party's back-up media used for disaster recovery, the Parties will over-write those copies according to their established back-up procedures.

8

ii. Any Party receiving material it believes may have been inadvertently produced that includes privileged or protected information shall promptly notify the producing Party. Within 14 days after such notification, the producing Party may request in writing that such materials be returned or destroyed. Upon such written request, any materials which the producing Party deems to contain inadvertently disclosed materials shall be promptly returned to the producing Party or destroyed at the producing Party's option. This includes all copies, electronic or otherwise, of any such materials, and the Parties agree that no further copies of the inadvertently disclosed materials will be made. In the event that copies of inadvertently produced materials that are privileged or protected are captured on a Party's back-up media used for disaster recovery, the Parties will over-write those copies according to their established back-up procedures.

iii. If privileged or protected information is contained within an item of otherwise discoverable material, the Parties recognize that the requesting Party may not be able to destroy only the portion of the item of the disclosed material that is privileged or protected; instead, the requesting Party may need to destroy the privileged or protected information along with all of the otherwise discoverable material within that item. Whenever that is the case, the producing Party, within 14 days of notification or discovery of the inadvertent disclosure, shall provide the requesting Party with a replacement copy of the item that includes the material that is not privileged or protected and are otherwise discoverable, and shall produce or supplement its privilege log.

iv. In the event that the requesting Party disputes the producing Party's assertions with respect to the inadvertently disclosed material, such material shall be sequestered and retained by and under the control of the requesting Party for the purpose of seeking determination of the issue by the Court. If the Court determines that privilege or protection has been waived and/or that the inadvertently disclosed material is not subject to any

9

applicable privilege or protection, the requesting Party may use the material for any purposes otherwise permitted by law or rule. If the Court determines that the inadvertently disclosed material is subject to an applicable privilege or protection, the requesting Party must return or destroy the materials at issue as provided above.

v. If the producing Party does not request the return or destruction of material within 14 days of notification by the receiving Party of the receipt of material it believes was inadvertently produced, the producing Party waives any claim of privilege or protection as to the material.

9) **Costs of Document Production**. Each Party shall bear the costs of producing its own documents, things and ESI, except where cost-shifting is required by law or Court order.

10) **Requirement to Confer**. Before filing any motion regarding the terms of this Stipulation, compliance with this Stipulation, or other discovery dispute, the Parties will confer in a good faith attempt to resolve such disputes.

11) **Miscellaneous**:

a. The Stipulation may be executed in counterparts.

b. The Effective Date of this Stipulation shall be the date on which the Stipulation is executed by all the Parties.

c. This Stipulation may not be enlarged, modified or altered except by written agreement of all Parties.

d. None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request; rather, such time frames shall be governed by the FRCP.

e. The terms of this Stipulation are not exhaustive. Each Party reserves the right to subsequently request a meet and confer to address any matters concerning discovery in this litigation which has not been addressed herein.