UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BLACK LOVE RESISTS IN THE RUST, et al.

      Plaintiffs,

      -vs-

CITY OF BUFFALO, et al.

      Defendants.

DECLARATION

Civil Action No.: 18-cv-719

---

**ROBERT E. QUINN,** Assistant Corporation Counsel, *of Counsel* to Timothy A. Ball, Esq., Corporation Counsel, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

1. I am an attorney licensed to practice law in the Courts of the State of New York and in the United States District Court for the Western District of New York, and an Assistant Corporation Counsel for the City of Buffalo, and I represent the Defendants in this action.

2. As such, I am fully familiar with the facts and circumstances set forth below.

3. This Declaration is offered in opposition to Plaintiffs' Motion to Compel discovery pursuant to Fed.R.Civ.P. 37, filed on July 25, 2019. (Dkt. No. 34).

4. Defendants submit that we have responded to all requests and raised valid objections, Plaintiff's counsel has not adequately conferred in an effort to obtain the discovery at issue, Plaintiffs have not met their burden on this premature Motion, which seeks materials not reasonably accessible, and should therefore be denied.

*I. Defendants have timely responded to all Discovery Requests and acted in good faith.*

5. In order to give the Court a full picture of the proceedings in this matter, it should first be noted that the Defendants timely served their Responses to the Plaintiff's First Set of Requests for Production and First Set of Interrogatories on December 5, 2018. A First Supplemental Response to Plaintiff's First Set of Interrogatories was served on February 5, 2019. A First Supplemental Response to First Set of Requests for Production was served on March 15, 2019. A Second Supplemental Response to Plaintiff's First Set of Interrogatories was served on April 11, 2019. And a response to Plaintiffs' Second Set of Requests for Production was served on May 19, 2019. *See*, **EXHIBIT A**.

6. In total, Defendants already have already produced Ten Thousand (10,000) pages of documents responsive to the Plaintiff's requests, which have been bates numbered COB000001-COB010000. *See*, Exhibit A.

7. On July 3, 2019, the Defendants provided additional information and voluntarily disclosed and example of a special order pertaining to Plaintiffs' request for information regarding dates officers were assigned to the Strike Force and Housing Unit. *See*, **EXHIBIT B**.

8. On July 11, 2019 the Defendants provided the results of searches of the 311 and IAPro systems based on the search terms provided by the Plaintiff. See, **EXHIBIT C**.

9. On July 18, 2019 the Defendants provided the results of an additional search of the IAPro system based on a new search term. *See*, Exhibit C.

10. On July 24, 2019, the Defendants provided additional responses related to the Attorney General's 2018 inquiry. *See*, **EXHIBIT D**.

11. On July 25, 2019, received the instant Motion, which we submit was made without proper diligence or grounds, and does not represent a bona fide dispute, as set forth in the subsequent email exchange between Counsel. *See*, **EXHIBIT E**.

12. Following this Motion, discussions on various issues have continued, a mediation session has been scheduled, and we have provided the "special orders" which are improperly a part of the Plaintiffs' instant motion. See, **EXHIBIT F**.

13. Both prior to and following their making of this Motion, the undersigned has conferred in good faith with the Plaintiff's counsel, often three or four attorneys, on numerous occasions in an effort to move discovery forward and we will continue to do so to the best of our abilities.

14. As is evident through a brief review, the Plaintiffs' document requests and interrogatories are exceedingly broad and the timeline at issue reaches back over a number of years and encompasses several distinct departments in the City of Buffalo.

15. As a single attorney in a small and busy municipal law department with limited resources and manpower, responding to the Plaintiffs' various discovery requests has been a very large and taxing procedure, and was certainly not the only matter which requires our full attention and commitment of resources. See, **EXHIBIT G**.

16. Accordingly, while discovery is still ongoing, we respectfully submit that the Defendants have substantially complied with all outstanding requests for discovery and acted in good faith throughout, and there is no basis for any type of sanctions herein.

17. While we do not offer this as excuse, we do note that municipal law departments can be seen to be at risk of an attempts to use misuse the discovery process.

18. As we hope is evident, in addition to providing over Ten Thousand pages of documents, we have also provided extensive explanation and identification of the potential information that exist and attempted to work through various aspects of this discovery process, both through our meet and confers and in follow up communications.

19. In meet and confer conferences, we advised plaintiffs as necessary that their requested information was not readily available, and that it would require considerable administrative efforts to obtain the requested information, and have attempted to compromise and worth through any issues that arose in this regard.

20. The undersigned has also identified several non-parties, including providing contact information and cooperation, from whom Plaintiffs have now, upon information and belief, essentially obtained every traffic ticket and court matter alleged.

21. Your Deponent has also informed plaintiffs that searches for responsive information is continuing and, depending upon the results of those searches, we expect that it may be necessary to further supplement our responses.

22. While we understand that Plaintiff's allegations are extensive and wide-ranging, we respectfully submit that this speculation does not entitle them to engage in a fishing expedition for every record created by the City of Buffalo and its employees.

23. We must also reiterate the issue of class discovery as it relates to the allegations in this complaint and the scope of allowable discovery, as this matter has not been certified as a class and there are actual named defendants.

24. For all these reasons, undersigned respectfully submits that Defendants have appropriately responded to Plaintiff's discovery demands in good faith.

*II. ESI*

25.    The Defendants acknowledge difficulty in searching for and providing ESI due to a number of factors, including the size and scope of the requests, the number of potential custodians, and the search capacities of our various systems.  See, **EXHIBIT H**.

26.    Initially, Defendants attempted to conduct a search for ESI manually, with the intention of printing responsive information and providing bates stamped copies in paper or scanned PDF form, but were unsuccessful.

27.    After conferring with Plaintiff's counsel, wherein they indicated that was not acceptable due to the lack of "metadata", your deponent undertook efforts to determine search capacity of the various systems and custodians.  See, **EXHIBIT H**.

28.    As set forth in our various email exchanges and meet and confers, the requested information is not contained all contained on the same system, as the Police Department uses a program known as Lotus Notes and the rest of the City uses Microsoft Exchange, and information is stored on different servers.

29.    It is my understanding that the search capacity of those systems is limited to basic search terms, i.e., one word or a phrase in parenthesis.  This understanding is based both on personal attempts to perform such searches and observation of such attempts made by the individuals familiar with the Defendants' systems and capacity.

30.    Additionally, it my understanding that Defendants search capacity does not include a way to retain and produce "metadata" for Lotus Notes, and to reproduce the documents they must be searched by the actual custodian and printed.  This does not even account for the various other locations such a search could entail.

5

31.     On this particular point, there may be some variance between the Lotus Notes and Microsoft Exchange systems, as well as the particular version of the program each custodian uses.  Depending on the particular version, it may be possible to save email files without directly, without printing, which may preserve some "metadata" but again the search capacity would be limited to words and phrases in parenthesis.

32.     On this point, he Buffalo Police Department alone has around Eight Hundred and Fifty Employees, and the City far more assigned to diverse tasks and responsibilities, and to perform such a search accounting for all variables would be burdensome, particularly given the lack of an ability to perform a centralized search.

33.     As such, the Defendants were simply unable to perform the search as suggested by Plaintiffs' counsel, which consisted of the following:

1.      checkpoint~ OR check-point~ OR check w/2 point~
2.      roadblock~ OR (road w/2 (block~ OR check~)
3.      (vehicle~ OR traffic OR safety) w/2 (check~)
4.      safety AND (Traffic OR roadway OR highway OR vehicle)
5.      (tint~) w/4 (illegal~ OR window~)
6.      traffic AND (study OR calming OR data OR number~)
7.      Zero w/4 tolerance
8.      (Secondary OR additional) w/4 (stop~ OR interrog* OR search~)
9.       (ticket~ OR violation~ OR tow~ OR impound~ OR citation~) AND (BTVA OR
VTL or 479 OR fine~ OR tally OR number OR revenue~ OR fees OR cost OR money OR proceeds OR profit~ OR quota~ OR data OR amount~ OR number OR total OR debt OR enforce* schedule~ OR list)

10.     (Revenue~ OR fine~ OR fee~) AND (new OR City OR Buffalo OR revise~ OR collect~ OR generate~ OR earn~ OR total~ OR amount OR owe~ OR assess~ OR fund* OR data OR target)

6

11.     (Budget~ OR fund~ OR revenue~ OR finance*) AND (traffic OR BPD OR BTVA OR HU OR "Traffic Violations Agency" OR "strike force" OR "housing unit" OR "SF" OR police OR officer~ OR "Law Department" OR government OR parking OR enforce* OR federal OR legal OR City OR Buffalo OR municipal~)

12.     (Train* OR in-service) AND (traffic OR stop~ OR VTL OR Fourth OR 4th OR Fourteenth OR 14th OR "civil rights" OR bias OR discriminat* OR roadblock)

13.     Complain~ AND (driving OR parking OR vehicle~ OR search~ OR stop~ OR seize~ OR seizure OR impound~ OR ticket~ OR fee~ OR arrest~ OR fine~)

14.     (race OR racial OR ethnic* OR black OR latin* OR hispanic~ OR mexican~) AND (profil* OR bias~ OR disparit* OR discriminat*)

15.     quota~

16.     civil /2 right~

17.     (Policy OR procedure~ OR policies OR directive~ OR bulletin~ OR order~ OR update~ OR decision~) AND (traffic OR stop~ OR ticket~ OR check-point~ OR checkpoint~ OR vehicle~ OR auto~ OR motor OR search~ OR zero OR hotspot~ OR hot-spot~ OR roadblock~)

18.     (Change~ OR modif* OR amend~ OR levy~ OR assess~ OR impose~ OR revise~) w/6 (traffic OR fine~ OR fee~ OR "BTVA" OR "Buffalo Traffic Violations Agency" OR July OR 2013 OR "Chapter 175" OR "175")

19.     (BPD OR police OR officer~ OR ticket~) w/6 (goal~ OR quota~ OR number~ OR "Citi-stat" OR "citistat" OR "city-stat" OR "citystat")

20.     ("Attorney General" or AG) AND (investigat* OR report~ OR contact~ OR complain~ OR sue~ OR record~ OR request~)

34.     It was certainly not the intention to disregard or fail to comply with any Court Order or direction, but Defendants simply could not perform the search of the purported "terms" provided by Plaintiff, and this was communicated to them at our meet and confer as an objection, and it we respectfully submit that this demand is therefore accessible only by incurring undue costs and burdens.

35.     It should also be noted that the City has provided ESI from both the 311 and IAPro system, which was searchable in the manner described, based on the direction of the Court, as those search terms were accessible under the Defendants search capacity,

7

and had we known at the time that Plaintiffs' search "terms" would be those described above, we certainly would have indicated that the Defendants lacked the capacity to perform such a search.

36. Given these limitations, and recognizing Plaintiffs' request for this type of information, we respectfully request guidance from the Court on how to proceed, in particular because this direction has been very helpful at in our prior conferences.

37. We also note that there have been no depositions conducted and, while this obviously does not preclude the request, no specific ESI information sought other than that pertaining to general allegations and concepts, and we remain willing and eager to perform whatever search is proposed within our capacity.

38. Western District Local Rule 26 provides, in relevant part:

(e) Electronically Stored Information. Discovery of relevant electronically stored information shall proceed as follows:

(1) After receiving requests for document production, the parties shall search their documents, including ESI other than ESI that has been identified as not reasonably accessible, and produce relevant responsive ESI in accordance with Fed.R.Civ.P. 26(b)(2).

(2) Searches and production of ESI identified as not reasonably accessible shall not be required to be conducted until the initial disclosure of reasonably accessible ESI has been completed. Requests for information expected to be found in ESI that is not reasonably accessible must be narrowly focused with some basis in fact supporting the request, and good cause must be provided. The party seeking such discovery may be required to pay all or a portion of the costs of search, retrieval, review, and production of the information, upon application to the Court.

(3) Search Methodology. If a party intends to employ an electronic search to locate relevant ESI, the parties shall discuss and attempt to reach agreement as to the method of searching, and the words, terms, and phrases to be searched and any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the ESI. The parties shall also attempt to reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course

of discovery. To minimize undue expense, the parties may consider limiting the scope of the electronic search (i.e., time frames, fields, document types).

(4) Metadata. Except as otherwise provided, metadata, especially substantive metadata, need not be routinely produced, except upon agreement of the requesting and producing litigants, or upon a showing of good cause in a motion filed by the requesting party.

(5) Format. If the parties have not agreed or cannot agree to the format for document production, ESI shall be produced to the requesting party as image files (i.e. PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of ESI in its native format. -28-

(6) Costs. Generally, the costs of discovery, other than the costs associated with ESI that is not reasonably accessible, shall be borne by each party. However, the Court will apportion the costs of discovery or presentation of ESI, including discovery of ESI that is not reasonably accessible, upon a showing of good cause, or unequal burdens, or unreasonable request.

39.     As set forth above and herein, we respectfully submit that the requested information is not reasonably accessible and the Plaintiff has not made a showing of good cause for metadata at this point.

40.     With that said, if determined appropriate by the Court, Defendants will comply and request a brief period to complete all appropriate searches and will certainly make every possible effort to expedite that process, and produce the materials as PDFs as provided for in the local rules, to the extent of our capabilities.

41.     Given this pending motion and, again, not wanting to further delay or obstruct discovery in any way, the Defendants have reached out to an electronic discovery vendor to determine the feasibility and cost of performing a search as outlined by the Court of twenty (20) custodians and twenty ("20" ) "terms".

42. We have been told that a search as proposed could be performed by an outside vendor, though obviously there could be complication and issues which may arise, and we respectfully submit that depending on the scope and extent of the materials sought and order, the Court should consider cost shifting.

43. While the vendor was only able to provide an estimate, the quote for the cost of searching twenty (20) custodians as proposed by Plaintiffs would be as follows: Data Collection – low range $850-$1,500, high range $1,675-$2,050; data reduction flat rate of $3,900 for data ingestion, and additional estimate of 1,750-2,625 for search.

44. An additional quote for ESI processing and hosting in Relativity would be provided after the search to determine how much data would be promoted to review, and obviously additional searches and storage could greatly increase the costs, which we submit may warrant monitoring and further review at a later stage if a vendor is required.

*III. Daily and Monthly Reports*

45. Defendants have raised various objections to the requests for these reports which are reiterated herein, and include overly broad, burdensome, not reasonably calculated to lead to discoverable materials, and potentially including confidential and personal information for criminal complainants, criminal suspects, and other police procedures which weigh against disclosure.

46. With that said, the undersigned has offered potential compromises for avoiding this Motion in good faith, and reiterate those herein, so it is unclear if we are at an actual impasse. See, **EXHIBIT I, EXHIBIT J,** and **EXHIBIT K**.

47. With that said, if Plaintiff unwilling to compromise, we respectfully submit that Plaintiffs have failed to meet their burden on this Motion, which lacks any evidence or argument other than baseless speculation as to why these reports may be discoverable.

48. Additionally, upon information and belief, Plaintiffs have already obtained any and all potentially relevant information that is sought by these requests pursuant to subpoenas issued to Erie County's Central Police Services, New York State's TraCS program, and the State's Office of Court Administration's Courtroom programs.

49. Any information contained within the daily reports would therefore be at best redundant and less detailed than those already in Plaintiff's possession and the motion should be denied in its entirety, particularly given the sheer number of documents requested (daily reports for around seven years) and the likelihood that each of those documents would have to be reviewed and redacted for several categories of information.

50. Again, there has been no application or decision on class certification in this matter and there are absolutely no grounds set forth in their motion as to why they need every single daily report for an approximately seven (7) year period, which may not related to the named plaintiffs in any way whatsoever.

51. Moreover, from my review of these documents, as demonstrated by the examples provided in Exhibits J and K, there are categories of information which would not be discoverable for various reasons and therefore require redaction.

52. We respectfully submit that, due to the number of these reports, particularly the daily ones, it would be burdensome to go through each for even the

limited redactions proposed by the Plaintiffs, particularly in light of the fact that may already possess this information.

53. Plaintiff has not shown any particularized need to risk the safety of the individuals involved. The availability of other means of discovery or investigation, such as depositions or interviews, even if more expensive, weighs against disclosure.

54. As such, if Plaintiff is unwilling to agree to a reasonable compromise, this portion of the motion should be denied.

*IV. Employment History*

55. Defendants objected to this information as overly broad in our initial discovery responses. After conferring, while still believing these objections valid, we supplemented our responses to Plaintiff's First Set of Interrogatories to provide the names and positions for individual officers in an effort to move discovery forward.

56. At that time, Plaintiffs raised no objection to that response. Subsequently, the indicated a desire for additional information, and specifically the dates the individuals were assigned to the departments in questions.

57. Defendants identified and explained the search capacities, which we submit demonstrate that detailing such information in interrogatories for each and every officer is burdensome and not reasonably accessible, for this information and have now provided those orders under bates number COB009967-COB010000.

58. We therefore respectfully submit that this part of Plaintiffs' Motion is moot and should be denied, among other reasons, based on a failure to confer, a lack of an

impasse, and the objections raised to the Plaintiffs' Interrogatory, which are incorporated herein.

## V. *Alleged untimeliness of Defendants' opposition papers.*

59. As set forth in your Deponent's letter to the Court dated August 19, 2019, it has always been my experience that the Court issues a briefing schedule for motions in the Western District, and it was my expectation that this would happen in this case.

60. Based on Plaintiffs' Motion for Entry of an Order (*See*, DKT No. 38), I have reviewed the cited local rule regarding timing of opposition papers and respectfully request that the Court allow this Opposition under a briefing schedule or, in alternative, allow this opposition to be filed late as only a brief delay lacking any prejudice to Plaintiff and arising from a mistaken expectation that a briefing schedule would be set.

61. Given the size of the Motion and the scope of the arguments set forth therein, particularly given the fact that your deponent has a very full case load and various other obligations in the law department, we also submit that additional time provided in a briefing schedule would be and is warranted.

62. As just one example of prior obligations among others, I was scheduled and preparing to begin a trial in State Supreme Court on August 15, 2019, which adjourned pending settlement on August 8, 2019, which required extensive time commitments.

63. Defendants certainly intended to oppose Plaintiffs' Motion to Compel, and advised them of this fact the day it was made, and respectfully request the opportunity to do so, particularly given the severity of the relief requested, the fact that Defendants

13

include public employees and a municipality, in light of the diligence hopefully shown by preparing a response as soon as possible when this issue was raised, and the general notion that cases and motions should be resolved on their merits.

64. Finally, if deemed untimely, we respectfully submit that the Plaintiffs' Motion should be denied for failing to meet their burden regardless of any opposition and there are no grounds to find that any opposing arguments were "waived".

**Wherefore**, the Defendants seek an Order of the Court denying Plaintiffs' Motion, in whole or in part, affording additional time and instruction on production, denying costs, attorneys fees, etc., and such other and further relief as the Court deems necessary and warranted under these circumstances.

Dated:  August 20, 2019
          Buffalo, New York

TIMOTHY A. BALL, ESQ.
Corporation Counsel

*/s/Robert E. Quinn*
By: Robert E. Quinn
65 Niagara Square - 1103 City Hall
Buffalo, NY 14202
Tel.: (716) 851-4326
rquinn@ch.ci.buffalo.ny.us

TO:   NCLEJ
      Attn.: Claudia Wilner, Esq.
      275 Seventh Avenue, Suite 1506
      New York, NY  10001
      wilner@nclej.org

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**BLACK LOVE RESISTS IN THE RUST, et al.**

      **Plaintiffs,**

         **-vs-**

**CITY OF BUFFALO, et al.**

      **Defendants.**
_____

**CERTIFICATE OF SERVICE**

Civil Action No.: 18-cv-719

    I, Robert E. Quinn, hereby certify that on August 20, 2019 the annexed document was electronically served on Counsel for the Plaintiffs in this case through the CM/ECF system:

Claudia Wilner, Esq.
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY  10001
wilner@nclej.org

I certify under penalty of perjury that the foregoing is true and correct.

Dated: August 20, 2019
      Buffalo, New York

TIMOTHY A. BALL, ESQ.
Corporation Counsel

*/s/Robert E. Quinn*
By: Robert E. Quinn
65 Niagara Square - 1103 City Hall
Buffalo, NY 14202
Tel.: (716) 851-4326
rquinn@ch.ci.buffalo.ny.us

15