UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

BLACK LOVE RESISTS IN THE RUST, et al.,

                         *Plaintiffs,*

                                                                     Case No. 1:18-cv-719

- vs -

CITY OF BUFFALO, N.Y., et al.,

                         *Defendants*.

------------------------------------------------------------x

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR JULY 24, 2019 MOTION TO COMPEL**

       Defendants have belatedly filed a declaration from counsel responding to Plaintiffs'

Motion to Compel filed nearly a month ago. To the extent the Court considers Defendants'

untimely filing—which it should not—Plaintiffs respectfully submit this Reply. Defendants'

declaration lacks any legal or evidentiary support justifying their failure to comply with their

discovery obligations, and Plaintiffs respectfully request that the Court enter an Order granting

Plaintiffs' motion.

**I.**       **Defendants' Response is Untimely and their *Post Hoc* Request for Extension is Without Merit**

       This Court should not consider Defendants' untimely response. Local Civil Rule

7(b)(2)(B), also cited in Plaintiffs' Notice of Motion, *see* ECF 34, makes clear that "[a]bsent

Court Order" a party opposing a motion "shall have fourteen (14) days after service of the

motion to file and serve responding papers." The Court did not issue an order setting alternative

deadlines, so Defendants' responding papers were due on August 8. Defendants defaulted. On

August 19, Plaintiffs moved the Court for entry of an Order granting their Motion. ECF 38. Only

then did Defendants act, filing a letter explaining that Defendants counsel was "request[ing] an

opportunity" to oppose Plaintiffs' Motion and averring that Defendants would be filing

"opposing papers to the Plaintiffs' motion, as soon as possible, and certainly . . . by August 20, 2019." ECF 39. Defendants' counsel, by his own admission, did not even "review[] the cited local rule" until he received Plaintiffs' August 19 motion. *Id.* ¶ 60. Defendants request that the Court excuse their default "as only a brief delay lacking any prejudice to Plaintiff and arising from a mistaken expectation that a briefing schedule would be set." *Id*. Defendants further state that their counsel has a "very full case load and various other obligations," warranting additional time. *Id*. ¶ 61.

Nothing in Defendants' August 19 letter or August 20 declaration justifies their failure to meet the deadline set by the Local Rules. Had Defendants truly needed additional time, they could have sought it shortly after Plaintiffs filed their Motion. *See* Fed. R. Civ. P. 6(b)(1)(A). But Defendants did not, and instead request a *post hoc* extension of the deadline. Federal Rule of Civil Procedure 6(b)(1)(B) permits the Court on "motion made" to grant an extension of time to act after the time to act has already passed if the party failed to act because of "excusable neglect." Defendants have not made a "motion" seeking such a *post hoc* extension, so the Court should deny their request for that reason. *Compare* Fed. R. Civ. P. 6(b)(1)(A) (permitting Court to extend time "with or without motion" *before* time to act expires). But to the extent the Court construes Defendants' August 19 or 20 filings to be such a motion, neither demonstrates "excusable neglect" providing cause to grant such an extension. Fed. R. Civ. P. 6(b)(1)(B).

Defendants do not cite so much as a single case providing support for why their failure constitutes "excusable neglect," perhaps because the substantial weight of authority is not on their side. The Second Circuit has strictly applied the "excusable neglect" standard to avoid rewarding dilatory neglect. In *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003), for example, the court traced a long history of the Circuit's strict consideration of the

excusable neglect standard in various contexts. The standard is generally governed by the

Supreme Court's decision in *Pioneer Investment Services Co. v. Brunswick Associates Limited*

*Partnership*, 507 U.S. 380, 392 (1993). In *Pioneer*, the Supreme Court articulated four factors to

be considered in evaluating excusable neglect: "[1] the danger of prejudice to the [non-movant],

[2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the

delay, including whether it was within the reasonable control of the movant, and [4] whether the

movant acted in good faith." *Pioneer*, 507 U.S. at 392. The focus of this test, according to the

Second Circuit, is the third factor: "the reason for the delay, including whether it was within the

reasonable control of the movant." *Silivanch*, 333 F.3d at 366.

In *Silivanch*, the Second Circuit observed that "the equities will rarely if ever favor a

party who 'fails to follow the clear dictates of a court rule'" and noted that the Circuit has

repeatedly "held that where 'the rule is entirely clear, we continue to expect that a party

claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id*. at 366-

67 (internal citations omitted); *see also Canfield v. VanAtta Buick/GMC Truck*, 127 F.3d 248,

250-51 (2d Cir. 1997) (holding not clearly erroneous the district court's decision that a lawyer's

failure to file motion papers within the time limit established by a local rule was not excusable

neglect under Rule 60(b)); *United States v. Hooper*, 43 F.3d 26, 28-29 (2d Cir. 1994) (per

curiam) (affirming denial of Rule 4(b) extension where delay resulted from legal assistant's

ignorance of the rules). "The mere 'possibility that a court may properly find excusable

neglect [where it consists of inadvertence, ignorance of the rules, or mistakes construing the rules

does not] alter[] the principle that failure to follow the clear dictates of a court rule will generally

not constitute such excusable neglect." *Silivanch*, 333 F.3d at 368 (citing *Canfield*, 127 F.3d at

250). Indeed, "the excusable neglect standard can never be met by a showing of inability or

refusal to read and comprehend the plain language of the federal rules." *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir. 1994) (internal citations omitted); *see also Johnston v. Johnston*, 536 B.R. 576, 584 (D. Vt. 2015) (finding party had not met burden to demonstrate excusable neglect warranted denial of post hoc extension of time to file brief.)

Defendants' counsel's lingering "expectation" that this Court would set a briefing schedule, while he failed to read the governing local rule and took no action to inquire whether this Court would issue such a schedule or to request Plaintiffs' consent for a motion seeking extension of deadlines, does not constitute "excusable neglect." Accordingly, this Court should deny Defendants' *post hoc* request for an extension and should not consider Defendants' opposition papers.

II.    **Defendants Have Offered No Valid Justifications for their Repeated Failure to Meet their Discovery Obligations**

Despite Defendants' failure to timely respond to Plaintiffs' Motion, Plaintiffs nonetheless submit the below arguments in response to Defendants' counsel's declaration. Because Defendants' arguments are without merit, this Court should grant Plaintiffs' Motion.

a.    *The Parties Have Extensively Conferred and Reached an Impasse as to the Issues Raised in Plaintiffs' Motion*

Plaintiffs' Memorandum of Law and accompanying materials recount their extensive efforts to meet and confer with Defendants regarding the issues raised in Plaintiffs' motion, including Defendants' production of ESI. *See* ECF 4-1, at 2-6, ECF 34-2, ¶¶ 4-31. In response, Defendants have filed a declaration from their counsel disputing, without evidence, the adequacy of these conferrals, ECF 40, ¶ 4, describing the various productions Defendants have thus far made, and attaching a scattershot collection of emails, most of which do not relate to the issues raised in Plaintiffs' motion.

4

Defendants spend several pages of their counsel's declaration explaining that they have "timely responded to all discovery requests." ECF 40, ¶¶ 5-18. Yes, Defendants have produced ten thousand pages of discovery in the nine months since discovery commenced, but most of it consists of documents Defendants had previously published on their website or produced through pre-suit Freedom of Information Law Requests, and much of the remainder came only after more than a dozen conferrals with Defendants and several conferences with the Court. Additionally, that Defendants have made partial production has no bearing on whether they have failed to meet their obligations to provide the specific documents at issue in Plaintiffs' motion.

b.  *Defendants Provide No Compelling Justification for their Failure to Search for and Produce ESI*

Defendants present no reason why Plaintiffs are not entitled to ESI, as the court directed on May 30. *See* May 30, 2019 Transcript (Tr.), 8:21-24. Defendants' counsel specifically stated that he "[didn't] see any issues" with the Court's May 30 proposal of searching twenty search terms and twenty custodians, *see* Tr. 8:11-20. Defendants' counsel does not explain why he waited until two weeks had passed following Plaintiffs' transmittal of search terms and custodians to advise of his difficulties with the search, *see* ECF 34-2 ¶¶ 26-28, Exs. R-S.  Nor does he explain why, if he objected to the complexity of Plaintiffs' search terms, he failed to use the simple, one-word search terms Plaintiffs provided on February 4, 2019, *see* ECF 34-2, ¶ 17 & Ex. J & K. Nor does Defendants' counsel explain why he never produced any results from his supposed request to each named Defendant and four other identified custodians to "search all records . . . specifically including databases, computer files, paper files, and emails." *See* ECF 34-2 ¶ 13 & Ex. H. Indeed, Defendants' counsel has provided no evidence that this search ever occurred.

Rather, Defendants now offer their counsel's "understanding" of the search capacity of the email system of the Buffalo Police Department, which uses Lotus Notes, which he claims is "limited to basic search terms" and "does not include a way to retain and produce 'metadata.'" ECF 40, ¶¶ 29-30.[1] Defendants argue that they "could not perform the search" of the search terms Plaintiffs sent pursuant to the Court's May 30 directive because the requested emails are "not reasonably accessible." ECF 40, ¶¶ 34, 39. Defendants offer no evidentiary support for these assertions, and Plaintiffs have no reason to believe that the Lotus Notes system in fact has the limitations Defendant's counsel claims.

Defendants propose that they can insert single word searches and manually print responsive documents, which, as Plaintiffs' Motion explained, will strip metadata and render the emails not reasonably usable. *See* Fed. R. Civ. P. 34(a)(1)(A); Local Civ. R. 26(e)(5) (requiring preservation of "the integrity of the electronic document's contents."); *see also*, *e.g.*, *Aguilar v. Immigration & Customs Enf't Div.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008) (producing ESI in a "reasonably usable form. . . will enable the receiving party to have the same ability to access, search, and display the information."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2007 U.S. Dist. LEXIS 2650, at *10 (E.D.N.Y. Jan. 12, 2007) (holding that once plaintiffs objected to the print-scan production of ESI which stripped documents of metadata, defendants were required to produce ESI in its native format).

But Defendants acknowledge that there is an alternative method that will preserve the usability of the documents. They admit that they have "reached out to an electronic discovery vendor . . . to determine the feasibility and cost of performing a search as outlined by the Court of twenty (20) custodians and twenty (20) terms." ECF 40, ¶ 41. Defendants provide an estimate

---

[1] Defendants' submission offers no reasons why they have not yet searched non-BPD custodians such as Defendant Brown who do not use Lotus Notes.

that this engagement may cost them between $8,175.00 and $10,075.00, with additional costs for potential future searches and storage capacity.

These costs are far from unreasonable in federal litigation, and the situation is not one where cost-shifting or sharing would in any way be appropriate. *See Zubulake*, 217 F.R.D. at 324; *see generally* Plaintiffs' arguments at ECF 34-1, at 12-14 (explaining absence of support for cost-shifting here). Furthermore, Defendants bear the evidentiary burden to demonstrate that cost-shifting is warranted, *Hallmark v. Cohen & Slamowitz, LLP*, 2016 U.S. Dist. LEXIS 37841, *10-13 (W.D.N.Y. Mar. 23, 2016, and Defendants have submitted no evidence in support of their request. Accordingly, the Court should order Defendants to comply with the Court's prior directive and produce responsive emails with associated metadata at their own expense. Additionally, because of Defendants' repeated dilatory tactics and failure to justify their position, the Court should award Plaintiffs' reasonable expenses, including attorneys' fees, with respect to Plaintiffs' making the instant Motion. *See* ECF 34-1, at 15 (setting forth Plaintiffs' arguments in support of their entitlement to reasonable expenses, including attorneys' fees).

c.  *Plaintiffs are Entitled to Production of the BPD Daily and Monthly Statistical Reports*

With respect to Plaintiffs' requests for the production of all BPD Housing Unit, Traffic Unit, and Strike Force Monthly and Daily Statistics Reports from 2013 to the present, Defendants assert that they have offered certain "potential compromises" and are uncertain whether the parties are at an "actual impasse." ECF 40, ¶¶ 45-46. The exhibits attached to Defendants' motion do not reflect any compromises offered by Defendants. The parties are in fact at an impasse because Defendants have rejected Plaintiffs' proposed compromises and refuse to produce the documents Plaintiffs seek. ECF 34-2, ¶¶ 45-48 & Ex. R & T.

Whereas in prior conferrals Defendants appeared mostly concerned regarding the appropriate scope of redacting these reports, Defendants now appear to object to the breadth of Plaintiffs' requests and their relevance to the claims and defenses in this litigation. ECF 40, ¶ 47. As Plaintiffs have previously explained, the Monthly Reports tabulate the total number of traffic tickets issued and misdemeanor traffic arrests made by the unit each month and contain narrative information about traffic enforcement activities. *See, e.g.* ECF 34-2, Ex. V. The Daily Reports provide similar information for each day along with statistical tabulations for each individual officer. *Id.*, Ex. N. The Reports directly relate to the factual allegations undergirding Plaintiffs' Fourth Amendment, Equal Protection, and due process/revenue harvesting claims. *See* ECF 34-1, at 15-16.

That Plaintiffs have not yet moved for class certification does not affect the relevance of these Reports or Plaintiffs' ability to seek them in pre-certification discovery.  Indeed, these Reports may well inform class certification questions such as numerosity and commonality. And regardless of class certification, the Reports relate to establishing a pattern or practice sufficient to demonstrate *Monell* liability. *See, e.g., Floyd v. City of New York*, 959 F.Supp.2d 540, 590, 600-01 (S.D.N.Y 2013) (finding that monthly activity reports that tracked the enforcement activity numbers of individual New York police officers were evidence of the pressure imposed by the NYPD on its officers to increase their stop-and-frisk activity without regard for constitutionality, which was a basis for holding the City of New York liable for its officers' unconstitutional stops-and-frisks activity under *Monell*).

 Defendants' unsupported assertion that Plaintiffs have "already obtained this information" via third party discovery, ECF 40, ¶ 48, is entirely inaccurate. Although Plaintiffs have obtained comprehensive statistical data concerning tickets issued by the BPD, the data does

not specify whether Housing Unit or Strike Force officers issued those tickets, *see* ECF 34-20,

nor does it provide narrative information about *how* BPD officers engage in day-to-day policing.

Only the Reports contain this information.

Further, as explained in Plaintiffs' Memorandum of Law, production of these reports

(which are stored electronically) would not entail significant burden, and Defendants' assertions

that privilege or other protections precludes their production are without merit. *See* ECF 34-1, at

17-20. Defendants' conclusory submission does nothing to overcome these arguments.

Accordingly, Plaintiffs' respectfully request that the Court order Defendants to produce the

requested Reports.

     *d.  Defendants' Eleventh-Hour Production of Special Orders Identifying Unit Transfers*

As Plaintiffs' Motion explained, the Parties had reached an impasse as to the sufficiency

of Defendants' Answer to Interrogatory 1, which seeks "Employment History" of Housing Unit

and Strike Force officers. *See generally* ECF 34-1, at 8-9 ; ECF 34-2, ¶¶ 49-50 & Ex. D.

However, 2.5 hours before filing their untimely opposition to Plaintiffs' Motion, Defendants

produced 34 pages of Special Orders that appear responsive to Interrogatory 1. Plaintiffs are

reviewing this eleventh-hour production and will advise whether any further dispute remains.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court issue an Order

compelling Defendants (1) to comply with the Court's May 30 directive that Defendants begin

searching for and producing ESI immediately; (2) to produce all Housing, Strike Force, and

Traffic Unit Daily and Monthly Statistics Reports from 2013 to the present with only the

redactions proposed by Plaintiffs; and (3) to supplement their response to Plaintiffs'

interrogatory seeking relevant dates of employment of Strike Force and Housing Unit personnel

or provide the requested Special Orders.  Plaintiffs further request that the Court grant them an

9

award of reasonable expenses, including attorney's fees, associated with Plaintiffs' making this

motion pursuant to Federal Rule of Civil Procedure 37(a)(5)(A).

<table>
<tr><td>

*/s/ Keisha A. Williams*
Joseph Keleman
Keisha Williams
WESTERN NEW YORK LAW CENTER
Main Seneca Building
237 Main Street, Suite 1130
Buffalo, NY 14203
Tel: (716) 828-8415
Fax: (716) 270-4005
jkeleman@wnylc.com
kwilliams@wnylc.com

</td><td>

*/s/ Claudia Wilner*
Claudia Wilner
Travis W. England*
Britney Wilson*
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
wilner@nclej.org
england@nclej.org
wilson@nclej.org

</td></tr>
</table>

*/s/ Darius Charney*
Darius Charney
Chinyere Ezie
Brittany Thomas*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6475
DCharney@ccrjustice.org
CEzie@ccrjustice.org
BThomas@ccrjustice.org

*Application for admission forthcoming.*

10