UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BLACK LOVE RESISTS IN THE RUST, et al.,    :
                                                                    :
                    Plaintiffs,     :
                                                              :
          v.                 :   Case No. 1:18-cv-00719
                                                              :
CITY OF BUFFALO, N.Y., et al.,     :
                                                              :
                  Defendants.    :
                                                              :
                                                              :
                                                              :
------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE BUFFALO POLICE DEPARTMENT INTERNAL AFFAIRS DIVISION FILES

### PRELIMINARY STATEMENT

In its May 30, 2019 status conference, this Court established a process to facilitate the production of certain records of the Buffalo Police Department (BPD) Internal Affairs Division (IAD) that Plaintiffs had originally requested in November 2018. In accordance with the Court's instructions, Plaintiffs sent Defendants a list of search terms for IAD records, *see* Charney Decl. ¶¶ 9-10, and based on what Defendants' searches of those terms returned, Plaintiffs requested that Defendants produce 168 records that Plaintiffs had identified as relevant to their claims. Charney Decl. ¶ 15, Ex. G. Defendants objected to production, *see* Charney Decl. ¶ 16, Ex. H, and after a final telephonic conferral, the Parties were unable to reach an agreement. Charney Decl. ¶ 17. Plaintiffs therefore respectfully move pursuant to the Federal Rules of Civil Procedure 37(a)(3)(B)(iv) for an Order compelling Defendants to produce all 168 of the highlighted IAD files that Plaintiffs requested. In the alternative, Plaintiffs request that the Court

conduct an *in camera* review of the highlighted files to determine which files and/or which portions of each file contain information relevant to Plaintiffs' claims and direct Defendants to produce all such materials.

## FACTUAL BACKGROUND

The Complaint in this action contains detailed allegations about several unconstitutional and discriminatory policies and/or practices of the BPD and the City of Buffalo. *See*, *e.g.*, ECF. No. 1 (Compl.) ¶¶ 87-117, 118-148. Part of Plaintiffs' allegations surround whether the BPD and the City were on notice of and deliberately indifferent to alleged unconstitutional behavior by its officers related to Plaintiffs' claims. *See Id.* ¶¶ 118-148. To that end, Plaintiffs' November 2018 Requests for Production of Documents sought records maintained by the BPD IAD regarding investigations of citizen complaints about: (1) checkpoints established by the Strike Force or Housing Units, (2) alleged racial profiling, bias and discrimination by the BPD, and (3) BPD traffic stops, traffic ticketing, and/or other traffic enforcement practices.  Charney Decl. ¶ 5, Ex. A. Defendants responded with a string of boilerplate objections and cited N.Y. Civil Rights Law § 50-a. *Id.*

Plaintiffs conferred with Defendants over several months with respect to the production of IAD records. Charney Decl. ¶ 7, Ex. C at 9 and D at 4. As of May 2019, Plaintiffs still had not received any responsive IAD records from Defendants. Charney Decl. ¶ 8; ECF No. 24 at 4-6. In a status conference concerning discovery on May 30, 2019, this Court directed Plaintiffs to provide Defendants with a list of ten initial search terms for IAD records. Charney Decl. ¶ 9, May 30, 2019 Tr. at 10:12-13; 12:20-23. The Court also indicated that if the searches for each of the 10 search terms returned 200 or less IAD case files, it expected Defendants to review each of those files by hand to determine which were in fact responsive to Plaintiffs' document requests.

Charney Decl. ¶ 9; May 30, 2019 Tr. at 13:5-14:22. The Court also expressed its willingness to conduct an *in camera* review of the responsive records and instructed Defendants to note any redactions made via a privilege log. Charney Decl. ¶ 9 May 30, 2019 Tr. at 14: 24-25; 15:1-10.

Per the court's instructions, Plaintiffs sent Defendants their ten IAD search terms on June 27, 2019, and thereafter amended one of those search terms on July 12, 2019 in order to further narrow the search results. Charney Decl. ¶ 10. In response, Defendants sent Plaintiffs eight Excel spreadsheets listing summaries of the IAD records that Plaintiffs' search terms had generated. Charney Decl. ¶ 11. Plaintiffs then sought clarification on what Defendants required in order to produce the responsive IAD files. Charney Decl. ¶ 12, Ex. E. Defendants stated that the next steps would be to review the Excel spreadsheets to determine the responsiveness of the records described therein. Charney Decl. ¶ 13, Ex. E.

On July 18, Plaintiffs' counsel Darius Charney of the Center for Constitutional Rights (CCR) and Claudia Wilner and Travis England of the National Center for Law and Economic Justice (NCLEJ), conferred with Defendants' counsel Robert Quinn by phone. Charney Decl. ¶ 14, Ex. F. They agreed that Plaintiffs would review the eight Excel spreadsheets Defendants had produced in an attempt to narrow the universe of records at issue, but they did not agree on any subsequent steps. *Id*.

Pursuant to this agreement, on July 24, 2019, Plaintiffs sent Defendants versions of the eight Excel spreadsheets with yellow highlights denoting 168 IAD files that Plaintiffs had identified as rrelevant to their claims. Charney Decl. ¶ 15, Ex. G. Plaintiffs requested Defendants produce the files for each highlighted record in their entirety. *Id*.

On July 29, 2019, Defendants sent an email to Plaintiffs in which they did not indicate which, if any, of the 168 highlighted IAD cases they agreed with Plaintiffs were responsive and

relevant. Instead, Defendants (i) argued that all highlighted IAD files that concerned traffic stops and tickets occurring outside of checkpoints and involving officers not in the BPD Strike Force and Housing Units "appear[ed] to be beyond the scope of the complaint," (ii) objected to producing those officer misconduct complaints investigated by IAD that were not sustained, (iii) disagreed that Plaintiffs would be entitled to the entire file for each IAD case they had identified, and (iv) claimed that N.Y. Civil Rights Law § 50-a prohibited them from disclosing much of the contents of the highlighted IAD files. Charney Decl. ¶ 16, Ex. H. Defendants asked Plaintiffs to provide their position on each of these four issues, which Plaintiffs did on July 30. *Id.*

In their July 30 response, Plaintiffs reminded Defendants that their complaint challenges both the checkpoint and non-checkpoint traffic stop and ticketing practices of the entire BPD, explained why even unsustained IAD misconduct complaints are relevant to their municipal liability claims in this case and why they are entitled to entirety of each of the 168 IAD files they flagged as relevant, and reiterated their position that N.Y. Civil Rights Law § 50-a does not bar discovery of otherwise relevant IAD records. Charney Decl. ¶ 16, Ex. H. On the § 50-a issue Plaintiffs also reminded Defendants of the draft stipulated confidentiality order that they had circulated to Defendants in October 2018, which, by its terms, would have prohibited disclosure of the highlighted IAD files to non-parties, but which Defendants have thus far refused to agree to. Charney Decl. ¶¶ 6, 16, Exs. B, H.

On August 6, Plaintiffs' counsel Darius Charney and Chinyere Ezie of CCR and Claudia Wilner, Travis England, and Britney Wilson of the NCLEJ conferred again with Defendants' counsel Robert Quinn by phone in an unsuccessful attempt to resolve the dispute. During that call, the parties all agreed that Court intervention was therefore necessary. Charney Decl. ¶ 17.

\* \* \*

4

Pursuant to Federal Rule of Civil Procedure 37(a)(1), Plaintiffs' counsel hereby certify that they have conferred in good faith regarding the subject of this motion, as described above and in the accompanying Declaration of Darius Charney.

## ARGUMENT

Under Federal Rule of Civil Procedure 37(a)(3)(B)(iv), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if. . . a party fails to produce documents." Fed. R. Civ. P. 37(a)(3)(B)(iv); *see also Topps Co. v. Koko's Confectionary & Novelty*, No. 16-CV-5954, 2018 U.S. Dist. LEXIS 158261, at *15 (S.D.N.Y. Sept. 17, 2018) (internal citations and quotations omitted). ("Evasive" or "incomplete disclosure[s]" "must be treated as a failure to…disclose") *Id; Wells Fargo Bank N.A. v. LLHC Realty, LLC,* No. 6:15-cv-06680-FPG-MWP, 2018 U.S. Dist. LEXIS 156304, *19 (W.D.N.Y. Sept. 13, 2018); *Tucker v. Am. Int'l Grp., Inc.*, 281 F.R.D. 85, 99 n.28 (D. Conn. 2012).

As reflected in the case summaries in the eight spreadsheets submitted to the Court, *see* Charney Decl. ¶ 15 Ex. H, all of the 168 BPD Internal Affairs Division (IAD) files highlighted by Plaintiffs appear to contain information that is responsive to Plaintiffs' document requests and highly relevant to their claims. Moreover, because the fairness and thoroughness of IAD's investigations of the misconduct alleged in each of the 168 cases is relevant to Plaintiffs' municipal liability claims against the City of Buffalo, Plaintiffs must have access to the entirety of each of the 168 files to assess the manner in which those 168 investigations were conducted. Finally, Defendants' continued insistence that N.Y. Civil Rights Law § 50-a bars production of the otherwise relevant materials contained in the 168 IAD files is contrary to law, especially in light of Plaintiffs' willingness to treat all of the files as confidential. Accordingly, the Court

should direct Defendants to produce the entirety of all 168 highlighted IAD files to Plaintiffs

forthwith. In the alternative, Plaintiffs respectfully request that the Court conduct an *in camera*

review of the 168 files to determine which files (and which portions of each file) contain

discoverable information and, upon making those determinations, direct Defendants to produce

all such information to Plaintiffs.

### I.  All of the Highlighted IAD Files Contain Information That is Responsive to Plaintiffs' Document Requests and Relevant to Plaintiffs' Claims

The case summaries for the 168 IAD files highlighted in the eight spreadsheets indicate

that all 168 files contain information that is directly responsive to Plaintiffs'

document requests and highly relevant to their claims. All 168 files appear to involve one or

more of the following categories of alleged misconduct by BPD officers: (1) racial

profiling/racially biased law enforcement action, (2) improper traffic stops and/or improper

conduct during traffic stops, (3) improperly issued traffic tickets or summonses, both at and

outside of BPD vehicle checkpoints, and (4) other improper conduct related to BPD checkpoints.

*See* Charney Decl. Ex. G. These are precisely the categories of alleged officer misconduct

covered by Plaintiffs' Document Request Nos. 41-43, which, respectively, seek production of

citizen complaints about (1) "checkpoints established by the [BPD] Strike Force or Housing," (2)

"racial profiling, bias and discrimination by BPD", and (3) "BPD traffic stops, traffic ticketing,

and/or other traffic enforcement practices." *See* Charney Decl. ¶ 5, Ex. A. These categories of

misconduct also match those alleged in Plaintiffs' Complaint. *See* ECF No. 1 (Compl.) ¶¶ 31, 36

49, 76, 85-86, 87-90, 149-50, 163, 166, 173-74, 191-92, 204, 213-14, 225, 253, 258-259, 263-

265.

Because all 168 highlighted IAD files appear to involve misconduct similar to that

alleged in Plaintiffs' Complaint, all are relevant to Plaintiffs' claims and therefore discoverable,

regardless of whether they were substantiated. *See*, *e.g. Sowell v. Chappius*, No. 07-CV-6355, 2010 WL 1404004, *1 (W.D.N.Y. Mar. 31, 2010) ("[P]rior complaints made against the defendants, whether substantiated or not, are discoverable in § 1983 civil rights actions so long as the complaints are similar to the constitutional violations alleged in the complaint"); *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006) ("Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus are discoverable."); *Bradley v. City of New York*, 04 Civ. 8411, 2005 WL 2508253, *2 (S.D.N.Y. Oct. 3, 2005) ("the courts have repeatedly directed production of such complaints, whether substantiated or unsubstantiated or even withdrawn. . . and that documentation has frequently played a role in the courts' analysis of merits of an array of claims under section 1983").

Indeed, "there is a stronger argument in favor of disclosure of unsubstantiated complaints in cases [like this] which involve a Section 1983 claim against a municipality," *Dobson v. Dougherty*, 17-cv-1014, 2018 WL 63213909, *3-4 (W.D.N.Y. Dec. 4, 2018), because such claims turn on the municipality's notice of and the sufficiency of its response to the risk of constitutional violations by its subordinate officers. *See, e.g., Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986) ("The City's knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to [plaintiff's] contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force."); *Harper v. Port Auth. of N.Y. & N.J.*, No. 05 Civ. 5534, 2006 WL 1910604, *2 (S.D.N.Y. July 10, 2006) (holding that "because Harper asserts claims based on *Monell,* the Port Authority's knowledge of, and response to, defendants' behavior and complaint history is relevant," and ordering production of substantiated and

unsubstantiated officer complaint records). Thus, citizen complaints to IAD about racially-biased policing and/or misconduct of BPD officers related to checkpoints or traffic stops or ticketing, whether substantiated or not, are directly relevant to Plaintiffs' allegations that the City of Buffalo and Defendants Brown, Lockwood and Derenda had notice of potential unconstitutional and racially discriminatory vehicle checkpoint and traffic enforcement practices of the BPD. Compl. ¶¶ 118-124; *see also Vann v. City of New York*, 72 F.3d 1040, 1049 (2d. Cir. 1995)("To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious . . . An obvious need may be demonstrated through proof of repeated complaints of civil rights violations."); *Fiacco*, 783 F.2d at 328 ("Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force.").

Similarly, the fairness and thoroughness (or lack thereof) of IAD's investigations, particularly in those highlighted cases that it failed to substantiate, would be highly probative of Defendant City of Buffalo's deliberately indifferent failure to supervise and/or discipline BPD officers who engage in unconstitutional conduct. *See Fiacco*, 783 F.2d at 328 ("The fact that none of the claims had yet been adjudicated in favor of the claimant was not material; if the City's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim, such an attitude would bespeak an indifference to the rights asserted in those claims."); *see also Jenkins v. City of New York*, 15 CV 5889, 2019 WL 2367060, * 7-9 (E.D.N.Y. June 5, 2019)(holding that New York Police Department Internal Affairs Bureau's "uninterested and superficial" investigations of prior unsubstantiated excessive force complaints created triable issue of fact as to City of New York's deliberately indifferent

failure to supervise); *H.H. v. City of New York*, No. 11-CV-4905, 2017 WL 3396464, * 8 (E.D.N.Y. Aug. 7, 2017)("Unsubstantiated allegations may form the basis of a deliberate indifference claim where there is evidence to suggest that the investigation into the allegations was inadequate."). To assess the fairness and thoroughness of IAD's investigations, Plaintiffs need not only summaries of the allegations and final dispositions of each of the 168 highlighted IAD cases, but all documents and information in each case file concerning the investigative steps taken (e.g. lists of witnesses interviewed, witness statements, interview notes, information about all of the documentary and physical evidence considered by the investigators), the specific bases for the final disposition decisions, and, in the sustained cases, the disciplinary penalties imposed and the justifications for those penalties. Thus, the entirety of each of the 168 highlighted IAD files is relevant to Plaintiffs' *Monell* claims and should be produced.

## II.    N.Y. Civil Rights Law § 50-a Does Not Bar Production of Any Portions of the Highlighted IAD Files

Equally meritless is Defendants' continued insistence that New York Civil Rights Law § 50-a bars discovery of otherwise relevant information contained in the 168 highlighted IAD files. *See* Charney Decl. ¶ 16, Ex. H; Ex. E, May 30, 2019 Tr. at 12. Section 50-a creates a prohibition under New York State law against the public disclosure of police officer personnel records, including disciplinary and misconduct records, absent a court order. N.Y. Civ. Rts L. § 50-a(1). However, the courts of this district have repeatedly held that because federal rather than state law determines questions of privilege in § 1983 actions, § 50-a does not bar discovery of police officer personnel records in such cases. "[T]he only limitation on disclosure in [a § 1983] action is the relevancy criterion of Fed. R. Civ. P. 26(b)(1)." *Martin v. Lamb*, 122 F.R.D. 143, 145-47 (W.D.N.Y. 1988) (citing *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988); *see also Dobson v. Dougherty*, 17-cv-1014, 2018 WL 63213909, *3-4 (W.D.N.Y. Dec. 4, 2018)("Section 50-a of

the New York Civil Rights Law does not prohibit the discovery of police personnel records in federal suits."); *Worthy v. City of Buffalo*, 11-cv-872a, 2014 WL 4640884, *3 (W.D.N.Y. Sep. 16, 2014)("It is undisputed that under federal law, New York Civil Rights Law section 50–a does not prohibit discovery of police personnel documents."); *Mitchell v. Whitenight*, 11-cv-0684, 2013 WL 5936978, *1 (W.D.N.Y. Nov. 4 2013)("New York Civil Rights Law § 50–a does not prevent disclosure of relevant evidence."). Thus, to the extent the Court finds that all or substantial portions of each of the 168 highlighted IAD case files are relevant to Plaintiffs' claims, Defendants must produce them to Plaintiffs notwithstanding New York Civil Rights Law 50-a.

Defendants' 50-a-related concerns are all the more perplexing given Plaintiffs' willingness to enter into a stipulated confidentiality order that, by its terms, would prohibit disclosure of the highlighted IAD files to non-parties. *See* Charney Decl. ¶ 6, Ex. B. Courts in this district have found such orders to be a sufficient means of addressing the police officer privacy and safety concerns animating Section 50-a. *See*, *e.g.*, *Robinson v. New York*, 08-CV-00908(S)(M), 2010 WL 1930657, at *2 (W.D.N.Y. May 12, 2010); *Hamilton v. Ross*, CIV-89-431T, 1991 WL 327520, at *3 (W.D.N.Y. Nov. 5, 1991).[1] Thus, N.Y. Civil Rights Law §50-a cannot bar or restrict disclosure of the 168 highlighted IAD files to Plaintiffs in this action.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an order compelling Defendants to produce the entirety of each of the 168 IAD files that Plaintiffs have

---

[1] Indeed, Defendants in another recent federal civil rights class action against a municipal police department in New York State entered into an almost identical stipulated confidentiality order to the one proposed here, under which those defendants produced police officer civilian complaint and internal affairs records to the plaintiffs. *See Floyd v. City of New York*, 08 Civ. 1034, ECF No. 61 (S.D.N.Y. Jan. 13, 2009).

identified. Alternatively, Plaintiffs request that the Court conduct an *in camera* review of the 168

files to determine which files and/or portions of each file contain discoverable material and direct

Defendants to produce all such material to Plaintiffs.

Dated:  August 30, 2019

                                                    Respectfully submitted,

*/s/ Keisha A. Williams*                             */s/ Claudia Wilner*
Joseph Keleman                                       Claudia Wilner
Keisha Williams                                      Travis W. England*
WESTERN NEW YORK LAW CENTER                          Britney Wilson*
Main Seneca Building                                 NATIONAL CENTER FOR LAW
237 Main Street, Suite 1130                          AND ECONOMIC JUSTICE
Buffalo, NY 14203                                    275 Seventh Avenue, Suite 1506
Tel: (716) 828-8415                                  New York, NY 10001
Fax: (716) 270-4005                                  212-633-6967
jkeleman@wnylc.com                                   wilner@nclej.org
kwilliams@wnylc.com                                  england@nclej.org
                                                     wilson@nclej.org

*/s/ Darius Charney*
Darius Charney
Chinyere Ezie
Brittany Thomas*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6475
DCharney@ccrjustice.org
CEzie@ccrjustice.org
BThomas@ccrjustice.org