UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BLACK LOVE RESISTS IN THE RUST, et al.,  :
:
               Plaintiffs,  :
:
     v.  :   Case No. 1:18-cv-00719
:
CITY OF BUFFALO, N.Y., et al.,  :
:
               Defendants.  :
:
:
:
:
------------------------------------------------------------ X

## DECLARATION OF DARIUS CHARNEY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO PRODUCE BUFFALO POLICE DEPARTMENT INTERNAL AFFAIRS DIVISION FILES

I, Darius Charney, declare the following under penalty of perjury, pursuant to 28 U.S.C. § 1746:

    1.    I am a Senior Staff Attorney at the Center for Constitutional Rights (CCR).

    2.    I am one of the attorneys representing Plaintiffs and the proposed classes in this action, and I am fully familiar with the facts stated in this declaration.

    3.    I am an attorney admitted to practice in the Western District of New York.

    4.    I submit this declaration in support of Plaintiffs' motion to compel Defendants to produce certain Internal Affairs Division (IAD) files of the Buffalo Police Department (BPD).

    5.    Plaintiffs' November 2018 Requests for Production of Documents sought: "All Documents and Communications relating to any comments, complaints, grievances or concerns You received verbally or in writing" concerning the following topics: (1) checkpoints established by the BPD Strike Force or Housing Unit; (2) racial profiling, bias and discrimination by the BPD; and (3) BPD traffic stops, traffic ticketing, and/or other traffic enforcement practices.

Defendants responded with a string of boilerplate objections and cited N.Y. Civil Rights Law § 50-a. *See* Ex. A at 28-29. (First Supplemental Responses to Requests 41-43).

6. Plaintiffs had previously circulated, in October 2018, a draft stipulated confidentiality order to Defendants, which, by its terms, would prohibit disclosure of the IAD files to non-parties. *See* Ex. B. Defendants have thus far refused to agree to the proposed order.

7. Defendants indicated that the BPD's IAD files would likely contain documents responsive to Plaintiffs requests. Therefore, Plaintiffs conferred with Defendants over several months with respect to the production of IAD records. *See* Ex. C at 9; Ex. D at 4.

8. As of May 2019, Plaintiffs still had not received any responsive IAD records from Defendants. *See* ECF 24 at 4-6.

9. At the May 30, 2019 conference, the Court stated that the IAD files were "within the scope of discovery" and ordered Plaintiffs to provide Defendants with a list of ten initial search terms for Defendants to run searches in its electronic IAD case database, which is known as IAPro. May 30, 2019 Tr. at 10:12-13; 12:20-23. The Court also indicated that if the IA Pro searches for each of the 10 search terms returned 200 or less IAD case files, it was the Court's expectation that Defendants would review each of those files by hand to determine which were in fact responsive to Plaintiffs' document requests. *Id.* at 13:5-14:22. The Court further offered to conduct an *in camera* review of the responsive records to the extent Defendants noted any withholding or redactions on their privilege log. *Id.* at 14:24-25; 15:1-10.

10. On June 27, Plaintiffs sent Defendants a list of ten initial search terms for the IAD records. Those terms were: "checkpoint", "check point", "roadblock", "road block", "traffic", "summons", "ticket", "racial", "discriminat", and "profil". Subsequently, on July 12, after

Defendants' counsel informed me that the search for "traffic" returned more than 300 entries, Plaintiffs agreed to replace the "traffic" search term with "traffic stop."

11. On July 11 and 18, Defendants sent Plaintiffs eight Excel spreadsheets containing summaries of the IAD files that the searches for Plaintiffs' search terms in the IA Pro database had returned.

12. On July 12, Plaintiffs sought clarification on what Defendants required in order to produce the responsive IAD files. *See* Ex. E (July 12 email from D. Charney to R. Quinn).

13. On July 15, Defendants stated that the next steps would be to review the Excel spreadsheets to determine the responsiveness of the records described therein. *See* Ex. E (July 15 email from R. Quinn to D. Charney).

14. On July 18, I, along with Plaintiffs' counsel Claudia Wilner and Travis England of the National Center for Law and Economic Justice (NCLEJ), conferred with Defendants' counsel Robert Quinn by phone. We agreed that Plaintiffs would review the eight Excel spreadsheets Defendants had produced in an attempt to narrow the universe of IAD records at issue, but we did not agree on any subsequent steps. *See* Ex. F (July 18 email chain).

15. On July 24, Plaintiffs sent Defendants highlighted versions of the eight Excel summary spreadsheets with yellow highlights identifying 168 records Plaintiffs identified as responsive to Plaintiffs' document requests and relevant to Plaintiffs' claims in this action. Plaintiffs sought production of the entire case file for each highlighted record. *See* Ex. G (July 24 email and attached spreadsheets).[1]

16. On July 29, Defendants sent an email to Plaintiffs in which they did not indicate which, if any, of the 168 highlighted IAD files they agreed were responsive and relevant.

---

[1] In order to create legible PDFs, Plaintiffs have adjusted the formatting of the spreadsheets. Plaintiffs did not change the content of the spreadsheets in any way.

Instead, Defendants (i) argued that highlighted IAD cases concerning traffic stops/summonses/tickets that occurred outside of checkpoints and involved non-Strike Force or Housing officers and therefore "appear[ed] to go beyond the scope of [Plaintiffs'] complaint", (ii) noted that they "generally object" to producing IAD officer misconduct complaints that are not sustained (iii) disagreed that Plaintiffs would be entitled to the entire file for each IAD case they had highlighted and (iv) contended that N.Y. Civil Rights Law § 50-a prohibited them from disclosing much of the content within each of the highlighted IAD files. Defendants asked Plaintiffs to provide their position on each of these issues, which Plaintiffs did on July 30. *See* Ex. H (July 29-30 email chain).

17. On August 6, I, along with Plaintiffs' counsel Chinyere Ezie of CCR and Claudia Wilner, Travis England, and Britney Wilson of NCLEJ, conferred again by telephone with Defendants' counsel Robert Quinn, who continued to maintain each of the objections raised in his July 29 email. The parties therefore agreed on that phone call that they need Court intervention to resolve this dispute.

Dated: August 30, 2019

                                              /s/ Darius Charney
                                              Darius Charney