**Claudia Wilner**

| | |
|---|---|
| **From:** | Darius Charney <dcharney@ccrjustice.org> |
| **Sent:** | Tuesday, July 30, 2019 2:27 PM |
| **To:** | Quinn,Robert E |
| **Cc:** | Claudia Wilner; Travis England |
| **Subject:** | Re: BLRR v City of Buffalo |

Rob-


Thank you for your response and for clarifying Defendants' positions regarding Plaintiffs' IA complaint discovery requests and the kinds of materials and information that are contained in the complaint files, and we're sorry to hear about the house troubles.


 As an initial matter, Plaintiffs believe that all of the complaints that we highlighted in yellow are responsive to our document requests 41-43. Those three requests respectively seek production of complaints about (i) "checkpoints established by the  Strike Force or Housing"  (Request 41), (ii) "racial profiling, bias and discrimination by BPD"  (Request 42), and (iii) "BPD traffic stops, traffic ticketing, and/or other traffic enforcement practices" (Request 43). By their terms, Requests 42 and 43 clearly encompass incidents of alleged misconduct occurring outside of checkpoints and involving BPD officers beyond just those in the Strike Force and Housing Unit. So, in answer to your question, yes, it is our position that all citizen complaints involving traffic stops/moving violations/tickets/summonses should be turned over. Your claim that they "would appear to go beyond the scope of our complaint"- which sounds like a relevancy objection to us- is not accurate. Only our Fourth Amendment claim is limited to Checkpoints, while our Equal Protection and Due Process/Excessive Ticketing claims encompass both checkpoint and non-checkpoint traffic stops and ticketing and implicate the practices of the entire BPD, not just the Strike Force and Housing Units. *See, e.g*. Compl. paras. 76, 85-86, 87-90, 258-259, 263-265.


As for your objection to producing  complaints that were not sustained, Plaintiffs submit that both sustained and non-sustained citizen complaints investigated by IAD are relevant to our Monell claims against the City of Buffalo because they are probative of senior BPD and City officials' notice of potentially unconstitutional behavior by subordinate BPD officers and because  the quality and thoroughness (or lack thereof) of the IAD  investigations themselves would be probative of the City's and BPD's deliberately indifferent failure to discipline and supervise its officers. *See, e.g*., *Dobson v. Dougherty,* 2018 WL 63213909, *3-4 (W.D.N.Y. Dec. 4, 2018)(noting "there is a stronger argument in favor of disclosure of unsubstantiated complaints in cases [] which involve a Section 1983 claim against a municipality" and ordering production of prior unsubstantiated officer misconduct complaints involving conduct similar in nature to the behavior alleged in the lawsuit); *Harper v. Port Auth. of N.Y. & N.J.*, 2006 WL 1910604, * 2 (S.D.N.Y. July 10, 2006) (holding that "because Harper asserts claims based on Monell, the Port Authority's knowledge of, and response to, defendants' behavior and complaint history is relevant" and ordering production of substantiated and unsubstantiated officer complaint records); *Floyd v. City of New York*, 959 F.Supp.2d 540, 619-20 (S.D.N.Y. 2013) (finding that NYPD's failure to fully  investigate prior racial profiling complaint made against one of its officers was evidence of City's deliberate indifference to unconstitutional and racially discriminatory stop-and-

frisk practices); *Jenkins v. City of New York*, 2019 WL 2367060, *7-9 (E.D.N.Y. June 5, 2019)(rejecting defendants' argument that prior unsubstantiated misconduct complaints against NYPD officer did not put City on notice of the risk of future constitutional violations and holding that NYPD Internal Affairs Bureau's "uninterested and superficial" investigations of those prior unsubstantiated misconduct complaints created triable issue of fact as to City's deliberately indifferent failure to supervise).

Given the importance of the quality of the IAD complaint investigations to Plaintiffs' Monell claims in this case, we believe that, for each IA complaint highlighted in yellow, we should receive not only the nature of the allegations and final complaint disposition, but all documents and information in each complaint file concerning the investigative steps taken (e.g. lists of all witnesses who were interviewed, witness statements, notes from each witness interview, information about all of documentary and physical evidence considered by the investigators), as well as the specific bases for the final disposition decisions and, in the cases of sustained complaints, the disciplinary penalties imposed and the reasons for those penalties. Plaintiffs do not believe that this request is over-broad, as all of these categories of documents and information are probative of the quality, fairness, and thoroughness of IAD's complaint investigations and therefore relevant to Plaintiffs' Monell claims. In addition, the two cases you cite in support of your over-breadth objection, *Ashford and Melendez*, are inapposite because they deal with how many officer misconduct complaints, rather than how much of each individual complaint file, were discoverable, and neither case involved Monell claims. That said, we would likely not need the personnel files for the subject officer in each responsive IA complaint unless there is information in the personnel file that was factored into the disposition decision and/or disciplinary penalty decision.

Finally, we continue to be confused by your belief that "50a prohibits [you] from disclosing much of what is contained in these files." As we stated in our May 30 letter to the Court, the federal courts of the Second Circuit, including those in the WDNY, have repeatedly held that 50-a does not bar discovery of police officer disciplinary records in federal 1983 civil rights litigation and that all such records that are relevant to the parties' claims or defenses must be produced. *See, e.g.*, *Martin v. Lamb*, 122 F.R.D. 143, 145-47 (W.D.N.Y. 1988) (citing *King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988)); *see also Mitchell v. Whitenight*, 11-cv-0684, 2013 WL 5936978, *1-2 (W.D.N.Y. Nov. 4, 2013); *Worthy v. City of Buffalo*, 11-cv-872a, 2014 WL 4640884, *3 (W.D.N.Y. Sep. 16, 2014); *Dobson v. Dougherty*, 17-cv-1014, 2018 WL 63213909, *3-4 (W.D.N.Y. Dec. 4, 2018). If you are aware of federal case law from the Second Circuit that is to the contrary, please send it to us. Otherwise, it continues to be Plaintiffs' position that once the parties or, if necessary, the Court has resolved which of the IA complaints are relevant to Plaintiffs' claims and which portions of each relevant IA complaint file are relevant to Plaintiffs' claims, all of those relevant materials must be produced. We also remind you that we are willing to sign, and previously sent you a draft of, a stipulated confidentiality order that would bar disclosure of the IA complaint files to non-parties, which the courts of the Second Circuit have also repeatedly held will sufficiently address the very officer privacy and safety concerns animating 50-a. *See Hamilton v. Ross*, CIV-89-431T, 1991 WL 327520, at *3 (W.D.N.Y. Nov. 5, 1991); *Robinson v. New York*, 08-CV-00908(S)(M), 2010 WL 1930657, at *2 (W.D.N.Y. May 12, 2010).

I think at this point it makes sense for us to speak by phone so that we can decide on what the next steps are for moving forward towards a final resolution of Plaintiffs' pending discovery requests for the IA complaints. Plaintiffs are available to Thursday morning or afternoon.

Also, we still have not received the privilege log for the AG documents which you indicated you would send to us last week. Please advise as to when we can expect to receive it.

Darius

On Mon, Jul 29, 2019 at 6:09 PM Quinn,Robert E <rquinn@ch.ci.buffalo.ny.us> wrote:

> As I previously indicated, my understanding of this process is to narrow down IAD files to eliminate what is clearly not responsive to your demands, not determine relevancy. I've reiterated that a few times now.
>
> With respect to the files you have identified, I note that the phrases "traffic stop", "tickets", and "summons" often refer to instances other than "checkpoints". They are also not limited to housing and/or strike force. Is it your position that all traffic stops/moving violations/tickets/ summonses files should be turned over? That would appear to go beyond the scope of your complaint.
>
> Also, we generally object to complaints that are not sustained. *Law v. Cullen,* 613 F.Supp. 259, 262 (S.D.N.Y., 1985) (unsubstantiated civilian complaints merely charges, not actual findings of abuse); *see also Hart v. Goord,* 2010 WL 1644242 (W.D.N.Y., 2010) (No. 08CV681) (denying discovery of grievances against corrections officer found to be unsubstantiated, with its probative value being quite limited). If you disagree, it might be helpful to briefly explain your position why.
>
> I believe that what, if any, parts of the IAD files are discoverable depends on the particular file, the nature of the allegations, whether the complaint was sustained, and how many, if any, files the Court orders to be turned over, among other things. We have raised overbroad and burdensome objections to your requests and, along with relevancy, etc.. Beyond responsiveness, it seems that there could be some balancing of what is ordered turned over and how many files are searched, that may have to be undertaken. See generally, *Ashford v. Goord,* 2009 WL 2086838 (W.D.N.Y., 2009) (request seeking all grievances and complaints filed against defendants was overly broad); *Melendez v. Falls,* 2010 WL 811337 (W.D.N.Y., 2010) (request seeking all grievances and complaints filed against defendants was overly broad). As we have discussed, I believe 50a prohibits me from disclosing much of what is contained within these files so that would also have to be addressed. There are different ways Courts have addressed this, and, it often depends on what is turned over. To help facilitate this discussion/resolution, I've attempted to give a general summary of IAD files contents below.
>
> Generally speaking, the IAD files I have reviewed are contained within a paper file folder. Within the file folder there is often a Case Index, which basically is a table of contents. There can also be an IAD File Checklist, which includes categories of documents and information that may or may not be applicable to each case. There is often a Case Summary generally describing the complaint, investigation, witnesses, actions taken by investigator. There can also be a separate IAPro Case Summary which has similar information and appears to be printed from the IAPro system. If the file is closed there is generally a Disposition with a determination about the actions and allegations. Generally, there is a form with several different determinations, "sustained", "exonerated", "not sustained", "unfounded", "conference", "dismissed", or "other". If there was a complainant there is often a closing letter to that individual. There is not always

a "complaint form" completed by an individual complainant, as it appears these IAD files can be open in a number of ways.  Generally, most of each file consists of reports, statements, photos, and other documents somehow related to the investigations.  How related those documents are to the facts at issue vary widely.  There are often personnel records and other documents generated for the evaluation of officers performance and continued employment. The size of the files vary greatly, as do the contents of the investigation, as often there are records, statements, actions which are appropriate in one case and not another.  There can be files with multiple folders and files with only a small number of documents in a single folder.   What documents are included also varies.

Let me know if you have any questions.  Apologize if any of this is unclear, I unexpectedly have to leave to attend to some unfortunate home ownership issues, but will be around most of the day tomorrow if you'd like to discuss. Thanks.

Rob Quinn.

**From:** Darius Charney [mailto:dcharney@ccrjustice.org]
**Sent:** Wednesday, July 24, 2019 6:05 PM
**To:** Quinn,Robert E <rquinn@ch.ci.buffalo.ny.us>
**Cc:** Claudia Wilner <wilner@nclej.org>; Travis England <england@nclej.org>
**Subject:** Re: BLRR v City of Buffalo

Rob-

Attached are the Excel spreadsheets with the results of the searches you ran for each of the 8 search terms on IA Pro. In each spreadsheet, Plaintiffs have highlighted in yellow the complaints that we believe are responsive to our document requests, relevant to our claims and therefore should be produced to us. Please confirm that you will be providing your views on which of these complaints are relevant by next Monday, July 29.

In addition, it remains Plaintiffs' position that the entire case file for each of the relevant IA complaints should be produced to us, and we similarly look forward to hearing your views on this issue by July 29 as well.

Darius

On Wed, Jul 24, 2019 at 5:38 PM Quinn,Robert E <rquinn@ch.ci.buffalo.ny.us> wrote:
> AG emails attached.  I'm working on a privilege log but am having some formatting issues, will send tomorrow if not tonight.  Let me know if you have any questions.