UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**BLACK LOVE RESISTS IN THE RUST, et al.**

    **Plaintiffs,**

        -vs-

**CITY OF BUFFALO, et al.**

    **Defendants.**

**DECLARATION**

**Civil Action No.: 18-cv-719**

---

    **ROBERT E. QUINN,** Assistant Corporation Counsel, *of Counsel* to Timothy A. Ball, Esq., Corporation Counsel, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

    1.    I am an attorney licensed to practice law in the Courts of the State of New York and in the United States District Court for the Western District of New York, and an Assistant Corporation Counsel for the City of Buffalo, and I represent the Defendants in this action.

    2.    As such, I am fully familiar with the facts and circumstances set forth below.

    3.    This Declaration is offered in response to Plaintiffs' Motion to Compel discovery pursuant to Fed.R.Civ.P. 37, filed on August 30, 2019. (Dkt. No. 42).

    4.    Defendants again submit that we have responded to all discovery requests and raised valid objections. Plaintiffs' Counsel and Your Deponent have conferred extensively in an effort to narrow the discovery at issue, and it appears that some guidance from the Court may now be necessary in order to move forward.

5. With that said, we submit that Plaintiffs have not met their burden in bringing this Motion and, given prior proceedings, we do not believe they had to make this Motion when a letter or conference would have sufficed, and it should therefore be denied, in whole or in part, as unnecessary and for the other grounds set forth herein.

6. These grounds for objection were specifically stated in emails sent to Plaintiffs' counsel, which are attached hereto as **EXHBIT A**, and those grounds are reiterated and preserved herein for all purposes.

7. Putting this aside and, given they have now made a motion, Defendants objection has essentially been that the documentary production Plaintiffs are now seeking (approximately 168 separate and distinct Internal Affairs files) is overly broad, burdensome, and not reasonably calculated to lead to admissible evidence.

8. Stated more plainly, Plaintiffs are requesting a very large number of documents through only a description that they are in a "file" from five year period, "files" which are not easily retrievable, some of which may be discoverable, some of which may not, some portions of which may be privileged or confidential, and some of which may not, and given the number of issues (privilege, relevance, burden, breadth, civil rights law 50-a, etc.) Defendants submit that some assistance and instruction from the Court as to what, if anything, needs to be searched, what needs to be produced, and how and to whom it needs to be produced, is warranted in order to move forward.

9. As such, should the Court determine that any files need to be produced, Defendants would respectfully request a commensurate time period to complete such a search, direction on the method of production, an opportunity to identify documents and

information which we believe are privileged and/or confidential in each file, an *in camera* review of anything ordered produced, an order addressing Civil Rights Law 50-a, and a protective order specifying that that any documents produced shall be kept confidential, used only for the purposes of this case, and that the disclosure shall be restricted to plaintiffs' attorney's eyes only in this case.

10. It should be noted Plaintiffs have not attempted to make a showing that any of the specific IAD files sought pertains to the particular incidents alleged in their complaint. Likely, if that were the case, and Plaintiffs were seeking only those files related to their actual interactions and incidents identified in the complaint, these same issues would not be arising. Plaintiffs' request is more broad and burdensome, however.

11. As a result, substantial efforts have been undertaken to narrow these files down the approximately 168 at issue, and we submit Defendants have done so in good faith, as demonstrated in emails attached as **EXHIBIT B**, **EXHIBIT C, and EXHIBIT D**.

12. As set forth in my July 18, 2019 email to counsel, that process was "designed to get everyone to the point where we can narrow the materials, have a better idea of the universe of documents, and concisely present to the court as needed, with the opportunity to make all available arguments, and ultimately to move forward with a clearer idea of the issues in a reasonable manner." See, **EXHIBIT E**.

13. Plaintiffs claim is that based of language used in the description of the files from the electronic IAPro database, which they allege generally overlaps with some of the allegations in their Complaint, they are entitled each any every part of those files even though particular documents or incidents have not been identified.

14. While we understand Plaintiff's position and recognize the difficulties in formulating and evaluating such a discovery request, we still reiterate our objections, particularly given that here have been no depositions, no application for Class Certification, and no particularized demonstration that any particular document in any one of these files is material or necessary, we respectfully submit that if there are any "files" which the Court decides should be produced, there should be some limits in place as to what needs to be turned over and how.

15. From a brief review at the descriptions highlighted, a number of questions about the discoverability of these files arise, such as what time period is appropriate, whether every kind of complaint about a "traffic stop" is discoverable, whether anything related to a "traffic stops" are discoverable or just "traffic safety checkpoints", and whether every time an individual objected to a traffic ticket is discoverable.

16. While we expect that under certain circumstances those types of complaints could be discoverable, this is just a few example of the number of questions and issues which could arise on the issue which files should be retrieved and produced, and which can be addressed through any number of efforts endorsed by the Court.

17. On this point, Defendants respectfully suggest that a determination process on these files could begin with or include a review of the highlighted portions provided by Plaintiffs' counsel, for the purpose of eliminating files of which the Court can determine are not discoverable without more information or reviewing the entire file, and instructions to the Defendants on which files should be retrieved.

18. Alternatively, the Plaintiff's Motion could simply be denied based on being overly broad and burdensome, among other reasons, and not go any further.

19. Assuming the Court decides to not simply deny Plaintiff's Motion, if there is ambiguity on the discoverability of a particular file, further information could be needed and, based on my review and efforts in searching for and producing discovery in this proceeding and others, a description of the file locations is therefore warranted.

20. Generally speaking, more recent and open files are kept in filing cabinets in the IAD offices in Buffalo Police Headquarters, organized generally by the date which they were opened, and closed files are periodically moved to an off-site storage center for City of Buffalo records which can be retrieved through request and transportation.

21. IAD does not maintain electronic copies of their files, and do not staff filing clerks, so if a search was to be performed, it would require either an Officer or some other City employee to suspend other daily duties to physically pull each file and arrange for production in whatever manner decided by this Court. Again, depending on this status of any particular file, it could be contained in multiple locations.

22. As previously stated to Plaintiff's counsel, the files themselves vary in both size and contents, and depending on the facts and circumstances of any particular files, can fill a basic manila envelope, a large redwell file folder, or a banker's box.

23. Assuming there is ambiguity on whether certain files should be produced, another question that either the Court or the parties may need to decide is whether an entire file needs to be reviewed to make that decision is, or if only portions would suffice, and therefore a description of the file contents is also warranted.

24.     Much like the location and size, the contents of those files also vary, as described in my July 29, 2019 email, relevant portions of which state:

> "Generally speaking, the IAD files I have reviewed are contained within a paper file folder. Within the file folder there is often a Case Index, which basically is a table of contents. There can also be an IAD File Checklist, which includes categories of documents and information that may or may not be applicable to each case. There is often a Case Summary generally describing the complaint, investigation, witnesses, actions taken by investigator. There can also be a separate IAPro Case Summary which has similar information and appears to be printed from the IAPro system.  If the file is closed there is generally a Disposition with a determination about the actions and allegations. Generally, there is a form with several different determinations, "sustained", "exonerated", "not sustained", "unfounded", "conference", "dismissed", or "other". If there was a complainant there is often a closing letter to that individual. There is not always a "complaint form" completed by an individual complainant, as it appears these IAD files can be open in a number of ways. Generally, most of each file consists of reports, statements, photos, and other documents somehow related to the investigations. How related those documents are to the facts at issue vary widely. There are often personnel records and other documents generated for the evaluation of officers performance and continued employment. The size of the files vary greatly, as do the contents of the investigation, as often there are records, statements, actions which are appropriate in one case and not another. There can be files with multiple folders and files with only a small number of documents in a single folder.  What documents are included also varies."

25.     While an *in camera* review of the entire file would be one method to determine discoverability of a file and its contents, we must note that the sheer size and number of files retrieved and provided would take substantial time and effort to review.

26.     In that regard, previously and in different cases, we are aware of other who Courts have requested only certain documents form each file, such as a citizen complaint, case index, or disposition, in order to make a determination on whether it should be produced. However, as stated above an in my prior email, these files can be opened any number of ways, and do not always result from a citizen complaint.

27. While there would be no way to categorize every single way an internal affairs file can be opened, generally speaking they can arise automatically from things like car accidents, or can simply be things that came to the attention of other officers and/or the IAD, or otherwise warranted some type of investigation, and therefore not all files contain "complaints" or the exact same documents.

28. On this point, it should be noted that just because a file exists does not mean that there has been any determination of wrongdoing, and we therefore generally object to complaints that are not sustained. Frequently, Western District Courts have looked to this types of information on similar motions. *See*, Supporting Memorandum of Law

29. Assuming that a particular file appears to be discoverable, an additional issue is what documents contained within that file would be discoverable. As also set forth in my July 29, 2019 email:

> I believe that what, if any, parts of the IAD files are discoverable depends on the particular file, the nature of the allegations, whether the complaint was sustained, and how many, if any, files the Court orders to be turned over, among other things. We have raised overbroad and burdensome objections to your requests and, along with relevancy, etc.. Beyond responsiveness, it seems that there could be some balancing of what is ordered turned over and how many files are searched, that may have to be undertaken. See generally, *Ashford v. Goord,* 2009 WL 2086838 (W.D.N.Y., 2009) (request seeking all grievances and complaints filed against defendants was overly broad); *Melendez v. Falls*, 2010 WL 811337 (W.D.N.Y., 2010) (request seeking all grievances and complaints filed against defendants was overly broad).  As we have discussed, I believe 50a prohibits me from disclosing much of what is contained within these files so that would also have to be addressed. There are different ways Courts have addressed this, and, it often depends on what is turned over.

30. Finally, there is the issue of Civil Rights Law 50-a, which often is raised in cases involving police officers, and we submit it must be addressed on these issues.

7

31.     While it appears that Plaintiffs wish to continue to raise a mischaracterized argument as some type of sword against the Defendants, we respectfully submit that the plan language of the statute states:

1. All personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof …. shall be considered confidential and not subject to inspection or review without the express written consent of such police officer, firefighter, firefighter/paramedic, correction officer or peace officer within the department of corrections and community supervision or probation department **except as may be mandated by lawful court order**. *(Emphasis added)*

32.     The Western District considers and decides these issues frequently, we are simply asking for that same process to occur here, as set forth more fully in the Supporting Memorandum of Law.

**Wherefore**, the Defendants seek an Order of the Court denying Plaintiffs' Motion, in whole or in part, affording additional time and instruction on any additional production od documents, denying costs, attorneys fees, etc., entering a protective order, and such other and further relief as the Court deems necessary and warranted under these circumstances.

Dated:  September 13, 2019
            Buffalo, New York

                TIMOTHY A. BALL, ESQ.
                Corporation Counsel

                */s/Robert E. Quinn*
                By: Robert E. Quinn
                65 Niagara Square - 1103 City Hall
                Buffalo, NY 14202
                Tel.: (716) 851-4326
                rquinn@ch.ci.buffalo.ny.us

TO: NCLEJ
Attn.: Claudia Wilner, Esq.
275 Seventh Avenue, Suite 1506
New York, NY  10001
wilner@nclej.org