UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BLACK LOVE RESISTS IN THE RUST, et al.,   :
                                          :
                Plaintiffs,   :
                                          :
       v.                              :   Case No. 1:18-cv-00719
                                          :
CITY OF BUFFALO, N.Y., et al.,            :
                                          :
                Defendants.   :
                                          :
                                          :
                                          :
                                          :
------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DEFENDANTS TO PRODUCE BUFFALO POLICE
DEPARTMENT INTERNAL AFFAIRS DIVISION FILES**

**PRELIMINARY STATEMENT**

Plaintiffs submit this Reply Memorandum of Law in further support of their motion to compel Defendants to produce 168 Buffalo Police Department (BPD) Internal Affairs Division (IAD) case files involving investigations into allegations of BPD officer misconduct similar to the kinds of misconduct alleged in Plaintiffs' Complaint in this case. *See* ECF No. 42, *et seq*. In their response to Plaintiffs' motion, Defendants reveal that they have not actually retrieved or reviewed any of the 168 IAD files despite being directed to do so by the Court on May 30, 2019, and offer only speculative arguments about why it would be too burdensome for them to retrieve and review the files now. In addition, they acknowledge that New York Civil Rights Law § 50-a does not bar production of those portions of the 168 IAD files that are relevant to Plaintiffs' claims in this action. Finally, Defendants' arguments for why the 168 files are not relevant to

Plaintiffs' claims are without merit and were already fully addressed in Plaintiffs' opening motion papers. Thus, Plaintiffs respectfully request that the Court grant their motion to compel.

## ARGUMENT

### I. Plaintiffs' Motion is Necessary and Consistent with the Court's Directives

Defendants contend in their response to the instant motion that they "do not believe [Plaintiffs] had to make this motion, when a letter or conference would have sufficed, and it should therefore be denied, in whole or in part, as unnecessary. . ." ECF No. 45 (Quinn Declaration) ¶ 5. However, as set forth in Plaintiffs' opening motion papers, after several months of conferral over Plaintiffs' discovery requests for the IAD files, the parties agreed on August 6 that they had reached an impasse and needed Court intervention to resolve it. *See* ECF No. 42-2 ¶ 17. Generally, under the Federal Rules of Civil Procedure, the mechanism for seeking judicial resolution of a discovery dispute that the parties cannot resolve on their own is a motion to compel, *see* Fed.R.Civ.P. 37(a), and this Court noted at the May 30 telephonic conference with the parties that "[i]t probably is not going to work in a case like this to be too informal about things" and instructed the parties that "where a motion would otherwise be filed, let's file a motion, okay?" *See* May 30, 2019 Tr. at 28:20-29:4. Thus, Plaintiffs' motion is both necessary and consistent with this Court's directive to the parties on how to present discovery disputes to it.

### II. Defendants' Failure to Retrieve and Review Any of the 168 Highlighted IAD Files Violates the Court's May 30, 2019 Directive and Undermines Their Burdensomeness Objection

Defendants reveal in their response to this motion that they have not yet actually retrieved and reviewed any of the 168 highlighted IAD case files themselves. *See* ECF. No. 45 ¶¶ 8, 9, 16-17. However, at the May 30, 2019 telephonic conference with the parties, where the process for resolving Plaintiffs' discovery requests for the IAD files was discussed, the Court specified that

if a search of the BPD Internal Affairs case database "pulls up 200 complaints. . . I would expect 200 complaints to be reviewed" by Defendants to determine which of them are in fact responsive to Plaintiffs' discovery requests. *See* May 30, 2019 Tr. at 13:3-14:10. The Court set this limit on the number of IAD files that Defendants would have to review with "proportionality in mind." *Id*. at 14:20-14:22. Thus, it is presumptively not unduly burdensome for Defendants to retrieve the 168 highlighted IAD files for production to Plaintiffs or submission to the Court for *in camera* review. Meanwhile, Defendants' burden claims, which are based not on a review of any of the 168 highlighted files themselves but, rather, on information about the varying sizes and storage locations of BPD's IAD case files generally, *see* ECF No. 45 ¶¶ 20-22, 25 – information which may or may not be applicable to the specific 168 IAD files at issue here – is too generalized, speculative and therefore insufficient to overcome this presumption and allow Defendants to avoid production of the requested IAD files to Plaintiffs or the Court for *in camera* review. *See Gross v. Lunduski*, 304 F.R.D. 136, 151-53 (W.D.N.Y. 2014)(Noting that "[t]he party asserting a burdensomeness objection has the burden to establish the requests at issue are *in fact* unduly burdensome" and holding that defendant's declaration claiming that it would take prison staff "hundreds, if not thousands of hours" to "cull through" hundreds of inmate grievance files at state prison facility to locate the files sought by plaintiff was "too generalized and thus insufficient to support [d]efendant's burdensomeness objection" to request for production of a few hundred inmate grievance files spanning a four-year period)(emphasis added).[1]

---

[1] Plaintiffs also note that had Defendants retrieved and reviewed the 168 highlighted IAD case files themselves as the Court directed, the parties could potentially have reached agreement on the relevance and discoverability of some of the files, thereby reducing the number of files the Court would have to review *in camera* to resolve the instant motion.

### III. Defendants Acknowledge Section 50-a Does Not Bar Discovery of Those Portions of the 168 Requested IAD Files Relevant to Plaintiffs' Claims

After months of vague and generalized 50-a objections to Plaintiffs' discovery requests for the IAD files, *see*, *e.g.*, ECF No. 42-3 at 2-3; May 30, 2019 Tr. at 12 ("we do have potentially a 50(a) issue somewhere in the future"); ECF No. 45-5 at 1, Defendants finally acknowledge in their response to this motion that their New York Civil Rights Law §50-a objections "overlap and are intertwined" with their relevancy objections and that the statute does not bar, and in fact requires, production of those portions of the requested IAD files that the Court determines are material and relevant to Plaintiffs' claims in this case. *See* ECF No. 45-6 at 1, 2, 5; N.Y. Civ. Rts. Law § 50-a(3) ("The court shall make those parts of the record found to be relevant and material available to the persons so requesting."). Accordingly, as set forth in Plaintiffs' opening motion papers, *see* ECF. No. 42-1 at 9-10, Defendants must produce all portions of the 168 highlighted IAD files that the Court finds, based on the motion record before it and/or an *in camera* review of the files themselves, are relevant to Plaintiffs' claims in this case.

### IV. All 168 Highlighted IAD Files Are Relevant to Plaintiffs' Claims and Must be Produced

As set forth in Plaintiffs' opening motion papers, because all of the highlighted 168 IAD files appear from the case summaries to involve misconduct similar to that alleged in Plaintiffs' Complaint, all of these files are relevant to Plaintiffs' *Monell* claims and should be produced in their entirety, regardless of whether or not the misconduct in each case was substantiated. *See* ECF No. 42-1 at 6-9. Defendants continue to argue, as they did during the parties' pre-motion conferrals, that Plaintiffs are only entitled to discovery of IAD files involving substantiated misconduct. *See* ECF No. 42-10 at 3; ECF No. 45-6 at 3, 6. However, the caselaw Defendants rely on does not support their overly narrow view of which IAD files are discoverable.

4

First, while Defendants cite to three cases mentioning that courts in the District will "generally" only direct production of documents from police officer personnel files if disciplinary action was taken against the officer (i.e., the misconduct allegations were substantiated), *see* ECF No. 45-6 at 3-4; *Gagne v. Fix*, 2015 WL 4648056 (W.D.N.Y. Aug. 5, 2015); *Worthy v. City of Buffalo*, 2013 WL 5574624 (Oct. 9, 2013); *Evans v. Murphy*, 2013 WL 2250709 (W.D.N.Y. May 22, 2013), Defendants ignore the long line of cases from this District, some of which are cited in Plaintiffs' opening motion papers, holding that in § 1983 cases like this one, both substantiated *and* unsubstantiated files involving misconduct similar to that alleged in the lawsuit are relevant and discoverable. *See* ECF No. 42-1 at 7; *Gross v. Lunduski*, 304 F.R.D. at 144-45 (citing several WDNY cases ordering production of both substantiated and unsubstantiated officer misconduct complaint files and holding that "Defendant's contention that the weight of authority precludes Plaintiff's request for similar complaint discovery if such complaints are not shown to have been substantiated therefore cannot be maintained."); *Simcoe v. Gray*, No. 10-CV-6531, 2012 WL 1044505, *3 (W.D.N.Y. Mar. 28, 2012)( ("Prior complaints made against the defendants, whether substantiated or not, are discoverable in § 1983 civil rights actions so long as the complaints are similar to the constitutional violations alleged in the complaint"); *Sowell v. Chappius*, No. 07-CV-6355, 2010 WL 1404004, *1 (W.D.N.Y. Mar. 31, 2010)(same); *Hallasey v. Avery*, No. 08-CV-86S, 2009 WL 231198, *2 (W.D.N.Y. Jan. 29, 2009)(finding previous unsubstantiated misconduct complaint against defendant officer involving misconduct similar to that alleged in the litigation was relevant to plaintiff's claims and discoverable); *Cox. v. McClellan*, 174 F.R.D. 32, 34-35 (W.D.N.Y. 1997)("In civil rights actions, courts have permitted discovery of prior similar complaints or incidents regardless of the

outcome of those complaints. . . [T]he fact that a prior complaint was determined to be unfounded does not bar its discovery.").

More importantly, all the cases Defendants cited in support of their argument involved requests for a specific officer's prior unsubstantiated misconduct complaints on the theory that those prior complaints could provide evidence of that officer's propensity, and/or the officer's supervisors' awareness of the officer's propensity, to commit the kind of misconduct alleged by the plaintiff in the case. *See* ECF No. 45-6 at 3-4, 6-7; *Gagne*, 2015 WL 4648056 at * 2; *Worthy*, 2013 WL 5574624 at *3-4; *Evans*, 2013 WL 2250709, at *4; *Crenshaw v. Herbert*, 409 F.Appx. 428, 430 (2d Cir. 2011); *Hart v. Goord*, No. 08 Civ. 681, 2010 WL 1644242, *1-2 (W.D.N.Y. April 22. 2010); *Law v. Cullen*, 613 F.Supp. 259, 261-62 (S.D.N.Y. 1985). By contrast, Plaintiffs in this case have brought a deliberate indifference *Monell* claim alleging that the City of Buffalo and its chief policymakers had notice of but failed to adequately respond to the risk of a widespread pattern of unconstitutional conduct by their subordinate officers. ECF No. 1 (Compl.) ¶¶ 118-124. This distinction is significant because, as set forth in Plaintiffs' opening motion papers, "there is a stronger argument in favor of disclosure of unsubstantiated complaints in cases [like this] which involve a Section 1983 claim against a municipality," *Dobson v. Dougherty*, 17-cv-1014, 2018 WL 63213909, *3-4 (W.D.N.Y. Dec. 4, 2018), and the Second Circuit and its lower courts have repeatedly held that both substantiated and unsubstantiated complaints and investigations of officer misconduct similar to that alleged in the litigation are highly relevant to deliberate indifference *Monell* claims. *See* ECF No. 42-1 at 7-8 (citing cases).[2]

---

[2] Defendants' argument that Plaintiffs are not entitled to discovery of the 168 highlighted IAD files because they have not yet moved for class certification, ECF No. 45 ¶ 14, is a red herring, as the individual Named Plaintiffs have brought *Monell* claims on behalf of themselves and on behalf of the Plaintiff Class. *See* ECF No. 1 (Compl.) ¶¶ 253-272.

In addition, Defendants' description of the categories of information typically found in BPD's IAD files confirms that most if not all of the contents of each of the 168 highlighted files are relevant to Plaintiffs' *Monell* claims. Defendants have indicated that BPD IAD files typically include a "Case Summary generally describing the complaint, investigation, witnesses, actions taken by investigator[;] . . . a Disposition with a determination about the actions and allegations" that could be either "sustained", "exonerated", "not sustained", "unfounded", "conference", "dismissed", or "other;" and "reports, statements, photos, and other documents somehow related to the investigations." ECF No. 45 ¶ 24. As set forth in Plaintiffs' opening motion papers, all of this information is relevant to assessing the quality and fairness of the BPD's investigations into officer misconduct similar to that alleged in Plaintiffs' Complaint, which the courts of this Circuit have often held is a factual issue upon which a deliberate indifference *Monell* claim like Plaintiffs' may turn. *See* ECF No. 42-1 at 8-9; *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986); *Jenkins v. City of New York*, 15 CV 5889, 2019 WL 2367060, * 7-9 (E.D.N.Y. June 5, 2019); *H.H. v. City of New York*, No. 11-CV-4905, 2017 WL 3396464, * 8 (E.D.N.Y. Aug. 7, 2017).

V.  **An "Attorney's Eyes Only" Confidentiality Order is Not Warranted in this Case**

Buried in Defendants' response to the instant motion is a request that, should the Court order production of any portion of the 168 highlighted IAD files, it should also enter "a protective order specifying that that any documents produced shall be kept confidential, used only for the purposes of this case, and that the disclosure shall be restricted to plaintiffs' attorney's eyes only in this case." ECF No. 45 ¶ 9. As the requesting party, Defendants bear the burden of showing good cause for issuance of a confidentiality order. *See* Fed.R.Civ.P. 26(c); *Gambale v. Deutsche Bank, AG*, 377 F.3d 133, 142 (2d Cir. 2004). However, Defendants provide no reasons why an "Attorneys Eyes Only" order is necessary to protect the police officer privacy and reputational interests implicated by the IAD files; nor could they. Law enforcement agencies in New York

7

State have previously produced officer misconduct case files in federal civil rights litigation under confidentiality orders similar to the one proposed by Plaintiffs, *see* ECF No. 42-4 (allowing Plaintiffs and their counsel to view confidential documents), which courts and law enforcement agencies have determined provide adequate protections to officer privacy and reputational interests. *See, e,g*, *Robinson v. New York*, 08-CV-00908(S)(M), 2010 WL 1930657, at *2 (W.D.N.Y. May 12, 2010); *Floyd v. City of New York*, 08 Civ. 1034, ECF No. 61 (S.D.N.Y. Jan. 13, 2009). Limiting access to the IAD files to Plaintiffs' counsel would significantly prejudice Plaintiffs' ability to litigate this case because it would prevent them from having strategic discussions with their attorneys about when and how to use the files at depositions and trial and/or in evidentiary or dispositive motions.

      Accordingly, if the Court is inclined to enter a confidentiality order covering the IAD files, it should enter an order like the one already proposed by Plaintiffs, without any attorney's-eyes-only restrictions.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening motion papers, *see* ECF Nos. 42-1, *et seq.*, Plaintiffs respectfully request that this Court (1) issue an order compelling Defendants to produce the entirety of each of the 168 IAD files identified by Plaintiffs, or, in the alternative, (2) conduct an *in camera* review of the 168 files to determine which files and/or portions of each file contain discoverable material and direct Defendants to produce all such material to Plaintiffs.

Dated: September 20, 2019

Respectfully submitted,

*/s/ Keisha A. Williams*
Keisha Williams
Joseph Keleman
WESTERN NEW YORK LAW CENTER
Main Seneca Building
237 Main Street, Suite 1130
Buffalo, NY 14203
Tel: (716) 828-8415
Fax: (716) 270-4005
jkeleman@wnylc.com
kwilliams@wnylc.com

*/s/ Claudia Wilner*
Claudia Wilner
Travis W. England*
Britney Wilson*
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
wilner@nclej.org
england@nclej.org
wilson@nclej.org

*/s/ Darius Charney*
Darius Charney
Chinyere Ezie
Brittany Thomas*
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6475
DCharney@ccrjustice.org
CEzie@ccrjustice.org
BThomas@ccrjustice.org