UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
BLACK LOVE RESISTS IN THE RUST, et al.,    :

                       Plaintiffs,    :

   v.    :

CITY OF BUFFALO, N.Y., et al.,    :   Case No. 1:18-cv-00719

                       Defendants.    :

------------------------------------------------------------ X

# **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND AND SUPPLEMENT THEIR COMPLAINT**

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this Memorandum of Law in support of their Motion for Leave to Amend and Supplement their Complaint. Two copies of the Proposed Amended and Supplemental Complaint ("Amended Complaint") (clean and marked to show changes from the original Complaint, *see* ECF. No. 1) are annexed to the motion.

The Amended Complaint has several purposes:

- It adds five new Named Plaintiffs/Putative Class Representatives, whose individual facts add breadth to the existing allegations and bring those allegations current in further support of the claims of the existing putative injunctive relief and damages classes;.

- It adds substantial detail to the existing allegations concerning BPD's racially discriminatory traffic ticketing practices and the scope of its Checkpoint program, based on BPD ticketing data that only became available during discovery in this action.

- It adds an additional damages class (the "Multiple Ticket Damages Class"), based on data showing that issuing multiple tickets per single traffic stop for tinted window and/or seatbelt violations windows is a practice that the City of Buffalo employs virtually exclusively against people of color.

- It adds allegations concerning 13 new fees enacted by the Buffalo Common Council since the filing of the original Complaint that are assessed to drivers who receive traffic tickets in the City of Buffalo. The enactment of these fees provides strong additional support for Plaintiffs' existing Due Process revenue harvesting claim (Count III).

Plaintiffs' proposed amendments and supplemental allegations, all of which pertain to their existing causes of action and are put forth before the Court-imposed deadline for motions to amend the pleadings, before the close of fact discovery, and before Defendants have sought any discovery at all from the existing named plaintiffs, are timely, would not prejudice Defendants, and would not be futile. Accordingly, Plaintiffs' motion should be granted in its entirety.

## BACKGROUND

**A.    Procedural History**

Plaintiffs commenced the instant putative class action on June 28, 2018. *See* ECF No. 1. The Original Complaint listed one organizational Plaintiff, Black Love Resists in the Rust, which sued on behalf of its members, and four individual named plaintiffs, who brought claims on behalf of themselves and three putative classes and two putative subclasses. *Id.* ¶¶ 12-16, 230-32, 237-38, 242-44. The Original Complaint named as Defendants the City itself, several senior City policymaking officials, including the Mayor and current and former Police Commissioners, several BPD senior officials and supervisory personnel, and several individual BPD officers. *Id.* ¶¶ 17-28. The Original Complaint asserted four causes of action: (i) the vehicle safety checkpoint policies and practices of the City of Buffalo and the Buffalo Police Department (BPD) violate the Fourth Amendment's prohibition on unreasonable searches and seizures; the City's and BPD's traffic enforcement policies and practices, both at and outside of checkpoints, are racially discriminatory and thus violate both (ii) the Equal Protection Clause of the Fourteenth Amendment and (iii) Title VI of Civil Rights Act of 1964; and (iv) the City has a policy and practice of

engaging in aggressive and punitive traffic enforcement in order to generate revenue for the City, in violation of the Due Process Clause of the Fourteenth Amendment. *Id*.¶¶ 253-272. Defendants filed their Answer to the Original Complaint on July 30, 2018. *See* ECF No. 6.

The initial Rule 16 conference in this action was held on October 8, 2018, and on October 9, 2018, the Court issued its initial scheduling order, which set a deadline of May 14, 2019, for moving to amend pleadings and/or add parties, a fact discovery deadline of June 14, 2019, and a dispositive motion deadline of October 9, 2019. *See* ECF No. 15. These and all other pretrial deadlines in the order were twice extended by the Court at the request of one or both parties. *See* ECF Nos. 28-29, 48-49. The current deadlines are May 14, 2020 for motions to amend pleadings and add additional parties, June 12, 2020 for completion of fact discovery, and October 30, 2020 to file dispositive motions. *See* ECF Nos. 48-49.

The parties exchanged their initial Rule 26(a)(1) disclosures on November 8, 2018, and Plaintiffs served their first set of document requests and interrogatories on Defendants on November 5, 2018. Attorney Decl. ¶ 6, Ex. 3 (Plaintiffs First Set of Requests for Production) ]. Among Plaintiffs' initial set of discovery requests, all of which focused on issues relevant to Plaintiffs' municipal liability claims and class certification, were requests for data on all traffic tickets issued by the BPD since January 2013 and data on the date, time, location and number tickets issued at each vehicle safety checkpoint conducted by the BPD since January 2013. *Id.*, Ex. 3 at 18-20.  Defendants objected to Plaintiffs' request for the BPD traffic ticket data and, throughout several rounds of meet-and-confers between the parties from December 2018 through March 2019, represented that they did not have such data. *Id*., Exs 4 and 5 (Defs Responses and Supp Responses to Pls First Set of RFP's).

On March 15, 2019, Plaintiffs served a third-party subpoena on Erie County Central Police Services (ECCPS), which administers a database known as TraCS that collects data on all traffic tickets issued by all law enforcement agencies within Erie County, NY, including the BPD. The subpoena sought the same BPD traffic ticket data that Plaintiffs originally sought from Defendants. *See* Attorney Decl. ¶ 11, Ex. 6). Plaintiffs notified and provided a copy of the subpoena to Defendants on the same date they served it on ECCPS. ECCPS produced the requested BPD ticket data to Plaintiffs on April 1, 2019.  Attorney Decl. ¶ 12.

The TraCS dataset consisted of approximately 300,000 records, each record containing 46 fields of data. Coding was very spotty. In particular, because even after transitioning to electronic ticketing the BPD did not take advantage of existing, readily available geocoding technology to record the precise location at which each ticket was issued, the fields indicating such location were pure text fields, containing whatever information the issuing officer chose to enter. It has taken Plaintiffs and their consultants months to translate these text fields into usable location information, and the task is still not quite complete. Attorney Decl. ¶ 13. Thereafter, over the course of several months, Plaintiffs conducted a preliminary analysis of the ticket data, which revealed that (a) BPD overall ticket issuance was likely to be even more heavily focused on non-Whites than had been previously understood, (b) tinted window and seatbelt tickets were likely given almost exclusively to non-Whites, and (c) on the rare occasions when Whites did receive such tickets they received fewer than non-Whites did. The analysis also revealed that the Strike Force had conducted many more checkpoints than Defendants had previously disclosed, either in their responses to Plaintiffs' pre-litigation FOIL requests or in discovery in this action. Attorney Decl. ¶ 14.

Plaintiffs have not yet been able to proceed with deposition discovery because, as of the date of this motion, Defendants have still not produced a significant portion of the electronically stored information and documents responsive to several of Plaintiffs' discovery requests, including many materials which the Court itself ordered Defendants to produce in its December 19, 2019 Opinion and Order. *See* ECF No. 51; Attorney Decl. ¶ 18.

To date, Defendants have not sought any discovery from any of the Named Plaintiffs.

**B.   Supplemental Facts**

After Plaintiffs filed the Original Complaint, in July 2018, the Buffalo Common Council passed an amendment to the Buffalo Municipal Code establishing thirteen new fees ("13 Fees"), totaling several hundred dollars, that the City, through the Buffalo Traffic Violations Agency (BTVA), would assess on all or a substantial portion of drivers who receive traffic tickets in the City of Buffalo. *See* Buff. Munic. Code § 175-1; *see also* BTVA FAQ's on Applicable Fees, available at https://www.buffalony.gov/faq.aspx?qid=195 (last visited Apr. 23, 2020).

On February 27, 2019, Plaintiffs learned of the existence of the 13 Fees from a story published in *The Investigative Post*, a local independent Buffalo newspaper. *See* Marsha McLeod, "City Hall Cashing in on Traffic Tickets," *Investigative Post* (February 27, 2019), *available at* https://www.investigativepost.org/ 2019/02/27/city-hall-cashing-in-on-traffic-tickets/; Attorney Decl. ¶ 15. The article also noted how BPD officers issue a disproportionately high number of tickets for tinted window violations, both when compared to the extremely low percentage of traffic accidents caused by such violations and the number of tinted window tickets issued by police in other similarly-sized cities in New York State.

On April 19, 2019, Plaintiffs served their second set of document requests on Defendants, which included two separate requests related to the 13 Fees. Attorney Decl. ¶ 16, Ex. 7 at 4-5. In response, Defendants produced only screen shots of the BTVA's public website and copies of

5

the fee sections of City of Buffalo's Municipal Code. Defendants have yet to produce any electronic discovery responsive to Plaintiffs' discovery requests regarding the 13 Fees. Attorney Decl. ¶ 17.

### C. Identification and Vetting of Additional Named Plaintiffs

After Plaintiffs filed the Original Complaint, Defendants took certain voluntary actions in response to the lawsuit. For example, Defendants temporarily suspended or significantly reduced Checkpoints. Defendants did not, however, stop targeting low-income people of color for aggressive traffic enforcement designed to pad the City's budget.

Because Plaintiffs bring claims for prospective injunctive relief, Plaintiffs had to maintain an ongoing investigation of BPD's ticketing practices in order to demonstrate their continuing entitlement to relief. The five additional Named Plaintiffs—many of whom also passed through Checkpoints—highlight BPD's ticketing practices outside of the Checkpoints and in a more recent time period, including BPD's practices of issuing multiple tinted windows tickets almost exclusively to nonwhite drivers and raising revenue by ticketing vehicles legally parked in Buffalo Municipal Housing Authority parking lots. The process of interviewing and vetting potential additional plaintiffs who could speak to a fuller range of the BPD's harmful ticketing practices occupied scores of hours from multiple members of Plaintiffs' counsel team over many months. Attorney Decl. ¶ 20.

### D. The Proposed Amended and Supplemental Complaint

The Amended Complaint includes four categories of changes to the Original Complaint: (1) the addition of five new individual Named Plaintiffs/putative class representatives asserting the same four claims as the original Named Plaintiffs; (2) an additional putative 23(b)(3) class encompassing all non-white drivers to whom BPD officers issued multiple tinted window or seatbelt tickets in a single traffic stop that will seek damages under Plaintiffs' existing Equal Pro-

6

tection claim; (3) additional factual allegations regarding (i) racial disparities in BPD traffic ticketing generally and particularly for tinted window and seatbelt violations , (ii) BPD's conducting of numerous undocumented checkpoints, and (iii) BPD's practice of aggressively ticketing cars parked in public housing complex parking lots for traffic violations, which provide further support for all of Plaintiffs' existing claims; and (4) supplemental factual allegations and requests for relief concerning the 13 Fees, which fall under Plaintiffs' existing Due Process claim. *See* Exhibit 2 to Attorney Decl. (redlined copy of proposed Amended Complaint).

## ARGUMENT

### POINT I

**PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THEIR COMPLAINT TO ADD FIVE NEW NAMED PLAINTIFFS/CLASS REPRESENTATIVES, A NEW PUTATIVE DAMAGES CLASS, AND NEW FACTUAL ALLEGATIONS REGARDING RACIAL DISPARITIES IN TICKETING, UNREPORTED CHECKPOINTS, AND TRAFFIC TICKETS ISSUED TO CARS PARKED IN PUBLIC HOUSING LOTS**

**A.   Legal Standard**

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely give[n] when justice so requires." Fed.R.Civ.P. 15(a)(2).  While district courts have broad discretion to grant or deny motions to amend, *see McCarthy v. Dun & Broadstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007), the Rule 15 standard is a "permissive" one that "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Thus, as the Supreme Court has instructed, "[i]n the absence of any apparent or declared reason- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allow-

7

ance of the amendment, futility of amendment, etc.- the leave should, as the rules require, be freely given." *Foman*, 371 U.S. at 182. Moreover, "the party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile." *Xerox Corp. v. Lantronix, Inc.*, 342 F.Supp.2d 362, 370 (W.D.N.Y. 2018) (internal citations and quotations omitted).

Although Fed.R.Civ.P. 15(a) generally governs the amendment of complaints, where the proposed amendment seeks to add new parties, Fed.R.Civ.P. 21 controls. *Javier H. v. Garcia-Botello*, 239 F.R.D. 342, 346 (W.D.N.Y. 2006) (*citing Rush v. Artuz*, 2001 WL 1313465, at *5 (S.D.N.Y., Oct. 26, 2001). Rule 21 states that "[p]arties may be ... added by order of the court on motion of any party ... at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. "In deciding whether to allow [new parties], the Court is guided by the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Id.*; *see also Clarke v. Fonix Corp.*, 1999 WL 105031, *6 (S.D.N.Y. March 1, 1999), *aff'd* 199 F.3d 1321 (2d Cir.1999). As set forth in Point II below, the same is essentially true where, as here, post-litigation facts are sought to be alleged, so that the new Complaint is a Supplemental Complaint under Rule 15(d), as well as an Amended Complaint under Rule 15(a).

Under the foregoing standards, Plaintiffs should be permitted to amend their Complaint to add five new named plaintiffs/putative class representatives, a putative damages class for non-white drivers who received multiple tinted window or seatbelt tickets in a single traffic stop, and factual allegations regarding the BPD's racially discriminatory ticketing practices, its conducting of undocumented vehicle safety checkpoints, and aggressive ticketing of parked cars for traffic violations. As set forth below, Plaintiffs did not unduly delay the amendment of their Complaint and are not seeking these amendments in bad faith. These proposed amendments would not un-

duly prejudice Defendants and are not futile. Accordingly, justice requires that leave to make these proposed amendments be granted.

**B.      There Has Been No Undue Delay or Bad Faith on Plaintiffs' Part**

Plaintiffs have not unduly delayed amending their Complaint to add the new named plaintiffs, a new putative damages class, and new factual allegations regarding racial disparities in BPD's traffic ticketing, traffic ticketing of cars parked in public housing complexes, and unreported checkpoints.

The passage of time alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir.2008); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir.1995); *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). Thus, the court may only "deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice' other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir.2000) quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir.1990); *see also Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir.2000) (permitting amendment of answer to assert additional affirmative defense after a seven-year delay does not constitute an abuse of discretion in the absence of prejudice). While explanation for a delay is necessary, "even vague or thin reasons are sufficient." *Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74, 80 (E.D.N.Y. 2011) (*quoting Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97–98 (S.D.N.Y.2010)).

Here, Plaintiffs seek leave to amend more than a month before the Court-imposed deadline for moving to amend and more than two months before the current fact discovery deadline. Though 22 months have elapsed since Plaintiffs filed the Original Complaint, the Second Circuit has previously held that a similar length of time from the commencement of the action to the fil-

9

ing of the motion for leave to amend is not unreasonable delay without some evidence of bad faith or prejudice. *See Pasternack v. Shrader*, 863 F. 3d 162, 174 (2d Cir. 2017). In *Pasternack*, Plaintiff's moved to amend 19 months after the commencement of the original suit and the district court denied their motion to amend based on "delay and litigation expenses." *Id.* The Second Circuit reversed the district court denial of the motion to amend, concluding that "without more," the denial based solely on "delay and litigation expenses," constituted abuse of discretion. *Id*.

Here, the length of time it has taken Plaintiffs to seek to add new named plaintiffs putative class representatives, a new putative damages class, and the new factual allegations is not the result of any bad faith on their part, but, rather, reflects both the lengthy process required to interview, vet and select potential plaintiffs, and the extensive time and resources needed to obtain and analyze the BPD ticketing data that provided the basis for the new factual allegations and new putative damages class. Moreover, Plaintiffs had to complete the new plaintiff vetting and selection and the traffic ticket data analysis while at the same time meeting-and conferring frequently with Defendants and filing multiple motions to try to overcome the latter's repeated delays in and objections to producing responsive discovery. *See*, *e.g*., ECF Nos. 21, 24, 25, 34, 42, 51, 53.

In sum, any delay in Plaintiffs' seeking to amend their Complaint is not "inordinate" and therefore not grounds to deny their motion. *See Grace v. Rosenstock*, 228 F.3d 40, 53–54 (2d Cir. 2000).

## C.   The Proposed Amendments Will Not Prejudice Defendants

Defendants would not be prejudiced by the proposed amendments. "Although prejudice to the opposing party has been described as the most important reason for denying a motion to amend, only undue prejudice warrants denial of leave to amend." *Underwood v. Roswell Park*

*Cancer Inst.*, 15-CV-684-FPG, 2017 WL 1593445, at *5 (W.D.N.Y. May 2, 2017) (quoting *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016); *see also Oneida Indian Nation of New York State v. County of Oneida*, 199 F.R.D. 61, 77 (N.D.N.Y.2000) (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice). In deciding whether such prejudice exists, courts evaluate whether the amendment would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; (iii) prevent the plaintiff from bringing a timely action in another jurisdiction. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Courts also consider the particular procedural posture of the case. *See*, *e.g.*, *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir.2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.")

Under *Block*, Plaintiffs' proposed amendments will not unduly prejudice Defendants. *Block*, 988 F.2d at 350. First, Defendants will not be required "to expend significant additional resources in order to conduct discovery or prepare for trial." *Id.* As the proposed Amended Complaint makes clear, while each proposed additional name plaintiff presents additional facts regarding their individual traffic encounters with BPD officers that will be the subject of discovery, their addition to the case will not expand or otherwise alter Plaintiffs' *Monell* claims, which have been the sole focus of fact discovery in the case thus far. Thus, Defendants can easily include the five additional named plaintiffs in their discovery requests if and when Defendants decide to seek discovery. The new allegations regarding discriminatory ticketing practices, unreported checkpoints, and aggressive traffic ticketing of parked vehicles will also not impose a significant additional discovery burden on Defendants because Plaintiffs have already sought and

11

received data and information relevant to these allegations through their previous discovery requests, Defendants themselves have access to the TRACS BPD ticketing data upon which the allegations are based, and Plaintiffs will disclose the details of their analyses of the ticketing data to Defendants when they serve their expert report on or before the Court-ordered deadline, which is currently July 31, 2020. *See* ECF Nos. 48-49. Moreover, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *Guadagno v. MA Mortenson Co.*, No. 15-CV-00482, 2018 WL 4870693, * 7 (W.D.N.Y. Oct. 2, 2018) (quoting *United States ex. rel. Mar. Admin. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)).

Further, the proposed amendments will not significantly delay the resolution of the dispute. The Plaintiffs are seeking to amend their Complaint before the close of fact discovery, before any dispositive or class certification motions have been filed, and before Defendants have even begun to seek discovery from Plaintiffs. *See Guadagno*, 2018 WL 4870693 at * 8 (refusing to deny amendment on grounds of prejudice and delay where "no trial date had been set, discovery had not yet ended, and no dispositive motions had been filed.").

**D.     The Proposed Amendments Would Not be Futile**

Plaintiffs' proposed amendments to their Complaint would not be futile. "The standard for denying leave to amend based on futility is the same standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Group, PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Thus, in determining whether a proposed amended pleading "states a claim, [courts] consider the proposed amendment[s]. . . along with the remainder of the complaint, accept as true all non-conclusory factual allegations therein, and draw all reasonable inferences in [the pleader's] favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Panther Partners, Inc. v. Ikanos Communications,*

*Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  The claims of the proposed additional name plaintiffs and additional putative damages class and the new factual allegations regarding racially disparate tinted window and seatbelt ticketing, ticketing of parked cars in public housing, and unreported BPD checkpoints all satisfy this standard.

As a preliminary matter, Defendants implicitly acknowledged the plausibility of the four claims pled by the existing Name Plaintiffs when Defendants answered, rather than moving to dismiss, the Original Complaint. *See* ECF No. 6 (Defendants' Answer to Plaintiffs' Original Complaint).The five proposed additional named plaintiffs and the additional putative Multiple Ticketing Damages Class are asserting the same claims, and the additional allegations regarding the unreported checkpoints, racial disparities in the BPD's ticketing activity, and aggressive traffic ticketing of vehicles parked in public housing pertain respectively to Plaintiffs' existing Fourth Amendment, Fourteenth Amendment Equal Protection and Title VI, and Due Process claims.

The factual allegations contained in the Proposed Amended Complaint also plausibly allege that all five proposed additional named plaintiffs have standing to seek injunctive relief on all four claims. "In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 101–102 (1983)). Thus, "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." *Id.*; *Wells. v. McKoy*, 16-CV-00113, 2018 WL 6833665, \*4 (W.D.N.Y. Dec. 27, 2018) (quoting *Shain*).

Based on the facts alleged in the Proposed Amended Complaint, all five new plaintiffs satisfy this standard for injunctive standing. The Amended Complaint contains all of the facts alleged in Plaintiffs' Original Complaint, ECF No. 1, which Defendants have already acknowledged plausibly alleged the existence of ongoing and widespread checkpoint and traffic enforcement policies and practices of Defendant City of Buffalo that target non-white drivers and predominantly non-white neighborhoods throughout the City and violate the Fourth Amendment, Fourteenth Amendment Equal Protection and Due Process Clauses, and Title VI of the Civil Rights Act of 1964. All five of the proposed additional name plaintiffs are licensed Black drivers who either currently reside in, currently drive in, or are in the near future likely to drive in the Buffalo neighborhoods targeted by Defendants' challenged polices and practices and are therefore likely to be harmed by those policies and practices. *See* Atty Decl. Ex. 1, ¶¶ 267-377.

Their injunctive standing in turn plausibly establishes that the claims of the five additional named plaintiffs are typical of the putative 23(b)(2) Checkpoints Injunction Class and Subclass and Unconstitutional Ticketing Class, which also seek injunctive relief on all four of Plaintiffs' existing claims, such that all five individuals can represent these two classes and one subclass in this litigation. *See* Attorney Decl., Ex. 1 ¶¶ 399-417; *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010)("Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members," which "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (citations omitted); *Zink v. First Niagara Bank, NA*, 155 F.Supp.2d 297, 307 (W.D.N.Y. 2016)(same). Similarly, the Proposed Amended Complaint plausibly establishes that two of the proposed additional name plaintiffs, Shaketa Redden and Joseph Bonds, also have claims that are typical and can therefore serve as representatives of

14

the existing putative 23(b)(3) Checkpoints Damages Class and Subclass, since they are both Black drivers who were stopped and received tickets at BPD vehicle safety checkpoints during the putative class period. *See* Attorney Decl., Ex. 1 ¶ 424.

Lastly, it would not be futile to add the putative 23(b)(3) Multiple Ticketing Damages Class described in the Proposed Amended Complaint. As an initial matter, "inquiry into class action requirements on a motion to amend filed prior to a class certification motion is limited." *Blagman v. Apple, Inc.*, 307 F.R.D. 107, 118 (S.D.N.Y. 2015)(citations omitted); *Orellana v. Macy's Retail Holdings, Inc.*, 17 Civ. 5192, 2018 WL 3368716, *20 (S.D.N.Y. July 10, 2018)(quoting *Blagman*). "Leave to amend should be denied for futility only where the proposed amendment would, on its face, violate class action requirements." *Id.* On their face, the allegations in the Proposed Amended Complaint concerning the proposed putative Tinted Windows Damages Class do not violate any of the requirements of Fed.R.Civ.P. 23(a) or (b)(3).

First, the Proposed Amended Complaint alleges that the more than 50,000 tinted windows tickets were given disproportionately to Black drivers so the proposed putative class satisfies the numerosity requirement of Rule 23(a)(1). *See* Attorney Decl., Ex. 1 ¶¶ 111-116; 124-25; 431.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)("[N]umerosity is presumed at a level of 40 [class] members")(citations omitted).  Second, the Proposed Amended Complaint plausibly sets forth several questions of law and fact common to the entire proposed putative class, such as such as such whether the City of Buffalo has a policy, custom or practice of targeting non-White individuals for multiple tickets in a manner not applied to White individuals and, if so, whether such policy, custom or practice violates the Equal Protection Clause, that will predominate over questions affecting only individual class members, thereby satisfying the requirements of Rules 23(a)(2) and (b)(3). *See* Attorney Decl., Ex. 1 ¶ 427. Third,

the Amended Complaint plausibly establishes that the claims of proposed additional named plaintiffs/putative class representatives Ebony Yeldon and Charles Palmer are typical of the claims of the putative class because they are both Black drivers who each received multiple tinted window tickets from BPD officers during single traffic stops that took place during the putative class period, thereby satisfying the requirements of Rule 23(a)(3). *Id*. ¶ 430; *Brown*, 609 F.3d at 475. Finally, the Proposed Amended Complaint does not on its face fail to satisfy the adequacy of representation requirements of Rule 23(a)(4) because none of the allegations contained therein suggest in any way either that Plaintiffs counsel is not "qualified, experienced, and generally able to conduct" this litigation or that Ms. Yeldon and Mr. Palmer have interests that are "antagonistic" to the members of the proposed putative class. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).

In sum, none of Plaintiffs' proposed amendments to their Complaint would be futile.

## POINT II

**PLAINTIFFS SHOULD BE PERMITTED TO SUPPLEMENT THEIR COMPLAINT WITH ALLEGATIONS AND RELIEF REQUESTS CONCERNING THE THIRTEEN NEW CITY TRAFFIC FEES**

**A.     Legal Standard**

Federal Rule of Civil Procedure 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed.R.Civ.P. 15(d). "[A] supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings." *Webster v. Himmelbach*, 271 F.Supp.2d 458, 472 (W.D.N.Y. 2017)(internal quotations and citations omitted). "An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic

16

and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party." *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989). "Thus, under Rule 15(d), a party may supplement the original pleading to include subsequent occurrences which are related to the claim presented in the original complaint, absent prejudice to the nonmoving party." *McKenzie v. Obertean*, No. 17-CV-441W, 2019 WL 441593, * 1 (W.D.N.Y. Feb 5, 2019)(internal quotations and citations omitted).

Under the foregoing standards, Plaintiffs should be permitted to supplement their Original Complaint with factual allegations and relief requests regarding the thirteen new City fees assessed on drivers who received traffic tickets in the City of Buffalo. As set forth below, these allegations concern events that took place after the commencement of this lawsuit and that relate directly to Plaintiffs' existing Due Process claim. Moreover, adding these allegations to the Complaint will not prejudice Defendants nor delay resolution of this case.

### B. The Supplemental Allegations Concern Events That Took Place After Commencement of the Litigation and Pertain to Plaintiffs' Existing Due Process Claim

The proposed supplemental factual allegations and relief requests regarding the 13 Fees imposed on drivers who receive traffic tickets in Buffalo concern events that took place after the commencement of the present litigation. Plaintiffs commenced this litigation on June 28, 2018, and the 13 challenged fees were enacted by the Buffalo Common Council on July 10, 2018. Moreover, the new allegations concerning the fees relate directly to and provide further factual support for Plaintiffs' existing Due Process claim that Defendants have a policy and practice of using aggressive traffic enforcement to raise revenue for the City budget, and the relief request that these fees no longer be enforced and assessed is part and parcel of the Plaintiffs' existing relief request that the aforementioned policy and practice be enjoined.

### C. Supplementing the Complaint With These Allegations Will Not Prejudice Defendants Nor Delay Resolution of The Case

As with the proposed amendments discussed above, permitting Plaintiffs to supplement their Complaint with allegations and a relief request concerning the 13 Fees will neither unduly prejudice Defendants nor unduly delay resolution of this case. The supplemental allegations will neither surprise Defendants, significantly increase the resources they will have to devote to discovery, nor significantly prolong the amount of time needed to complete fact discovery in the case because Plaintiffs already served written discovery requests related to the 13 Fees more than a year ago and will be able incorporate questioning on the 13 Fees into the depositions of Defendants' 30(b)(6) witnesses, BTVA personnel, and other City policymaking officials that Plaintiffs had already intended to notice and take.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that their motion for leave to amend and supplement their Complaint be granted.

Dated: New York, NY
April 23, 2020

*/s/ Keisha A. Williams*
Joseph Keleman
Keisha Williams
WESTERN NEW YORK LAW CENTER
Main Seneca Building
237 Main Street, Suite 1130
Buffalo, NY 14203
Tel: (716) 828-8415
Fax: (716) 270-4005
jkeleman@wnylc.com
kwilliams@wnylc.com

*/s/ Claudia Wilner*
Claudia Wilner
Britney Wilson
Edward P. Krugman
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
Tel: (212) 633-6967
wilner@nclej.org
wilson@nclej.org
krugman@nclej.org

*/s/ Darius Charney*
Baher Azmy
Darius Charney
A. Chinyere Ezie
Brittany Thomas
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6439
BAzmy@ccrjustice.org
DCharney@ccrjustice.org
CEzie@ccrjustice.org
BThomas@ccrjustice.org