UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

BLACK LOVE RESISTS IN THE RUST, *et al.*,
individually and on behalf of a class of all others
similarly situated,

                Plaintiffs,

    v.

CITY OF BUFFALO, N.Y., *et al.*,

                Defendants.

No. 1:18-cv-00719-CCR

---

**DECLARATION OF CLAUDIA WILNER IN SUPPORT OF PLAINTIFFS' MOTION
TO COMPEL DEFENDANTS TO COMPLY WITH THE COURT'S DECEMBER 19, 2019
ORDER AND OTHER DISCOVERY OBLIGATIONS**

    I, Claudia Wilner, hereby declare, pursuant to 28 U.S.C. § 1746:

    1.    I am Director of Litigation and Advocacy at the National Center for Law and

Economic Justice (NCLEJ). I am one of the attorneys representing Plaintiffs and the proposed

classes in this action. Unless otherwise stated, the facts set forth below are based on my own

personal knowledge, and if called upon to testify, I could and would testify competently thereto.

    2.    I am an attorney admitted to the Western District of New York.

    3.    I submit this Declaration in support of Plaintiffs' motion to compel Defendants to

comply with the Court's December 19, 2019 order and other discovery obligations about which

the parties have reached an impasse.

**Defendants' Incomplete ESI Productions**

    4.    Pursuant to the Court's December 2019 order, on January 22, 2020, I sent

Defendants' counsel a list of twenty priority search terms.  In accordance with the Court's

instruction, the search terms consisted of "simplified" terms compatible with Defendants' email

systems. A true and correct copy of my January 22, 2020 email to Defendants' counsel and a list of the 20 priority search terms is attached hereto as **Exhibit 1**.

5.      Defendants made an initial production of ESI documents on February 11, 2020. This production consisted of just 273 pages related to two custodians. Defendants did not make a second production of ESI documents until April 24, 2020. That production was also limited to a few hundred pages. Defendants made additional very small productions in late June/early July, and then did not produce any ESI documents between July 7 and September 1, 2020. Defendants made several productions during September but have produced nothing since October 2, 2020.

6.      Plaintiffs have attempted in good faith to work cooperatively with Defendants in light of interruptions caused by the COVID-19 pandemic. For example, Plaintiffs have invited Defendants to produce documents electronically rather than by CD, and provided guidance to Defendants on how to do so.

7.      On September 18, 2020, Defendants' counsel sent me an email stating, about the status of Defendants' ESI productions for the twenty priority custodians and search terms, that "[p]roduction has been completed for *some* search terms for a *few* custodians, but *no* custodians or terms have been completed in whole" (emphasis added).  A true and correct copy of an email chain including Defendants' September 18 email is attached hereto as **Exhibit 2**.

8.      As of the date of this Declaration, Defendants still have not completed their ESI production for the twenty priority search terms and custodians. In fact, based on their status updates. Defendants have produced documents for fewer than half of the twenty priority custodians identified by Plaintiffs.

9.      Plaintiffs have conferred in good faith with Defendants about their failure to complete production of ESI documents for the twenty priority search terms and custodians in a

timely fashion.  For example, on September 8, 2020, I stated in an email to Plaintiffs' counsel (a copy of which is included in **Exhibit 2**) that "we have been very patient with you in light of the ongoing pandemic, our patience is wearing thin. You have produced very little since June, and in fact the vast majority of the ESI the court ordered you to produce in December 2019—nearly nine months ago—remains unproduced."  Likewise, in a September 25, 2020 letter to Defendants, I discussed Defendants' delays in producing ESI discovery.  A true and correct copy of my September 25 letter is attached hereto as **Exhibit 3**. In addition, Plaintiffs have conferred with Defendants about the status of their ESI production by telephone, including on May 6, 2020.

**Defendants' Failure to Produce Metadata Information**

10.     Following the Court's December 2019 order, Plaintiffs requested on May 5, 2020 that Defendants produce certain metadata information with Defendants' ESI productions.  A true and correct copy of my May 5, 2020 email requesting metadata information is attached hereto as **Exhibit 4**.

11.     After further meeting and conferring with Defendants' counsel to discuss a protocol for the production of metadata information, I proposed, on June 1, 2020, that Defendants produce a spreadsheet with their ESI productions, providing, for each document that included an email with hidden recipients (e.g., emails sent to listserv and BCC recipients) or that had attachments: (i) the document's bates number, (ii) the bates numbers of all attachments, (iii) the hidden recipients, (iv) the custodian, and (v) the date field.  On June 2, 2020, Defendants agreed to my proposal. A true and correct copy of my June 1 email and Defendants' June 2 response is included in **Exhibit 2**.

12.     Notwithstanding the parties' agreement, Defendants have not produced a single spreadsheet containing metadata information or provided metadata for their ESI productions.

13.      I have followed up with Defendants about their failure to produce metadata information, but Defendants have not offered a justification. For example, on September 18, 2020, I emailed Defendants to state that they had not provided a production cover letter or spreadsheet for any of their recent ESI productions.  Defendants replied that they would "put together a spreadsheet that can be updated," but as of the date of this Declaration, still have not provided any spreadsheet.  A true and correct copy of my September 18 email and Defendants' response are included in **Exhibit 2**.

14.     Most recently, in my September 25, 2020 letter to Defendants (attached hereto as **Exhibit 3**), I noted Defendants' continuing failure to produce metadata information. Defendants did not respond to the portion of my September 25 letter relating to metadata information.

**The Missing IAD Files**

15.     As of the date of this declaration, Defendants still have not produced all of the 168 IAD files they were ordered to produce within 30 days by the Court's December 2019 order.

16.     As of the date of this Declaration, Defendants have only produced approximately 63 of the 168 IAD files they were ordered to produce. Accounting for those files that appear to be duplicates, Defendants still have not produced 73 of the 136 unique IAD files that they were ordered to. According to the records produced by Defendants, 6 of the missing IAD files are from 2018, and 3 of the missing IAD files are from after the Complaint in this action as filed.

17.     Plaintiffs have conferred with Defendants about the missing IAD files numerous times. On March 6, 2020, my co-counsel Darius Charney emailed Defendants' counsel about the missing IAD files. Defendants' counsel acknowledged that some of the IAD files were missing,

stating that "some [of the 168] entries were duplicates, some no longer exist, and I've produced everything that we have but continue to look." Mr. Charney replied on March 10 to explain that even accounting for duplicates, Defendants still had not produced more than half of the missing IAD files, and requested that Defendants confirm the remaining IAD files had been destroyed, produce a copy of any relevant record retention policy, and provide the dates of destruction for the remaining files. Defendants' counsel stated that he would "have a response by Friday," March 13. But more than seven months later, Defendants still have not responded to Mr. Charney's March 10 email, other than to claim that the pandemic impeded their access to the IA files (see, e.g., Defendants' May 14, 2020 email included in **Exhibit 2**.) A true and correct copy of the March 2020 email chain between Mr. Charney and Defendants' counsel regarding the IAD files is attached hereto as **Exhibit 5**.

18.     In addition, Plaintiffs have conferred with Defendants' counsel about the status of the missing IAD files by telephone, including on May 6, 2020.

19.     Plaintiffs followed up with Defendants about this issue again in their September 25, 2020 letter (**Exhibit 3**). In response, Defendants stated on October 2, 2020 that they "believe some [files] were destroyed per document retention policies," and promised that they would "look into [it] further and provide "more detailed information by next Friday," October 9. A true and correct copy of Defendants' October 2, 2020 email is attached hereto as **Exhibit 6**.

20.     Defendants did not provide any "more detailed information" on October 9, nor have they done so as of the date of this declaration. Nor have Defendants produced any relevant document retention policies or other evidence corroborating their claim (which remains unconfirmed) that the remaining IAD files have been destroyed.

**Defendants' Failure to Produce Monthly and Daily Reports**

21.     On February 14, 2020, after the Court had denied Plaintiffs' requests for all Housing Unit and Strike Force Monthly and Daily Reports without prejudice to making a more particularized request, Plaintiffs narrowed their request to (i) monthly Housing Unit reports for January 1, 2018 to present; (ii) the first pages of Housing Unit and Strike Force Daily Reports; and (iii) the narratives for 36 Strike Force daily reports—mostly from dates when Plaintiffs believe a Checkpoint occurred but Defendants had not produced a Checkpoint directive and, for comparison, a small number of dates for which Checkpoint Directives were produced. True and correct copies of Plaintiffs' February 14 letter and May 6 email memorializing this proposal are attached hereto as **Exhibit 7** and **Exhibit 8**.

22.     During a May 6, 2020 telephonic meet and confer, Defendants agreed to produce the monthly Housing Unit reports from January 1, 2018 to present.  Defendants' counsel confirmed that agreement on May 14, 2020. A true and correct copy of Defendants' May 14, 2020 email is attached hereto as **Exhibit 9**.

23.     However, Defendants still have not produced monthly Housing Unit reports from January 2018 to present.

24.     Plaintiffs have attempted to confer in good faith with Defendants about their failure to produce he monthly Housing Unit reports.  For example, Plaintiffs noted that Defendants still had not produced these documents in their September 25 letter (**Exhibit 3**). Defendants did not respond to this portion of the September 25 letter.

25.     While Defendants agreed to produce the monthly Housing Unit Reports, Defendants have refused for months to take a clear position on Plaintiffs' requests for the first pages of Housing Unit and Strike Force Daily Reports, and the narratives for 36 Strike Force

daily reports from dates when a Checkpoint occurred but Defendants had not produced a Checkpoint directive.

26.    For example, in their May 14 email (**Exhibit 9**) Defendants stated that they were "attempting to determine if there is a way to produce just the first page" of the Daily Reports, and asked for more information about the narratives of the Strike Force Daily reports.  On June 1, 2020, Defendants' counsel stated that he was "still trying to print just the first page, and should know on Thursday [June 4, 2020], if possible, and how difficult." But Defendants did not provide further information on June 4 or in the weeks that followed. On June 25, 2020, Mr. Charney followed up with Defendants to ask for an update on the first pages of Housing Unit and Strike Force Daily Reports and to provide a list of 36 days for which Plaintiffs would like to receive narrative sections of the Strike Force Daily reports.  On July 9, after not receiving a response, Mr. Charney followed up again.  Defendants' counsel finally provided a response on July 14, but still did not commit to producing the first pages of Housing Unit and Strike Force Daily Reports or the narratives for 36 Strike Force daily reports. A true and correct copy of the email chain between Defendants' counsel and Mr. Charney is attached hereto as **Exhibit 10**.

27.    Plaintiffs' September 25 letter (**Exhibit 3**) once again requested a response to Plaintiffs' proposals concerning the monthly and daily reports.  Defendants did not respond to this portion of Plaintiffs' September 25 letter.

**Defendants' Failure to Provide Officer Employment History Information**

28.    On November 5, 2018, Plaintiffs served their First Set of Interrogatories to Defendant City of Buffalo, N.Y.  A true and correct copy of Plaintiffs' First Set of Interrogatories to Defendant City of Buffalo, N.Y. is attached hereto as **Exhibit 11**.

29.     On August 13, 2019, Plaintiffs served their Second Set of Interrogatories to Defendant City of Buffalo, N.Y. A true and correct copy of Plaintiffs' Second Set of Interrogatories to Defendant City of Buffalo, N.Y. is attached hereto as **Exhibit 12**.

30.     Defendants initially refused to answer Interrogatory No. 1 at all, but subsequently supplemented their response to provide some, but not all, of the requested information.

31.     On June 20, 2019, Plaintiffs advised Defendants' counsel that in order to perform a statistical analysis of the BPD's ticketing patterns, they needed to be able to identify whether tickets were issued by Housing Unit or Strike Force officers. This in turn would require Defendants to identify the specific time period during which BPD officers worked for the Housing Unit and/or Strike Force.

32.     The parties conferred on June 24, 2019, and Defendants' counsel subsequently explained that BPD maintained Special Orders documenting officer transfers *into* a particular unit, but no corresponding order when an officer transferred *out of* a particular unit. Defendants' counsel thus refused to supplement Defendants' answer to the Interrogatory.  As a result, Plaintiffs moved to compel a response to this Interrogatory.

33.     After Plaintiffs moved to compel, Defendants produced 35 pages of transfer orders in an effort to moot Plaintiffs' motion. While these transfer orders have allowed Plaintiffs to identify dates of employment for some Strike Force and Housing Unit officers, there are still significant gaps. For example, Plaintiffs have identified 45 open dates for 38 individuals in the Strike Force and Housing Units.

34.     On September 12, 2019, Defendants served their responses to Plaintiffs' Second Set of Interrogatories to Defendant City of Buffalo, N.Y. A true and correct copy of Defendants' responses to the Second Set of Interrogatories is attached hereto as **Exhibit 13**.  Defendants'

response to Interrogatory No. 12 did not provide the employment history for each Traffic Unit officer during the relevant period.

35.    Plaintiffs identified these issues to Defendants long ago and attempted to confer in good faith in an effort to resolve them. For example, on October 4, 2019, I notified Defendants that Plaintiffs had identified 45 missing dates for Strike Force and Housing Unit employees, and sent Defendants' counsel a proposed stipulation of fact identifying the missing dates.  A true and correct copy of my October 4, 2019 email and the proposed stipulation is attached hereto as **Exhibit 14**.

36.    On October 17, 2019, I met and conferred by telephone with Defendants' counsel about Interrogatories No. 1 and 12.

37.    Defendants produced some additional transfer orders on October 24, 2019, but the production remained incomplete. There was no update of the still-incomplete Strike Force and Housing Unit responses, and the information regarding the Traffic Unit was incomplete as well. For example, based on the information produced by Defendants so far, Plaintiffs have identified six Traffic Unit employees for whom an end date is still lacking, and twelve individuals that Plaintiffs suspect were Traffic Unit employees but for whom Defendants did not produce any date information.

38.    Plaintiffs met and conferred again with Defendants about the Interrogatories on November 25, 2019. Following the meet and confer, Plaintiffs sent Defendants a spreadsheet identifying the missing dates for Traffic Unit employees.  A true and correct copy of Plaintiffs' November 25, 2019 email and spreadsheet is attached hereto as **Exhibit 15**.

39.     However, Defendants have not provided the information necessary to fill in these gaps and to provide complete answers to the Interrogatories.  Since November 2019, Plaintiffs have followed up with Defendants about this issue several times to no avail.

40.     For example, on January 21, 2020, Defendants' counsel stated that he was in the process of "confirming dates" of Strike Force and Housing Unit officers and would provide updated information by "early next week," i.e., the week of January 27. *See* **Exhibit 7**. But Defendants did not provide an update.

41.     On May 20, 2020, Defendants' counsel said he would follow up with Plaintiffs about this issue by May 22. But he did not follow up on May 22.

42.     On June 1, 2020, Defendants' counsel sent an email stating that he was "working on this" issue and he "[a]nticipate[d] we will have a response next week." Defendants' counsel did not provide a further response that next week.  A true and correct copy of Defendants' June 1, 2020 email is included in **Exhibit 2**.

43.     Plaintiffs again asked about the status of the missing employment history information in their September 25 letter (**Exhibit 3**).  Defendants did not respond to this portion of the September 25 letter.

**Defendants' Failure to Produce Complaints to the Commission of Citizens' Rights and Community Relations**

44.     On August 13, 2019, Plaintiffs served their Third Set of Requests for Productions to Defendant City of Buffalo, N.Y. (the "Third RFPs").  A true and correct copy of Plaintiffs' Third RFPs is attached hereto as **Exhibit 16**.

45.     Defendants served responses and objections to the Third RFPs on September 25, 2019, and supplemental responses to the Third RFPs on December 13, 2019. A true and correct copy of these responses are attached hereto as **Exhibit 17** and **Exhibit 18**.

46.     As of the date of this declaration, Defendants have not produced any documents responsive to Plaintiffs' Requests for Production No. 79, which requests all documents concerning citizen complaints received, reviewed, and/or investigated by the City of Buffalo Commission on Citizens' Rights and Community Relations (CCRCR) concerning: (a) racial, ethnic, and/or national origin discrimination by BPD and/or BPD personnel; (b) BPD Checkpoints; (c) BPD traffic stops and/or other BPD traffic enforcement practices; (d) traffic tickets, fines, and fees; and (e) the BTVA.

47.     Other documents produced by Defendants indicate that these CCRCR documents exist.  For example, the minutes for the May 18, 2016 CCRCR meeting produced by Defendants indicate that CCRCR maintained a "complainant database" and include a discussion about "the complaints filed."  A true and correct copy of the May 18, 2016 CCRCR meeting minutes, produced by Defendants with bates stamp COB010024-COB010026, is attached hereto as **Exhibit 19**.

48.     Plaintiffs have attempted to confer in good faith with Defendants about this request.  For example, the parties discussed this request during a May 6 telephonic meet and confer, and Plaintiffs followed up by email (**Exhibit 7**) to request an update on the request.  On May 14, Defendants responded by email (**Exhibit 8**) stating simply that they "do not have any further information on this but will continue to attempt."

49.     Plaintiffs raised this issue again in my September 25 letter to Defendants' counsel (**Exhibit 3**).  Defendants have not responded to this portion of my September 25 letter.

**Defendants' Failure to Produce Documents in Response to Plaintiffs' Fourth Set of Requests for Production**

50.     On May 12, 2020, Plaintiffs served their Fourth Set of Requests for Production to Defendants (the "Fourth RFPs"). A true and correct copy of the Fourth RFPs is attached hereto as **Exhibit 20**.

51.     On June 11, 2020, Defendants served their responses and objections to the Fourth RFPs. A true and correct copy of Defendant's' responses and objections is attached hereto as **Exhibit 21**.

52.     On June 18, 2020, I sent Defendants' counsel an email asking him to clarify his responses and objections to the Fourth RFPs. Defendants' counsel responded to my email on June 23. A true and correct copy of my June 18 email and Defendants' response is attached hereto as **Exhibit 22**.

53.     On information and belief, Defendants have not produced any discovery in response to Plaintiffs' Fourth RFPs. Nor have Defendants informed Plaintiffs that their search for documents responsive to the Fourth RFPs is complete.

54.     A true and correct excerpt of the City of Buffalo's 2015 Justice Assistance Award Grant GMS Application is attached hereto as **Exhibit 23**.

55.     A true and correct excerpt of the City of Buffalo's 2019 Justice Assistance Award Grant GMS Application is attached hereto as **Exhibit 24**.

56.     Plaintiffs have attempted to confer in good faith with Defendants about their failure to produce documents in response to the Fourth RFPs. In my September 25 letter to Defendants' counsel (**Exhibit 3**), I noted that "Defendants have [] failed to produce a single piece of discovery responsive to Plaintiffs' Fourth Requests for the Production of Documents, served on May 12, 2020." Defendants did not respond to this portion of my September 25 letter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2020

/s/ Claudia Wilner
Claudia Wilner