# Exhibit 9

| | |
|---|---|
| **From:** | Quinn,Robert E <rquinn@ch.ci.buffalo.ny.us> |
| **Sent:** | Thursday, May 14, 2020 6:48 PM |
| **To:** | Claudia Wilner |
| **Cc:** | Darius Charney; Joachim, Jordan S; Britney Wilson; Chinyere Ezie |
| **Subject:** | RE: Discovery & Extension of Time |

**[EXTERNAL]**
Responses below:

### I.  Extension of Court Deadlines:

I know you are concerned about the June deadline but at this time I do not have authority to make a "joint motion" and I don't know that I will get it. Again, I want to be as clear as possible on this, I agree more time is warranted, the deadlines in your motion are fine, and I will not be opposing any motion you bring and am happy to advise the court of the same. I don't believe calling something a "joint motion" makes any difference in the basis for granting it. Seems like we're expending a lot of energy on semantics and I'm confused as to why that is.

### II.  ESI

At this point we will be proceeding without the vendor for search, but may use in the future as needed. My plan is to continue through each custodian and produce in accordance with your request (i.e, separating each email and using the spreadsheet, etc.), and my guess is some accounts will be quicker/easier than others. If there are ones where this is not feasible, or there are particular issues that areise, we will advise of the same and take the necessary steps. I have your spreadsheet and it seems fine. I'm not sure I read the judge's decision to say a spreadsheet is required but will do if you'd prefer. Just obviously might impact timing, but hopefully not too much.

I confirmed that the "simple search" terms were used for Helfer and Morgera. My plan is to have them run the advanced terms and see what difference that makes and I will advise of the results. If direct communication becomes necessary I will consider but I would ask that you not contact vendor at this time.

As far as the non-responsive emails, at this point it is only the BMHA email accounts and hopefully the vendor will offer some insight on the Morgera Helfer accounts. I don't imagine this will be a problem for each account but will advise if it keeps coming up along with any other issues.

As far as actual production, if we're doing separate documents my preference would be to produce on disk through mail. Is that acceptable, are you still receiving mail, and is there a preference as to where its sent? I expect to have our next batch sent out on Monday and will do that on the Covington website unless told differently.

### III.  Redactions

This seems reasonable. I'll figure out if I have that capability in Adobe and produce something demonstrative on Monday.

### IV.  Non-ESI Discovery

**Internal Affairs files:** As I said, this one was impacted by the stay at home orders. There is some talk that we'll be back in offices soon but until then I'm not sure I can add much.

**Housing and Strike Force daily reports:** I'm attempting to determine if there is a way to produce just the first page that is not burdensome and if so we will produce. We may be able to do this remotely and I am making efforts towards that. For the 30-50 days do you just want information related to checkpoints or would it be everything? I'm assuming redaction as you proposed above would be acceptable either way?

**Housing Unit Monthly Reports**: On the monthly reports from January 1, 2018 to the present that's correct, I should be able to produce, but am unsure of the timing with everyone working from home.

On the redaction, I don't believe we've talked about this before so it may be helpful to just send a single page where you think the redaction is improper and we can discuss on our next call.

**Lieutenant Fahey deposition training materials:** I do not have any further information on this but will continue to attempt. This category is also impacted by the stay at home orders.

**Complaints to Commission on Citizens' Rights and Community Relations**: I do not have any further information on this but will continue to attempt. This category is also impacted by the stay at home orders.

**Employment History of Housing, Strike Force, and Traffic Officers**: I don't remember this one but am happy to discuss on our next call.

### V.    Mediation & Settlement

I disagree on this one. I was and still am under the expectation that you would be replying, and have been waiting for some time for that to occur. I followed up numerous times on that expectation and it was repeatedly confirmed, yet I still have seen nothing. Given our prior communications and the way this case has proceeded, I think a mediator is absolutely crucial. As far as I can tell, it's the only reason why resolution was even addressed. We can discuss further on the call, but do not think I will be able to agree to your proposal.

Let's try to discuss all of this early next week. Given that I anticipate sending some of this out on Monday. Wednesday might make the most sense, I'm available all day. Thanks.

---

**From:** Claudia Wilner [mailto:wilner@nclej.org]
**Sent:** Tuesday, May 12, 2020 10:26 AM
**To:** Quinn,Robert E
**Cc:** Darius Charney ; Jordan Joachim ; Britney Wilson ; Chinyere Ezie
**Subject:** Discovery & Extension of Time

*ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.*

Good morning Rob,

I'm writing to follow up on our call on Wednesday, May 6, regarding the form of Defendants' ESI production, the status of outstanding non-ESI production in response to Plaintiffs' previous requests, the parties' mutual

need to extend the discovery schedule, and the status of settlement discussions. As a reminder, the current discovery deadline is June 12, 2020 (one month from today).

**I.      Extension of Court Deadlines**:

We would prefer to file a joint motion seeking an extension of deadlines, and we have attached a draft motion to this effect. If you agree with this course of action, please feel free to make edits and return them to us in tracked changes. We can discuss further on the call, but we would like to file the motion on **Wednesday, May 13** so that the court has plenty of time to consider it.

**II.     ESI**

During our call, we discussed Plaintiffs' expectations that production be made according to the specifications laid out in our May 6 email.

We asked for a general update as to the status of the ESI searches and you stated the following. The vendor has helped with production related to Outlook, but Defendants are handling Lotus Notes separately and have not used the vendor for the production of ESI from Lotus Notes. Defendants have provided most of the documents for custodians Morgera and Helfer and the results of the search of "roadblock" for Lockwood. Defendants were unable to search "BMHA" for Morgera and Helfer because the search was returning all email from or to anybody at the BMHA, regardless of relevance to the lawsuit. The vendor ran the searches for Morgera and Helfer and most likely used just the simple search terms.

With respect to the production of metadata in accordance with the court's order, Plaintiffs suggested that if Defendants could engage their vendor to assist with production that would most efficiently address the metadata issue because the format of the vendor's production would automatically include metadata. To the extent that Defendants do not further engage the vendor, Defendants need to produce an Excel spreadsheet that captures, for each document produced, the required data in separate fields. This document would also be used to track which attachments go with which parent document. You asked us to provide a sample spreadsheet for this purpose. Please see the attached example.

With respect to the issue of overbroad search terms, again the issue of the vendor came up. Plaintiffs shared our belief that if the vendor could run more complex searches such as the ones we initially proposed, the search would return a narrower list of documents, thus addressing the problem of overbroad search terms. Regardless of whether you decide to engage the vendor, we asked you to communicate issues with respect to search terms in writing, (i.e. how many results are returned and a description of the overbreadth issue) so that we can propose alternatives.

You confirmed that Defendants' vendor is familiar with Plaintiffs' production requirements, but noted that their assistance with production depends on the time involved and how much it would cost. You stated that Defendants had not yet determined whether to use the vendor for the remainder of ESI production. You stated that you hoped to have an update by the time of our next call. Plaintiffs requested to speak directly with the vendor if you continue to use them.

You stated that you would try separating each email, adding Bates numbers, and including the required data in a spreadsheet and report back to us by this Friday, May 15.

**III.    Redactions**

You stated that for some BMHA and police searches, some of the results include personal information that might need to be redacted. Plaintiffs stated that the normal way to handle redactions would be to produce a

3

privilege log, but you stated that nothing has been redacted yet. Plaintiffs raised our Strike Force and Housing redaction proposal and restated our position that Plaintiffs and Defendants should agree in writing to a redaction proposal.

As we stated on the call, Plaintiffs would agree to our earlier redaction proposal, which would permit you to redact (1) names and other personal identifying information of witnesses, crime victims, crime suspects, arrestees, and informants, and (2) information related to currently ongoing BPD investigations. If the redaction is done electronically, rather than redacting with black boxes, you can cover the redacted text with a text box that states the basis for the redaction (PII or current investigation); if done in this manner we would not need you to list these redactions on a separate privilege log.

We ask that you agree in writing to this proposal or suggest an alternative.

### IV.     Non-ESI Discovery

Plaintiffs understand that Defendants' ability to produce non-ESI discovery has been and continues to be greatly compromised by COVID-19. Paper files and key personnel may be unavailable for some time. For this reason, the parties intend to focus on getting through the ESI production, which can be done remotely. Nevertheless, Plaintiffs would like an update on the following outstanding matters.

**Internal Affairs files:** Plaintiffs stated that Defendants have only produced 63 of the required 136 unduplicated files. We last had correspondence with Defendants about this on March 10, when we sent you a chart summarizing what we'd received. You had previously said you would get back to us by March 13, but you did not.

**Housing and Strike Force daily reports:** Plaintiffs asked for a response to our proposal that you produce only (1) the first pages of these reports, which would not need redacting; (2) the narratives for 30-50 Strike Force daily reports on which the data suggests a Checkpoint occurred but you did not produce a Checkpoint directive. We will follow up to provide you with the specific dates for which we seek narratives.

**Housing Unit Monthly Reports**: You previously produced these documents for the time period June 1, 2013 to December 31, 2017. We asked that you update your production to include monthly reports from January 1, 2018 to the present. You said that you should be able to do that, but you were unsure of the timing.

Upon review of your previous production of monthly reports, the documents you produced appear to be riddled with improper redactions that go well beyond the agreed categories mentioned above (PII and current, ongoing investigations). Further, despite numerous requests you still have never provided a privilege log to explain the basis for the redactions. Accordingly, we ask that you re-produce the Housing Unit monthly logs without redaction (except for the narrow categories agreed above) and that the method of redaction specify the basis for the redaction as explained above.

**Lieutenant Fahey deposition training materials:** Plaintiffs asked for an update on whether Defendants have searched for training bulletins responsive to Plaintiffs' document requests.

You stated that Defendants had at least partially produced some of these documents as well as your belief that Defendants had searched for everything that Plaintiffs had requested.

Plaintiffs asked if Defendants have searched for racial and ethnic bias training materials. You stated that you would look for those. Plaintiffs also stated that we're aware of search and seizure related materials.

**Complaints to Commission on Citizens' Rights and Community Relations**: Plaintiffs asked for an update on complaints made to the above-referenced commission. Documents you previously produced reference such complaints but did not include them. You had previously stated that you would provide an update on this point by March 20.

**Employment History of Housing, Strike Force, and Traffic Officers**: We did not discuss this item during our meet and confer but would like to discuss this week. You had promised to provide an update on this item by March 13, but you did not.

### V.      Mediation & Settlement

We discussed the recusal of our mediator. You stated that rules say we need to agree on a new one or court will appoint one. Plaintiffs stated our concerns about the utility of the mediation process and its cost to the parties. Plaintiffs also offered to share our reply to Defendants' response to our mediation proposal, if it would be helpful, and you stated that it would be.

We would like to discuss this matter further on our call. We have reviewed the ADR Rules of the WDNY and have fulfilled the mandatory requirements. Plaintiffs have no objection to continuing settlement discussions, but we do not believe it makes sense to use a mediator at this stage. A mediator is more useful when we are closer to agreement. Therefore, we propose that the parties jointly inform the court that we do not wish to continue with the ADR program at this time.



**Claudia Wilner**
Director of Litigation and Advocacy (pronouns she/her)
National Center for Law and Economic Justice
275 Seventh Avenue, Suite 1506, New York, NY 10001-6860

212-633-6967 | wilner@nclej.org | www.nclej.org

   

**Confidentiality Note**: This e-mail (including attachments) is intended only for the addressee and may contain information that is privileged and/or confidential. Distribution or copying of this e-mail or its attachments by anyone other than the intended recipient is prohibited. If you have received this e-mail in error, please notify us immediately by telephone at 212-633-6967 or e-mail at info@nclej.org and destroy the original message and all copies.