UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLACK LOVE RESISTS IN THE RUST, et al.

          Plaintiffs,

             **-vs-**

CITY OF BUFFALO, et al.

          Defendants.

_____

          **DECLARATION**

    **Civil Action No.: 18-cv-719**

     **ROBERT E. QUINN,** Assistant Corporation Counsel, *of Counsel* to Timothy A. Ball, Esq., Corporation Counsel, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

    1.    I am an attorney licensed to practice law in the Courts of the State of New York and in the United States District Court for the Western District of New York, and an Assistant Corporation Counsel for the City of Buffalo, and I represent the Defendants in this action.

    2.    As such, I am fully familiar with the facts and circumstances set forth below.

    3.    This Declaration is offered in opposition to Plaintiffs' Motion to Compel discovery pursuant to Fed.R.Civ.P. 37, filed on October 22, 2020. (Dkt. No. 66).

    4.    Defendants submit that we have responded to all requests and raised valid objections, Plaintiff's counsel has not adequately conferred in an effort to obtain the discovery at issue, Plaintiffs have not met their burden on this premature Motion, which seeks materials not reasonably accessible, and should therefore be denied.

***A. Defendants have timely responded to all Discovery Requests and acted in good faith.***

5.      The discovery sought by Plaintiffs has been extensive, involving multiple large departments throughout the City of Buffalo and years of data, and we respectfully submit that Defendants timely responded to their requests, in accordance with this Court's directions and Orders, in producing the appropriate materials at all times.

6.      To date, Defendants have produced Twenty-Two Thousand Five Hundred and Seven (22,507) pages of documents responsive to the Plaintiffs' extensive requests, which have been bates numbered COB000001-COB022507.

7.      Specifically, the Defendants served their Responses to the Plaintiff's First Set of Requests for Production and First Set of Interrogatories on December 5, 2018.  A First Supplemental Response to Plaintiff's First Set of Interrogatories was served on February 5, 2019.  A First Supplemental Response to First Set of Requests for Production was served on March 15, 2019. A Second Supplemental Response to Plaintiff's First Set of Interrogatories was served on April 11, 2019.  A response to Plaintiffs' Second Set of Requests for Production was served on May 19, 2019.  Responses to Plaintiffs' Second Set of Interrogatories were served on September 12, 2019. Responses to Plaintiffs' Third Set of Requests for Production were served on September 25, 2019.   On December 13, 2019 the Defendants served their First Supplemental Responses to Plaintiffs' Third set of Requests for Production.  On June 11, 2020 the Defendants served their responses to Plaintiff's Fourth Request for Production of Documents.  *See*, **EXHIBIT A**.

8.      On December 19, 2020, the Defendants produced Lt. Joseph Fahey for a deposition which resulted in a 261 page transcript.

9.     After initial ESI production, in order to continue to comply with this Court's order, and in light of the Covid-19 pandemic and workplace shutdowna, on March 22, 2020 your deponent purchased a laptop to process while the City's buildings were closed.

10.     The Defendants also contracted with a vendor to restore BPD email accounts for retired and other identified custodians at a not insignificant cost, and your deponent traveled to the vendor's location on or about April 27, 2020, to retrieve the restored data and have search capacity installed on the recently purchased laptop.

11.     Since April of 2020, through uploading separate and individually named PDF files to Plaintiffs identified fileshare site, the Defendants have produced well over 6,000 pages of ESI in accordance with the Courts order in a periodic and consistent manner.  Record of file uploads attached as **EXHIBIT B**.

12.     As set forth in the extensive emails exchanged to during this period your Deponant has communicated with Plaintiffs' counsel on a near constant basis advising as to the Defendants positions and the status of discovery.

13.     It is also worth noting that on or about May 21, 2020, the Plaintiffs filed an Amended and Supplemental Class Action Complaint (Dkt. 63), which the Defendants Answered on June 4, 2020. (Dkt. 64)

14.     Defendants have also continued all other searches during this period, supplementing responses on October 2, 2020 and October 3, 2010 among other periodic and consistent responses, though this search, particularly the search for paper documents in City buildings while most employees worked from home has been complicated by the Covid-19 pandemic.  *See*, **EXHIBIT C**.

15.     Because of the amount and extent of discovery sought, and the fact that your Deponent is the only attorney handling this matter during an unprecedented time which a majority of our work force is unexpectedly working from home, and dealing with the practical realities accompanying, this has likely taken slightly more than would have occurred under normal circumstances, but we respectfully submit that it has been entirely diligent and appropriate under any circumstances.

16.     In addition to all of this ongoing discovery and production, at the time this motion was made, your deponent understood the parties to be attempting to plan and schedule additional depositions to move this matter forward.  *See*, **EXHIBIT D**.

17.     In fact, on the day this Motion was made, counsel for the parties conducted a meet and confer on Plaintiffs' request for consent to conduct at total of 70 depositions, which Plaintiffs' counsel had actually confirmed was only on the issue of depositions. *See*, **EXHIBIT E**.

18.     At the collusion of that meet and confer, Plaintiffs' counsel mentioned for the first time, "as a heads up", that they would be making a Motion to Compel.

19.     As memorialized in my subsequent email attached as Exhibit E, when your deponent inquired as to the subject of that motion to compel, Plaintiffs' counsel indicated that "it was in the emails" and when your Deponent inquired as to the timing of that Motion, they advised that it would be made later that night.

20.     When I stated that I believed this was premature and inappropriate and both Mr. Charney and Ms. Wilner stated my objection was "duly noted" without any substantive or productive response, and later that night filed this voluminous motion.

4

21.     Your Deponant therefore has had to divert from actual discovery production and scheduling depositions to offer this opposition, which we would respectfully submit does little to help move this matter closer to a conclusion.

22.     As one attorney in a small and busy municipal law department with limited resources and manpower, responding to the Plaintiffs' various discovery requests has been a very large and taxing procedure in the normal course, and was certainly not the only matter which requires our full attention and commitment of resources.

23.     While we do not offer this as excuse, as with all other Americans, particularly those with small children now learning from home, this period of time has been one of unusual and unanticipated street and circumstances, which makes the timing and manner of this particular Motion so troubling.

24.     As we hope is evident, Defendants have produced extensive documentation and have also provided extensive explanation and identification of the potential information that exist and attempted to work through various aspects of this discovery process, both through our meet and confers and in follow up communications.

25.     While we understand that Plaintiffs' allegations are wide-ranging, and that discovery is a process and it is expected that a case like this would have extensive documentation, we do not believe the constant attempts at gamesmanship and posturing are productive in moving this case to its conclusion.

26.     While we do not wish to burden the Court unnecessarily with oversight of discovery, we do believe regular status conferences may be ultimately helpful in moving forward discovery in a more practical and efficient manner.

27.    For all these reasons, undersigned respectfully submits that Defendants have appropriately complied with this Court's directions and orders, responding to all of Plaintiffs' demands in good faith, and the Motion should be denied in its entirety.

**I. ESI**

28.    With respect to the ESI, Defendants will comply with whatever schedule the Court believes is reasonable and appropriate and respectfully ask for guidance in this regard if considered appropriate under the facts and circumstances.

29.    We have been able to continue this through ought the Covid-19 pandemic by remote computer access and the fact that the Defendants took the affirmative steps described above, though it has been impacted by other obligations and the general increase in pace and activity of other litigation as we adapt to our present circumstances.

30.    The current process is that your Deponent searches individual accounts by the terms provided, prints each individual email to PDF, and then bates numbers each document through Adobe Pro and uploads to the filesharing site identified by Plaintiffs.

31.    The pace of this production process is generally demonstrated by Exhibit B, though is impacted by the particular search terms and size of the custodian accounts searched, in addition to the regular circumstances impacting the pace of work.

32.    For additional context and the Court's consideration, the Defendants' most recent production of Lt. Kimberly Beaty ESI is described in the emails attached as **EXHIBIT F**.

6

33.     These emails are taken from a data set of what appears to be 42,489 separate emails contained within Lt. Beaty's account.  The actual size of the file appears to be "6,711,552 KB".  It has taken approximately two weeks to process the account up to this point, and 11 of the search terms have not been completed.

34.     I would also note that, depending on the account, some search terms can have an usually large number of hits.  For instance, a recurring listserv email which contains a phrase like "update your profile" can cause a disproportionate number of responses for "profil".  The search term "rac" can also have unusual clusters.

35.     The number of hits for a particular search term depends on the particular accounts searched, and some generally have far more hits than others in each account, but it is not entirely consistent (i.e., some have more this for BMHA, etc., some don't)

36.     As a rough estimate, I would anticipate that the Defendants are somewhere close to 50% complete with the search terms and custodians.

37.     The basis for this belief is through prior production pace, remaining custodians and number of expected hits, forming a rough estimates of the work to be completed.  This does not yet amount to 50% of the custodians and/or terms, but we have been focused our efforts on going through the larger accounts to expedite production.

38.     As I have indicated to Plaintiffs' Counsel on several occasions without response, if there is a certain order they want those accounts searched we will be happy to comply, but I have not heard back so we have continued to process in most expedient manner possible.  I would again suggest that focusing on particular accounts could also allow us to move forward with depositions.

39.    While we will make every effort to comply with whatever schedule set by the Court deemed appropriate, it is my best estimation that we can largely conclude the remaining custodians and terms by the end of this year.

40.    With that said, there are outliers and unexpected issues that have already come up in this process, so it is certainly possible that not everything would be 100% completed by that point, but we will make every effort to comply if the court feels appropriate, and belief in good faith that production could be mostly completed by then.

41.    I do not believe that the period requested by Plaintiff's counsel would be feasible or appropriate under the present circumstances and upon information and belief any other method would result in additional, unnecessary, and exorbitant costs.

42.    With respect to the spreadsheet requested, as previously stated to Plaintiff's counsel, we are not objecting to providing some type of spreadsheet, and will provide whatever information is appropriate but ask that it be reasonably balanced with the time and effort required to put it together.

43.    It has been our focus to produce the actual ESI and our intention to provide some type of spreadsheet at a later date, as the process of putting one together and updating, will substantially delay the current pace of production, and the information which is readily apparent from the documents produced themselves, but if that's not appropriate we will adjust in whatever way deemed appropriate by the court.

44.    The suggested spreadsheet and information seems reasonable and we will provide if and when the Court deems appropriate, but we ask that the document be required after production of the ESI or at some periodic interval to minimize the burden.

**II. IAD Files**

45.    In accordance with this Court's Order, your Deponent has produced all identified IAD files that were able to be located through diligent search and we respectfully submit that Defendants have fully complied with this Court's Order.

46.    Plaintiffs' are correct that not all of the IAD files previously identified were produced and, as I have indicated to them on several occasions, it is my understanding that the files not produced were previously destroyed per record retention policies.

47.    IAD files are maintained in Police Headquarters the by the Internal Affairs Division and it is my understanding that they are kept in paper copy only, but record of each file's creation is kept in the IAPro system, which is why and how they were previously identified but no longer exist in full paper copy.

48.    The actual IAD files produced to Plaintiffs' were scanned copies of the paper files kept in the ordinary course by the Internal Affairs Division that were able to be located, and we have retained and preserved those hard copies to date.

49.    Following this issue being brought to light by Plaintiffs' counsel, follow-up up searches for each identified file was conducted, and inquiries were made to determine if electronic or other copies of the files were kept, and we have been unable to locate any such copies to date and it is my understanding that none exist based on record retention.

50.    It is also my understanding that there are no records kept of the date of destruction and therefore we are unable to produce any such records, but do expect that individuals in the Internal Affairs Division would be able to testify as to all these matters if deemed appropriate by this Court.

51.    Your Deponent has also inquired about the existence of a document retention policy, and am still searching for any and all applicable documentation, but do not have final information on this subject at the time of this Declaration.

52.    Unfortunately, as I have previously indicated to the Plaintiffs' Counsel, this particularly search has been impacted by the timing of the Covid-19 pandemnic, and specifically the fact that most employees are still working from home, which we are working diligently to overcome.

53.    If and when we locate the applicable record retention schedule we will produce the same with any other appropriate information determined.

54.    We would respectfully suggest that the request for affidavits and other information is premature, but certainly understand and expect that this topic could be explored through deposition testimony and or other discovery devices as appropriate, and respectfully suggest that it be fully explored firth by all parties, and further addressed if needed after that, based on a full understanding of the circumstances.

55.    If the Court disagrees and believes it is ripe to be addressed now, we will comply in whatever manner deemed appropriate but would request a reasonable amount of time to do so under the present circumstances and in light of the multitude of other requests and issues in this case.

### III.  Other Discovery

**A.  Housing, Traffic Unit, and Strike Force Monthly Reports and Dailey Reports.**

56.    With respect to the Housing, Traffic Unit, Strike Force Monthly, and Daily Reports, this Court has previously decided that the Plaintiffs failed to demonstrate entitlement to those records and their renewed motion, while more limited in scope, the motion still fails to demonstrate the basis for why these materials are discoverable and should therefore be denied again.

57.    With that said, as a showing of good faith we have in fact engaged in discussion on producing those materials, and will continue to do so regardless of the Court's decision, because it is our sincere hope to move this discovery process forward.

58.    If there are any limitations on the Defendants abilities to do so, it is not out of desire to avoid discovery, but a simple lack of time to comply with all of Plaintiffs' various discovery demands, arguments, and accusations, at the same time.

59.    For these reasons, we again bring up the unfortunate timing of this Motion, which was brought without notice a few hours after  the Defendants made time and expended efforts to work towards a reasonable resolution to Plaintiffs entirely premature and inappropriate request to consent to 70 depositions after only 1 had been conducted.

60.    As set forth above, the Defendants have limitations on time and resources available in responding to Plaintiffs requests and we would think that all parties could agree that those resources would be better served in searching for and producing discovery materials and not responding to unnecessary and theatrical motion practice.

61.     I would note that this is not meant to avoid the question, or an ultimate decision on these materials, and if the Court feels that the redaction compromise is appropriate we'll comply regardless of the appropriateness of a Motion to Compel to avoid having to revisit this issue again, but would just request a reasonable timeline.

### B.  Employment History.

62.     Defendants have objected to the requested information on several grounds, we have provided more than enough information and documentation already on these issues through documents and interrogatories, and Plaintiffs' Motion fails to demonstrate why this additional information is material or needed to prosecute their claims.

63.     The individuals requested are not named parties, include every officer assigned to several divisions within the Police Department over the course of several years, and as we have previously indicated to Plaintiffs' counsel your deponent is unaware of any reasonably practicable way to determine this information other than through searching what has previously been provided.

64.     With that said, prior to the pandemic your Deponent had made several attempts to locate this information and, regardless of this Court's decision on the Motion, we will continue to undertake that effort to hopefully avoid this repeated, unnecessary, and time consuming motions so that this matter could be moved forward.

65.     As I have previously indicated, upon information and belief, the only remaining, if not precise method of determining the dates of assignment to the Housing

Unit and Strike Force would be to check daily manpower reports to see if a particular officer is noted on a particular day.

66.    We have searched but are currently unaware of a similar method for Traffic.

67.    This method would be time consuming, and would not be entirely precise because the information is not necessarily synchronous, (i.e, it could only tell you if a particular officer worked that day, not when they were assigned and when they left, whether they were on leave, if they spent a period in another assignment, etc.) however it could be attempted if given direction and time by the Court.

68.    I would note, that this method would have to be undertaken for each officer if the Plaintiffs sought some type of confirmation of their all their conclusions, but could be done more expediently if it was for specifically identified officers.

### C.  Complaints to Commission on Citizens Rights

69.    While valid objections were raised to these requests, in an effort to avoid a discovery dispute, searches for these materials have in fact previously been completed, and will continue as discovery moves forward, but we are simply not aware of any responsive documents at this time.

70.    Multiple searches for all documents related to the Commission were completed by your Deponent and I have in fact spoken with the current executive director in an attempt to determine the possible location(s) of additional materials, but thusfar we have not been successful in locating any "complaints".

71.     Defendants have turned over all materials which were able to be located which were related to the Commission in our First Supplemental Responses to Plaintiffs' Amended Third Set of Requests for Production. See, EXHIBIT A, COB010009-COB0100043.

72.     It is my understanding that "complaints", if they exist in paper form, would not have been filed or stored electronically by the Commission or any other City body, and Defendants are currently attempting to determine possible physical locations of those materials.

73.     This search has been complicated by the relatively recent appointment of the current Director, and particularly for this request by the ensuing Covid-19 pandemic and resulting closure of City buildings, suspension of certain meetings of the Committee during the shutdown, and a large majority of our workforce still working remotely.

74.     Your Deponent has advised Plaintiffs' counsel that if any when responsive complaints are located, they will be provided, however we are simply not in possession of any at this time so there is nothing to be turned over.

75.     We therefore submit that this portion of the Motion should be denied.


**D.     RFP 76 and Fourth Requests for Production**

76.     Plaintiffs' reference to the Defendants' response on RFP 76 and Fourth Requests for Production as a "boilerplate" is disingenuous.

77.     There have been extensive objections and discussions with respect to this specific requests in RFP 76 and the general requests for "grant" information during the course of this litigation.

78.     We attach a sample of reflective communications as **EXHIBIT G** to demonstrate our objections and the lengths we have gone through great extents to work through any potential discovery disputes on that specific issue.

79.     Notwithstanding our valid objections to this broad request, Defendants described the universe of grants throughout these emails, and provided examples of what type of documentation exists in the attachments to my February 3, 2020 email, which are not included herewith because they are extensive and we would submit irrelevant.

80.     Despite all of these efforts, which Plaintiffs ignore and pretend don't exist in their motion, Plaintiffs' fail to offer any explanation or demonstration as to why they would be entitled to the exceedingly vague and broad request for all "Documents relating to activities conducted by Defendants pursuant to Federal Grants…"

81.     As such, the Plaintiffs have not come close to demonstrating grounds for this request and this portion of the Motion should be denied.

82.     Similarly, the description of the Defendants responses as "boilerplate" is misleading.  Specifically, it fails to provide the Court with a fair and accurate description of the discovery process or interactions between the parties.

83.     The Defendants responded to Plaintiffs' Fourth Set of Requests in a timely manner, after conducting appropriate searches, and raising various objections, and

Plaintiffs' have not substantively attempted to work through those objections in a good faith manner so this portion of the Motion is particularly premature and unfounded.

84.    The Defendants' Response was sent via email on June 11, 2020. That email is included in **EXHIBIT H**, and provides as follows:

> See attached Responses to your Fourth Set of Requests for Production. In addition to these responses, in an effort to move things forward, I also offer these general observations:
>
> The demands relating to grants are the same objections we've been discussing.
>
> The demand relating to the Erie Crime Analysis Center is broad, but I'm still looking into how much documentation would be responsive, so that is something I will follow up on. I would expect that limiting the demand would help, but want to know more about what exists before discussing that.
>
> Demand relating to "directives" is objected to as I'm unclear what would be included in that term. If there is a specific document or form that you are referring to, please let me know. I'm still looking for potentially responsive documents on this so, if "directives" is just being used generally it would be helpful if you could define further, so I can make sure to conduct all appropriate searches.
>
> Demand relating to stopped vehicles is broad and vague, and based on looking into prior demands I don't expect we have any compilations or capacity to search for these categories, but I'd like to do more digging before I say for sure. I will follow up on this.
>
> Demand relating to BMHA parking lots is broad and vague in what is being requested (e.g., "citations", "concerning") so that would be something to discuss later, but I'd like to first determine if there is any ambiguity in what a BMHA parking lot is and if there's any way to determine what tickets were issued in them. I am still looking into these questions and we should discuss after I know more.
>
> Thanks.
>
> Rob Quinn.

85.    Respectfully, Defendants had no obligation to take this affirmative step of trying to immediately move the conversation forward and offer specific concerns and thoughts, but we did so in a good faith attempt to inform and avoid this exact situation.

86.    While we understand that litigation is adversarial, this is a discovery motion, not one Summary Judgment, and mischaracterizing proceedings is not helpful to anyone, most particularly the Court.

87.    The fact this email is not reflected, and in fact actively avoided and an attempt to describe response as "boilerplate", is telling and we would submit grounds alone to deny this Motion for failure to make their own good faith efforts.

88.    Even more strikingly, Defendants subsequent June 23, 2020 email, which Plaintiffs describe as "Defendants were still searching for documents in response to the requests and would advise when those searches were complete", omits the following:

> For 85 and 86, I'm searching but we have raised objections relating to the Grant requests, as we've discussed, so we may have to stand on those objections if unable to resolve. I need to know more about what exists and how its searchable first.
>
> For 87-93 I'm still searching (unfortunately we're still not back in the office) and will advise once the search is complete. Won't reiterate was I said below but its likely we'll have to discuss some of these requests more fully before anything is turned over because of search capacity, breadth, and burden issues.
>
> Specifically, I now have a better idea of what ECAC produces and I expect to reiterate objection on burden and breadth, among other things. It's my understanding that there are several daily/weekly/monthly reports that contain a variety of information, much of it general. I'm still trying to determine how these are

maintained, what exactly they contain, and what type of search is possible, so will advise once I know that.

The "directives" request is mostly just objecting to the word and asking for clarity on what you want searched, as opposed to the scope of the request its self. I am searching and if we find anything expect to be able to turn it over.

The BMHA property objection is primarily based on my understanding that we don't maintain records and information by that category and are unable to search for it.

89.     For these reasons in particular, we would submit that any request for attorney's fees, costs, etc., is completely inappropriate and unwarranted under the circumstances and should be denied.

90.     With that said, our specific objections to these requests are described in the emails and above, so we will not reiterate them here, and the Motion should be denied on its merits for failure to demonstrate their burden.

91.     Moreover, while meaningful searches are made impossible by Plaintiffs' failure to address or respond to the Defendants' objections, we have not specifically withheld any materials of which we are aware of which would respond to these various requests in RFP 86, 87, 88, 89, 91, 92, or 93.

92.     We would also offer that, to the extent that Defendants were in possession of any materials which could possibly be responsive to these objectionable and vague demands, they have previously been provided (i.e., Traffic Safety Checkpoint Tally Sheets depending on how Plaintiffs' wanted to define the terms).

93.     Again, this is not an effort to avoid discovery or hide the ball, we have and will make every effort to respond to these requests if Plaintiff limits or address our responds to our but based on our understanding of what is being sought, the requests are improper.

**IV. Erie Crime Analysis Center**

94.     Without waiving any of these objections or arguments, in a further effort to move things forward, we will specifically address the RFP 88's request for materials generated by Erie Crime Analysis Center ("ECAC").

95.     Again, the specific request is overbroad and otherwise objectionable and this portion of the Motion should be denied as the Plaintiffs' fail to make any showing as to why this vaguely identified materials are discoverable.

96.     With that said, on Monday November 2, 2020, Plaintiffs' counsel forwarded a letter/subpoena response from James Giammaresi, Director of the Erie Crime Analysis Center.  A copy of that letter and corresponding email is attached as **EXHIBIT I**.

97.     As the Court may be aware, ECAC is one of several other agencies that the Plaintiffs' have subpoenaed voluminous materials from, allegedly in connection with this lawsuit, but they are not employees of or represented by the City of Buffalo.

98.     Plaintiffs claim that this response specifically relates/informs to this particular Request, and while we disagree with their conclusions, we therefore include and address in the interest of clarifying and avoiding illusory discovery issues.

99.    Following receipt of this letter from Plaintiffs' Counsel, your deponent contacted Mr. Giammaresi to inquire into this letter and his understanding the extent and existence of potentially responsive materials given some of the statements made therein.

100.    I should state, I'm not attempting to speak for Mr. Giammaresi, only to provide the Court with information about our efforts and this entity as it may be, as I previously was, unaware of ECAC's role and capacities.

101.    Upon information and belief, ECAC does not work exclusively with the Buffalo Police Department, but provides services to other law enforcement organizations in the region on countless efforts and topics.

102.    It is my understanding that ECAC is funded and staffed by the New York State Division of Criminal Justice Services, and is one of several Crime Analysis Center's located throughout the State, which are apparently designed to be centrally located, multi-jurisdictional ventures capable of conducting in-depth regional analysis of crime and sharing results of those analyses with local partners and other public safety officials.

103.    As indicated in Mr. Giammaresi's letter, confirmed by our recent conversation, and as I previously advised Plaintiffs' in Exhibit H and described above, it is your Deponent's understanding that the identified materials could consist of several different types of daily, monthly, and other periodic reports.

104.    From speaking with Mr. Giammaresi and through my own investigation, it is my understanding that none of these periodic reports would specifically relate to traffic enforcement or checkpoints, but would more generally be described as pertaining to

things like general crime statistics, violent crime, domestic crime, and gun violence, and investigation into specific crimes and or suspects.

105.    As indicated in his letter, and confirmed by my own investigation, Mr. Grammisie advised that the work completed in connection with the Buffalo Police Department was wide, varied, and extensive.

106.    Specifically Mr. Giammaresi advised that the "products" generated by ECAC, essentially projects, actions, reports, etc., in connection with the BPD during the relevant time period could exceed fifty thousand distinct entries on an wide variety of topics that are largely if not entirely unrelated to the allegations in this lawsuit.

107.    It is my understanding that this presumably forms the basis for Mr. Giammaresi's letters conclusion that "[e]ven if we were able to access the records, the subpoena is so broad that it is impossible to answer.  It would take an enormously futile effort to find, review and produce over seven years of period reports, daily reports, documents, data and maps."

108.    To be clear, the Defendants did not object based on a claim of custody, or that they are not able to search for responsive materials, and the portions of this letter which talk about control of data, etc., have not significance in the context of this Motion, but Defendants do agree with this characterization and objection to the extent of the requests, and the Motion should therefore be denied as overly broad and burdensome as further demonstrated by Mr. Giammaresi's letter.

**Wherefore**, Defendants seek an Order of the Court denying Plaintiffs' Motion, in whole or in part, affording additional time and instruction on production, denying costs, attorneys fees, etc., and such other and further relief as the Court deems necessary and warranted under these circumstances.

Dated:  November 6, 2020
        Buffalo, New York

                                        TIMOTHY A. BALL, ESQ.
                                        Corporation Counsel


                                        */s/Robert E. Quinn*
                                        By: Robert E. Quinn
                                        65 Niagara Square - 1103 City Hall
                                        Buffalo, NY 14202
                                        Tel.: (716) 851-4326
                                        rquinn@ch.ci.buffalo.ny.us

TO:     NCLEJ
        Attn.: Claudia Wilner, Esq.
        275 Seventh Avenue, Suite 1506
        New York, NY  10001
        wilner@nclej.org

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**BLACK LOVE RESISTS IN THE RUST, et al.**

        **Plaintiffs,**

          **-vs-**

**CITY OF BUFFALO, et al.**

        **Defendants.**
_____

        **CERTIFICATE OF SERVICE**

        **Civil Action No.: 18-cv-719**

        I, Robert E. Quinn, hereby certify that on November 6, 2020 the annexed document was electronically served on Counsel for the Plaintiffs in this case through the CM/ECF system:

Claudia Wilner, Esq.
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
wilner@nclej.org

I certify under penalty of perjury that the foregoing is true and correct.

Dated: November 6, 2020
       Buffalo, New York

                TIMOTHY A. BALL, ESQ.
                Corporation Counsel


                _/s/Robert E. Quinn_____
                By: Robert E. Quinn
                65 Niagara Square - 1103 City Hall
                Buffalo, NY 14202
                Tel.: (716) 851-4326
                rquinn@ch.ci.buffalo.ny.us