# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACK LOVE RESISTS IN THE RUST, *et al.*, individually and on behalf of a class of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>CITY OF BUFFALO, N.Y., *et al.*,<br><br>      Defendants. | No. 1:18-cv-00719-CCR |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO COMPLY WITH THE COURT'S DECEMBER 19, 2019 ORDER AND OTHER DISCOVERY OBLIGATIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .......................................................................................................................... 1

    I.    Plaintiffs Met and Conferred with Defendants and this Motion is Ripe for Resolution ...... 1

    II.   Defendants Cannot Escape Discovery by Refusing to Dedicate Adequate Resources ........ 2

    III.  Defendants Do Not Justify their Failure to Comply with the December 2019 Order .......... 4

    IV.  Defendants' Objections to Plaintiffs' Other Discovery Requests Are Baseless .................. 6

    V.   Defendants Present No Basis for Avoiding an Award of Fees and Expenses ................... 10

CONCLUSION ..................................................................................................................... 10

**PRELIMINARY STATEMENT**

Defendants' opposition admits that they have failed to comply with this Court's December 2019 Order, that they have produced fewer than half of the ESI documents they were ordered to produce on a rolling basis nearly a year ago, and disturbingly, that they have destroyed more than half of the IAD files they were ordered to produce. Rather than take responsibility for these failures, Defendants seek to shift blame to Plaintiffs through baseless accusations of "posturing and gamesmanship" and make excuses based on a contrived lack of resources.

As for the other discovery requests, Defendants admit that they have not complied with several of the requests, nor even provided Plaintiffs a clear statement of their position. Yet remarkably, after conferring with Plaintiffs for months concerning these requests, Defendants offer the Court only the same rambling, vague, often self-contradictory and perplexing excuses and non-committal placations that forced Plaintiffs to file this motion.

Defendants vague excuses do not justify their failure to comply with the Court's Order and their discovery obligations. The motion should be granted.

**ARGUMENT**

**I.    Plaintiffs Met and Conferred with Defendants and this Motion is Ripe for Resolution**

Defendants' argument that Plaintiffs have "not adequately conferred in an effort to obtain the discovery at issue" and that the motion is somehow "premature" misleads the Court. Declaration of Robert E. Quinn, ECF No. 67 ("Opp'n") ¶ 4. As described in the declaration of Claudia Wilner (ECF No. 66), Plaintiffs met and conferred with Defendants in an effort to resolve these issues over the course of *months*—and in the case of some items, for *more than a year*. Defendants do not address any of these efforts (let alone establish that they were insufficient) and instead act as if they never happened.

Defendants' sole basis for arguing that this motion is premature appears to be the fact that Plaintiffs' counsel mentioned this motion to him on October 22 during an initial meet and confer call concerning depositions. Opp'n ¶¶ 17-20. The suggestion that this motion was somehow unexpected or premature ignores the months of back and forth on these same issues. For example, *nearly a month before filing this motion*, on September 25, 2020, Plaintiffs sent Defendants a letter identifying each of the categories of discovery at issue here, and warned Defendants explicitly that Plaintiffs would file this motion if Defendants did not satisfy the requests:

> Accordingly, Plaintiffs request that, no later than October 1, 2020, you provide Plaintiffs a production schedule to which you will adhere, to ensure that all of the aforementioned document discovery and metadata are produced in their entirety by November 1, 2020, so that depositions may proceed. ***Otherwise, Plaintiffs will be forced to seek relief from the Court***.

ECF No. 66-3 (emphasis added). Defendants did not produce the documents requested, and failed to respond to the majority of the issues raised in Plaintiffs' September 25 letter. Having been specifically warned about this motion nearly a month earlier and given ample time to correct their discovery failures, Defendants cannot credibly claim this motion is premature.

**II.    Defendants Cannot Escape Discovery by Refusing to Dedicate Adequate Resources**

Defendants also argue that the motion should be denied because they have chosen to staff this matter with a single attorney who also works on other matters, and Defendants have produced 22,507 pages of documents. Opp'n ¶¶ 6, 22. This argument misunderstands discovery in complex federal cases and oversimplifies the discovery produced thus far.

First, that Defendants have refused to staff more than one person with a "very full caseload and various other obligations in the law department," ECF 40 ¶ 61, on a complex class action alleging wide-ranging and systematic constitutional violations does not justify evading relevant discovery. Defendants sent four attorneys to the parties' mediation session in September 2019, so Defendants could increase staffing to meet discovery obligations if they chose. There is not a

2

second set of discovery rules for municipalities, even smaller ones.[1] As one court observed in rejecting a similar argument by an even smaller municipality as "preposterous":

> In order to adequately respond to discovery in civil litigation all parties incur unwanted burdens and costs. Nevertheless, a party cannot shirk its responsibilities by failing to dedicate sufficient resources to respond to appropriate and necessary discovery. If the situation were otherwise the Court would be bombarded with excuses for why relevant discovery does not have to be produced. Further, if Atlantic City was able to shirk its responsibilities so easily, it would encourage other parties to avoid discovery. The fact that a party must devote reasonable resources to respond to legitimate discovery requests is simply a necessary evil that all litigants must endure. It is certainly not plaintiff's fault that Atlantic City has an inordinate number of citizen complaints about its police officers which results in a substantial number of [Internal Affairs] files.

*Costantino v. City of Atl. City*, 152 F. Supp. 3d 311, 327-28 (D.N.J. 2015). Indeed, Defendants had no problem authorizing tens of millions of dollars in overtime when it came to running an illegal checkpoints program (*see* Am. Compl., ECF No. 63, at ¶ 153), but now balk at the prospect of staffing more than one person part of the time on a case challenging those practices.

Second, the 22,507 pages Defendants have produced thus far (10,000 of which they produced before August 2019, see ECF No. 40, at ¶ 6) are not nearly as impressive as Defendants make them out to be. A significant portion of Defendants' productions have included documents that are already publicly available (e.g., over 5,000 pages of Buffalo adopted budgets and other public financial documents, COB004337-COB009522) and other "filler" that likely took little effort for Defendants' counsel to produce. And in any event, it is well-established that "legitimate discovery requests in large and complex lawsuits usually require the disclosure of many thousands if not millions of paper and electronic documents." *Hardwick v. 3M Co.*, 2020 WL 3248353, at *1 (S.D. Ohio June 16, 2020) (quoting 39 A.L.R. Fed. 3d Art. 2).

---

[1] And it bears noting that Buffalo is not, by any reasonable measure, a small municipality. It is the second largest city in New York and comfortably within the top 100 largest cities in the United States. *See* US Census Bureau, Places Ranked by Population (2010 to 2019), https://www2.census.gov/programs-surveys/popest/tables/2010-2019/cities/totals/SUB-IP-EST2019-ANNRNK.xlsx.

### III.    Defendants Do Not Justify their Failure to Comply with the December 2019 Order

<u>ESI</u>. Defendants do not meaningfully dispute Plaintiffs' arguments concerning ESI and agree that the Court should set a schedule governing the production of remaining ESI. *See* Opp'n ¶ 28. Further, Defendants concede that they have only produced **50%** of the documents corresponding to Plaintiffs' *initial* twenty custodians and search terms (but not yet 50% of the custodians or search terms), **nearly a full year** after the Court ordered Defendants to commence rolling productions. *See id.* ¶¶ 36-37. Defendants admit that they can produce ESI notwithstanding interruptions caused by the Covid-19 pandemic. *See id.* ¶ 29. They claim that they *might* be able to produce the remaining ESI documents by the end of this year—but possibly not until after that. *Id.* ¶ 39-40. Defendants' admissions confirm the extraordinarily slow pace of their productions, and their non-committal statements and vague, unsupported claims of burden demonstrate the need for a Court-imposed schedule requiring ESI productions at an accelerated pace.

<u>Metadata Information</u>. Like Plaintiffs' ESI request, Defendants do not oppose Plaintiffs' request for metadata information and concede that Plaintiffs' request is "reasonable." Opp'n ¶¶ 42, 44. Defendants object only to the timing of providing metadata information and request that Defendants provide a spreadsheet of metadata information only "after production of the ESI or at some periodic interval to minimize the burden." *Id.* ¶ 44. But the December 2019 Order required Defendants to produce metadata information "contemporaneously" with ESI productions. ECF No. 51, at 12. To the extent Defendants contend that order is unreasonable, it was their obligation to seek reconsideration or leave to depart from that order, and not simply to ignore it.

Nonetheless, Plaintiffs are amenable to allowing Defendants to produce and update the spreadsheet on a monthly basis, rather than contemporaneously with each production. But Plaintiffs oppose the suggestion that Defendants produce the spreadsheet only after production of all ESI is complete—a process which, according to Defendants, will take months at least. Metadata

4

information is critical to Plaintiffs' ability to search through and review Defendants' ESI productions, and waiting until after Defendants have completed their ESI productions will delay Plaintiffs' ability to review those documents fully and to complete depositions.

IAD Files. Defendants' opposition confirms that more than half the IAD files that Defendants were ordered to produce "were previously destroyed per record retention policies." Opp'n ¶ 46. Beyond that troubling admission, however, Plaintiffs offer little in the way of explanation for their failure to comply with the Court's December 2019 Order concerning IAD files. For example, Defendants do not explain who destroyed the IAD files or when. The record retention policies themselves are phantoms that Defendants refuse to locate or produce though Plaintiffs first asked for them *eight months ago*. Defendants do not explain how it is possible that the Internal Affairs Division only kept the files in paper copy, but Defendants searched the contents of the files electronically using the IAPro system in July 2019; nor have Defendants produced the full IAPro records for the relevant complaints. Disturbingly, Defendants do not explain how the three IAD files which were *created after the Complaint in this action was filed* could have been destroyed. And tellingly, Defendants do not assert that they took any steps to preserve these clearly relevant files as required by the Federal Rules.

Defendants claim that providing answers to these questions would be "premature" and that instead Plaintiffs should be forced to uncover the answers themselves by taking discovery. Opp'n ¶ 54. Plaintiffs have been trying to do exactly that for *months*, including by requesting information about the alleged destruction as well as the record retention policy that Defendants still have not produced. Defendants have failed to provide *any* details about the supposed destruction of these files, making it nearly impossible for Plaintiffs to investigate what amounts to a clear breach of a Court order and a potentially serious violation of the Federal Rules. In addition, Defendants'

suggestion would force Plaintiffs to expend valuable resources and time in depositions in order to explore the basic facts of Defendants' own lack of compliance. Instead, the Court should order Defendants to submit an affidavit explaining those basic facts, and allow Plaintiffs to request depositions (not subject to the 10-deposition limit of Rule 30(a)) to test the accuracy of that affidavit and address any unanswered questions.

While Defendants do not even appear to take this issue seriously, it bears noting the significant prejudice to Plaintiffs caused by the supposed destruction of these files. The destroyed files directly relate to Plaintiffs' core claims and the City's *Monell* liability. *See, e.g.* Case IDs: EC2014-191 (racial profiling allegation and officer brought up Ferguson, MO during the stop); EC 2015-031 (racial profiling allegation arising out of car stop where driver received multiple tickets and car was impounded); and I/O 2016-063 (6 tickets issued at single traffic stop for tinted windows), among others. Declaration of Darius Charney, Ex. 2.

**IV.    Defendants' Objections to Plaintiffs' Other Discovery Requests Are Baseless**

<u>Monthly and Daily Reports</u>. Defendants' response to Plaintiffs' narrowed requests for these reports—monthly Housing Unit reports for January 1, 2018 to present; the first pages of Housing Unit and Strike Force Daily Reports for January 1, 2013 to present; and the narratives for 36 Strike Force daily reports—is difficult to comprehend. Defendants state, on the one hand, that Plaintiffs "fail[] to demonstrate the basis for why these materials are discoverable," but on the other hand, that they will continue to "engage[] in discussion on producing those materials." Opp'n ¶¶ 56-57.

Plaintiffs explained the relevance of these materials and why their narrowed requests were appropriate in their opening brief. *See* ECF No. 65-1, at 16-17. This Court has already recognized the relevance of the quantitative information on the first page of these Reports in its December 2019 Order, and Plaintiffs significantly narrowed their requests concerning the narrative portions

in order to address the Court's relevance and proportionality concerns. *See* ECF No. 51, at 13-15. Defendants do not explain why Plaintiffs' narrowed proposal fails to satisfy the Court's concerns.

As for Defendants' representation that he will continue to engage in discussions on these materials, this is yet another example of the empty promises which forced Plaintiffs to file this motion in the first place. The parties have been discussing Plaintiffs' narrowed proposal on these documents *since May*, yet incredibly Defendants still refuse to accept or reject Plaintiffs' proposal. Defendants have had ample time for discussions; it is now time for them to agree to produce these documents promptly or for the Court to order them to do so.

Employment History. Defendants' response to the request for officer employment history is similarly difficult to parse. First, Defendants argue that they have already provided information and the motion fails to demonstrate why additional information is needed. Opp'n ¶ 62. But as Plaintiffs explained in their motion, the information Defendants have provided is incomplete, and Plaintiffs need complete information in order to connect each ticket issued by the BPD to the unit that issued it so that they can perform a statistical analysis of ticketing patterns. *See* ECF No. 65-1. Defendants do not dispute that the information they have provided is incomplete or explain why Plaintiffs' justification is inadequate. Instead, they simply ignore Plaintiffs' arguments.

Second, Defendants admit that they can provide this information but it "would be time consuming," though it "could be done more expediently if it was for specifically identified officers." Opp'n ¶¶ 67-68. But as Plaintiffs explained in their opening brief, they already specifically identified the relevant officers and dates *close to a year ago*. *See* ECF No. 66, ¶¶ 35, 38. Since then, Defendants have repeatedly put off Plaintiffs, assuring them that they would produce the information "next week" in January 2020, ECF No. 66-7, and that they were "working on this" in June. ECF No. 66-2, at p. 8. A year has passed, and Defendants have nothing to show

aside from a handful of jumbled excuses. The Court should not allow Defendants to delay endlessly responding to relevant discovery requests based on vague burden allegations, especially when Plaintiffs have gone above and beyond to mitigate any burden.

CCRCR Complaints. Defendants' next respond to the request for CCRCR complaints by claiming that they "are simply not aware of any responsive documents at this time." Opp'n ¶ 69. Unfortunately, Defendants' response leaves unanswered a number of critical questions and again raises the prospect that Defendants have failed to take reasonable steps to preserve relevant documents in compliance with their obligations under the Federal Rules. From what little can be gathered about Defendants' limited investigation into this issue, it appears Defendants have only inquired about complaints "if they exist in paper form." Opp'n ¶ 72. But the materials Defendants produced refer to a "complainant database" maintained by CCRCR, which suggests the existence of an electronic database of complaints. ECF No. 66-19, COB010024. Defendants provide no indication that they have searched such a database for responsive complaints.

As with the IAD files, if Defendants cannot produce these files which plainly once existed, the Court should order a detailed affidavit from Defendants explaining how these files were lost or destroyed and providing any relevant document retention policy and steps taken (or not taken) to preserve these files. If Defendants cannot provide any details about how these files were lost or destroyed, they should be required to disclose the precise steps they took to investigate this issue, including the individuals interviewed and locations searched.

Fourth Set of RFPs and RFP 76. In defense of their failure to produce even a single document in response to the Fourth Set of RFPs, Defendants offer a confusing string of excuses, some of which appear to contradict one another. They assert, at various points, that (1) Defendants asserted valid objections to the requests, (2) Plaintiffs fail to demonstrate why they are entitled to

8

the materials requests, (3) meaningful searches for the requested documents are impossible, but at the same time they have already provided all responsive documents.

Defendants waived their objections to the Fourth RFPs *twice*: First when, contrary to the Federal Rules, their responses and objections failed to "state whether any responsive materials are being withheld on the basis of that objection," Fed. R. Civ. P. 34(b)(2)(C); ECF No. 66-21; and second when, after Plaintiffs asked Defendants if they were standing on their objections, Defendants equivocated, stating that they "may have to stand on those objections" but needed to "know more about what exists and how its searchable first." ECF No. 66-22. At no point prior to this opposition did Defendants advise that they would refuse to produce any documents in response to the Fourth RFPs. In any case, the objections lack merit. Defendants quibble with Plaintiffs' characterization of the objections as "boilerplate," but fail to offer any more particularized objections and simply block quote emails that do little more than recite the same objections.

Second, Defendants' argument that Plaintiffs have not shown the relevance of these materials ignores the specific explanations Plaintiffs offered for each of these requests in their opening brief. Defendants make specific arguments about only: RFPs 76, 85, and 90, which seek certain documents relating to federal grants; and RFP 88, which seeks copies of crime data, hot spot mapping, daily reports, trends and pattern data concerning the City generated by the Erie Crime Analysis Center. As to RFPs 76, 85, and 90, Defendants fail to address Plaintiffs' argument that the federal grant materials are relevant because they provide detailed evidence of Defendants' policing program (including reasons Defendants may have targeted certain neighborhoods for traffic enforcement) and because receipt of federal funds is a specific element of Plaintiffs' Title VI claim. ECF No. 65-1, at 20. As for RFP 88, Defendants fail to consider the critical importance

of crime data to Plaintiffs' Equal Protection claim, which requires proof that Defendants targeted neighborhoods and drivers because of their race, and *not* because of crime patterns.

Third, Defendants' claim that "meaningful searches are made impossible" and "to the extent that Defendants were in possession of any materials which could be responsive … they have previously been produced," is self-contradictory, conclusory, and lacks credibility. Opp'n ¶¶ 91-92. It also contradicts counsel's prior assertions that he was "searching" for responsive documents and incorrectly shifts the blame to Plaintiffs, when he expressly told Plaintiffs that, before having further discussions, he "need[ed] to know more about what exists and how its searchable first," and that he would "advise once the search is complete," but never did. ECF No. 66-22.

## V.     Defendants Present No Basis for Avoiding an Award of Fees and Expenses

Defendants' reply confirms that an award of reasonable fees and expenses is appropriate. Defendants' sole argument for avoiding a such an award is their claim that Defendants' June 11 and 23, 2020 emails concerning the responses to the Fourth RFPs were "not reflected" or "omit[ted]" in Plaintiffs' motion. Opp'n ¶¶ 87-88. That is not true. Both the June 11 and 23 emails were included in the materials submitted to the Court. *See* ECF No. 66-22. Defendants do not point to anything specific in those emails that Plaintiffs misstated,[2] or explain how it is in any way material to this motion. And in any event, this argument relates only to the Fourth RFPs, and does not address why fees and expenses should not be awarded for a majority of this motion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion.

---

[2] Defendants appear to take issue with the description of their objections as "boilerplate," but that referred to Defendants' responses and objections to the Fourth RFPs, not to Defendants' June 11 email. *See* ECF No. 65-1, at 20-21. In any event, the "general observations" in Defendants' June 11 email made little effort to make Defendants' objections more particularized, and instead largely reasserted the same boilerplate objections. *See* ECF No. 66-22.

Dated: November 13, 2020

/s/ Keisha A. Williams
Joseph Keleman
Keisha Williams
WESTERN NEW YORK LAW CENTER
Cathedral Park Tower
37 Franklin Street, Suite 210
Buffalo, NY 14202
Tel: (716) 828-8415
Fax: (716) 270-4005
jkeleman@wnylc.com
kwilliams@wnylc.com

/s/ Darius Charney
Darius Charney
Chinyere Ezie
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
212-614-6475
DCharney@ccrjustice.org
CEzie@ccrjustice.org

Respectfully submitted,

/s/ Claudia Wilner
Claudia Wilner
Edward Krugman
Britney Wilson
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
wilner@nclej.org
krugman@nclej.org
wilson@nclej.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2020, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Case Filing Rules & Instructions upon all counsel registered through the ECF System.

*/s/ Claudia Wilner*