**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
BLACK LOVE RESISTS IN THE RUST )
BY AND THROUGH ITS CO-DIRECTORS)
NATASHA SOTO AND SHAKETA REDDEN)
AND ON BEHALF OF ITS MEMBERS   )
AGENT OF JUST RESISTING, ET AL.)
(Via Zoom for Government)      )
                               )Case No. 1:18-cv-00719
                               )                  (CCR)
              Plaintiffs,      )
                               )
vs.                            )December 14th, 2020
                               )
CITY OF BUFFALO, N.Y., ET AL.  )
(Via Zoom for Government)      )
                               )
              Defendants.      )
```

**TRANSCRIPT OF STATUS CONFERENCE**
**BEFORE THE HONORABLE CHRISTINA CLARE REISS**
**UNITED STATES MAGISTRATE JUDGE**

<u>APPEARANCES:</u>

```
For the Plaintiffs:  NATIONAL CENTER FOR LAW AND
                     ECONOMIC JUSTICE
                     BY:  DARIUS CHARNEY, ESQ.
                          CLAUDIA WILNER, ESQ.
                     275 7th Avenue, Suite 1506
                     New York, NY 10001
                     (Via Zoom for Government)

                     COVINGTON & BURLING, LLP
                     BY:  JORDAN SCOTT JOACHIM, ESQ.
                     620 Eighth Avenue, Suite 4029
                     New York, NY 10018

For the Defendants:  CITY OF BUFFALO DEPARTMENT OF LAW
                     BY:  ROBERT EMMET QUINN, ESQ.
                     65 Niagara Square
                     Buffalo, NY 14202
                     (Via Zoom for Government)
```

1    APPEARANCES CONTINUED:

2    Audio Recorder:      JANE KELLOGG

3    Transcriber:         MEGAN E. PELKA, RPR
                          Robert H. Jackson US Courthouse
4                         2 Niagara Square
                          Buffalo, NY 14202
5                         (716) 364-6449

6

01:55PM    7         Proceedings recorded with electronic sound recording,
           transcript prepared with computer-aided transcription.

01:55PM    8

01:55PM    9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 01:57PM | 1 | THE CLERK:  Your Honor, we're here in the matter of |
| 01:57PM | 2 | 18-CV-719.  This is Black Love Resists in the Rust, et al. v. |
| 01:57PM | 3 | The City of Buffalo, et al.  This matter is on for a status |
| 01:57PM | 4 | conference.  Counsel, please state your name and the party you |
| 01:57PM | 5 | represent for the record.  We'll begin with the plaintiffs. |
| 01:57PM | 6 | MS. WILNER:  Claudia Wilner from the National Center |
| 01:58PM | 7 | for Law and Economic Justice for the plaintiffs.  Good |
| 01:58PM | 8 | morning, Your Honor. |
| 01:58PM | 9 | THE COURT:  Good morning. |
| 01:58PM | 10 | MR. CHARNEY:  Good morning, Your Honor.  Darius |
| 01:58PM | 11 | Charney from the Center for Constitutional Rights, also for |
| 01:58PM | 12 | the plaintiffs. |
| 01:58PM | 13 | MR. JOACHIM:  Jordan Joachim, Covington and Burling, |
| 01:58PM | 14 | also for the plaintiffs. |
| 01:58PM | 15 | MR. QUINN:  Is anyone else going to be appearing?  If |
| 01:58PM | 16 | not, I can note my appearance.  Robert Quinn on behalf of the |
| 01:58PM | 17 | defendants.  Good morning, Judge. |
| 01:58PM | 18 | THE COURT:  Good morning.  Does anybody object to the |
| 01:58PM | 19 | Court taking up the motion to compel at the status conference? |
| 01:58PM | 20 | It wasn't noticed for that, but everything seems to be |
| 01:58PM | 21 | directed to that. |
| 01:58PM | 22 | MR. CHARNEY:  Plaintiffs do not have any objection, |
| 01:58PM | 23 | Your Honor. |
| 01:58PM | 24 | MR. QUINN:  No objection, Judge. |
| 01:58PM | 25 | THE COURT:  All right.  So, I'm going to start in an |

01:59PM   1   odd direction, but there's a method to my madness.  And first,

01:59PM   2   start things off on a positive note.  You are not my most

01:59PM   3   contentious case in the Western District of New York.  And I

01:59PM   4   give Mr. Quinn compliments for the duty of candor.  So, it's

01:59PM   5   unusual for an attorney to say, I didn't do this.  They

01:59PM   6   usually provide me with six reasons why they never had to do

01:59PM   7   it in the first place.

01:59PM   8       So we at least have a fairly clear-cut -- this is what's

01:59PM   9   been done, this is what has not been done.  The explanation

01:59PM   10  seems to be; one attorney, lots of work, pandemic.  So, I'm

01:59PM   11  not going to spend a lot of time on that, but we have to move

01:59PM   12  the case forward if we're going to come up with a resolution.

01:59PM   13      Kicking off the low-hanging fruit first, here's what's

01:59PM   14  going to happen with depositions.  I'm going to have

02:00PM   15  plaintiffs designate 20 to start.  Make sure they count.  Make

02:00PM   16  sure that you are picking people that you need to depose.  And

02:00PM   17  then, we're going to circle back and talk about how many more.

02:00PM   18  I did this in the dairy farmers anti-trust case part II.  It

02:00PM   19  worked to charm because we started out on the same place.  I

02:00PM   20  need 150 depositions.  I need to depose everybody and

02:00PM   21  everybody's organization.

02:00PM   22      Once we got through a chunk, the path forward became much

02:00PM   23  more clear in that, key players were identified.  People who

02:00PM   24  had no relevant information were moved aside and it worked.

02:00PM   25  So I am going to order the plaintiffs to come up with a list

02:00PM    1   of 20 people they want to depose and they're going to let

02:00PM    2   Mr. Quinn know in two weeks.  Any reason why two weeks would

02:00PM    3   not be enough to come up with that first list?

02:00PM    4           MR. JOACHIM:  No, Your Honor.

02:00PM    5           THE COURT:  Okay.  So, the depositions are going to

02:01PM    6   get under way.  I'm going to use the plaintiffs' reply to the

02:01PM    7   motion to compel as my outline, for lack of a better resource.

02:01PM    8   I thought it nicely encapsulated where things had shivered out

02:01PM    9   after the defendants' opposition had been considered.

02:01PM   10       So, the first issue was whether or not you met and

02:01PM   11   conferred and that the motion is right for resolution.  Yes,

02:01PM   12   you have.  It could have been better, but this is not a case

02:01PM   13   in which plaintiffs have done nothing or a case where the

02:01PM   14   defendants have done nothing.  You are at an impasse.  We've

02:01PM   15   got to move forward and I'm not going to have you go back to

02:01PM   16   meet and confer, at least as a general proposition.  With

02:01PM   17   regard to certain subjects, we need to have a better hold on

02:02PM   18   it.

02:02PM   19       The next issue is defendants cannot escape discovery by

02:02PM   20   refusing to dedicate adequate resources.  And I want to hear a

02:02PM   21   little bit more from Mr. Quinn about what can be done about

02:02PM   22   this situation, because all of the cases with very few

02:02PM   23   exceptions seemed to have slowed down if not stopped by the

02:02PM   24   pandemic.  But all of the cases in the interest of justice

02:02PM   25   need to march on.  So what, if anything, can Mr. Quinn offer

02:02PM    1    us in terms of more resources to get this moving?

02:02PM    2           MR. QUINN:  Thank you, Judge.  Well, we are working

02:02PM    3    remotely currently.  We currently have essentially one office

02:02PM    4    person in every day.  It's a different office person to take

02:02PM    5    mail in and do things like that.  I recognize that plaintiffs

02:03PM    6    want to move things forward and I totally understand that and

02:03PM    7    I understand where the Court is coming from, too and we are

02:03PM    8    doing that.  I've been doing my best to try to do all of these

02:03PM    9    things at once.

02:03PM   10       I will -- I mean, we can do it two ways.  We could invest

02:03PM   11    some type of money in a vendor or something like that or I can

02:03PM   12    try to see if -- because we do have, I think, three other

02:03PM   13    attorneys who are admitted to practice in federal court.  I

02:03PM   14    can see if another attorney can come on with me to assist,

02:03PM   15    specifically with the discovery things.

02:03PM   16       I don't think it would be reasonable to have someone come

02:03PM   17    up to speed totally on the case and I would still handle it

02:03PM   18    sort of as I have been, but to do the discovery, I can try to

02:03PM   19    get another attorney to come on and help me with that.  I

02:03PM   20    think that would expedite things.

02:03PM   21       We are set up to work remotely now.  We weren't at the

02:03PM   22    beginning, but that would be one thing that I could certainly

02:03PM   23    offer.  If the Court wants more, I'll do what I can.  As I

02:04PM   24    sort of tried to indicate in our submission, we're not trying

02:04PM   25    to delay this.  We just have some limitations that I need to

5

02:04PM    1    work through.  And it's no one's fault really, but it is what

02:04PM    2    it is and I can't -- I can only do one thing at a time, but we

02:04PM    3    can try to bring on another attorney if that would help

02:04PM    4    things.

02:04PM    5            THE COURT:  All right.  So, you will find in the

02:04PM    6    course of this case that I'm quite a pushy person, but also

02:04PM    7    pragmatic.  So, some of these tasks are ministerial, would you

02:04PM    8    agree with me?

02:04PM    9            MR. QUINN:  Yes.

02:04PM   10            THE COURT:  All right.  So, I would like you to

02:04PM   11    investigate interns, paralegals, law students that don't have

02:04PM   12    employment and are looking for it and I want you to look for

02:04PM   13    an outside vendor or another attorney to bring on and I want

02:04PM   14    you to do that within the next two weeks.  Any reason why you

02:04PM   15    can't do that and report to the plaintiffs and the Court about

02:05PM   16    how that worked out?

02:05PM   17            MR. QUINN:  No reason, Judge.  We will do that.

02:05PM   18            THE COURT:  The next issue that I want to talk to you

02:05PM   19    about is the December 2019 order.  And there's a number of

02:05PM   20    different issues that are in the mix and I'm going to try to

02:05PM   21    cover each of them and you're going to let me know if I missed

02:05PM   22    out.

02:05PM   23        Let's talk about the ESI documents.  And there has been

02:05PM   24    some production.  I'm glad to see the plaintiffs have been

02:05PM   25    reasonable and agreed that the metadata doesn't need to be

02:05PM  1  produced contemporaneously, but they don't want to wait until

02:05PM  2  the end of the production for the metadata.  And I'm going to

02:05PM  3  start with plaintiffs as to a pragmatic, reasonable suggestion

02:05PM  4  as to how we can move this along.

02:06PM  5      In other cases -- I have, for example, a Mega-FOIA case.

02:06PM  6  And we set a benchmark, okay?  You've got to have five pages

02:06PM  7  every month.  That's what you have to do.  And it seems

02:06PM  8  nonsensical, but it actually works to just say yeah, every

02:06PM  9  month you have to be producing this many pages, this many

02:06PM  10  hits, you've got to have this progress report.  So, let's hear

02:06PM  11  from plaintiffs on that.

02:06PM  12          MR. JOACHIM:  Your Honor, that makes sense to us.  I

02:06PM  13  mean, I think the problem so far has been that the productions

02:06PM  14  have been sporadic.  There will be, you know, a certain few

02:06PM  15  weeks where we're getting productions every few days, which is

02:06PM  16  okay, but then there will be a month or two months where we

02:06PM  17  just don't get anything, including in the last three weeks in

02:06PM  18  fact, we haven't gotten any ESI productions.  So, I think a

02:06PM  19  benchmark that sort of keeps the flow going would make sense

02:07PM  20  to us.

02:07PM  21          THE COURT:  Would you like to recommend what you

02:07PM  22  think is a reasonable benchmark?

02:07PM  23          MR. JOACHIM:  I might -- if you wouldn't mind, I

02:07PM  24  might take the time to consult with my colleagues about that,

02:07PM  25  just because I think we need to think about, you know, what

| | | |
|---|---|---|
| 02:07PM | 1 | sort of magnitude of page count or document count would sort |
| 02:07PM | 2 | of make sense in this case. |
| 02:07PM | 3 | THE COURT:  Or a custodian. |
| 02:07PM | 4 | MR. JOACHIM:  Or a custodian, correct. |
| 02:07PM | 5 | THE COURT:  Can you have that conversation in two |
| 02:07PM | 6 | weeks and come up with a proposal that you will vet with |
| 02:07PM | 7 | Mr. Quinn first and if you can't agree to, you can propose to |
| 02:07PM | 8 | the Court? |
| 02:07PM | 9 | MR. JOACHIM:  Yes. |
| 02:07PM | 10 | THE COURT:  Okay.  And if -- Mr. Quinn, if you don't |
| 02:07PM | 11 | like their benchmark, you be thinking about what benchmark you |
| 02:07PM | 12 | could actually reasonably accomplish, because if I set a |
| 02:07PM | 13 | benchmark, I do expect it to be met. |
| 02:07PM | 14 | MR. QUINN:  That will be fine, Judge.  And we sort of |
| 02:07PM | 15 | do that both at the same time because it might depend a little |
| 02:07PM | 16 | bit on, you know, who we can bring in to help. |
| 02:08PM | 17 | THE COURT:  Okay.  I don't think there's anything |
| 02:08PM | 18 | else about the ESI that I can say that would be of assistance, |
| 02:08PM | 19 | but I'm happy to hear otherwise.  Anything else on ESI? |
| 02:08PM | 20 | MR. JOACHIM:  I don't think so from plaintiffs. |
| 02:08PM | 21 | MR. QUINN:  Nothing from me, Judge. |
| 02:08PM | 22 | THE COURT:  All right.  The next issue is the IAD |
| 02:08PM | 23 | files.  And there is the issue of whether or not some of these |
| 02:08PM | 24 | files have been destroyed.  And I'm kind of at a loss as to |
| 02:08PM | 25 | what the situation is.  So, I'm reading on Document 68, page |

| | | |
|---|---|---|
| 02:08PM | 1 | 7, which is actually page 5 of the reply and it states as |
| 02:08PM | 2 | following:  "Beyond that troubling admission that certain IAD |
| 02:09PM | 3 | files were previously destroyed per record retention policies, |
| 02:09PM | 4 | plaintiffs offer little in the way of explanation for their |
| 02:09PM | 5 | failure to comply with the Court's December 2019 order |
| 02:09PM | 6 | considering IAD files."  I assume that's a typo and that's |
| 02:09PM | 7 | supposed to say defendants, correct? |
| 02:09PM | 8 | MR. QUINN:  Yes, Your Honor. |
| 02:09PM | 9 | THE COURT:  And then, for example, defendants do not |
| 02:09PM | 10 | explain who destroyed the IAD files or when.  The record |
| 02:09PM | 11 | retention policies themselves are phantoms that defendants |
| 02:09PM | 12 | refuse to locate and produce when plaintiffs first asked for |
| 02:09PM | 13 | them eight months ago.  Defendants do not explain how it's |
| 02:09PM | 14 | possible that the Internal Affairs Division only kept the |
| 02:09PM | 15 | files in paper copies. |
| 02:09PM | 16 | Defendants searched the contents of the file |
| 02:09PM | 17 | electronically using the IAPro System in July 2019, nor have |
| 02:09PM | 18 | defendants produced the full IAPro records for the relevant |
| 02:10PM | 19 | complaints.  Disturbingly, defendants do not explain how the |
| 02:10PM | 20 | three IAD files, which were created after the complaint in |
| 02:10PM | 21 | this action was filed, could have been destroyed.  And |
| 02:10PM | 22 | tellingly, defendants do not assert that they took any steps |
| 02:10PM | 23 | to preserve these clearly relevant files as required by the |
| 02:10PM | 24 | federal rules. |
| 02:10PM | 25 | I don't think this is premature and I think we are at the |

02:10PM 1  point where a declaration that may create an adverse inference

02:10PM 2  at trial is where we end up.  These are the document retention

02:10PM 3  policies.  This is what happened to X, Y and Z file.  This is

02:10PM 4  what we have.  Because it's time to nail down the facts on

02:10PM 5  this particular subject matter.  So, I'm going to start with

02:10PM 6  the defendant and then, we'll move to the plaintiff.

02:10PM 7          MR. QUINN:  I agree, Judge.  And we do recognize the

02:11PM 8  issues on this specific issue.  The -- with respect to what

02:11PM 9  has been produced, it's everything that we still have.  We got

02:11PM 10 the order.  We produced all of the records that we still had.

02:11PM 11 The other ones had previously been destroyed.

02:11PM 12    As to the dates of those destructions, I don't have any

02:11PM 13 records which say this is the date that it was destroyed, this

02:11PM 14 is the date that it was per record retention policies

02:11PM 15 destroyed.  That could be done through testimony or

02:11PM 16 declaration and we would be happy to do that.  It's not

02:11PM 17 something I did, but we could take efforts to get information

02:11PM 18 and explanations as to those dates.

02:11PM 19    The papers -- as to the specifics, the files themselves,

02:11PM 20 so you know, the investigation, the statements, all of the

02:11PM 21 documents are kept only on paper form.  We do have an IAPro

02:12PM 22 System which keeps track and that's how we were able to do the

02:12PM 23 search and identify the particular files.  We did that all,

02:12PM 24 you know, sort of in good faith to try to move things forward

02:12PM 25 and get through that specific issue, but the files themselves

02:12PM  1  were not ever scanned or kept electronically, so they did not

02:12PM  2  make it into like, a PDF form.  But the paper copies we

02:12PM  3  scanned, we provided in accordance with the Judge's order.  We

02:12PM  4  just don't have anything else to give.

02:12PM  5      As to the record retention, I'm just still a little

02:12PM  6  unclear from our perspective and that absolutely has been

02:12PM  7  impacted by the COVID.  The police department, specifically

02:12PM  8  like the staff, doesn't work in the buildings and no one is

02:12PM  9  allowed in the buildings currently.  But we can, if the Judge

02:12PM  10  thinks this is right, we can investigate those things and

02:12PM  11  provide a further and complete explanation as to what

02:12PM  12  happened, when it happened and why it happened, basically in

02:13PM  13  whatever time period the Court feels is appropriate.

02:13PM  14      THE COURT:  All right.  Because there is an answer to

02:13PM  15  that question.  You don't just destroy a file.  Either you

02:13PM  16  hope you have some kind of document destruction policy or you

02:13PM  17  do it on a scheduled basis, but somebody doesn't just walk

02:13PM  18  into your office and say, today I'm going to, you know,

02:13PM  19  destroy a couple files.  So -- and I don't think it's a

02:13PM  20  complicated question, either.  Okay.  All right.

02:13PM  21      So.  I'm thinking in the way of a declaration and I

02:13PM  22  started out complimenting Mr. Quinn's candor.  So, I expect a

02:13PM  23  black/white, to-the-point description of what happened.  And

02:13PM  24  if it creates an adverse inference, so be it.  It would be

02:14PM  25  better to get the documents, but I'm hearing from Mr. Quinn

02:14PM   1   that plaintiffs have everything that the defendants actually

02:14PM   2   still possess.  So, let's hear from the plaintiffs.

02:14PM   3           MR. CHARNEY:  Thank you, Your Honor.  We agree that a

02:14PM   4   declaration is the best way forward at this point.  I think we

02:14PM   5   would just want to make sure that the declaration does either

02:14PM   6   attach or specifically articulate what the department's

02:14PM   7   document retention policy is, because that's something that

02:14PM   8   we've -- as you've noted, we've been asking for a long time

02:14PM   9   and really don't understand.

02:14PM   10   You know, we're confused, I think, because as Your Honor

02:14PM   11   probably saw, we attached it as an exhibit to our motion.

02:14PM   12   We're having a hard time figuring out, you know, why some

02:14PM   13   files from particular years were destroyed, but other files

02:14PM   14   from the same years weren't.  So, really getting a sense of,

02:14PM   15   you know, what that policy is and what the rules are I think

02:14PM   16   is really critical as well.  So, we want to make sure that

02:15PM   17   that is in the declaration, but we absolutely agree that a

02:15PM   18   declaration is the best option at this point.

02:15PM   19           THE COURT:  All right.  So, here's what's going to

02:15PM   20   happen next.  Plaintiffs are going to, in 14 days, come up

02:26PM   21   with the subject matters on which you are looking for a

02:26PM   22   declaration.  That gets the Court out of coming up with things

02:27PM   23   that you then find insufficient.  In Vermont, and I'm sure

02:27PM   24   elsewhere, we have a phrase, "Pigs get fat and hogs get

02:27PM   25   slaughtered".

| | | |
|---|---|---|
| 02:27PM | 1 | So, I don't want you to be asking for the kitchen sink.  I |
| 02:27PM | 2 | want you to be reasonable.  And then I want you to give it to |
| 02:27PM | 3 | Mr. Quinn.  If he doesn't have any problems with it, Mr. Quinn |
| 02:27PM | 4 | I will give you then 30 days after you get that to produce a |
| 02:27PM | 5 | declaration.  And obviously, it's going to be difficult to |
| 02:27PM | 6 | forecast this is enough time, but I'm thinking 14 days to come |
| 02:27PM | 7 | up with a list, 30 days to answer it should be sufficient. |
| 02:27PM | 8 | Any concern about that, Mr. Quinn? |
| 02:27PM | 9 | MR. QUINN:  No, Judge. |
| 02:27PM | 10 | THE COURT:  Okay. |
| 02:27PM | 11 | MR. CHARNEY:  Your Honor, could I just ask one |
| 02:27PM | 12 | question in terms of process?  So assuming, you know, |
| 02:27PM | 13 | obviously if Mr. Quinn is okay with the subject matters, you |
| 02:28PM | 14 | know, we can proceed.  I guess my question is, if he does not |
| 02:28PM | 15 | agree, if he thinks, for example, we've gone too broad or have |
| 02:28PM | 16 | asked for the kitchen sink and we're unable to work that out, |
| 02:28PM | 17 | should we -- |
| 02:28PM | 18 | THE COURT:  Come to me.  Come see me. |
| 02:28PM | 19 | MR. CHARNEY:  Okay. |
| 02:28PM | 20 | THE COURT:  I will know what the kitchen sink looks |
| 02:28PM | 21 | like, having seen it many times.  So -- |
| 02:28PM | 22 | MR. CHARNEY:  Understood.  Thank you, Your Honor. |
| 02:28PM | 23 | THE COURT:  Defendants' objections to plaintiffs' |
| 02:28PM | 24 | other discovery requests, monthly and daily reports.  This was |
| 02:28PM | 25 | narrowed to monthly Housing Unit reports for January 1, 2018 |

02:28PM   1   to the present.  The first page is a Housing Unit and Strike

02:28PM   2   Force details report from January 1, 2013 to the present and

02:28PM   3   the narratives for 36 Strike Force daily reports and the

02:28PM   4   defendants' response is that they don't think this is

02:29PM   5   discoverable, but they're willing to engage in discussions.

02:29PM   6       So, this strikes the Court as within the scope of

02:29PM   7   discovery and it also strikes the Court as something that

02:29PM   8   could be ministerial so that it wouldn't take an attorney to

02:29PM   9   find out whether this exists.  Somebody who knows where to

02:29PM  10   look could pull this up and it wouldn't be a deliberative

02:29PM  11   process.  It is either something that exists or doesn't exist.

02:29PM  12   I may be oversimplifying what's at issue and I'm going to

02:29PM  13   start with plaintiffs this time.

02:29PM  14       MR. CHARNEY:  Your Honor, we absolutely agree that

02:29PM  15   this information is discoverable and I think I would agree

02:29PM  16   that there really isn't any deliberative process that has to

02:29PM  17   happen about whether to turn them over.

02:29PM  18       I think the one question we have -- and this is one of the

02:30PM  19   questions we raised with Mr. Quinn and have not yet had

02:30PM  20   answered is -- there is sort of a technological hurdle here in

02:30PM  21   that the previous samples of the first pages of those daily

02:30PM  22   reports we received were printed or produced in a format where

02:30PM  23   part of the page was cut off and Mr. Quinn has indicated he's

02:30PM  24   still trying to figure out how to cure that formatting issue.

02:30PM  25   We have not heard yet if there is a solution, but I think

02:30PM  1  that's really the only kind of hurdle to production but

02:30PM  2  otherwise, I think we agree that, you know, it's just a matter

02:30PM  3  of locating the documents and producing them.

02:30PM  4          THE COURT:  Mr. Quinn, let's hear from you on this

02:30PM  5  issue.

02:30PM  6          MR. QUINN:  This is one of the issues that we were

02:30PM  7  really trying to work through.  And you know, this is really

02:30PM  8  the genesis of the premature argument, because I think we are

02:30PM  9  largely in agreement on a lot of this stuff.

02:30PM  10      The one slight disagreement, some of this would have to be

02:30PM  11  redacted, but then it would be a little bit more than

02:30PM  12  ministerial because they -- it very much is -- like the

02:31PM  13  monthly reports contain, you know, information about crimes

02:31PM  14  and individuals and all those other things and I think we did

02:31PM  15  pretty much get to a place where we could agree on the

02:31PM  16  redactions.  It just would be a little more than a ministerial

02:31PM  17  act and we still are willing to agree --

02:31PM  18          THE COURT:  Let me stop you.  Has everything been

02:31PM  19  pulled?  So, ministerial is finding.  Redacting, I agree, is

02:31PM  20  deliberative.  But have you pulled all of this?

02:31PM  21          MR. QUINN:  We've not pulled all of it.  We have

02:31PM  22  pulled some of it.  For instance, the, I believe, 36

02:31PM  23  identified dates, we did pull that and we would have to go

02:31PM  24  through it still, but some of it still would have to be pulled

02:31PM  25  depending on how things went.

02:31PM   1      As to Mr. Charney's other point, he's correct.  When we

02:31PM   2   print them out -- and this is still the case because the

02:31PM   3   recent production was in the same manner -- when they print it

02:31PM   4   out, it does cut off part of the document.  I haven't figured

02:31PM   5   out a way around that.  I will work with staff at the police

02:32PM   6   department to see if there is a way to save it to PDF.  That's

02:32PM   7   what I've been doing with the emails and that seems to be

02:32PM   8   agreeable.  The plaintiffs seem to be agreeable to that.  I

02:32PM   9   will try to do that.

02:32PM  10      I've tried to do that in the past and I've been told that

02:32PM  11   if someone who doesn't have the certain access is -- tries to

02:32PM  12   do it, they're not able to.  They have to print to screen and

02:32PM  13   then paste it in a different document.  I'll try to see if I

02:32PM  14   can find that right person who does have that access can save

02:32PM  15   to PDF for all the specific things that Mr. Charney

02:32PM  16   identified.

02:32PM  17      Again, it wasn't intentional that this happened, but this

02:32PM  18   is just the way that all the documents were produced and the

02:32PM  19   only -- that we have previously known how, but we will try

02:32PM  20   to -- if the Court advises, we will try to find a way around

02:32PM  21   that.

02:32PM  22           THE COURT:  So, I am going to order it, not just

02:32PM  23   advise.  And people, you know -- as you well know, task their

02:32PM  24   clients you have to get this.  And you have to -- it's got to

02:33PM  25   be an un-cut off document.  You're familiar with your system.

16

02:33PM  1   You figure it out.  But that's what I need from you.  And

02:33PM  2   we're at that stage.  So, you know, if you ask me how to print

02:33PM  3   off something that is, you know, 11 by 14, I would turn to

02:33PM  4   somebody and say, you do it because I could spend hours

02:33PM  5   fooling around with that.

02:33PM  6       So, it's time to get somebody at the -- you know, from

02:33PM  7   your client who knows how to do it to get involved.  How soon

02:33PM  8   can we clean up this particular issue in light of your

02:33PM  9   statement that you thought you were pretty close on this?

02:33PM 10           MR. QUINN:  The redaction, if it is everything, the

02:33PM 11   redaction would take some time.  I think if the Court orders

02:33PM 12   that everything be produced as they've asked, I think 30 days.

02:33PM 13   I could try to have it sooner, but we have done some of it and

02:33PM 14   it was something we've been working on the whole time.

02:34PM 15           THE COURT:  All right.  How about 45 days from today

02:34PM 16   and that's a real deadline?

02:34PM 17           MR. QUINN:  That's fine.

02:34PM 18           THE COURT:  If you can't meet it, there has to be a

02:34PM 19   reason and the reason has to be provided to plaintiffs and the

02:34PM 20   Court.

02:34PM 21           MR. QUINN:  That's okay by me, Judge.  Thank you.

02:34PM 22           THE COURT:  Okay.  Employment history.  And here's

02:34PM 23   what I would suggest with regard to this.  This comes up

02:34PM 24   fairly frequently and some of it is completely extraneous

02:34PM 25   information about Officer Farquad's (phonetic) pension plan or

17

02:34PM  1  something that has nothing to do with this case.  I suggest we

02:34PM  2  tag employment history to depositions and that the documents

02:35PM  3  related to disciplinary complaints or bonuses for Strike Force

02:35PM  4  activity or something other than just saying we want

02:35PM  5  employment history for the following people.  Let's hear from

02:35PM  6  plaintiffs first about this issue.

02:35PM  7      MS. WILNER:  Thank you, Your Honor.  Employment

02:35PM  8  history in the context of this case is actually asking not for

02:35PM  9  a blanket employment history of every officer, but for one

02:35PM  10  specific piece of information for a few identified officers.

02:35PM  11  And the specific information is the time periods in which

02:35PM  12  those police officers were employed and working for the Strike

02:35PM  13  Force and/or the Housing Unit and in some cases, the Traffic

02:35PM  14  Unit.

02:35PM  15      The reason for this is that plaintiffs have contracted an

02:35PM  16  expert who will be conducting a statistical analysis of the

02:36PM  17  ticketing patterns.  And the statistical analysis involves

02:36PM  18  comparing tickets issued by Strike Force and housing officers

02:36PM  19  with tickets issued by other units and the Traffic Unit is

02:36PM  20  particularly relevant.  And in order to conduct that

02:36PM  21  statistical analysis, we need to be able to identify what unit

02:36PM  22  an officer was in at the time the ticket was issued.

02:36PM  23      Unfortunately, we have very detailed data about tickets,

02:36PM  24  but that one field that indicates the unit -- the officer

02:36PM  25  unit -- is really not very well filled in in our data.  And

02:36PM   1   so, that's why we need this employment information.

02:36PM   2          THE COURT:  If it was -- the ticket itself, does your

02:37PM   3   database indicate that in this regard?

02:37PM   4          MS. WILNER:  We have, for each ticket, the name of

02:37PM   5   the officer who issued it and the date and time and location

02:37PM   6   of the ticket.  We just don't have what unit that officer was

02:37PM   7   part of.  And we had --

02:37PM   8          THE COURT:  I find that's relevant.  So, I assume --

02:37PM   9   unfortunate, but you can do it in a back end of the

02:37PM  10   information looking at from the tickets issued, correct or --

02:37PM  11   2012, that there are 10 officers, 10 disputed officers that

02:37PM  12   are issuing tickets in this relevant particular geographic

02:38PM  13   area.  I can make an assumption that those 10 people were

02:38PM  14   employed in a unit that was deployed there during that time

02:38PM  15   period.  Is that not possible?

02:38PM  16          MS. WILNER:  Well, the Strike Force and the Housing

02:38PM  17   Unit were roving units that worked in different areas

02:38PM  18   throughout the city.  And so, they would overlap with the

02:38PM  19   geographic unit officers.

02:38PM  20      If I may, I don't know if it might help to look at

02:38PM  21   Exhibit 14, which is the spreadsheet that we sent to the

02:38PM  22   defendants to ask them to fill in the missing transfer

02:38PM  23   information.  It's a really extremely narrow request at this

02:38PM  24   point, because after the first motion to compel, defendants

02:38PM  25   did provide a series of transfer orders.  We did use the

BLR v COB, et al -- 12/14/2020 -- STATUS

19

02:38PM 1 transfer orders to identify all the dates that we could. And

02:39PM 2 so, the dates that weren't identifiable through the transfer

02:39PM 3 order is what we have asked the defendants to provide. And

02:39PM 4 you know, I think that much of this information may be

02:39PM 5 identifiable simply by asking the officers or their commanding

02:39PM 6 officers who may know when the officer transferred in and out

02:39PM 7 of the unit. I don't even know if that inquiry has been made.

02:39PM 8 THE COURT: Okay. So if you depose somebody, you

02:39PM 9 could ask for their CV or their resume and you would have that

02:39PM 10 information that way, correct?

02:39PM 11 MS. WILNER: It's possible. I don't know if an

02:39PM 12 officer moved like say, from the D District to the Strike

02:39PM 13 Force and then back to the D District, I don't know if their

02:39PM 14 CV or resume would say when they were in a particular unit,

02:39PM 15 but it's not a large number of officers that we're looking for

02:40PM 16 this information for.

02:40PM 17 I would say there are roughly -- just looking -- 40

02:40PM 18 officers when we're looking for either a date that they

02:40PM 19 transferred out of or a date that they transferred into a

02:40PM 20 particular unit. And for most of those officers, we have one

02:40PM 21 of the dates but not the other. So, it's a very limited

02:40PM 22 inquiry, but it is important for a statistical analysis.

02:40PM 23 THE COURT: And do I have right that one of -- the

02:40PM 24 transfer out is not reported. They do keep track of

02:40PM 25 transferring in but not transferring out?

02:40PM   1        MS. WILNER:  I believe that that's the case in

02:40PM   2   transfer orders.  They -- I believe -- and Mr. Quinn would

02:40PM   3   have a better sense of this, but they do have unit rosters.

02:40PM   4   So, there is other information within the police department

02:40PM   5   that would say, you know, where an officer was working at this

02:40PM   6   time.

02:41PM   7       And let me also add that in previous discussions --

02:41PM   8   because we've been discussing this for over a year --

02:41PM   9   Mr. Quinn had assured us that he was working on this, that he

02:41PM  10   would be able to provide the information next week, that they

02:41PM  11   had almost all of it, they were just finishing reviewing the

02:41PM  12   documents.  And so, I am not certain even how much more work

02:41PM  13   remains to be done, but it is both extremely important to us

02:41PM  14   and very limited in what we have asked to be provided.

02:41PM  15        THE COURT:  Okay.  Let's hear from Mr. Quinn.

02:41PM  16        MR. QUINN:  So, on this specific issue Judge, the

02:41PM  17   problem really is that we've turned over the documents that

02:41PM  18   would give you the best idea of the specific date that someone

02:41PM  19   came in or left.  With regard to leaving, it doesn't identify

02:41PM  20   that you're going from X to Y, it just says you're going to Y.

02:41PM  21   So, it's difficult to sort of backtrack that.

02:42PM  22       We have tried to look through daily reports to figure out,

02:42PM  23   you know, did an officer work on this date and when was the

02:42PM  24   last day that he shows up as working on the Strike Force

02:42PM  25   before going somewhere else.  The problem is, it's difficult

02:42PM  1   to nail down a date with any type of precision.  So, while I'm

02:42PM  2   willing to work with the plaintiffs, I do think depositions

02:42PM  3   would be the best way to do it.  And maybe someone would be

02:42PM  4   able to come in and say, you know, I remember a specific date

02:42PM  5   that someone came in or someone left or something like that.

02:42PM  6   I don't know how precise I can get this beyond what has

02:42PM  7   already been provided.

02:42PM  8       THE COURT:  So, here's some push back.  It looks to

02:42PM  9   me from the correspondence that you thought you could provide

02:42PM  10  this and this wouldn't be that problematic.  Plaintiffs say

02:42PM  11  it's only one category of that and that's a really narrow

02:43PM  12  request.  There has to be an answer at this point, I can

02:43PM  13  provide it or I can't provide it.  Agreed?

02:43PM  14      MR. QUINN:  Mostly, yes.  Like I said, it is just the

02:43PM  15  specific issue of precision.  So, I can say the last day we

02:43PM  16  have an officer being -- you know, being noted in the records

02:43PM  17  as working for Strike Force is October 25th, but does that

02:43PM  18  mean that he didn't work another day or that he didn't, you

02:43PM  19  know, he wasn't just there on that day visiting and he had

02:43PM  20  previously left, you know, six months before and was just

02:43PM  21  picking up an extra shift or something like that?  That's the

02:43PM  22  only push back I have.

02:43PM  23      Like I said, we've been trying to work on this and I

02:43PM  24  can -- I guess I could provide an explanation as to that is

02:43PM  25  that, you know, on October 24th, this person worked the shift

02:43PM  1    for Strike Force and we don't have them working another shift

02:43PM  2    after that, but I just -- I only hesitate because I don't know

02:44PM  3    that that would give them the exact information that they are

02:44PM  4    looking for, because I don't know that I can give it.

02:44PM  5         THE COURT:  Okay.  Well, sometimes people can't

02:44PM  6    provide, you know, the exact information and they then have a

02:44PM  7    duty under the discovery rules to provide as much information

02:44PM  8    as they can.

02:44PM  9      So, I'm not going to require you to say or certify that

02:44PM  10   this is the last day somebody worked if you don't have that

02:44PM  11   information.  You should provide the information that's

02:44PM  12   readily available, as our records go up to October 25th, 2013

02:44PM  13   and we don't see that person again, then they can depose

02:44PM  14   whoever they choose and follow up.  And I would hope that the

02:44PM  15   person would have some personal understanding of whether he or

02:44PM  16   she worked at different locations, but we can get past this

02:44PM  17   issue.  How long would it take you to do that?

02:44PM  18         MR. QUINN:  That would probably take -- because we've

02:44PM  19   done most of the work already, it is largely ministerial.

02:45PM  20   That would take, at the most, 30 days.

02:45PM  21         THE COURT:  All right.  And let me hear from

02:45PM  22   plaintiffs.  Would that advance the ball enough for you in

02:45PM  23   light of the fact that if they don't have it, they just don't

02:45PM  24   keep information that particular way, there's no sense in us

02:45PM  25   going around and around.  And you are going to have an

02:45PM  1   independent source, which is the person himself or herself, to

02:45PM  2   answer in a deposition.

02:45PM  3           MS. WILNER:  I think we would like to take the best

02:45PM  4   information that they have, but I would like to speak to the

02:45PM  5   deposition issue, because there are approximately 40, maybe

02:45PM  6   more, officers for which we need a small piece of

02:45PM  7   information -- the best information possible -- about when

02:45PM  8   they began or ended working in a particular unit.  Now, I

02:45PM  9   don't think that we actually need to take depositions of all

02:45PM  10  of those officers --

02:45PM  11          THE COURT:  Why couldn't you do that --

02:46PM  12          MS. WILNER:  -- limited to 20 depositions

02:46PM  13  initially --

02:46PM  14          THE COURT:  Let me stop you.  Why can't you do that

02:46PM  15  now in a request to admit Officer Patterson had his last shift

02:46PM  16  on X force on October 15th, 20-whatever?  And then Mr. Quinn

02:46PM  17  goes to the officer and I have got to admit this or deny this.

02:46PM  18  Yes, that's right.  Why wouldn't that get you there cheaply,

02:46PM  19  quickly and about as solidly an answer as you possibly can

02:46PM  20  get?

02:46PM  21          MS. WILNER:  Well, we could try that.  We did pose it

02:46PM  22  as an interrogatory.  It wasn't a request for documents.  And

02:46PM  23  so, I do think that Mr. Quinn could -- has the responsibility

02:46PM  24  to speak to the officers and see if he can uncover some of

02:46PM  25  this information from them.  And I think it makes more sense

02:46PM    1    for him to speak to this limited number of officers and

02:46PM    2    provide the best information that he can as opposed to

02:47PM    3    requiring us to take 40 depositions just to know the dates of

02:48PM    4    their employment, when the dates of their employment is.  It's

02:48PM    5    important to our statistical analysis, but it's not -- some of

02:48PM    6    these officers may be important for us to take depositions of,

02:48PM    7    you know, for other reasons, but likely not all of them.

02:48PM    8         THE COURT:  Okay.  Well, it doesn't sound to me like

02:48PM    9    depositions are actually the least expensive way to go about

02:48PM   10    this.  Mr. Quinn tells me in 30 days he can give you the best

02:48PM   11    information that he has on this issue.  I'm going to order it.

02:49PM   12    I'm not going to order him to do something he can't do.  If

02:49PM   13    you decide you want to follow up with request to admit to get

02:49PM   14    a yes, no, thumbs up, thumbs down, that's your choice.  But

02:49PM   15    information is going to be provided to you in due course,

02:49PM   16    okay?

02:49PM   17         MS. WILNER:  That sounds good.  Thank you, Your

02:49PM   18    Honor.

02:49PM   19         THE COURT:  So, let's move on to the next issue which

02:49PM   20    is the CCRCR complaints.  And at this point, the defendants

02:49PM   21    have said they are not aware of any responsive documents at

02:49PM   22    this time.  And the plaintiffs push back and say, it looks

02:49PM   23    like you've only looked in paper form.  So, with regard to

02:49PM   24    this issue, are we at the declaration point, should it be

02:50PM   25    added to Mr. Quinn's list of things to tell us yes, this

02:50PM  1  exists, no, it does not and I'm going to start with Mr. Quinn

02:50PM  2  this time.

02:50PM  3       MR. QUINN:  This is one where we did feel it was a

02:50PM  4  little premature and it is because of my explanation.  We've

02:50PM  5  searched all places where we knew documents were.  That

02:50PM  6  included -- and I believe I put this in the affidavit reaching

02:50PM  7  out to the current head.  The current head is also working

02:50PM  8  from home.

02:50PM  9   I have not eliminated the possibility that additional

02:50PM  10  documents exist.  I do need some time to do that, and that was

02:50PM  11  where we were when this motion was made.  I believe we have

02:50PM  12  searched diligently.  This has really been impacted by the

02:50PM  13  COVID thing because it was a relatively new person at the head

02:50PM  14  of this organization or entity or whatever it is and they just

02:50PM  15  were unfamiliar with it.  And then we had, unfortunately,

02:50PM  16  people leaving and trying to work from home.  So this, I do

02:51PM  17  want to continue searching.

02:51PM  18       THE COURT:  Is there a complainants database?

02:51PM  19       MR. QUINN:  I'm sorry, what is that, Judge?

02:51PM  20       THE COURT:  Is there a complainants database?

02:51PM  21       MR. QUINN:  I don't believe so.

02:51PM  22       THE COURT:  Okay.

02:51PM  23       MR. QUINN:  My understanding is all the records were

02:51PM  24  kept in paper form.

02:51PM  25       THE COURT:  All right.  Because the plaintiffs say

02:51PM   1   that what you have produced refers to a complainants database,

02:51PM   2   which doesn't have to be electronic.  It could be paper.

02:51PM   3   Okay.  All right.  So, how much time do you need to do what

02:51PM   4   you need to do; either to produce a declaration that says I

02:51PM   5   don't have it, or to finish your search and be able to just

02:51PM   6   answer, this is what I have and what I don't have in light of

02:51PM   7   your representation that this is under way?

02:51PM   8         MR. QUINN:  For this specific one and given sort of

02:51PM   9   our growing list of commitments, I probably would ask for

02:52PM  10   60 days to do this one, Judge, just because it might be that I

02:52PM  11   can -- that the government -- could say no additional

02:52PM  12   documents exist, but I want to make sure I have searched all

02:52PM  13   the places that I can and I don't -- we're not at the point

02:52PM  14   where I can say I know it would be here, I know it would be

02:52PM  15   there.  This is just an entity that we're trying to work

02:52PM  16   through figuring out where all possible things could be.  So,

02:52PM  17   I think 60 days would be better for us for this.

02:52PM  18         THE COURT:  Let me hear from the plaintiffs on this

02:52PM  19   issue.

02:52PM  20         MR. CHARNEY:  Yes, Your Honor.  I think 60 days seems

02:52PM  21   a little long for us.  I understand Mr. Quinn's limitations

02:52PM  22   and the challenges he's working with in terms of other

02:52PM  23   agencies.  I just would note for the record that, you know, we

02:52PM  24   originally requested these materials in August of 2019, which

02:52PM  25   was obviously seven months before pandemic.  So, I think, you

02:52PM   1   know, we still have a question as to why the search wasn't

02:52PM   2   made before then but, you know, we are where we are but, you

02:53PM   3   know, I do agree that there needs to be a court-imposed

02:53PM   4   deadline about when Mr. Quinn will complete his search.

02:53PM   5   And the only other thing I'd mention is, you know, again, the

02:53PM   6   documents he has produced, there is a record we attached as an

02:53PM   7   exhibit to our motion in which the commission itself in one of

02:53PM   8   its meetings does discuss the complainant database.

02:53PM   9       The last thing I would mention is that if you look at the

02:53PM  10   spreadsheet of the IAD files that we also attached, it does

02:53PM  11   make reference to, I believe, one of two complainants that

02:53PM  12   were referred from this commission to Internal Affairs.  So,

02:53PM  13   that would suggest that, you know, the commission that does

02:53PM  14   have some record of at least a few complaints that are

02:53PM  15   irrelevant.

02:53PM  16       THE COURT:  Okay.  Sixty days is the deadline.

02:53PM  17   Either there's a production or there's a certification that

02:53PM  18   nothing exists.  Next category, fourth set of RFPs and RFP 76

02:54PM  19   and I am going to start with plaintiffs on this issue.

02:54PM  20       MR. JOACHIM:  Yes, Your Honor.  So, we served the

02:54PM  21   fourth RFPs about seven months ago.  RFP 76 was served in

02:54PM  22   August 2019.  And to our understanding, defendants have not

02:54PM  23   produced any documents in response to these.  They have made

02:54PM  24   conclusory objections.  They have advised us that they are

02:54PM  25   searching for documents and that they would tell us when those

02:54PM   1   searches are complete, but we have not heard anything further

02:54PM   2   from them on that, despite us following up a number of times.

02:55PM   3   And Your Honor just, at this point, we just need defendants to

02:55PM   4   produce these documents because we don't think they've

02:55PM   5   asserted any valid objections.

02:55PM   6           THE COURT:  Let's hear from the defendants.

02:55PM   7           MR. QUINN:  So, for this one, I don't believe we have

02:55PM   8   actually met and conferred.  Plaintiffs characterize our

02:55PM   9   objections as boilerplate.  I provided our objections and I

02:55PM   10   also provided my affirmative attempts to say, here are the

02:55PM   11   issues we have with these objections in an email sent that

02:55PM   12   same day, which has never really been responded to.  So, I

02:55PM   13   mean, it's tough to address these -- this part of the motion,

02:55PM   14   because they never really tried to work with us to figure out

02:55PM   15   what is the issue.

02:55PM   16     We believe our objections are valid and we go through that

02:55PM   17   for all those reasons in our opposition to their motion.  I

02:55PM   18   mean, if there are specific issues they want to work through

02:55PM   19   or things that they want to identify as to what they are

02:56PM   20   looking for and why they need it, I'm happy to do that, but I

02:56PM   21   don't believe they've done that yet.

02:56PM   22           THE COURT:  All right.  When I hear fourth set of

02:56PM   23   request to produce, that's a lot of discovery.  So, this is a

02:56PM   24   big case, it's an important case, but that's a lot of requests

02:56PM   25   as well.  And I do want you to work through this and pick off

02:56PM    1    the ones that you can resolve easily between the two sides and

02:56PM    2    narrow for me the ones that you cannot.  And I will consider

02:56PM    3    this kind of the crux of the motion to compel.

02:56PM    4        And keep in mind that the Federal Rules of Civil Procedure

02:56PM    5    indicate that the parties -- the Court shall order attorneys

02:56PM    6    fees if the opposition or the request is not well-grounded.

02:57PM    7    So, I want you to took a hard look at what you've asked for

02:57PM    8    and I want you to take a hard look at what you have answered.

02:57PM    9    And I want you to bring to me only what you truly cannot

02:57PM   10    resolve yourselves.

02:57PM   11        So, I'm envisioning I would be looking at a handful of

02:57PM   12    these production requests and I would be able to say to myself

02:57PM   13    clearly not covered by any prior request, clearly within the

02:57PM   14    scope of discovery, clearly insufficient answers.  It's

02:57PM   15    inconceivable that it wouldn't exist.  And I think that alone,

02:57PM   16    that process, is going to narrow them, because I'm having a

02:57PM   17    hard time envisioning that you get to your fourth set and

02:57PM   18    you're missing crucial documents for your case when there are

02:58PM   19    an abundance of experienced counsel for the plaintiffs.

02:58PM   20        And so, you know, I want to make sure that if I'm going to

02:58PM   21    be resolving a discovery dispute, it's a real one, it's

02:58PM   22    important to the case, the objections are baseless and I

02:58PM   23    should be ordering or granting a motion to compel, denying a

02:58PM   24    motion to compel and awarding attorneys' fees.  So, I'm going

02:58PM   25    to give you 60 days for that process.  It's not going to hold

02:58PM   1   up any other processes, but I want you to have those

02:58PM   2   discussions.  And I say it as a compliment to your bilateral

02:58PM   3   professionalism that I actually think it will work to some

02:58PM   4   extent.  Sometimes, I send parties out to discuss something

02:58PM   5   and I know they're going to come back with the same thing I

02:58PM   6   sent them out to discuss.  I don't think that's the case here.

02:58PM   7       So, 60 days to narrow for the Court things that you truly

02:59PM   8   need me to rule on with regard to the request for production

02:59PM   9   of documents.  And then I'm going to defer ruling on an award

02:59PM  10   of attorneys' fees and expenses at this point in time.  You

02:59PM  11   have heard my warning and that's what the federal rules talk

02:59PM  12   about in terms of whether or not you order attorney fees and

02:59PM  13   whether or not the Judge made it clear to parties we're moving

02:59PM  14   forward.

02:59PM  15       I'm looking for good faith, reasonable disputes.  And if

02:59PM  16   somebody is stalling or asking for things that they don't

02:59PM  17   need, I will be able to see it at this point.  Any reason why

02:59PM  18   that approach won't work?

02:59PM  19           MR. CHARNEY:  No reason from plaintiffs.

02:59PM  20           MR. QUINN:  That sounds completely reasonable to me,

02:59PM  21   Judge.  Thank you.

02:59PM  22           THE COURT:  All right.  That's what I had.  Am I

02:59PM  23   missing anything?

02:59PM  24           MR. CHARNEY:  Maybe one other -- I don't know if this

03:00PM  25   falls within the meeting to defer on the other document

| | | |
|---|---|---|
| 03:00PM | 1 | request, but I know Ms. Wilner was prepared to discuss the |
| 03:00PM | 2 | thing regarding the ECAC documents, but that may fall under |
| 03:00PM | 3 | this, but I'll let Ms. Wilner answer that one. |
| 03:00PM | 4 | MS. WILNER:  I think that would fall under those were |
| 03:00PM | 5 | part of the fourth set of RFPs.  And so, we can have a more |
| 03:00PM | 6 | specific discussion that the Court ordered. |
| 03:00PM | 7 | THE COURT:  Any other things from the defendants' |
| 03:00PM | 8 | perspective that I did not address? |
| 03:00PM | 9 | MR. QUINN:  I don't believe so, Judge.  The only |
| 03:00PM | 10 | thing on the depositions, there has been one deposition |
| 03:00PM | 11 | conducted already.  Is it 20 in addition to that or is it 19? |
| 03:00PM | 12 | What is the specific -- |
| 03:00PM | 13 | THE COURT:  Twenty now.  So, the one counts.  And |
| 03:00PM | 14 | then, we're going to circle back around and come up with what |
| 03:00PM | 15 | happens next. |
| 03:00PM | 16 | MR. QUINN:  That sounds fine with me.  I will note |
| 03:01PM | 17 | that there was a fifth notice to produce and a third set of |
| 03:01PM | 18 | interrogatories that we responded to last week and I think we |
| 03:01PM | 19 | might have to work through those.  We're not at that point |
| 03:01PM | 20 | yet, but we have responded to those, so that's another thing |
| 03:01PM | 21 | that is out there. |
| 03:01PM | 22 | THE COURT:  Okay.  I'll keep track of this case.  You |
| 03:01PM | 23 | have your deadline.  I was not planning on issuing a written |
| 03:01PM | 24 | order.  If you need one, it will be found in the transcript. |
| 03:01PM | 25 | Anybody not clear as to how the Court has ruled, needs |

03:01PM    1   clarification at this point or is it abundantly clear what's

03:01PM    2   expected of everybody at this point?  And we'll start with the

03:01PM    3   plaintiff.

03:01PM    4           MR. CHARNEY:  Yes, Your Honor.  Fair to us.

03:01PM    5           THE COURT:  Mr. Quinn?

03:01PM    6           MR. QUINN:  Yes, I think so, Judge.  Thank you.

03:01PM    7           THE COURT:  And that was the right answer for both of

03:01PM    8   you, so that's good.  All right.  Thank you for your courtesy

03:02PM    9   and your professionalism.  You are free to leave this meeting

03:02PM   10   now.

03:02PM   11           MR. QUINN:  Thank you, Judge.  Thanks everybody.

03:02PM   12           MS. WILNER:  Bye.

03:02PM   13           MR. JOACHIM:  Thank you.

03:02PM   14   (Proceedings concluded at a.m. p.m.)

          15

          16

          17

          18

          19

          20

          21

          22

          23

          24

          25

1          <u>CERTIFICATE OF TRANSCRIBER</u>

2

3   In accordance with 28, U.S.C., 753(b), I certify that this is

4     a true and correct record of the proceedings held in the

5   United States District Court for the Western District of New

6    York before Judge Christina Reiss, on December 14th, 2020.

7

8

9                          <u>s/ Megan E. Pelka, RPR</u>

10                         Megan E. Pelka, RPR

11                         Transcriber

12

13

14

15

16

17

18

19

20

21

22

23

24

25