**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**BLACK LOVE RESISTS IN THE RUST, et al.**

   **Plaintiffs,**

     **-vs-**

**CITY OF BUFFALO, et al.**

   **Defendants.**
_____

           **DECLARATION**

         **Civil Action No.: 18-cv-719**

   **ROBERT E. QUINN,** Assistant Corporation Counsel, _of Counsel_ to Timothy A. Ball, Esq., Corporation Counsel, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declare the following to be true and correct:

   1. I am an attorney licensed to practice law in the Courts of the State of New York and in the United States District Court for the Western District of New York, and an Assistant Corporation Counsel for the City of Buffalo, and I represent the Defendants in this action.

   2. As such, I am fully familiar with the facts and circumstances set forth below.

   3. This Declaration is offered in opposition to Plaintiffs' Motion to Compel discovery for Sanctions, filed on September 28, 2021. (Dkt. No. 111).

   4. I would respectfully request that the Court deny the Motion to Compel and for Sanctions, in whole or in part, for the reasons stated herein.

   5. We will attempt to address Plaintiffs' arguments in the order they are set forth in their Moving papers, acknowledging our agreements where appropriate.

*I. Defendants have produced extensive discovery and acted in good faith.*

6.      As the Court is well aware, this case now has an extensive discovery history in which Plaintiffs' are blaming largely, if not exclusively, on your Deponent.

7.      Defendants disagree with these allegations and submit that, while I would like to be more responsive and have more time to devote to this case, counsel has acted appropriately and in good faith at all times as demonstrated by discovery produced.

8.      Respectfully, and not as a complaint or excuse, we submit that the reason discovery has taken the amount of time it has is based on the amount of Discovery the Plaintiffs are seeking and the manner in which they are conducting it.

9.      To date, Defendants have produced Three-Hundred Twenty-Nine Thousand Five Hundred and Eighty-Six (329,586) pages of bates number documents. This includes hundreds of documents and thousands of pages since our May 2021 production, and that production is very much continuous and ongoing as needed.

10.      To reiterate the amount of time and effort that has gone into this matter, and the history, we also reiterate the formal responses.  The Defendants served their Responses to the Plaintiff's First Set of Requests for Production and First Set of Interrogatories on December 5, 2018.  A First Supplemental Response to Plaintiff's First Set of Interrogatories was served on February 5, 2019.  A First Supplemental Response to First Set of Requests for Production was served on March 15, 2019. A Second Supplemental Response to Plaintiff's First Set of Interrogatories was served on April 11, 2019.  A response to Plaintiffs' Second Set of Requests for Production was served on May 19, 2019.  Responses to Plaintiffs' Second Set of Interrogatories were served on September

2

12, 2019. Responses to Plaintiffs' Third Set of Requests for Production were served on September 25, 2019.    On December 13, 2019 the Defendants served their First Supplemental Responses to Plaintiffs' Third set of Requests for Production.

11.    On May 21, 2020, the Plaintiffs served an Amended and Supplemental Class Action Complaint, to which the Defendants Answer on June 4, 2020.

12.    On June 11, 2020 the Defendants served our Responses to Plaintiff's Fourth Set of Requests for Production. On December 10, 2020 the Defendants served our Reponses to Plaintiff's Third Set of Interrogatories.  On December 20, 2020 the Defendants served our Reponses to Plaintiff's Fifth Set of Requests for Production.  On January 13, 2021, Defendants served our Third Supplemental Responses to Plaintiffs' First Set of Interrogatories. On February 12, 2021, the Defendants served our Second Supplemental Responses to Plaintiff's Third Set of Requests for Production.

13.    Much of the Documentation being requested now, specifically the ECAC has not been formally requested, but comes from an attempt to work through issues by using a Subpoena issued to and responded by ECAC, and we have been in near constant communication on multiple threads and with different attorneys for the Plaintiff's apparently handling different aspects of their case.

14.    Given the various sources and types of discovery sought, one would not be able to describe all of the information produced other than to say most of it has been individual records that had to be located, reviewed and produced.

15.     Stated plainly, Plaintiffs are seeking extensive and wide-ranging discovery, some of which we believe they are entitled to, some which we believe they are not, and it takes time to determine, locate, and produce responsive information.

16.     Since this case began, there likely has not been a day that the Defendants, whether through counsel or otherwise, were not working on discovery in some form.

17.     Just as an example, at one time in May, we had a majority of our staff working on just this case for a period of two (2) to three (3) weeks.  Specifically, this included three recently hired attorneys, four administrative assistants who drawn from their other assigned tasks, and your Deponent.

18.     I will not reiterate our pleas with respect to the City of Buffalo Law Department's relative resources, other than to state that there has not been any case that the Law Department has devoted more to in my time here.

19.     I recognize that we are likely beyond courts entertaining Covid-19 as an excuse, and I don't use it in this case other than to explain a week in late March/Early April of 2020 that I came down with it, but I have certainly seen it raised and accepted in other cases, and I do understand the complications, which I believe should reinforce good-faith in the fact that we have been able to produce this discovery during this period.

20.     Your deponent acknowledge that there have been occasions where I was unable to respond as indicated, or that I had to ask for more time, and those occasions have certainly happened more frequently than I would have like, but they do not happen in a vacuum, and they ignore the fact that we have produced a staggering amount of discovery in this case.

21.     They also ignore the efforts that have gone in to identifying and locating information to allow for these email communications, the countless meet and confers, and the fact that often there are several different conversations and frequent actual production transpiring at the same time, and that this is a disputed case where two sides each have the opportunity do disagree and argue.

22.     Certainly, there are different ways to handle the prosecution of this case, and it would have been possible to do so in more tailored manner, but the Plaintiffs' counsel have not chosen to do that, and given the amount of discovery is sought, it takes time to respond to it, and that is why the discovery process is ongoing.

23.     Despite all of this discovery, we've still only conducted three depositions, Lt. Joseph Fahey, Police Officer Charles Skipper, and Tracy Masiello, individuals who appear to have little, if any, involvement in the actual substance of the Plaintiff's claims.

24.     I do not presume to advise Plaintiffs how to litigate their case, but the amount of discovery they have sought is, essentially, unbounded and requires an incredible amount of time, effort, and as set forth below, cost, to comply with.

25.     Plaintiffs' have a number of attorneys working on this, and from a cursory review of the Federal and State e-filing systems, it is unclear if they are handling any other cases, so quite obviously they have far more time and resources to be able to devote to this matter, and far less actual work to do in producing discovery in this case.

26.     That does not mean that the Defendants are not acting in good faith, or inappropriate, it just means that, in terms of the day-to-day litigation aspects, we are at a

disadvantage in our ability to build, what I believe is a completely unnecessary and unwarranted case for Sanctions in an effort to gain some theoretical strategic advantage.

27.    Respectfully, I do not believe that is the purpose of the discovery process and I do not believe it is helping move this case forward in any way. I believe this is no different than any other case, only in that Plaintiffs have a number of attorneys who are looking for an incredible amount of information, with the time to make these arguments.

28.    What does move things forward is things like scheduling depositions, which we were finally able to do over the past few weeks, and we now have scheduled the next round for Philip Serafini on October 29, David Wilcox on November 4, and Daniel Derenda on November 10.

29.    Why these depositions were only now scheduled, given the status of the pending motion, is beyond me, but I would submit it demonstrates that the Defendants are not "at fault" for the length of the discovery process in this matter.

## A.  ECAC ESI

30.    With respect to the ECAC ESI, we of course will comply with any and every Court Order, but would request the opportunity to be heard on the cost and time period to be searched for the ECAC ESI and all other discovery addressed herein, prior to conducting the appropriate searches and producing any and all responsive information.

31.    As noted in the Plaintiffs' submission, since our last conference a massive amount of ESI has been produced and there has been substantial cost in that regard.

32.    As the Court may recall, initially the Defendants attempted to complete ESI production without the use of an E-Discovery vendor.

33.    I would reiterate that this attempt was made in good faith and a great deal of time and effort went into producing ESI in that manner but, ultimately, that simply proved to be too much given the amount of discovery that Plaintiffs were seeking, so we retained an vendor to assist in the production.

34.    While that vendor, and specifically use of the "Relativity" program increased production speed exponentially, there was also an exponential increase in the cost, and currently we have incurred charges of at least $49,872.33 for that process.

35.    This amount would have been much higher had we used the process for all custodians, as it essentially reflected the production for a handful of the custodians in the most recent production (though, it was the ones with by far the most number of "hits").

36.    This cost is far beyond any amount the City has experienced previously and as a result, due to both substantive cost and technical billing issues, we currently and temporarily do not have access to the "Relativity" service which has cause some delay.

37.    While that issue will be resolved as soon as possible, I would like the ability to be able to explain to my Client and the vendor what type of costs to expect and budget for the remainder of ESI discovery so that we can avoid any further interruptions.

38.    Along those same lines, we also believe that they Plaintiff's interpretation of the time period of discovery they are entitled to is incorrect and, to the extent that this impacts the cost of all ESI and other discovery, we note our objection at this time and would request clarification from the Court prior to performing such searches.

39.     Plaintiff has continuously taken the position that because they have sought injunctive relief, they are entitled to ongoing, up to the current date, discovery from Defendants on anything they seek during the entire course of this litigation.

40.     While we have accommodated these requests to an extent, preserving all objections, we are now three beyond the filing of this lawsuit, nothing has been done to seek any type of injunctive relief and the only time I can ever recall it being discussed is in the context of a justification for more discovery, and the facts and circumstances have all changed substantially since the time the lawsuit was commenced.

41.     Most obviously, the Strike Force and Housing Unit no longer exist, and many of the Defendants have retired from their employment with the City of Buffalo.

42.     On the other side of that coin, some of the programs they seek to explore as part of the additional search terms and custodians did not even exist when this lawsuit was filed as outline in their own Declaration.

43.     This is not how discovery has ever been conducted in any case that I've been a part of, and we are now at point where the ESI discovery could again expand substantially, so we believe a determination is appropriate in the context of this Motion.

44.     Prior to undertaking and additional searches and production, we would therefore respectfully request that the Court limit this additional discovery to the time period preceding this lawsuit in its entirety, or in whatever manner appropriate for the specific information sought in a particular request.

**ADDITIONAL DISCOVERY SOUGHT**

45.     With respect to all items of the additional discovery sought, we respectfully submit that the Plaintiffs have not demonstrated need or discoverability, and that they Defendants have raised appropriate and timely objections in every case.

46.     Despite this, in many instances, through much effort, we have been able to resolve potential discovery disputes despite valid objections, subject to the objections and requests set forth below, and to the extent that the Plaintiff requests and order memorializing those resolutions, and the Court feels appropriate, Defendants will certainly will abide by the time periods set.

47.     The fact that these issues are before this Court is not an indication that they have been ignored, but a demonstration of the effort it has taken to reach this point, and as part of our continuing effort to work in good faith we offer the following responses.

48.     With that said, I submit a review of the discovery sought, demonstrates how far beyond the essential facts and allegations of the Amended Complaint we are, and an explanation for why the discovery process has taken as long as it has.

49.     It is certainly possible that this case would have been more streamlined had the Defendants made more strenuous objections, and not tried to work with the Plaintiffs, but it would be expected that this would have led to even more motion practice.

50.     Given the substantial amount of motion practice that has already transpired, I don't see how that would have been helpful, but the fact that the Defendants have been will to produce extensive records and information (not to mention the number

of non-party subpoenas which the Plaintiffs have issued) should not be used against us when it takes time to respond to the Plaintiffs' request.

51.    We submit that the fact that the Plaintiffs have been able to reach this point, without actually conducting any meaningful depositions, is further evidence of how forthcoming and willing the Defendants have been to work cooperatively in discovery.

**B.    Nominally Agreed Discovery.**

*1.)    ECAC Project File Production*

52.    While the Defendants generally dispute relevancy or discoverability of the ECAC Project Files, the Defendants have agreed to produce this material and will continue to do so.

53.    This production has been ongoing, is largely complete, and we have agreed to the method of production outline by Mr. Krugman's Declaration.

54.    We have no objection to an order regarding the date of completion, and will defer to whatever time period the Court believes appropriate.

55.    With that said, in addition to all of our prior commitments, I would note that one of the four litigation attorneys admitted to practice in Federal Court recently left our office, and as a result all the remaining attorneys have had to assume her files.

56.    Defendants will devote whatever resources required to comply with the Court's Order, but we do have less resources currently, and depending on the outcome of this Motion and the amount of additional discovery, any time allowed would be appreciated, though we would note that this particular production is nearly complete.

2.)     *Drafts of JAG Applications.*

57.     The Defendants did agree to search for these materials while still preserving our objections however we dispute the relevancy or discoverability of the JAG applications themselves, let alone the drafts of them, and believe that these materials may be protected deliberative process privilege.

58.     Our search included shared ESI and hard copy searches performed by your deponent, and other staff of the Law Department and Buffalo Police Department, but to date we have not located any responsive "drafts".

59.     Given this posture, and Plaintiff's failure to demonstrate why such "drafts" would be necessary or discoverable, in light of the fact that we have been unable to locate such records, we would request that this portion of the Motion be denied.

3.      *Housing Unit/Strike Force Overtime Reports.*

60.     The Defendants dispute the relevancy or discoverability of the Housing Unit/Strike Force Overtime Reports, and submit that the time period requested is overly broad, and Plaintiff has made no showing as to need or discoverability.

61.     With that said, the Defendants did agree to search for those records but, to date, have not been able to locate their source or custodian.

62.     These records were not generated through the centralized Lotus Notes program or any other database we are aware of, they were not able to be located in the Strike Force or Housing Unit paper records, and in speaking with individuals familiar with the Housing Unit and Strike Force, and they were not familiar with this format.

63.    Given this, it is possible that the records produced were not generated on a regular basis, and that what was produced is discovery reflect the only ones that exist and were created for a single specific occasion.

64.    With that said, we would ask for a reasonable amount of time to complete our search and if they can be found we will produce them, as we expect that there would be a central location if discovered, and if they cannot we will advise Plaintiffs of our full and final understanding at that time.

4.    *RFP 97-99*

65.    Defendants previously produced responsive information for Charles Skipper and have agreed to replicate that production with any other witness produced so Mr. Krugman's Declaration is accurate in that regard.

5.    *ESI Spreadsheet*

66.    The ESI spreadsheet complied with the Court's Orders, and was the result of a substantial amount of time and effort so it is extensive, but if there were errors it was unintentional and they will be fixed or clarified.

67.    With that said, our objection to producing the emails again is the cost, which as stated above is now close to if not exceeding $50,000.00 for our E-Discovery vendor, not to mention the costs associated with retrieving and storing those materials.

68.    On this issue, it is our intention to work with Plaintiff to provide any additional information necessary and appropriate if possible, and not cost-prohibitive in light of what is not a clear need.

6.    *GIVE Meeting Materials*

69.    Defendants reiterate our objection to the request for GIVE Meeting materials in that Plaintiffs' still have not demonstrated why anything related to the GIVE program are necessary or discoverable.

70.    Specifically, the "written notes" Plaintiffs are seeking are undefined and, to the extent that they have not identified the particular individuals they are seeking to receive "notes" for which makes it vague, overbroad, and a potential search burdensome.

71.    With that said, we have produced the GIVE (and IMPACT) Reportas and Agenda that were saved to the relevant shared drive and submit that this is sufficient production for the materials requested.

72.    As indicated, we have attempted searches for handwritten notice, however those have been unsuccessful for a number of reasons outlined below, and therefore respectfully request that this portion of the Motion be denied.

73.    We have determined that there is no centralized handwrite "notes" file or all of these meetings, or for the individual meetings, and there is no centralized "notes" collector for the GIVE/IMPACT meetings.

74.    Therefore, to the extent its understood, it appears that Plaintiffs would requesting that Defendants separately search the paper records of every person who may have attended a GIVE Meeting over the course of a multi-year period.

75.    Given that the there is no clear relevancy, or basis for discovery, we submit that this is vague, overboard, and burdensome at the very least request some limit on the

persons or periods of time that would be searched, which would at least provide a framework and ability to respond to Plaintiff's request so that we can move this forward.

76.     To provide context, it is my understanding that these meetings were monthly, multi-jurisdictional, and would not always include the same attendees.

77.     As with any meeting, it is likely that each attendee had different roles, levels of interest, and authority to participate, not to mention the fact that many would not be City of Buffalo Police Department Employees.

78.     We also note the number of meetings which would have occurred over the time period requested and, acknowledging the possibility that individuals would maintain their own GIVE or IMPACT notes in some central location, raise that as an objection of overly broad and potentially burdensome to the extent that these hypothetical "notes" are maintained in some other manner.

79.     For all of these reasons, we would respectfully request that this portion of the Motion be denied, or granted in part to provide for reasonable search processes.

7.     *Form of Production/Metadata*

80.     As stated above, Defendants have concerns with the Cost of E-Discovery and presently do not have access to "Relativity".

81.     To provide context, the ECAC "project files" were searched manually by myself on the previously identified shared drive, saved to a thumb drive, and then processed with Bates numbering on a difference computer with access to Adobe Pro and capability to perform that function.

82.    We would object to processing the entirety of the shared drive through a "search term", and I believe Plaintiff has not raised an issue with that, but if Plaintiffs simply want to replicate the prior process and upload through relativity from the segregated thumb drive, our main objection would be the cost as raised above.

83.    Additionally, as to the balancing of the cost, these "project files" can generally be described as native documents, things like Microsoft Word and Excel, and I do not know if they would retain Metadata after being saved to some intermediate form of a thumb drive or disk, and then uploaded to Relativity so I am not sure what use they would be.

84.    With that said, subject to the objections of Cost, we would agree to produce this discovery through relativity as opposed to processing internally with the Adobe Pro program for bates numbering, or through simply producing the native files themselves.

## C.    Arguably Disputed Discovery

*1.) Additional Custodians and Search Terms for ESI*

    *a.    New Custodians.*

85.    With respect to the new Custodians, we do not believe that the Plaintiffs have demonstrated a need for additional custodians and we therefore object, particularly in light of the cost and, as set forth below, the scope of the search terms they have been using and the amount of responsive "hits" that have occurred.

86.    Again, the Defendants have produced 329,586 pages of documents in this case, and an overwhelming majority of that has been through email.

87.     The Plaintiffs' claim that they the search terms have not produced irrelevant documents is conclusory and not supported by the Motion they submit.

88.     Your deponent has reviewed every single page of what was produced and I disagree, I fail to see how almost any of that ESI is relevant to this case and a great majority of it does nothing more that reference the fact that the Housing Unit or Strike Force did something, or that some form of ticket or summons has been issued by the Police Department, things which happen on a routine, every day basis.

89.     This overly broad initial production has surely produced anything the Plaintiffs conceivably characterize as discoverable, and a great deal more that has not.

90.     Among the search terms Plaintiff requested are things like "housing", "ticket", and "summons" which, obviously, when requested from a police officer have proven to return extensive and irrelevant results.

91.     Plaintiffs have already received a massive amount of Email ESI from two Police Commissioners and various other Lieutenants and Officers, along with the Mayor, Parking Commissioner, and others, and we respectfully submit that they have failed to identify why these new custodians are not duplicative, or why the scope of searched should not be far more limited.

92.     As such, to the extent that the Court believes Plaintiff has demonstrated a need for additional custodians, we would request that the search terms be limited to the specific information or materials that they are seeking.

93. A more targeted search, limited to the specific individuals or and incidents of this complaint, would also address the concerns for cost and allow for the search and produced to be done much quicker.

    *b.*    *Only if deposed Custodians.*

94. Defendants reiterate our objections that additional custodians are not required or discoverable.

95. Moreover, particularly but not exclusively with respect to this category of deponents, Plaintiffs have failed to demonstrate why any email discovery from those individuals is needed.

96. The fact that someone has an email address does not mean every time a lawsuit is commenced a party is entitled to explore their communications, there must be some basis, and we respectfully submit that has not been demonstrated here.

97. Included within the original custodians are different individuals, from different departments, with different responsibilities.

98. Many of the "only if deposed" individuals are police officers who's jobs do not generally allow them to sit at their desks and send emails, and nothing exchanged in discovery has demonstrated that patrol Officers email accounts are an appropriate source of discoverable information.

99. Given this, the cost and time expense to perform these general topic ESI searches for specific witnesses is not warranted or justified and the Plaintiff's Motion should be denied unless a particularized need and basis is demonstrated for each witness.

c.    *Additional Search Terms for Prior Custodians.*

100.    Plaintiff's request for additional search terms should fail for the same reasons as the prior two categories and, and for the other objections based on cost and the relevant time periods set forth above.

101.    Plaintiffs have not identified why they need additional search terms for the existing custodians, what was supposedly missed, how the prior terms did not lead to sufficient results, what new information has led to these additional requests, or how these new terms would not be duplicative of what has already been produced.

102.    In fact, to the extent that they based these terms of their review of the prior productions suggests that they have already been able to obtain those records, and that any additional search would be duplicative.

103.    From a review of the additional terms, with the clear exceptions of information which post-dates the filing of their Complaint and would therefore not be discoverable, it appears that Plaintiffs are just looking for different ways to describe what has already been requested, not different information or topics that could not have been foreseen when they outlined their initial search terms.

104.    To the extent that any of these additional terms are found appropriate, we would request that they be limited to specific and appropriate accounts, as there is simply no reasonable basis to believe that each of these custodians would have any possible relevant information on each term for several reasons.

105.    For one, three of the accounts are not Buffalo Police Department, and vice versa, and another is that many of these custodians retired before some of the searched for topics even arose.

106.    The fact that Plaintiffs have not made this showing already further demonstrates how this is not a targeted search, but an overly broad fishing expedition.


## 2. ENTCAD Production

107.    Defendants respectfully submit that Plaintiffs argument on ENTCAD fails to provide enough information to determine what they are looking for, why they need it, and that portion of the Motion should therefore be denied.

108.    With that said, with the hopes reaching a resolution on this issue as soon as possible, the Defendants offer the following.

109.    ENTCAD is a City database that contains an entry for every "complaint" received or initiated by the Buffalo Police Department.

110.    That means every time someone calls 911, or if a police officer needs assistance with an accident, there would be a corresponding ENTCAD entry.

111.    Attached as **EXHIBIT A** is a typical example for a call, and it is my understanding that every call would have the exact same format and categories of information, though the data entered and times stamps would obviously differ.

112.    So, generally, every time someone calls 911 there's an entry, and it is my expectation that the majority of these would be 911 calls for assistance for any number of issues that such calls are made, which would have nothing to do with traffic stops.

113.    My general understanding is that the complaints originate in ENTCAD, and that is the system which has the most information about how the call came in, which units were assigned to the call, and the "timestamps" (dispatched, on scene, cleared, etc.).

114.    After the complaint is archived, it is copied into the CHARMS system, which has information regarding location, call type, and comments (entered by calltaker, dispatcher or officer), but unit timestamps are not.

115.    For a Traffic Stop, this information is also transferred into the "Tracs" program, which has far more information about the tickets and summons data then either ENTCAD or Tracs.

116.    It is my understanding that the Plaintiffs already have the information from CHARMS and Tracs, so the only additional information would be the "timestamps" and the information about what those "timestamps" stand for.

117.    Defendants submit that this information is not needed or discoverable, other than possibly for the specific incidents alleged in the Complaint which have already been searched for and provided, and this part of the Motion should be denied.

118.    The "timestamps" are not necessary and relevant on every police call and, given the number of entries, which is obviously extensive given that it's every police call over that number of years, it is entirely over broad.

119.    It is also burdensome in that the amount of data would have a cost, and there would be a need to review each entry to determine if it redaction was necessary, and a great majority of those entries would have nothing to do with traffic stops.

120.     Finally, while it would be possible to search for a day's worth of data, there would still be a cost to do that search, and we submit that it would not get us any closer to a resolution of this issue as we already know the categories of information set forth in the reports.

**SANCTIONS**

121.     Respectfully, taking this request with the utmost seriousness, I do not believe any type of sanctions are warranted under the circumstances in this case.

122.     I, as stated above, and the Law Department have never dedicated as much time, effort, and expense, to a single case in my time with the City, and I assure the Court we will all make every effort to continue this and improve going forward.

123.     As a demonstration of this, with assistance where available, I have produced the discovery described above at great cost and expense, and have made every effort practicable to work cooperatively with the Plaintiffs' attorneys in this matter.

124.     With respect to the allegation that I violated an Order of this Court, I do not believe that was done and, if it can in any way be interpreted as such it was not intentional, and we will certainly make every effort to rectify any omissions, and to the extent it was due to any delays in production of ESI, that was the result of unexpected and unforeseeable delays and costs.

125.     I recognize the scope of this case, and the nature of the allegations, and believe we have handled it appropriately, including taking steps to assign additional staff

where available and greatly increasing our rate of production of ESI through the use of the "Relativity" program (though I reiterate the surprising costs).

126.    Going forward, I will attempt to respond to Plaintiffs' counsels' emails in a more expedient manner, and set more realistic deadlines that will be complied, as it is not my intention or desire to mislead or inconvenience anyone and clearly they have complaints on this and it needs to be addressed so we can all move this case along.

127.    I assure Plaintiffs' and the Court that any and every delay is the good intentioned result of a substantial workload and colliding with a sincere desire to move this case forward, and I will make every possible effort to improve communications.

128.    I don't recall having ever been in a situation where another attorney was requesting sanctions against me, or where I requested sanctions against them, and its generally not how I have experienced the practice of law, and I am therefore admittedly unfamiliar with that process or what the Court considers.

129.    Because their Declaration does make a point to request imposed against your deponent personally, I will respond somewhat more personally than I would otherwise, and respectfully request with the Court's indulgence in that regard.

130.    I have been an attorney with the City of Buffalo Law Department since my admission to the New York State Bar in 2009, after starting as an unpaid Law Clerk after my first year of law school in the summer of 2006.

131.    I have been admitted to practice in the Western District since 2010, and have had a number of matters in the Second Circuit, and have nothing but the utmost respect for everyone I have come into contact with here.

132.    During my time with the Law Department I have handled litigation exclusively and practiced extensively before these Courts with a constant and increasingly heavy workload and litigation profile.

133.    I do not recall exactly how many files I've handled during this period, but at least according to NYSCEF e-fling, it would exceed 1,225, and given the circumstances surrounding the particular cases we have and the current circumstances, I have never worked more, harder, and more efficiently, than I have during the time of this case.

134.    I do not ask for credit or sympathy for any of this, and offer it only because of the Plaintiffs request, but I do work long hours and weekends, generally do not take vacations, and have a particularly labor intensive practice which requires me to be in the office consistently given the lack of an assistant, paralegal, or associate.

135.    In my time with the Law Department if have also taken on an increasing amount of responsibility within the office, am currently I'm assigned to handle cases of all sizes, and try to devote as much time and energy to each as I can

136.    While I recognize the scope of this case and the nature of the allegations, I'm not generally accustomed to the personal nature of the Plaintiffs' Motion practice as that has not been my experience of practicing in these districts, and I believe I otherwise get along with opposing counsel and the Courts.

137.    While I, along with most attorneys, would certainly like to be quicker and more responsive, I work hard, take pride in my job, and try to do the best I can under whatever circumstances we encounter.

138.    This is not offered as an excuse for our actions in this case, which I believe have at all time been appropriate and in good faith.  It is offered in the hopes that it provides some context as to the general effort and practice of your deponent to the Court and Counsel, as this is the only case that we have had together.

139.    With all of this said, if the Court does believe that Sanctions are warranted, I apologize to all involved, as it was not certainly not my intention to get to that point.


**Wherefore**, the Defendants seek an Order of the Court denying Plaintiffs' Motion, in whole or in part, affording additional time and instruction on production, denying costs, attorney's fees, sanctions, etc., and such other and further relief as the Court deems necessary and warranted under these circumstances.


Dated:  October 9, 2021
      Buffalo, New York

                                            TIMOTHY A. BALL, ESQ.
                                            Corporation Counsel


                                            */s/Robert E. Quinn*       
                                            By: Robert E. Quinn
                                            65 Niagara Square - 1103 City Hall
                                            Buffalo, NY 14202
                                            Tel.: (716) 851-4326
                                            rquinn@ch.ci.buffalo.ny.us


TO:    NCLEJ
        Attn.: Claudia Wilner, Esq.
        275 Seventh Avenue, Suite 1506
        New York, NY  10001
        wilner@nclej.org

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**BLACK LOVE RESISTS IN THE RUST, et al.**

       **Plaintiffs,**

                                    **CERTIFICATE OF SERVICE**

       **-vs-**

                                    **Civil Action No.: 18-cv-719**

**CITY OF BUFFALO, et al.**

       **Defendants.**
_____

       I, Robert E. Quinn, hereby certify that on October 9, 2021 the annexed document was electronically served on Counsel for the Plaintiffs in this case through the CM/ECF system:

Claudia Wilner, Esq.
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY  10001
wilner@nclej.org

I certify under penalty of perjury that the foregoing is true and correct.

Dated: October 9, 2021
      Buffalo, New York

                                     TIMOTHY A. BALL, ESQ.
                                     Corporation Counsel

                                     _/s/Robert E. Quinn_____
                                     By: Robert E. Quinn
                                     65 Niagara Square - 1103 City Hall
                                     Buffalo, NY 14202
                                     Tel.: (716) 851-4326
                                     rquinn@ch.ci.buffalo.ny.us