# EXHIBIT A



September 23, 2022

Peter Sahasrabudhe
Hodgson Russ LLP
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040

Re: *BLRR et al. v. City of Buffalo, et al.*

Counsel,

We write on behalf of Plaintiffs to discuss the remaining depositions to be taken in the above-captioned case. In 2020, we requested consent from Defendants to take 44 depositions, and subsequently noticed 42 depositions. As we explained then and as remains the case today, additional depositions are necessary and appropriate in this matter in light of, among other things, the number of parties, the complexity and breadth of the parties' claims and defenses, and the number of witnesses with relevant knowledge.

After Defendants failed to consent, we requested that the Court grant relief. At the December 14, 2020 status conference, the Court granted Plaintiffs a total of 20 depositions "to start" while inviting us to return to discuss "how many more" additional depositions would be needed once the first 20 depositions were completed.

We have since taken 13 depositions, and we expect to use the remaining 7 allotted depositions for the following witnesses: Byron Lockwood, Byron Brown, Harold McClellan, Robert Rosenswie, Aaron Young, Joseph Gramaglia, and a 30(b)(6) deposition. There is no doubt that these witnesses, who are named Defendants or top officials during the relevant time period, have important knowledge relevant to Plaintiffs' claims.

While we originally requested no less than 44 depositions, after conducting significant discovery and in order to limit the burden on Defendants, we have been able to substantially narrow our request to the following 12 witnesses beyond the initial 20: Robbin Thomas, Michael Healy, Jared Domaracki, Charles Miller, Adam Wigdorski, Justin Tedesco, Andrew Whiteford, Michael Acquino, Richard Hy, Kelvin Sharpe, Donna Estrich, and Octavio Villegas.[1] Based on discovery thus far, these individuals will provide testimony that is relevant and important to pursuing our claims and cannot be gathered in any less burdensome manner. For example:

1. <u>Robbin Thomas</u>: A named defendant and Strike Force member, Officer Thomas issued multiple tickets to Plaintiff Jane Doe at a Checkpoint in the incident that forms the basis of her participation in this action. She is also the subject of a large number of complaints.

---

[1] While at this time we do not anticipate requesting any more depositions beyond these 12, we reserve the right to seek additional depositions in the future based on information learned in any depositions yet to be taken or on any identification of witnesses for trial by Defendants.

2. <u>Michael Healy</u>: Officer Healy issued multiple tinted window tickets to Named Plaintiff Ebony Yeldon in the incident that forms the basis of her participation in this action.

3. <u>Jared Domaracki</u>: Officer Domaracki issued multiple tickets to Named Plaintiff Charles Palmer, including tinted window tickets and a ticket for failure to change an address, events which form the basis of Mr. Palmer's participation in this action.  Further, Officer Domaracki was a member of the Housing Unit and has information related to policing and ticketing in and around Buffalo Municipal Housing Authority properties.

4. <u>Charles Miller</u>: Officer Miller issued a registration ticket to Charles Palmer in an incident that forms the basis of Mr. Palmer's participation in this action.  Officer Miller was also a member of the Housing Unit and has information as to policing and ticketing in and around Buffalo Municipal Housing Authority properties.

5. <u>Adam Wigdorski</u>: Officer Wigdorski issued multiple tinted window tickets to Charles Palmer in an incident that forms the basis of Mr. Palmer's participation in this action.  He was a member of the Strike Force and has information pertaining to that unit's operations as related to checkpoints and other enforcement within the city.

6. <u>Justin Tedesco</u>: Officer Tedesco was an officer in the Housing Unit, and so can provide information as to policing and ticketing in Buffalo Municipal Housing Authority properties.  Based on data provided by Defendants, Officer Tedesco was the subject of multiple race-based complaints.  Further, over 89% of the tickets issued by Officer Tedesco were issued with a race code of Black, Hispanic, or Not Coded.  These disparities are central to the issues in this action and Officer Tedesco can provide information as to his participation in this pattern of policing.

7. <u>Andrew Whiteford</u>: Officer Whiteford was a member of the Housing Unit and the subject of multiple race-based and traffic complaints.  Officer Whiteford also issued a high number of average tickets per incident involving citizens with race coding of Black or Hispanic. Based on data provided by Defendants, Officer Whiteford issued just under 4.5 tickets per incident to these citizens while issuing an average of 3.7 tickets per incident to other race categories.  Officer Whiteford can testify to this disparity which is essential to the claims in this action.

8. <u>Michael Acquino</u>: Officer Acquino was a member of both the Housing Unit and the Strike Force at various times during his career at the Buffalo Police Department.  Officer Acquino issued over 91% of tickets with race categories coded as Black, Hispanic, or Not Coded.  Moreover, the average number of tickets he issued is approximately .9 tickets higher when race was coded as Black than when coded as other races or Not Coded.  Officer Acquino can provide testimony as to why these disparities existed in his ticketing, as well as his participation in the Housing Unit and Strike Force policing operations.

9. <u>Richard Hy</u>: Officer Hy was a member of both the Housing Unit and the Strike Force at various times during his career at the Buffalo Police Department.  Officer Hy issued over 90% of tickets with race categories coded as Black, Hispanic, or Not Coded.  Officer Hy issued an average of more than 4.0 tickets per incident for race categories coded in the

    same three categories.  Officer Hy was also the subject of multiple racial profiling complaints, as well as complaints alleging rudeness and excessive force.  Officer Hy has an active social media presence that often involves issues of race and policing in Buffalo.

10. <u>Kelvin Sharpe</u>: Officer Sharpe was a member of the Housing Unit and the subject of multiple complaints alleging rudeness and retaliatory ticketing.  Based on data provided by Defendants, Officer Sharpe issued over 12,000 tickets between 2012-2020, the highest number of tickets of any officer in the data provided.  Officer Sharpe also issued an average of 4.5 tickets per incident with the race coded as Black or Hispanic while issuing only 3.7 tickets on average for all other race categories.  Officer Sharpe can provide testimony as to his elevated ticket numbers as a whole as well as the disparities in race.

11. <u>Donna Estrich</u>: Commissioner Estrich is head of the City's Department of Administration and Finance.  In that role, Commissioner Estrich has unique knowledge regarding the City's budgets and revenues, including those of the BTVA and BPD.[2]  These subjects are directly relevant to Plaintiffs' claims that the City's reliance on revenue from traffic tickets and associated BTVA fees created improper structural incentives in violation of the Due Process Clause.

12. <u>Octavio Villegas</u>: Mr. Villegas is the BTVA's sole prosecutor, and therefore has unique knowledge regarding the extent and limits of BTVA's prosecutorial discretion, the handling and adjudication of traffic tickets, and the operation of the BTVA and its courts.[3]  These topics are also directly relevant to Plaintiffs' Due Process claims.

Please advise if Defendants consent to Plaintiffs taking the above 12 depositions in addition to the 20 depositions already approved by the Court.  We ask that you reply no later than September 30, 2022, and we are available to meet and confer if helpful.  If you do not consent to these additional depositions, we intend to seek relief with the Court.

Sincerely,

*Claudia Wilner*

Claudia Wilner

---

[2] The deposition testimonies of both Danielle Morgera and Kevin Helfer affirm that Commissioner Estrich has special knowledge of these subjects. Morgera and Helfer were also unable to provide specific information about these and other matters involving Commissioner Estrich that are central to this action, but Commissioner Estrich is better-suited to address them. See Morgera dep. at 117:13-17, 118:18-20, 137:18-138:1; see Helfer dep. at 52:2-7, 64:11-20, 67:18-68:14, 70:16-21, 72:7-12, 77:14-16, 83:3-6, 95:15-96:2, 96:13-98:12, 100:6-15, 101:13-20, 102:3-5, 122:17-20, 127:17-22, 143:4-12, 146:8-10.

[3] The deposition testimony of Danielle Morgera affirms that Octavio Villegas has special knowledge of these subjects that are central to this action. See Morgera dep. at 263:15-263:3, 264:7-265:10.