UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACK LOVE RESISTS IN THE RUST, *et al.*, on behalf of themselves and all those similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BUFFALO, *et al.* ;<br><br>Defendants. | No. 1:18-cv-719 |

**DECLARATION OF EDWARD P. KRUGMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ADDITIONAL DEPOSITIONS**

Edward P. Krugman declares under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a member of the Bar of the State of New York and of this Court and am one of the counsel for Plaintiffs in this action. I make this declaration on personal knowledge in support of Plaintiffs' motion for additional depositions.

2. The purpose of this declaration is to authenticate three exhibits I have prepared that are summaries—in effect, cross-tabulations—of data obtained in discovery in this action and/or downloaded from Defendant City of Buffalo's Open Data website.

3. The data obtained in discovery are from the Erie County TraCS system, which contains information on each traffic ticket issued by the Buffalo Police Department from at least January 1, 2012.[1] The information includes ticket number, date and time (to the minute) the ticket

---

[1] The data ostensibly go back to January 1, 2011, but the 2011 data appear to be incomplete. Because we created the combined dataset in 2021, we used ticket data through the end of 2020.

was issued, nature of the violations summonsed, and identity of the issuing officer. In some cases (about 30%) the data include coding for race/ethnicity of the driver. Our understanding from discovery in this action is that the TraCS race/ethnicity coding, when present, was entered by the ticketing officer at the time the ticket was issued.

4. In the last two years, the City of Buffalo has begun posting on its Open Data website[2] a slightly different compendium of traffic tickets issued. The tickets are the same tickets as are in TraCS,[3] but the associated data are slightly different. In particular, we have been informed by counsel for the City that the race/ethnicity coding in the Open Data dataset was derived from the "MASTER_NAME" table in the separate Erie County CHARMS dataset. Individuals who have had prior contact with the Buffalo Police Department have entries in the MASTER_NAME table that, in general, include race/ethnicity coding.

5. For purpose of creating the cross-tabulations described herein, we combined the race/ethnicity coding in the two datasets as follows:

- If there was race/ethnicity coding only in one of the datasets, we used that coding.
- If there was race/ethnicity coding in both datasets, we used that where the coding agreed (about 85% of the time).
- If the coding disagreed, we used Open Data.
- Open Data recognized that race and ethnicity are not the same, whereas TraCS did not. We chose to code the few "Black/Hispanic" cases from Open Data as Black.
- This left us with five codes in the combined dataset: Black, White, Hispanic, Other, and Not Coded.

---

[2]   https://data.buffalony.gov/Public-Safety/Uniform-Traffic-Tickets/s37s-kh9q

[3]   Using date, time, and location data in the two datasets, we have been able to cross-reference substantially all of the tickets in each dataset to the corresponding entry in the other dataset.

- 3 -

6. For purposes of tabulating instances of multiple ticketing, we needed to define "incidents," so that one could count the number of tickets issued at one time. We defined an "incident" as encompassing any tickets issued to the same driver within one hour of one another. We used the one-hour time frame because spot checking indicated that there were very, very few (if any) plausible cases where the same driver got ticketed twice in an hour at different locations.

7. With these definitions, we used the Excel Pivot Table feature to create cross-tabs of number of tickets meeting certain characteristics by ticketing officer by race/ethnicity. The exhibits present the tabulations for the officers whose depositions we are requesting.

8. Exhibit 1 presents the total number of tickets issued, by race/ethnicity of the driver, for the relevant officers.

9. Exhibit 2 presents the total number of tinted window tickets issued, by race/ethnicity of the driver, for the relevant officers.

10. Exhibit 3 presents the average number of tickets per incident, by race/ethnicity of the driver, for the relevant officers.

This 9th day of December, 2022, I declare under penalty of perjury that the foregoing is true and correct.

*/s/ Edward P. Krugman*