UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACK LOVE RESISTS IN THE RUST, *et al.*, individually and on behalf of a class of all others similarly situated,<br><br>               Plaintiffs,<br><br>   v.<br><br>CITY OF BUFFALO, N.Y., *et al.*,<br><br>               Defendants. | No. 1:18-cv-00719-CCR |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO TAKE ADDITIONAL DEPOSITIONS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................1

I.    The 11 Requested Depositions Do Not Create a Disproportional Burden Given the Complexity of Plaintiffs' Claims.................................................................1

II.    The Police Officers Who Ticketed Named Plaintiffs Have Unique Information Regarding their Participation in Those Ticketing Incidents................................3

III.    Two Requested Witnesses Have Unique Knowledge Relevant to Defendants' Impermissible Revenue-Raising Motivation........................................................5

IV.    Testimony from Multiple Police Officers Who Issued Racially Disparate Numbers of Tickets Is Relevant to Establishing Municipal Liability Under *Monell*..................................................................................................................6

CONCLUSION .................................................................................................................8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brunckhorst v. Bischoff*,
 No. 21 CIV. 4362, 2022 WL 6991285 (S.D.N.Y. Oct. 12, 2022) ........................................5

*City of Oklahoma City v. Tuttle*,
 471 U.S. 808 (1985) ..........................................................................................................7

*In re Dana Corp.*,
 574 F.3d 129 (2d Cir. 2009) ..............................................................................................6

*Floyd v. City of New York*,
 No. 08 Civ. 1034 (S.D.N.Y.) .............................................................................................2

*L.W. v. Lackawanna Cnty., Pa.*,
 No. 3:14-CV-01610, 2015 WL 2384229 (M.D. Pa. May 19, 2015) ..................................2

*Martinez v. California*,
 No. CVF-0-7996, 2008 WL 5101359 (E.D. Cal. Dec. 3, 2008) ........................................3

*Monell v. Dep't of Soc. Servs.*,
 436 U.S. 658 (1978) .................................................................................................. *passim*

*Scanlan v. Potter*,
 1:05 CV 291, 2006 WL 1207748 (D. Vt. May 4, 2006) ....................................................6

**PRELIMINARY STATEMENT**

Defendants argue that Plaintiffs' requested depositions would impose a burden that would be "disproportional" to Plaintiffs' case. But Defendants entirely fail to address the complexity of Plaintiffs' multiple constitutional claims against the City of Buffalo (the "City") and the other seven named Defendants. Nor do Defendants dispute the relevance of each of the 11 requested depositions to Plaintiffs' claims. Instead, Defendants make only conclusory assertions that Plaintiffs have had "more than ample opportunity" to conduct the necessary discovery, pointing to unspecified documents and a handful of prior depositions as sufficient to meet the needs of this case. Defendants are incorrect, particularly in light of Plaintiffs' claim of a persistent and widespread policy, custom, or practice of racially-biased traffic enforcement throughout the City and the Buffalo Police Department (the "BPD") under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and its progeny. Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Leave to Take Additional Depositions.

**ARGUMENT**

**I.  The 11 Requested Depositions Do Not Create a Disproportional Burden Given the Complexity of Plaintiffs' Claims.**

Defendants do not dispute that this is a complex case alleging misconduct over more than a decade, involving numerous witnesses with relevant knowledge from multiple levels of City government, and implicating important constitutional issues. Disregarding this context, Defendants argue that Plaintiffs seek an "endless rope" to take "any and all discovery which may have some tangential relevance to their claims," Defs. Opp. Br. (ECF #153) at 8.[1] This argument badly misrepresents Plaintiffs' request, and ignores the fact that this Court *already*

---

[1] Pincites to documents available on the docket refer to ECF pagination.

1

recognized that the complexity of this case would likely require additional depositions. Specifically the Court allotted Plaintiffs 20 depositions "to start" and invited Plaintiffs to return to discuss "how many more" would be necessary. Tr. of Dec. 14, 2020 Status Conference (ECF #76), at 2:13-17. The Court proposed this process to allow Plaintiffs to narrow down their initial request of 42 depositions, identify "key players," and determine the best "path forward" for the remaining discovery. *Id.* at 2:22-23.

Plaintiffs have done precisely as the Court requested. After taking 14 depositions and identifying the remaining 6 already allotted by the Court, Plaintiffs undertook substantial work to narrow their original request to those witnesses with unique information central to their claims, and now request 11 additional depositions. Pls. Dec. 10, 2020 Ltr. (ECF #74). It is illustrative that Plaintiffs now request, in total, fewer than half the number of depositions taken in *Floyd v. City of New York*, No. 08 Civ. 1034 (S.D.N.Y.), a case which raised similar complex discrimination and other constitutional claims against a municipality under *Monell*. *See* Decl. of Philip Irwin (ECF #148-2) at 1.

Defendants' vague and unsupported complaints that they have devoted an "astronomical" amount of time and resources to defending this litigation, Defs. Opp. Br. at 8, likewise ignore the complexity and public importance of this litigation. Defendants' case law support is similarly inapposite, as Defendants cite no factually analogous law for their claims that their burden is disproportionate to the needs of this case. *See id.* at 4, 8 (relying on commercial and contract dispute case law for support in this action alleging constitutional discrimination claims). Defendants' attempts to compare the discovery requirements of complex constitutional litigation to those of commercial or contractual disputes should be rejected in light of more analogous case law support identified by Plaintiffs. *See, e.g., L.W. v.*

*Lackawanna Cnty., Pa.*, No. 3:14-CV-01610, 2015 WL 2384229, at *6 (M.D. Pa. May 19, 2015) (allowing 26 depositions in a case alleging civil rights violations); *Martinez v. California*, No. CVF-0-7996, 2008 WL 5101359, at *3 (E.D. Cal. Dec. 3, 2008) (granting a request for 30 depositions in an action alleging civil rights claims pursuant to 42 U.S.C. § 1983).

Defendants' complaints also disregard the substantial responsibility that Defendants themselves bear for the length and burden of discovery. Throughout this litigation, Defendants have repeatedly delayed and obstructed relevant discovery, including missing deadlines set by the Court. *See, e.g.,* Pls. Second Mot. to Compel Br. (ECF #65-1) at 4 (noting Defendants' failure to comply with "rolling" discovery productions as required by the Court), 5 (describing Defendants' failure to provide IAD files approximately one year past a Court-ordered deadline); Pls. Third Mot. to Compel Br. (ECF #112) at 6 (noting Defendants' failure to comply with the Court's Order regarding production of ECAC ESI). And even when Defendants eventually produce discovery, their productions often have deficiencies and errors that require a seemingly endless cycle of follow-ups by Plaintiffs, more delays by Defendants, and more follow-ups. *See, e.g.,* Pls. Second Mot. to Compel Br. at 9-12 (describing Defendants' deficiencies and delays in responding to requests for IAD files, monthly and daily reports, and officer employment history); Pls. Third Mot. to Compel Br. at 2-5 (describing Defendants' repeated failures to respond to Plaintiffs' discovery requests). In sum, much of the time and burden spent on discovery in this matter has been the result of Defendants' delays and disorganization, not Plaintiffs' appropriate and tailored requests.

**II.     The Police Officers Who Ticketed Named Plaintiffs Have Unique Information Regarding their Participation in Those Ticketing Incidents.**

Defendants do not dispute that Officers Michael Healy, Jared Domaracki, Charles Miller, and Adam Wigdorski, each of whom was involved in issuing tickets to a named Plaintiff, have information relevant to Plaintiffs' claims. They argue instead that this information is duplicative of testimony that *Defendants* are seeking from the named Plaintiffs at depositions *Defendants* requested. Defs. Opp. Br. at 8-9. This argument fails because each of these officers has unique information that the named Plaintiffs they ticketed do not.

In particular, Officers Healy, Domaracki, Miller, and Wigdorski have unique information about why they ticketed the named Plaintiffs and how these events formed part of Defendants' municipal-wide scheme of discriminatory traffic enforcement. Only Officer Healy, for example, can explain why he told Plaintiff Ebony Yeldon during a traffic stop that "she was lucky that he only gave her two tinted windows tickets instead of four." Compl. ¶ 276; *see also id.* ¶¶ 302-307 (describing Officers Domaracki, Wigdorski, and Miller issuing Plaintiff Charles Palmer varying numbers of tinted window tickets at different traffic stops).

The named Plaintiffs, by contrast, could not provide this type of information. As members of the public not privy to the BPD's and to the City's operations, Plaintiffs are wholly excluded from its decision-making and enforcement processes. Only the officers who issued the tickets that form the basis of Plaintiffs' allegations can shed light on their reasoning, decision-making processes, and context for issuing these tickets within the BPD's overarching framework. Discovery of this information is central to Plaintiffs' *Monell* claims, which allege that the Defendants' persistent and widespread policy, custom, or practice caused the officers' discriminatory actions during the named Plaintiffs' ticketing incidents in question.

In short, testimony from the police officers who ticketed the named Plaintiffs is both directly relevant to Plaintiffs' claims and, contrary to Defendants' assertions otherwise, "uniquely within the purview of these officers' knowledge" and "not obtainable from other sources." Defs. Opp. Br. at 6 (citing *Brunckhorst v. Bischoff*, No. 21 CIV. 4362, 2022 WL 6991285, at *2 (S.D.N.Y. Oct. 12, 2022)).

### III. Two Requested Witnesses Have Unique Knowledge Relevant to Defendants' Impermissible Revenue-Raising Motivation.

As with the other requested witnesses, Defendants do not dispute that Donna Estrich, the City's Commissioner of Administration and Finance, and Octavio Villegas, the Buffalo Traffic Violation Agency (the "BTVA") prosecutor, have information relevant to Plaintiffs' claims, particularly as to the revenue-generating motive of Defendants' traffic and parking enforcement practices. Defendants argue only that this information is available from unspecified documents produced to Plaintiffs. Defs. Opp. Br. at 7. Defendants are wrong.

Contrary to Defendants' argument, Commissioner Estrich and Mr. Villegas have unique knowledge that cannot be gleaned from the numbers in a budget or the words in a report. For example, Commissioner Estrich has unique information about how the City's budget is created and used, including how forecasts relating to traffic enforcement revenues were developed and relied on by the City. *See* Danielle Morgera Dep. Tr. (ECF #148-5) at 117:13-118:20 (describing Commissioner Estrich's positive reaction to BTVA revenue projections without any further detail on the reasons for that reaction). Indeed, Kevin Helfer, Executive Director of the BTVA, testified during his deposition that Commissioner Estrich had information regarding how ticket counts and increased City tow drivers factored into the City's budget. *See* Pl. Mot. Br. at 10.

5

Likewise, as the BTVA's sole traffic prosecutor, Mr. Villegas has unique information about the BTVA's policies regarding the prosecution of traffic tickets at the BTVA. According to Danielle Morgera, the BTVA's Administrator, for instance, Mr. Villegas expressed "concern" that the BTVA was failing to properly implement its fee waiver program. Pl. Mot. Br. at 10 (citing Danielle Morgera Dep. Tr. at 262:15-263:3, 264:7-265:10). Plaintiffs should be entitled to explore those concerns, which are not made clear in any document produced by Defendants, as well as any other concerns regarding the financial motivations of BTVA's policies, with Mr. Villegas. Plaintiffs' request for non-cumulative information is especially appropriate in light of the law in this Circuit, where "[n]o one type of discovery is necessarily an adequate substitute for another." *In re Dana Corp.*, 574 F.3d 129, 150 (2d Cir. 2009). In short, both Commissioner Estrich and Mr. Villegas have unique knowledge that Plaintiffs cannot obtain simply by reviewing documents.[2]

## IV. Testimony from Multiple Police Officers Who Issued Racially Disparate Numbers of Tickets Is Relevant to Establishing Municipal Liability Under *Monell*.

Defendants do not dispute that there are massive racial disparities in the numbers of tickets issued by Officers Michael Acquino, Kelvin Sharpe, Richard Hy, Justin Tedesco, and Andrew Whiteford. Nor do Defendants dispute that each of these officers have information relevant to Plaintiffs' claims. Instead, Defendants argue only that these officers' knowledge is available from other sources, particularly from the depositions of the two BPD line officers

---

[2] Defendants' reliance on *Scanlan v. Potter*, where a pro se plaintiff in an employment discrimination action requested depositions above and beyond the presumptive limit, is misplaced. No. 1:05 CV 291, 2006 WL 1207748, at *1 (D. Vt. May 4, 2006). That case was plainly far less complex than this one, and the plaintiff in *Scanlan* provided no evidentiary support for his request. *Id.* at 1. Further, the Court in *Scanlan* makes no mention of the idea that document production acts as a substitute for deposition testimony, despite what Defendants incorrectly imply. *See* Defs. Opp. Br. at 7; *Scanlan*, 2006 WL 1207748 at *1.

6

and a handful of supervising BPD officers that Plaintiffs have taken or noticed. Defs. Opp. Br. at 6-7.

Defendants' argument completely ignores the nature of Plaintiffs' claims and the requirements of *Monell*. Specifically, Plaintiffs allege not only improper actions by one or two individual officers but an improper persistent and widespread policy, custom, or practice that has caused racially-biased traffic enforcement throughout the City. Compl. ¶¶ 1-10; Pl. Mot. Br. at 2. Establishing a widespread practice, for example, requires information beyond the practices of any single officer. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

Moreover, Defendants' racially biased traffic enforcement has taken a number of different forms over a period of nearly a decade. For example, some Plaintiffs have been detained and ticketed at checkpoints targeting Buffalo's majority minority East Side, Compl. ¶¶ 58-59, 64, while others have been subject to repeated parking tickets on Buffalo Municipal Housing Authority properties, Compl. ¶¶ 73-78, Pl. Mot. Br. at 8, and still others have been issued multiple tickets for tinted windows or seatbelt violations, *see, e.g.*, Compl. ¶¶ 117, 297-301, Pl. Mot. Br. at 8. Each of these racially-biased schemes is relevant to Plaintiffs' claims, and despite Defendants' claims to the contrary, no single officer has participated in each and every one of these illegal practices. *See* Pl. Mot. Br. at 7-9.

Defendants point to supervisory officers as an alternative source of *Monell* information, Defs. Opp. Br. at 4, and Plaintiffs agree that the depositions of supervisors including Lance Russo, Patrick Roberts, Philip Serafini, and Kevin Brinkworth are all relevant

7

to Plaintiffs' claims of Defendants' widespread and persistent custom, policy, or practice of discriminatory traffic enforcement. But the perspective of these supervising officers is plainly different than that of line officers on the ground. Officers on the ground have first-hand knowledge about how the BPD's ticketing practices and procedures are implemented on the street. *See* Compl. ¶¶ 69-70 (describing Officer Acquino's testimony regarding his participation in carrying out Strike Force checkpoints). These police officers, not supervisors, work the City's streets issuing traffic tickets and citations, carrying out the BPD's and the City's enforcement priorities. *See, e.g.,* Compl. ¶¶ 55, 58, 68. As a result of this experience, officers can speak to their understanding of the City's policies, practices, and customs in ways their supervisors cannot.

Finally, Defendants' contention that Plaintiffs have made no "particularized showing" as to why each officer's testimony is necessary, Defs. Opp. Br. at 5, is untrue. Plaintiffs' memorandum of law includes specific, individualized data and information about each officer for whom a deposition is requested, Pls. Mot. Br. at 11-13, based on data gathered from Defendants' own documents. *See* Decl. of Edward Krugman (ECF #148-8) at 1-3.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant in its entirety Plaintiffs' Motion for Leave to Take Additional Depositions.

Dated: January 24, 2023

Respectfully Submitted,

*/s/ Jordan S. Joachim*
Jordan S. Joachim
COVINGTON & BURLING, LLP
620 Eighth Ave., Suite 4029
New York, NY 10018
Tel: 212-841-1000
Fax: 212-841-1010
jjoachim@cov.com

A. Chinyere Ezie
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel/Fax: 212-614-6464
cezie@ccrjustice.org
bazmy@ccrjustice.org

Keisha Williams
WESTERN NEW YORK LAW CENTER
37 Franklin Street, Suite 210
Buffalo, NY 14202
Tel: 716-828-8415
kwilliams@wnylc.com

Claudia Wilner
Anjana Malhotra
Edward Krugman
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004
Tel: 212-633-6967
wilner@nclej.org
malhotra@nclej.org
krugman@nclej.org

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 24, 2023, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Case Filing Rules & Instructions upon all counsel registered through the ECF System.

                                                     */s/ Jordan S. Joachim*