## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NEW YORK

BLACK LOVE RESISTS IN THE RUST, *et al.*, individually and on behalf of a class of all others similarly situated,

                  Plaintiffs,

     v.

CITY OF BUFFALO, N.Y., *et al.*,

                  Defendants.

No. 1:18-cv-00719-CCR

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PERMIT SUFFICIENT TIME TO DEPOSE NAMED DEFENDANT BYRON LOCKWOOD

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ........................................................................................................2

I.     The Complaint. ..............................................................................................2

II.    Mr. Lockwood's Role as Commissioner and Deputy Commissioner for
       Operations of the BPD. ................................................................................3

III.   Plaintiffs' Request for Additional Deposition Time. ..........................................5

ARGUMENT ............................................................................................................6

I.     Mr. Lockwood is a Central Witness in this Case with Important, Non-
       Cumulative Knowledge Relevant to Plaintiffs' Claims. ....................................6

       A.     Mr. Lockwood Played a Central Role in Defendants' Discriminatory
              Conduct as BPD Police Commissioner. ...................................................7

       B.     Mr. Lockwood Played a Central Role in Defendants' Discriminatory
              Conduct as Deputy Commissioner for Operations. ................................9

II.    Plaintiffs' Request for an Additional 7 Hours of Deposition Time is
       Appropriate to the Circumstances of This Case. ...............................................10

CONCLUSION .......................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Colo. Dept. of Corrections*,
   848 F. Supp. 2d 1291 (D. Colo. 2012) ...........................................................7, 8

*Arista Recs. LLC v. Lime Grp. LLC*,
   No. 06 CIV. 5936, 2008 WL 1752254 (S.D.N.Y. Apr. 16, 2008) ..................6, 11

*Greater New York Taxi Ass'n v. City of New York*,
   No. 13CIV3089, 2017 WL 4012051 (S.D.N.Y. Sept. 11, 2017) ..........................9

*Kleppinger v. Tex. Dept. of Transp.*,
   283 F.R.D. 330 (S.D. Tex. 2012) ......................................................................11

*Lucente v. City of Suffolk*,
   980 F.3d 284 (2d Cir. 2020) .......................................................................1, 7, 8

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ............................................................................................1

*Pierre v. City of New York*,
   No. 120CV05116, 2022 WL 2384150 (S.D.N.Y. July 1, 2022) .......................6, 10, 11, 12

**Statutes**

Civil Rights Act of 1964 Title VI...................................................................2, 10

**Other Authorities**

Fourth Amendment.............................................................................................2

Fourteenth Amendment .....................................................................................2

Fed. R. Civ. P. 30 ..........................................................................................1, 6

Fed. R. Civ. P. 26 ..........................................................................................6, 7

## PRELIMINARY STATEMENT

Plaintiffs bring this motion under Federal Rule 30(d)(1) to request fourteen hours of deposition time for Named Defendant Byron Lockwood, who served in the Buffalo Police Department ("BPD") as Deputy Police Commissioner for Operations ("Deputy Commissioner for Operations" or "DPC-Operations") from at least 2012-2017 and as Commissioner of Police ("Commissioner") from 2018-2022.  Plaintiffs require additional time to examine Mr. Lockwood because he was a high-level official within the BPD responsible for setting and enforcing policy for an unusually long time period.  He therefore has an unusually large amount of information that is highly relevant to Plaintiffs' claims and cannot be gathered from other witnesses.

Plaintiffs bring multiple constitutional claims under the Fourth and Fourteenth Amendments which center on the BPD's fundamentally unfair and racially-discriminatory traffic enforcement throughout the City of Buffalo (the "City").  Plaintiffs' allegations span nearly a decade and continue today.  From the start of the relevant period through February 2022, Mr. Lockwood was a key figure within the BPD leadership.  As the sole individual who occupied these key leadership positions within the BPD during the relevant years, Mr. Lockwood can provide information that cannot be gathered in any less burdensome manner. In addition to establishing Mr. Lockwood's personal liability, his testimony is directly relevant to whether Plaintiffs satisfy their burden under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and its progeny, which require that Plaintiffs prove a "persistent and widespread" "policy, custom" or "practice" that caused them harm.  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297-98 (2d Cir. 2020).

Accordingly, Plaintiffs' request for an additional seven hours to depose Mr. Lockwood should be granted.

1

# BACKGROUND

I.     **The Complaint.**

Plaintiffs allege, individually and on behalf of a putative class of similarly situated residents, that the City, for almost a decade, has engaged in widespread punitive traffic enforcement targeting the City's Black and Latino residents primarily in Buffalo's highly segregated East Side.  Compl. ¶¶ 1-10.  The Complaint details how Defendants, through the BPD, have employed a variety of ever-shifting traffic enforcement schemes to balance the City's budget on the backs of people of color, including vehicle checkpoints, multiple ticketing schemes, improper parking enforcement, and illegal vehicle tows targeting Black and Latino residents.  *Id.* ¶¶ 1-10, 119-170.

These aggressive and targeted enforcement schemes have violated Plaintiffs' constitutional rights.  Plaintiffs have asserted four claims: (1) violation of the Fourth Amendment (subjecting Plaintiffs and class members to unreasonable searches and seizures at checkpoints operated for the purpose of crime control rather than traffic safety); (2) violation of the Equal Protection Clause of the Fourteenth Amendment (intentionally subjecting Plaintiffs and class members to punitive traffic enforcement practices that disproportionately targeted Black and Latino motorists); (3) violation of the Due Process Clause of the Fourteenth Amendment (subjecting Plaintiffs and class members to punitive traffic enforcement in order to generate overtime compensation and revenue for the City budget); and (4) violation of Title VI of the Civil Rights Act of 1964 (subjecting Plaintiffs and class members to punitive traffic enforcement in a manner motivated by race and ethnicity while receiving federal financial assistance for law enforcement activities).  *Id.* ¶¶ 398-454.

There are 10 Named Plaintiffs in the Amended Complaint, and they describe over 30 incidents.  As putative class representatives, Plaintiffs allege not only their own harms, but

2

harms against all Black and Latino residents who have been subjected to Defendants'

unconstitutional practices for nearly a decade.  *See id.* ¶¶ 400-417, 427-431.

II.    **Mr. Lockwood's Role as Commissioner and Deputy Commissioner for
       Operations of the BPD.**

Mr. Lockwood was the Commissioner of the BPD from 2018 through February 2022.

The Commissioner of Police leads the BPD.  Declaration of Claudia Wilner ("Wilner Decl.")

Exhibit A, Excerpted Sections of the Buffalo Police Department Manual of Procedures ("BPD

MoP"), at 5.  The Commissioner, who is appointed by the Mayor of Buffalo, is responsible for

"governing and disciplining the Department and the members of the Police Force."  *Id.*  The

Commissioner "may…make and enforce orders, rules, [and] regulations" which "have the

same force and effect" as those enacted in the City Charter.  *Id.*  As the police commissioner

is the "head of the Police Department," he has "ultimate authority and responsibility for all

facets of Department operations," including training, supervision, and disciplinary practices of

the BPD.  Wilner Decl. Ex. A, BPD MoP at 43; Wilner Decl. Exhibit B, Excerpted Sections of

the Deposition Testimony of Daniel Derenda ("Derenda Dep Tr."), at 301:3-9.  The

Commissioner has the authority to issue General Orders which outline policy for the BPD.

Wilner Decl. Ex. A, BPD MoP at 47.  These General Orders may be used to "amend,

supersede, or cancel" any other BPD regulation or rule and are considered "permanent

Department Policy."  *Id.*  While Commissioner, Mr. Lockwood exercise this authority by

disbanding the BPD's Strike Force Unit and its Housing Unit.  Wilner Decl. Ex. B at 102:1-

18.

The BPD's Deputy Police Commissioner(s), the Internal Affairs Division, the

Citizen's Advisory Committee and the Legal Advisor report directly to the BPD

Commissioner.  Wilner Decl. Ex. A, BPD MoP at 47.  The Commissioner maintains direct

authority over the internal affairs of the department because of the "sensitivity and potential impact of investigations" related to the BPD's internal affairs.  Wilner Decl. Ex. A, BPD MoP at 557.  The commanding officer of the Internal Affairs Division "shall" keep the Commissioner informed of the "nature and progress of all ongoing investigations." *Id.*  The Commissioner "shall" determine the appropriate disposition of each internal affairs incident "based on the investigation" of the incident and the "recommendation of IAD." *Id.*  The Commissioner shall also "review" whether citizen complaints are handled by the Internal Affairs division or by the employee's command.  Wilner Decl. Ex. A, BPD MoP at 561.  The Commissioner has "sole discretion" to determine whether Departmental charges may be preferred against an accused employee as a result of a disciplinary investigation.  Wilner Decl. Ex. A, BPD MoP at 565.  In the event charges are not preferred, the Commissioner "shall direct appropriate action" be taken to correct the employee's conduct and minimize the likelihood of recurrence. *Id.*

The BPD functions with a First Deputy Police Commissioner for Operations, who is responsible for BPD operations, and a Deputy Police Commissioner of Administration and Finance, who is responsible for BPD administrative functions.  Wilner Decl. Ex. A, BPD MoP at 43.  Mr. Lockwood served as the BPD's Deputy Police Commissioner for Operations from 2012 through 2018.  A Deputy Commissioner has the power to "act generally for and in place of the Commissioner."  Wilner Decl. Ex. A, BPD MoP at 5.  A Deputy Commissioner may also have "other and additional duties" that the Commissioner may assign at their discretion. *Id.*

The BPD's Deputy Commissioner for Operations was responsible for the BPD's Strike Force, whose mission is to enforce the Mayor's Zero Tolerance Policy,  and the BPD's

Housing Unit, which was tasked with policing and security issues in the BMHA housing complexes within the City.  Wilner Decl. Ex. A, BPD MoP at 45.  While Deputy Commissioner for Operations, Mr. Lockwood was responsible for the BPD's CompStat meetings, at which BPD leadership communicated enforcement priorities to BPD District Chiefs, including both the Strike Force and Housing Unit Chiefs.  Wilner Decl. Ex. B at 29:9-30:19.  While Mr. Lockwood was Deputy Commissioner for Operations, the Commissioner did not attend these CompStat meetings.  *Id.*  During this same period, BPD leadership understood that Mr. Lockwood used information from CompStat meetings to determine Strike Force and Housing Unit patrol and checkpoint locations.  *Id.* at 30:1-19, 97.  As DPC-Operations, Mr. Lockwood was also responsible for responding to criticism from the public and the City's Common Council that the BPD's checkpoints were racially discriminatory, including conducting investigation into those allegations.  *Id.* at 345:3-17.  Finally, Mr. Lockwood not only attended complaint file review meetings at which Commissioner Derenda determined whether to impose discipline on officers subject to racial bias and/or traffic enforcement-related complaints, but was sometimes tasked with conducting informal conferences with the subject officers. *Id*. at 369-371:1-15; 460:18 -461:1. Only Mr. Lockwood can testify as to the subject matter and procedures of those conferences.

III.    **Plaintiffs' Request for Additional Deposition Time.**

On April 26, 2023 Plaintiffs met and conferred with Defendants regarding several outstanding discovery requests.  Wilner Decl. ¶ 3.  Plaintiffs communicated to Defendants that due to the complexity of Plaintiffs' claims, and the number of topics about which Mr. Lockwood has relevant knowledge, they would require more than the allotted seven hours to conduct Mr. Lockwood's deposition.  *Id.*  Plaintiffs noted that Mr. Lockwood, a Named

Defendant, is a central witness in this case who held senior leadership positions during the majority of the relevant period. *Id.* Defendants did not agree to this request. *Id.*

On April 27, 2023 Plaintiffs again reached out in writing, this time offering to agree to restrict multiple other depositions to less than the default seven hours if Defendants would agree to making Mr. Lockwood available for 14 hours of deposition time. Wilner Decl. Exhibit C, Plaintiffs' April 27, 2023 Email. Defendants stated via letter on May 4, 2023 that they would not consent to making Mr. Lockwood available for 14 hours of deposition time. Wilner Decl. Exhibit D, Defendants' May 4, 2023 Letter.

## ARGUMENT

Under Rule 30(d)(1), a deposition is limited to one day of 7 hours unless otherwise stipulated or ordered. Fed. R. Civ. P. 30(d)(1). But the Court "must allow additional time" where that time is "needed to fairly examine the deponent" so long as the allowance of additional time is consistent with Rule 26(b)(1) and (2). Fed. R. Civ. P. 30(d)(1); *Pierre v. City of N.Y*, 1:20-cv-05116, 2022 WL 2384150, at *1 (S.D.N.Y. July 1, 2022). The allowance of additional time is consistent with Rule 26(b)(1) and (2) if the information sought is (a) relevant, (b) neither "unreasonably cumulative or duplicative," (c) not previously available to the party, and (d) likely more beneficial than burdensome. Fed. R. Civ. P. 26(b)(1-2). The Court has "broad discretion" to set the length of a deposition "appropriate to the circumstances of the case." *Arista Recs. LLC v. Lime Grp. LLC*, No. 06 Civ. 5936, 2008 WL 1752254, at *1 (S.D.N.Y. Apr. 16, 2008).

I.   **Mr. Lockwood is a Central Witness in this Case with Important, Non-Cumulative Knowledge Relevant to Plaintiffs' Claims.**

Plaintiffs request additional time to depose Mr. Lockwood because he is a key witness in this case. As a Named Defendant who spent more than 30 years in the BPD, including

6

more than a decade within the BPD's top leadership ranks as both Deputy Commissioner for

Operations and Commissioner, Mr. Lockwood can provide critical information regarding both

the creation of and the implementation of the policies and practices through which Defendants

carried out a program of racially-biased traffic enforcement.

>    **A.    Mr. Lockwood Played a Central Role in Defendants' Discriminatory
>           Conduct as BPD Police Commissioner.**

Mr. Lockwood's role as Commissioner and head of the BPD for four years during the

relevant period places him at the heart of Defendants' racially-biased traffic policies which

form the heart of Plaintiffs' claims.

Plaintiffs allege not only their individual harms, but an "official policy or custom" of

racially-biased traffic enforcement. *Lucente,* 980 F.3d at 297. Testimony from the BPD's

Commissioner for four years during the relevant period is therefore highly relevant to

Plaintiffs' claims. As the individual responsible for issuing General Orders which formed

"Department Policy," Mr. Lockwood's testimony will provide Plaintiffs with key information

about the BPD's policing priorities, resource allocation, and decision-making processes.

Wilner Decl. Ex. A, BPD MoP at 47. That information is neither "duplicative," given Mr.

Lockwood's status as the sole Commissioner during the years from 2018-2022, nor currently

available to Plaintiffs. Fed. R. Civ. P. 26(b)(1-2). Mr. Lockwood maintained "ultimate

authority and responsibility" for BPD "operations;" operations which included vehicle

checkpoints, multiple ticketing schemes, improper parking enforcement, and illegal vehicle

tows targeting Black and Latino residents. Wilner Decl. Ex. A, BPD MoP at 43; *see also*

Compl. ¶¶ 1-10, 119-170.

Mr. Lockwood exercised that authority during the relevant period in ways that are

directly related to Plaintiffs' claims. Most notably, Mr. Lockwood disbanded the BPD's

Strike Force Unit and its Housing Unit, two units which were central to carrying out the

BPD's racially-discriminatory checkpoints concentrated on Buffalo's East Side.  Wilner Decl.

Ex. B at 102:1-18; Compl. ¶¶ 1-10.  As the senior policymaker within the BPD during the

time these units were disbanded, Mr. Lockwood is in the "best position" to provide Plaintiffs

with the highly relevant information surrounding these decisions.  *Anderson v. Colo. Dep't. of

Corr.*, 848 F. Supp. 2d 1291, 1301 (D. Colo. 2012) (allowing additional deposition time where

witness was in "best position" to provide information "particularly relevant" to plaintiff's

claims).

      Mr. Lockwood also spent his years as Commissioner as the BPD senior leader with

"ultimate authority" for "governing and disciplining" the members of the BPD.  Wilner Decl.

Ex. A, BPD MoP at 43; Wilner Decl. Ex. A, BPD MoP at 5.  That authority included a

responsibility for monitoring and ensuring the effectiveness of training, supervision, and

disciplinary practices within the BPD.  Wilner Decl. Ex. B at 301:3-9.  The Internal Affairs

Division reported directly to Mr. Lockwood, and he maintained direct authority over internal

affairs investigations due to their "sensitivity and potential impact."  Wilner Decl. Ex. A, BPD

MoP at 557.  Whether Defendants had an effective disciplinary program which could

effectively respond to allegations of racial bias and correct discriminatory behavior is

information that is central to Plaintiffs' claims of municipal liability; and it is also information

that is not otherwise available to Plaintiffs, given Mr. Lockwood's role in "review[ing]"

complaint investigations and "direct[ing] appropriate action" to remedy employee

misconduct.  Wilner Decl. Ex. A, BPD MoP at 565.

      Mr. Lockwood's efforts, or lack thereof, to discipline and train BPD members on

policing efforts such as checkpoints and traffic enforcement are further linked to the harms

suffered by Plaintiffs in the City's majority-minority neighborhoods.  *See, e.g.*, Compl. ¶¶ 25,

198-200 (describing Mr. Lockwood's failure to provide any training or guidance on the

operation of checkpoints while directing officers to "aggressively enforce traffic laws").  That

information is "particularly relevant" to Plaintiffs claims of municipal liability, as Mr.

Lockwood's failure to train the BPD on racially-discriminatory policing practices implicates

not only his own liability, but also the City's liability for its resulting "persistent" "custom" or

"practice" of racial discrimination.  *Anderson*, 848 F. Supp. 2d at 1301; *Lucente,* 980 F.3d at

297-98.

### B.    Mr. Lockwood Played a Central Role in Defendants' Discriminatory Conduct as Deputy Commissioner for Operations.

As Deputy Commissioner for Operations from 2012 to 2018, Mr. Lockwood was

empowered to carry out many of the same leadership responsibilities "generally for and in

place of" the Commissioner.  Wilner Decl. Ex. A, BPD MoP at 5.  As a member of top BPD

leadership for over a decade during the relevant period, his time as DPC-Operations evidences

his status as a "central figure" in setting and implementing the practices and policies of the

BPD which form the basis of Plaintiffs' constitutional claims and allegations of municipal

liability.  *Greater N.Y. Taxi Ass'n v. City of N.Y.*, 13 Civ. 3089, 2017 WL 4012051, at *8

(S.D.N.Y. Sept. 11, 2017) (allowing an additional deposition time beyond the presumptive

seven-hour limit for a witness who was a "central figure" in the action).

Mr. Lockwood was also directly responsible for the BPD's Strike Force and Housing

Units, Wilner Decl. Ex. A, BPD MoP at 45, throughout the majority of the relevant time

period.  *See, e.g.,* Compl. ¶¶ 3-5 (describing the Strike Force's vehicle checkpoint program

and alleging that the program was part of a general crime control strategy that

overwhelmingly affected Black and Latino neighborhoods), 73-76 (describing the Housing

Unit's participation in Strike Force checkpoints targeting Buffalo's East Side), 93-96 (alleging that the Housing Unit spent the majority of its time policing at City housing properties whose populations were 93% African American), .  Not only did Mr. Lockwood directly supervise these units, he also communicated enforcement priorities to both the Housing Unit and the Strike Force unit during CompStat meetings at which the Commissioner was not present. Wilner Decl. Ex. B at 29:9-30:19.  Mr. Lockwood's testimony about his policing priorities and his directives issued during these meetings is neither "duplicative" nor can it be gathered by document review or other testimony.  Fed. R. Civ. P. 26(b)(1-2); *see* Compl. ¶¶ 196-201 (describing Mr. Lockwood's failure to issue formal written guidance as to how to issue tickets in a non-discriminatory manner).  Mr. Lockwood can provide testimony about not only how he directed and supervised the BPD's racially-biased traffic enforcement practices through these meetings, but also *why* he directed his subordinates to act in a discriminatory manner.

II.     **Plaintiffs' Request for an Additional 7 Hours of Deposition Time is Appropriate to the Circumstances of This Case.**

In light of Plaintiffs' multiple complex constitutional claims alleging a citywide practice of racially-biased traffic enforcement, *see* Compl. ¶¶ 400-417, 427-431, an additional seven hours of deposition time with a Named Defendant and "central figure" in this action is not only appropriate but essential to allow Plaintiffs to "fairly examine" Mr. Lockwood. Pierre, 2022 WL 2384150, at *1 (noting that the Court "must" allow additional time if it is necessary to facilitate a fair examination).  Plaintiffs' allegations are particularly important as they implicate not only their own harms but also the harms of all Black and Latino residents who have been subjected to Defendants' unconstitutional practices for nearly a decade.  *See* Compl. ¶¶ 400-417, 427-431.

Plaintiffs' claims here are far from straightforward.  Plaintiffs assert four claims, including violations of the Fourth and Fourteenth Amendments as well as Title VI of the Civil Rights Act of 1964.  *See* Compl. ¶¶ 435-39 (subjecting Plaintiffs and class members to unreasonable searches and seizures at checkpoints operated for the purpose of crime control rather than traffic safety), 440-44 (intentionally subjecting Plaintiffs and class members to punitive traffic enforcement practices that disproportionately targeted Black and Latino motorists), 445-50 (subjecting Plaintiffs and class members to punitive traffic enforcement in order to generate overtime compensation and revenue for the City budget), 451-54 (subjecting Plaintiffs and class members to punitive traffic enforcement in a manner motivated by race and ethnicity while receiving federal financial assistance for law enforcement activities).

Plaintiffs' multiple constitutional claims involving complex government processes spanning numerous municipal department and a period of more than a decade are exactly the circumstances where the Court should exercise its "broad discretion" to allow more than the presumptive seven hours of deposition time.  *Arista Recs. LLC*, 2008 WL 1752254, at *1; *see Pierre*, 2022 WL 2384150, at *2-3 (granting a motion to extend deposition time in a case implicating multiple Defendants, each with their own respective joint-employment relationships, policies, and procedures over a ten-year period); *Kleppinger v. Tex. Dep't. of Transp.*, 283 F.R.D. 330, 334-36 (S.D. Tex. 2012) (permitting additional five hours of deposition time where relevant period of defendant's alleged conduct was more than four years).

Mr. Lockwood's roles as both Commissioner and as Deputy Commissioner for Operations place him in a particularly important position in this complex case, in which he is one of eight Named Defendants.  In many ways, he is in the "best position" to discuss a

multitude of issues that are central to Plaintiffs constitutional claims.  As the highest ranking member of the BPD, Mr. Lockwood was directly involved in the collaboration and dialogue between BPD and City officials as Defendants carried out their racially biased traffic enforcement policies.  *See* Compl. ¶¶ 140-49 (noting that around the time the BTVA began directing traffic violations revenue to the City's General Fund, the BPD began issuing more traffic violations than ever before), 196-97 (describing Mr. Lockwood's directive to issue as many traffic tickets as possible while the City simultaneously relies on revenue from traffic enforcement to balance its budget).  Given his central participation in the implementation of Defendants racially-biased policies at by multiple municipal entities, additional deposition time is needed to "fairly examine" Mr. Lockwood in this case.  *Pierre*, 2022 WL 2384150, at *1.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that their request for an additional 7 hours to depose Named Defendant Byron Lockwood be granted.

Dated: June 1, 2023

Respectfully Submitted,


<u>/s/ *Claudia Wilner*</u>
Claudia Wilner
Anjana Malhotra
Edward Krugman
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004
Tel: 212-633-6967
wilner@nclej.org
malhotra@nclej.org
krugman@nclej.org

A. Chinyere Ezie
Baher Azmy
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel/Fax: 212-614-6464
cezie@ccrjustice.org
bazmy@ccrjustice.org


Keisha Williams
WESTERN NEW YORK LAW CENTER
37 Franklin Street, Suite 210
Buffalo, NY 14202
Tel: 716-828-8415
kwilliams@wnylc.com

Jordan Scott Joachim
Christine Nelson
Andrew Timmick
COVINGTON & BURLING, LLP
620 Eighth Ave., Suite 4029
New York, NY 10018
Tel: 212-841-1000
Fax: 212-841-1010
jjoachim@cov.com
cnelson@cov.com
atimmick@cov.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2023, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Case Filing Rules & Instructions upon all counsel registered through the ECF System.

*/s/ Claudia Wilner*