**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NEW YORK**

BLACK LOVE RESISTS IN THE RUST, *et al.*, individually and on behalf of a class of all others similarly situated,

                Plaintiffs,

    v.

CITY OF BUFFALO, N.Y., *et al.*,

                Defendants.

No. 1:18-cv-00719-CCR

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO TAKE THE DEPOSITION OF THE BUFFALO POLICE BENEVOLENT ASSOCIATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

ARGUMENT .................................................................................................................................. 5

I.  THE PBA HAS IMPORTANT, NON-CUMULATIVE, RELEVANT INFORMATION AND ITS DEPOSITION IS PROPORTIONAL TO THE NEEDS OF THIS CASE. ............................................................................................... 5

CONCLUSION ............................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Farley v. U.S.*,
  No. 11-CV-198S, 2015 WL 3952295 (W.D.N.Y. June 29, 2015) ..................................................... 7

*Lent v. Signature Truck Sys., Inc.*,
  No. 06CV569S, 2010 WL 1707998 (W.D.N.Y. Apr. 26, 2010) ................................................... 6, 7

*Matusick v. Erie Cnty. Water Auth.*,
  No. 07-CV-489A, 2009 WL 129439 (W.D.N.Y. Jan. 16, 2009) ...................................................... 7

*McNeil v. City of Buffalo*,
  No. 20-CV-0998V(Sr), 2023 WL 2574954 (W.D.N.Y. Feb. 24, 2023) ........................................... 6

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978) ........................................................................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................................ 6

Fed. R. Civ. P. 26(b)(2)(C) .................................................................................................................. 6

Plaintiffs respectfully submit this memorandum in support of their motion for leave to take a single additional deposition of the Buffalo Police Benevolent Association.

## PRELIMINARY STATEMENT

Plaintiffs bring this motion to take a single additional deposition of the Buffalo Police Benevolent Association ("PBA"), the third-party union that represents members of the Buffalo Police Department and participates in collective bargaining with the City on their behalf, to obtain information to respond to factual arguments and positions taken by Defendants recently during discovery. Defendants have suddenly begun pointing the finger at the PBA in an attempt to shift blame from themselves for their failure to train, supervise, and discipline Buffalo Police officers. Specifically, Defendants Mayor Byron Brown in his November 2023 deposition and Police Commissioner Joseph Gramaglia in his September 2023 deposition have testified that their hands are tied by the PBA and by the collective bargaining agreement between the City of Buffalo and the PBA, and that they sought the ability to train, supervise, and discipline officers from the PBA but were refused. Yet, the PBA President has made public statements to the media denying that anything of the sort ever occurred—severely calling into question this purported defense.

In light of Defendants' recently-disclosed intention to shift blame to the PBA at trial, Plaintiffs seek to obtain information from the proverbial "horse's mouth" by taking a single additional deposition of the PBA itself, the only independent source with knowledge of the facts surrounding negotiations between Defendants and the PBA. Given the impending fact discovery deadline of January 4, 2024, Plaintiffs seek expedited consideration of this motion. Plaintiffs also seek leave to take the PBA deposition after the discovery deadline.

1

## BACKGROUND

Plaintiffs allege, individually and on behalf of a putative class of similarly situated residents, that the City, for almost a decade, has engaged in widespread punitive traffic enforcement targeting the City's Black and Latino residents primarily in Buffalo's highly segregated East Side. Am. Compl. (ECF No. 63), ¶¶ 1-10. The City, through the BPD, has employed a variety of ever-shifting traffic enforcement schemes to single out Black motorists for punitive traffic enforcement and to balance the City's budget on the backs of people of color, including vehicle checkpoints, multiple ticketing schemes, improper parking enforcement, and illegal vehicle tows targeting Black and Latino residents. *Id.* ¶¶ 1-10, 119-170.

These aggressive and targeted enforcement schemes have violated Plaintiffs' constitutional rights. Plaintiffs have asserted four claims: (1) violation of the Fourth Amendment (subjecting Plaintiffs and class members to unreasonable searches and seizures at checkpoints operated for the purpose of crime control rather than traffic safety); (2) violation of the Equal Protection Clause of the Fourteenth Amendment (intentionally subjecting Plaintiffs and class members to punitive traffic enforcement practices that disproportionately targeted Black and Latino motorists); (3) violation of the Due Process Clause of the Fourteenth Amendment (subjecting Plaintiffs and class members to punitive traffic enforcement in order to generate overtime compensation and revenue for the City budget); and (4) violation of Title VI of the Civil Rights Act of 1964 (subjecting Plaintiffs and class members to punitive traffic enforcement in a manner motivated by race and ethnicity while receiving federal financial assistance for law enforcement activities). *Id.* ¶¶ 398-454.

There are ten Named Plaintiffs in the Amended Complaint, and they describe over thirty incidents of unconstitutional stops and targeting. As putative class representatives,

Plaintiffs allege not only their own harms, but harms against all Black and Latino residents who have been subjected to Defendants' unconstitutional practices for nearly a decade. *See id.* ¶¶ 400-417, 427-431.

At a status conference on December 14, 2022, the Court granted Plaintiffs leave to take 20 depositions "to start," and invited Plaintiffs to return later to discuss "how many more" would be necessary. Tr. of Dec. 14, 2020 Status Conf. (ECF No. 76), at 2:13-17. After conducting an initial 14 depositions and noticing an additional six, Plaintiffs sought consent from Defendants to take an additional 12 depositions for a total of 32. Defendants declined to consent to all but one of the additional depositions, and Plaintiffs made a motion for leave to conduct the other 11 depositions. *See* ECF No. 148. The motion sought leave to take depositions of four Buffalo Police officers who were personally involved in incidents alleged in the Amended Complaint; the City's traffic ticket adjudication prosecutor; the City's former Commissioner of Administration and Finance; and Buffalo five police officers identified through analysis of data provided by Defendants as having issued traffic tickets in a racially disparate manner. *See* ECF No. 148-1, at 7-11.

By text order entered April 10, 2023, the Court authorized Plaintiffs to select three of the five requested depositions of officers who issued tickets in a racially disparate manner, and all of the other requested depositions. ECF No. 160. The Court further stated that: "It is unlikely that the court will authorize additional depositions absent compelling circumstances in light of the depositions authorized to date."

Since that order, Plaintiffs have continued to take additional depositions, including those authorized in the Court's April 10, 2023 order. This deposition testimony and other

3

investigation and discovery have presented compelling circumstances requiring the deposition of a single additional witness: the PBA.

Specifically, deposing the PBA's representative has become necessary because of Defendants' attempt to assert an 11thhour defense to Plaintiffs' municipal liability claims; one that squarely assigns the PBA blame for all of the BPD's training, discipline, and supervision gaps. During his deposition on September 22, 2023, Buffalo Police Commissioner Joseph Gramaglia testified that the PBA and the City's collective bargaining agreement with the PBA prevent the City from taking various actions to reform police practices in Buffalo, such as conducting performance evaluations of Buffalo police officers or disciplining officers for misconduct.  Commissioner Gramaglia asserted that the City has sought to obtain the ability to do these things during negotiations with the PBA but that the PBA refused.  Gramaglia Dep. 182:15-185:21, Parham Decl. Ex. A.

Likewise, during his deposition on November 6, 2023, Buffalo Mayor Byron Brown testified that the PBA and the collective bargaining process with the PBA have prevented the City from taking actions to reform police practices in Buffalo, in particular limiting the ability of the City to discipline officers for misconduct or to require racial sensitivity training of Buffalo police officers.  Brown Dep. 157:1-159:8, 166:1-21, Parham Decl. Ex. B.

 In investigating the claims made by Mayor Brown and Commissioner Gramaglia that the City sought authority to train, discipline, or evaluate officers during negotiations with the PBA, Plaintiffs learned that Defendant City of Buffalo has entered into a "Triage Agreement" with the PBA that impacts the City's ability to supervise and discipline officers.  Despite more than 5 years of litigation and numerous discovery requests (including those for documents relating to the City's supervision of its officers' traffic-enforcement activities), the "Triage

4

Agreement" had never been produced in discovery. On December 1, 2023, Plaintiffs pointed out this deficiency to Defendants, who produced the Triage Agreement the same day. Plaintiffs immediately served document requests and interrogatories upon the City seeking further information about the Triage Agreement and the City's assertions concerning PBA negotiations. On December 5, 2023, Plaintiffs also served a document subpoena upon the PBA. Parham Decl. ¶¶ 8-9.

Plaintiffs have also learned of public statements made by current PBA President John Evans that are directly contrary to those assertions. For example, PBA President Evans told the Investigative Post in 2019 that "the Brown administration had never tried to bargain changes in the way police are disciplined, for example, or to the seniority system that limits the commissioner's managerial rights." Parham Decl. Ex. C.

Given these public statements directly contrary to the testimony of Mayor Brown and Commissioner Gramaglia, Plaintiffs believe that the PBA possesses information essential to the resolution of their municipal liability claims, insofar as it will rebut Defendants' purported defense that any blame for the City's failure to supervise, investigate, discipline, or train officers rests on the PBA and not the City. Plaintiffs accordingly seek to take the single additional deposition of the PBA. Plaintiffs requested on December 1, 2023 that Defendants consent to this single additional deposition, but Defendants refused to do so. Parham Decl. Ex. D.

## ARGUMENT

**I.    THE PBA HAS IMPORTANT, NON-CUMULATIVE, RELEVANT INFORMATION AND ITS DEPOSITION IS PROPORTIONAL TO THE NEEDS OF THIS CASE.**

Under Rule 30(a)(2), a party shall request leave to take "more than 10 depositions" during discovery if the parties have not stipulated to the depositions. Fed. R. Civ. P. 30(a)(2).

5

The Court "must grant" leave to take the additional depositions where the information sought is (1) relevant, (2) not "unreasonably cumulative or duplicative," (3) not previously available to the party, and (4) likely more beneficial than burdensome, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Lent v. Signature Truck Sys., Inc.*, No. 06CV569S, 2010 WL 1707998, at *2 (W.D.N.Y. Apr. 26, 2010); Fed. R. Civ. P. 30(a)(2); Fed. R. Civ. P. 26(b)(2)(C).

Plaintiffs' proposed additional deposition seeks relevant information. Parties may generally "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). The PBA's testimony is clearly relevant because Defendants themselves have pointed to the PBA as an excuse for their failure to train, supervise, and discipline Buffalo police officers, and testified that they sought authority to do so from the PBA but were unable to obtain it despite their efforts. The PBA's testimony is thus critical to evaluating Defendants' defense to Plaintiffs' *Monell* claims. *See McNeil v. City of Buffalo*, No. 20-CV-0998V(Sr), 2023 WL 2574954, at *3 (W.D.N.Y. Feb. 24, 2023), *report and recommendation adopted*, 2023 WL 2573379 (W.D.N.Y. Mar. 20, 2023) ("When a plaintiff pursues liability under a theory of failure to train, supervise, or discipline, plaintiff must also demonstrate that the municipal policymaker acted with deliberate indifference."); *also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

The information Plaintiffs seek from the PBA is also not otherwise available, and so the deposition of the PBA will not be cumulative or duplicative and was not previously available. Defendants have specifically pointed to the PBA as having limited their ability to train, supervise, or discipline Buffalo police officers to prevent racially discriminatory

6

practices and conduct, and Defendants have claimed that they themselves sought the authority to conduct such training, supervision, and discipline from the PBA but were refused. However, the PBA itself has asserted the exact opposite in its public statements. The PBA is the only witness independent of Defendants themselves that can testify to the veracity of Defendants' assertions. No prior deponent could have provided the information, and the necessity to obtain the information from the PBA only became apparent after Defendants made these factual assertions during their recent depositions.

Furthermore, the burden of a single additional third-party deposition, in light of the complexity and importance of the case, is minimal. Indeed, Plaintiffs' request to depose the PBA is particularly appropriate in light of the complexity, breadth, and public importance of the claims at issue here. When parties request depositions beyond the allotted ten, Courts within this Circuit routinely grant leave to take them where the parties might learn previously unavailable information about government processes, *Farley v. U.S.*, No. 11-CV-198S, 2015 WL 3952295, at *4 (W.D.N.Y. June 29, 2015), where the case raises "complex issues," *Lent*, 2010 WL 1707998, at *4, or where the case involves a "large number of defendants," *Matusick v. Erie Cnty. Water Auth.*, No. 07-CV-489A, 2009 WL 129439, at *1 (W.D.N.Y. Jan. 16, 2009).

Here, all three of those factors are present. Plaintiffs' claims involve "complex" government processes, including racially discriminatory traffic enforcement practices resulting in violations of the Fourth and Fourteenth Amendments throughout the City of Buffalo, a municipality of more than 280,000 residents. *Lent*, 2010 WL 1707998, at *4. Defendants' practices and policies have been implemented by a "large number" of Defendants over a period of nearly a decade, and have affected every City resident driver. *See* Am.

Compl. ¶¶ 3-205; *Matusick*, 2009 WL 129439, at *1. Many of these discriminatory practices started over a decade ago in 2012 and continue to this day. *Id.* ¶¶ 35, 412, 444, 454. Further, Plaintiffs allege not only their own individual harms, but also practices and policies that have harmed all similarly situated Black and Latino Buffalo residents. *Id.* ¶¶ 398-454. The PBA itself can shed light on the complex government process of negotiations between the City and PBA, which Defendants themselves have raised in the litigation and asserted as a defense to Plaintiffs' constitutional claims.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to take the deposition of the Buffalo Police Benevolent Association.

Dated: December 11, 2023
       Buffalo, New York

                                              Respectfully Submitted,

| | |
|---|---|
| /s/ *Matthew A. Parham*<br>Matthew A. Parham<br>WESTERN NEW YORK LAW CENTER<br>37 Franklin Street, Suite 210<br>Buffalo, NY 14202<br>Tel: 716-828-8422<br>mparham@wnylc.com<br><br>Claudia Wilner<br>Anjana Malhotra<br>Edward Krugman<br>NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE<br>50 Broadway, Suite 1500<br>New York, NY 10004<br>Tel: 212-633-6967<br>wilner@nclej.org<br>malhotra@nclej.org<br>krugman@nclej.org | A. Chinyere Ezie<br>Baher Azmy<br>CENTER FOR CONSTITUTIONAL RIGHTS<br>666 Broadway, 7th Floor<br>New York, NY 10012<br>Tel/Fax: 212-614-6464<br>cezie@ccrjustice.org<br>bazmy@ccrjustice.org<br><br>Jordan Scott Joachim<br>Christine Nelson<br>COVINGTON & BURLING, LLP<br>620 Eighth Ave., Suite 4029<br>New York, NY 10018<br>Tel: 212-841-1000<br>Fax: 212-841-1010<br>jjoachim@cov.com<br>cnelson@cov.com<br><br>*Counsel for Plaintiffs* |