# Exhibit 23

```
 1      UNITED STATES DISTRICT COURT

 2      FOR THE WESTERN DISTRICT OF NEW YORK

 3      ---------------------------------------------

 4      BLACK LOVE RESISTS IN THE RUST, et al.,
        individually and on behalf of a class of
 5      all others similarly situated,

 6                              Plaintiffs,

 7       -vs-                     1:18-cv-00719-CCR

 8      CITY OF BUFFALO, N.Y., et al.,

 9                              Defendants.
        ---------------------------------------------
10             DEPOSITION OF PATRICK OVERDORF

11           Taken pursuant to Rule 30(b)(6)

12         of the Federal Rules of Civil Procedure

13               APPEARING REMOTELY FROM

14                 BUFFALO, NEW YORK

15

16

17              January 24th, 2024

18              At 11:15 a.m.

19              Pursuant to notice

20

21      REPORTED BY:

22      Rebecca L. DiBello, RPR, CSR(NY)

23
```

PATRICK OVERDORF

```
 1        these were sent to the commands you have
 2        captains in the City of Buffalo -- I think
 3        there's only 20 -- and I never had reason to
 4        doubt necessarily that -- their integrity of
 5        their investigations, but with our resources
 6        and us being dedicated strictly to the
 7        investigation of allegations whether internal
 8        or external against police officers that we
 9        should be more well-equipped to do so and
10        that's part of the philosophy of why I think
11        we should handle as many as possible.
12    Q.  And IAD officers have additional training
13        regarding handling of complaints; is that
14        right?
15    A.  They do have training.  There's no in-house
16        training necessarily as they come in.  Several
17        lieutenants have gone to Dade County and
18        experienced that training.  I went to a
19        training in Monroe County presented I believe
20        by the New York State Department of Criminal
21        Justice Services.  They had an attorney, Eric
22        Daigle, come.
23            That was my investigatory training, very
```

Case 1:18-cv-00719-CCR   Document 204-2   Filed 05/29/24   Page 4 of 7
                                                                        24

PATRICK OVERDORF

1     basic training early on, but internally we
2     don't have a specific training for Internal
3     Affairs investigators.
4          There are trainings that come up.  We
5     had an interrogations training with New York
6     State Police just a couple of weeks ago.  It's
7     those types that we have.
8  Q. So the proposal you mentioned about IAD
9     investigating all external complaints, has
10    Commissioner Gramaglia signed off on that
11    recommendation?
12 A. I have spoken to him, yes, and he agrees with
13    if we're able to handle the volume of
14    complaints, the external citizen complaints in
15    Internal Affairs, that we should be the
16    investigative body that handles all those.
17 Q. But he hasn't formally signed off on it yet;
18    is that right?
19 A. Well, it's -- so I mean, there's no -- again,
20    it's not codified.  This is a program that
21    we're instituting this year.  However, I will
22    reserve the right to -- if we become
23    overwhelmed in any way or I feel as though

DEPAOLO CROSBY REPORTING SERVICES, INC.
135 Delaware Avenue, Suite 301, Buffalo, New York  14202
716-853-5544

PATRICK OVERDORF

1      investigations might suffer because of the
2      volume of complaints that come in that, you
3      know, the complaints that are deemed more
4      minor in terms of discourtesy or that kind of
5      stuff can still be sent to the districts.
6           However, we're going to try to avoid
7      that the best we can.  He understands that.
8      If it does become official policy and changing
9      in the Complaint Investigation Manual he is
10     aware of it, but before we go too far down
11     that path we're going to see how it works.
12  Q. When did you have this conversation with
13     Commissioner Gramaglia?
14  A. I don't recall the exact date.  I informed him
15     that that was the -- that we were looking to
16     do that and he agreed that's probably the best
17     policy to go with.  End of last year maybe.
18     Again, it would be hard for me to specify a
19     date.
20  Q. Does IAD have any specific investigatory
21     procedures for allegations of racial bias?
22  A. Specific to that, no.  All allegations come in
23     typically as a citizen complaint and we follow

PATRICK OVERDORF

1          our investigative practices.  Obviously,
2          something like racial discrimination or racial
3          slurs would undoubtedly be considered a major
4          violation and it would be investigated
5          accordingly with all the resources available.
6     Q.   Are there specific investigatory procedures
7          for other types of cases?  For example,
8          excessive force?
9     A.   Again, it's the same basic investigatory
10         practice based on our Complaint Investigation
11         Manual but, again, excessive force just like
12         racial discrimination or racial profiling
13         would be considered a major violation and
14         would take precedence over some of the minor
15         complaints and all the resources available
16         would be dedicated to investigating that
17         excessive force complaint.
18    Q.   So just so I understand, the process for all
19         complaints is the same, but you may prioritize
20         complaints based on the seriousness of the
21         allegation.  Is that fair?
22    A.   Correct.
23    Q.   Okay.  I'm sorry.  One more question about

```
 1        STATE OF NEW YORK)

 2        COUNTY OF ERIE   )

 3

 4
            I, Rebecca Lynne DiBello, CSR, RPR, Notary
 5        Public, in and for the County of Erie, State of
          New York, do hereby certify:
 6

 7          That the witness whose testimony appears
          hereinbefore was, before the commencement of
 8        their testimony, duly sworn to testify the
          truth, the whole truth and nothing but the
 9        truth; that said testimony was taken pursuant
          to notice at the time and place as herein set
10        forth; that said testimony was taken down by me
          and thereafter transcribed into typewriting,
11        and I hereby certify the foregoing testimony is
          a full, true and correct transcription of my
12        shorthand notes so taken.

13
            I further certify that I am neither counsel
14        for nor related to any party to said action,
          nor in anyway interested in the outcome
15        thereof.

16
            IN WITNESS WHEREOF, I have hereunto
17        subscribed my name and affixed my seal this
          3rd day of February, 2024.
18

19              [signature: Rebecca L. DiBello]

20        _____

21        Rebecca Lynne DiBello, CSR (NY)
          Notary Public - State of New York
22        No. 01D14897420
          Qualified in Erie County
23        My commission expires 5/11/2027
```

DEPAOLO CROSBY REPORTING SERVICES, INC.
135 Delaware Avenue, Suite 301, Buffalo, New York  14202
716-853-5544