# Exhibit 123

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

BLACK LOVE RESISTS IN THE RUST, by and
through its Co-Directors NATASHA SOTO and
SHAKETA REDDEN and on behalf of its members;
DORETHEA FRANKLIN; TANIQUA SIMMONS;
DE'JON HALL; and JANE DOE, individually and on
behalf of a class of all others similarly situated,

                        Plaintiffs,

v.                                          Case No. 1:18-cv-00719-CCR

CITY OF BUFFALO, N.Y., BYRON B. BROWN,
Mayor of the City of Buffalo, in his individual and
official capacities; BYRON C. LOCKWOOD,
Commissioner of the Buffalo Police Department in his
individual and official capacities; DANIEL DERENDA,
former Commissioner of the Buffalo Police Department,
in his individual capacity; AARON YOUNG,
KEVIN BRINKWORTH, PHILIP SERAFINI,
ROBBIN THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities,

                        Defendants.

---

### AMENDED RESPONSES TO PLAINTIFF'S FIFTH SET OF INTERROGATORIES AND SIXTH REQUEST FOR PRODUCTION OF DOCUMENTS

In response to Plaintiff's Fifth Set of Interrogatories and Sixth Request for Production of Documents to Defendants, Defendants City of Buffalo, N.Y., Byron B. Brown, Byron C. Lockwood, Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown Officers 1-20 (collectively, the "Buffalo Defendants"), by and through their attorneys, Hodgson Russ LLP, states the following:

## INTERROGATORY RESPONSES

   19. Identify and describe in detail all factual and legal bases (including identifying any supporting documents) for Defendants' contention that they are not liable under Plaintiffs' first cause of action, including but not limited to identifying and describing (i) the primary and secondary programmatic purpose(s) of the Checkpoints; (ii) the process for determining the location of the Checkpoints, including who chose the locations, and all criteria, data, documents, and other information used to determine the location of any and all Checkpoints; and (iii) any policies, practices, training, or supervision regarding determining the location of Checkpoints.

   **RESPONSE:** This is an improper contention interrogatory, which is premature. Defendants should be permitted to fully answer this interrogatory after fact discovery has closed. Further, Defendants' denials and admissions in their answer to the amended complaint set forth the basis for the contentions described above. Further, the basis for Defendants' contention has been exhaustively testified to by defense witnesses in depositions thus far. Defendants have no obligation to exhaustively state each and every basis for a complex and nuanced legal defense, and requiring them to do so in an interrogatory is overly burdensome and not proportional to the needs of the case, particularly because Plaintiffs have been able to obtain the sought after information through other discovery devices.

   Subject to and without waiving any of the foregoing objections, Defendants state that the primary purpose of vehicle and traffic safety checkpoints carried out by the former Strike Force Unit of the Buffalo Police Department was to foster vehicle and traffic safety within the City of Buffalo. The secondary purpose was to enforce New York's Vehicle and Traffic Law ("NYVTL") in the event that an ongoing NYVTL infraction was readily apparent during a checkpoint. The tertiary purpose of the vehicle and traffic safety checkpoints conducted by Strike Force was to increase police visibility within the City of Buffalo. Although an indirect

benefit of the vehicle and traffic safety checkpoints may have been a deterrence on non-NYVTL crimes, such deterrence was not the purpose of the checkpoints. There are no other purposes or benefits of the checkpoints of which Defendants are presently aware.

The location of checkpoints has been testified to ad nauseam by the many deponents in this action. Checkpoint locations conducted by the Strike Force were determined based upon where the Strike Force happened to be patrolling on a particular day, as conducting a checkpoint was a part of each Strike Force platoon's patrol routine. Fostering traffic safety and enforcing the NYVTL was part of Strike Force's mission.

Strike Force's daily patrol locations were determined by a number of factors, such as complaints received and discretionary determinations as to which areas of the City were in need of the Strike Force's services. The personnel charged with determining where the Strike Force would patrol were the lieutenants and captains assigned to the Strike Force, and at times the Commissioner of Police. The Buffalo Police Department would defer to captains' and lieutenants' discretion when it came to choosing locations where Strike Force would patrol, unless a specific order was given by the Commissioner of Police. If the Commissioner of Police ordered the Strike Force to patrol a particular area of the City, per department policy and chain of command, that area is where the Strike Force would go.

Defendants reserve the right to supplement or amend this response up through the close of discovery.

20.     Identify and describe in detail all factual and legal bases (including identifying any supporting documents) for Defendants' contention that they are not liable under Plaintiffs' second cause of action, including but not limited to (i) any and all alleged nondiscriminatory reasons for the locations of the Checkpoints; (ii) any and all alleged nondiscriminatory reasons for racial disparities in BPD's traffic ticketing patters, including but

not limited to racial disparities in the issuance of multiple traffic tickets in a single stop; and (iii) any and all steps taken by the City and the BPD to prevent racial discrimination in the BPD's traffic enforcement practice.

**RESPONSE:** This is an improper contention interrogatory, which is premature. Defendants should be permitted to fully answer this interrogatory after fact discovery has closed. Further, Defendants' denials and admissions in their answer to the amended complaint set forth the basis for the contentions described above. Further, the basis for Defendants' contention has been exhaustively testified to by defense witnesses in depositions thus far. Defendants have no obligation to exhaustively state each and every basis for a complex and nuanced legal defense, and requiring them to do so in an interrogatory is overly burdensome and not proportional to the needs of the case, particularly because Plaintiffs have been able to obtain the sought after information through other discovery devices.

Subject to and without waiving any of the foregoing objections, Defendants state that the locations of checkpoints carried out by the Strike Force were dictated by the area of the City where Strike Force happened to be patrolling, as part of Strike Force's mission was to foster vehicle and traffic safety throughout the City. Strike Force patrol locations were not selected for any racially discriminatory purpose or for any discriminatory purpose at all. Strike Force daily patrol locations were determined by the individuals identified in Response No. 19, and were chosen based on factors that have nothing to do with race. For example, Strike Force patrol locations could be determined based upon complaints received, or based on the number of 911 calls generated from a particular area of the City. At no point in time were the racial demographics of citizens living in a particular part of the City considered when determining where the Strike Force would patrol.

Further, the Defendants do not concede that Plaintiffs' unilaterally compiled data shows a racial disparity in ticketing patterns. Further, even if Plaintiffs could show a racial disparity in the individuals in the City who received traffic tickets or "multiple traffic tickets," which they cannot, Defendants did not have the requisite *mens rea* for Plaintiffs to make out a "disparate impact" case, particularly because there are legitimate, non-discriminatory explanations for issuing traffic summonses including, but not limited to, legitimate traffic enforcement steps taken in areas of the City of Buffalo where a high volume of BPD officers happen to patrol. Defendants state that at no time have any traffic enforcement actions been carried out pursuant to any discriminatory intent or policy, including those carried out by the BPD Strike Force or Housing Units. Summonses for violations of the NYVTL were issued for the legitimate purposes of enforcing the NYVTL and remedying ongoing traffic violations. BPD's policy has always been that traffic summonses should be issued to enforce the NYVTL and to ensure that vehicle and traffic safety is observed throughout the City of Buffalo. These are the legitimate, non-discriminatory reasons for what Plaintiffs' describe as Defendants' "ticketing practices," including instances where an individual motorist received multiple tickets.

Finally, Defendants state that supervisory BPD personnel have testified in great detail regarding BPD's policies regarding racial discrimination and its procedures in place to prevent racial discrimination and to discipline officers who do engage in discrimination of any kind. For example, acting in a discriminatory manner, if reported, would subject a police officer to severe discipline, including potential termination of employment. BPD's Internal Affairs Division has the power and authority to discipline officers who engage in discriminatory or racist behavior. Moreover, BPD has had trainings for its officers and diversity and inclusion, as well as sensitivity training. In short, racial discrimination, or discrimination of any kind, violates

BPD's Manual of Procedures and is not tolerated. The same was true during the time period referenced in the amended complaint. Plaintiffs will have a full opportunity to explore policies and procedures regarding racial discrimination during the 30(b)(6) deposition which they have noticed.

Defendants reserve the right to supplement or amend this response up through the close of discovery.

21. Identify and describe in detail all factual and legal bases (including identifying any supporting documents) for Defendants' contentions that they are not liable under Plaintiffs' third cause of action, including but not limited to explaining Defendants' position, and the bases therefor, regarding: (i) whether the City of Buffalo had a revenue motive to increase ticketing; (ii) whether the City created the BTVA at least in part to increase municipal revenue; (iii) whether the City created policies and practices under which BPD officers could earn overtime; and (iv) whether the City was deliberately indifferent to the risk that it was creating structures, such as overtime policies and practices, under which officers have a personal financial motivation to issue traffic tickets.

**RESPONSE:** This is an improper contention interrogatory, which is premature. Defendants should be permitted to fully answer this interrogatory after fact discovery has closed. Further, Defendants' denials and admissions in their answer to the amended complaint set forth the basis for the contentions described above. Further, the basis for Defendants' contention has been exhaustively testified to by defense witnesses in depositions thus far. Defendants have no obligation to exhaustively state each and every basis for a complex and nuanced legal defense, and requiring them to do so in an interrogatory is overly burdensome and not proportional to the needs of the case, particularly because Plaintiffs have been able to obtain the sought after information through other discovery devices. Defendants further object to this request to the extent it seeks to shift the burden of proof to Defendants. Plaintiffs, not Defendants, have the burden of proving that there was the illegal financial incentives were present during the time period focused on by the

amended complaint. They have failed to do so, as there has been no evidence of any illegal or unconstitutional financial incentives adduced throughout discovery to date.

Subject to and without waiving any of the foregoing objections, Defendants state that issuing fines for traffic summonses is not a constitutional violation nor a tort of any kind, which is borne out by countless legal decisions published before and during the pendency of this action. Defendants further state that BPD officers did not receive any compensation whatsoever for issuing traffic tickets, and no such compensation has ever been allowed under any applicable collective bargaining agreement ("CBA"). In this regard, Defendants identify the past and present CBAs which demonstrate unequivocally that there was no compensation given to officers for issuing traffic tickets or summonses, and that officers have no "financial incentive" to issue traffic summonses.

Defendants further state that BTVA was created to be an efficient way of dealing with traffic violations committed in the City of Buffalo and enforcing New York's Vehicle and Traffic Law. Defendants state that having an agency solely committed to dealing with traffic violations is what made the BTVA efficient, particularly when compared to traditional state courts which often have very full dockets with cases spanning multiple counties. Defendants also note that Buffalo's creation of the BTVA is not unique, and many towns and municipalities throughout the state have created similar programs to foster vehicle and traffic safety and to enforce the NYVTL within their boundaries. These other towns and municipalities also collect fines from motorists guilty of violating the NYVTL.

Revenue for the City was not the primary reason why the BTVA was created, and fines collected by the BTVA are collected to deter and penalize those who violate the NYVTL

within the City of Buffalo.  Defendants further state that no evidence adduced throughout discovery shows that there was any financial incentive for officers to issue traffic tickets or citations, or that the individuals adjudicating traffic violations had any financial incentive to issue fines.  Defendants state that police officer's overtime eligibility and compensation for court time is set forth in the applicable CBA.  That is an arms-length agreement negotiated by the City and the Buffalo Police Benevolent Association.   The court time and overtime provisions are not in any way unique to members of the Strike Force or Housing Unit, and there are no unique provisions regarding court appearances for traffic summonses.  Further, upon information and belief, the individuals who adjudicate traffic violations at the BTVA have a fixed salary and have no personal financial incentives to issue fines for traffic summonses.

       Defendants reserve the right to supplement or amend this response up to the time of trial.

Dated:       Buffalo, New York
                April 5, 2023

                                  **Responses and Objections By:**

                                  By:   s/  Peter A. Sahasrabudhe
                                        Peter A. Sahasrabudhe
                                  The Guaranty Building
                                  140 Pearl Street — Suite 100
                                  Buffalo, New York 14202-4040
                                  Telephone: 716-848-1508

## VERIFICATION OF INTERROGATORY RESPONSES

I, Peter A. Sahasrabudhe, believe, based on reasonable inquiry, that the foregoing factual responses are true and correct to the best of my knowledge, information and belief.

I verify that under penalty of perjury that the foregoing is true and correct.

By: *//s Peter A. Sahasrabudhe*
     Peter A. Sahasrabudhe, Esq.
     Hodgson Russ LLP
     The Guaranty Building
     140 Pearl Street — Suite 100
     Buffalo, New York  14202
     Telephone:  716-856-4000

TO: **WESTERN NEW YORK LAW CENTER**
*Attorneys for Plaintiffs*
Keisha Williams, Esq.
Cathedral Park Tower
37 Franklin Street, Suite 210
Buffalo, New York 14202
Telephone: 716-828-8415
kwilliams@wnylc.com

**NATIONAL CENTER FOR LAW
 AND ECONOMIC JUSTICE**
*Attorneys for Plaintiffs*
Claudia Wilner, Esq.
Edward Krugman, Esq.
Anjana Malhotra, Esq.
275 Seventh Avenue, Suite 1506
New York, New York 10001
wilner@ncleg.org
krugman@nclej.org
malhotra@ncleg.org

**CENTER FOR CONSTITUTIONAL RIGHTS**
*Attorneys for Plaintiffs*
Chinyere Ezie, Esq.
666 Broadway, 7th Floor
New York, New York 10012
Telephone: 212-614-6475
cezie@ccrjustice.org

**COVINGTON & BURLING LLP**
*Attorneys for Plaintiffs*
Jordan Joachim (*pro hac vice*)
620 Eighth Avenue
New York, New York 10018
Telephone: 212-841-1000
jjoachim@cov.com