# Exhibit A

113 F.4th 1249
United States Court of Appeals, Ninth Circuit.

BLACK LIVES MATTER LOS ANGELES; Cangress;
Linus Shentu, individually and on behalf of a class
of similarly situated persons; Steven Roe; Nelson
Lopez; Tina Crnko; Jonathan Mayorca; Abigail Rodas;
Krystle Hartfield; Nadia Kahn; Clara Aranovich;
Alexander Stamm; Maia Kazin; Alicia Barrera-
Trujillo; Shannon Lee Moore; Devon Young; Eva
Grenier; David Contreras, Plaintiffs-Appellees,
v.
CITY OF LOS ANGELES, a municipal entity;
Michel Moore, Chief, Defendants-Appellants.

No. 22-56161
|
Argued and Submitted March
28, 2024 Pasadena, California
|
Filed September 5, 2024

**Synopsis**
**Background:** Protestors filed putative class action asserting claims, under § 1983, against city and former chief of city's police department and alleging that department used excessive force against protestors, arrested protestors without probable cause, and restricted their First Amendment rights, in wake of nationwide historic protests against police violence and for racial justice following death of African American arrestee as result of police brutality during his arrest. The United States District Court for the Central District of California, Consuelo B. Marshall, J., 2022 WL 16888576, granted protestors' motion for certification of three classes seeking damages from city and fourth class seeking injunctive relief against department. City appealed.

**Holdings:** The Court of Appeals, Lee, Circuit Judge, held that:

[1] further analysis of commonality and predominance prerequisites was required for certification of direct force class;

[2] further analysis of commonality and predominance prerequisites was required for certification of arrest class;

[3] further analysis of commonality and predominance prerequisites was required for certification of infraction class; and

[4] analysis of commonality prerequisite was required for certification of injunctive relief class.

Vacated and remanded.

**Procedural Posture(s):** On Appeal; Request or Application for Class Certification.

West Headnotes (36)

[1]    **Federal Civil Procedure** ⟵ Common interest in subject matter, questions and relief;  damages issues
       To certify a class, plaintiffs must first show that common questions exist, meaning that questions can be resolved using class-wide evidence. Fed. R. Civ. P. 23.

[2]    **Federal Civil Procedure** ⟵ Common interest in subject matter, questions and relief;  damages issues
       To certify a damages class under the predominance requirement, plaintiffs have a higher burden of proving that common questions predominate over individual ones. Fed. R. Civ. P. 23(b)(3).

[3]    **Federal Civil Procedure** ⟵ In general;  certification in general
       District courts must rigorously analyze whether plaintiffs have produced sufficient evidence that they have met class certification requirements; that requires the district court to engage with each of class certification prerequisites. Fed. R. Civ. P. 23.

[4]    **Civil Rights** ⟵ Governmental Ordinance, Policy, Practice, or Custom

To hold a municipality liable, under *Monell*, plaintiffs must prove that constitutional violations were caused by a municipal policy or practice.

[5]   **Federal Courts** 🔑 Class actions

Court of Appeals reviews class certification orders for abuse of discretion.

[6]   **Federal Courts** 🔑 Abuse of discretion in general

A district court abuses its discretion if it commits legal error, relies on an improper factor, omits a substantial factor, or commits a clear error of judgment when weighing factors.

[7]   **Federal Civil Procedure** 🔑 Class Actions

Class actions are the exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.

[8]   **Federal Civil Procedure** 🔑 In general; certification in general

Class certification is not to be granted lightly; to ensure that it is not, the class certification rule mandates that district courts rigorously analyze whether a proposed class meets various requirements. Fed. R. Civ. P. 23.

1 Case that cites this headnote

[9]   **Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief;  damages issues

On a motion for class certification, district court must find that the class raises common questions, meaning, questions that are central to the validity of the claims and capable of being resolved in one stroke. Fed. R. Civ. P. 23(a).

[10]  **Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief;  damages issues

To certify a damages class under the predominance requirement, the burden is even higher than for the commonality requirement, as the district court must find that common questions predominate over individual ones. Fed. R. Civ. P. 23(a), 23(b)(3).

[11]  **Federal Civil Procedure** 🔑 Common interest in subject matter, questions and relief;  damages issues

Showing predominance of common questions is difficult, and it regularly presents the greatest obstacle to class certification. Fed. R. Civ. P. 23(b)(3).

[12]  **Federal Civil Procedure** 🔑 Evidence;  pleadings and supplementary material

The class certification rule does not impose a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions, but rather, they must affirmatively demonstrate by a preponderance of actual evidence that they satisfy all the rule's prerequisites. Fed. R. Civ. P. 23.

[13]  **Federal Civil Procedure** 🔑 Evidence;  pleadings and supplementary material

Plaintiffs seeking class certification must actually prove, not simply plead, that their proposed class satisfies each requirement of the class certification rule. Fed. R. Civ. P. 23.

[14]  **Federal Civil Procedure** 🔑 Particular Classes Represented

District court's determination, in protestors' putative class action bringing *Monell* claims for damages against city based on police department allegedly using excessive force against protestors, that police command's decision to employ less-lethal munitions was

common question for class of protestors who were struck by either less-lethal weapons, batons, or otherwise physically struck by police officers and who were neither violently resisting nor posing immediate threat of physical harm, required further analysis of commonality and predominance requirements for class certification; protestors did not show existence of common evidence that could resolve in one stroke class claims that hinged on wide array of facts and circumstances requiring individual fact-finding and separate analyses. U.S. Const. Amends. 1, 4; Fed. R. Civ. P. 23(a), 23(b)(3).

More cases on this issue

[15] Federal Civil Procedure  Particular Classes Represented

Search, Seizure, and Arrest  Use of Force

Excessive force claims are fact-specific, and these individualized considerations are no less important in a class action than they are in a case brought by a single plaintiff.

[16] Civil Rights  Governmental Ordinance, Policy, Practice, or Custom

To hold a municipality liable, under *Monell*, requiring plaintiffs to prove that a municipal custom or policy caused constitutional violations, such customs or policies include decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law; they do not include police officers' independent choices.

[17] Civil Rights  Governmental Ordinance, Policy, Practice, or Custom

Under *Monell*, requiring plaintiffs to prove that a municipal custom or policy caused constitutional violations, tripping on a sidewalk is not a constitutional injury.

[18] Federal Civil Procedure  Common interest in subject matter, questions and relief;  damages issues

Federal Civil Procedure  Evidence;  pleadings and supplementary material

It is not enough to merely raise common questions or issues to satisfy the class certification rule; rather, plaintiffs must be prepared to prove that there are critical questions or issues that can be resolved on a class-wide basis. Fed. R. Civ. P. 23.

[19] Federal Civil Procedure  Prisoners and inmates

District court's determination, in protestors' putative class action bringing *Monell* claims for damages against city based on police department allegedly using excessive force in arresting protestors, that arrestees' confinement and transportation in police vehicles were sufficiently common questions for class of protestors arrested on misdemeanor charges of failure to obey curfew, failure to disperse, failure to follow lawful order of police officer and/or unlawful assembly, and then held on buses and subjected to prolonged tight hand-cuffing, denied access to bathrooms, water, and food, and enclosed in tight spaces without ventilation, required further analysis of commonality and predominance requirements for class certification; protestors lacked common evidence that could resolve class claims in one stroke. U.S. Const. Amend. 4; Fed. R. Civ. P. 23(a), 23(b)(3).

More cases on this issue

[20] Federal Civil Procedure  Evidence;  pleadings and supplementary material

The class certification rule requires plaintiffs to prove, not just assert, that their case raises common issues that can be decided on a class-wide basis and that these common issues predominate over individual ones. Fed. R. Civ. P. 23(a), 23(b)(3).

Case 1:18-cv-00719-CCR   Document 233-1   Filed 10/07/24   Page 5 of 17
Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249 (2024)
2024 Daily Journal D.A.R. 8659

[21] **Search, Seizure, and Arrest** ⚖ Handcuffs

Placing someone in tight handcuffs is not inherently unconstitutional; rather, whether the use of tight handcuffs violates the Fourth Amendment, like other excessive force issues, is usually fact-specific and likely to turn on the credibility of the witnesses. U.S. Const. Amend. 4.

[22] **Federal Civil Procedure** ⚖ Consideration of merits

Although district courts should not deny class certification based on the merits of the claims, they must consider the merits if they overlap with the requirements for class certification. Fed. R. Civ. P. 23.

[23] **Search, Seizure, and Arrest** ⚖ Reasonableness in general; objective or subjective test

Like tight handcuffs, arrest conditions can be an unconstitutional use of excessive force, but it depends how unnecessarily improper the conditions were. U.S. Const. Amend. 4.

[24] **Federal Civil Procedure** ⚖ Prisoners and inmates

District court's grant of class certification, in protestors' putative class action bringing *Monell* claims for damages against city based on police department allegedly using excessive force in arresting protestors, required further analysis of commonality and predominance requirements for certification of class of individuals who were charged with infractions, arrested allegedly without probable cause, taken into custody, and not released in field, since protestors did not show existence of common evidence that could resolve in one stroke class claims that hinged on wide array of facts and circumstances requiring individual fact-finding and separate analyses. U.S. Const. Amend. 4; Fed. R. Civ. P. 23(a), 23(b)(3).

More cases on this issue

[25] **Search, Seizure, and Arrest** ⚖ Offense committed in presence of officer

**Search, Seizure, and Arrest** ⚖ Nature of Offense in General

If a police officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may constitutionally arrest that individual. U.S. Const. Amend. 4.

[26] **Federal Civil Procedure** ⚖ Common interest in subject matter, questions and relief; damages issues

**Federal Civil Procedure** ⚖ In general; certification in general

Passing citations to other district court orders fall short of the rigorous analysis demanded for satisfying the predominance requirement for class certification. Fed. R. Civ. P. 23(b)(3).

[27] **Federal Civil Procedure** ⚖ Particular Classes Represented

*Monell* is not a magic word that allows a plaintiff to cast aside all the requirements for class certification. Fed. R. Civ. P. 23.

[28] **Federal Civil Procedure** ⚖ Particular Classes Represented

**Federal Civil Procedure** ⚖ Employees

Plaintiffs seeking class certification based on challenges to a defendant's policies must show for *Monell* liability that the policies caused every class member's injury, which is easier to do when plaintiffs challenge formal policies, such as an employer's class-wide wage-and-hour policy, but it is harder when plaintiffs challenge informal policies or where the evidence suggests that their injuries stem from discretionary decisions, because to satisfy commonality in those cases, plaintiffs must offer some glue holding the

alleged reasons for all those decisions together. Fed. R. Civ. P. 23.

[29]    **Civil Rights**  Governmental Ordinance, Policy, Practice, or Custom

A policy is not just a helpful way to prove a *Monell* claim; it is a necessary element.

[30]    **Civil Rights**  Governmental Ordinance, Policy, Practice, or Custom

Plaintiffs can establish a *Monell* policy by demonstrating a pattern of similar constitutional violations.

[31]    **Federal Civil Procedure**  Particular Classes Represented

Plaintiffs cannot certify a class seeking damages for *Monell* liability by merely alleging that a policy applies class-wide and that a common question thus exists, without showing how common evidence can be used to prove their claims across the class members. Fed. R. Civ. P. 23.

[32]    **Federal Civil Procedure**  Common interest in subject matter, questions and relief; damages issues

What matters to class certification is not the raising of common questions, even in droves, but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation; dissimilarities within the proposed class are what have the potential to impede the generation of common answers. Fed. R. Civ. P. 23.

[33]    **Federal Civil Procedure**  Evidence; pleadings and supplementary material

**Federal Civil Procedure**  Particular Classes Represented

Plaintiffs cannot simply allege that a policy applies class-wide in order to certify a class for *Monell* liability, but rather, they have to present evidence that it does; that is, if there is no evidence that the entire class was subject to the same allegedly illegal practice, there is no question common to the class. Fed. R. Civ. P. 23(a).

[34]    **Federal Civil Procedure**  Common interest in subject matter, questions and relief; damages issues

Even issue classes must satisfy the commonality requirement for class certification. Fed. R. Civ. P. 23(a).

[35]    **Federal Civil Procedure**  Common interest in subject matter, questions and relief; damages issues

While common questions need not predominate over individual questions for a class to be certified as an injunctive class, district courts still must identify what questions are common to the class and how the plaintiffs will present evidence about those questions on a class-wide basis. Fed. R. Civ. P. 23(b)(2).

[36]    **Federal Civil Procedure**  Particular Classes Represented

District court's grant of class certification, in protestors' putative class action bringing claims for injunctive relief against police department, required analysis of commonality requirement for certification of injunctive relief class of all persons who had in past participated in, presently were participating, or could in future participate in, or be present at, demonstrations within city particularly if those demonstrations related to protesting police violence and race discrimination, since court failed to address what questions were common to class. Fed. R. Civ. P. 23(b)(2).

More cases on this issue

Case 1:18-cv-00719-CCR   Document 233-1   Filed 10/07/24   Page 7 of 17
Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249 (2024)
2024 Daily Journal D.A.R. 8659

*1253 Appeal from the United States District Court for the Central District of California, Consuelo B. Marshall, District Judge, Presiding, D.C. No. 2:20-cv-05027-CBM-AS

Attorneys and Law Firms

Barrett S. Litt (argued), McLane Bednarski & Litt LLP, Pasadena, California; Carol A. Sobel, Law Office of Carol A. Sobel, Santa Monica, California; Paul Hoffman, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Hermosa Beach, California; Monica A. Alarcon, Bijan Esfandiari, Pedram Esfandiary, and R. Brent Wisner, Wisner Baum LLP, Los Angeles, California; Lindsay B. Battles, Kaye McLane Bednarski & Litt LLP, Pasadena, California; Colleen Flynn, Mann & Cook, Los Angeles, California; Denisse O. Gastelum, Gastelum Law APC, Long Beach, California; James D. Kim, Schonbrun DeSimone Seplow Harris & Hoffman, Venice, California; John C. Washington, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Los Angeles, California; Olu K. Orange, Orange Law Offices, Los Angeles, California; Matthew D. Strugar, Law Office of Matthew Strugar, Los Angeles, California; for Plaintiffs-Appellees.

Jonathan H. Eisenman (argued), Deputy City Attorney; Shaun D. Jacobs, Supervising Deputy City Attorney; Scott D. Marcus, Chief Assistant City Attorney; Denise C. Mills, Chief Deputy City Attorney; Hydee F. Soto and Michael N. Feuer, City Attorneys; Los Angeles Office of the City Attorney, Los Angeles, California; for Defendants-Appellants.

Jocelyn D. Larkin and Meredith Dixon, Impact Fund, Berkeley, California, for Amici Curiae Impact Fund et al.

Before: Johnnie B. Rawlinson, Kenneth K. Lee, and Daniel A. Bress, Circuit Judges.

## OPINION

LEE, Circuit Judge:

After George Floyd's death in the summer of 2020, Los Angeles erupted into protests. For approximately ten days, tens of thousands of people took to the streets across the City. Some of these protests were peaceful. Others were not. In response, the Los Angeles Police Department (LAPD) set curfews, declared demonstrations unlawful, used non-lethal force to control crowds, and arrested thousands of people.

About a week after the protests began, the plaintiffs filed this putative class action against the City and then-LAPD Chief Michel Moore, alleging that the LAPD used excessive force, arrested protestors without probable cause, and restricted their First Amendment rights. The lawsuit includes four classes: (1) a Direct Force Class, *1254 which seeks damages on behalf of every person hit by less-lethal force of any kind during any protest that summer; (2) an Arrest Class, which seeks damages on behalf of persons who were arrested for protest activity; (3) an Infraction Class, which seeks damages on behalf of every person arrested for an infraction; and (4) an Injunctive Relief Class, which seeks to enjoin the LAPD from (i) unreasonably using less-lethal weapons, (ii) imposing a curfew, (iii) giving dispersal orders without adequate sound amplification and an opportunity to disperse, (iv) detaining protestors on buses with no access to food, water or a bathroom, or (v) using too-tight zip-tie handcuffs in conducting arrests, and more.

[1] [2] To certify a class under Federal Rule of Civil Procedure 23, plaintiffs must first show that common questions exist, meaning that questions can be resolved using class-wide evidence. And to certify a damages class under Rule 23(b)(3), plaintiffs have a higher burden of proving that common questions predominate over individual ones. The district court certified all four classes, but it did not address whether the damages classes satisfy Rule 23(b)(3)'s predominance requirement and did not adequately analyze Rule 23(a)'s commonality question. Nor did it address whether the Injunctive Relief Class meets the commonality requirement.

[3] We vacate the class certification and remand for the district court to fully address Rule 23's requirements. Under Rule 23, district courts must rigorously analyze whether plaintiffs have produced sufficient evidence that they have met class certification requirements. That requires the district court to engage with each of Rule 23's prerequisites. That the classes bring fact-specific constitutional claims challenging a wide variety of LAPD's actions across Los Angeles underscores the importance of the rigorous analysis in a case like this.

## BACKGROUND

I. Protests erupt around Los Angeles.

In the wake of George Floyd's death in May 2020, cities across the country experienced what would be a nationwide, historic

demonstration against police violence and for racial justice. On May 27, Los Angeles became one of the first cities to see these widescale protests. That evening, at around 6:00 p.m., several hundred people left what had been a peaceful demonstration and walked onto the 101 Freeway, where they blocked traffic and broke the windows of two California Highway Patrol (CHP) vehicles. The next day, five hundred to a thousand people peacefully marched through downtown, but a couple hundred stopped traffic on the 110 Freeway. And on Grand Avenue, one LAPD officer was dragged into a crowd while police cars were destroyed nearby.

Over the next week, the disturbances spread, even as many others demonstrated peacefully. Often, a single protest would include both violent and non-violent protestors. Abigail Rodas, for example, was protesting peacefully in the Fairfax area when people behind her threw hard objects at police. Not far away, an "organized convoy of cars" arrived and began to loot businesses and set fires. At the same time, a group of protestors in the area overtook and vandalized a public bus that displayed an LAPD advertisement.

The LAPD at first tried to manage the protests by declaring the gatherings unlawful and ordering the protestors to disperse. Sometimes, the dispersal orders worked, but other times, they did not. Over the first few days of protests, the LAPD arrested a couple hundred people. Some were for misdemeanors and infractions, such as refusing to obey police orders, but others were for serious crimes, such as assault and attempted murder.

### II. The LAPD uses force on protestors.

As the protests around the City grew more chaotic, the LAPD's response became *1255 more forceful. On May 30 —three days into the protests—the City declared a state of emergency and announced an 8:00 p.m. curfew. The LAPD also received backup from other law enforcement agencies, such as the Santa Barbara police and the Orange County Sheriff's Department (which are not defendants here).

It did little to abate the situation. That afternoon, a group of protestors broke off from a larger crowd in the Fairfax area and slashed the tires on a city bus, then spray-painted and threw objects at it—while the driver and passengers remained inside it. When police arrived to evacuate the bus, they were overrun, and protestors lit their unattended cars on fire. Meanwhile, as thousands of people gathered at the Pan Pacific Park, the LAPD received word that a different crowd was formulating a plan to take over the Hollenback police station.

With so much happening at once, many protestors suffered injuries, but not necessarily at the hands of the LAPD. Nadia Khan, for example, says "police" shot pellets at her and sprayed her with tear gas while she was at a protest in the Pan Pacific Park—but the LAPD did not use tear gas on that crowd. Similarly, Abigail Rodas says that an officer hit her with a rubber bullet while she was protesting near the crowd that attacked a public bus, but according to a hospital record from the day of the injury, she tripped and hit her face on the ground.

Of those who were harmed, injuries ranged from cosmetic to severe. Plaintiffs Johnathan Mayorca, Alicia Barrera-Trujillo, Nadia Khan, and Nelson Lopez were all part of protests where less-lethal force was used, but none of them was seriously hurt. Clara Aranovich and Eva Grenier, meanwhile, suffered bruises after being hit with batons at close range by officers trying to push back the crowds. David Contreras was hit in the eye with a rubber bullet, which caused it to swell shut, while Shannon Lee Moore took a beanbag to the back of her head while accompanying a friend who was filming a protest in Hollywood. Abigail Rodas might not have been hit by anything at all, but she left the protests with a [fractured jaw](#) that required surgery. And Tina Crnko was hit in the ribs, biceps, and forehead, which she says caused permanent nerve damage and PTSD.

### III. The LAPD conducts mass arrests.

To combat the spreading civil unrest, the LAPD conducted mass arrests. Krystle Hartsfield was leaving the Fairfax protest on the afternoon of May 30 when an LAPD officer pushed her and told her she could not go. She was then arrested, handcuffed, and put in a van. Another plaintiff, Steven Roe, was hit in the stomach with a rubber bullet at a May 29 protest outside City Hall, then later arrested for violating a dispersal order he says he did not know had been issued.

After they were arrested, some protestors were transported on LAPD buses (which had no windows) to makeshift booking stations throughout the City. There were too few LAPD buses, though, so the LAPD also used sheriff's department buses, which were larger. Some of these buses had cages instead of seats. Other protestors (including Nelson Lopez and Alicia Barrera-Trujillo) were loaded onto the City's public buses, which are normally used to transport paying customers.

The bus conditions varied. On May 30, Nadia Khan waited for around four hours in an overcrowded bus before being issued a citation. Two days later, Maia Kazin received a citation for violating curfew during a protest on Spring Street before being loaded onto a bus, where she stayed for about seven hours. During that time, ***1256** one protestor's shoulder dislocated while another protestor panicked because she needed to take medication. The police apparently ignored them, and the protestors called 911 themselves. Nelson Lopez, meanwhile, spent 45 minutes on a City bus after a protest at City Hall on May 29, and reported that people were "stuffed like sardines" inside, that "tight handcuffs ... caused bruising," and that his "right shoulder rotator cuff was sore for about a week."

The police also treated protestors differently. Although the plaintiffs say that the LAPD refused to loosen handcuffs or give protestors water, food, or bathroom access, most of the representative plaintiffs did not ask for those things. Those who asked received different responses. Krystle Hartsfield's friend, who was on the same bus as Hartsfield, was given water when she requested it. Nadia Khan asked for her handcuffs to be loosened, but the officers ignored her. There were no officers on Alicia Barrera-Trujillo's bus, so people who needed medical care or the bathroom went without until the bus arrived at the booking station. But on some buses, police replaced handcuffs for protestors who were in clear pain and explained that they did not have enough extras to replace them all.

Protestors were also arrested for many different reasons. Though most protestors received curfew violations, it seems that some of those protestors, such as Alicia Barrera-Trujillo, were arrested before the curfew. Others, such as Steven Roe and Johnathan Mayorca, were arrested for disobeying orders they say they did not receive or could not obey. Others yet were arrested multiple times for different violations, and some (such as plaintiff Nelson Lopez's mother) were arrested despite not being part of the protests at all. And some were arrested for more serious crimes like looting and assaults with deadly weapons.

### IV. Plaintiffs file this putative class action against the City.

About a week into the protests, the plaintiffs filed this putative class action against the City and LAPD Chief Moore under 42 U.S.C. § 1983 for violating the First, Fourth, and Fourteenth Amendments as well as under California state law.

The plaintiffs alleged that nearly all the LAPD's actions in response to the protests were unconstitutional. They sought to certify these four classes:

1. A **Direct Force Class** of protestors who were "struck by either 'less-lethal weapons' (including 37mm and 40mm projectiles, and beanbag shotguns), batons, or otherwise physically struck by LAPD officers, and who were neither violently resisting nor posing an immediate threat of physical harm."

2. An **Arrest Class** of people who were "arrested by the LAPD on misdemeanor charges of failure to obey a curfew, failure to disperse, failure to follow a lawful order of a police officer and/or unlawful assembly," then "held on buses and subjected to prolonged tight handcuffing, denied access to bathrooms, water and food, and enclosed tight spaces without ventilation."

3. An **Infraction Class** of people who were "charged with infractions, arrested and taken into custody, and not released in the field."

4. An **Injunctive Relief Class** that includes "all persons who have in the past participated in, presently are participating, or may in the future participate in, or be present at, demonstrations within the City of Los Angeles," particularly if those demonstrations "relate[ ] to protesting police violence and discrimination **\*1257** against people of color, especially African-Americans."

**[4]** The Direct Force, Arrest, and Infraction Classes sought damages under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To hold a municipality liable under *Monell*, the plaintiffs must prove that constitutional violations were caused by a municipal policy or practice. *Id.* at 692, 98 S.Ct. 2018.

The plaintiffs alleged a host of actions that purportedly implicated *Monell* liability, each of which applies to different class members. To start, the plaintiffs alleged that constitutional violations, such as the use of force or overcrowded or otherwise objectionable arrest conditions, were so "repeated" and "widespread" that they amount to LAPD customs. Next, the plaintiffs alleged that Chief Moore —a person with final decision-making authority for the City —was present at some protests and issued some arrest orders himself. The plaintiffs also claimed that some officers were not properly trained. And finally, the plaintiffs asserted that

Case 1:18-cv-00719-CCR   Document 233-1   Filed 10/07/24   Page 10 of 17
Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249 (2024)
2024 Daily Journal D.A.R. 8659

Chief Moore learned of some violations after they occurred but chose not to discipline the offending officers.

The Injunctive Relief Class sought to enjoin the LAPD from violating the putative class members' rights. The plaintiffs contend that these violations include (1) using unreasonable force on protestors; (2) imposing curfews without "accommodat[ing] the right to peaceably assemble and protest"; (3) declaring assemblies unlawful without "adequate amplification," "directions," "means," and safe opportunities to disperse; (4) arresting people for infractions; (5) detaining arrestees for prolonged periods; (6) using tight handcuffs; (7) denying arrestees bathroom access or food and water; (8) placing arrestees "at great risk of exposure to COVID-19"; and (9) "booking and collecting information" on arrestees.

### V. The district court certifies the classes.

The plaintiffs moved to certify all four classes, and the City opposed the motion. Among other things, the City argued that the classes failed to satisfy Rule 23(b)'s prerequisites because (1) none of the classes raised common questions, and (2) for the damages classes, any common questions that might exist did not predominate over the individualized ones.

The district court's order did not fully address these arguments. Instead, it concluded that, because the damages classes bring *Monell* claims, there were common questions about whether LAPD customs or policies injured protestors. The district court did not analyze whether those questions predominated, and it did not identify any question common to the Injunctive Relief Class. It then certified the classes.

The City timely filed a Rule 23(f) request to appeal, which was granted.

### STANDARD OF REVIEW

 **[5]**    **[6]**  We review class certification orders for abuse of discretion. *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018). A district court abuses its discretion if it commits legal error, "relies on an improper factor," "omits a substantial factor," or "commits a clear error of judgment" when weighing factors. *Abdullah v. U.S. Sec. Assocs. Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

### ANALYSIS

### I. We vacate certification of the Rule 23(b)(3) damages classes because the district court did not conduct a rigorous analysis.

 **[7]**  Class actions are the "exception to the usual rule that litigation is conducted *1258 by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (quotation omitted). They are also onerous and costly for defendants, who may feel "pressured into settling questionable claims" to avoid even a "small chance of a devastating loss." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). This cost only increases once the class is certified, as the price the defendant will pay to avoid the "risk of a catastrophic judgment" at trial skyrockets, even if the claims themselves may not be meritorious. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002).

 **[8]**    **[9]**    **[10]**    **[11]**  Class certification is thus not to be granted lightly. To ensure that it is not, Rule 23 mandates that district courts "rigorous[ly] analy[ze]" whether a proposed class meets various requirements. *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The district court must first find, among other things, that the class raises common questions under Rule 23(a)—meaning, questions that are "central to the validity" of the claims and capable of being resolved "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). And to certify a damages class under Rule 23(b)(3), the burden is even higher: the district court must find that common questions predominate over individual ones. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016). Showing predominance is difficult, and it "regularly presents the greatest obstacle to class certification." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).

 **[12]**    **[13]**  Rule 23 does not impose a mere pleading standard; plaintiffs cannot plead their way to class certification through just allegations and assertions. *Wal-Mart*, 564 U.S. at 350, 359, 131 S.Ct. 2541. Rather, the plaintiffs must "affirmatively demonstrate" by a preponderance of actual evidence that they satisfy all the Rule 23 prerequisites. *White v. Symetra Assigned Benefits Serv. Co.*, 104 F.4th 1182, 1192 (9th Cir. 2024) (quoting *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541). In doing so, plaintiffs

"must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275, 134 S.Ct. 2398, 189 L.Ed.2d 339 (2014)).

As explained below, the district court did not rigorously analyze the Rule 23(a) commonality requirement, nor did it address whether common questions predominate over individual ones under Rule 23(b)(3). These omissions are magnified in this case because the plaintiffs seek damages for a plethora of circumstance-dependent and fact-specific constitutional violations that occurred during ten chaotic days of civil unrest across the City. We thus vacate the certification order for each of the damages classes.

### A. The Direct Force Class

[14]  We start by vacating certification of the Direct Force Class. Rule 23(b)(3) requires district courts to scrutinize classes before certifying them, but the district court here did not consider all of Rule 23(b)(3)'s prerequisites or rigorously analyze the commonality question under Rule 23(a). Instead, it found only that "the LAPD command's decision to employ less-lethal munitions in this case is a common question for the Direct Force class." And it did not address whether that question predominates under Rule 23(b)(3).

[15]  This analysis was not complete. At bottom, the Direct Force class alleges that the LAPD used excessive force on protestors. But excessive force claims are fact-specific, as the Supreme Court has made  **1259**  clear in other contexts. *See, e.g., Kisela v. Hughes*, 584 U.S. 100, 104, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018). These individualized considerations are no less important in a class action than they are in a case brought by a single plaintiff.

[16]  Consider representative plaintiff Abigail Rodas, whose jaw was fractured. To prove her excessive force claim, Rodas must first show (1) that she was injured by the LAPD's use of force, and (2) that the use of that force was objectively unreasonable under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Then, because she relies on *Monell* to hold the City liable, Rodas must also prove that an LAPD custom or policy was the "moving force" of her injury. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Customs or policies include "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). They do not include officers' independent choices. *Id.*

[17]  Satisfying these requirements will be difficult, as the record contains conflicting evidence about the source of Rodas's injury. She said in a declaration that she was hit in the face with a rubber bullet. But according to a hospital record, Rodas's friend—who was with Rodas when she was injured—told nurses that Rodas hit her face when she tripped on the sidewalk. Tripping on a sidewalk is not a constitutional injury, so at a minimum, Rodas's claim cannot be resolved until a fact-finder decides whether she was hit with a rubber bullet or just tripped. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (denying *Monell* claim where the plaintiff failed to prove a constitutional injury).

But resolving the source of Rodas's injury is only the first step. If the court or jury finds that she was hit with a rubber bullet, Rodas must also establish that the LAPD—and not the Santa Barbara police or Los Angeles Sheriff's Department, who are not parties here—fired that bullet. Then, Rodas must show that firing the bullet was objectively unreasonable. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. Reasonableness depends on the totality of the circumstances, including whether anyone around Rodas was throwing objects at police, whether she was retreating from the protest (and, if so, whether that would have been clear to a reasonable officer), whether the crowd had ignored a warning to disperse, and more. *See Felarca v. Birgeneau*, 891 F.3d 809, 818 (9th Cir. 2018). Rodas must thus present evidence on all those circumstances. *See id.* Then, because she brings a *Monell* claim, she must also prove that an LAPD policy caused her injury, rather than "mere negligence" or an individual officer's discretionary decision. *See Dougherty*, 654 F.3d at 900.

And here lies the problem: Even if Rodas proves every element of her claim, it will do nothing for the other class members. Shannon Lee Moore, for example, was hit at a different protest on a different day. To resolve her claim, Moore must present her own individual evidence that the LAPD used objectively unreasonable force, that she was injured as a result, and that the injury occurred because of an LAPD policy. *Graham*, 490 U.S. at 397, 109 S.Ct. 1865; *Dougherty*, 654 F.3d at 900. So too for Aranovich, Grenier, and every other member of the class.

Case 1:18-cv-00719-CCR Document 233-1 Filed 10/07/24 Page 12 of 17
**Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249 (2024)**
2024 Daily Journal D.A.R. 8659

[18] The district court dismissed these problems because it agreed with the plaintiffs that, individual issues aside, there is a class-wide question about whether the force used on the protestors was unreasonable. But that is not a question amenable *1260 to class treatment because the answer in this case depends on what force was used, what a particular class member was doing, what other protestors may have been doing, what the officers objectively observed, and a host of other factors. See Felarca, 891 F.3d at 818. Put another way, it is not enough to merely raise common questions or issues to satisfy Rule 23. Rather, plaintiffs must "be prepared to prove" that there are critical questions or issues that can be resolved on a class-wide basis. Wal-Mart, 564 U.S. at 350, 131 S.Ct. 2541 ("What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (cleaned up).

The plaintiffs here have not shown the existence of common evidence that can resolve in "one stroke" the class members' claims that hinge on a wide array of facts and circumstances. Id. On the one hand, the LAPD might legitimately use batons to break up protestors attacking a public bus with passengers inside. Felarca, 891 F.3d at 810. But spraying rubber bullets at people obeying a dispersal order would probably necessitate a different analysis. These situations thus require individual fact-finding and separate analyses.

Given the extensive individualized evidence necessary to prove the Direct Force Class's claims, the plaintiffs will face an uphill challenge in showing that common questions exist, let alone predominate over individual ones. Because the district court did not conduct any analysis on this issue, we vacate the certification of the Direct Force Class.

### B. The Arrest Class

[19] We next vacate the certification of the Arrest Class. Because it is also mainly an excessive force class, the Arrest Class presents many of the same certification issues as the Direct Force Class. And the district court's analysis of the Arrest Class is equally limited. The district court found that "the proposed class members' claims concerning their confinement and transportation in law enforcement vehicles are sufficiently common based on the evidence cited by Plaintiffs." As with the Direct Force Class, the district court did not mention Rule 23(b)(3)'s predominance requirement and did not sufficiently analyze Rule 23(a)'s commonality requirement (*e.g.*, identify what evidence the plaintiffs could use to answer the alleged common questions).

[20] This analysis is insufficient. Like the Direct Force Class, each member of the Arrest Class must prove that he or she was injured by an LAPD officer's objectively unreasonable use of force as a result of an LAPD custom or policy. Graham, 490 U.S. at 397, 109 S.Ct. 1865; Dougherty, 654 F.3d at 900. The district court apparently accepted the plaintiffs' argument that these elements can be established on a class-wide basis because the plaintiffs had alleged that "arrestees were uniformly tightly handcuffed," "uniformly without water or bathroom access," and "endured lengthy bus stays." But Rule 23 requires plaintiffs to prove—not just assert—that this case raises common issues that can be decided on a class-wide basis and that these common issues predominate over individual ones.

First, the record does not support that bus conditions were uniform. Although the plaintiffs insist that protestors were all denied water, at least one class member was given water when she asked for it, and many did not ask. And while some class members were held on buses for seven hours or more, others were held for under an hour. Some class members were put on buses with cages while others were transported using public buses. The plaintiffs *1261 contend that these differences are immaterial, but there is a significant difference between, on the one hand, a protestor left in a cage in a bus without any windows for the better part of a day without food or drink and, and on the other hand, a protestor kept on a public bus for an hour. These differences should have been addressed. Wal-Mart, 564 U.S. at 355, 131 S.Ct. 2541.

[21] [22] Second, even if some of the arrest conditions here are similar enough to amount to an LAPD policy, that does not resolve class-wide claims. The most universal complaint among Arrest Class plaintiffs is that the LAPD placed them in tight handcuffs. But placing someone in tight handcuffs is not inherently unconstitutional.[1] LaLonde v. Cnty. of Riverside, 204 F.3d 947, 960 (9th Cir. 2000). Whether the use of tight handcuffs violates the Fourth Amendment, like other excessive force issues, is usually "fact-specific" and "likely to turn on the credibility of the witnesses." Id. So a class member who asked for their handcuffs to be removed because they were losing sensation in their fingers might have a successful constitutional claim, especially if a jury believes there was no reason for the LAPD to refuse to loosen the handcuffs. See Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993). But a class member who never asked for their handcuffs to

Case 1:18-cv-00719-CCR    Document 233-1    Filed 10/07/24    Page 13 of 17
Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249 (2024)
2024 Daily Journal D.A.R. 8659

be removed, or whose pain a jury finds overstated, might not have a constitutional claim. *LaLonde*, 204 F.3d at 960.

 [23]   The same is true for the other Arrest Class claims. Like tight handcuffs, arrest conditions can be unconstitutional, but it depends how unnecessarily improper the conditions were. *See id.* To proceed, the plaintiffs must present more evidence about the conditions protestors faced. But it is hard to imagine how that evidence will resolve claims "in one stroke." *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541. Even if we assume, say, that some protestors were unconstitutionally kept in cages for several hours, that means little for the protestors who sat on public buses. Resolving the claims thus would require fact-finding specific to individual protestors, not class-wide evidence establishing only that the LAPD used buses to conduct arrests.

As with the Direct Force Class, it appears that individualized issues may likely overwhelm any common questions that might exist. (The Arrest Class also brings Fourteenth Amendment due process claims that are, if anything, more fact-specific than their excessive force claims). On remand, the district court should address what questions, if any, the plaintiffs could resolve using class-wide evidence. It should then address whether those questions predominate over the many individual issues.

### C. The Infraction Class

 [24]   We next vacate certification of the Infraction Class. As with the Direct Force and Arrest Classes, the district court did not address the City's arguments that the Infraction Class failed to satisfy Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement. But the predominance and commonality problems plaguing the Direct Force and Arrest Classes are just as present in the Infraction Class. The Infraction Class alleges **\*1262** that, for one reason or another, its members were arrested without individualized suspicion. The allegation that the suspicion must be individualized by definition render these claims poor candidates for class-wide resolution.

Take representative plaintiffs Mayorca and Kazin. Although they were both arrested for infractions, their claims require different evidence. Mayorca admits that he heard the LAPD's order to disperse, but he claims that the LAPD's actions made it impossible to obey. To determine whether his arrest was lawful, a fact-finder must therefore decide whether the LAPD made it impossible to obey its orders and, if so, and whether there was still probable cause to arrest him. *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (Probable cause is a "fluid" concept "not readily, or even usefully, reduced to a neat set of legal rules.") But that evidence will be irrelevant to Kazin, who was arrested on a different day, in a different place, and after she had been cited for a curfew violation.

Or, better yet, take Barrera-Trujillo and Lopez's mother. Barrera-Trujillo was arrested for a curfew violation, but she might have been arrested before the curfew. To resolve her claim, a fact-finder must decide whether she was in fact arrested before the curfew, and if so, whether there was probable cause to arrest her for something else. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007). Lopez's mother, meanwhile, was not even a protestor —she was simply trying to collect her son from the police station. She may have a stronger case that her arrest was unreasonable, but her situation is too unique to be of much use to any other class member.

 [25]   The plaintiffs argue that these individualized issues are irrelevant because every class member received an infraction, and it is unconstitutional to detain someone only to charge them with an infraction. But "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence," he may constitutionally arrest them. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). And, in any event, being charged with an infraction does not mean that someone could not have been arrested for or charged with a more serious crime.

Like the Direct Force and Arrest Classes, the Infraction Class that the district court certified brings claims that would appear to require individual fact-finding. We recognize that after the district court certified the classes here, the plaintiffs filed an amended complaint including a claim by the Infraction Class for deprivation of a state-created liberty interest in violation of the Fourth Amendment. Consistent with our directions elsewhere in the opinion, before certifying this claim, the district court should conduct a "rigorous analysis" to determine whether this new claim is capable of class-wide resolution. *Wal-Mart*, 564 U.S. at 351, 131 S.Ct. 2541 (citation omitted).

On remand, the district court should identify which questions it believes are common to the class and whether those

questions can be resolved using class-wide evidence. Then the district court should carefully consider whether those questions predominate over individualized ones.

### D. We are not persuaded by the plaintiffs' alternative bases for affirming the certification order.

The plaintiffs do not meaningfully dispute that the district court did not address Rule 23(b)(3)'s predominance requirement. Instead, they offer two reasons why we should still affirm certification of the damages classes. First, the plaintiffs urge us to attribute reasoning from other protest-related certification orders to the district *1263 court because the district court cited them. Second, the plaintiffs argue that Monell classes necessarily satisfy all of Rule 23's requirements. We are not persuaded by these arguments.

### 1. The citations to other district court certification orders do not satisfy Rule 23.

 [26]  To start, although the plaintiffs acknowledge that the district court's order does not mention Rule 23(b)(3)'s predominance requirement, they ask us to affirm certification because the district court cited other cases in which courts considered predominance. But passing citations to other district court orders fall short of the rigorous analysis Rule 23(b)(3) demands. We have vacated certification orders for less. *See, e.g., Miles v. Kirkland's Stores*, 89 F.4th 1217, 1223-24 (9th Cir. 2024) (remanding certification order for failure to scrutinize class member declarations closely enough). But the citations here are particularly inadequate because, if anything, the cited cases reveal how challenging it will be to find that common questions predominate.

Consider *Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*, 246 F.R.D. 621 (C.D. Cal. 2007) (*MIWON*). In *MIWON*, protestors were given advance permission to rally in a park until around 9:00 p.m., but the police cut them off early. *Id.* at 624. Due to a failure in the chain of command, that decision was not conveyed to the protestors, who were hit with less-lethal force without warning and denied any chance to disperse. *Id.* The *MIWON* court certified the class, and the plaintiffs contend that we must embrace its reasoning and apply it here.

Even assuming the *MIWON* court correctly certified the class, *MIWON* has little in common with this case. Every *MIWON* class member was subject to the same alleged policy failure—a broken link in the chain of command. *See id.* at 635. The *MIWON* protest took place at a single location on a single night. *Id.* at 624. And the class members thus experienced substantially similar constitutional injuries. *Id.* Here, sprawling classes allege a broad range of injuries based on a medley of LAPD conduct and policies, some of which occurred during different protests, at different times, and in different places. Perhaps it was possible to present class-wide evidence in *MIWON*—but that does not mean it would be here.

### 2. *Monell* classes do not automatically satisfy Rule 23.

 [27]  Next, the plaintiffs argue that we should affirm certification because Monell classes necessarily satisfy Rule 23(a)'s commonality and Rule 23(b)(3)'s predominance requirements. But Monell is not a magic word that allows a plaintiff to cast aside all the Rule 23 requirements for class certification.

 [28]  Plaintiffs seeking class certification based on challenges to a defendant's policies must show that the policies caused every class member's injury. *Wal-Mart*, 564 U.S. at 353, 355, 131 S.Ct. 2541. This is easier to do when plaintiffs challenge formal policies, such as an employer's class-wide wage-and-hour policy. *See, e.g., Tyson Foods*, 577 U.S. at 448, 136 S.Ct. 1036. It is harder when plaintiffs challenge informal policies, or where the evidence suggests that their injuries stem from discretionary decisions. *Id.* To satisfy commonality in those cases, plaintiffs must offer "some glue holding the alleged reasons for all those decisions together." *Wal-Mart*, 564 U.S. at 352, 131 S.Ct. 2541.

 [29]   [30]  The plaintiffs do not challenge any of the LAPD's formal policies, and they acknowledge that most of their injuries occurred because individual officers *1264 chose to violate formal LAPD policies. Typically, this would defeat commonality. *Wal-Mart*, 564 U.S. at 353, 355, 131 S.Ct. 2541. The plaintiffs argue, though, that Monell policies are unlike policies in other class action cases. As the plaintiffs point out, a policy is not just a helpful way to prove a Monell claim—it is a necessary element. *Heller*, 475 U.S. at 799, 106 S.Ct. 1571. And plaintiffs can establish a Monell policy by demonstrating "a pattern of similar constitutional violations." *Connick*, 563 U.S. at 62, 131 S.Ct. 1350. So, the plaintiffs urge, when a class brings a Monell claim, whether there is

Case 1:18-cv-00719-CCR Document 233-1 Filed 10/07/24 Page 15 of 17
Black Lives Matter Los Angeles v. City of Los Angeles, 113 F.4th 1249 (2024)
2024 Daily Journal D.A.R. 8659

a common question *is* a common question, and that satisfies Rule 23. We are not convinced.

 [31]  [32] Most fundamentally, plaintiffs cannot certify a class by merely alleging that a policy applies class-wide—and that a common question thus exists—without showing how common evidence can be used to prove their claims across the class members. As the Supreme Court held, "what matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart,* 564 U.S. at 350, 131 S.Ct. 2541 (citation omitted).

The plaintiffs here have identified potentially common questions (*i.e.*, the *Monell* policy) in the abstract but have remained silent on how they can practically provide common answers to those questions. *Id.* at 352, 131 S.Ct. 2541. Simply put, the plaintiffs have not explained what common evidence can prove the claims of the hundreds, if not thousands, of the members in all the classes who had diverging experiences.

 [33] Relatedly, the plaintiffs cannot simply allege that a policy applies class-wide—they have to present evidence that it does. Or, put another way: "If there is no evidence that the entire class was subject to the same allegedly [illegal] practice, there is no question common to the class." *Ellis,* 657 F.3d at 983. The plaintiffs hope to get around this by relying on different policies at different stages of the litigation. First, for certification purposes, they wish to rely on their allegations that class-wide experiences of arrest, use of force, and tight handcuffs are unconstitutional. But because these policies are not necessarily unconstitutional, *see Felarca,* 891 F.3d at 818, the plaintiffs also intend to prove (1) that violations occurred because officers were improperly trained, (2) that Chief Moore ordered or committed some violations himself, and (3) that Chief Moore ratified other violations after they occurred.

Permitting the plaintiffs to proceed this way would let them plead their way to class certification, which they may not do. *Comcast,* 569 U.S. at 33, 133 S.Ct. 1426. And unfortunately for the plaintiffs, the latter policies do not apply on class-wide bases. The failure to train officers, for example, is only grounds for *Monell* liability if the plaintiffs identify a "deficiency in [the City's] training program" that was "closely related to the ultimate injury" a class member suffered. *City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The City apparently waylaid its 40 mm rubber bullet training program during the COVID-19 pandemic, which may have left junior officers unprepared, so some class members may be able to meet this standard. But not every officer who used force was untrained, and not every protestor in the Direct Force Class was hit with a 40 mm rubber bullet. So establishing this policy does not resolve class-wide claims.

 *1265  [34] The same is true for Chief Moore's presence and post-violation ratifications. As someone with final decision-making power for the City, Chief Moore's presence at a protest or decision condoning a particular violation could establish a *Monell* custom or policy. *See Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996). But Chief Moore did not attend every individual protest that occurred during the summer of 2020, so his presence only goes so far. To the extent there is evidence suggesting that Chief Moore has condoned the conduct that caused some protestors' injuries, many—if not most—of the class members did not notify the LAPD that they were injured. And if the LAPD did not know that a violation occurred, it could not have condoned the violation. *Trevino,* 99 F.3d at 918.[2]

## II. We vacate certification of the Injunctive Relief Class because the district court did not identify questions common to the class.

 [35] We finally vacate the certification of the Injunctive Relief Class. Before certifying an injunctive class under Rule 23(b)(2), district courts must find that the class satisfies the Rule 23(a) factors. Fed. R. Civ. Pro. 23(b)(2). Among other things, Rule 23(a) requires that there are questions common to the class, meaning questions that answer every class member's claim "in one stroke." *Wal-Mart,* 564 U.S. at 350, 131 S.Ct. 2541. While common questions need not predominate over individual questions for a class to be certified as a Rule 23(b)(2) injunctive class, district courts still must identify what questions are common to the class and how the plaintiffs will present evidence about those questions on a class-wide basis. *Id.*

 [36] The district court did not address this commonality requirement. The plaintiffs view this as a nonissue because they have already received an injunction on behalf of the class.[3] Injunction or not, the class should be certified only if it raises common questions—and it is unclear that it does.

The plaintiffs suggest that the district court's commonality findings for the damages classes apply to the Injunctive Relief Class, but even if the district court made any findings, they involved *Monell* policies. The Injunctive Relief Class does not bring a *Monell* claim, so those findings do not apply.

The plaintiffs also point out that some other district courts have certified protest classes under Rule 23(b)(2). But as explained above, those classes involved single protests where all class members brought identical claims. *See MIWON*, 246 F.R.D. at 624. The Injunctive Relief Class here, by contrast, encompasses thousands of people who attended the Los Angeles George Floyd protests, including anyone who falls into any of the damages classes, as well as (1) protestors who were not hit with direct force, arrested, or harmed in any way; (2) protestors who were arrested **\*1266** for felonies or looting violations; and (3) protestors who threw water bottles and fireworks at police, among other acts of violence. It is hard to imagine what all these people have in common.

Most courts faced with George Floyd protest classes seeking injunctive relief under Rule 23(b)(2)—many of which were narrower than the class here—denied certification for similar reasons. For example, a Northern District of California court refused to certify a group of Bay Area plaintiffs who sought an injunction against the Oakland police because the class included protestors who were injured by people other than the Oakland police, protestors who did not demonstrate peacefully, and people who were injured by practices other than those the class challenged. *Anti Police-Terror Project v. City of Oakland*, No. 20-cv-03866-JCS, 2021 WL 4846958, at *5 (N.D. Cal. Oct. 18, 2021). The District of Oregon did the same for a similar class. *Don't Shoot Portland v. City of Portland*, No. 3:20-cv-00917-HZ, 2022 WL 2700307, at *11 (D. Or. July 12, 2022).

On remand, the district court should address whether there are in fact questions common to the Injunctive Relief Class. If there are not, the district court should decline to certify the class.

## CONCLUSION

We **VACATE** the class certification order and **REMAND** so that the district court may analyze the Rule 23 requirements consistent with this opinion.

**All Citations**

113 F.4th 1249, 2024 Daily Journal D.A.R. 8659

---

## Footnotes

1  The City raised this argument during the certification hearing but the district court discounted it because it was related to "the merits of the proposed class members' claims." Although district courts should not deny class certification based on the merits of the claims, they "*must* consider the merits if they overlap with the Rule 23[ ] requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Here, the merits of the various constitutional claims overlap extensively with Rule 23's requirements, and the district court had to consider them. *See id.*

2  The plaintiffs have asked that, if we find the district court's order lacking, we certify a *Monell* Issue Class under Rule 23(c)(4) rather than vacate the certification order outright. Although plaintiffs' motion for class certification did include issue classes as an alternative to Rule 23(b)(3) certification, the district court did not make any findings about issue classes. *See* ER 3–4, SER 37. And we will not do so in its place. In any event, even issue classes must satisfy Rule 23(a)'s commonality requirement before they can be certified. *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1189 (10th Cir. 2023); *Harris v. Med. Transportation Mgmt., Inc.*, 77 F.4th 746, 756–57 (D.C. Cir. 2023).

3   The City argued before the district court that the Injunctive Relief Class lacked Article III standing, but the district court granted a preliminary injunction without addressing that argument. The City did not appeal the preliminary injunction, and it has not objected to the class's standing during this appeal.

---

**End of Document**                                             © 2024 Thomson Reuters. No claim to original U.S. Government Works.