UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLACK LOVE RESISTS IN THE RUST by and
through its Co-Directors Natasha Soto and Shaketa
Redden and on behalf of its members; DORETHEA
FRANKLIN; TANIQUA SIMMONS; DE'JON HALL;
JOSEPH BONDS; CHARLES PALMER; SHIRLEY
SARMIENTO; EBONY YELDON; and JANE DOE,
individually and on behalf of a class of all others
similarly situated;

                                    Plaintiffs,

            v.                                                      Civil No.: 1:18-cv-00719-CCR

CITY OF BUFFALO, NY; BYRON B. BROWN,
Mayor of the City of Buffalo, in his individual and
official capacities; BYRON C. LOCKWOOD,
Commissioner of the Buffalo Police Department, in his
individual and official capacities; DANIEL DERENDA,
former Commissioner of the Buffalo Police Department,
in his individual capacity; AARON YOUNG, KEVIN
BRINKWORTH, PHILIP SERAFINI, ROBBIN
THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities.

                                    Defendants.
_____


# BRIEF IN RESPONSE TO PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF CLASS CERTIFICATION

**HODGSON RUSS LLP**
*Attorneys for Defendants City of Buffalo, NY, Byron B. Brown, Byron C. Lockwood, Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, and Unknown Officers 1-20*
Hugh M. Russ III, Esq.
Peter Sahasrabudhe, Esq.
Cheyenne N. Freely, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000
hruss@hodgsonruss.com
psahasra@hodgsonruss.com
cfreely@hodgsonruss.com

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PROCEDURAL HISTORY..................................................................................................1

POINT I.      PLAINTIFFS' NEW POSITION ON DAMAGES DOES NOT CURE
              THE DEFECTS IN THEIR PROPOSED CLASSES...............................................3

       A.     Plaintiffs' Claim for Economic Damages will Require Individualized
              Inquiries ...............................................................................................4

       B.     Plaintiffs Cannot Establish Entitlement to General Damages Through
              Common Evidence..................................................................................8

POINT II.     PLAINTIFFS FAIL TO PROVIDE SPECIFIC AND MANAGEABLE
              STANDARDS FOR THEIR TRAFFIC ENFORCEMENT CLASS. ..................10

CONCLUSION .............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Baltas v. Maiga,*
    2020 WL 6275224 (D. Conn. Oct. 26, 2020) .......................................................................12

*Barnes v. District of Columbia,*
    278 F.R.D. 14 (D.C. Cir. 2011) ...........................................................................................8

*Betances v. Fisher,*
    2022 WL 765963 (S.D.N.Y. Mar. 14, 2022) .........................................................................8

*Black Lives Matter Los Angeles v. City of Los Angeles,*
    113 F.4th 1249 (9th Cir. 2024) ....................................................................................4, 5, 6

*Burton v. City of Belle Glade,*
    178 F.3d 1175 (11th Cir. 1999) .........................................................................................11

*In re Cincinnati Policing,*
    209 F.R.D. 395 (S.D.Oh. 2002) ........................................................................................14

*City of N.Y. v. Mickalis Pawn Shop, LLC,*
    645 F.3d 114 (2d Cir. 2011)..............................................................................................13

*Cuviello v. City of Oakland,*
    2009 WL 734676 (N.D.Cal. Mar. 19, 2009).........................................................................12

*Dellums v. Powell,*
    566 F.2d 167 (D.C. Cir. 1977) ...........................................................................................8

*Floyd v. City of N.Y.,*
    283 F.R.D. 153 (S.D.N.Y. 2012) ........................................................................................9

*Hall v. Ala. State Univ.,*
    2023 WL 6276336 (M.D.Ala. Sep. 26, 2023) .....................................................................12

*A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.,*
    840 F. Supp. 2d 660 (E.D.N.Y. 2012) ...............................................................................10

*In re Nassau Cnty. Strip Search Cases,*
    2008 WL 850268 (E.D.N.Y. Mar. 27, 2008).........................................................................8

*Payne v. Travenol Labs., Inc.,*
    565 F.2d 895 (5th Cir. 1978) ...........................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

*Peregrine Myanmar Ltd. v. Segal*,
    89 F.3d 41 (2d Cir. 1996) ........................................................................................10

*Purgess v. Parauda*,
    2021 WL 2269540 (S.D.N.Y. June 3, 2021) ...........................................................10

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) .................................................................................................10

*U.S. v. Matusoff Rental Co.*,
    494 F. Supp. 2d 740 (S.D.Oh. 2007) .......................................................................12

*U.S. v. Sturdevant*,
    2009 WL 10689852 (D.Kan. Dec. 11, 2009) ..........................................................12

*Wakefield v. Scott*,
    2021 WL 10342467 (D.Vt. June 24, 2021) ..............................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................................................4

*Walker v. City of Calhoun, GA*,
    682 F. App'x 271 (11th Cir. 2017) ..........................................................................12

*Whitehead v. Walt Disney Co.*,
    2024 WL 3678257 (S.D.N.Y. July 23, 2024) ..........................................................13

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................15

Fed. R. Civ. P. 23(b)(3) ...................................................................................................14

Fed. R. Civ. P. 65 ...............................................................................................10, 12, 13

With the Court's blessing, the City respectfully submits this brief in response to Plaintiffs' supplemental filing in further support of their motion for class certification, Dkt. No. 241, ("Plaintiffs' Supplement").  For the reasons articulated here, and for the reasons established in the City's original opposition to Plaintiffs' motion for class certification, Dkt. No. 220, (the City's Opposition), the Court should deny Plaintiffs' motion for class certification.

## PROCEDURAL HISTORY

It is important to review the procedural history underlying Plaintiffs' application. Plaintiffs have now had three attempts to justify certification.  They have failed.  On May 29, 2024, Plaintiffs filed their motion for class certification ("Plaintiffs' Motion").  Dkt. Nos. 202-212.  In it, Plaintiffs proposed the following three classes:

1. <u>The Checkpoint Class:</u> "All individuals who received a ticket or were arrested at a BPD 'traffic safety' vehicle checkpoint on or after June 28, 2015."

2. <u>The Tinted Windows Class:</u> "All Black and/or Latino individuals who received multiple tinted window tickets from the BPD in a single traffic stop on or after June 28, 2015."

3. <u>The Traffic Enforcement Class:</u> "All Black and/or Latino individuals who have been or will be subjected to traffic stops, traffic tickets, and 'traffic safety' vehicle checkpoints by the BPD."

Dkt. No. 211, p. 3. While the Checkpoint and Tinted Windows Classes (the "Proposed Damages Classes") seek damages, the Traffic Enforcement Class seeks injunctive relief.  Specifically, Plaintiffs' Motion purports to seek an order:

a) enjoining the City from conducting vehicle checkpoints for the purpose of general crime control; targeting Buffalo motorists for traffic stops, tickets, and vehicle Checkpoints based on their race and ethnicity; and performing traffic stops and vehicle Checkpoints for improper pecuniary purposes;

     b)   requiring the City to implement programs and policies with respect to supervision, monitoring, accountability, training, and discipline that will significantly reduce the risk that BPD officers will subject people to racially discriminatory traffic enforcement;

     c)   requiring the BPD to document all traffic stops and tickets in sufficient detail required for independent supervisory review for compliance with the Fourth and Fourteenth Amendments and Title VI of the Civil Rights Act and to ensure such documentation is retained in a single, up-to-date computerized database.

*Id.* at pp. 48-49.

The City filed its opposition to the motion for class certification on July 12, 2024. Dkt. Nos. 219-220. Pertinent to this supplemental briefing, the City argued that the Proposed Damages Classes necessitate individualized inquiries that cannot be resolved on a class-wide basis. *See generally* Dkt. No. 220. The City also argued that the relief sought by the Traffic Enforcement Class failed to provide any workable standards for the issuance of an injunction and for evaluation of noncompliance. *Id.* at p. 41-42. Plaintiffs filed their reply in further support of Plaintiffs' Motion on August 9, 2024. Dkt. Nos. 223-224.

On October 23, 2024, the Court held oral argument concerning Plaintiffs' motion for class certification. Dkt. No. 244 p. 1. The Court voiced concerns similar to those the City has specified. *See id.* at 3-5, 7-8. At oral argument, Plaintiffs were unable to provide clarification on the precise categories of damages that they actually seek for the Proposed Damages Classes. *Id.* at 31:13-38:5; 91:9-15. Plaintiffs were also unable to sufficiently articulate how the order sought by the Traffic Enforcement Class differs from a general "obey the law" injunction or what the specifics of that order would be. *Id.* at 47:49:22. As a result, the Court granted Plaintiffs leave to submit supplemental briefing on the following topics: (1) clarification of the damages Plaintiffs seek; (2) case law certifying classes with future members;

and (3) specifics of the Traffic Enforcement Class, including the issues of what the injunction would prohibit, who would be subject to it, and how the Court would determine who is in the class.  *Id.* at 91:9-91:21; 95:16-21; 99:5-12.

Over a month after oral argument, Plaintiffs filed their supplemental briefing purporting to address these issues.  *See* Dkt. No. 241.  Plaintiffs' supplemental brief fails to cure the deficiencies in their Proposed Classes.  Without hesitation, the Court should deny Plaintiffs' motion.

**POINT I.    PLAINTIFFS' NEW POSITION ON
DAMAGES DOES NOT CURE THE DEFECTS
IN THEIR PROPOSED CLASSES.**

Plaintiffs' "clarification" of what damages they seek for their Proposed Damages Classes fails to remedy the individualized liability and damages determinations that will have to be made by this Court or a jury.  This failure, alone, defeats the motion for class certification. Plaintiffs assert that they are not seeking damages for consequential harms, such as emotional distress and lost wages.  Dkt. No. 241, pp. 1-2.  But Plaintiffs still seek: (1) general damages; (2) punitive damages; (3) direct economic damages—fines and fees paid for tickets and impounds; and (4) equitable disgorgement of same.  *Id.*  No matter how characterized, Plaintiffs' request for these damages, specifically Plaintiffs' demands for general damages, direct economic damages, and equitable disgorgement,[1] require individual determinations.  This requirement proves fatal to class certification.

---

[1]    Plaintiffs' reference to "equitable disgorgement" seems to be interchangeable with their request for economic damages for tickets issued and vehicles towed.  In other words, it is

**A.**    **Plaintiffs' Claim for Economic Damages will Require Individualized Inquiries**

Recognizing that the economic damages they seek are not available under their Fourth Amendment claim, Plaintiffs clarify that they are only seeking economic damages under their Fourteenth Amendment claim. *See* Dkt. No. 241, p. 2. The fundamental problem with Plaintiffs' change of course is that a Fourteenth Amendment analysis requires individualized inquiries that are not involved with a Fourth Amendment claim. Whereas Plaintiffs would only have to show that they were stopped or their vehicles seized to invoke the Fourth Amendment, Plaintiffs now will have to show that they incurred economic injury because of a racially discriminatory policy enforced by the BPD.

"Plaintiffs seeking class certification based on challenges to a defendant's policies must show ***that the policies caused <u>every</u> class member's injury.***" *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1265 (9th Cir. 2024) (emphasis added). The issue here is that Plaintiffs' alleged economic injuries stem from discretionary decisions across a long period of time—BPD officers choosing whether to write them tickets and whether to impound their vehicles. For each stop, the Court or a jury will have to determine whether the ticket and/or impound was the result of an officer following a discriminatory policy (assuming Plaintiffs could establish such a policy exists), an officer exercising lawful discretion, or an officer following BPD's express policy to enforce vehicle and traffic violations. *Id.* at 1259. But to satisfy the heavy burden of demonstrating commonality, Plaintiffs "must offer some glue holding the alleged reasons for all those decisions together." *Id.* at 1265 (citing *Wal-Mart Stores,*

---

a different way of requesting the same thing. We therefore treat Plaintiffs' request for equitable disgorgement as interchangeable with their request for economic damages.

*Inc. v. Dukes*, 564 U.S. 338, 352 (2011)).  Because each class member's Fourteenth Amendment claim will require an individualized evidentiary showing, no common evidence would provide this glue for all tickets and/or impounds challenged in this case.

Indeed, Plaintiffs' supplemental briefing, in particular, and their motion for class certification, in general, gloss over a very important point.  BPD, like every other law enforcement agency across the country, has a policy of enforcing traffic laws passed by the State Legislature to ensure roadway safety and the safety of motorists within the City of Buffalo.[2]  *See* Declaration of Cheyenne N. Freely dated December 6, 2024 (hereinafter "Freely Decl."), Exhibit 1 (hereinafter "BPD MOP"), Chapter 7 §§ 1.1, 1.2, 4.0.  In many instances, class members likely received a ticket and incurred economic fines because of this policy—not the racially discriminatory policies alleged by Plaintiffs.  Plaintiffs seem to believe that because their claims involve allegations of racially discriminatory policies, each class member can establish entitlement to damages without any individualized inquiry or assessment from a fact finder.  The problem with that position is that there are certainly class members who received tickets for legitimate reasons having nothing to do with the alleged "racially discriminatory policies" of BPD.  In many instances (we would contend almost all), an individual officer was likely motivated by the desire to enforce the law and to further BPD's policy of promoting roadway

---

[2]     "It is the policy of the Buffalo Police Department to maintain a safe and even flow of vehicular traffic throughout the City so that accidents can be prevented and congestion avoided."  BPD MOP § 1.1.  "It is the responsibility of all uniformed personnel to actively participate in the supervision and control of traffic."  *Id.* at § 1.2.  "Traffic enforcement[']s primary focus is to educate and correct motorists['] driving habits that violate NYS Vehicle and Traffic laws as well as cause a danger to the roadways within the City of Buffalo."  *Id.* at § 4.1.

safety.  Even assuming that Plaintiffs could establish that racially discriminatory policies existed

(an issue which is vehemently disputed), each class member would have to show that the claimed

damages **resulted** from those discriminatory policies and not something else.  *Black Lives Matter*

*Los Angeles*, 113 F.4th at 1265 (emphasis added).  To make that determination, the fact finder

will have to make individualized findings for each class member as to why they were ticketed

and why an officer chose to take a particular course of action.  These individualized inquiries

doom class certification.  *Id.*[3]

     These individualized inquiries would be particularly onerous for the Tinted

Windows Class, which seeks damages associated with tinted window tickets at any kind of

traffic stop; the Class is not confined to tinted window tickets issued at Checkpoints.  *See* Dkt.

No. 244, 21:14-23:4.  The Court or jury will have to analyze whether tens of thousands of tinted

window tickets issued by the BPD over the course of nearly a decade resulted from a racially

discriminatory policy, the lawful discretion of BPD officers, or the BPD's policy to issue

---

[3]    We are not naïve as to the relationship between minority communities and law
enforcement agencies throughout our Nation's history.  Because of that history, Congress
and the New York State Legislature have, appropriately, given individuals mechanisms to
seek redress when they have cause to believe they were the victim of racial
discrimination by police.  But to prove discrimination, **and to be entitled damages**, those
individuals need to make fact specific showings about their interactions with police.
Plaintiffs cannot do away with those important individualized questions, which are
fundamental to the truth-seeking process.  Individualized questions will have to be
answered for each class member to determine whether they have been subjected to racial
discrimination in violation of the Fourteenth Amendment.  Those individualized
questions are fatal to class certification.  It cannot be that class members are entitled to
recover only through a showing that they are a minority and that they received a ticket.
Class members, on an individual basis and through individual claims, must be required to
make a more detailed and individualized evidentiary showing to substantiate very serious
allegations of racial discrimination.

citations for race-neutral vehicle and traffic violations defined by the New York State Legislature. The class action mechanism was not designed to undertake this kind of analysis. Surely there were many class members who were legitimately stopped and cited for tinted windows not because of their race or because of some discriminatory policy, but because having tinted windows is an actual violation of a rationally based law designed to protect motorists, police officers, and the public.

Although these individualized inquiries may not be quite as onerous for the Checkpoint Class, they still predominate, especially concerning the economic damages sought by those class members. For each class member ticketed at a Checkpoint, a factfinder would have to make a determination not just as to why a stop was made, but also why a particular ticket or citation was issued. Every single Checkpoint ticket will necessitate a fact intensive inquiry as to what policy motivated a particular officer's course of action. Because of these fact intensive inquiries for each class member, Plaintiffs cannot demonstrate commonality for the Checkpoint Class, either.

In sum, the members of the Proposed Damages Classes will not be able to show, ***with common evidence***, that their alleged economic injuries resulted from a racially discriminatory policy. Individualized evidence specific to each class member will be required to make that kind of showing. Accordingly, the Court should deny Plaintiffs' Motion to certify the Proposed Damages Classes.

**B.**    **Plaintiffs Cannot Establish Entitlement to General Damages Through Common Evidence**

Plaintiffs' demand for general damages is further flawed.  Plaintiffs argue that the general damages for lost liberty and/or the dignitary harms of racial discrimination are "inherently common among class members."  *See* Dkt. 241, p. 2.  This is false.  People react differently.  General damages would vary based on, among other things, the number of stops, length(s) of the stop(s), events that occurred during each stop, and the number of tickets issued.[4] As the Court noted, individual evaluations that examine the difference between "two tickets for tinted windows versus five tickets or a stop that lasts 20 minutes versus a stop that lasts 45 minutes," are individual inquiries that cannot be resolved on a class-wide basis with any common evidence.  Dkt. No. 244, 4:7-13.  Despite three attempts, Plaintiffs have not cured this defect.

This case is simply not suited for general damages.  Plaintiffs' Motion cites to several cases where courts awarded general damages.  Dkt. No. 211, pp. 46-47.  Some of the key distinctions between those cases and this case are the types of policies at issue and the lengths of time for which they were instituted.  *Nassau Cnty.*, *Barnes*, *Betances*, and *Dellums* all either involve (a) a formal policy executed over an elongated period of time or (b) an informal policy executed during a brief period of time.  *See In re Nassau Cnty. Strip Search Cases*, 2008 WL 850268, at *1 (E.D.N.Y. Mar. 27, 2008) (plaintiffs claimed blanket policy regarding strip

---

[4]    The only "inherently common" feature of the damages the class members seek is that they were subject to a traffic stop. If Plaintiffs were to offer any testimony beyond the fact that they were stopped, such as how long they were stopped for, what tickets they received at a stop, and whether they perceived the stop to be racially motivated, the proceedings would be focused on damages specific to each Plaintiff.  Those are not the kind of injuries that "general damages" were designed for.

searches executed for over three years was unconstitutional); *Barnes v. District of Columbia*, 278 F.R.D. 14, 16 (D.C. Cir. 2011) (plaintiffs claimed over detentions and strip searches pursuant to a formal policy and executed for over a year were unconstitutional); *Betances v. Fisher*, 2022 WL 765963, at *12 (S.D.N.Y. Mar. 14, 2022) (plaintiffs claimed formal policy resulting in unlawful detentions and PRS restrictions for over a year was unconstitutional); *Dellums v. Powell*, 566 F.2d 167, 173 (D.C. Cir. 1977) (plaintiffs claimed that arrests executed in a single day during an antiwar protest were the result of an informal policy to frustrate protestors' First Amendment rights); *see also Floyd v. City of N.Y.*, 283 F.R.D. 153, 159 (S.D.N.Y. 2012) (plaintiffs claimed that New York City's formal stop and frisk policy executed between 2004 and 2009 was unconstitutional).  When those two features are present, it creates a situation where class members have a uniform set of experiences and therefore can be adequately compensated with general damages, almost as if the Court only had to apply a formula.

This case is different.  Plaintiffs' allegations focus on an alleged informal policy which Plaintiffs claim the BPD allegedly executed for years.  Plaintiffs claim that the City acted pursuant to an informal policy of unlawful and discriminatory traffic enforcement.  *See, e.g.*, Dkt. No. 211, p. 13.  The Proposed Damages Classes ask this Court to analyze such practices as far back as June 28, 2015.  *See* Dkt. No. 211, p. 12.  Plaintiffs have failed to offer any authority to support general damages where, as here, they assert constitutional deprivations from an informal policy executed for nearly a decade.  When this kind of "policy" is challenged, it will demand individualized inquiries not suitable for class treatment, let alone general damages. Every class member's experience and interaction with the police is inherently unique.

Indeed, Plaintiffs fail to show how they would adduce proof of general damages that would be applicable to all class members.  As soon as any questions were asked to a particular class member about the duration of the stop, how many times they were stopped, and how many tickets they were issued, the proceedings would be focused on individual damages rather than general damages applicable across a class.  Plaintiffs have not indicated that they will apply a formula or other objective standard to each member.  In short, a jury would need to hear evidence concerning each class member to determine whether that class member was entitled to damages at all.  This case just does not lend itself to a general damages approach because evidence of each of the class members' claimed damages will be unique.

For these reasons, any determination of damages for the Proposed Damages Classes will require determinations of individual issues that will predominate over any common questions.  The Court should deny Plaintiffs' Motion to certify the Proposed Damages Classes.

**POINT II.    PLAINTIFFS FAIL TO PROVIDE SPECIFIC AND MANAGEABLE STANDARDS FOR THEIR TRAFFIC ENFORCEMENT CLASS.**

Contrary to their arguments, Plaintiffs do not seek "tailored injunctive remedies."  They seek an "obey the law" type of injunction with amorphous standards that they fail to sufficiently articulate.  Plaintiffs have not provided the Court with any guidance to fashion such an injunction, which they want to apply to literally any Black or Latino motorist who will at any point drive within the City of Buffalo.

"[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996).  An injunction must be "in specific terms and describe in reasonable detail . . . the act or

acts sought to be restrained." *A.M. ex rel. J.M. v. N.Y.C. Dep't of Educ.*, 840 F. Supp. 2d 660, 677 (E.D.N.Y. 2012) (internal quotations and citations omitted); *see also Purgess v. Parauda*, 2021 WL 2269540, at *5 (S.D.N.Y. June 3, 2021) ("basic fairness requires that those enjoined receive *explicit* notice of precisely what conduct is outlawed." (citing *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (emphasis added)).  Plaintiffs have not provided the required reasonable detail.

Instead, Plaintiffs list a slew of remedies "that ***may*** be appropriate in this case. . ." Dkt. No. 241, pp. 11 (emphasis added).  These remedies are merely expansions upon and rewording of the unsatisfactory description they provided in their motion for class certification. *Compare* Dkt. No. 211, pp. 48-49 *with* Dkt. No. 241, p. 11.  They are nothing more than demands for "obey the law" injunctive relief.  For example, Plaintiffs ***might*** seek an injunction ordering the "[c]essation of BPD policies and practices contributing to racially biased traffic enforcement, including an end to pretextual traffic stops, "traffic safety" vehicle checkpoints and multiple tinted windows ticketing."  Dkt. No. 241, p. 11.  This explanation is merely an expansion and rewording, without any criteria, of Plaintiffs' original request for an order "enjoining the City from conducting vehicle checkpoints for the purpose of general crime control; targeting Buffalo motorists for traffic stops, tickets, and vehicle Checkpoints based on their race and ethnicity; and performing traffic stops and vehicle Checkpoints for improper pecuniary purposes." Dkt. No. 211, p. 3.  Both requests ask the Court to order the City to obey the law—specifically, to not engage in racially discriminatory policing or to stop motorists without probable cause; better known as "obey the law" injunctive relief.  *See Wakefield v. Scott*, 2021 WL 10342467, at *4 (D.Vt. June 24, 2021) (where plaintiff alleged the defendant officers

violated her constitutional rights with race-based discriminatory traffic stops, plaintiff's demand for injunctive relief ordering defendants to cease the practice was nothing more than an "obey the law" injunction); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that demand seeking to enjoin municipal defendant from discriminating based on race was an impermissible "obey the law" injunction).[5]

Plaintiffs also demand unspecific "[r]eforms to supervision and discipline so that officers are held accountable for violations of policy and constitutional rights. . ."  Dkt. No. 241, p. 11, presenting yet another instance of Plaintiffs' inability to comply with Rule 65.  It is equally unclear what "reforms" would be necessary to accomplish such a goal.  It is unclear what degree of accountability is required and how that would be measured.  The demand for such relief across the board for all "violations of policy and constitutional rights" is similarly undefined: the demand goes well beyond the allegations in this lawsuit.  In other words, there is no "operative command capable of enforcement or review" and the demand "offers no guidance on the

---

[5]    *See also Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897-898 (5th Cir. 1978) (holding that demand seeking to enjoin defendant from discriminating based on color, race, or sex in employment practices was an unsustainable "obey the law" injunction); *Baltas v. Maiga*, 2020 WL 6275224, at *22 (D. Conn. Oct. 26, 2020) (demand for injunction enjoining defendants from retaliating against plaintiff dismissed for failure to comply with Rule 65); *U.S. v. Sturdevant*, 2009 WL 10689852, at *5 (D.Kan. Dec. 11, 2009) ("Injunctions which seek to prohibit 'discrimination' do not satisfy Rule 65(d) because they do no more than instruct defendants to obey the law." (citing *U.S. v. Matusoff Rental Co.*, 494 F. Supp. 2d 740, 757 (S.D.Oh. 2007)); *Cuviello v. City of Oakland*, 2009 WL 734676, at *3 (N.D.Cal. Mar. 19, 2009) (demand for injunctive relief stating defendants could only make 'lawful arrests' and prohibiting defendants from interfering with plaintiffs' free speech rights was an unenforceable "obey the law" injunction); *Hall v. Ala. State Univ.*, 2023 WL 6276336, at *16 (M.D.Ala. Sep. 26, 2023) (demand for injunctive relief prohibiting defendant from discriminatory conduct towards plaintiff was an unenforceable demand for an "obey the law" injunction).

minimal standards required by the Constitution." *Walker v. City of Calhoun, GA*, 682 F. App'x 271, 724 (11th Cir. 2017) (holding that injunction ordering municipal defendant to implement constitutionally compliant post-arrest procedures violated Rule 65). Plaintiffs' Motion dedicates dozens of pages arguing that the BPD does not follow "best practices." *See* Dkt. No. 211, pp. 16-21; *see also* Dkt. No. 203-2. Even if this argument had any merit (which the City disputes), the failure to follow "best practices" does not equate to a constitutional violation.

Additionally, Plaintiffs' "new" remedies only beg more questions that further complicate manageability—what practices contribute to racially biased traffic enforcement, how would the Court determine when a stop is pretextual, what is sufficient accountability for officer supervision and discipline, what reforms would accomplish Plaintiffs' lofty goals, what is a pattern of biased policing, what constitutes meaningful community input on additional policing reforms? And, is this Court the appropriate body to make these determinations? These are open-ended questions that would require analysis on a case-by-case basis. Where, as here, a demand for an injunction requires the defendant to comply with the constitution and adopt unspecific measures to prevent violations, the demand does not comply with Rule 65: the request cannot be enforced. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011).

Plaintiffs' proposed injunctive relief also exceeds necessary measures that would address the core of their allegations. "[A] request for injunctive relief must necessarily be tied to the specific claims on which the plaintiff is proceeding." *Whitehead v. Walt Disney Co.*, 2024 WL 3678257, at *2 (S.D.N.Y. July 23, 2024). Plaintiffs propose "debt relief and financial assistance for low-income people dealing with unaffordable repairs, unpaid tickets, waiver of outstanding tickets and towing fees, and reinstatement of suspended driver's licenses." Dkt. No.

241, p. 11.  How financial relief to *all* low-income people, regardless of race, would address

Plaintiffs' allegation that the BPD unconstitutionally and discriminatorily targets Black and

Latino individuals for traffic enforcement is unclear.  Moreover, would this requirement be

limited or endless?  How long would the City be forced to offer debt relief and financial

assistance to all low-income people ticketed for vehicle and traffic violations?  Plaintiffs simply

neglect to address these fundamental issues.  Even if this request were tailored to Black and

Latino individuals and provided a reasonable time limitation, "debt relief" and "financial

assistance" are compensatory in nature.  Plaintiffs attempt to transform their injunctive relief

class into a class requesting damages.  Plaintiffs cannot circumvent the requirements of Rule

23(b)(3) by labeling the Traffic Enforcement Class as "injunctive," when it really demands

compensatory relief.

        The Traffic Enforcement Class, and the remedies it seeks, is unmanageable, as

Plaintiffs' newly fashioned suggested remedies make clear.  The case might be different if the

Traffic Enforcement class focused on a specific police practice, like stop and frisk or even

Checkpoints.  Yet, even when the Court gave Plaintiffs an opportunity to narrow their class

definition and the relief requested, Plaintiffs have declined.  The proposed class encompasses

virtually any kind of law enforcement practice, applies to any number of situations, and involves

an incalculable number of motorists who may or may not face future harms.  Again, this is not

why the class action mechanism was designed, and the Court should deny Plaintiffs' request to

certify the Traffic Enforcement Class.

        Plaintiffs list a series of "manageable processes" that the Court could use to

fashion the injunction.  Dkt. No. 241, pp. 10, 12-15.  Plaintiffs point to *In re Cincinnati Policing*,

209 F.R.D. 395 (S.D.Oh. 2002) as a "landmark" case that this Court should follow in fashioning an injunction for the Traffic Enforcement Class. Dkt. No. 241, p. 14. In reality, that case involved a joint motion of all parties for class certification and approval of a collaborative agreement as settlement of the class claims. *Id.* at 396. Indeed, none of Plaintiffs' authorities claiming to set an "example" for this Court even involve injunctions. They merely discuss the tools used by the *parties* to collaborate as to an agreement to *settle* claims for injunctive relief. Dkt. No. 241, pp. 9-15. Plaintiffs must assume that the Court does not read the cases they cite. Oral argument revealed that the Court reads and considers everything. Plaintiffs have not provided any clarity that would make their requested injunction manageable.

Plaintiffs also argue that the Traffic Enforcement Class should be certified, in part, because it meets the commonality and typicality requirements of Rule 23(a). The Court should not consider this re-warmed argument. As Plaintiffs acknowledged at oral argument, Dkt. No. 244, 47:7-9, the City does not challenge commonality or typicality for the Traffic Enforcement Class. Moreover, the Court did not grant Plaintiffs' leave to brief this undisputed point.

For these reasons and for the reasons articulated in the City's Opposition, the Court should not certify the Traffic Enforcement Class.

## **CONCLUSION**

For these compelling reasons, Plaintiffs' motion for class certification should be denied in its entirety.

Dated:        December 6, 2024

**HODGSON RUSS LLP**

*Attorneys for Defendants City of Buffalo, NY, Byron B. Brown, Byron C. Lockwood, Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, and Unknown Officers 1-20*

By: _ */s/ Cheyenne N. Freely*_____
        Hugh M. Russ III, Esq.
        Peter Sahasrabudhe, Esq.
        Cheyenne N. Freely, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000
*hruss@hodgsonruss.com*
*psahasra@hodgsonruss.com*
*cfreely@hodgsonruss.com*