# Exhibit 40

# CITY OF BUFFALO
# DEPARTMENT OF POLICE

## *General Order*



| **General Order Number:** 2021-009 | **Date Posted:** 5/4/2021 | **Effective Date:** 5/4/2021 |
|---|---|---|
| **Subject:** UPDATE M.O.P. CHAPTER 7 SECTION 4 | | **Effective Time:** Immediate |

The Buffalo Police Department Manual of Procedures has been updated to remove/replace all references to the Traffic Bureau/Squad/Division/Unit.

In addition, (Chapter 7 Section 4) has been updated to read as follows:

4.0    TRAFFIC ENFORCEMENT

4.1    POLICY
It is the policy of the Buffalo Police Department to use its law enforcement authority to the extent necessary to provide safe, expeditious and convenient movement of traffic in the City of Buffalo. Traffic enforcements primary focus is to educate and correct motorists driving habits that violate NYS Vehicle and Traffic laws as well as cause a danger to the roadways within the City of Buffalo.

CORE PRINCIPLES

Traffic Enforcement and Safety. The purpose of conducting traffic enforcement is to favorably alter the violator's future driving behavior and to foster public safety. Members shall engage in traffic enforcement for public safety purposes and not for the purpose of making an arrest.

Constitutional Stops. Members may conduct a brief vehicle stop for a traffic violation when the member has Probable Cause to believe that the driver has committed a traffic violation. The stop may last no longer than the time reasonably required to issue a summons for the violation.

Procedural Justice. Procedural justice refers to the perception of fairness in an encounter. Members shall treat all persons with dignity and respect, give persons a voice during encounters, be impartial in their decision making, and convey trustworthy motives.

Non-Discriminatory Policing. Members shall not consider demographic category (including but not limited to race, ethnicity, national origin, religion, gender, sexual orientation, age, disability, gender identity or expression, or affiliation with any other similar identifiable group) as a factor in conducting a vehicle stop. Targeting specific neighborhoods for traffic enforcement based on these demographic categories is a form of discriminatory policing and is prohibited.

Least Intrusive Response. Considering the circumstances presented at the time, members should always take the least intrusive action, consistent with the goal of public safety. For most minor violations, warrantless arrest is not the preferred option, and certain violations only allow for the issuance of a

traffic summons or a traffic stop receipt (P-1389) and not arrest. A member should issue a summons or make an arrest only when doing so directly advances the goal of public safety, and the situation cannot be effectively resolved in a less intrusive manner with the issuance of a traffic stop receipt.

4.2  PATROL/TRAFFIC ENFORCEMENT RESPONSIBILITIES
Patrol Districts shall be responsible for traffic enforcement within their respective districts and anywhere they observe a traffic violation within the City of Buffalo.  The District Chiefs and supervisors shall be responsible for:

A. Analyzing traffic accidents with the goal in using traffic enforcement/ education to reduce accidents in terms of:
 1. time
 2. place
 3. severity
 4. cause

B. Analyzing traffic enforcement activities in an effort to educate and reduce motorists behavior that lead to violations in terms of:
 1. type of violations
 2. severity of violations
 3. frequency of violations
 4. time and location of violations

C. Implementing selective enforcement techniques based on:
 1. time and location of accidents
 2. time and location of violations
 3. traffic volume
 4. traffic conditions
 5. the needs of the community complaints regarding traffic violation concerns through community meetings, 311 complaints and other methods brought to BPD

D. Deploying patrol personnel to accomplish specific enforcement objectives based on the above;

E. Evaluating the effectiveness of the enforcement techniques implemented.

4.3  UNIFORMS REQUIRED FOR TRAFFIC ENFORCEMENT
Only sworn members in uniform and operating a marked patrol vehicle shall actively engage in traffic enforcement activities.

4.4  ENFORCEMENT OPTIONS
Generally, a member has three options when enforcing traffic laws and ordinances.

A. Warnings/ Traffic Stop Receipt (P-1389)
The member may issue a warning in the form of a Traffic Stop Receipt completed electronically in CHARMS or the issued hard copy to be used only if the computer is not functioning.

B. Traffic Summonses
The member may issue a traffic summons to the motorist.  Traffic summonses shall be issued in

Page 2 of 5

COB-Hodgson_00094

those circumstances in which there has been a violation of the traffic laws or ordinances and the motorist has not been issued a warning or has not been placed under arrest.

C. <u>Arrests</u>
The member may make a physical arrest of the motorist. Physical arrests may be made whenever the traffic offense is:

1. A misdemeanor or felony defined in the Vehicle and Traffic Law involving the use of alcohol and/or drugs (VTL section 1192- 1194);
2. Felony Aggravated Unlicensed Operation First Degree defined in Section 511-3 VTL;
3. A traffic infraction, coupled with a non-traffic offense for which the person may be arrested.

4.5 <u>TO WHOM SUMMONSES MAY BE ISSUED</u>
Traffic summonses may be issued to any person who is at least 16 years of age (Refer to M.O.P. Chapter 7). They shall be issued for any violation of the Vehicle and Traffic Law, or City Ordinances relating to traffic, except those relating to parking, standing, or stopping for which a parking tag must be issued. For violations involving driving during a snow ban, an Adjudication Summons shall be issued in lieu of a Traffic Summons. Refer M.O.P. Chapter 3.

4.6 <u>SUMMONSES - SPECIFIC CLASSES OF PERSONS</u>

A. <u>Residents</u>
Traffic summonses may be issued to any resident who is at least 16 years of age (refer to M.O.P. Chapter 7). Summonses may be issued for any violation of the vehicle and traffic law or City ordinances related to traffic.

B. <u>Juveniles</u>
Juveniles less than sixteen (16) years of age cannot be issued a traffic summons. Juveniles who have committed a traffic infraction shall be taken to the stationhouse of the District in which the infraction occurred and their parents, guardians, or other persons legally responsible for their care, shall be required to retrieve them. Juveniles who have committed misdemeanors or felonies may be petitioned to Court. A Judge at Family Court may be reached at (716) 845-7400. (Refer M.O.P. Chapter 3).

C. <u>Diplomats</u>
Refer to M.O.P. Chapter 3.

4.7 <u>DEALING WITH MOTORISTS</u>

1. Members of the Department who have stopped a motorist for having committed a traffic infraction must first establish control of the situation in a way that assures the safety of the member, the motorist and other people using the roadway.

2. The member must be ever mindful that this is a stressful time for citizens. The courtesy and positive image that is shown by the member will make this contact less confrontational. It will also enhance the member and Departments image. Remembering that the purpose of the enforcement is to favorably alter the motorists driving habits.

COB-Hodgson_00095

3. The member(s) making contact with the motorist/ violator(s) must identify themselves to the motorist and the reason for the stop as soon as possible.

4. If a traffic summons is issued to the motorist, the member must clearly explain to the motorist the following:

    a. the date, time and location the motorist is required to appear;
    b. how the motorist can answer the summons including whether or not the
    c. motorist can plead by mail;
    d. any other information that may assist the motorist in dealing with the summons.

4. Officers are reminded that parents or guardians are chargeable under the Vehicle and Traffic Laws if they knowingly permit unlicensed youths to drive on the road.

4.8    SPEED ENFORCEMENT
Excessive speed is often a contributing factor in motor vehicle accidents and the subject of community complaints.  Members of the Department shall diligently enforce laws and ordinances regulating speeding.

4.9    RADAR

    A.    Training and Certification
Before a member is authorized to use radar or other speed measuring devices, (s)he must have received proper training and be certified by the NYS Division of Criminal Justice Services to operate that device and must keep his/her certification current. The member must comply with all required procedures for operating that device.

    B.    When Radar is to be Used
Radar and other speed measuring devices will be used in the following circumstances:

        1. In locations where there is a high incidence of accidents in which excessive speed is a contributing factor;
        2. In locations where speeding frequently occurs;
        3. In locations where citizen complaints indicate a high frequency of speeding violations.
        4. During officers normal patrol duties driving throughout the city

    C.    Selecting a Site
In selecting a site the member of the Department using radar or other speed enforcement device must give first priority to the safety of himself/herself, other members of the Department, other motorists, and the violator that is to be stopped.  The member must check the location to be certain that it is properly posted.

    D.    Calibration of Speed Measuring Devices
All speed measuring devices must be maintained and calibrated according to the manufacturer's standards or at least once a year.  This will be maintained by the  Accident Investigation Unit office.

4.10    SPEEDOMETER CALIBRATION
If a member is to appear at a hearing for a traffic summons (s)he issued for speeding, and the speeding charge was based on reading the speedometer when following the violator,  the member must have proof

of the accuracy of the speedometer. Such proof shall be secured prior to the scheduled hearing date and can be obtained from the Police Garage after garage personnel calibrate the speedometer.

4.11   DWI ENFORCEMENT

A. All uniform members of the Department have a special responsibility to rigorously enforce laws prohibiting driving while intoxicated/impaired.  Commanding Officers of Districts shall direct members of their command to carefully inspect locations in their Districts, at the time and place where there has been a past history of alcohol related accidents or alcohol related violations.

B. The Commanding Officer of each patrol district shall be responsible for assigning members of his/her command to specifically enforce laws that prohibit driving while intoxicated/impaired. The members assigned to such enforcement shall be responsible for:

   1. enforcing alcohol/drug related traffic laws in those locations, and at those times, that have had a significant incidence of alcohol/drug related accidents or alcohol/drug related traffic offenses;
   2. to ascertain the characteristic violation profile of the offender by surveying those roadways on which there has been an unusual incidence of alcohol/drug related accidents;
   3. analyzing alcohol/drug related accident information.

4.12   PARKING ENFORCEMENT

All uniform members of the Department are responsible for enforcing laws and ordinances regulating parking and standing.  Primary attention shall be devoted to enforcing those laws and ordinances that impact on the flow of traffic (e.g. double parking, no standing any time, fire lanes, etc.), those that are designed to facilitate snow removal or street cleaning (e.g. alternate parking, bus routes during the winter, etc.), and those parking violations that are the subject of citizen complaints.

BYRON C. LOCKWOOD / COMMISSIONER OF POLICE