# EXHIBIT 78

## MEMORANDUM OF AGREEMENT BETWEEN
## THE CITY OF BUFFALO
## AND
## THE BUFFALO POLICE BENEVOLENT ASSOCIATION, INC.
## RELATING TO BODY WORN CAMERAS

In order to facilitate the implementation of a Body-Worn Camera Program for the Buffalo Police Department, the City of Buffalo ("the City") and the Buffalo Police Benevolent Association, Inc. ("the PBA"), hereby agree to the following:

I.   Purpose

    A.   The Buffalo Police Department ("BPD") is undertaking a Body-Worn Camera ("BWC") Program. The intent of this Program is to equip the officers of the Buffalo Police Department with video and audio recording devices for the purposes of:

        1.   Documenting Buffalo Police interactions with the public;

        2.   Capturing and maintaining records of crimes in progress for evidence in court;

        3.   Documenting officer's response during the discovery of evidence, investigation into crimes, and calls for service by the public;

        4.   Improving community relations and transparency;

        5.   Mitigating potentially confrontational interactions between officers and the public through the presence of the BWC;

        6.   Preventing and better resolving complaints made against officers; and

        7.   Serving as an aid in Buffalo Police training.

    B.   Through this BWC Program, the BPD and the PBA hope to foster a relationship of mutual respect between BPD officers and the communities where they serve. The BPD understands that this technology does not solve all challenges that law enforcement and the Buffalo community face, but this Program is designed to continue to build upon the trust that the BPD and PBA have worked to build within the Buffalo community.

    C.   This MOA covers the recording, storing, retaining, releasing, and maintaining of data recorded by BWCs.

II.   Definitions

**EXHIBIT**
**53**
**01-24-2024**

0001

A.  Agency Administrator: The Agency Administrator shall be one of the current, as of the date of the signing of this MOA, Commissioner's office exempt positions chosen by the Commissioner of Police and who has full access to, and user rights within, the BWC data storage system. He or she can assign and track equipment, control passwords, oversee needed repairs, delete non-evidentiary recordings, conduct audits and quality control reviews, and act as a liaison between the BPD and the BWC manufacturer(s).

B.  Body-Worn Cameras ("BWCs"): BWCs are small video cameras typically attached to an officer's outer clothing or helmet in a manner that maximizes the camera's ability to capture video and audio data.

C.  Footage/Video/Recording: Footage, Video, and Recording are all-encompassing terms to include audio, video, images, data, and metadata recorded by BWCs.

III.  Policy and Procedures

A.  Use of Devices by Officers

1.  All uniformed police officers assigned to the "Patrol Division," "SWAT Division," "Traffic Division," and any other unit with significant interaction with the public, as well as any other unit that the Commissioner of Police designates, shall be equipped with BWCs above the midline of their torso, and in a position designed to produce an effective recording. The BWC manufacturer should recommend the optimal location for where the BWC is to be worn on an officer's uniform.

a.  For the purpose of this agreement, the terms "uniformed police officers" or "BPD officers" shall include all members of the bargaining unit.

2.  BPD officers shall only use BWCs issued to them by the BPD and shall not use any personal video recording devices during their shift.

3.  All BPD officers shall be trained on the use of BWCs before being issued, or using, a BWC. This training shall be conducted and developed by the Agency Administrator with the help of the BWC manufacturer(s), and must be administered by officers of the Training Academy in conjunction with the Agency Administrator.

4.  BWCs should be used with reasonable care to ensure functionality. Equipment malfunctions or missing equipment should be brought to the attention of an officer's supervisor as soon as possible. Officers shall inspect and test their BWC's functionality prior to the beginning of each shift.

5.   Officers shall ensure that their assigned BWC is put into a charging unit at the end of their shift.

6.   When an officer discovers that their BWC is inoperable, he or she shall exchange that inoperable unit for an operable unit as soon as possible. If there is no staff member on duty who is able to provide an operable unit in place of an inoperable unit, then the officer shall note his or her BWC's malfunction on a P-1385 form, which the officer shall then submit to their supervisor prior to the end of the officer's shift. Their supervisor shall then review such form and transmit it to the Agency Administrator.

B.   Recording Procedures

1.   Activation: BPD officers who are issued BWCs shall activate their BWCs during the following situations:

a.   When responding to, servicing, and clearing any call for service;
b.   When conducting any traffic stop;
c.   When executing a search or arrest warrant;
     i. Interviews or debriefings of individuals or suspects present during the execution of a search warrant shall be recorded until such time as the search has been completed, and the individual or witness has been separated away from the scene of the search, as well as separated from other individuals and witnesses who were present at that scene, and has indicated a desire to talk confidentially with an officer;
d.   When conducting any other arrest or custodial stop;
e.   When conducting investigatory activities, including any search of a person, vehicle or real property;
f.   When engaged in a pursuit, whether on foot or in a vehicle;
g.   When assigned to any protest, demonstration, or crowd control duties;
h.   When engaged in any confrontational or adversarial contact with a citizen;
i.   When requested to do so by any citizen during an encounter with said citizen; or
j.   When in any other situation as pre-determined by the Commissioner or the Agency Administrator.

2.   Deactivation: Once a BWC is activated, it should not be deactivated until the initial incident that required the BWC to be activated has been stabilized, or a supervisor has ordered that it be deactivated. An incident is stabilized when it has concluded, a victim or witness has left the scene, all persons stopped have been released, or a person arrested has been transferred to a detention facility or police station and is completely in the custody of another officer. When it is safe to do so, an officer deactivating

0003

a BWC should record a statement indicating the reason for the deactivation before deactivating their BWC.

3.  Non-Recording:

   a.  During any of the situations outlined in Section III(B)(1) above, an officer is <u>not</u> required to activate their BWC if:

      i.   The officer or another person is in immediate danger and activating the BWC is unsafe;
      ii.  Activating the BWC would be impractical, or would create a tactical disadvantage to the officer;
      iii. Activating the BWC would delay an officer's response to the safety needs of a citizen or fellow officer; or
      iv.  The officer's BWC malfunctions.

      In any of these situations, an officer shall activate the BWC at the first reasonably safe opportunity to do so, and shall explain why there was a delay in activation, while recording, if possible, and always on a P-1385.

   b.  Certain situations should not be recorded by BWC due to their sensitive or confidential nature. These include the following:

      i.    Conversations with Confidential Informants unless they become targets of a law enforcement investigation;
      ii.   Conversations with undercover officers;
      iii.  Conversations with law enforcement personnel discussing tactics or strategy;
      iv.   Locations where a special privacy concern exists, such as in the PBA office, rest rooms, locker rooms, places of worship, hospitals, detoxification facilities, or other medical facilities;
      v.    Inside of police buildings, or when present during the non-enforcement activities of other officers unless law enforcement activities are being carried out in these areas;
      vi.   Inside of police vehicle when the officers are not otherwise engaged in actions laid out in Section III(B);
      vii.  Conversations with potential witnesses who ask to remain anonymous or confidential;
      viii. Conversations with a victim or witness who requests that they not be recorded;
      ix.   When explosives may be present;
      x.    When working with sexual assault survivors; or

0004

xi.    When working with juvenile victims or juvenile witnesses and the juvenile witness or juvenile victim requests the officer stop recording.

    b.  Reporting of a Non-Recorded Situation:

        i.    If an officer fails to activate their BWC, chooses to terminate a BWC recording, or experiences a malfunction of their BWC, that officer must complete a P-1385 form articulating the reason(s) why the officer failed to activate their BWC, why the BWC recording was interrupted, why the BWC recording was terminated, or explaining the malfunction of their BWC, unless the officer has stated the reason for any of the above on camera.

       ii.    This P-1385 form must be filled out prior to the end of the officer's shift and submitted to their supervisor. Their supervisor shall then review all such P-1385 forms and forward them to the Agency Administrator.

C.    Download Procedures

    1.    Every officer issued a BWC will follow the download procedures created and published by the Agency Administrator at the end of every shift. If the data is not downloaded, the officer who failed to download it must provide an explanation for their failure to do so on a P-1385 form.

    2.    All BWC data relating to a criminal incident shall be treated as evidence and will be handled pursuant to procedures created and published by the Agency Administrator.

    3.    An officer may request that recordings of an incident be retained for a longer period of time than that called for by the procedures created and published by the Agency Administrator by submitting a request to the Agency Administrator in a P-1385 form. The Agency Administrator is authorized to approve or deny such a request for longer retention; approved requests shall result in the retention of the recordings for a period of five (5) years from the date of the incident, as per Section IV (E), below.

    4.    All data recorded by a BWC is the property of the BPD. Officers may not copy, publish, share, or disseminate any audio, video, image, data, or metadata to anyone.

    5.    Neither officers nor the PBA President or his/her designee shall have access to edit, delete, or alter any video or audio recorded by a BWC. Logs of any attempt to view, edit, delete, or alter any recording(s) shall be

0005

kept and maintained by the Agency Administrator and shall be available to the PBA President upon request.

IV.   BWC Video Retention

    A.    BWC recordings shall be retained by the BPD or an authorized agent thereof pursuant to the terms and conditions set forth by the Agency Administrator for at least six (6) months from the making thereof.

    B.    If a BWC recording is determined to be evidentiary in nature by the Agency Administrator, Commissioner, or a BPD officer in a criminal matter, or is deemed to be evidentiary in a civil matter by the Law Department or the Agency Administrator, or is needed in the grievance, Injured on Duty, or discipline procedure of the Collective Bargaining Agreement or subsequent MOAs, and is needed to be kept for longer than six (6) months, that file shall be retained until either the prosecutorial authority or the Law Department authorizes the removal of that recording from the BPD storage system by the Agency Administrator.

    C.    A recording that relates to an Internal Affairs Division investigation, an investigation or inquiry from a federal, state, or local agency with investigative or prosecutorial authority, including federal, state, and local courts, or a recording that has the potential to be the subject of future litigation, or is the subject of a litigation hold order, shall be retained indefinitely. At the conclusion of the investigation or litigation to which it is related, such recording may be removed from the BPD storage system by the Agency Administrator, except where a request to preserve is made pursuant to this MOA.

    D.    Notwithstanding the provisions of Section IV (B) or (C), above, concerning the removal of recordings related to an Internal Affairs Division investigation upon its conclusion, any recording which is the subject of a civilian complaint to the Internal Affairs Division shall be kept for up to six (6) months following the resolution of that complaint, or for five (5) years, whichever is longer.

    E.    Any BWC recording requested to be kept by an officer shall be kept for five (5) years from the date of the incident.

    F.    Any video that relates to a Blue Team Report shall be kept for up to five (5) years from the date of the incident.

V.   BWC Access

    A.    Permitted Review of BWC Recordings

        1.    Officers shall be permitted to review only the footage of an incident in which they were involved, and only for the purposes of:

0006

      a.     Conducting a criminal investigation;

      b.     Preparing for courtroom testimony or a conference with the City of Buffalo Law Department, the Erie County District Attorney's Office, the New York State Attorney General's Office, or the U.S. Attorney's Office;

      c.     Providing testimony pursuant to an administrative inquiry; or

      d.     Providing testimony pursuant to an Internal Affairs Division investigation.

2.     In addition to the permitted access listed above, supervisors may also review recordings as they pertain to:

      a.     Investigating reports of alleged misconduct when directed to do so by Internal Affairs, or of meritorious conduct;

      b.     The preparation of Blue Team Reports; or

      c.     The use of the recordings as a training tool for officers based on observations that occurred during an arrest or other permitted review of the recording.

3.     The City of Buffalo Law Department or counsel retained by the Law Department and federal, state, or local agencies with prosecutorial power shall be permitted to review BWC footage as it pertains to a criminal investigation, police discipline or grievances, Injured on Duty Claims, or ongoing or potential civil litigation.

4.     The President of the PBA or his/her designee shall be provided with access to the BWC storage system for the purpose of reviewing BWC footage of PBA members.

B.    Non-Permitted Use of BWC Recordings

1.     Officers are prohibited from copying, or releasing body camera footage unless given express written consent to do so by the Commissioner or the Agency Administrator.

2.     No BWC footage shall be reviewed by anyone except as permitted in this MOA.

3.     No BPD officer, employee, or agent shall be subjected to any discipline based upon a recording made in violation of the terms of this MOA.

C.    Public Disclosure of Data

1.     Any and all disclosure of BWC recordings or data must be consistent with existing record release policies and applicable statutes. All requests for data must be sent to the BPD's FOIL Officer.

2.    When BWC recordings or data are disseminated outside of the BPD, the reason and identity of the authorized requesting person or agency and the rationale utilized for determining why the recordings or data is, or is not released, shall be documented by the Commissioner.

3.    The Commissioner has the discretion to release a video when he deems appropriate. The Commissioner shall notify the PBA President and/or the officers involved in the footage that he intends to release said footage prior to the release of the footage, when practicable.

4.    Civilians shall be allowed to review any recordings consistent with appropriate FOIL request procedures, and the recordings shall be made available for internal review of a complainant in compliance with existing FOIL rules and regulations.

5.    Civilians, or civilians accompanied by their legal representatives, who are the subject of a recording will have the right to review the footage unless it is a part of an ongoing criminal or Internal Affairs Division investigation or proceeding. These recordings shall be made available for internal review of a complainant in compliance with existing FOIL rules and regulations.

6.    Notwithstanding any of the above restrictions concerning the release of BWC recordings or data, the President of the PBA shall have the right to disclose and disseminate BWC recordings or data relating to meritorious conduct on the part of PBA members, upon written request to the Commissioner and approval of the Commissioner. The Commissioner's approval shall be in writing within ten (10) days of the initial request and shall not be unreasonably withheld. In the event the Commissioner denies such request, it must be documented in writing and given to the President of the PBA.

VI.    Agency Administrator Responsibilities

A.    The Agency Administrator shall ensure that all officers are trained in the use of the BWC system and equipment prior to it being issued to officers. The Agency Administrator shall, with the help of the BWC manufacturer(s), develop mandatory training for all officers in accordance with this MOA, which training shall be administered by officers of the Training Academy in conjunction with the Agency Administrator. The Agency Administrator shall also create and provide officers with additional training as it becomes necessary and that training shall also be administered by officers of the Training Academy in conjunction with the Agency Administrator.

B.    The Agency Administrator shall ensure that the BWC equipment is functional and properly utilized by officers.

C.    The Agency Administrator shall provide administrative support with regard to the BWC system, and shall be the contact person for any communication with external companies or services that relate to the BWC Program.

D.    The Agency Administrator shall create a system to handle requests for recordings by the City of Buffalo Law Department or the federal, state, or local agencies or courts.

E.    The Agency Administrator shall provide technical support for malfunctioning BWC equipment, and shall facilitate all BWC equipment repairs with the manufacturer or BWC vendor.

F.    The Agency Administrator shall ensure compliance with, and enforcement of, all aspects of this MOA.

VII.    Enforcement

A.    If any BPD officer, employee, or agent fails to comply with the requirements of this MOA or intentionally interferes with a BWC's ability to accurately record an incident, appropriate disciplinary action may be taken against the officer, employee, or agent in accordance with BPD guidelines and disciplinary procedures, unless exigent circumstances made compliance impossible, unsafe, or impractical.

B.    BWC footage recorded in contravention of this MOA or any other applicable law shall be immediately destroyed. The BPD and its officers shall not seek to introduce improperly recorded BWC footage as evidence in any legal or administrative proceeding against a civilian.

C.    Nothing in this MOA should be read to contravene any laws governing the maintenance and destruction of evidence in criminal investigations, criminal prosecutions, civil proceedings, or administrative proceedings.

D.    Any disciplinary action(s) taken against any member(s) of the PBA or that is currently pending based solely upon their operation, or lack of operation, of a BWC prior to the date this MOA is signed by all parties shall be deemed a nullity, and shall be removed from the member(s)' Internal Affairs Division "Disciplinary Card" for any and all purposes. Notwithstanding the aforementioned, BWC footage obtained prior to the signing of this MOA shall continue to be usable in other types of disciplinary actions initiated prior to the signing of this MOA. Any PBA member(s)' who were suspended as a result of any such disciplinary action(s) shall have their suspended time restored. Specifically, the disciplinary charges attached in Attachment A shall be dismissed.

E.   Any grievances, Charges pending with the Public Employee Relations Board, or litigation that is pending relating to the operation or use of BWCs, prior to the date that this MOA is signed shall be deemed a nullity, and shall be withdrawn by the PBA with prejudice. Specifically, the grievances and IP charges listed in Attachment B shall be withdrawn with prejudice.

VIII.   Officer Protections

A.   Prohibition Against Random Auditing. The City, BPD, and its agents may not review BWC footage randomly for the purpose of discovering policy violations or reviewing individual officer performance outside of what is permitted in this or subsequent agreements. Other than periodic supervisory reviews to ensure that equipment is functioning properly or  for any other reason articulated in this MOA, the scope of the review of BWC footage shall be limited to specific complaints against officers,  review of Blue Team reports, or any other permitted review of the footage as laid out in this MOA. Inadvertent discovery of any other allegations shall require the supervisor to articulate the purpose of expanding the scope in writing to the Agency Administrator, the Inspector of Internal Affairs, and the PBA President, and shall require the supervisor to explain the initial scope of their review.  It shall be a violation of this policy for a supervisor to review BWC footage for reasons outside of this policy and may lead to departmental charges.

B.   Signed Statements. The City, through its Internal Affairs Division, shall make every reasonable effort to obtain a statement signed under penalty of perjury from all complainants relating to officer misconduct. Failure of a complainant to appear to make a statement, or refusal to sign, shall be noted in the Internal Affairs Division file and shall be considered by the Commissioner when considering appropriate punishment for the officer.

C.   False and/or Baseless Complaints. In the event that a complaint is made, which is accompanied by a statement signed under penalty of perjury, and is provably false and without merit based upon a review of the relevant BWC footage and all other relevant facts, the Internal Affairs Division shall refer the case to the Erie County District Attorney's office for criminal prosecution. The PBA President shall also be notified of the provably false complaint.

D.   No BPD officer shall face departmental disciplinary proceedings if, after the Internal Affairs Division reviews a file, determines that the complaint was not demonstrably false, and/or decides not to refer it to the Erie County District Attorney's Office for prosecution, the officer refers the case to the Erie County District Attorney's Office for criminal prosecution while off duty. An officer may also have a referral to the Erie County District Attorney's Office for criminal prosecution made through their counsel.

0010

E.   Discipline Cards. The City agrees, within six (6) months of the signing of this agreement, to amend its discipline card to include a section that explains the reasons a case was closed, including identifying false complaints, unsubstantiated complaints, complaints where the complainant refused to cooperate or was unable to be found, and other scenarios that may lead to the closing of a case.

F.   In assessing events involving members that are recorded in whole or part by a BWC, the City will not rely solely on BWC recordings, but will utilize all available evidence and information, including an officer's perceptions and recollections, which are not captured by the video.

IX. SWAT Team

A.   The following provision shall also apply to SWAT personnel:

1.   SWAT Officers assigned to an entry team will be equipped with a BWC prior to their deployment to an active scene.

2.   All SWAT Officers who are assigned to and will take part in an entry of a premises, whether forcible or not, will have their BWC activated prior to entering the premises and shall have their BWC recording the entire event of the entry and search for occupants.

3.   SWAT Officers who are engaged in any tactical breaching activity including the firing of tear gas, pepperball, less lethal ammo, etc. into the premises of a subject, shall activate and record the event with their BWC.

4.   Once the SWAT Officers have secured the premises and the scene is being turned over to other police personnel, the SWAT Commander shall issue an order to deactivate the BWC's. No further recording is required at that time.

0011

FOR THE CITY OF BUFFALO
DEPARTMENT OF POLICE

9/11/20
Date

Byron C. Lockwood,
Commissioner of Police,
City of Buffalo

FOR THE BUFFALO POLICE
BENEVOLENT ASSOCIATION

9/11/20
Date

John Evans
President, Buffalo Police
Benevolent Association, Inc.

FOR BUFFALO POLICE BENEVOLENT
ASSOCIATION, INC.

9/11/20
Date

Kristin Russo
1st Vice President

FOR BUFFALO POLICE BENEVOLENT
ASSOCIATION, INC.

9/11/20
Date

Mark Goodspeed
2nd Vice President

APPROVED AS TO FORM ONLY:

9/11/20
_____
Date

Zachary Garlick, Esq.
Assistant Corporation Counsel
Law Department,
City of Buffalo

9-11-2020
_____
Date

Daniel M. Killelea, Esq.
Gilmour & Killelea, LLP
Counsel to the Buffalo PBA, Inc.

0013

## ACKNOWLEDGMENTS

State of New York )
County of Erie      )          ss

On __11th__ day of __Sept.__ in the year 2020, before me the undersigned, personally appeared __Byron C. Lockwood__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and he/she acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public/Commissioner of Deeds

          **DAVETTE M. PATTON**
          Notary Public, State of New York
          Qualified in Erie County
          My Commission Expires 3/22/24

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

State of New York )
County of Erie      )          ss

On __11th__ day of __SEPTEMBER__ in the year 2020, before me the undersigned, personally appeared __JOHN EVANS__, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and he/she acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_____
Notary Public/Commissioner of Deeds

          **DANIEL M. KILLELEA**
          Notary Public, State of New York
          Qualified in Erie County
          My Commission Expires Oct. 1, 2023

0014

State of New York)   ss
County of Erie   )

On  11ᵗʰ  day of  SEPTEMBER   in the year 2020, before me the undersigned, personally
appeared   KRISTIN  RUSSO                    , personally known to me or proved to
me on the basis of satisfactory evidence to be the individual whose name is subscribed to the
within instrument and he/she acknowledged to me that he/she executed the same in his/her
capacity, and that by his/her signature on the instrument, the individual, or the person upon
behalf of which the individual acted, executed the instrument.

Notary Public/Commissioner of Deeds

DANIEL M. KILLELEA
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 1, 20 23

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

State of New York)   ss
County of Erie   )

On  11ᵗʰ  day of  September  in the year 2020, before me the undersigned, personally
appeared   MARK  GOODSPEED                  , personally known to me or proved to
me on the basis of satisfactory evidence to be the individual whose name is subscribed to the
within instrument and he/she acknowledged to me that he/she executed the same in his/her
capacity, and that by his/her signature on the instrument, the individual, or the person upon
behalf of which the individual acted, executed the instrument.

Notary Public/Commissioner of Deeds

DANIEL M. KILLELEA
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Oct. 1, 20 23

Page 15 of 17

0015

# Attachment

# A

IAD Incident Number, Name of Officer(s) Involved

1. 2019-056, Todd McAllister
2. 2020-054, Karl Schultz
3. 2020-012, Letonio Johnson
4. 2020-012, Dyjon Robinson
5. 2020-058, John Bannister
6. 2020-058, Ben Coughlin, Brendan Lewis, Nathan Maryanski, Keith Mazurczak, David Rachuna, James Otwell

0016

# Attachment

# B

Grievance Number and PERB IP Charge

1. 2019-022 (Failure to negotiate BWC Policy)
2. 2019-023 (City violated BWC Pilot MOA regarding BWC Policy)
3. 2019-027 (Anonymous random logins to BWC footage)
4. 2019-040 (Karl Schultz grievance for BWC use)
5. 2019-069 (Todd McAllister grievance)

PERB Charge

1. U-37438 (Improper Practice Charge relating to the implementation of the BWC Policy)

0017