# EXHIBIT 153

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BLACK LOVE RESISTS IN THE RUST by and
through MARIELLE SHAVONNE SMITH and
CHARIS HUMPHREY on behalf of its members;
SHAKETA REDDEN; DORETHEA FRANKLIN;
TANIQUA SIMMONS; DE'JON HALL; JOSEPH
BONDS; CHARLES PALMER; SHIRLEY
SARMIENTO; EBONY YELDON; and JANE DOE,
individually and on behalf of a class of all others
similarly situated;

                                        Plaintiffs,

        v.                                                      Civil No.: 1:18-cv-00719-CCR

CITY OF BUFFALO, NY; BYRON B. BROWN,
Mayor of the City of Buffalo, in his individual and
official capacities; BYRON C. LOCKWOOD,
Commissioner of the Buffalo Police Department, in his
individual and official capacities; DANIEL DERENDA,
former Commissioner of the Buffalo Police Department,
in his individual capacity; AARON YOUNG, KEVIN
BRINKWORTH, PHILIP SERAFINI, ROBBIN
THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities.

                                        Defendants.

---

## DEFENDANTS' AMENDED RESPONSE TO PLAINTIFF'S
## <u>FIRST SET OF REQUESTS FOR ADMISSION</u>

        Defendants City Of Buffalo, New York; Byron B. Brown, Mayor of the City of

Buffalo, in his individual and official capacities; Byron C. Lockwood, Commissioner of the

Buffalo Police Department, in his individual and official capacities; Daniel Derenda, former

Commissioner of the Buffalo Police Department, in his individual capacity; Aaron Young, Kevin

Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown

Officers 1-20, each officers of the Buffalo Police Department, in their individual capacities,

through their attorneys (collectively "Defendants"), by their attorneys, Hodgson Russ LLP, for

their response to Plaintiff's First Set of Requests for Admission, respond as follows:

## GENERAL OBJECTIONS

1.      Defendants generally object to these demands to the extent they are
subject to multiple meanings.

2.      Defendants generally object to these demands to the extent that they seek
documents not within Defendants' possession, custody, or control.

3.      Defendants generally object to these demands to the extent that they seek
documents within Plaintiff's possession, custody, or control.

4.      Defendants generally object to these demands to the extent that they
purport to impose on Defendants obligations that exceed the Federal Civil Rules of Procedure or
the Local Civil Rules for the Western District of New York.

5.      Defendants generally object to these demands to the extent that they seek
documents protected by the attorney-client privilege or the work product doctrine.

6.      Defendants generally object to these demands to the extent that they are
overbroad, unduly burdensome, or call for irrelevant documents not reasonably calculated to lead
to the discovery of admissible evidence.

0002

7. Defendants reserve the right to supplement or amend these responses up to the close of discovery.

## RESPONSES

**REQUEST NO. 1.**  Admit that Checkpoint locations were not selected based on any data concerning the location of motor vehicle accidents.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reason for each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoint locations chosen without reference or regard to data related to motor vehicle accidents and Defendants admit that they cannot specifically identify any instance where a checkpoint location was chosen due to data related to motor vehicle accidents.  Defendants deny, however, that general vehicle and traffic safety concerns did not play a role in choosing the locations of checkpoints.

**REQUEST NO. 2.**  Admit that Checkpoint locations were not selected based on any Reporting concerning the location of motor vehicle accidents.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reason for each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted without regard to reporting on the location of motor vehicle accidents and Defendants admit that they cannot specifically identify any checkpoint that was conducted due to reporting as to motor vehicle accidents.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 3.**    Admit that Checkpoint locations were not selected based on any data concerning the location of red light violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reason for each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted without consulting data regarding location of red light violations and Defendants further admit that they cannot specifically identify any instance where a checkpoint was conducted due to data concerning the location of red light violations.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 4.**    Admit that Checkpoint locations were not selected based on any Reporting concerning the location of red light violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted which were not based on reporting of red light violations.  Defendants further admit that they cannot specifically identify any instance where a checkpoint was conducted due to reporting on red light violations.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 5.**    Admit that Checkpoint locations were not selected based on any data concerning the location of stop sign violations.

- 4 -

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on data related to stop sign violations. Defendants further admit that they cannot specifically identify any instance where a checkpoint was conducted due to data related to stop sign violations. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 6.**    Admit that Checkpoint locations were not selected based on any Reporting concerning the location of stop sign violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on reporting of stop sign violations. Defendants also admit that they cannot specifically identify any instance where reporting related to stop sign violations was the basis for the location of a checkpoint. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 7.**    Admit that Checkpoint locations were not selected based on any data concerning the location of speeding violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants

admit that there were checkpoints conducted which were not based on data concerning speeding violations.  Defendants further admit that they cannot identify a specific instance where a checkpoint location was chosen based on data related to the location of speeding violations. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 8.**    Admit that Checkpoint locations were not selected based on any Reporting concerning the location of speeding violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted which were not based on reporting of speeding violations. Defendants further admit that they cannot identify any specific instance where a checkpoint location was chosen due to reporting of speeding violations.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 9.**    Admit that Checkpoint locations were not selected based on any data concerning the location of Driving While Intoxicated (DWI) violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted which were not based on DWI data.  Defendants further admit that they cannot specially identify any Strike Force or Housing Unit checkpoint

- 6 -

which was conducted based on DWI data. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 10.** Admit that Checkpoint locations were not selected based on any Reporting concerning the location of DWI violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on DWI reporting. Defendants further admit that they are not aware of any specific instance where Strike Force or the Housing Unit conducted a checkpoint based on DWI reporting. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 11.** Admit that Checkpoint locations were not selected based on any data concerning the location of violations for driving without a valid license.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on data concerning motorists driving without a license. Defendants further admit that they cannot identify a specific instance where a checkpoint location was chosen due to data concerning motorists driving without a valid license. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

0007

**REQUEST NO. 12.**   Admit that Checkpoint locations were not selected based on any Reporting concerning the location of violations for driving without a valid license.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted which were not based on reporting of motorists driving without a license.  Defendants also admit that they cannot specifically identify any checkpoint location that was chosen due to reporting of motorists driving without a license.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 13.**   Admit that Checkpoint locations were not selected based on any data concerning the location of violations for driving without a valid registration.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted which were not based on data concerning motorists driving without a registration.  Defendants further admit that they cannot specifically identify any checkpoint location which was based upon data related to motorists driving without a valid registration.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 14.**   Admit that Checkpoint locations were not selected based on any Reporting concerning the location of violations for driving without a valid registration.

0008

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on reporting concerning motorists driving without a registration. Defendants also admit that they cannot specifically identify any checkpoint location that was chosen based on reporting related to motorists driving without a registration. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 15.** Admit that Checkpoint locations were not selected based on any data concerning the location of violations for driving without a valid inspection sticker.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on data concerning motorists driving without a valid inspection sticker. Defendants further admit that they cannot identify any specific instance where a checkpoint location was chosen based on data concerning motorists not having a valid inspection sticker. Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 16.** Admit that Checkpoint locations were not selected based on any Reporting concerning the location of violations for driving without a valid inspection sticker.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.

0009

Defendants admit that there were checkpoints conducted which were not based on reporting concerning motorists driving without a valid inspection sticker.  Defendants also admit that they cannot identify any specific instance where a checkpoint location was chosen due to reporting related to driving without a valid inspection sticker.  Defendants deny, however, that general vehicle and traffic safety concerns did not, at times, play a role in choosing the locations of checkpoints.

**REQUEST NO. 17.**   Admit that Defendants did not perform any analyses to determine whether the Checkpoint Program improved traffic safety.

**RESPONSE:**  Defendants admit that they did not conduct a formal analysis as to whether the checkpoint program improved traffic safety but deny that administrators did not consider or think about whether or not the checkpoint program would improve vehicle and traffic safety within the City of Buffalo.

**REQUEST NO. 18.**   Admit that Mayor Byron Brown authorized the Checkpoint Program.

**RESPONSE:**  Defendants object to this this request to the extent that the term "authorized" is ambiguous and subject to multiple meanings.  Defendants admit that Mayor Brown knew of and did not object to the Strike Force and Housing Unit conducting checkpoints, but state that Mayor Brown was not the individual who recommended the checkpoints and was not the person responsible for their implementation.

**REQUEST NO. 19.**   Admit that the BPD has not issued any directives prohibiting the use of Checkpoints going forward.

0010

**RESPONSE:** Defendants object to this request to the extent the terms "directives" and "prohibiting" are subject to multiple meanings, and the scope and nature of the prohibition mentioned in the request is unclear. Defendants further object to this request to the extent it focuses on any vehicle and traffic safety checkpoint regardless of the unit carrying out the checkpoint or the circumstances under which the checkpoint is conducted. Subject to these objections, the request for admission is denied. Defendants state that no patrol unit, or any unit, of the BPD, is authorized to conduct a checkpoint without approval or consent from BPD administration.

**REQUEST NO. 20.**   Admit that the BPD has not removed Section 10.5, titled "Traffic Checkpoints," from its Manual of Procedures.

**RESPONSE:**  Admitted, insofar as the manual of procedures in its current form speaks for itself.

**REQUEST NO. 21.**   Admit that the BPD has not issued any directives barring the Strike Force from being reestablished.

**RESPONSE:** Defendants object to this request to the extent that "directives" is ambiguous and subject to multiple meanings. Defendants also object to the extent that this request does not differentiate between the functions which were carried out by Strike Force during its existence. Subject to these objections, Defendants state that BPD could create a unit called the Strike Force or a proactive patrol unit going by a different name. Defendants, however, deny that they have any plans to create a patrol unit that regularly conducts checkpoints.

**REQUEST NO. 22.**   Admit that the Housing Unit sometimes ran Checkpoints without the involvement of the Strike Force.

**RESPONSE:** Admitted based on deposition testimony.

**REQUEST NO. 23.** Admit that if and when the Housing Unit ran Checkpoints without the involvement of the Strike Force, it did not issue Roadblock Directives.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot determine what took place at every single checkpoint conducted by the Housing Unit. Defendants admit that there were instances where the Housing Unit conducted checkpoints without issuing Roadblock Directives. Defendants further cannot identify any specific instance where the Housing Unit issued a Roadblock Directive when the unit conducted a checkpoint.

**REQUEST NO. 24.** Admit that, during the Relevant Time Period, BPD officers were/are paid time and a half for the time they spent/spend on Court appearances in connection with Traffic Tickets they have issued.

**RESPONSE:** Defendants deny that officers were/are paid time and a half for each and every Court appearance made in connection with Traffic Tickets they have issued, as per deposition testimony. However, Defendants admit that in circumstances where officers have met the hourly threshold for overtime and subsequently appear for court, they are paid time and a half in accordance with overtime policies.

**REQUEST NO. 25.** Admit that, during the Relevant Time Period, BPD officers were/are paid for at least four hours of time spent on each Court appearance in connection with Traffic Tickets they have issued, even if the actual time they spent/spend on that appearance was/is less than four hours.

**RESPONSE:** Admitted.

**REQUEST NO. 26.** Admit that the City of Buffalo, including without limitation the Buffalo Traffic Violations Agency ("BTVA"), maintains computerized records of Traffic

- 12 -

Tickets that state for each person ticketed the nature of the violation(s), the date and time of the violation(s), the amount(s) assessed, the amount(s) paid, and the amount(s) owed.

**RESPONSE:**  Admitted in general, but there may be instances in which a given database entry is incomplete or inaccurate.

**REQUEST NO. 27.**   Admit that the City of Buffalo, including without limitation the Department of Parking, maintains computerized records of vehicle tows and impounds.

**RESPONSE:** Admitted.

**REQUEST NO. 28.**   Admit that the City of Buffalo, including without limitation the Department of Parking, maintains computerized records from which it is possible to identify, for each vehicle impounded, the license plate number of the vehicle; the date of the impound; the duration of the impound; whether the vehicle was released, sold, or auctioned; the amount(s) assessed for towing, storage and other fees; the amount(s) paid from any source; and the amount(s) owed.

**RESPONSE:**  Admitted in general, but there may be instances in which a given database entry is incomplete or inaccurate.

**REQUEST NO. 29.**   Admit that the County of Erie maintains a computerized database of information concerning Traffic Tickets known as TraCS.

**RESPONSE:** Admitted.

**REQUEST NO. 30.**   Admit that, during the Relevant Time Period, the fields in the TraCS database included/include, among others, the following:

    a.      The date and time of the violation(s);

    b.      The location of the violation(s);

    c.      A description of the violation(s);

    d.      The provision(s) of law under which the violation(s) arise(s);

    e.      The race of the person to whom the Traffic Ticket(s) is/are issued.

**RESPONSE:** Defendants admit that the information listed above in lines a-d can be recorded in TraCS and that those fields were expressly listed in TraCS during the relevant time period.  Defendants also admit that race could be recorded in TraCS during the relevant time period, but Defendants deny that the "race" field was expressly listed for officers to fill out when they issued a traffic summons or ticket.  Defendants state that an officer would have to "hover" over an empty field in TraCS to record a motorist's race.  In other words, unless the officer took specific steps, the race field would be hidden from his or her view.  Based on available data and reasonable inquiry, it appears that some BPD officers knew about this function and others did not.  An example of what Defendants are describing is depicted below.  The arrow shows an empty field/box that, if "hovered" over on a computer screen, would allow an officer to record a motorist's race when issuing a ticket.  Based on reasonable inquiry, Defendants acknowledge and admit that TraCS allows for race to be expressly listed as a required field if so requested by an agency such as BPD.

**REQUEST NO. 31.**   Admit that, during the Relevant Time Period, TraCS functionality included/includes the ability to enter, at the time of issuance, the race of the person to whom the ticket is being issued.

**RESPONSE:**  Admitted.

**REQUEST NO. 32.**   Admit that the BPD has not issued any formal written policy requiring that BPD officers record in TraCS the race of each person ticketed.

**RESPONSE:**  Admitted.

**REQUEST NO. 33.**   Admit that the copies of TraCS records produced by Plaintiffs to Defendants are authentic for purposes of Rule 901(a) of the Federal Rules of Evidence.

**RESPONSE:**  Admitted, but Defendants do not stipulate to this evidence's admissibility at trial.

**REQUEST NO. 34.**   Admit that the copies of TraCS records produced by Plaintiffs to Defendants are records of a regularly conducted activity under Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:**  Admitted, but Defendants do not stipulate to this evidence's admissibility at trial.

**REQUEST NO. 35.**   Admit that the County of Erie maintains a record management database known as CHARMS that integrates, among other records, arrests, summons, and towing information.

**RESPONSE:**  Admitted.

**REQUEST NO. 36.**   Admit that the copies of CHARMS records produced by Plaintiffs to Defendants are authentic for purposes of Rule 901(a) of the Federal Rules of Evidence.

0015

**RESPONSE:**  Admitted, but Defendants do not stipulate to this evidence's

admissibility at trial.


**REQUEST NO. 37.**  Admit that the copies of CHARMS records produced by Plaintiffs to Defendants are records of a regularly conducted activity under Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:**  Admitted, but Defendants do not stipulate to this evidence's

admissibility at trial.


**REQUEST NO. 38.**  Admit that the BPD has not issued any formal written policy to officers concerning the prevention of racially biased policing, including racial profiling.

**RESPONSE:**  Denied.  Defendants have previously identified their policies

which prohibit racially biased policing in interrogatories and through 30(b)(6) deposition

testimony.


**REQUEST NO. 39.**  Admit that the BPD does not have an Early Warning System.

**RESPONSE:**  This request is denied insofar as per Executive Order, BPD is

required to send IAD materials to the Attorney General when officers receive a certain number

of complaints within a specified period of time.


**REQUEST NO. 40.**  Admit that the BPD has received federal funds issued by the Department of Justice in the years 2015-present.

**RESPONSE:**  Admitted.


**REQUEST NO. 41.**  Admit that each of the following datasets on the OpenData Buffalo website is maintained for and at the direction of the City, and is a statement of the City

that meets the requirements for admissibility set forth in Rule 801(d)(2) of the Federal Rules of Evidence:

      a.       Open Data Uniform Traffic Tickets

      b.       Open Data Traffic Stop Receipts

      c.       Open Data Parking Summonses

      d.       Open Data Tows

      e.       Open Data Roadside Appearance Tickets

      f.       Open Data Quality of Life Summonses

**RESPONSE:** Admitted.

**REQUEST NO. 42.** Admit that all of the documents You produced in discovery, including all of the documents produced with Bates prefix "COB" and any documents You produced without Bates numbers, are authentic for purposes of Rule 901(a) of the Federal Rules of Evidence.

**RESPONSE:** Admitted, but Defendants do not stipulate to this evidence's admissibility at trial.

**REQUEST NO. 43.** Admit that the following documents constitute records of a regularly conducted activity for purposes of Rule 803(6) of the Federal Rules of Evidence:

      a.       Roadblock Directives, including without limitation COB001962-COB003602;

      b.       Housing Unit Monthly Reports, including without limitation COB001637-COB001941 and COB024517-COB024806;

      c.       Strike Force Daily Reports and Housing Daily Reports, including without limitation COB024393-COB027836 and COB028265-COB032191;

      d.       All records related to complaints and investigations of complaints included in the spreadsheets emailed to Plaintiffs by Defendants on September 23, 2022;

e.　　All IAPro summaries, an example of which can be found at COB668652-668657;

f.　　All Internal Affairs Division ("IAD") case folders, as defined on pages 14-15 of the Buffalo Police Department Complaint Investigation Manual (produced by Defendants at COB_INC_00000095_014-015), and their complete contents;

g.　　All P-73 Buffalo Police Department Intra-Departmental Correspondence forms and their complete contents, an example of which can be found at COB014236;

h.　　All BPD officer disciplinary cards, as defined on page 14 of the Buffalo Police Department Complaint Investigation Manual (produced by Defendants at COB_INC_00000095_014), an example of which can be found at COB010049;

i.　　All complaints filed with Buffalo's Commission on Citizens' Rights and Community Relations (CCRCR) and their complete file contents;

j.　　Compstat reports, including without limitation COB326623 to COB329534;

k.　　Strike Force Area maps, including without limitation COB001613-COB001636.

**RESPONSE:**　　Admitted, but Defendants do not stipulate to this

evidence's admissibility at trial.


Dated:　　　Buffalo, New York
　　　　　　March 18, 2024

　　　　　　　　　　　**HODGSON RUSS** LLP
　　　　　　　　　　　*Attorneys for City of Buffalo*
　　　　　　　　　　　*and other City Defendants*


　　　　　　　　　　　By:　 s/ Peter A. Sahasrabudhe
　　　　　　　　　　　　　　Hugh M. Russ, III, Esq.
　　　　　　　　　　　　　　Peter A. Sahasrabudhe, Esq
　　　　　　　　　　　　　　Cheyenne N. Freely, Esq.
　　　　　　　　　　　Guaranty Building
　　　　　　　　　　　140 Pearl Street – Suite 100
　　　　　　　　　　　Buffalo, New York  14202
　　　　　　　　　　　Telephone:  716-856-4000
　　　　　　　　　　　hruss@hodgsonruss.com
　　　　　　　　　　　psahasra@hodgsonruss.com

0018

cfreely@hodgsonruss.com

TO:

**CENTER FOR CONSTITUTIONAL RIGHTS**
A. Chinyere Ezie
Baher Azmy
666 Broadway, 7th Floor
New York, NY 10012
Tel/Fax: (212) 614-6464
CEzie@ccrjustice.org
BAzmy@ccrjustice.org

**WESTERN NEW YORK LAW CENTER**
Joseph A. Kelemen
Matthew Alan Parham
37 Franklin Street, Suite 210
Buffalo, NY 14202
Tel: (716) 855-0203
Fax: (716) 270-4005
kwilliams@wnylc.com

**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
Claudia Wilner
Anjana Malhotra
Edward Krugman
50 Broadway, Suite 1500
New York, NY 10004
212-633-6967
wilner@nclej.org
malhotra@nclej.org
Krugman@nclej.org

**COVINGTON & BURLING, LLP**
Jordan Scott Joachim
Christine Adrienne Nelson
620 Eighth Ave. Suite 4029
New York, NY 10018
Tel:  (212) 841-1000
Fax: (212) 841-1010
JJoachim@cov.com
cnelson@cov.com

16504140v1