# EXHIBIT 233

# REPORT OF THE

# CITY OF BUFFALO TRAFFIC VIOLATIONS AGENCY

*Pursuant to Part CC of Chapter 58 of the 2015 Laws of the State of New York*

Kevin Helfer, Executive Director
Room 111, City Hall
65 Niagara Sq.
Buffalo, New York 14202

MORGERA 3 05-26-2022

# REPORT OF THE
# EXECUTIVE DIRECTOR OF THE
# BUFFALO TRAFFIC VIOLATIONS AGENCY
*Pursuant to Part CC of Chapter 58 of the Laws of 2015*

## PREFACE

**To the Governor, the Temporary President of the Senate, the Speaker of the Assembly, the Mayor of the City of Buffalo, The Buffalo Common Council, The Presiding Judge of the Buffalo City Court, and the Erie County District Attorney:**

I am pleased to submit this report as to the progress, development and operations of the Buffalo Traffic Violations Agency. This report provides statistical data an examination of the operations and ongoing development of the Agency from July 1, 2015, the date it opened to the public, to present.

**KEVIN HELFER**
Executive Director
Buffalo Traffic Violations Agency

i

# TABLE OF CONTENTS

Introduction — Page 1

Legislative and Statutory Authority — Page 3

Judicial Hearing Officers — Page 4

Operations — Page 5

Development and Progress — Page 7

Statistical Report — Page 11

# INTRODUCTION

This report is issued pursuant to Section 18 of Part CC of Chapter 58 of the Laws of 2015.

The Buffalo Traffic Violations agency commenced operations on July 1, 2015, pursuant to City of Buffalo Local Law 1-2015. This report covers operations of the BTVA for the period July 1, 2015 through October 31, 2016.

In 2015 the New York State Legislature authorized the creation of the Buffalo Traffic Violations Agency (BTVA, Laws of NY 2015, Chapter 58, Part CC). The Legislation was signed by Governor Andrew M. Cuomo, on April 12, 2015. On June 4, 2015, the Buffalo Common Council passed City of Buffalo Local Law Intro #1-2015, amending the Charter of the City of Buffalo in relation to the establishment of the Buffalo Traffic Violations Agency. The local law was signed, following public hearing, by Buffalo Mayor Byron W, Brown on June 11, 2015, and became effective upon filing with the New York Secretary of State on June 15, 2015.

Prior to July 1, 2015, moving traffic violations occurring within the City limits of the City of Buffalo were adjudicated administratively by the New York State Department of Motor Vehicles pursuant to Vehicle and Traffic Law Article 2-a. Under the administrative system, violators within the City of Buffalo were treated disparately from those whose infractions occurred outside the City limits. Infractions within the City were treated under the standards of civil administrative law. The standard of proof on the part of the People was a preponderance of the evidence. No opportunity was afforded to permit violators to plead guilty to lesser charges bearing lower fines and without adding points to driving records. City residents were subjected to higher moving violation conviction rates, resulting in higher fines and assessments, and even

1

more important, receiving larger numbers of points against their driving records. This resulted in automobile liability insurance premiums at rates significantly above those paid by drivers in surrounding communities and higher rates of license suspensions for City residents. Where infractions occurred outside the City, defendants were afforded the due process rights of the local justice courts, including the opportunity to plead to reduced charges of non-moving violations, and subject to the higher standard of proof of guilt beyond a reasonable doubt provided under criminal procedure. Drivers outside the City of Buffalo were assessed lower fines, avoided costly court assessments, received fewer points on their driving records and consequently paid lower insurance premiums.

Under the leadership of New York Governor Andrew M. Cuomo and Buffalo Mayor Byron W, Brown, this disparity in treating motorists within and without the City of Buffalo was corrected by returning jurisdiction over traffic infractions to the jurisdiction of the Buffalo City Court, and by establishing the Buffalo Traffic Violations Agency to assist the Buffalo City Court in the administration of traffic violation adjudication within the City of Buffalo.

Pursuant to this legislation the Executive Director of the Buffalo Traffic Violations Agency is charged with providing this annual report, commencing eighteen months after the establishment of the Agency, detailing its progress and development to date. By statute, the agency operates under the control of the mayor.

# LEGISLATIVE AND STATUTORY AUTHORITY

The Buffalo Traffic Violations Agency was established through amendments to the New York State Vehicle and Traffic Law, the Criminal Procedure Law, the State Finance Law, and the General Municipal Law. General Municipal Law was amended to authorize the establishment of the Agency to assist the Buffalo City Court "in the disposition and administration of infractions of traffic laws, ordinances, rules and regulations" with exceptions for enumerated sections of the Vehicle and Traffic Law and the Transportation Law. The Agency has no authority with respect to matters constituting misdemeanors or felonies, and has no jurisdiction over violations constituting parking or standing or pedestrian offenses.

The legislation defines certain terms used in the context of the Agency's work. Included in those terms is "Traffic Prosecutor" which is defined as an attorney duly admitted to practice law in the state of New York, who, having been appointed and either hired or retained pursuant to section three hundred seventy-four of this article, has the responsibility of prosecuting ... any traffic infractions returnable before the Buffalo city court pursuant to the jurisdictional limitations of section three hundred seventy-one of this article [General Municipal Law Sec. 370-a(2)]. The Traffic Prosecutors are accorded the same powers as a District Attorney and are prohibited from "appearing in any capacity, other than as a traffic prosecutor in any part of the Buffalo city court on any matter relating to traffic violations and are further prohibited from appearing in any capacity other than as a traffic prosecutor in any other court or administrative tribunal on any matter relating to traffic violations" [General Municipal Law Se. 374-a (b)].

Both General Municipal Law Sec. 374-a and Section 6-24(1) of Buffalo City Charter, added by City of Buffalo Local Law No. 1-2015, authorize the Mayor of the City of Buffalo to

3

appoint an Agency executive director subject to confirmation by the Buffalo Common Council. The Agency Executive Director is responsible for the oversight and administration of the Agency. He is also given responsibility to establish such rules, regulations, procedures and forms as deemed necessary to carry out the functions of the Agency, Article 14-B of the General Municipal Law and the collection of delinquent fines.

On July 1, 2015, Mayor Byron W. Brown appointed Kevin Helfer Executive Director of the Agency, upon confirmation of the Buffalo Common Council. Mr. Helfer serves also as Commissioner of Parking for the City of Buffalo.

## JUDICIAL HEARING OFFICERS

By Administrative Order, Eighth Judicial District administrative judge Paula Feroleto, JSC, appointed the Honorable Rose Sconiers, JSC to preside over matters at the Buffalo Traffic Violations Agency. Judicial Hearing Officers have the same powers as a judge of the Buffalo City Court [Vehicle and Traffic Law Sec. Vehicle and Traffic Law Se. 1690(1-a)]. The administrative judge of the Eighth Judicial District may assign matters involving traffic infractions to a judicial hearing officer without the consent of the parties [Criminal Procedure Law Sec. 350.20(5)].

Buffalo Mayor Byron W. Brown canvassed retired former judges of the Buffalo City Court and submitted a list of three nominees from whom Judge Feroleto appointed the Honorable Rose Sconiers, JSC to preside over Agency matters. Justice Sconiers is a former judge of the Buffalo City Court, Justice of New York State Supreme Court, Erie County, and Justice of the Appellate Division for the Fourth Department. She is a resident of the City of Buffalo, admitted

to the practice of law in New York and has at least two years' experience conducting trials of traffic violations matters. The Judicial Hearing Officers are prohibited from appearing in any capacity other than as a judicial hearing officer in any part of Buffalo City Court, or on any matter relating to traffic violations and are further prohibited from appearing in any capacity other than as a judicial hearing officer in any other court or administrative tribunal on any matter relating to traffic violations.

## OPERATIONS

Effective July 1, 2015, jurisdiction over traffic violations within the City of Buffalo was transfered to the Buffalo City Court, a court of record. The Buffalo Traffic Violations Agency was established to assist the Buffalo City Court in the administration, prosecution and adjudication of non-misdemeanor classes of traffic infractions transferred to the Buffalo Traffic Violations Agency. The Agency is headed by Kevin J. Helfer, Executive Director, appointed by the Mayor of Buffalo. The Agency serves the City of Buffalo, a municipality having a population of 261,000.

The City Traffic Prosecutor, Alan P. Gerstman, an attorney duly licensed to practice law in the State of New York, and a resident of the City of Buffalo, is appointed by the Executive Director of the Agency. He previously served as an assistant corporation counsel in the City of Buffalo Department of Law, as confidential clerk to State Supreme Court Justice John F. O'Donnell, and as First Assistant County Attorney for Erie County, New York.

To assist the court, the BTVA has appointed a seven-member administrative staff, headed by the BTVA Administrator, Roxanne Roland, to perform all intake and administrative functions. A public office is maintained at Room 115 in the Buffalo City Hall. It is open from the hours of 8:30 a.m. to 4:00 p.m., Monday through Friday, except public holidays. Members of the public may make their first appearance in person, by mail or by telephone at the BTVA office. Translation service in Spanish and American Sign Language are available daily. Other translation services are made by arrangement on request. The office is accessible to the physically disabled.

All traffic violations are prosecuted as traffic violations in conformance with New York Vehicle and Traffic Law and New York Criminal Procedure Law, within the jurisdiction of the Buffalo City Court. Infractions within the statutory classification of General Municipal Law Section 371, subd. 2-a are processed through the Buffalo Traffic Violations Agency.

Motorists may answer and plead guilty or not guilty in person, by mail or by telephone at the BTVA office at Room 115 in Buffalo City Hall. The City Traffic Prosecutor offers defendants an opportunity to plead to reduced charges where such is deemed warranted and within the established plea policy established by the Traffic Prosecutor. Defendants who plead not guilty are afforded a hearing before a Judicial Hearing Officer. Hearings are held Fridays at Part 7, Buffalo City Court, 50 Delaware Avenue in the City of Buffalo. All traffic violation records are maintained by the Traffic Violations Agency as required by statute.

# DEVELOPMENT AND PROGRESS

Effective July 1, 2015 30,586 all open cases before the New York State Department of Motor Vehicles were transferred to the Buffalo Traffic Adjudication Agency. Simultaneously, all new traffic violations occurring within Buffalo became new cases assigned to the BTVA docket.

For the period July 1, 2015 through October 31, 2016, the Buffalo Traffic Violations Bureau has received 49,611 tickets and closed 31,903. Court sessions are held twice on Fridays at Buffalo City Court Part 7 (mornings from 9:00 a.m. to 12:30 p.m. and afternoons at 2:00 p.m. to 4:00 p.m.). Judicial Hearing Officer court sessions are scheduled by the Agency.

The public is informed of the aspects of the Agency through the live telephone information line and by agency window staff. The Agency is staffed by one part-time prosecutor,

During the first eighteen months of operation, the Buffalo Traffic Violations Agency has made considerable progress in creating and developing an entirely new operation to assist the Buffalo City Court and to serve the public in the adjudication of traffic infractions. Beginning with a small core staff, the Agency has developed to serve on average 250 members of the public each business day, disposing of about 150 cases each day. Monthly gross revenue has grown from the initial month's $33,156 to $355,444 in October 2016.

Prior to transfer of operations, Kevin Helfer, Buffalo Corporation Counsel Timothy Ball, and Assistant Corporation Counsel John Hannibal conducted discussions with the New York State Department of Motor Vehicles concerning the logistics of transferring physical and electronic files. In addition, arrangements for transfer of three experienced employees from the

7

DMV Buffalo office to the new Traffic Adjudication Agency were made through the City Department of Human Resources. Office space was secured in Buffalo City Hall and contracts were entered, pursuant to RFP, with Service Education, Inc. to procure "The Courtroom Program" case management software and training. City Treasury Director Michael Seamans and his staff prepared payment and accounting systems to accommodate the new operation, including provision for payment by cash and credit card.

Valuable transitional discussions were had with the Hon. Thomas P. Amodeo, Chief Judge of the Buffalo City Court, and Ms. Erika Webb, Chief Clerk of the Buffalo City Court to prepare for the transfer of jurisdiction of traffic infractions to the Court's jurisdiction, and to establish procedural and logistical protocols to handle the new expanded caseload.

The Buffalo Traffic Violations Agency opened on July 1, 2015 with an Executive Director, Prosecutor, one supervising representative, one representative and one clerk. Assistant Corporation Counsel Hannibal served as prosecutor for the initial year of operations. Three administrative staff were transferred from the New York State Department of Motor Vehicles, each having experience in traffic violations. All members of the public were interviewed by the prosecutor. Approximately fifty defendants were processed each business day during the initial phase of operations. First month revenue was $33,156.

In August 2015, two additional clerical staff were added and trained. Operation continued with all members of the public scheduled to meet with the Traffic Prosecutor. With additional staff daily numbers of defendants processed increased as did August revenue, which rose to $74,692.

September and October 2015 operations remained similar to August 2015. In October a second representative position was filled permitting telephone operations to serve the public. September revenue was $84,842, and October revenue was $86,659.

In November 2015 operations continued as before, and suspension warning notices were issued. A plea by mail offer form was developed by the Traffic Prosecutor to reduce the number of personal appearances required at the Agency office. Revenue remained steady at $83,655.

In December 2015 the plea by mail system was instituted, increasing the numbers of cases that were addressed. The staff focused particularly on the suspension notice and license suspension process to better address enforcement. Revenue for December 2015 was $108,063.

January 2016 saw an increase in window traffic as motorists responded to suspension warning notices and motorist suspensions went into effect. January 2016 revenue increased to $164,069.

In February 2016 plea by mail improvements were implemented allowing more cases to be handled. Case backlogs were reduced at the same time that staff was temporarily reduced by departure of one representative. February 2016 revenue was $219,484.

March 2016 saw the appointment of the Judicial Hearing Officer. Scheduling of hearings commenced and the backlog of hearings pending from the Department of Motor Vehicles Traffic Adjudication Bureau was addressed. An Administrator was hired. Revenue for March 2016 was $243,171.

Two additional clerks were hired in April 2016. Staff activity focused on training new staff and maintaining walk-up activity. Revenue for April 2016 was $233,348.

In May 2016 new staff training continued and staff was devoted to the hearing process. One staff member was assigned full time to scheduling hearings. Three staff members were

assigned to staff the courtroom on Friday hearing days. The move of staff from plea by mail to hearing functions resulted in reduced plea by mail activity. May 2016 revenue was $174,086.

In June 2016 collection efforts were inaugurated with first issuance of collections warning letters and a second mailing of suspension warnings to motorists who had failed to respond to plea offers following first appearance. Substantial overtime was committed to addressing plea by mail backlog. Hearing activity continued to address backlog. June 2016 revenue was $317,691.

July 2016 activity slowed owing to staff vacation scheduling. Walk-up, telephone and plea by mail activity were prioritized over collections and suspensions. Hearings continued as in previous months. July 2016 revenue was $281,858.

In August 2016 a new prosecutor was hired, reducing the position from full-time to part time. A simplified plea-by-mail process was established allowing substantial increase in service to the public. Gross revenue for the month was $337,856.

In September 2016 case backlog from the Department of Motor Vehicles Administrative Adjudication Bureaus was cleared. Hearings were scheduled as in previous months. September 2016 Revenue was $300,245.

October 2016 continued as in September. Gross revenue was $355,444.

# STATISTICAL REPORT

**For July 1, 2015 through December 31, 2015:**

Approximately 20,000 people appeared before the BTVA by way of mail, phone and walk ins.

The Agency disposed of 15,000 cases. Not including cases disposed for cases before July 1, 2015.

An average of 250 people per day appeared before the agency

Total number of tickets written was 21,945

Total UTT's filed in 2015 was 21,945 plus 30,568 UTT's transferred from DMV TVB as unresolved.

Total UTT's pending as of 12/31/2015 was 6742. This number does not reflect pre July 1,2015 numbers.

Number of UTT's disposed of from 7/1/2015 to 12/31/2015 was 15,203

An Average of 2200 per month reached a disposition

A percentage of 15% of the UTT's transferred and filed reached a disposition

A percentage of 75% of the UTT's filed reached a disposition in 2015.

**For January 1, 2016 through December 31, 2016:**

Approximately 30,000 people appeared before the BTVA

The Agency disposed of 17,000 cases.

An average of 250 people per day appeared before the agency

Total number of tickets 27,808

Total UTT's filed in 2016 was 27,808

Total UTT's pending as of 10/31/2016 was 10,938

11

Number of UTT's disposed of from 01/01/2016 to 10/31/2016 was 16,870

An Average of 2200 per month reached a disposition

A percentage of 66% of the UTT's filed reached a disposition in 2016.

In 2015: Of the 15,203 cases that reached disposition, 9,511 were plea bargained, or 65%

In 2016: Of the 16,870 cases that reached disposition, 16,297 were plea bargained, or 90%.