# EXHIBIT 237

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

BLACK LOVE RESISTS IN THE RUST by and
through MARIELLE SHAVONNE SMITH and
CHARIS HUMPHREY on behalf of its members;
SHAKETA REDDEN; DORETHEA FRANKLIN;
TANIQUA SIMMONS; DE'JON HALL; JOSEPH
BONDS; CHARLES PALMER; SHIRLEY
SARMIENTO; EBONY YELDON; and JANE DOE,
individually and on behalf of a class of all others
similarly situated;

                              Plaintiffs,

        v.                                          Civil No.: 1:18-cv-00719-CCR

CITY OF BUFFALO, NY; BYRON B. BROWN,
Mayor of the City of Buffalo, in his individual and
official capacities; BYRON C. LOCKWOOD,
Commissioner of the Buffalo Police Department, in his
individual and official capacities; DANIEL DERENDA,
former Commissioner of the Buffalo Police Department,
in his individual capacity; AARON YOUNG, KEVIN
BRINKWORTH, PHILIP SERAFINI, ROBBIN
THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities.

                              Defendants.

_____

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFF'S
FIRST SET OF REQUESTS FOR ADMISSION**

        Defendants City Of Buffalo, New York; Byron B. Brown, Mayor of the City of

Buffalo, in his individual and official capacities; Byron C. Lockwood, Commissioner of the

Buffalo Police Department, in his individual and official capacities; Daniel Derenda, former

Commissioner of the Buffalo Police Department, in his individual capacity; Aaron Young, Kevin

0001

Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, Unknown

Officers 1-20, each officers of the Buffalo Police Department, in their individual capacities,

through their attorneys (collectively "Defendants"), by their attorneys, Hodgson Russ LLP, for

their response to Plaintiff's First Set of Requests for Admission, respond as follows:

## GENERAL OBJECTIONS

1.      Defendants generally object to these demands to the extent they are

subject to multiple meanings.

2.      Defendants generally object to these demands to the extent that they seek

documents not within Defendants' possession, custody, or control.

3.      Defendants generally object to these demands to the extent that they seek

documents within Plaintiff's possession, custody, or control.

4.      Defendants generally object to these demands to the extent that they

purport to impose on Defendants obligations that exceed the Federal Civil Rules of Procedure or

the Local Civil Rules for the Western District of New York.

5.      Defendants generally object to these demands to the extent that they seek

documents protected by the attorney-client privilege or the work product doctrine.

6.      Defendants generally object to these demands to the extent that they are

overbroad, unduly burdensome, or call for irrelevant documents not reasonably calculated to lead

to the discovery of admissible evidence.

- 2 -

## RESPONSES

**REQUEST NO. 1.**    Admit that Checkpoint locations were not selected based on any data concerning the location of motor vehicle accidents.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reason for each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that checkpoint locations were chosen without reference or regard to data related to motor vehicle accidents. Defendants deny, however, that information related to motor vehicle accidents never played a role in the determination for where to place a checkpoint.

**REQUEST NO. 2.**    Admit that Checkpoint locations were not selected based on any Reporting concerning the location of motor vehicle accidents.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reason for each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted without regard to reporting on the location of motor vehicle accidents. Defendants deny, however, that checkpoints were never operated based on information or reporting related to motor vehicle accidents.

**REQUEST NO. 3.**    Admit that Checkpoint locations were not selected based on any data concerning the location of red light violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reason for each and every checkpoint conducted while the Strike Force and Housing Unit were in operation.  Defendants admit that there were checkpoints conducted without consulting data regarding location of red-light

- 3 -

0003

violations. Defendants deny, however, that checkpoints were never operated based on

information related to red light violations.

**REQUEST NO. 4.**    Admit that Checkpoint locations were not selected based on
any Reporting concerning the location of red light violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on reporting of

red-light violations.  Defendants deny, however, that checkpoints were never operated based on

reporting of red-light violations.

**REQUEST NO. 5.**    Admit that Checkpoint locations were not selected based on
any data concerning the location of stop sign violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on data related to

stop sign violations.  Defendants deny, however, that checkpoints were never operated based on

information related to stop sign violations within the City of Buffalo.

**REQUEST NO. 6.**    Admit that Checkpoint locations were not selected based on
any Reporting concerning the location of stop sign violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

- 4 -

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on reporting of

stop sign violations.  Defendants deny, however, that checkpoints were never operated based on

reporting of stop sign violations.

**REQUEST NO. 7.**    Admit that Checkpoint locations were not selected based on any data concerning the location of speeding violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on data

concerning speeding violations.  Defendants deny, however, that checkpoints were never

operated based on information related to speeding violations.

**REQUEST NO. 8.**    Admit that Checkpoint locations were not selected based on any Reporting concerning the location of speeding violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on reporting of

speeding violations.  Defendants deny, however, that checkpoints were never operated based on

reporting of speeding violations.

**REQUEST NO. 9.**    Admit that Checkpoint locations were not selected based on any data concerning the location of Driving While Intoxicated (DWI) violations.

- 5 -

0005

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on DWI data. Defendants deny, however, that checkpoints were never conducted based on DWI data.

**REQUEST NO. 10.**   Admit that Checkpoint locations were not selected based on any Reporting concerning the location of DWI violations.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on DWI reporting.  Defendants deny, however, that checkpoints were never operated based on reporting of DWI offenses.

**REQUEST NO. 11.**   Admit that Checkpoint locations were not selected based on any data concerning the location of violations for driving without a valid license.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on data concerning motorists driving without a license.  Defendants deny, however, that checkpoints were never conducted based on information related to motorists driving without a license.

**REQUEST NO. 12.**   Admit that Checkpoint locations were not selected based on any Reporting concerning the location of violations for driving without a valid license.

- 6 -

0006

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on data concerning motorists driving without a license. Defendants deny, however, that checkpoints were never conducted based on information or reporting related to motorists driving without a license.

**REQUEST NO. 13.** Admit that Checkpoint locations were not selected based on any data concerning the location of violations for driving without a valid registration.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on data concerning motorists driving without a registration. Defendants deny, however, that checkpoints were never conducted based on information related to motorists driving without a registration.

**REQUEST NO. 14.** Admit that Checkpoint locations were not selected based on any Reporting concerning the location of violations for driving without a valid registration.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot possibly discern the specific reasoning for the location of each and every checkpoint conducted while the Strike Force and Housing Unit were in operation. Defendants admit that there were checkpoints conducted which were not based on reporting concerning motorists driving without a registration. Defendants deny, however, that checkpoints

were never conducted based on information or reporting related to motorists driving without a

registration.

**REQUEST NO. 15.** Admit that Checkpoint locations were not selected based on any data concerning the location of violations for driving without a valid inspection sticker.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on data

concerning motorists driving without an inspection sticker. Defendants deny, however, that

checkpoints were never conducted based on information related to motorists driving without an

inspection sticker.

**REQUEST NO. 16.** Admit that Checkpoint locations were not selected based on any Reporting concerning the location of violations for driving without a valid inspection sticker.

**RESPONSE:** Defendants cannot truthfully admit or deny the information

requested as they cannot possibly discern the specific reasoning for the location of each and

every checkpoint conducted while the Strike Force and Housing Unit were in operation.

Defendants admit that there were checkpoints conducted which were not based on reporting

concerning motorists driving without an inspection sticker. Defendants deny, however, that

checkpoints were never conducted based on information or reporting related to motorists driving

without an inspection sticker.

**REQUEST NO. 17.** Admit that Defendants did not perform any analyses to determine whether the Checkpoint Program improved traffic safety.

- 8 -

0008

**RESPONSE:** Defendants admit that they did not conduct a formal analysis as to whether the checkpoint program improved traffic safety but deny that administrators did not consider or think about whether or not the checkpoint program would improve vehicle and traffic safety within the City of Buffalo.

**REQUEST NO. 18.**   Admit that Mayor Byron Brown authorized the Checkpoint Program.

**RESPONSE:** Defendants object to this this request to the extent that the term "authorized" is ambiguous and subject to multiple meanings.  Defendants admit that Mayor Brown knew of and did not object to the Strike Force and Housing Unit conducting checkpoints, but state that Mayor Brown was not the individual who recommended the checkpoints and was not the person responsible for their implementation.

**REQUEST NO. 19.**   Admit that the BPD has not issued any directives prohibiting the use of Checkpoints going forward.

**RESPONSE:** Defendants object to this request to the extent the terms "directives" and "prohibiting" are subject to multiple meanings, and the scope and nature of the prohibition mentioned in the request is unclear.  Defendants further object to this request to the extent it focuses on any vehicle and traffic safety checkpoint regardless of the unit carrying out the checkpoint or the circumstances under which the checkpoint is conducted.  Subject to these objections, the request for admission is denied.  Defendants state that no patrol unit, or any unit, of the BPD is authorized to conduct a checkpoint without approval or consent from BPD administration and no authorization or consent since Strike Force and the Housing Unit were disbanded.

- 9 -

0009

**REQUEST NO. 20.**   Admit that the BPD has not removed Section 10.5, titled "Traffic Checkpoints," from its Manual of Procedures.

**RESPONSE:** Admitted, insofar as the manual of procedures in its current form speaks for itself.

**REQUEST NO. 21.**   Admit that the BPD has not issued any directives barring the Strike Force from being reestablished.

**RESPONSE:** Defendants object to this request to the extent that "directives" is ambiguous and subject to multiple meanings.  Defendants also object to the extent that this request does not differentiate between the functions which were carried out by Strike Force during its existence.  Subject to these objections, Defendants state that BPD could create a unit called the Strike Force or a proactive patrol unit going by a different name.  Defendants, however, deny that they have any plans to create a patrol unit that regularly conducts checkpoints.

**REQUEST NO. 22.**   Admit that the Housing Unit sometimes ran Checkpoints without the involvement of the Strike Force.

**RESPONSE:** Admitted based on deposition testimony.

**REQUEST NO. 23.**   Admit that if and when the Housing Unit ran Checkpoints without the involvement of the Strike Force, it did not issue Roadblock Directives.

**RESPONSE:** Defendants cannot truthfully admit or deny the information requested as they cannot determine what took place at every single checkpoint conducted by the Housing Unit.  Defendants admit that there were instances where the Housing Unit conducted checkpoints without issuing Roadblock Directives.  Defendants deny, however, that no directive was issued each and every time the Housing Unit conducted a checkpoint.

- 10 -

**REQUEST NO. 24.**   Admit that, during the Relevant Time Period, BPD officers were/are paid time and a half for the time they spent/spend on Court appearances in connection with Traffic Tickets they have issued.

**RESPONSE:**  Defendants deny that officers were/are paid time and a half for

each and every Court appearance made in connection with Traffic Tickets they have issued, as

per deposition testimony.  However, Defendants admit that in circumstances where officers have

met the hourly threshold for overtime and subsequently appear for court, they are paid time and a

half in accordance with overtime policies.

**REQUEST NO. 25.**   Admit that, during the Relevant Time Period, BPD officers were/are paid for at least four hours of time spent on each Court appearance in connection with Traffic Tickets they have issued, even if the actual time they spent/spend on that appearance was/is less than four hours.

**RESPONSE:**  Admitted.

**REQUEST NO. 26.**   Admit that the City of Buffalo, including without limitation the Buffalo Traffic Violations Agency ("BTVA"), maintains computerized records of Traffic Tickets that state for each person ticketed the nature of the violation(s), the date and time of the violation(s), the amount(s) assessed, the amount(s) paid, and the amount(s) owed.

**RESPONSE:**   Defendants admit that there is data available related to traffic

tickets issued in the City of Buffalo but Defendants cannot truthfully admit or deny the

remainder of the facts asserted in this request as they currently do not have personal knowledge

as to the exact information recorded for each and every traffic ticket.

**REQUEST NO. 27.**   Admit that the City of Buffalo, including without limitation the Department of Parking, maintains computerized records of vehicle tows and impounds.

**RESPONSE:**  Admitted.

- 11 -

**REQUEST NO. 28.** Admit that the City of Buffalo, including without limitation the Department of Parking, maintains computerized records from which it is possible to identify, for each vehicle impounded, the license plate number of the vehicle; the date of the impound; the duration of the impound; whether the vehicle was released, sold, or auctioned; the amount(s) assessed for towing, storage and other fees; the amount(s) paid from any source; and the amount(s) owed.

**RESPONSE:** Defendants cannot truthfully admit or deny the facts asserted in

this request as Defendants currently do not have personal knowledge of the information available

for each and every vehicle impounded within the City of Buffalo.

**REQUEST NO. 29.** Admit that the County of Erie maintains a computerized database of information concerning Traffic Tickets known as TraCS.

**RESPONSE:** Admitted, although this request seeks information related to a party

or entity over which Defendants have no control.

**REQUEST NO. 30.** Admit that, during the Relevant Time Period, the fields in the TraCS database included/include, among others, the following:

        a.      The date and time of the violation(s);

        b.      The location of the violation(s);

        c.      A description of the violation(s);

        d.      The provision(s) of law under which the violation(s) arise(s);

        e.      The race of the person to whom the Traffic Ticket(s) is/are issued.

**RESPONSE:** Defendants admit that the information listed above in lines a-d can

be recorded in TraCS but deny that the race of the person to whom the Traffic Ticket(s) is/are

issued is a field in the TraCS database during the Relevant Time Period, as per deposition

testimony.

0012

REQUEST NO. 31.   Admit that, during the Relevant Time Period, TraCS functionality included/includes the ability to enter, at the time of issuance, the race of the person to whom the ticket is being issued.

RESPONSE:  Denied, Defendants refer Plaintiffs to 30(b)(6) deposition

testimony on this topic.

REQUEST NO. 32.   Admit that the BPD has not issued any formal written policy requiring that BPD officers record in TraCS the race of each person ticketed.

RESPONSE:  Admitted, Defendants refer Plaintiffs to 30(b)(6) deposition

testimony on this topic.

REQUEST NO. 33.   Admit that the copies of TraCS records produced by Plaintiffs to Defendants are authentic for purposes of Rule 901(a) of the Federal Rules of Evidence.

RESPONSE:  Defendants cannot truthfully admit or deny the facts asserted in

this request, as they pertain to information that would be in the possession and control of a

different municipal entity.  Defendants also do not stipulate to the admissibility of TraCS

evidence if this matter proceeds to trial.

REQUEST NO. 34.   Admit that the copies of TraCS records produced by Plaintiffs to Defendants are records of a regularly conducted activity under Rule 803(6) of the Federal Rules of Evidence.

RESPONSE:  Defendants cannot truthfully admit or deny the facts contained

within this request, as they pertain to information that is within the possession or control of a

different municipal entity.  Defendants also do not stipulate to the admissibility of TraCS

evidence if this matter proceeds to trial.

0013

**REQUEST NO. 35.**   Admit that the County of Erie maintains a record management database known as CHARMS that integrates, among other records, arrests, summons, and towing information.

**RESPONSE:**  Admitted, although this request relates to an entity over which

Defendants have no control.

**REQUEST NO. 36.**   Admit that the copies of CHARMS records produced by Plaintiffs to Defendants are authentic for purposes of Rule 901(a) of the Federal Rules of Evidence.

**RESPONSE:**  This request is improper as it calls for Defendants to make a legal

conclusion on the admissibility of evidence as opposed to admit or deny factual information.

Subject to this objection, the request is denied.  Defendants also do not stipulate to the

admissibility of CHARMS evidence should this matter proceed to trial.

**REQUEST NO. 37.**   Admit that the copies of CHARMS records produced by Plaintiffs to Defendants are records of a regularly conducted activity under Rule 803(6) of the Federal Rules of Evidence.

**RESPONSE:**  This request is improper as it calls for Defendants to make a legal

conclusion on the admissibility of evidence as opposed to admit or deny factual information.

Subject to this objection, the request is denied.  Defendants also do not stipulate to the

admissibility of CHARMS evidence should this matter proceed to trial.

**REQUEST NO. 38.**   Admit that the BPD has not issued any formal written policy to officers concerning the prevention of racially biased policing, including racial profiling.

**RESPONSE:**  Denied.  Defendants have previously identified their policies

which prohibit racially biased policing in interrogatories and through 30(b)(6) deposition

testimony.

- 14 -

0014

**REQUEST NO. 39.**  Admit that the BPD does not have an Early Warning System.

**RESPONSE:**  This request is denied insofar as per Executive Order, BPD is required to send IAD materials to the Attorney General when officers receive a certain number of complaints within a specified period of time.

**REQUEST NO. 40.**  Admit that the BPD has received federal funds issued by the Department of Justice in the years 2015-present.

**RESPONSE:**  Admitted.

**REQUEST NO. 41.**  Admit that each of the following datasets on the OpenData Buffalo website is maintained for and at the direction of the City, and is a statement of the City that meets the requirements for admissibility set forth in Rule 801(d)(2) of the Federal Rules of Evidence:

        a.      Open Data Uniform Traffic Tickets

        b.      Open Data Traffic Stop Receipts

        c.      Open Data Parking Summonses

        d.      Open Data Tows

        e.      Open Data Roadside Appearance Tickets

        f.      Open Data Quality of Life Summonses

**RESPONSE:**  Defendants admit that the data sets referenced are maintained by the City of Buffalo but objects to the remainder of the request as it improperly calls for Defendants to make a legal conclusion as to the admissibility of evidence as opposed to admitting or denying a set of factual assertions.  Defendants do not stipulate to the admissibility of this evidence should this matter proceed to trial.

- 15 -

**REQUEST NO. 42.**  Admit that all of the documents You produced in discovery, including all of the documents produced with Bates prefix "COB" and any documents You produced without Bates numbers, are authentic for purposes of Rule 901(a) of the Federal Rules of Evidence.

**RESPONSE:** This request for admission is improper as it calls for Defendants to make a legal conclusion as to the admissibility of evidence as opposed to admitting and denying a fact.  Based on this objection, the request is denied.  Defendants do not stipulate to the admissibility of all evidence produced in discovery.

**REQUEST NO. 43.**  Admit that the following documents constitute records of a regularly conducted activity for purposes of Rule 803(6) of the Federal Rules of Evidence:

a.    Roadblock Directives, including without limitation COB001962-COB003602;

b.    Housing Unit Monthly Reports, including without limitation COB001637-COB001941 and COB024517-COB024806;

c.    Strike Force Daily Reports and Housing Daily Reports, including without limitation COB024393-COB027836 and COB028265-COB032191;

d.    All records related to complaints and investigations of complaints included in the spreadsheets emailed to Plaintiffs by Defendants on September 23, 2022;

e.    All IAPro summaries, an example of which can be found at COB668652-668657;

f.    All Internal Affairs Division ("IAD") case folders, as defined on pages 14-15 of the Buffalo Police Department Complaint Investigation Manual (produced by Defendants at COB_INC_00000095_014-015), and their complete contents;

g.    All P-73 Buffalo Police Department Intra-Departmental Correspondence forms and their complete contents, an example of which can be found at COB014236;

h.    All BPD officer disciplinary cards, as defined on page 14 of the Buffalo Police Department Complaint Investigation Manual (produced by Defendants at COB_INC_00000095_014), an example of which can be found at COB010049;

i.    All complaints filed with Buffalo's Commission on Citizens' Rights and Community Relations (CCRCR) and their complete file contents;

- 16 -

j.      Compstat reports, including without limitation COB326623 to COB329534;

k.      Strike Force Area maps, including without limitation COB001613-COB001636.

**RESPONSE:**        This request for admission is improper as it calls for

Defendants to make a legal conclusion as to the admissibility of evidence as opposed to

admitting and denying a fact.  Based on this objection, the request is denied.  Defendants do not

stipulate to the admissibility of the listed evidence should this matter proceed to trial.


Dated:        Buffalo, New York
              February 14, 2024

**HODGSON RUSS LLP**
*Attorneys for City of Buffalo*
*and other City Defendants*


By:   s/ Peter A. Sahasrabudhe
              Hugh M. Russ, III, Esq.
              Peter A. Sahasrabudhe, Esq
              Cheyenne N. Freely, Esq.
Guaranty Building
140 Pearl Street – Suite 100
Buffalo, New York  14202
Telephone:  716-856-4000
hruss@hodgsonruss.com
psahasra@hodgsonruss.com
cfreely@hodgsonruss.com

- 17 -

TO:

**CENTER FOR CONSTITUTIONAL RIGHTS**
A. Chinyere Ezie
Baher Azmy
666 Broadway, 7th Floor
New York, NY 10012
Tel/Fax: (212) 614-6464
CEzie@ccrjustice.org
BAzmy@ccrjustice.org

**WESTERN NEW YORK LAW CENTER**
Joseph A. Kelemen
Matthew Alan Parham
37 Franklin Street, Suite 210
Buffalo, NY 14202
Tel: (716) 855-0203
Fax: (716) 270-4005
kwilliams@wnylc.com

**NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
Claudia Wilner
Anjana Malhotra
Edward Krugman
50 Broadway, Suite 1500
New York, NY 10004
212-633-6967
wilner@nclej.org
malhotra@nclej.org
Krugman@nclej.org

**COVINGTON & BURLING, LLP**
Jordan Scott Joachim
Christine Adrienne Nelson
620 Eighth Ave. Suite 4029
New York, NY 10018
Tel:  (212) 841-1000
Fax: (212) 841-1010
JJoachim@cov.com
cnelson@cov.com

16504140v1

0018