# EXHIBIT 260

```
STATE OF NEW YORK    :   COUNTY OF ERIE
CITY OF BUFFALO      :   CITY COURT
```

PEOPLE OF THE STATE OF NEW YORK,

           Plaintiff,

**DECISION AND ORDER**

    vs.

Docket No. CR-16851-15

STEPHEN J. DZIELSKI,

           Defendant.

    The following constitutes the Opinion, Decision and Order of the Court.

    An accusatory instrument has been filed against the defendant accusing him of violating Vehicle and Traffic Law Sections 1192.(2),(3), 1227(1), and 375(35c) (4 counts). It is alleged that on September 11, 2015 at approximately 7:00 P.M., the defendant was driving his motor vehicle in an intoxicated condition.

    The defendant, claiming to be aggrieved by an unlawful police stop and an unlawful interrogation, has moved to suppress any chemical test results, any and all tangible evidence and any and all statements on the grounds that the defendant was involuntarily seized without probable cause.

    The People assert that the seizure of evidence was obtained pursuant to a valid roadblock.

    The People have the burden, in the first instance, of going forward to show the legality of the police conduct. The defendant, however, bears the ultimate burden of proving beyond a preponderance of the evidence that such evidence should be suppressed.

0001

A pre-trial suppression hearing was conducted before this Court on March 14, 2016.

The People called as witnesses Buffalo Police Lieutenant Lance Russo and Buffalo Police Officer William Robinson.

**The Court makes the following findings of fact and conclusions of law:**

On September 11, 2015 at 6:00 P.M., a safety checkpoint was initiated at the intersection of Crowley and Rano in the City of Buffalo. Prior to the initiation of the checkpoint on that day, Buffalo police officers were given an oral briefing by Lieutenant Lance Russo. A written directive was also posted in a binder and made available to the officers. The written directive was entered into evidence at the hearing.

When asked what instructions he had been given regarding the procedures to be followed, Officer William Robinson testified that "we generally know what we're doing. So when we're told to do a checkpoint, it's do a checkpoint here at this time because we've done, I don't know, a hundred of them. . . We stop every single car for safety and equipment violations, make sure we have our overhead lights on, and it's got to be a safe spot."

At approximately 7:00 P.M. on September 11, the defendant was stopped at the safety checkpoint. Officer Robinson observed an open container of beer in plain view in defendant's lap. At that point, Officer Robinson conducted a DWI investigation, and defendant was subsequently placed under arrest.

2

0002

## ANALYSIS

"The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons" (*Whren v. Robinson*, 517 US 806 [1996]; *Delaware v. Prouse*, 440 US 648 [1979]; *US v. Martinez-Fuerte*, 428 US 543 [1976]; *People v. Robinson*, 97 NY2d 341 [2001]; *People v. Estrella*, 48 AD3d 1283 [4 Dept 2008]).

"A roadblock or checkpoint stop is a seizure within the meaning of the Fourth Amendment" (*People v. Scott*, 63 NY2d 518 [1984]; *People v. John BB.*, 56 NY2d 482 [1982]; *People v. Ingle*, 36 NY2d 413 [1976]; *People v. LaFountain*, 283 AD2d 1003 [4 Dept 2001]).

A roadblock established pursuant to a directive by the head of the law enforcement department for the purpose of motor vehicle safety and equipment violations is constitutionally permissible (see *People v. Scott*, 63 NY2d 518 [1984]; *People v. LaFountain*, 283 AD2d 1003 [4 Dept 2001]).

The written or oral directive must contain the procedures to be followed and they must be uniform and not gratuitous or subject to individually discriminatory selection (*People v. Serrano*, 233 AD2d 170 [1 Dept 1996]).

The Court in *Martinez-Fuerte* detailed the method and procedure to be used in roadblocks. "The regularized manner in which established checkpoints are operated is visible evidence, reassuring to law-abiding motorists, that the stops are duly

3

0003

authorized and believed to serve the public interest" (*US v. Martinez-Fuerte*, 428 US at 559 [1976]).

In the case at bar, neither of the officers' testimony established any visual details relative to the checkpoint. There was no evidence offered that the defendant's vehicle was stopped pursuant to a nonarbitrary, nondiscriminatory and uniform procedure. There was no testimony elicited as to the content of the procedures contained within the written or oral directives. There was no evidence by either witness as to any specific verbal or written instructions as to the procedures to be used at the checkpoint, including, among other things, the nature of the questions to be asked of every motorist (*People v. Scott*, 63 NY2d 518 [1984]; *People v. LaFountain*, 283 AD2d 1013 [4 Dept 2001]).

The People have failed to meet their burden of proof in that they failed to offer any evidence that the police had signs, safety devices, flares, or police cars stationed in place to alert motorists that they were approaching a checkpoint as required by *US v. Martinez-Fuerte*.

This Court found both officers' testimony to be credible. Their testimony, however, was "insufficient to establish that the checkpoint here complied with the standards established by the Court of Appeals in *People v. Scott*" (*People v. Holley*, 157 Misc2d 402 [Crim Ct. 1993]).

As enunciated in *Holley*, when evaluating the validity of a checkpoint, the court must consider "the degree of the intrusion of the procedure on the individual subjected to it, measured in terms of both its subjective effect and the degree of

4

0004

discretion vested in the officials charged with carrying it out." The reviewing court must ensure that the roadblock was "being maintained in accordance with a uniform procedure which afforded little discretion to operating personnel, and that adequate precautions as to safety, lighting and fair warning of the existence of the checkpoint were in operation."

Just as in *Holley*, this record fails to contain any evidence that the police had any signs or other safety devices in place to alert motorists that they were approaching a checkpoint. "No testimony was presented to show that the police had any flares or cones on the road, any special lighting or any police cars stationed in plain view of oncoming traffic."

This Court has no way to determine from the sparse evidence offered at the hearing what the details of the directives were and if they were followed.

As a result, it is the finding of this Court that the hearing testimony failed to establish that the checkpoint was established and operated in a manner that complied with constitutional requirements. This Court further finds that the police had no right to stop and to arrest the defendant. All of the evidence, including any tangible evidence and any statements, which were obtained as a result of the defendant's arrest are hereby suppressed.

Therefore, defendant's motion to suppress all tangible evidence seized and statements made on the grounds of the unlawful stop is hereby granted.

5

0005

The foregoing constitutes the Opinion, Decision and Order of the Court.

DATED: Buffalo, New York
May 3, 2016

_____
KEVIN J. KEANE
Buffalo City Court Judge

0006