# EXHIBIT 344

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____ X

KEYONTAY RICKS

                     Plaintiff,

     -against-                                Civil Action No.:   20-cv-43

THOMAS BROWN, INDIVIDUALLY,
CHRIS DATES, INDIVIDUALLY
And MARK JOSEPH LAUBER, INDIVIDUALLY
                     Defendants

_____ X

### COMPLAINT IN A CIVIL ACTION

Plaintiff by and through his undersigned attorneys as for his complaint alleges as follows:

#### JURISDICTION

1.     This Court has original jurisdiction under 28 U.S.C. § 1331, 42 U.S.C. § 1983, 42 U.S.C. § 1988, and supplemental jurisdiction under 28 U.S.C. § 1367.

2.     Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitution of the United States.

#### JURY TRIAL DEMANDED

3.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

#### VENUE

4.     Venue properly lies in the Western District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

COB-Hodgson_0045010

## COUNT I: MALICIOUS PROSECUTION AND DUE PROCESS VIOLATIONS UNDER 42 USC § 1983

5.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the foregoing paragraphs as if the same were more fully set forth herein at length.

6.    At all relevant times, plaintiff Keyontay Ricks (hereinafter "Plaintiff") was a citizen of State of New York and the County of Erie, but presently resides in the State of Pennsylvania.

7.    At all relevant times, Defendant Thomas Brown, (hereinafter "Brown") is and was a citizen of State of New York and the County of Erie.

8.    At all relevant times, Defendant Chris Dates, (hereinafter "Dates") is and was a citizen of State of New York and the County of Erie, but presently resides in the State of Nevada.

9.    At all relevant times, Defendant Mark Joseph Lauber, (hereinafter "Lauber") is and was a citizen of State of New York and the County of Erie.

10.    At all times relevant herein, Brown was a duly sworn police officer, employed by the Town of Amherst, and was acting in the course and scope of his employment.

11.    At all times relevant herein, Dates was a duly sworn police officer, employed by the City of Buffalo, and was acting in the course and scope of his employment.

12.    At all times relevant herein, Lauber was a duly sworn police officer, employed by the City of Buffalo, and was acting in the course and scope of his employment.

13.    At all times relevant herein, Brown was acting under the color of law.

14.    At all times relevant herein, Dates was acting under the color of law.

15.    At all times relevant herein, Lauber was acting under the color of law.

COB-Hodgson_0045011

16. On June 28, 2004, Plaintiff was a passenger in a vehicle bearing New York license plate number BVR 4931, (hereinafter "the vehicle") which was being driven by Tina Smith, (hereinafter "Smith") a non-party herein.

17. On June 28, 2004, Marina Borina,(hereinafter "Borina") a non-party herein was a passenger in the vehicle.

18. On or about June 28, 2004, Marina Borina was the Plaintiff's girlfriend, and the mother of Plaintiff's child.

19. On June 28, 2004, Marina Borina was pregnant with Plaintiff's child.

20. At all times relevant herein, Marina Borina was Caucasian.

21. At all times relevant herein, Plaintiff was African American.

22. At all times relevant herein, Brown was Caucasian.

23. On June 28, 2004, Kurtel Walker, (hereinafter "Walker") a non-party herein was a passenger in the vehicle.

24. On June 28, 2004, Walker was approximately fifteen years old.

25. On June 28, 2004, and at all times relevant herein, Walker suffered from a mental disability, was illiterate and unable to read.

26. The evening prior to June 28, 2004, Plaintiff, Borina and Smith had spent the evening at a hotel to celebrate Plaintiff's birthday.

27. On June 28, 2004, Plaintiff, Borina and Smith, had plans to spend the day at a lake.

28. On June 28, 2004, Walker was a family friend of the Plaintiff.

29. On June 28, 2004, at approximately 8:00 a.m., Walker met Plaintiff, Borina and Smith at the hotel.

COB-Hodgson_0045012

30. Antwyninas Degraffenried, (Hereinafter " Degraffenried"), a non-party herein, is and was a resident of the state of New York, and County of Erie.

31. On or about June 28, 2004, and at all times relevant herein Degraffenried was employed by the Rent A Center, located at 3021 Bailey Avenue, in the City of Buffalo, State of New York.

32. On or about June 28, 2004, Degraffenried owned Walker a sum of money.

33. Unbeknownst to Plaintiff, Degraffenried and Walker, planned a scheme, in which Degraffenried and Walker would stage a robbery, while Degraffenried was making his customary bank deposit of the Rent A Center's funds.

34. Pursuant to the aforementioned scheme, Degraffenried would hand Walker the Rent A Center's funds, and pretend to have been robbed, and Walker would take funds that he was owed and he and Degraffenried, would split the balance of the funds.

35. On June 28, 2004, between 9:00 a.m. and 10:00 a.m., Walker was a passenger in the vehicle and when the vehicle reached the vicinity of Kensington and Bailey Avenue, in the City of Buffalo, State of New York, Walker asked the driver of the vehicle, to pull over so he could go to a store and purchase some items to bring to the lake.

36. Upon information and belief, after leaving the vehicle, Walker contacted Degraffenried and advised him that it was time to execute the aforementioned scheme.

37. On June 28, 2004, between 9:00 a.m. and 10:00 a.m., and at all times relevant herein, Plaintiff was unaware of the aforementioned plan between Walker and Degraffenried and was asleep in the backseat of the vehicle.

COB-Hodgson_0045013

38.   On June 28, 2004, between 9:00 a.m. and 10:00 a.m., pursuant to the aforesaid plan, Walker approached Degraffenried, who handed Walker the Rent A Center deposit, and Walker ran back to the vehicle.

39.   Prior to entering the vehicle, Walker secreted the aforesaid funds and property, which he obtained from Degraffenried, inside of his underwear.

40.   When Walker re-entered the vehicle, he did not disclose what he had just done or otherwise advise Plaintiff or the other occupants of the vehicle, that he staged a robbery.

41.   After Walker entered the vehicle, the vehicle proceeded to Plaintiff's residence, which was located at 30 Pheasant Run, in the town of Amherst, State of New York.

42.   On June 28, 2004, after executing the aforesaid money hand off to Walker, Degraffenried returned to the Rent A Center, pretended to have been the victim of a robbery and call the police and falsely reported that he had been robbed.

43.   Brown after receiving a radio call, observed the vehicle and followed it to 30 Pheasant Run, in the Town of Amherst, State of New York, where he along with other officers, detained said vehicle.

44.   Upon detaining the vehicle, Brown searched the Plaintiff thoroughly and found no evidence that Plaintiff had been involved in the aforesaid criminal activity committed by Walker.

45.   Prior to June 28, 2004, Brown had engaged in racially hostile behavior towards Plaintiff, including but not limited calling Plaintiff a nigger, and telling Plaintiff that people like him did not belong in Amherst.

46.   At all times relevant herein, Brown had a personal animus towards the Plaintiff.

COB-Hodgson_0045014

47.    Lauber on June 28, 2004, and at all times relevant, had a racial animus towards African

       Americans and children of mixed race parents.

48.    On June 28, 2004, Borina was pregnant with Plaintiff's child, which would be a mixed

       race child.

49.    On June 28, 2004, Brown placed Plaintiff in his vehicle and brought Plaintiff to the

       vicinity of Kensington and Bailey Avenue, in the City of Buffalo, State of New York.

50.     On June 28, 2004, Walker was placed into a patrol vehicle of an Amherst officer, who's

       identity is not presently known and the unknown Amherst officer brought Walker to the

       vicinity of Kensington and Bailey Avenue, in the City of Buffalo, State of New York.

51.    On June 28, 2004, while en-route from Pheasant Run to the vicinity of  Kensington and

       Bailey Avenue, in the City of Buffalo, State of New York, Walker was not in handcuffs

       because of his age.

52.    On June 28, 2004, while enroute from Pheasant Run to the vicinity of  Kensington and

       Bailey Avenue, in the City of Buffalo, State of New York Walker secreted most of the

       money which he obtained from Degraffenried, in the patrol car that was transporting him.

53.    On June 28, 2004, after arriving at the vicinity of Kensington and Bailey Avenue, in the

       City of Buffalo, State of New York, Brown conducted a show up identification of

       Plaintiff and Degraffenried, informed Brown that Plaintiff was not involved in the

       robbery.

54.    On June 28, 2004, Degraffenried stated to Brown, that he could not identify Walker,

       because he was robbed from behind.

55.    On June 28, 2004, Brown or another Amherst officer, while at the vicinity of Kensington

       and Bailey Avenue, in the City of Buffalo, State of New York, found the money and

COB-Hodgson_0045015

property from the Rent a Center deposit, in the Amherst police vehicle, which was occupied by Walker.

56.   On June 28, 2004, Plaintiff had not been in the Amherst Police vehicle which transported Walker.

57.   On June 28, 2004, and at all times relevant herein, there was no probable cause to believe that Plaintiff was involved in the aforesaid fake robbery, which never actually occurred.

58.   On June 28, 2004, after the aforesaid show up identification, in which Plaintiff was not identified as a participant, Plaintiff was transported to the Buffalo police station by Brown.

59.   On June 28, 2004, while at the Buffalo police station, Brown asked Plaintiff for information on drug activity and Plaintiff made a sarcastic remark, that Brown should arrest himself.

60.   After the aforementioned remark by Plaintiff, Brown became extreme angry, called Plaintiff a Nigger and threatened Plaintiff by stating that he would make sure Plaintiff would get twenty five years in jail.

61.   On June 28, 2004, after the aforesaid show up identification, Walker was transported to the Buffalo police station in the same vehicle which brought him from 30 Pheasant Run to the area where the show up identification was conducted.

62.   On June 28, 2004, Lauber was assigned to investigate the alleged robbery at the Rent A Center and responded the Bailey Avenue and Kensington.

63.   On June 28, 2004, and at all times relevant herein Lauber was the lead detective assigned to the Buffalo investigation into the alleged robbery.

COB-Hodgson_0045016

64.    On June 28, 2004, Dates was assigned to investigate the alleged robbery at the Rent A
       Center and responded the Bailey Avenue and Kensington.

65.    On June 28, 2004, and at all times relevant herein Dates was the lead detective assigned
       to the Buffalo investigation into the alleged robbery.

66.    Upon information and belief, on or about June 28, 2004, and at all times relevant herein,
       Lauber was aware that the aforesaid money was found in the transport vehicle which
       transported Walker from Amhurst, to Bailey Avenue and Kensington.

67.    Upon information and belief, on or about June 28, 2004, and at all times relevant herein,
       Dates was aware that the money was found in the transport vehicle which transported
       Walker from Amhurst, to Bailey Avenue and Kensington.

68.    At all times relevant, Plaintiff denied knowledge of and involvement with any robbery
       and didn't make any implicatory statement.

69.    On or about June 28, 2004, Brown created police paperwork, which falsely attributed
       statements to Plaintiff which he did not make, including a statement that Plaintiff stated
       to him that as follows "I don't know whats going on, we came here to see my cousin,
       then the next thing I know, Kurtel jumped in the car and told us to go, then handed me a
       bunch of money, and told me to stash it. I hid it in my boot before we put it in the
       back seat."

70.    At no time, did Plaintiff make any such statement.

71.    Brown on or about June 28, 2004, further created police paperwork which falsely
       attributed statements to Plaintiff which he did not make, including a statement that
       Plaintiff stated to Brown "Can you help me out, can you make the money disappear and I
       will give you information Come on man, this is going to break my parole."

COB-Hodgson_0045017

72. At no time, did Plaintiff make any such statement, which Brown attributed to him.

73. The aforementioned statements which Brown attributed to Plaintiff, (Hereinafter "the inculpatory statements") were memorialized in a 710.30 notice and forwarded to the prosecutor.

74. While at the Buffalo police station, Lauber and Dates, interrogated Walker, who denied that there was a robbery.

75. Lauber and Dates, utilized improper interrogation techniques and threated Walker to falsely implicate Ricks in a robbery that never occurred, by screaming at Walker, using physical force by punching Walker, grabbing him and slamming him into a wall, and threatening Walker, that if he did not implicate Plaintiff in being involved in the robbery, that Walker would spend twenty five years in jail.

76. During the interrogation, Walker admitted to Lauber and Dates, that he and Antwyninas Degraffenried, whom he described as "NaNa" staged a fake robbery and that Plaintiff was not aware of same.

77. Lauber and Dates, failed to record the statement which Walker initially made, which was exculpatory to Plaintiff, but instead threated Walker by stating in sum and substance that if he did not implicate Plaintiff in the robbery, that they would send him to jail for twenty five years, and they further told Walker, that if he implicated Plaintiff, they would let him go.

78. Based upon the foregoing, threats, physical violence by the defendants, Walker was coached to sign a fabricated statement (Hereinafter "the Walker statement") which falsely stated that the Plaintiff planned the robbery with Antwyninas Degraffenried, that he enlisted Walker to perform said robbery, that Plaintiff communicated directly with

COB-Hodgson_0045018

Antwyninas Degraffenried, about setting up and staging the robbery, that Plaintiff drove around with Walker and showed him how to run back to the car, that upon returning to the car, Walker handed the money to Plaintiff, and that Plaintiff had a plan with Antwyninas Degraffenried, to split the money.

79. At all times relevant herein, Lauber and Dates, knew that the statement was false and product of improper interrogatory techniques in threatening and utilizing physical force against Walker.

80. Defendants Lauber and Dates, had Walker sign the fabricated statement, even though they knew the money was actually found in Walker's transport vehicle, not the transport vehicle which Plaintiff occupied.

81. On or about June 28, 2004, Lauber and Dates, prepared a statement for Walker to sign, which states in sum and substance that after they left the hotel, Walker and Ricks drove to the Rent a Center, went around the neighborhood and Ricks showed him shortcuts to take back to the vehicle which was parked on Hastings, and that when he entered the vehicle, he handed all of the money to Plaintiff, who counted it as the vehicle drove off and that Plaintiff put the money in his shoe.

82. At all times relevant herein, Defendants Brown, Lauber and Dates, failed to document and withheld from the prosecutor that the money was found in the transport vehicle occupied by Walker.

83. On or about June 28, 2004, Plaintiff did not drive around the neighborhood and show Walker how to return to the car, nor did Walker hand Plaintiff any of the money, nor did Plaintiff have any pre-arranged plan with Antwyninas Degraffenried.

**0010**

COB-Hodgson_0045019

84. On or about June 28, 2004 and at all times relevant herein, Plaintiff had no knowledge that Walker and Degraffenried had planned to stage a robbery, nor did Walker ever give Plaintiff the money.

85. After Walker signed the Walker statement, he was released on station house bail.

86. On or about June 29, 2004, Walker returned to the Buffalo police station and spoke with Dates and/or Lauber and advised that the statement which he signed the day prior was false and that Plaintiff was not involved in the staged robbery.

87. On or about June 29, 2004, Dates and/or Lauber refused to take a further statement from Walker and threatened Walker that if he did not leave the police station, they would lock him up.

88. On or about June 28, 2004 and at all times relevant herein, Brown knew that the statements which he attributed to Plaintiff were complete fabrications.

89. On or about June 28, 2004 and at all times relevant herein, Brown forwarded the paperwork containing the fabricated statements to the prosecutor.

90. Brown, at all times relevant herein, withheld from the prosecutor that the statements which he attributed to Plaintiff were fabricated.

91. On or about June 28, 2004 and/or June 29, 2004 and at all times relevant herein, Lauber and Dates forwarded the Walker statement to the prosecutor.

92. Defendants Lauber and Dates, at all times relevant herein, withheld the aforementioned improper means by which they caused Walker to sign the Walker Statement, withheld that Walker had initially exculpated Plaintiff by stating that he wasn't involved, and further withheld that Walker recanted the statement, withheld that the money was found in the transport vehicle occupied by Walker, not the transport vehicle occupied by Ricks.

COB-Hodgson_0045020

93.     On or about June 28, 2004, Dates prepared, swore to and signed a felony complaint charging the Plaintiff with Robbery in the First Degree, in violation of Penal Law § 160.15.

94.     By signing the aforesaid felony complaint Dates, initiated the prosecution against the Plaintiff.

95.     By and through the foregoing, fabrication of false evidence and providing same to the prosecutor, as well as the suppression of exculpatory evidence, Brown initiated the prosecution against the Plaintiff.

96.     On or about June 29, 2004, Plaintiff was arraigned was required to pay the sum of Ten Thousand Dollars in bail to be released.

97.     By and through the foregoing, coercion and threatening of Walker, the fabrication of the Walker statement and the suppression of exculpatory information, Lauber initiated and continued the prosecution.

98.     By and through the foregoing, coercion and threatening of Walker, the fabrication of the Walker statement and the suppression of exculpatory information, Dates initiated and continued the prosecution.

99.     Based upon the aforesaid, felony complaint, the fabricated and false evidence created by the Defendants and their suppression of exculpatory information, Plaintiff was caused to be arraigned on a charge of robbery.

100.    But for the aforesaid, fabricated evidence, including Brown's false assertion of statements by Plaintiff and the Walker statement, there was no evidence against that the Plaintiff was in any way involved in the staged robbery and there was no probable cause to believe that the prosecution against the Plaintiff could succeed.

COB-Hodgson_0045021

101.   Brown initiated and continued the prosecution by engaging in misconduct and provided materially false information to the prosecutor, in that he represented that Plaintiff made the aforesaid statements, and that the aforesaid money was found in the patrol car which transported Plaintiff.

102.   Lauber initiated and continued the prosecution by engaging in misconduct and providing to the prosecutor, the Walker statement, which he knew to be false, in that it falsely implicated Plaintiff, and by withholding from the prosecutor that said statement was the product of improper interrogation techniques, in that the false implication of the Plaintiff was the result of Walker being assaulted, battered and threatened by the defendants and by failing to apprise the prosecutor that Walker recanted the statement, as well as the fact that the money was found in the transport vehicle occupied by Walker, not the Plaintiff.

103.   Brown initiated and continued the prosecution by failing to disclose to the prosecutor that the Plaintiff did not actually make any inculpatory statements and that the money from the Rent A Center larceny was actually found in the patrol car which transported Walker.

104.   Dates, initiated and continued the prosecution by engaging in misconduct and providing to the prosecutor, the Walker statement, which he knew to be false, in that it falsely implicated Plaintiff, and by withholding from the prosecutor that said statement was the product of improper interrogation techniques, in that the false implication of the Plaintiff was the result of Walker being assaulted, battered and threatened by the defendants and by failing to apprise the prosecutor that Walker recanted the statement, as well as the fact that the money was found in the transport vehicle occupied by Walker, not the Plaintiff.

105.   The grand jury investigated the robbery charges against the Plaintiff and on or about November 22, 2004, in said hearing Lauber committed perjury and fraud in the grand

**0013**

COB-Hodgson_0045022

jury hearing and failed to make a full and complete disclosure, in that he testified as to the Walker statement and failed to apprise the grand jury that the statement was the result of Walker being battered and threatened and further failed to apprise the grand jury that Walker had recanted the statement.

106. The grand jury investigated the robbery charges against the Plaintiff and on or about December 1, 2004, in said hearing Brown committed perjury and fraud in the grand jury hearing and failed to make a full and complete disclosure, in that he testified that Plaintiff made the aforesaid statements to him, and gave testimony, which implied that Plaintiff was the source of the money that was recovered from the aforesaid Rent A Center larceny.

107. By and through the foregoing, Defendants failed to set forth facts before the grand jury which would have vitiated probable cause.

108. All of the foregoing testimony caused a grand jury to return an indictment against the Plaintiff for the above referenced charges.

109. On or about January 4, 2005, Plaintiff was arraigned on the indictment and on said date, the Court increased the Plaintiff's bail to the sum of Fifty Thousand Dollars ($50,000.00).

110. Plaintiff was unable to post the aforesaid bail of Fifty Thousand Dollars ($50,000.00), and remained incarcerated after said date.

111. But for the aforementioned false, fabricated and perjured testimony there was no probable cause to believe that the Plaintiff had in any way committed acts for which he was ultimately indicted and prosecuted.

112. Defendants failed to set forth facts before the grand jury which would have vitiated probable cause.

COB-Hodgson_0045023

113.   Based upon the foregoing perjury and police misconduct, on or about December 8, 2004 the grand jury returned an indictment against Plaintiff for Robbery in the First Degree, Grand Larceny and Possession of Stolen Property, in the third degree.

114.   The aforesaid police misconduct was sufficient to rebut any presumption of probable cause created by the indictment.

115.   On or about April 13, 2005, Brown continued the prosecution, by stating to the prosecutor, that Plaintiff made the aforesaid inculpatory statements, and that the money from the Rent A Center Larceny was found in the Plaintiff's transport vehicle.

116.   On or about April 13, 2005, Brown continued the prosecution, by falsely testifying at a hearing, that Plaintiff made the aforesaid inculpatory statements, and that the money from the Rent A Center Larceny was found in the Plaintiff's transport vehicle.

117.   Between June 27, 2005 and June 30, 2005, Plaintiff was tried in the Supreme Court of the State of New York, in and for Erie County, on the charges of Robbery in the first degree and Possession of Stolen Property in the Third Degree.

118.   Following the conclusion of the People's case, the Court dismissed the grand larceny count of the indictment.

119.    Upon information and belief, prior to the trial, Brown spoke with the prosecutor and provided false information that the Plaintiff made the foregoing inculpatory statements, and that the money from the Rent A Center larceny was found the Amherst police vehicle which Plaintiff was escorted in.

120.   During the trial, Brown provided knowingly false testimony, in that he testified to the aforesaid inculpatory statements, and that the money from the Rent A Center larceny was found in the Plaintiff's transport vehicle.

0015

COB-Hodgson_0045024

121.    Aside from the aforesaid false testimony, there was no evidence or testimony offered at trial, connecting Plaintiff to the alleged robbery.

122.    Based upon the aforesaid also testimony and police misconduct in suppressing exculpatory information, on or about June 30, 2005, Plaintiff was convicted of robbery in the first, and possession of stolen property in the third degree.

123.    The Plaintiff's conviction was a direct and proximate result of the foregoing misconduct by the defendants.

124.    Defendants failed to set forth facts before the jury which would have vitiated probable cause.

125.    The aforesaid misconduct is sufficient to rebut any presumption of probable cause associated with the conviction.

126.    On or about October 27, 2005, Plaintiff was sentenced to a determinate sentence of twenty years for the robbery and a concurrent indeterminate sentence of two and one third years to seven years for the possession of stolen property.

127.    The aforementioned false representations, fabricated evidence, coerced statement, misconduct and failure to make a full and complete disclosure of the facts by the defendants, prevented the prosecutor from exercising independent judgment until the point when the false information was discovered.

128.    The prosecutor failed to exercise independent judgment and/or was complicit in the Defendants' misconduct.

129.    By and through the aforesaid fabrication of false evidence and by failing to make a full and complete disclosure of facts known by him to the prosecutor, Defendants continued the prosecution against the Plaintiff.

0016

COB-Hodgson_0045025

130.    At all times relevant herein, there was no probable cause to believe that the prosecution

against the Plaintiff could succeed.

131.    As more fully set forth herein, all defendants were directly and actively involved in the

continuation of criminal proceedings against plaintiff.

132.    At all times mentioned, herein there was a lack of probable cause to initiate and continue

criminal proceedings against plaintiff.

133.    The aforementioned actions were done by Defendants with Malice and to frame Plaintiff

for crimes which he did not commit and to deny him the rights and privileges guaranteed

by the U.S. Constitution and the Constitution of the State of New York.

134.    But for the aforementioned false, fabricated and perjured testimony there was no

probable cause to believe that the Plaintiff had in any way committed acts for which he

was ultimately indicted, prosecuted, convicted and incarcerated.

135.    Defendants continued criminal proceedings against plaintiff despite a lack of

credible evidence against him, and notwithstanding their knowledge that said proceedings

would jeopardize plaintiff's liberty, well-being, safety and constitutional rights.

136.    On or about January 30, 2017 the Erie County Supreme Court vacated the Plaintiff's

robbery conviction based upon newly discovered evidence and found that based upon the

newly discovered evidence, that no juror, acting reasonably would have voted to find

defendant guilty of robbery, beyond a reasonable doubt and the Court dismissed the

robbery count of the indictment and ordered that the Plaintiff be released from his

incarceration.

137.    On or about January 30, 2017 the Erie County Supreme Court, denied Plaintiff's motion

to vacate the possession of stolen property, count of the indictment.

COB-Hodgson_0045026

138.   On or about February 3, 2017, Plaintiff was released from incarceration.

139.   By and through the foregoing, the robbery and grand larceny charges were resolved in Plaintiff's favor.

140.   As a direct and proximate result of the aforesaid prosecution, Plaintiff was incarcerated for approximately twelve years.

141.   The maximum time which Plaintiff could have served on the Possession of Stolen Property Conviction, was seventy months, after calculation of his statutory good time credit.

142.   Based upon the robbery charge, of which Plaintiff was innocent, Plaintiff served approximately six and a quarter years in prison, for a crime which he did not commit.

143.   At all times mentioned, herein defendants acted with malice in initiating and continuing the criminal proceedings against plaintiff.

144.   By and through the foregoing, the Defendants maliciously prosecuted the Plaintiff for Robbery and Grand Larceny.

145.   The aforementioned actions were done by Defendants with malice and to frame Plaintiff for crimes which he did not commit and to deny him the rights and privileges guaranteed by the U.S. Constitution and the Constitution of the State of New York.

146.   Defendants' actions violated the Plaintiff's civil rights including but not limited to his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution including but not limited to the right to due process, the right not to be unreasonably seized, the right to a fair trial, right not to be prosecuted with the use of fabricated evidence and/or perjurious testimony, the right not be prosecuted and imprisoned without probable case, the right of confrontation, and defendants further

COB-Hodgson_0045027

maliciously prosecuted Plaintiff, denied him his due process, denied him a fair trial, unreasonably seized the Plaintiff and violated his civil and constitutional rights.

147. Defendants' actions violated clearly established rights.

148. Defendants' action shocks the conscience.

149. No reasonable officer in the position of the defendants would have believed the actions of the defendants herein was objectively reasonable.

150. At all times relevant herein defendants lacked probable cause to continue criminal proceedings against plaintiff, acted with malice in continuing criminal proceedings against plaintiff, misrepresented and falsified evidence throughout all phases of the criminal proceeding, and failed to make a full statement of facts known throughout all phases of the proceedings, all of which was done to secure the conviction of the Plaintiff for an robbery and larceny which he did not commit.

151. As a direct and proximate result of the foregoing acts committed by the defendants, the Plaintiff was deprived of his liberty and he was incarcerated for approximately six and a quarter years beyond any ultimate sentence for the criminal possession of stolen property, and was forced to endure the harassment, humiliations, hardships and inhumanities associated with prison life all of which was exclusively caused by the prosecution complained of herein.

152. Plaintiff suffered great humiliation, ridicule, and mental anguish, depression, mental shock, mental trauma, post traumatic stress disorder, emotional and mental suffering as a result of his unlawful prosecution and incarceration, was forced to incur substantial attorneys' fees in connection with his defense.

0019

COB-Hodgson_0045028

153.   Plaintiff's relationship with his children was impacted and damaged by his prolonged
       incarceration.

154.    Plaintiff was caused to lose wages from being unable to work during the years in which
       he was incarcerated and upon information and belief has suffered a reduced earning
       capacity.

155.   Defendants are jointly and severally liable for the damages sought herein.

### COUNT II: FALSE IMPRISONMENT AND EXCESSIVE DETENTION
### UNDER 42 USC 1983

156.    Plaintiff repeats, reiterates and realleges each and every allegation contained in the
       foregoing paragraphs as if the same were more fully set forth herein at length.

157.   By and through the foregoing, Defendants caused Plaintiff to be incarcerated and
       confined without probable cause and without justification or privilege.

158.   That Defendants' actions violated Plaintiff's rights under the U.S. Constitution as well as
       the Constitution of the State of New York.

159.    The aforementioned actions of the Defendants proximately caused Plaintiffs damages
       and injuries complained of herein.

160.   The aforesaid acts of concealment, fabrication and failure to make a full and complete
       statement of the facts as to how Plaintiff became implicated and identified as a
       perpetrator of criminal activity, for which he was actually innocent, and the aforesaid acts
       by defendants caused Plaintiff to suffer excessive incarceration and detention in violation
       of his rights not to be subjected to prolonged detention.

161.   At all times relevant Plaintiff had a right to be free from continued detention stemming
       from Defendants' concealment of exculpatory evidence and continued misrepresentation
       of fact and Defendants' actions violated that right.

0020

COB-Hodgson_0045029

162. Defendants' actions shocks the conscience.

163. Defendants' actions violated Plaintiff's rights under the Fourteenth and Fourth Amendments of the United States Constitution.

**COUNT III: ATTORNEYS FEES AND COSTS UNDER 42 U.S.C. § 1988**

164. Plaintiff repeats and realleges each and every allegation contained above with the same force and effect as if fully set forth herein at length.

165. The foregoing events constitute violations of plaintiff's statutory and constitutional rights, thereby entitling him to attorney's fees, costs and disbursements as permitted by 28 U.S.C. § 1988.

WHEREFORE, plaintiff requests judgment against defendants in an amount to be determined by the jury for nominal damages, compensatory damages, punitive and exemplary damages, attorneys fees, together with costs and disbursements, including interest on the judgment commencing from the date of injury.

Dated: White Plains, N.Y.
  January 10, 2020          Yours etc.,

  LAW OFFICE OF MICHAEL H. JOSEPH, P.L.L.C.

  BY: _____
      Michael H. Joseph, Esq. (MJ8838)
      203 East Post Road
      White Plains, New York 10601
      Tel: (914) 574-8330
      Fax: (914) 358-5379

COB-Hodgson_0045030