# EXHIBIT 440

# June 2017 Bulletin Special Topic: Hot Spots Policing Item Analysis

Revised July 11, 2017
Center for Public Safety Initiatives at
Rochester Institute of Technology



Dr. John Klofas, Director of CPSI, jmkgcj@rit.edu

Janelle Duda-Banwar, CPSI

Kayla Macano, Dr. Thomas Noel, and Dr. Irshad Altheimer, CPSI
Dr. Don Pryor, Monroe County Evaluator, Center for Governmental Research, dpryor@cgr.org

This month's bulletin focuses on identifying elements of the Hot Spots strategy that sites do well with and other elements that could use some enhancement. We conducted an item analysis of the hot spots strategy checklist to systematically identify the presence and absence of elements across sites for quarter three of GIVE III (January - March). We describe the results of the analysis as well as provide recommendations on how to increase the presence of these strategy elements. This bulletin focuses on which elements are implemented, but not necessarily the quality of the elements. That is measured through the fidelity and dosage rubric and will be included in future CPSI presentations and documents.

All sites implement the **Hot Spots Strategy** (N = 19) and there are 14 items in the hot spots checklist. During site calls and visits the CPSI evaluation team members ask questions, observe activity, and review documents to assess the presence or absence of specific elements.

Across the state, 86% of the checklist items were implemented during quarter three. There are two elements that sites consistently implemented during this time period. All sites (19/19) reassess hot spots regularly and all sites (19/19) maintain a top offender list. Both elements are closely linked to the role of crime analysts. Crime analysts help law enforcement identify areas with high concentrations of gun violence and they help with the identification of top offenders through specific analysis. Sites seem to be adequately utilizing crime analysts for their hot spots strategy.

Of the remaining elements in the hot spots strategy, the item-analysis revealed elements that could be better implemented. Across the state, only 9 of 19 sites (47%) had the presence of individual-level and system-level procedures, decision-making, and quality of treatment that integrate fairness, trust, being heard, and transparency. However, there are some sites that readily made the link between procedural justice concepts and their hot spots strategy. Sites that did have procedural justice concepts present incorporated (1) The review of body camera footage internally to ensure police are acting ethically, respectful, and deescalating situations; (2) Thorough explanation of the hot spots strategy for call-in participants as well as at community forums; (3) the use of community forums, community meetings, and neighborhood association meetings to describe to individuals who live in or near the hot spots why there is heavy patrol and enforcement and when and why enforcement actions are being done; and (4) the District Attorney's Office use of criminal history, age and intelligence information when asking for certain sentences for offenders. Sites incorporating procedural justice in the hot spots strategy went beyond using data to identify the hot spots and top offenders, but then being transparent with the community describing how they identified locations and people at high risk of gun violence and informing them that they are watching them.

Further recommendations on how to incorporate these concepts in the hot spots strategy include:

(1) Initiate positive non-enforcement activities in hot spots.
(2) Use social media to encourage and highlight pro-social behavior of residents in hot spots.

(3) Create a working group within the neighborhoods located in the hot spots to work together to reduce gun crime. Include community organizations (e.g., block clubs, service providers) in the working group and/or solicit information from the community about particular criminological issues affecting the neighborhood.

Only 10 of 19 sites (52%) include enforcement partners in tactical planning around the hot spots strategy; most sites make their own plans internally and then subsequently reach out to the other agencies to request participation in the enforcement strategy. These sites regularly state that their enforcement partners are readily able and willing to assist with the actual enforcement, but that they do not include them in the planning stage. Collaborative planning is useful because it encourages problem-solving, data sharing, building on experiences, and the use of multiple experts to plan the enforcement activities.

Examples of partners included in enforcement planning efforts include: probation, federal probation, parole, critical response team, DA's office, crime analysts, community police officers, state troopers, sheriff's office, detectives, and street outreach workers. Another site described planning with the police, crime analyst, field information officer, and DA's office to help *before* incidents occur, while street outreach, parole and probation help plan appropriate efforts *after* an incident occurs. Another site utilizes Internal and external planning groups. The internal group consists of beat officers, crime analyst, detective unit, and community affairs division representatives; the external group is comprised of representatives from the D A's office, intel center, parole, and probation. Working to plan efforts with the agencies that help carry them out can allow for smoother operation, more enforcement ideas brought to the table, and easier access to information sharing and communication.

Further recommendations on how to include other agencies in enforcement planning include:

(1) The establishment of hot spots working groups that meet outside of usual GIVE meetings. These working group meetings could be used to have more in-depth discussion of crime statistics, emerging problems in the hot spots, emerging hot spots, top offenders, and proactive plans. POP and SARA should be incorporated and guide the discussion.
(2) The formal collaboration between the CPTED working group and hot spots working group. CPTED work is being done in the hot spots, and it seems a reasonable overlap to share information between the groups. Knowledge and data sharing across working groups can contribute to enforcement activities that take CPTED principles into account.

In conclusion, sites do well with the hot spots strategy, yet there are some elements that can be enhanced. Sites do well utilizing crime analysts for their hot spots strategy, but lag in incorporating all enforcement agencies in planning. The sites that do include enforcement agencies in planning have found ways to incorporate their partners, from regular meetings to meetings specific for an upcoming hot spots action. Some sites have been able to find ways to incorporate concepts of procedural justice in their hot spots strategy, from sharing their strategy information throughout the community to being transparent and fair with those targeted for enforcement.