# EXHIBIT 454

Case 1:18-cv-00719-CCR    Document 314-3    Filed 05/30/25    Page 2 of 8

McNeil v. City of Buffalo, Not Reported in Fed. Supp. (2023)
2023 WL 2574954

2023 WL 2574954
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Bruce C. MCNEIL, Plaintiff
v.
The CITY OF BUFFALO, Byron Lockwood, individually and in his capacity as Police Commissioner of the Buffalo Police Department, John Davidson, individually and in his capacity as a Buffalo Police Officer, Patrick Garry, individually and in his capacity as a Buffalo Police Officer, Anthony Burvid, individually and in his capacity as a Buffalo Police Officer, Jenny Velez, individually and in her capacity as a Buffalo Police Officer, Anthony McHugh, individually and in his capacity as a Buffalo Police Officer, Patrick Boice, individually and in his capacity as a Buffalo Police Officer, and Matthew Vaughn, individually and in his capacity as a Buffalo Police Officer, Defendants.

20-CV-0998V(Sr)
|
Signed February 24, 2023

**Attorneys and Law Firms**

Chad A. Davenport, R. Anthony Rupp, III, Rupp Pfalzgraf LLC, Buffalo, NY, for Plaintiff.

David M. Lee, Corporation Counsel the City of Buffalo, Buffalo, NY, Maeve Eileen Huggins, City of Buffalo Law Department, Buffalo, NY, for Defendants.

### REPORT, RECOMMENDATION AND ORDER

H. KENNETH SCHROEDER, JR., United States Magistrate Judge

*1 This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #14.

Plaintiff, represented by counsel, commenced this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 asserting the following causes of action: (1) false arrest in violation of the First and Fourteenth Amendments to the United States Constitution ("Amendments"), against all defendants; (2) false imprisonment in violation of the First and Fourteenth Amendments against all defendants; (3) malicious prosecution in violation of the First and Fourteenth Amendments against all defendants; (4) unreasonable search and seizure in violation of the First and Fourteenth Amendments against Buffalo Police Officer ("BPO") Davidson and BPO Garry; (5) retaliation in violation of the First Amendment against all defendants; (6) unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments against BPO Garry; (7) failure to intervene in violation of the Fourth and Fourteenth Amendments against all defendants; (8) denial of due process in violation of the Fourteenth Amendment against all defendants; (9) conspiracy to violate plaintiff's constitutional rights in violation of the First and Fourteenth Amendments against all defendants; and (10) policy, custom and practice and failure to supervise and train in violation of the First, Fourth and Fourteenth Amendments against the City of Buffalo. Dkt. #1.

Currently before the Court is defendants' motion to dismiss certain claims. Dkt. #8. For the following reasons, it is recommended that defendants' motion be granted in part.

### FACTUAL BACKGROUND

Plaintiff's complaint alleges that BPO Davidson and BPO Garry conducted a traffic stop of plaintiff's vehicle at approximately 5 am on May 27, 2019 - Memorial Day - as plaintiff turned onto Stanton Street on his way home after he went out for coffee and a newspaper. Dkt. #1, ¶¶ 20-23. Plaintiff produced his driver's license and was informed that there was a problem and that he would need to step out of his vehicle. Dkt. #1, ¶¶ 30-32. Plaintiff was handcuffed, searched, and placed in the back of a patrol car while the officers searched his vehicle. Dkt. #1, ¶¶ 35-37. When asked if he had anything in his vehicle, plaintiff informed the officers that the ashtray contained marijuana ashes. Dkt. #1, ¶¶ 38-39. After searching the vehicle, the officers informed plaintiff that they did not find any contraband and he was free to leave. Dkt. #1, ¶¶ 43-45.

As he was driving home, plaintiff observed that the hood of his vehicle had been damaged. Dkt. #1, ¶¶ 47-49. Plaintiff phoned 911 to register a complaint and was told to go to C-District Precinct Headquarters ("C-District"). Dkt. #1, ¶ 51. When plaintiff arrived at C-District at approximately 5:50 am,

Lieutenant ("Lt."), Boice told plaintiff to leave and not return because he would go to jail for marijuana in his vehicle if he tried to complain. Dkt. #1, ¶¶ 55-56.

**\*2** Plaintiff returned to C-District with his mother at approximately 6:10 am at which time Lt. Velez reiterated that the previous Lt. had warned plaintiff that he would be arrested if he returned to make a complaint. Dkt. #1, ¶ 68. Plaintiff's mother informed Lt. Velez that there was no marijuana in the vehicle. Dkt. #1, ¶ 71. BPO Davidson emerged from the room behind the front desk from which Lt. McHugh, BPO Burvid, BPO Vaughn, BPO Davidson and BPO Garry had been listening and informed Lt. Velez that they found crack cocaine in the back of their patrol vehicle, at which point Lt. Velez informed plaintiff that he was being charged with crack cocaine. Dkt. #1, ¶¶73-76. When plaintiff protested, Lt. Velez told plaintiff, "it's too late, you should have left." Dkt. #1, ¶ 79. BPO Burvid and BPO Vaughn arrested plaintiff and BPO Davidson and BPO Garry transported him to the Erie County Holding Center where he was arraigned and released on his own recognizance later that morning. Dkt. #1, ¶¶ 80-82 & 88-89.

Plaintiff made a complaint to the Internal Affairs Department, but no disciplinary action has been taken against the officers. Dkt. #1, ¶¶ 112-113. Plaintiff was acquitted of the charges following a trial where the prosecutor declined to call either BPO Davidson or BPO Garry as witnesses. Dkt. #1, ¶¶ 108 & 111.

On April 4, 2020, as plaintiff was sitting in his vehicle, BPO Garry, who was responding to a call, called plaintiff out by first name, advising plaintiff that they needed to "get along" because BPO Garry wasn't going anywhere. Dkt. #1, ¶¶ 114-118.

On April 6, 2020, as plaintiff was driving down Broadway, BPO Garry drove over the median to follow plaintiff. Dkt. #1, ¶¶ 121-122. BPO Garry turned on his lights and siren to pull plaintiff's vehicle over. Dkt. #1, ¶ 123. Plaintiff pulled into a nearby gas station and BPO Garry ordered plaintiff and his passenger to exit the vehicle, searched plaintiff, placed him in handcuffs and walked him to the back of his patrol car. Dkt. #1, ¶¶ 123 & 129-134. When plaintiff objected to going in the back of the patrol car because of his prior false arrest, BPO Garry responded that he didn't see any drugs in the back of the police vehicle "this time." Dkt. #1, ¶¶ 123 & 129-134. BPO Garry searched plaintiff's vehicle and released him when he did not find any contraband. Dkt. #1, ¶¶ 135-138. Plaintiff filed a complaint regarding the traffic stop, but no disciplinary action has been take against BPO Garry. Dkt. #1, ¶¶ 139-140.

## DISCUSSION AND ANALYSIS

### Dismissal Standard

A motion to dismiss brought subsequent to the filing of an answer is considered as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). "Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.' " *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016), quoting *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015).

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

### 42 U.S.C. § 1983

**\*3** To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity

secured by the Constitution or laws of the United States. *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). An official may not be held liable for constitutional violations simply because he held a high position of authority. *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016); *See Burgess v. Banasike*, 6:19-CV-6617, ––– F. Supp.3d –––, 2022 WL 13740744, at *3 (W.D.N.Y. Oct. 24, 2022) (*respondeat superior* liability is not available in a section 1983 action).

"Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself." *Ortiz v. Wagstaff*, 523 F. Supp.3d 347, 361 (W.D.N.Y. 2021). "A municipality cannot be held liable under Section 1983 unless the challenged action was undertaken pursuant to a municipal policy, custom, or practice." *Kistner v. City of Buffalo*, 18-CV-402, 2022 WL 16797986, at *13 (W.D.N.Y. Nov. 8, 2022), *citing Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Absent an express municipal policy, a plaintiff may demonstrate that a policymaker acquiesced in a longstanding practice of custom which constitutes the standard operating procedure of the local governmental entity. *Id.* at 14; *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir.), *cert. denied*, 531 U.S. 813, 121 S.Ct. 47, 148 L.Ed.2d 16 (2000). In limited circumstances, a municipality may also be liable for its failure to train, supervise, or discipline its employees. *Id.; See Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)(failure to train or supervise employees may be official policy or custom); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("persistent failure to discipline" employees may show a "policy of ratification of unconstitutional conduct.").

When a plaintiff pursues liability under a theory of failure to train, supervise, or discipline, plaintiff must also demonstrate that the municipal policymaker acted with deliberate indifference. *Id.; See Wray*, 490 F.3d at 195 (The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to deliberate indifference to the rights of those with whom the city employees interact.). To establish deliberate indifference, a plaintiff must show that: (1) a policymaker knows to a moral certainty that city employees will confront a particular situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Id.; See Wray*, 490 F.3d at 195-196.

Deliberate indifference may also be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker failed to make meaningful efforts to address the risk of harm to the plaintiff. *Id.; See Cash v. County of Erie*, 654 F.3d 324, 334 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012). Generally speaking, a pattern of similar constitutional violations by untrained employees will be necessary to demonstrate deliberate indifference based upon a failure to train. *Id.; See Connick v. Thompson*, 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). Similarly, the failure to discipline a single police officer for a single incident of illegality is insufficient to establish a policy of acquiescing in or ratifying illegal conduct. *Id.; See Lucente v. County of Suffolk*, 980 F.3d 284, 306 (2d Cir. 2020).

City of Buffalo

**\*4** Defendants argue that the City must be dismissed from any claim of liability pursuant to the doctrine of *respondeat superior*. Dkt. #8-2, p.9. Defendants also argue that plaintiff has failed to allege a custom or policy that would support *Monell* liability. Dkt. #8-2, pp. 9-16.

Plaintiff argues that the City of Buffalo has a policy or custom of retaliating against citizens who attempt to complain and failing to discipline police officer misconduct as evidenced by plaintiff's allegation that 94% of all citizen complaints against Buffalo police officers result in no disciplinary action. Dkt. #12, pp. 5-9. Plaintiff alleges that BPO Garry and BPO Davidson are in the top 10% for Internal Affairs complaints against Buffalo police officers and argues that he has become aware of additional false arrests by BPO Davidson. Dkt. #12, p. 8. Plaintiff further argues that the City's requirement as of June 2020 that police officers inform motorists of the reason for any traffic stop is evidence of the City's prior

failure to properly train police officers regarding traffic stop procedures. Dkt. #12, p. 8.

Defendants reply that plaintiff's allegation of failure to train does not put forth sufficient factual allegations, but merely identifies a few isolated incidents. Dkt. #13, p. 4.

Plaintiff's complaint alleges that prior to his arrest, the City of Buffalo and Buffalo Police Commissioner ("Commissioner"), Lockwood were aware that Lt. Velez, Lt. Boice, Lt. McHugh, BPO Davidson, BPO Garry, BPO Burvid and BPO Vaughn were inadequately trained regarding constitutional standards under the First, Fourth and Fourteenth Amendment and failed to provide adequate training, supervision or discipline so as to prevent constitutional violations such as those suffered by plaintiff. Dkt. #1, ¶¶ 230-260. More specifically, plaintiff alleges that the City of Buffalo and Commissioner Lockwood implemented a policy to target minorities for traffic infractions which rewarded officers for writing as many tickets as possible in low income areas of Buffalo, causing police officers to pull over people of color without probable cause to believe a violation of New York State's Vehicle and Traffic Laws had occurred and to utilize equipment violations as a pretense to search individuals in such areas for contraband. Dkt. #1, ¶¶ 253-260. Plaintiff further alleges that the Lieutenants at C-District engaged in a policy and practice of retaliating against individuals who complained about unlawful traffic stops without fear of repercussion from Commissioner Lockwood or the City of Buffalo and that the City of Buffalo and Commissioner Lockwood promoted officers engaged in such constitutional violations despite numerous citizen complaints. Dkt. #1, ¶¶ 234-236. For example, plaintiff notes that Lt. Velez was promoted despite being named in *Kistner v. The City of Buffalo*, 18-CV-402, 2022 WL 16797986, a complaint alleging that Lt. Velez attempted to have Mr. Kistner involuntarily committed for a psychiatric evaluation on the ground that he had thrown himself into her patrol vehicle despite video evidence clearly showing that the patrol vehicle struck plaintiff. Dkt. #1, ¶¶ 237-244. Plaintiff also alleges that no disciplinary action was imposed in 94% of complaints made against Buffalo Police Officers in 2017. Dkt. #1, ¶ 245.

**\*5** Plaintiff has plausibly alleged that he was subjected to a motor vehicle stop without probable cause pursuant to a policy or custom that sought to achieve high numbers of traffic stops in order to enable searches of individuals and vehicles for contraband. Plaintiff has also plausibly alleged that policy makers within the police department hierarchy encouraged such unconstitutional behavior by retaliating against individuals who complained about such behavior and failing to adequately investigate and appropriately discipline police officers engaged in such behavior. Accordingly, it is recommended that defendants' motion to dismiss plaintiff's claim of *Monell* liability be denied.

Official Capacity
Defendants argue that plaintiff's claims against the individual defendants in their official capacities are duplicative of his *Monell* claims against the City and must be dismissed. Dkt. #8-2, p.18.

Because an official capacity suit against a municipal official is properly a suit against the official's office and is, therefore, duplicative of a suit against the municipality itself, courts routinely dismiss official capacity claims against individual officials when the complaint asserts the same claims against the municipal entity. *See Reinhardt v. City of Buffalo*, 21-CV-206, 2021 WL 2155771, at \*5 (W.D.N.Y. May 27, 2021). Accordingly, it is recommended that all claims against the individual defendants in their official capacities be dismissed as duplicative of plaintiff's claim against the City of Buffalo.

Punitive Damages
Defendants argue that municipalities are immune from punitive damages under New York law. Dkt. #8-2, p.18.

Plaintiff concedes that punitive damages are not recoverable against a municipality and withdraws his claim for punitive damages against the City of Buffalo. Dkt. #12, p. 3.

Punitive damages are not available against municipalities or municipal employees sued in their official capacities. *Gustafson v. Village of Fairport*, 106 F. Supp.3d 340, 355 (W.D.N.Y. 2015). Therefore, it is recommended that plaintiff's claim for punitive damages be dismissed against the City of Buffalo.

Commissioner Lockwood
Defendants argue that plaintiff's complaint fails to allege personal involvement by Commissioner Lockwood as required to state a section 1983 claim against him in his individual capacity. Dkt. #8-2, pp. 7-8.

Plaintiff argues that although Commissioner Lockwood may not have been present when the C-District officers violated his civil rights, he is responsible for the culture within the City of Buffalo Police Department which allows officers to violate the rights of citizens without fear of discipline. Dkt. #12, p. 3. Plaintiff responds that he has plausibly alleged that Commissioner Lockwood failed to take adequate measures to investigate and discipline BPO Garry and Davidson as necessary to support supervisory liability against Commissioner Lockwood. Dkt. #12, p. 10.

Defendants reply that there are no specific factual allegations connecting Commissioner Lockwood to plaintiff's alleged constitutional injuries. Dkt. #13, p. 4.

Subsequent to briefing of this motion, the Court of Appeals determined that "after *Iqbal*, there is no special rule for supervisory liability" and that "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d cir. 2020), *quoting Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. As plaintiff has not alleged that Commissioner Lockwood was personally involved in any of the incidents underlying plaintiffs' causes of action, it is recommended that he be dismissed from this lawsuit.

Fourteenth Amendment

 **\*6** Defendants argue that there is no cause of action for false arrest or unlawful stop under the substantive due process clause of the Fourteenth Amendment. Dkt. #8-2, p. 17.

Plaintiff responds that the City maintained a policy and custom of rewarding unconstitutional traffic stops to search individuals in low-income areas and target minorities for traffic infractions so as to plausibly allege that race was a motivating factor in the determination to stop his vehicle. Dkt. #12, pp. 12-13.

Defendants reply that plaintiff's complaint is devoid of any factual allegations regarding plaintiff's race or racial prejudice of defendants. Dkt. #13, p. 5.

Where a particular amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that amendment, not the more generalized notion of substantive due process will guide the analysis for such claims. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Thus, claims asserting unlawful stop, false arrest and false imprisonment are properly analyzed under the Fourth Amendment. *See Forbes v. City of Rochester*, 612 F. Supp.3d 159, 2020 WL 1963139, at \*4 (W.D.N.Y. April 6, 2020) (" section 1983 claim for false imprisonment is anchored in the Fourth Amendment right to be free from unreasonable seizures."); *Pinter v. City of New York*, 976 F. Supp.2d 539, 573 (S.D.N.Y. 2013) ("There is no cause of action for false arrest or an unlawful stop under the Due Process Clause of the Fourteenth Amendment."). However, a plaintiff's claim that "a state official manufactured false evidence against him for use in state criminal proceedings invokes the protection of the Due Process Clause of the Fourteenth Amendment." *Levantino v. Skala*, 56 F. Supp.3d 191, 204 (E.D.N.Y. 2014). Moreover, the Fourteenth Amendment's Equal Protection clause governs plaintiff's claim that the initial unlawful traffic stop was motivated by a policy that targeted minorities in low income neighborhoods. *See, e.g., D.J.C.V. v. United States*, 605 F. Supp.3d 571, 596 (S.D.N.Y. 2022) ("although a traffic stop could be upheld under the Fourth Amendment where an infraction known to the officers supplied objective justification for a stop, the same stop could form the basis of a viable Equal Protection claim under the Fourteenth Amendment if racial discrimination had motivated the decision to stop."). Accordingly, it is recommended that this aspect of defendants' motion to dismiss be denied.

Conspiracy

Defendants argue that plaintiff has failed to allege any facts that support an agreement between the named defendants as required to support a conspiracy claim. Dkt. #8-2, p.17.

Plaintiff argues that he has plausibly alleged that the defendants reached an agreement to falsely charge plaintiff with possession of crack cocaine if he persisted in filing a complaint against BPO Garry and BPO Davidson. Dkt. #12, pp. 11-12.

Defendant replies that plaintiff's allegations are fanciful and notes that plaintiff has not included any facts regarding his race or defendants' racial prejudice. Dkt. #13, p. 5.

To survive a motion to dismiss a section 1983 conspiracy claim, a plaintiff must set forth specific factual allegations of:

Case 1:18-cv-00719-CCR   Document 314-3   Filed 05/30/25   Page 7 of 8

McNeil v. City of Buffalo, Not Reported in Fed. Supp. (2023)
2023 WL 2574954

(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Davis v. County of Suffolk*, 2020 WL 7699919, at *10 (E.D.N.Y. Oct. 30, 2020), quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

**\*7** To state a civil rights conspiracy claim under section 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Id., quoting Zhang Jingrong v. Chinese Anti-Cult World Alliance*, 287 F. Supp.3d 290, 297 (E.D.N.Y. 2018). The conspiracy in a section 1985 action must be motivated by racial animus. *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000), *cert. denied*, 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001).

Section 1986 provides that "any person who, having knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" shall be liable to the injured party. *Id.* "It is well-established that a violation of section 1986 is predicated on a violation of section 1985, as the former provides a remedy for a violation of the latter." *Id.*

Plaintiff has plausibly alleged that defendants conspired to charge him with a crime in retaliation for his determination to file a complaint regarding the stop and search of his vehicle. Accepting the allegations in plaintiff's complaint as true, as required on a motion to dismiss, it is plausible that Lt. Boice was aware that BPO Davidson and BPO Garry had not issued any charges following their traffic stop, but nevertheless was willing to charge plaintiff with possession of marijuana if he persisted in filing a complaint and that Lt. Velez was aware of this threat by Lt. Boice when she informed plaintiff upon his return to C-District with his family that crack cocaine charges had already been filed against him. In order to have been able to make such a statement, some agreement between Lt. Velez and BPO Davidson and BPO Garry as to the nature of the fabricated charges would be required. Moreover, it is plausible that BPO Burvid and BPO Vaughn, who are alleged to have been in the room behind the front desk with BPO Garry and BPO Davidson as Lt. Velez announced the charges against plaintiff, were aware of the fabrication and agreed to proceed by effectuating plaintiff's arrest. Although circumstantial, plaintiff's allegations plausibly allege a section 1983 conspiracy among Lt. Boice, Lt. Velez, Lt. McHugh, BPO Davidson, BPO Garry, BPO Burvid and BPO Vaughn. *See Pangburn*, 200 F.3d at 72 ("While conclusory allegations of a section 1983 conspiracy are insufficient, we have recognized that such conspiracies are by their very nature secretive operations and may have to be proven by circumstantial, rather than direct, evidence.") (internal quotations and citations omitted).

Furthermore, the Court finds plaintiff's allegation that the initial vehicle stop that set in motion the series of events at issue in this action was the result of a policy and/or custom to target minorities for traffic infractions and reward officers for writing as many tickets as possible in low income areas is sufficient to satisfy the racial animus requirement under section 1985 and section 1986. Moreover, although not alleged in the complaint, plaintiff's response to defendants' motion to dismiss indicates that plaintiff is an African-American man. Dkt. #12, p. 13.

Finally, the Court notes that plaintiff's allegation that the officers conspired to falsely charge plaintiff to cover up their custom of unlawful traffic stops is sufficient at this stage of the proceeding to satisfy the personal stake exception to the intracorporate conspiracy doctrine. *See Ali v. Connick*, 136 F.Supp.3d 270, 282-283 (E.D.N.Y. 2015) ("According to the personal stake exception, the intracorporate conspiracy doctrine does not apply to bar conspiracy claims against individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity," such as covering up the use of excessive force or engaging in race-based false arrests). Accordingly, it is recommended that defendants' motion to dismiss plaintiff's tenth cause of action be denied.

## CONCLUSION

**\*8** For the foregoing reasons, it is recommended that plaintiff's motion to dismiss (Dkt. #8), be granted in so far as

defendant seeks to dismiss all claims against the individual defendants in their official capacities; plaintiff's claim for punitive damages against the City of Buffalo; and all claims against Commissioner Lockwood.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supBPOrted by legal authority." Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2574954

---

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.