# EXHIBIT H

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLACK LOVE RESISTS IN THE RUST by and through MARIELLE SHAVONNE SMITH and CHARIS HUMPHREY on behalf of its members; SHAKETA REDDEN; DORETHEA FRANKLIN; TANIQUA SIMMONS; DE'JON HALL; JOSEPH BONDS; CHARLES PALMER; SHIRLEY SARMIENTO; EBONY YELDON; and JANE DOE, individually and on behalf of a class of all others similarly situated;<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF BUFFALO, NY; BYRON B. BROWN, Mayor of the City of Buffalo, in his individual and official capacities; BYRON C. LOCKWOOD, Commissioner of the Buffalo Police Department, in his individual and official capacities; DANIEL DERENDA, former Commissioner of the Buffalo Police Department, in his individual capacity; AARON YOUNG, KEVIN BRINKWORTH, PHILIP SERAFINI, ROBBIN THOMAS, UNKNOWN SUPERVISORY PERSONNEL 1-10, UNKNOWN OFFICERS 1-20, each officers of the Buffalo Police Department, in their individual capacities.<br><br>        Defendants. | Civil No.: 1:18-cv-00719-CCR |

**DEFENDANTS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
TO PLAINTIFFS**

    Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Rule 26 of the Local Rules of Civil Procedure for the Western District of New York, we demand that Plaintiffs Black Love Resists in the Rust by and through Marielle Shavonne Smith and Charis Humphrey on behalf of its members; Shaketa Redden; Dorethea Franklin; Taniqua Simmons; De'Jon Hall; Joseph Bonds; Charles Palmer; Shirley Sarmiento; Ebony Yeldon; and Jane Doe,

individually and on behalf of a class of all others similarly situated ("Plaintiffs") produce the following documents and/or things described below, at the Guaranty Building, 140 Pearl Street, Buffalo, New York, within thirty days of service of these document requests (the "Requests").

## DEFINITIONS

A. The Uniform Definitions for all Discovery Requests and rules of construction set forth in Local Rule of Civil Procedure 26 apply to these Requests. Additionally, these Requests are governed by the following definitions and instructions, and each Request should be answered in compliance with these definitions and instructions.

B. The use of the singular form of any word includes the plural and vice versa.

C. "All" and "each" shall be construed as "all and each."

D. "Amended Complaint" means the Amended and Supplemental Class Action Complaint filed in this action on May 21, 2020 (ECF Dkt. 63).

E. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

F. "BLRR," as well as BLRR's full or abbreviated name or a pronoun referring to BLRR, means Black Love Resists in the Rust, the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This

- 2 -

definition is not intended to impose a discovery obligation on any person who is not a party to the litigation. Throughout these interrogatories, the pronouns you" and "your" refer to BLRR.

      G.     "BPD" refers to the Buffalo Police Department.

      H.     "BTVA" refers to the Buffalo Traffic Violations Agency.

      I.     "Checkpoint" refers to any vehicle checkpoint conducted by BPD and which forms the basis of this action.

      J.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

      K.     "Complaint" means the Class Action Complaint filed in this action on June 28, 2018 (ECF Dkt. 1).

      L.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

      M.     "Defendants" refers to all named Defendants in this action including City of Buffalo, NY; Byron B. Brown, Mayor of the City of Buffalo, in his individual and official capacities; Byron C. Lockwood, Commissioner of the Buffalo Police Department, in his individual and official capacities; Daniel Derenda, former Commissioner of the Buffalo Police Department, in his individual capacity; Aaron Young; Kevin Brinkworth; Philip Serafini; Robbin Thomas; Unknown Supervisory Personnel 1-10; Unknown Officers 1-20, each officers of the Buffalo Police Department, in their individual capacities.

- 4 -

N. "Document" means writings, emails, drawings, graphs, charts, photographs, phono records, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of this term.

O. "Formation" means the process, either formal or informal, by which BLRR was organized as a group.

P. "Identify" with respect to a person means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person."

Q. "Identify" with respect to documents means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

R. "Individual Plaintiffs" refers to Shaketa Redden, Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Joseph Bonds, Charles Palmer, Shirley Sarmiento, Ebony Yeldon, and Jane Doe.

S. "Interrogatory" or "Interrogatories" refers to Defendants' First Set of Interrogatories to Plaintiffs, dated July 8, 2022.

- 4 -

- 5 -

1. "Member" refers to any person or entity who is part of or associated with, either formally or informally, BLRR.

T. "Plaintiffs" refers to all named Plaintiffs in this action including Black Love Resists in the Rust by and through Marielle Shavonne Smith and Charis Humphrey on behalf of its members; Shaketa Redden; Dorethea Franklin; Taniqua Simmons; De'Jon Hall; Joseph Bonds; Charles Palmer; Shirley Sarmiento; Ebony Yeldon; and Jane Doe, individually and on behalf of a class of all others similarly situated ("Plaintiffs").

U. "Person" means any natural person or any business, legal or governmental entity or association.

## INSTRUCTIONS

A. These Requests are propounded pursuant to Federal Rules of Civil Procedure 26 and 34 and the applicable Local Rules of Civil Procedure for the Western District of New York, including Local Rule 26.

B. These Requests are directed to all documents in Plaintiffs' possession, custody, or control, wherever located, including but not limited to, any such documents in the possession, custody, or control of Plaintiffs' agents, employees, contractors, representatives, and attorneys, and any person or entity acting on behalf of any of them.

C. Where any copy or copies of any document whose production is sought, whether a draft or final version, is or are not identical to any copy or copies thereof, by reason of

017635.00062 Litigation 16249123v1

alterations, notes, comments, initials, underscoring, indication of routing, or other material contained thereon or attached thereto, all such non-identical copies are to be produced separately.

  D. Plaintiffs' responses to these Requests shall be made in the order of the Requests propounded. Each answer, statement, or objection shall be preceded by the Request to which it responds. <u>See</u> Western District of New York Local Rule 26(b). Each objection and the grounds therefore shall be stated separately.

  E. All documents and/or things shall be organized in such a manner as to identify the demand to which each document and/or thing is responsive.

  F. If Plaintiffs assert a claim of privilege in objecting to any means of discovery or disclosure, and withholds otherwise responsive information based on that assertion:

    a. Plaintiffs shall identify the nature of the privilege (including work product) being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

    b. Plaintiffs shale provide the following information, unless to divulge such information would cause disclosure of the allegedly privileged information:

      i. For documents: (a) the type of document, *i.e.*, letter or memorandum; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other; and

      ii. For oral communications: (a) the names of the person making the communication and the person(s) present while the communication was made and, where not apparent, the relationship of the person making the communication to the

- 6 -

person(s) present; (b) the date and place of communication; and (c) its general subject matter.

G. Unless otherwise stated below, these Requests cover the time period January 1, 2012 to present.

H. These Requests are of a continuing character. If additional information within the scope of any Request becomes available to you after you serve answers to these Requests, you shall furnish such additional information by way of supplemental answers.

## DOCUMENTS AND/OR THINGS REQUESTED

1. All documents and communications identified in your Fed. R. Civ. P. 26(a)(1) Disclosures.

2. Each and every document upon which Plaintiffs rely on, or intend to rely on at trial, in support of the allegations in the Amended Complaint.

3. All data, analyses, and reports referred to by Plaintiffs in the Complaint and Amended Complaint.

4. Copies of all written reports concerning the subject of this action and prepared in the regular course of business operations or practices of any person, firm, corporation, association, or other entity.

5. Copies of every subpoena *duces tecum* issued by Plaintiffs in this action.

6. For every subpoena *duces tecum* produced in response to Request No. 5, provide copies of all documents Plaintiffs received in response to each subpoena.

- 7 -

7. For every subpoena *duces tecum* produced in response to Request No. 5, provide copies of every communication concerning the service of and responses to each subpoena.

8. All documents, including, but not limited to, text messages and electronic correspondence, concerning the formation of BLRR.

9. All documents, including, but not limited to, text messages and electronic correspondence, in possession of, and exchanged between, any and all co-directors of BLRR regarding the subject matter of this action.

10. All documents in BLRR's possession regarding the "advocacy," "peaceful protest[s]," "community speakout[s]," and "11 Policing Demands" referenced in Paragraph 13 of the Amended Complaint.

11. All documents, including, but not limited to, text messages and electronic correspondence, in possession of, and exchanged between, any and all co-directors of BLRR regarding the "advocacy," "peaceful protest[s]," "community speakout[s]," and "11 Policing Demands" referenced in Paragraph 13 of the Amended Complaint.

12. Copies of all statements, whether signed or otherwise, made by BLRR, its agents, servants, members, or employees.

13. All minutes and notes related to any meeting(s) held by BLRR.

14. Copies of all statements, whether signed or otherwise, of any Individual Plaintiff.

017635.00062 Litigation 16249123v1

15. All documents and information relied on by Plaintiffs in making the contention in Paragraph 5 of the Amended Complaint that "[s]tatistically, the variable of 'Black or Latino population' is the dominant explanation for Checkpoint location, explaining nearly 80 percent of the variation in Checkpoint location."

16. All documents and information relied on by Plaintiffs in making the contention in Paragraph 86 of the Amended Complaint that "[s]tatistical analysis demonstrates that 'Black or Latino population' is a highly significant driver of Checkpoint location—so much so that only an exponential model captures the true extent of the BPD's invasion of the East Side. Under an exponential model, 'Black or Latino population' explains 78.8% of the variation in Checkpoint locations."

17. All documents and information relied on by Plaintiffs in making the contention in Paragraph 88 of the Amended Complaint that "[a]nalysis of the Checkpoint Data shows that another variable had some predictive power in explaining Checkpoint locations: the number of reported crimes in the Census tract. This variable was independently statistically significant, but when combined with the racial and ethnic demographics of the Census tract, it caused only a mild increase (to 80.8%) in the amount of variation in Checkpoint locations explained by the model."

18. All documents and information relied on by Plaintiffs in making the contention in Paragraph 100 of the Amended Complaint that "[d]ata obtained from the New York State Division of Motor Vehicles suggest that Buffalo drivers who reside in predominately Black zip codes are more than eight times as likely to be issued multiple traffic tickets at a single traffic stop or Checkpoint than those who live in predominately White zip codes."

- 9 -

19.     All documents and information relied on by Plaintiffs in making the contention in Paragraph 101 of the Amended Complaint that "[m]oreover, drivers from predominately Black zip codes are more than four times as likely to have their driver's licenses suspended because they cannot pay their traffic tickets than those who live in predominately White zip codes."

20.     All documents and information relied on by Plaintiffs in making the contention in Paragraph 107 of the Amended Complaint that "[r]egression analysis of the ticketing data confirms the BPD's severely racially disparate ticketing patterns suggested by" the examples in subparagraphs (a) through (d).

21.     All documents and information relied on by Plaintiffs in making the contention in Paragraph 115 of the Amended Complaint that "[t]he number of White driving age individuals in a zip code, in contrast, is not a statistically significant predictor of the number of tinted windows tickets issued to residents of that zip code."

22.     All documents and information relied on by Plaintiffs in making the contention in Paragraph 151 of the Amended Complaint that "BPD did not merely issue more tickets following the creation of the BTVA; it also issued more multiple tickets. Controlling for the racial composition of the driver's zip code (the strongest predictor of whether a given ticketing incident would be a multiple-ticket incident or a single-ticket incident), the advent of the BTVA is associated with a statistically significant increase of the likelihood of multi-vs-single-ticketing, from 41.5% prior to the BTVA to 58.5% thereafter."

017635.00062 Litigation 16249123v1

23. All documents concerning the allegations made by Plaintiff Dorethea Franklin in Paragraphs 206 through 236 of the Amended Complaint, including, but not limited to, any and all documents supporting her claim that BPD violated her constitutional and federal statutory rights.

24. All documents supporting any claim for damages made by Plaintiff Dorethea Franklin.

25. All statements made by Plaintiff Dorethea Franklin concerning Defendants, the BTVA, and the Checkpoints.

26. All documents concerning the allegations made by Plaintiff Taniqua Simmons in Paragraphs 237 through 254 of the Amended Complaint, including, but not limited to, any and all documents supporting her claim that Defendants violated her constitutional and federal statutory rights.

27. All documents supporting any claim for damages made by Plaintiff Taniqua Simmons.

28. All statements made by Plaintiff Taniqua Simmons concerning Defendants, the BTVA, and the Checkpoints.

29. All documents concerning the allegations made by Plaintiff De'Jon Hall in Paragraphs 255 through 266 of the Amended Complaint, including, but not limited to, any and all documents supporting his claim that Defendants violated his constitutional and federal statutory rights.

30. All documents supporting any claim for damages made by Plaintiff De'Jon Hall.

31. All statements made by Plaintiff De'Jon Hall concerning Defendants, the BTVA, and the Checkpoints.

32. All documents concerning the allegations made by Plaintiff Ebony Yeldon in Paragraphs 267 through 296 of the Amended Complaint, including, but not limited to, any and all documents supporting her claim that Defendants violated her constitutional and federal statutory rights.

33. All documents supporting any claim for damages made by Plaintiff Ebony Yeldon.

34. All statements made by Plaintiff Ebony Yeldon concerning Defendants, the BTVA, and the Checkpoints.

35. All documents concerning the allegations made by Plaintiff Charles Palmer in Paragraphs 297 through 314 of the Amended Complaint, including, but not limited to, any and all documents supporting his claim that Defendants violated his constitutional and federal statutory rights.

36. All documents supporting any claim for damages made by Plaintiff Charles Palmer.

37. All statements made by Plaintiff Charles Palmer concerning Defendants, the BTVA, and the Checkpoints.

38. All documents concerning the allegations made by Plaintiff Joseph Bonds in Paragraphs 315 through 342 of the Amended Complaint, including, but not limited to, any and all documents supporting his claim that Defendants violated his constitutional and federal statutory rights.

39. All documents supporting any claim for damages made by Plaintiff Joseph Bonds.

40. All statements made by Plaintiff Joseph Bonds concerning Defendants, the BTVA, and the Checkpoints.

41. All documents concerning the allegations made by Plaintiff Shaketa Redden in Paragraphs 343 through 360 of the Amended Complaint, including, but not limited to, any and all documents supporting her claim that Defendants violated his constitutional and federal statutory rights.

42. All documents supporting any claim for damages made by Plaintiff Shaketa Redden.

43. All statements made by Plaintiff Shaketa Redden concerning Defendants, the BTVA, and the Checkpoints.

44. All documents concerning the allegations made by Plaintiff Shirley Sarmiento in Paragraphs 361 through 377 of the Amended Complaint, including, but not limited to, any and all documents supporting her claim that Defendants violated her constitutional and federal statutory rights.

- 13 -

- 14 -

45. All documents supporting any claim for damages made by Plaintiff Shirley Sarmiento.

46. All statements made by Plaintiff Shirley Sarmiento concerning Defendants, the BTVA, and the Checkpoints.

47. All documents concerning the allegations made by Plaintiff Jane Doe in Paragraphs 378 through 397 of the Amended Complaint, including, but not limited to, any and all documents supporting her claim that Defendants violated her constitutional and federal statutory rights.

48. All documents supporting any claim for damages made by Plaintiff Jane Doe.

49. All statements made by Plaintiff Jane Doe concerning Defendants, the BTVA, and the Checkpoints.

50. In Paragraph 4 of the Relief Requested in the Amended Complaint, Plaintiffs ask the Court to "[a]ward damages to the Checkpoint Damages Class and Subclass." Produce all documents that support this request and all documents that Plaintiffs intend to rely on at trial in support of this request.

51. In Paragraph 4 of the Relief Requested in the Amended Complaint, Plaintiffs ask the Court to "[a]ward damages to the . . . Multiple Ticketing Damages Class." Produce all documents that support this request and all documents that Plaintiffs intend to rely on at trial in support of this request.

52. In Paragraph 4 of the Relief Requested in the Amended Complaint, Plaintiffs ask the Court to "[a]ward damages to the . . . Named Plaintiffs." Produce all documents that support this request and all documents that Plaintiffs intend to rely on at trial in support of this request.

53. All documents supporting the contention in Paragraph 454 of the Amended Complaint regarding the alleged "compensable harm, including financial harm, humiliation, emotional distress, loss of liberty, loss of property and/or violations of [] constitutional rights."

54. All documents Plaintiffs will rely on, or intend to rely on, at trial to establish the alleged "compensable harm, including financial harm, humiliation, emotional distress, loss of liberty, loss of property and/or violations of [] constitutional rights" in Paragraph 454 of the Amended Complaint

Dated:  July 8, 2022
         Buffalo, New York

                                    **HODGSON RUSS LLP**
                                    *Attorneys for Defendants*

                                    By: *Katelyn A. Rauh*
                                    Peter A. Sahasrabudhe
                                    Katelyn A. Rauh
                                    The Guaranty Building
                                    140 Pearl Street, Suite 100
                                    Buffalo, NY 14202
                                    Telephone: (716) 856-4000
                                    psahasra@hodgsonruss.com
                                    krauh@hodgsonruss.com

- 15 -

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 8, 2022, the foregoing was served by electronic mail to counsel of record.

_____
Katelyn A. Rauh