# EXHIBIT I

```
1      UNITED STATES DISTRICT COURT
2      FOR THE WESTERN DISTRICT OF NEW YORK
3      -------------------------------------------------
4      BLACK LOVE RESISTS IN THE RUST, et al.,
       individually and on behalf of a class of
5      all others similarly situated,
6                              Plaintiffs,
7       -vs-                         1:18-cv-00719-CCR
8      CITY OF BUFFALO, N.Y., et al.,
9                              Defendants.
       -------------------------------------------------
10
11                    CONTINUED
12       ORAL EXAMINATION OF DANIEL DERENDA
13            APPEARING REMOTELY FROM
14               BUFFALO, NEW YORK
15
16
17            December 23rd, 2021
18            At 9:20 a.m.
19            Pursuant to notice
20
21     REPORTED BY:
22     Rebecca L. DiBello, RPR, CSR(NY)
23     APPEARING REMOTELY FROM ERIE COUNTY, NEW YORK
```

DEPAOLO CROSBY REPORTING SERVICES, INC.
135 Delaware Avenue, Suite 301, Buffalo, New York  14202
716-853-5544

**R E M O T E   A P P E A R A N C E S**

APPEARING FOR THE PLAINTIFFS:

      **NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE**
      **BY:  CLAUDIA WILNER, ESQ.,**
      275 Seventh Avenue, Suite 1506
      New York, New York 10001
      (212) 633-6967

      **CENTER FOR CONSTITUTIONAL RIGHTS**
      **BY: A. CHINYERE EZIE, ESQ.**
      666 Broadway, 7th Floor
      New York, New York 10012
      (212) 614-6475

APPEARING FOR THE DEFENDANTS:

      **CITY OF BUFFALO LAW DEPARTMENT**
      **BY: ROBERT E. QUINN,**
      **ASSISTANT CORPORATION COUNSEL**
      1100 City Hall
      65 Niagara Square
      Buffalo, New York 14202
      (716) 851-4326

ALSO PRESENT:

      **KARINA TEFFT, ESQ.,**
      **ANJANA  MALHOTRA, ESQ.,**
      National Center for Law and Economic Justice

```
 1            the most part.
 2       Q.   You don't have any specific memory of talking
 3            about racial disparity of checkpoint locations
 4            with Mayor Brown?
 5       A.   I do not have any specifics, but we probably
 6            did if you're saying it came up in the debate.
 7       Q.   I'm marking as Derenda 58 a document
 8            identified as COB060322.  And this is an email
 9            that was originally sent to you from Malcolm
10            Ertha who is with the city council on May 5th,
11            2017.
12                 The subject line is "Unanswered
13            Questions From Budget Public Hearings".  And
14            you then forwarded the email to Lockwood.
15                 And in this email it's referencing a
16            public hearing on the FY-18 budget and there
17            is a request for specific information
18            concerning checkpoints, Strike Force overtime
19            pay and Stop and Frisk policy.
20                 Are you with me?
21       A.   Yep.
22       Q.   How did you respond to this inquiry for
23            checkpoint information from the city council?
```

1  A.  Obviously sent it to Byron Lockwood who he was
2      overseeing the Strike Force Housing Unit at
3      the time, so he probably retrieved the data
4      and got it to the council at the workshop or
5      answered the questions at the workshop.
6  Q.  So you believe that you did provide a log of
7      checkpoint locations as requested by the
8      council?
9  A.  I don't recall if we did or we didn't.  It was
10     sent to Lockwood probably to answer.  I don't
11     know if he did or he didn't, but we would have
12     gone to a workshop after the meeting and they
13     would have had any follow-up questions that we
14     would have provided answers to.
15 Q.  Did you provide the council with information
16     on criteria used to establish checkpoints?
17 A.  I'm sure we did.
18 Q.  Would that have been done verbally in these
19     follow-up meetings?
20 A.  I believe it probably was done verbally, but
21     it might have been -- written stuff might have
22     been sent over, but I believe I would have
23     gave that to Lockwood to send over.

```
 1      Q.  So you think if there was a written response
 2          it would have been sent by Lockwood?
 3      A.  Yeah, I believe so.  It's more likely we
 4          responded verbally, but if there were sheets
 5          of information he would have gotten the
 6          information to pass it along.
 7      Q.  Does the BPD have a stop and frisk policy?
 8      A.  They didn't have a stop and frisk policy.
 9      Q.  I'm sorry.  I didn't understand that.
10      A.  We didn't have a stop and frisk policy.  There
11          is a stop and frisk provision under the CPL
12          when you would pat somebody down for a weapon
13          or something if you felt threatened or what
14          have you, but there was no BPD stop and frisk
15          policy in place.
16      Q.  Did you provide the summary of Strike Force
17          overtime pay that the council requested?
18      A.  I don't recall if Lockwood provided it or not
19          or I did.  I'm sure we would have answered
20          their questions.  That information on payroll
21          could have came from Inspector Strano.
22      Q.  And I will mark as Derenda 59 document
23          COB041705.  And this is an email from Captain
```

```
 1          legitimate complaint, they no longer want to
 2          be part of the process.  We have that happen.
 3      Q.  In your opinion, if a complaint stated that
 4          an officer had used a racial slur would that
 5          constitute a major or a minor violation?
 6              MR. QUINN:  Form.
 7      A.  I don't think I would put it -- I don't think
 8          I wouldn't say it's either.  I'd have it
 9          investigated and deal with it appropriately if
10          we could prove it.  I think it's something
11          that it would need to be investigated and
12          discipline would have to take place if you
13          could prove it.
14      Q.  And when you say it should be investigated, do
15          you mean that it should be investigated by
16          Internal Affairs?
17      A.  I would say Internal Affairs should
18          investigate it, correct.
19      Q.  And I want to look at Section 2.4 here.  It
20          says that all major violations shall be
21          investigated by IAD and it also says
22          investigations that are particularly complex
23          or that involve allegations of discrimination
```

```
 1      STATE OF NEW YORK)

 2      COUNTY OF ERIE    )

 3

 4
          I, Rebecca Lynne DiBello, CSR, RPR, Notary
 5      Public, in and for the County of Erie, State of
        New York, do hereby certify:
 6

 7        That the witness whose testimony appears
        hereinbefore was, before the commencement of
 8      their testimony, duly sworn to testify the
        truth, the whole truth and nothing but the
 9      truth; that said testimony was taken pursuant
        to notice at the time and place as herein set
10      forth; that said testimony was taken down by me
        and thereafter transcribed into typewriting,
11      and I hereby certify the foregoing testimony is
        a full, true and correct transcription of my
12      shorthand notes so taken.

13
          I further certify that I am neither counsel
14      for nor related to any party to said action,
        nor in anyway interested in the outcome
15      thereof.

16
          IN WITNESS WHEREOF, I have hereunto
17      subscribed my name and affixed my seal this
        8th of January, 2022.
18

19                  [signature: Rebecca L. DiBello]

20      _____

21      Rebecca Lynne DiBello, CSR, RPR
        Notary Public - State of New York
22      No. 01D14897420
        Qualified in Erie County
23      My commission expires 5/11/2023
```

DEPAOLO CROSBY REPORTING SERVICES, INC.
135 Delaware Avenue, Suite 301, Buffalo, New York 14202
716-853-5544