UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BLACK LOVE RESISTS IN THE RUST by and
through its Co-Directors Natasha Soto and Shaketa
Redden and on behalf of its members; DORETHEA
FRANKLIN; TANIQUA SIMMONS; DE'JON HALL;
JOSEPH BONDS; CHARLES PALMER; SHIRLEY
SARMIENTO; EBONY YELDON; and JANE DOE,
individually and on behalf of a class of all others
similarly situated;

                                Plaintiffs,

        v.                                                      Civil No.: 1:18-cv-00719-CCR

CITY OF BUFFALO, NY; BYRON B. BROWN, Mayor
of the City of Buffalo, in his individual and official
capacities; BYRON C. LOCKWOOD, Commissioner of
the Buffalo Police Department, in his individual and
official capacities; DANIEL DERENDA, former
Commissioner of the Buffalo Police Department, in his
individual capacity; AARON YOUNG, KEVIN
BRINKWORTH, PHILIP SERAFINI, ROBBIN
THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities.

                                Defendants.
_____

### REPLY TO PLAINTIFFS' RESPONSE TO
### DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

        Defendants City of Buffalo, NY (hereinafter "the City"); Byron B. Brown, Mayor

of the City of Buffalo, in his individual and official capacities; Byron C. Lockwood,

Commissioner of the Buffalo Police Department, in his individual and official capacities; Daniel

Derenda, former Commissioner of the Buffalo Police Department, in his individual capacity;

Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, unknown supervisory

personnel 1-10, unknown officers 1-20, each officers of the Buffalo Police Department, in their individual capacities, (collectively referred to hereinafter as "the City"), by their attorneys, Hodgson Russ LLP, submit the following Reply to Plaintiffs' Counterstatement in Response to Defendants' Statement of Undisputed Facts.

In the interests of judicial efficiency, the City Defendants have only provided responses to Plaintiffs' responses that deal with aspects of the record that are material to the City's Motion for Summary Judgment. The City reserves the right to dispute and/or contradict any of these facts at any subsequent trial of this action or in any other proceeding not involving the current motion.

**Policies of the Buffalo Police Department ("BPD")**

1.    **All officers are expected to comply and act in accordance with the BPD's Manual of Procedures ("MoP"). [Declaration of Peter A. Sahasrabudhe dated February 7, 2025 (hereinafter "Sahasrabudhe Decl."), Exhibit 6 dated September 22, 2023 (hereinafter "Gramaglia Dep. 1") at 178:22-180:1.][1]**

Plaintiffs' Response:  Dispute. The BPD does not always expect officers to comply and act in accordance with the MoP.

  For example, the MoP prohibits the use of "harsh, profane, or insolent language," but:

- "Probably every officer" used the n-word when dealing with Black members of the public.

- Internal Affairs Captain Rosenswie stated that the Manual "is just a guide" when asked about an officer who called an individual "a fucking asshole and smart ass."

- Commissioner Gramaglia permitted officers to use profanity "on the street" to "develop a rapport."

---

[1]    **All citations listed in footnotes in Defendants' Statement of Undisputed Facts have been included herein in brackets immediately following the statement that they were offered to support.**

Ex. 105,[2] BPD MoP Ch. 16 § 1.2; Ex. 37, Rosenswie Oct. 2, 2023 Dep. at 239:5-13; Ex. 102, Gennaco Report at 83, 99; Ex. 15, Gramaglia Sept. 22, 2023 Dep. at 137:9-11, 140:13- 23; Ex. 45, Whelan Apr. 26, 2022 Dep. at 39:13-21, 45:16-18, 137:8-141:11; Ex. 46, Whelan June 8, 2022 Dep. at 363:17-364:2, 373:17-374:12, 378:23-379:12, 381:2-17, 382:9-11, 400:11-16. The BPD routinely fails to investigate officers for potential violations of the MoP's Traffic Enforcement Policy. *See* Ex. 102, Gennaco Report at 50-58. The BPD does not use accountability tools (such as performance evaluations, early warning systems, or audits of body-worn camera footage) to ensure compliance with the MoP. *See* Ex. 102, Gennaco Report at 107-19; Ex. 31, Palizay Sept. 6, 2024 30(b)(6) Dep. at 191:16- 196:3, 202:1-13.

The BPD does not train supervisors on identifying and correcting racially discriminatory behavior by officers or on responding to civilian complaints of discrimination, rudeness, discourtesy, or poor service. Ex. 102, Gennaco Report at 97-98.

Though the MoP requires that officers be courteous and considerate to the public, Commissioner Lockwood could not recall any specific instance in which a complaint of rudeness or discourtesy received a guilty plea or finding. Ex. 23, Lockwood Aug. 17, 2023 Dep. at 256:2-19, 258:5-14; Ex. 15, Gramaglia Sept. 22, 2023 Dep. at 137:5-6.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **1. It merely provides immaterial and unnecessary statements that should not**
>
> **be considered by this Court.**

2.    **Section 2.12 of the BPD's Manual of Procedures ("MoP"), entitled "Attitude and Impartiality" states the following: "Employees while vigorous and unrelenting in the enforcement of the law, must maintain a strictly impartial attitude toward complainants, violators, witnesses and suspects." [Sahasrabudhe Decl., Exhibit 39, p. 16.]**

Plaintiffs' Response:  Admit that the cited exhibit includes the quoted language but dispute its relevance. The cited exhibit is from 1997, but the BPD updated the MoP in 2013. *See* Ex. 105, BPD MoP. The relevant time period for this lawsuit is June 2015 to present.

Plaintiffs further dispute that the MoP accurately reflects the BPD's customs, policies, or practices or was enforced. At least 73 individuals filed Internal Affairs complaints alleging that BPD officers did not treat them with impartiality during traffic stops. Ex. 102, Gennaco Report at 15 & Appendix C.

---

[2]    Unless otherwise noted, all "Ex." references refer to exhibits attached to the Declaration of Andrew J. Timmick dated May 30, 2025, filed in opposition to Defendants' Motion for Summary Judgment.

Employees investigating complaints did not always maintain an impartial attitude towards and sometimes disparaged complainants. The BPD relied on officers' reputations rather than "a factual record developed during a fair and thorough investigation" to dispose of complaints. When reviewing complaints about questionable traffic stops and searches, BPD Commissioners Derenda, Lockwood, and Gramaglia erred on the side of the officers, even repeat offenders. Commissioner Derenda used terms like "gangbanger" and "thug" to refer to young Black men. Ex. 102, Gennaco Report at 37-43, 58-68, 82, 84; IAD Witness Decl. ¶¶ 8, 25-26.[3]

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 2. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

3.    **Section 3.2(b) of the MoP, entitled "Conduct," states the following: "No employee shall conduct himself in such a manner, or perform any act, which is prejudicial to the good order, discipline or reputation of the Department, although such action is not specifically prohibited by any rule or order . . . ." [Id. at p. 18.]**

Plaintiffs' Response:  Admit that the cited exhibit includes the quoted language but dispute its relevance. The cited exhibit is from 1997, but the BPD updated the MoP in 2013. *See* Ex. 105, BPD MoP. The relevant time period for this lawsuit is June 2015 to present. The updated MoP does not include a section entitled "Conduct" with the above language as quoted. *See* Ex. 105, BPD MoP.

Plaintiffs further dispute that the cited language accurately reflects the BPD's actual customs, policies, or practices or was enforced. From 2013 to the present, Mayor Brown and Commissioners Derenda, Lockwood, and Gramaglia have received multiple complaints from the public via town halls, forums, reports, and the media involving allegations that BPD officers were and are engaging in racially discriminatory policing and traffic enforcement, which is prejudicial to the good order, discipline or reputation of the Department. *See, e.g.*, Ex. 102, Gennaco Report at 15-22 & Appendix C; Ex. 103, Am. Silverman Report at 30-31.

Plaintiffs also incorporate by reference their Responses to Statements 1 and 2.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph**

---

[3]    Unless otherwise indicated, all declaration cites refer to declarations filed in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.

**3. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

5. **The Order sets forth the following Core Principles of BPD's Traffic Enforcement Policy: Traffic Enforcement and Safety. The purpose of conducting traffic enforcement is to favorably alter the violator's future driving behavior and to foster public safety. Members shall engage in traffic enforcement for public safety purposes and not for the purpose of making an arrest. Constitutional Stops. Members may conduct a brief vehicle stop for a traffic violation when the member has Probable Cause to believe that the driver has committed a traffic violation. The stop may last no longer than the time reasonably required to issue a summons for the violation. Procedural Justice. Procedural justice refers to the perception of fairness in an encounter. Members shall treat all persons with dignity and respect, give persons a voice during encounters, be impartial in their decision making, and convey trustworthy motives. Non-Discriminatory Policing. Members shall not consider demographic category (including but not limited to race, ethnicity, national origin, religion, gender, sexual orientation, age, disability, gender identity or expression, or affiliation with any other similar identifiable group) as a factor in conducting a vehicle stop. Targeting specific neighborhoods for traffic enforcement based on these demographic categories is a form of discriminatory policing and is prohibited. Least Intrusive Response. Considering the circumstances presented at the time, members should always take the least intrusive action, consistent with the goal of public safety. For most minor violations, warrantless arrest is not the preferred option, and certain violations only allow for the issuance of a traffic summons or a traffic stop receipt (P-1389) and not arrest. A member should issue a summons or make an arrest only when doing so directly 5 advances the goal of public safety, and the situation cannot be effectively resolved in a less intrusive manner with the issuance of a traffic stop receipt. [*Id.*]**

Plaintiffs' Response:  Dispute in part. Admit that the Order so states; however, the Order dates from May 2021. Prior to May 2021, the BPD had no formal written policy explicitly prohibiting racially biased traffic enforcement. Moreover, the BPD still does not have a general policy explicitly prohibiting racially discriminatory policing, including the use of racial slurs and racially derogatory language. Ex. 102, Gennaco Report at 20, 22, 50.

Plaintiffs further dispute that the Order accurately reflects the custom, policy, or practice of the BPD. BPD officers frequently engage in racial profiling with the full knowledge, acceptance, and encouragement of BPD leadership. IAD Witness Decl. ¶¶ 8-12.

After issuing the Order, the BPD failed to train officers on how to implement it. In contrast, when the BPD launched a body-worn camera program, it provided training to officers. Ex. 102, Gennaco Report at 58, 97-98; Ex. 16, Gramaglia Jan. 24, 2024 30(b)(6) Dep. at 17:22- 18:16, 20:11-22:9; Ex. 15, Gramaglia Sept. 22, 2023 Dep. at 60:9-61:1.

The only mechanism to enforce the Order is the Internal Affairs complaint process. Moreover, the BPD fails to investigate and discipline officers for violations of the Order. Nor does the BPD take any affirmative steps to promote compliance with the Order. The BPD does not train supervisors on identifying and correcting racially discriminatory behavior by officers or on responding to civilian complaints of discrimination, rudeness, discourtesy, or poor service. Ex. 102, Gennaco Report at 50-58, 97-98, 119; Ex. 16, Gramaglia Jan. 24, 2024 30(b)(6) Dep. at 26:22-27:11; Ex. 15, Gramaglia Sept. 22, 2023 Dep. at 38:6-21, 119:4-17, 206:8-207:10; Ex. 6, Brown Nov. 6, 2023 Dep. at 38:19-39:11; Ex. 8, Derenda Dec. 23, 2021 Dep. at 293:16–294:14; Ex. 23, Lockwood Aug. 17, 2023 Dep. at 230:15- 231:12.

> **DEFENDANTS' RESPONSE:**  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 5. It merely provides immaterial and unnecessary statements that should not be considered by this Court.

**The Strike Force & Housing Unit**

9.    **The Strike Force was designed to respond to citizen complaints, enforce the Vehicle and Traffic Law (the "VTL"), and reduce gang and gun violence throughout the City. [*Id.*]**

Plaintiffs' Response:  Admit that the Strike Force was designed to reduce gang and gun violence, with clarification that the Strike Force primarily targeted crime hot spots. Admit that the Strike Force frequently enforced the VTL. Dispute that the Strike Force was designed to respond to citizen complaints, as the Strike Force was not "tied to the radio." *See, e.g.*, Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 17:23-19:23; Ex. 70, Derenda 30(b)(6) Dep. Exhibit 3; Ex. 105, BPD MoP Ch. 1 § 8.6; Ex. 7, Derenda Nov. 10, 2021 Dep. at 17:3- 18:20.

> **DEFENDANTS' RESPONSE:**  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 9. It merely provides immaterial and unnecessary statements that should not be considered by this Court.

10.    **The Strike Force was mainly responsible for patrolling areas with high crime rates and locations where recent crimes had occurred. [Sahasrabudhe Decl., Exhibit 12 dated December 23, 2021 (hereinafter "Derenda Dep. 2"). at 279:16-280:14.]**

Plaintiffs' Response: Dispute in part. The Strike Force mainly patrolled Black and Latino neighborhoods like the East Side. Although Strike Force patrols were at times driven by their

crime fighting priorities, when the Strike Force and Housing Unit operated Checkpoints, the racial demographics of a census tract, not crime trends, were the strongest predictor of Checkpoint locations. *See, e.g.*, Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 71:4-7, 146:7-147:21, 164:14-18, 168:2-9, 168:21-169:5; Ex. 40, Serafini Dec. 27, 2021 Dep. at 68:19-69:9; Ex. 101, Bjerk Report ¶¶ 33-34, 311-319; Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 39:16-40:6; Ex. 33, Quinn Apr. 1, 2022 Dep. at 36:13-23; Ex. 47, Wigdorski May 24, 2023 Dep. at 75:14-17.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 10. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

12.    **The Housing Unit patrolled the BMHA properties and responded to issues and resident complaints there on the properties. [Id.; Sahasrabudhe Decl., Exhibit 13 dated April 29, 2022 (hereinafter "Russo Dep.") at 99:18-100:9; 102:14-103:16.]**

Plaintiffs' Response:    Dispute. The Housing Unit patrolled BMHA properties only selectively—focusing on properties that had the largest percentage of Black and Latino residents—where they engaged in unconstitutional traffic stops and racial targeting. The Housing Unit also had citywide jurisdiction and was responsible for operating the BPD Checkpoint Program in Black and Latino neighborhoods in tandem with the Strike Force. The Housing Unit chronically failed to respond to the complaints and concerns of BMHA residents. BMHA residents lobbied for the Housing Unit to be disbanded because of these practices, and in 2020 the Housing Unit's contract to police BMHA properties expired without renewal. Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 28:6-29:13, 71:4-7, 147:18- 21; Ex. 23, Lockwood Aug. 17, 2023 Dep. at 217:5-218:5; Ex. 107, PLAINTIFFS_GENERIC-1309, at 4-6; Ex. 40, Serafini Dec. 27, 2021 Dep. at 157:22-158:3; Ex. 108, COB252511 at 526 (noting focus on 6 BMHA properties); Ex. 109, COB256275; Ex. 110, Letter from Black Lives Matter-Buffalo to N.Y. Att'y Gen. (Aug. 30, 2017) at 29-30; Ex. 111, Rod Watson, *Buffalo Municipal Housing Authority needs to hire its own police force*, BUFFALO NEWS (Dec. 17, 2024), https://buffalonews.com/news/local/buffalo-municipalhousing-authority-needs-to-hire-its-own-policeforce/article_49085bd3-008f-501e-b74ba37c5c632c18.html; Ex. 112, Matt Gyrta, *Kenfield-Langfield residents ask for more police presence*, BUFFALO NEWS (Sept. 3, 2015), http://buffalonews.com/2015/03/14/kenfieldlangfieldresidents-ask-for-more-police-presence; Ex. 113, Justin Sondel, *Buffalo's public housing tenants bear the brunt of police crackdown*, CITY & STATE (July 27, 2016), cityandstateny.com-Buffalos-public-housing tenants-bear-the-brunt-of-police-crackdown; Ex. 114, John Lipsitz & Sam Smith, *Another Voice: Buffalo police must address concerns of BMHA residents before agreement is renewed*, BUFFALO NEWS (Jan. 29, 2015), https://buffalonews.com/opinion/another-voice-buffalo-police-must-address-concerns-ofbmha-residents-beforeagreement-is-renewed/article_d79a53 56-c047-5d29-b458-a8ed bf794a1a.html.

**DEFENDANTS' RESPONSE:** Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 12. It merely provides immaterial and unnecessary statements that should not be considered by this Court. The City notes that Plaintiff's references to news articles do not provide proper support for their response to the City's statements. News articles are inadmissible. Plaintiffs' response violates Local Rule 56(a)(2).

**Vehicle and Traffic Safety Checkpoints**

15.    **Both the Strike Force and Housing Unit conducted vehicle and traffic safety Checkpoints (the "Checkpoints"). [*See* Derenda Dep. 1 at 74:13-14; 92:8-12.]**

Plaintiffs' Response: Dispute in part. Admit that the Strike Force and Housing Unit ran Checkpoints as part of the BPD Checkpoint Program; dispute that the Checkpoints referenced were "vehicle and traffic safety Checkpoints" since their primary purpose was crime control, deterrence, and suppression. The primary purposes of the Checkpoints was not "traffic safety and high visibility to curtail the unsafe operation of vehicles"; the primary purpose of the Checkpoints was crime control, deterrence, and suppression. *See, e.g.*, Ex. 153, Defs.' Mar. 18, 2024 Am. Response to Pls. First Set of RFAs, at 3-10; Ex. 8, Derenda Dec. 23, 2021 Dep. at 282:10- 283:18, 296:15-297:21, 311:1-3; Ex. 60, Derenda Nov. 10, 2021 Dep. Exhibit 10; Ex. 7, Derenda Nov. 10, 2021 Dep. at 65:13-66:16; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 22:18-24:18, 49:3-15, 71:4-7, 146:7-147:21, 196:21-197:14, 207:20-210:1; Ex. 99, Serafini Dec. 27, 2021 Dep. Exhibit 12; Ex. 40, Serafini Dec. 27, 2021 Dep. at 69:17-72:1, 130:16-131:11, 137:3-144:21, 148:8-20; Ex. 48, Wilcox Nov. 4, 2021 Dep. at 65:5-67:6, 73:1-74:20, 78:14-79:1, 80:16-81:3, 95:3-12, 96:20-97:5, 100:5-20; Ex. 42, Skipper Mar. 5, 2021 Dep. at 48:8-21, 50:16-51:18, 51:21-52:9; Ex. 100, Young Oct. 26, 2022 Dep. Exhibit 5; Ex. 50, Young Oct. 26, 2022 Dep. at 37:4-49:17, 54:13-56:5; Ex. 52, Brinkworth Dep. Exhibit 9; Ex. 53, Brinkworth Mar 16, 2022 Dep. Exhibit 12 ; Ex. 54, Brinkworth Mar. 16, 2022 Dep. Exhibit 13 ; Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 37:19-22, 60:1- 61:22, 66:9-70:3; Ex. 45, Whelan Apr. 26, 2022 Dep. at 86:1-87:13, 120:10-121:1, 121:20- 122:3; Ex. 22, Lockwood Aug. 10, 2023 Dep. at 59:23-60:6, 61:15-62:6, 63:6-19; Ex. 27, Miller June 02, 2023 Dep. at 48:22-49:11, 85:21-86:3; Ex. 95, Roberts Apr. 20, 2022 Dep. Exhibit 8; Ex. 35, Roberts Apr. 20, 2022 Dep. at 100:11-101:8; Ex. 116, COB226142; Ex. 115, COB053666; Ex. 117, COB276276; Ex. 118, COB221057; Ex. 119, COB256354; Ex. 120, COB263608; Ex. 121, COB022527; Ex. 122, COB215219; Ex. 129, COB222550; Ex. 123, COB222673; Ex. 124, COB224759; Ex. 125, COB234488; Ex. 126, COB040949; Ex. 71, COB041712; Ex. 51, Brinkworth Mar. 16, 2022 Dep. Exhibit 8; Ex. 127, COB237180; Ex. 128, COB246427; Ex. 129, COB465854; Ex. 130, COB592436; Ex. 131, COB634845; Ex. 132, COB459967; Ex. 133, COB040392; Ex. 134, COB213729; Ex. 135,

COB040616; Ex. 136, COB056123; Ex. 137, COB041717; Ex. 138, COB232166; Ex. 139, COB038698; Ex. 140, COB236452; Ex. 141, COB018645; Ex. 142, COB235272; Ex. 143, COB018352; Ex. 144, COB017671; Ex. 145, COB041693; Ex. 146, COB221203; Ex. 147, COB053632; Ex. 148, COB215625; Ex. 149, COB459487; Ex. 150, COB253727; Ex. 151, COB018380; Ex. 97, Roberts Apr. 20, 2022 Dep. Exhibit 42.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 15. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

16.    **The primary purposes of the Checkpoints were traffic safety and high visibility to curtail the unsafe operation of vehicles. [Derenda Dep. 1 at 21:6-18; Russo Dep. at 194:13-21; Sahasrabudhe Decl., Ex. 41.]**

Plaintiffs' Response:  Dispute. *See* Response to Statement 15, which Plaintiffs incorporate by reference.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 16. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

17.    **The BPD issued Roadblock Directives governing the operation of Checkpoints. [Sahasrabudhe Decl., Ex. 41.]**

Plaintiffs' Response:  Dispute in part. Admit that Roadblock Directives existed. Dispute that they accurately reflect the custom, policy, or practice of the Buffalo Police Department with respect to Checkpoints. Dispute that the BPD ever issued Roadblock Directives for Checkpoints operated exclusively by the Housing Unit. Ex. 7, Derenda Nov. 10, 2021 Dep. at 80:16-81:10; Ex. 50, Young Oct. 26, 2022 Dep. at 31:13-32:15; Ex. 27, Miller June 2, 2023 Dep. at 96:21-97:16; Ex. 40, Serafini Dec. 27, 2021 Dep. at 91:9-23, 120:17-122:18, 152:1-15; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 86:12-87:21, 90:3-91:9.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph**

**17. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**18.    The stated purpose of the Checkpoints was "roadway safety." [*Id.*]**

Plaintiffs' Response:  Dispute in part. Admit that the cited exhibit (ECF No. 252-42) contains the stated reference, albeit in quotation marks, which suggests it is pretextual. Dispute that the actual purpose of the Checkpoints was roadway safety; the primary purpose of the Checkpoints was crime control, deterrence, and suppression. *See, e.g.*, Ex. 153, Defs.' Mar. 18, 2024 Am. Response to Pls. First Set of RFAs, at 3-10; Ex. 8, Derenda Dec. 23, 2021 Dep. at 282:10-283:18, 296:15-297:21, 311:1-3; Ex. 60, Derenda Nov. 10, 2021 Dep. Exhibit 10; Ex. 7, Derenda Nov. 10, 2021 Dep. at 65:13-66:16; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 22:18-24:18, 49:3-15, 71:4-7, 146:7-147:21, 196:21-197:14, 207:20- 210:1; Ex. 99, Serafini Dec. 27, 2021 Dep. Exhibit 12; Ex. 40, Serafini Dec. 27, 2021 Dep. at 69:17-72:1, 130:16-131:11, 137:3-144:21, 148:8-20; Ex. 48, Wilcox Nov. 4, 2021 Dep. at 65:5-67:6, 73:1-74:20, 78:14-79:1, 80:16-81:3, 95:3-12, 96:20-97:5, 100:5-20; Ex. 42, Skipper Mar. 5, 2021 Dep. at 48:8-21, 50:16-51:18, 51:21-52:9; Ex. 100, Young Oct. 26, 2022 Dep. Exhibit 5; Ex. 50, Young Oct. 26, 2022 Dep. at 37:4-49:17, 54:13-56:5; Ex. 52, Brinkworth Mar. 16, 2022 Dep. Exhibit 9; Ex. 53, Brinkworth Mar. 16, 2022 Dep. Exhibit 12; Ex. 54, Brinkworth Mar. 16, 2022 Dep. Exhibit 13; Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 37:19-22, 60:1-61:22, 66:9-70:3; Ex. 45, Whelan Apr. 26, 2022 Dep. at 86:1-87:13, 120:10-121:1, 121:20-122:3; Ex. 22, Lockwood Aug. 10, 2023 Dep. at 59:23-60:6, 61:15- 62:6, 63:6-19; Ex. 27, Miller June 02, 2023 Dep. at 48:22-49:11, 85:21-86:3; Ex. 95, Roberts Dep. Exhibit 8; Ex. 35, Roberts Apr. 20, 2022 Dep. at 100:11-101:8; Ex. 116, COB226142; Ex. 115, COB053666; Ex. 117, COB276276; Ex. 118, COB221057; Ex. 119, COB256354; Ex. 120, COB263608; Ex. 121, COB022527; Ex. 122, COB215219; Ex. 129, COB222550; Ex. 123, COB222673; Ex. 124, COB224759; Ex. 116, COB226142; Ex. 125, COB234488; Ex. 126, COB40949; Ex. 71,COB041712; Ex. 51, COB591045; Ex. 127, COB237180; Ex. 128, COB246427; Ex. 129, COB465854; Ex. 130, COB592436; Ex. 131, COB634845; Ex. 132, COB459967; Ex. 133, COB040392; Ex. 134, COB213729; Ex. 97, COB017662; Ex. 135, COB040616; Ex. 136, COB056123; Ex. 137, COB041717; Ex. 138, COB232166; Ex. 139, COB038698; Ex. 140, COB236452; Ex. 141, COB018645; Ex. 142, COB235272; Ex. 143, COB018352; Ex. 144, COB017671; Ex. 145, COB041693; Ex. 146, COB221203; Ex. 147, COB053632; Ex. 148, COB215625; Ex. 149, COB459487; Ex. 150, COB253727; Ex. 151, COB018380; Ex. 97, Roberts Dep. Exhibit 42.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 18. It merely provides immaterial and unnecessary statements that should not be considered by this Court. Moreover, Plaintiffs' *argument*, unsupported by any record evidence, that quotations in Exhibit 41 concerning "roadway**

**safety" mean that the quoted material is "pretextual" should be disregarded.**

**This is merely Plaintiffs' conclusory argument improperly placed in their**

**factual response.**

19.   **BPD policy required that all officers assigned to the Checkpoints be given a copy of the Directives prior to the Checkpoint's operation. [*Id.*]**

Plaintiffs' Response:  Admit that the cited exhibit (ECF No. 252-42) so states. Dispute that it accurately reflects the BPD's custom, policy, or practice or was enforced. Dispute that Directives were ever issued in connection with Checkpoints operated exclusively by the Housing Unit. Ex. 50, Young Oct. 26, 2022 Dep. at 32:20-23; Ex. 38, Russo, Apr. 29, 2022 Dep. at 147:7-150:13.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**19. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

20.   **The Directives instructed officers as follows:**

- **Make the roadblock obvious. Overhead flashing lights must be activated on all vehicles taking part in the roadblock.**

- **The roadblock must not be unreasonably intrusive to motorists.**

- **Set the roadblock up in a way that minimizes the possibility of avoiding it.**

- **The above roadblock must begin at the above stated times. [*Id.*]**

Plaintiffs' Response:  Admit that the cited exhibit (ECF No. 252-42) so states and that the BPD set Checkpoints in a way that minimized the possibility of avoiding them. Otherwise dispute. Roadblocks were not always obvious; BPD did not always activate overhead flashing lights, and roadblocks were unreasonably intrusive to motorists. Ex. 50, Young Oct. 26, 2022 Dep. at 32:20-23; ECF No. 252-42, Buffalo Police Department Roadblock Directive at 2. Bassett Decl. ¶¶ 8, 12, 19; Palmer Decl. ¶ 6; IAD Witness Decl. ¶ 16; Franklin Decl. ¶¶ 6-7, 11-15; Evans Decl. ¶ 9; Bonds Decl. ¶¶ 7, 19, 24; Simmons Decl. ¶¶ 3-11; Redden Decl. ¶¶ 5, 7, 11.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

20. **It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

22. **Former Commissioner Derenda based his location decisions on a variety of factors including citizen complaints received, where BMHA properties were located, and where Strike Force officers were assigned to patrol. [Derenda Dep. 1 at 50:9-14; 96:3-97:2.]**

<u>Plaintiffs' Response:</u>  Dispute in part. Admit that Checkpoint locations, like Strike Force patrols, were frequently driven by the Strike Force and Housing Unit's crime fighting priorities. Dispute that Checkpoint locations were based on citizen complaints. Dispute that East Side residents requested or supported the Checkpoint Program in their community. The racial demographics of a neighborhood, not crime or traffic safety trends, were ultimately the strongest predictor of Checkpoint locations. Ex. 152, Pls. First Set of RFAs, at 3-10; Ex. 153, Defs.' Mar. 18, 2024 Am. Response to Pls. First Set of RFAs, at 3-10; Ex. 101, Bjerk Report ¶¶ 34, 311-324; Ex. 8, Derenda Dec. 23, 2021 Dep. at 282:10-283:18, 296:15-297:21, 311:1-3; Ex. 60, Derenda Nov. 10, 2021 Dep. Exhibit 10; Ex. 7, Derenda Nov. 10, 2021 Dep. at 65:13-66:16; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 22:18- 24:18, 49:3-15, 71:4-7, 146:7-147:21, 196:21-197:14, 207:20-210:1; Ex. 99, Serafini Dec. 27, 2021 Dep. Exhibit 12; Ex. 40, Serafini Dec. 27, 2021 Dep. at 69:17-72:1, 130:16- 131:11, 137:3-144:21, 148:8-20; Ex. 48, Wilcox Nov. 4, 2021 Dep. at 65:5-67:6, 73:1- 74:20, 78:14-79:1, 80:16-81:3, 95:3-12, 96:20-97:5, 100:5-20; Ex. 42, Skipper Mar. 5, 2021 Dep. at 48:8-21, 50:16-51:18, 51:21-52:9; Ex. 100, Young Oct. 26, 2022 Dep. Exhibit 5; Ex. 50, Young Oct. 26, 2022 Dep. at 37:4-49:17, 54:13-56:5; Ex. 52, Brinkworth Mar. 16, 2022 Dep. Exhibit 9; Ex. 53, Brinkworth Mar. 16, 2022 Dep. Exhibit 12; Ex. 54, Brinkworth Mar. 16, 2022 Dep. Exhibit 13; Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 37:19- 22, 60:1-61:22, 66:9-70:3; Ex. 45, Whelan Apr. 26, 2022 Dep. at 86:1-87:13, 120:10-121:1, 121:20-122:3; Ex. 22, Lockwood Aug. 10, 2023 Dep. at 59:23-60:6, 61:15-62:6, 63:6-19; Ex. 27, Miller June 02, 2023 Dep. at 48:22-49:11, 85:21-86:3; Ex. 95, Roberts Apr. 20, 2022 Dep. Exhibit 8; Ex. 35, Roberts Apr. 20, 2022 Dep. at 100:11-101:8; Ex. 116, COB226142; Ex. 115, COB053666; Ex. 117, COB276276; Ex. 118, COB221057; Ex. 119, COB256354; Ex. 120, COB263608; Ex. 121, COB022527; Ex. 122, COB215219; Ex. 129, COB222550; Ex. 123, COB222673; Ex. 124, COB224759; Ex. 125, COB234488; Ex. 126, COB040949; Ex. 71, COB041712; Ex. 51, COB59591045; Ex. 127, COB237180; Ex. 128, COB246427; Ex. 129, COB465854; Ex. 130, COB592436; Ex. 131, COB634845; Ex. 132, COB459967; Ex. 133, COB040392; Ex. 134, COB213729; Ex. 135, COB040616; Ex. 136, COB056123; Ex. 137, COB041717; Ex. 138, COB232166; Ex. 139, COB038698; Ex. 140, COB236452; Ex. 141, COB018645; Ex. 97, Roberts Dep. Exhibit 42, COB017662; Ex. 142, COB235272; Ex. 143, COB018352; Ex. 144, COB017671; Ex. 145, COB041693; Ex. 146, COB221203; Ex. 147, COB053632; Ex. 148, COB215625; Ex. 149, COB459487; Ex. 150, COB253727; Ex. 151, COB018380; Ex. 255, Checkpoint Compilation; Simmons Decl. ¶¶ 5, 11-12; Palmer Decl. ¶ 6; Franklin Decl. ¶ 16; Bassett Decl. ¶ 14.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**22. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

23.    **Complaints included reports of individuals driving without licenses, speeding, and engaging in other unsafe driving behaviors. [Derenda Dep. 1 at 96:3-97:2.]**

Plaintiffs' Response:  Dispute. Defendants never adopted a policy of establishing checkpoints based on traffic safety data or complaints and cannot identify a single instance where a checkpoint was established on that basis. Ex. 152, Pls. First Set of RFAs, at 3-10; Ex. 153, Defs.' Mar. 18, 2024 Am. Response to Pls. First Set of RFAs, at 3-10; Ex 4, Brinkworth Mar. 16, 2022 Dep. at 67:5-20; Ex. 48, Wilcox Nov. 4, 2021 Dep. at 73:1-74:20; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 207:20-210:19. Further dispute for the reasons stated in Plaintiffs' Response to Statement 22, which Plaintiffs incorporate by reference.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**23. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

24.    **The City Defendants received many complaints from residents in the East Side of Buffalo, a community with majority Black residents. [*See* Brown Dep. at 57:4-58:21, 15:15-22.]**

Plaintiffs' Response:  Dispute. The statement lacks evidentiary foundation because the only testimony Defendants cited in support was retracted as inaccurate. Ex. 6, Brown Nov. 11, 2023 Dep. at 71:10-19.

Further dispute because East Side residents did not request or support the Checkpoint Program in their communities. Simmons Decl. ¶¶ 5, 11-12; Palmer Decl. ¶ 6; Franklin Decl. ¶ 16; Bassett Decl. ¶ 14; Sarmiento Decl. ¶ 9; Hall Decl. ¶¶ 13-14; Bonds Decl. ¶ 23; Evans Decl. ¶¶ 6, 16; Redden Decl. ¶¶ 4-5; Yeldon Decl. ¶ 4.

Further dispute for the reasons stated in Plaintiffs' Responses to Statements 22-23, which Plaintiffs incorporate by reference.

**DEFENDANTS' RESPONSE:**  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 24. It merely provides immaterial and unnecessary statements that should not be considered by this Court. Mayor Brown did not retract this portion of his testimony. *See* Brown Dep. at 71:9-19. Moreover, the City refers the Court to Brown Dep. at 63:12-64:17 in addition to the cited provisions in Paragraph 24.

25.    After some time in operation, BPD lieutenants began setting Checkpoint locations based on the aforementioned factors. [Brinkworth Dep. at 73:17-21.]

Plaintiffs' Response:   Dispute. *See* Responses to Statements 22-24, which Plaintiffs incorporate by reference.

**DEFENDANTS' RESPONSE:**  *See* the City's Responses to Plaintiffs' Responses to Paragraphs 22-24.

29.    Officers assigned to Checkpoints were directed to:

- Check all drivers and passengers for seatbelts.

- Check all vehicles for valid registration stickers.

- Check all vehicles for valid inspection stickers.

- Act on any and all probable cause resulting from information obtained from the mobile plate reader or from plain view observations.

- Write summons for all who are in violation of any of the above or other NYS Vehicle & Traffic Laws.

Plaintiffs' Response:   Defendants do not cite any evidentiary support for this proposition, therefore no response is required. Fed. R. Civ. P. 56(e); W.D.N.Y. Local R. 56(a)(1). However, admit that the Checkpoint Directive so states.

**DEFENDANTS' RESPONSE:** The City amends Statement 29 to cite to

Exhibit 41 to the Sahasrabudhe Declaration, dated February 7, 2025 (Dkt.

No. 252-42).

30.  **If motorists did not have any visible traffic violation, they were immediately directed to proceed through the Checkpoint. [*See* Hy Dep. at 22:2-19.]**

Plaintiffs' Response:   Dispute to the extent the statement suggests Checkpoint stops were based on individualized suspicion; at Checkpoints, the BPD stopped all motorists without individualized suspicion. Dispute that motorists were always directed to proceed through the Checkpoint if they did not have visible traffic violations. *See, e.g.*, Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 157:19-158:3; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 261:1- 10; Ex. 6, Brown Nov. 6, 2023 Dep. at 223:6-224:11; Ex. 105, BPD MoP Ch. 8 § 10.5; Ex. 50, Young Oct. 26, 2022 Dep. at 52:12-16; Simmons Decl. ¶¶ 7-10; Franklin Decl. ¶ 11; Yeldon Decl. ¶¶ 4-5; Evans Decl. ¶ 7; Bassett Decl. ¶ 10.

**DEFENDANTS' RESPONSE:** Plaintiffs' response does not contradict, call

into question, or dispute the City's factual proposition set forth in Paragraph

30. It merely provides immaterial and unnecessary statements that should

not be considered by this Court.

31.  **A substantial number of motorists received no tickets and were stopped for only brief periods of time at the Checkpoints. [*See* Sahasrabudhe Decl., Exhibit 15 dated July 18, 2023 (hereinafter "Domaracki Dep.") at 36:13-37:10.]**

Plaintiffs' Response:   Admit that the Checkpoints were not an effective or productive means of advancing traffic safety because they generated a low yield of tickets relative to the frequency that motorists were stopped. Dispute that motorists were stopped for only brief periods of time in instances where they were not ticketed. Simmons Decl. ¶¶ 7-10, 16; Franklin Decl. ¶ 11.

**DEFENDANTS' RESPONSE:** Plaintiffs' response does not contradict, call

into question, or dispute the City's factual proposition set forth in Paragraph

31. It merely provides immaterial and unnecessary statements that should

not be considered by this Court. Moreover, Plaintiffs' response purports to

admit Paragraph 31 but then mischaracterizes the statement articulated

therein.

32.    **If an officer observed a VTL violation, the officer instructed the motorist to pull to the side of the road. The officer would then issue a traffic summons. [Hy Dep. at 23:15-24:13; 31:9- 32:6.]**

Plaintiffs' Response:    Dispute to the extent the statement suggests Checkpoint stops were based on individualized suspicion; at Checkpoints, the BPD stopped all motorists without individualized suspicion. Dispute that motorists were always directed to proceed through the Checkpoint if they did not have visible traffic violations. Dispute that all motorists who were pulled to the side of the road were issued traffic summons. *See, e.g.*, Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 157:19-158:3; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 261:1- 10; Ex. 6, Brown Nov. 6, 2023 Dep. at 223:6-224:11; Ex. 105, BPD MoP Ch. 8 § 10.5; Ex. 50, Young Oct. 26, 2022 Dep. at 52:12-16; Simmons Decl. ¶¶ 8-9; Franklin Decl. ¶ 11.

   **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

   **into question, or dispute the City's factual proposition set forth in Paragraph**

   **32. It merely provides immaterial and unnecessary statements that should**

   **not be considered by this Court.**

33.    **If no probable cause for an arrest arose or was observed by the officer during the interaction, the motorist was permitted to drive away. [*Id.*]**

Plaintiffs' Response:    Dispute. Derenda instructed officers to "impound as many vehicles as legally possible," and officers impounded many vehicles at Checkpoints. Officers routinely impounded vehicles for minor violations such an expired registration or inspection sticker. These violations do not provide probable cause for an arrest, yet motorists were not permitted to drive away. Ex. 59, COB279173; Ex. 155, COB027566; Ex. 45, Whelan Apr. 16, 2022 Dep. at 193:10-194:21; Ex. 40, Serafini Dec. 27, 2021 Dep. at 97:6-98:5; Franklin Decl. ¶ 8; N.Y. Veh. & Traf. Law § 512 (McKinney 2025).

   **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

   **into question, or dispute the City's factual proposition set forth in Paragraph**

   **33. It merely provides immaterial and unnecessary statements that should**

   **not be considered by this Court.**

35.     **Following former Commissioner Lockwood's tenure, former Commissioner Gramaglia did not reinstate the Checkpoints during his time as Commissioner. [*See* Gramaglia Dep. 1 at 181:19-182:10.]**

Plaintiffs' Response:   Admit with the clarification that the BPD Manual of Procedures still contains provisions authorizing the Checkpoint Program, and nothing prevents the BPD from reinstating the Checkpoint Program. Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 198:4-199:3; Ex. 6, Brown Nov. 6, 2023 Dep. at 238:15-16; Ex. 105, BPD MoP Ch. 8 § 10.5; Ex. 156, *Buffalo Police Strike Force being disbanded*, SPECTRUM NEWS (Feb. 09, 2018), https://spectrumlocalnews.com/nys/buffalo/news/2018/02/10/buffalo-police-strikeforce-disband; Ex. 157, Maki Becker, *Buffalo Police to end Strike Force unit, put focus on community policing*, BUFFALO NEWS (Feb. 9, 2018), buffalonews.com/news/local/crimecourts/buffalo-police-to-end-strike-force-unit-put-focus-on-community-policing/article_519d04c0-db7f-5ecf-80ed-01bc13c1779b.html.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **35. It merely provides immaterial and unnecessary statements that should**
>
> **not be considered by this Court.**

36.     **Current BPD Commissioner Alfonso Wright will not reinstate Checkpoints during his tenure. [*Id.*]**

Plaintiffs' Response:   The evidence cited by Defendants does not provide evidentiary support for this proposition; therefore no response is required. Fed. R. Civ. P. 56(e); W.D.N.Y. Local R. 56(a)(1). Dispute in any event because the BPD Manual of Procedures still contains provisions authorizing the Checkpoint Program, and nothing prevents the BPD from reinstating Checkpoint Program. Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 198:4-199:3; Ex. 6, Brown Nov. 6, 2023 Dep. at 238:15-16; Ex. 105, BPD MoP Ch. 8 § 10.5; Ex. 156, *Buffalo Police Strike Force being disbanded*, SPECTRUM NEWS (Feb. 09, 2018), https://spectrumlocalnews.com/nys/buffalo/news/2018/02/10/buffalo-police-strike-force-disband; Ex. 157, Maki Becker, *Buffalo Police to end Strike Force unit, put focus on community policing*, BUFFALO NEWS (Feb. 9, 2018), buffalonews.com/news/local/crime-courts/buffalo-policeto-end-strike-force-unit-put-focus-on-community-policing/article_519d04c0-db7f-5ecf80ed-01bc13c1779b.html.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **36. It merely provides immaterial and unnecessary statements that should**
>
> **not be considered by this Court. Additionally, to the extent Plaintiffs argue**

**that Commissioner Wright's sworn testimony does not support the fact that**

**he will not reinstate the Checkpoints during his tenure, that argument would**

**also undermine their factual propositions for which they rely upon sworn**

**declarations for support. Further, the City notes that Plaintiff's references to**

**news articles do not provide proper support for their response to the City's**

**statements. News articles are inadmissible. Plaintiffs' response violates Local**

**Rule 56(a)(2).**

**Traffic Enforcement and Tinted Windows**

**37.    Two of the goals for the BPD's traffic enforcement efforts are "to favorably alter the violator's future driving behavior and to foster public safety." [Sahasrabudhe Decl., Ex. 40.]**

Plaintiffs' Response:   Admit that the cited exhibit so states. However, the exhibit was created in May 2021 and these goals were not articulated prior to May 2021. Ex. 158, COB-Hodgson_00093; Ex. 15, Gramaglia Sept. 22, 2023 Dep. at 83:16-87:13; Ex. 16, Gramaglia Jan. 24, 2024 30(b)(6) Dep. at 28:3-31:4.

Dispute that the exhibit accurately reflects BPD custom, policy and practice from 2015 to present. BPD trained officers that a goal of traffic enforcement was to generate revenue. BPD officers also engaged in traffic enforcement with a goal of suppressing crime, interdicting guns and drugs, and satisfying the production expectations of BPD Commissioners, who rewarded them with overtime. Ex. 7, Derenda Nov. 10, 2021 Dep. at 36:6-17; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 150:13-18; Ex. 59, Derenda Nov. 10, 2021 Dep. Exhibit 8; Ex. 102, Gennaco Report at 102; Ex. 29, Nigrelli Oct. 11, 2024 Dep. at 330:1- 333:16; Ex. 14, Gennaco Oct. 4, 2024 Dep. at 131:17-133:22; Ex. 31, Palizay Sept. 06, 2024 30(b)(6) Dep. at 120:18-121:5, 123:15-124:21, 127:17-128:22; Ex. 24, Macy Aug. 16, 2024 30(b)(6) Dep. at 140:2-142:7; Ex. 17, Gramaglia Mar. 14, 2024 30(b)(6) Dep. at 62:15-23, 64:4-7, 67:8-22; Ex. 77, Gramaglia Mar. 14, 2024 30(b)(6) Dep. Exhibit 4; Ex. 159, Derenda Dec. 23, 2021 Exhibit 31; Ex. 22, Lockwood Aug. 10, 2023 Dep. at 51:10- 52:3; Ex. 40, Serafini Dec. 27, 2021 Dep. at 257:8-259:1; Ex. 160, COB016282; Ex. 121, COB022527; Ex. 161, COB406079; Ex. 42, Skipper Mar. 5, 2021 Dep. at 115:9-116:11; Ex. 162, COB053652; Ex. 163, COB052637; Ex. 164, COB052709; Ex. 126, COB040949; Ex. 165, COB058264; Ex. 166, COB056235; Ex. 167, COB056243; Ex. 168, COB056484; Ex. 169, COB275648; Ex. 170, COB053677; Ex. 171, COB041081; Ex. 172, COB042199; Ex. 173, COB051485; Ex. 174, COB052690; Ex. 176, COB052661; Ex. 176, COB051545; Ex. 177, COB056134; Ex. 178, COB056326; Ex. 179, COB063330; Ex. 180, COB056535; Ex. 181, COB042029; Ex. 182, COB042046; Ex. 182, COB042046; Ex. 183, COB042047.

Dispute that the BPD's traffic enforcement practices further the stated goals. For example, the BPD has a policy and practice of issuing multiple tinted windows tickets to Black and Latino drivers, but there is no public safety benefit to issuing multiple tinted windows tickets in a single stop. Ex. 102, Gennaco Report at 102; Ex. 29, Nigrelli Oct. 11, 2024 Dep. at 330:1-333:16; Ex. 101, Bjerk Report ¶¶ 151, 294-95, & Figure 14.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 37. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

38.    **The BPD does not require officers to meet any ticket quotas. [Sahasrabudhe Decl., Exhibit 28 dated November 4, 2021 (hereinafter "Wilcox Dep.") at 133:18-134:1.]**

Plaintiffs' Response:    Dispute. Strike Force and Housing Unit officers were instructed to keep their "numbers" high, and the Commissioner criticized them when their "production" dropped. Sometimes officers had to meet numerical goals. Ex. 184, COB018251; Ex. 185, COB018355; Ex. 186, COB018361; Ex. 187, COB018565; Ex. 7, Derenda Nov. 10, 2021 Dep. at 102:19-105:16; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 157:6-23; Ex. 188, COB042018; Ex. 136, COB056123; Ex. 189, COB345889.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 38. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

39.    **BPD command did not advise officers that they would receive overtime for writing more tickets. [*See* Sahasrabudhe Decl., Exhibit 24 dated March 5, 2021 (hereinafter "Skipper Dep.") at 119:14-120:7; Sahasrabudhe Decl., Exhibit 25 dated March 23, 2023 (hereinafter "Thomas Dep.") at 116:7-117:12; Ex. 40, Serafini Dec. 27, 2021 Dep. at 261:19-23.]**

Plaintiffs' Response:    Dispute. BPD leadership tied overtime expectations to high ticketing numbers. Leadership communicated, and officers understood, that overtime was a reward for "production" and overtime shifts needed to produce high numbers of tickets and impounds. Ex. 160, COB016282; Ex. 121, COB022527; Ex. 161, COB406079; Ex. 164, COB052709; Ex. 42, Skipper Mar. 5 2021 Dep. at 115:9-116:11; Ex. 162, COB053652; Ex. 163, COB052637; Ex.

126, COB040949; Ex. 165, COB058264; Ex. 190, COB052633; Ex. 40, Serafini Dec. 27, 2021 Dep. at 241:6-242:8; Ex. 191, COB016235; Ex. 192, COB017429.

> **DEFENDANTS' RESPONSE:** **Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 39. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

40.    **Officers did not receive overtime pay for writing more tickets. [*Id.*]**

Plaintiffs' Response:  Dispute. Writing tickets led to "court time" for which officers could receive overtime compensation. Ex. 166, COB056235; Ex. 167, COB056243; Ex. 177, COB056134; Ex. 178, COB056326; Ex. 179, COB063330; Ex. 180, COB056535; Ex. 181, COB042029; Ex. 182, COB042046; Ex. 182, COB042046; Ex. 183, COB042047; Ex. 171, COB041081; Ex. 59, COB279173; Ex. 33, Quinn Apr. 1, 2022 Dep. at 77:2-6.

> **DEFENDANTS' RESPONSE:** **Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 40. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

41.    **BPD command did not pressure officers to write more tickets. [*See* Wilcox Dep. at 133:18- 134:12; Hy Dep. at 30:7-16; Thomas Dep. at 118:15-119:13.]**

Plaintiffs' Response:   Dispute. BPD leadership pressured officers to write as many tickets as possible. Ex. 59, Derenda Nov. 10, 2021 Dep. Exhibit 8; Ex. 40, Serafini Dec. 27, 2021 Dep. at 140:2-141:9, 231:22-234:7, 238:20-242:8; Ex. 45, Whelan Apr. 26, 2022 Dep. at 257:8-264:2; Ex. 160, COB016282; Ex. 121, COB022527; Ex. 161, COB406079; Ex. 42, Skipper Mar. 5, 2021 Dep. at 116:3-11; Ex. 162, COB053652; Ex. 163, COB052637; Ex. 126, COB040949; Ex. 165, COB058264; Ex. 166, COB056235; Ex. 167, COB056243; Ex. 168, COB056484; Ex. 169, COB275648; Ex. 170, COB053677; Ex. 164, COB052709; Ex. 171, COB041081; Ex. 172, COB042199; Ex. 173, COB051485; Ex. 174, COB052690; Ex. 176, COB052661; Ex. 176, COB051545; Ex. 7, Derenda Nov. 10, 2021 Dep. at 102:19- 103:2, 128:5-17; Ex. 43, Tedesco July 11, 2023 Dep. at 195:3-196:4; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 161:12-19, 281:1-16.

> **DEFENDANTS' RESPONSE:** **Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph**

**41. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**The Buffalo Traffic Violations Agency ("BTVA")**

43.     **In 2015, the New York State Legislature created the BTVA to assist the Buffalo City Court in adjudicating noncriminal traffic infractions within the City of Buffalo. [Sahasrabudhe Decl., Exhibit 21 dated May 26, 2022 (hereinafter "Morgera Dep.") at 18:2-5; 19:20-20:3.]**

Plaintiffs' Response:    Dispute in part. Admit that the BTVA was created in 2015 but: (1) it was also created by the Buffalo City Council with Mayor Brown's sign-off; and (2) it was also created with the purpose of generating revenue for the City. Ex. 193, COB095635; Ex. 194, COB088494; Ex. 195, COB094962; Ex. 196, COB094964; Ex. 197, COB094966; Ex. 198, COB075236; Ex. 199, COB067689; Ex. 200, COB095082 at 1, 3-5; Ex. 201, COB063519; Ex. 202, COB095030; Ex. 203, COB121555; Ex. 204, COB047699; Ex. 205, COB123717; Ex. 206, COB120438; Ex. 207, COB094495; Ex. 208, COB261063; Ex. 209, COB067730; Ex. 210, COB223189; Ex. 211, COB112220; Ex. 212, COB112221; Ex. 213, COB091732; Ex. 214, COB067739; Ex. 215, COB067740; Ex. 216, COB098942; Ex. 217, COB073331, Ex. 218, COB073332; Ex. 219, COB114658; Ex. 220, COB231866; Ex. 221, COB091747; Ex. 222, COB239572; Ex. 223, COB091754; N.Y. Gen. Mun. Law §§ 370, 374-a (McKinney 2017, 2013); Buffalo, N.Y., City Charter § 6-24 (2015).

        **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 43. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

44.     **The BTVA was designed to give ticketed motorists alternatives to resolve their tickets, as is done in almost all town and village courts across the State. [Sahasrabudhe Decl., Exhibit 26 dated June 8, 2023 (hereinafter "Villegas Dep.") at 39:8-40:16.]**

Plaintiffs' Response:    Dispute in part. First, only three other municipalities across the state have traffic violation agencies established by New York State (Nassau County, Suffolk County, and the City of Rochester). Second, the BTVA was also created to provide the City of Buffalo with additional revenue. Ex. 223, COB091754; Ex. 276, Composite Exhibit – BPD Budgets; Ex. 221, COB091747; Ex. 225, COB091749; Ex. 226, COB088497; Ex. 227, COB094904; Ex. 207, COB094495; Ex. 228, COB094352; Ex. 229, COB091719; Ex. 230, COB093060; Ex. 231, COB094070; Ex. 232, COB093194; Ex. 193, COB095635; Ex. 194, COB088494; Ex. 195, COB094962; Ex. 196, COB094964; Ex. 197, COB094966; Ex. 198, COB075236; Ex. 199,

COB067689; Ex. 203, COB121555; Ex. 204, COB047699; Ex. 205, COB123717; N.Y. Gen.
Mun. Law § 370 (McKinney 2017); Art. 6 § 6-24, Amending Charter of City of Buffalo re
Establishment of Buffalo Traffic Violations Agency, City of Buffalo Proceedings (June 2, 2015
Special Session).

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**44. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

46.    **Motorists can take a plea offer or proceed to a hearing before a judicial hearing**
       **officer. [Morgera Dep. at 26:6-23.]**

Plaintiffs' Response:  Dispute in part. Nearly all motorists plead guilty: in practice, the option to
proceed to hearing before a judicial hearing officer is not an effective alternative. Ex. 28,
Morgera May 25, 2022 Dep. at 29:20-30:2; Ex. 233, 2017 BTVA Annual Report (showing
25,830 tickets disposed of by plea bargain in 2017 while only 759 tickets were disposed of by
not guilty disposition or dismissal in that same year).

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**46. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

48.    **Ticketed motorists may appeal a hearing officer's final determination in Erie**
       **County Court. [Sahasrabudhe Decl., Ex. 42.]**

Plaintiffs' Response:  Dispute because this statement contains a general legal conclusion, the
accuracy of which cannot be determined without additional details about the circumstances of
the relevant motorist. In any event, the statement is immaterial. Further dispute for the reasons
stated in Plaintiffs' Responses to Statement 47, which Plaintiffs incorporate by reference.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**48. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court. Paragraph 48 does not contain a general**

legal conclusion. Rather, it is a statement of fact, as demonstrated by Exhibit

42.

49.    **Motorists can also challenge a ticket or traffic enforcement action through a New York CPLR Article 78 proceeding. [*See* N.Y. CPLR 7801(1)]**

Plaintiffs' Response:  Dispute because this statement contains a general legal conclusion, the accuracy of which cannot be determined without additional details about the circumstances of the relevant motorist. In any event, the statement is immaterial.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 49. It merely provides immaterial and unnecessary statements that should not be considered by this Court. Paragraph 48 does not contain a general legal conclusion. Rather, it is a statement of fact, as demonstrated by the plain text of N.Y. CPLR 7801(1).**

53.    **Other municipalities throughout the State, including Nassau County, Suffolk County, and Rochester, also have similar traffic violations agencies. [N.Y. Gen. Mun. Law § 370 (McKinney); *see also* Villegas Dep. at 31:7-22.]**

Plaintiffs' Response:  Dispute as vague because this statement does not define or describe what it means by "similar" or elaborate on the traffic violations agencies alleged similarities.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 53. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**Facts Related to Plaintiffs' Claims of Intentional Discrimination'**

54.    **BPD's Checkpoint directive and traffic enforcement policies are race neutral in that they do not classify motorists based on their race. [Sahasrabudhe Decl., Ex. 41; Ex. 40; Ex. 39 at pp. 16, 18.]**

<u>Plaintiffs' Response:</u>  Dispute for lack of evidentiary foundation. The City cited the 2021 Traffic Enforcement Policy, but that Policy was not created until May 2021. Prior to May 2021, the BPD had no formal written policy explicitly prohibiting racially biased policing or traffic enforcement. The City's other evidentiary support is a 1997 version of the MoP that was superseded in 2013. The pages the City cited do not address traffic enforcement. *See* Ex. 105, BPD MoP; Ex. 158, COB-Hodgson_00093; Ex. 102, Gennaco Report at 20 n.10, 50.

Further dispute because the BPD's Checkpoint directive and traffic enforcement policies are not race neutral in practice. The BPD disproportionately erected Checkpoints in Black and Latino neighborhoods, so the directive to "[c]heck all drivers and passengers" meant that officers primarily stopped Black and Latino drivers. The BPD conducted over 80% of Checkpoints in Black and Latino neighborhoods. Differences in population size, crime rates, and accident rates could not explain the disparity in Checkpoint locations. Ex. 1, Acquino Sept. 5, 2023 Dep. at 56:5-12; Ex. 8, Derenda Dec. 23, 2021 Dep. at 282:1-6; Ex. 33, Quinn Apr. 1, 2022 Dep. at 35:22-36:4; Ex. 94, Quinn Apr. 1, 2022 Dep. Exhibit 43; Ex. 101, Bjerk Report ¶¶ 34, 331.

In addition, the BPD disproportionately issued tinted windows tickets—especially multiple tinted windows tickets—to Black and Latino drivers. There is no race neutral explanation for this disparity. Ex. 101, Bjerk Report ¶¶ 151, 294-95, & Figure 14.

The BPD currently maintains a policy under which officers employ pretextual traffic stops to target "gang members," as well as "individuals that are highly likely to engage in gun activities," "person[s] of interest," "hot people," and "high-risk individuals." The BPD considers the general demographic of gang members in Buffalo to be Black or Latino men ages 17-27. The only online and paper form that the BPD utilizes for officers "to submit information identifying a gang member" contains "Black" pre-filled for race. Ex. 31, Palizay Sept. 6, 2024 30(b)(6) Dep. at 123:15-19, 127:17-128:22, 136:22-137:8, 158:6-164:13; Ex. 17, Gramaglia Mar. 14, 2024 30(b)(6) Dep. at 55:4-59:1; Ex. 24, Macy Aug. 16, 2024 30(b)(6) Dep. at 30:23-32:14, 42:7-18, 46:5-47:17, 49:22-50:21, 54:9-55:1; Ex. 83, Macy Aug. 16, 2024 30(b)(6) Dep. Exhibit 1, at 6; Ex. 235, COB-Hodgson_0031967, at 10-12.

Further dispute for the reasons stated in Plaintiffs' Additional Material Facts ¶¶ 516-29, which Plaintiffs incorporate by reference.

> **<u>DEFENDANTS' RESPONSE:</u>  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 54. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**55.  Members of the Buffalo Police Department are not supposed to consider a motorist's race when making traffic stops. [*Id.*; Derenda Dep. 2 at 258:7-258-14, 312:10-312:18.]**

<u>Plaintiffs' Response:</u>  Admit that it is a well-established constitutional violation to consider a motorist's race when making traffic stops. Dispute that BPD practice conformed to constitutional requirements. The BPD Police Academy trained officers with an incorrect definition of biased policing. And within the BPD, officers received annual training which taught that officers do not engage in racial bias when traffic stops are supported by probable cause. *See* Ex. 102, Gennaco Report at 95-96; Ex. 236, COB287615 at 2; Ex. 16, Gramaglia Jan. 24, 2024 30(b)(6) Dep. at 20:22-23:4.

In addition, the BPD selected Checkpoint locations, targets motorists for multiple tinted windows tickets, and engages in pretextual policing based on race for the reasons stated in Plaintiffs' Response to Statement 54. The City's evidentiary support for the proposition also lacks foundation for the reasons stated in Plaintiffs' Response to Statement 54.

> **<u>DEFENDANTS' RESPONSE:</u>  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 55. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

56.     **In general, traffic stops can only be made by BPD officers for visible violations of the New York State Vehicle and Traffic Law. [*Id.*]**

<u>Plaintiffs' Response:</u>  Admit that this is an accurate description of BPD's constitutional mandate related to traffic stops. Dispute that the BPD applied this mandate at Checkpoints where every car was stopped without individualized suspicion of VTL violations. *See* Ex. 4, Brinkworth Mar. 16, 2022 Dep. at 157:19-158:3; Ex. 9, Derenda Jan. 23, 2024 30(b)(6) Dep. at 261:1-10; Ex. 6, Brown Nov. 6, 2023 Dep. at 223:6-224:11; Ex. 105, BPD MoP Ch. 8 § 10.5; Ex. 50, Young Oct. 26, 2022 Dep. at 52:12-16.

Further dispute for the reasons stated in Plaintiffs' Additional Material Facts ¶¶ 516-29, which Plaintiffs incorporate by reference.

> **<u>DEFENDANTS' RESPONSE:</u>  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 56. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

57.     **Officers of the Buffalo Police Department are not allowed to use race as a basis to stop a vehicle at a Checkpoint or in a routine traffic stop. [Derenda Dep. 2 at 258:7-258:14, 312:10-312:18.]**

Plaintiffs' Response:  Dispute for the reasons stated in Plaintiffs' Responses to Statements 54-56, which Plaintiffs incorporate by reference.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 57. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**61.    Evans admitted these violations were legitimate at the time she was ticketed for them. [*Id.*]**

Plaintiffs' Response:  Dispute. Plaintiff Evans testified that the seatbelt violation was not legitimate because she removed her seatbelt only *after* being stopped at the Checkpoint, in order to retrieve her license and insurance documents. The City's evidentiary support does not show that Plaintiff Evans admitted to driving without a seatbelt. ECF No. 252-38, Evans Dec. 15, 2022 Dep. at 81:18-82:15; Evans Decl. ¶ 12.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 61. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**63.    Bonds admitted that his inspection sticker was, in fact, expired when he received these tickets. [*Id.*]**

Plaintiffs' Response:   Admit with clarification that Plaintiff Bonds' vehicle was unlawfully ticketed while parked on private property at his home, Marine Drive Apartments, in a parking space for which he had a valid parking pass, where he left his vehicle because it was not drivable and he could not afford to repair it. ECF No. 252-39, Bonds Dec. 15, 2022 Dep. at 82:8-22, 84:17-85:3; ECF No. 252-3, Am. Compl. ¶¶ 330-37; Bonds Decl. ¶¶ 26- 30.

**DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 63. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

64.    **Shaketa Redden was ticketed for an expired inspection sticker and admitted that her inspection sticker was expired at the time she received the ticket for that infraction. [Compl. ¶ 351.]**

Plaintiffs' Response:  Admit with clarification that Plaintiff Redden was unaware that her inspection had lapsed the day before receiving the ticket. ECF No. 252-34, Redden Sept. 6, 2023 Dep. at 61:13-18; ECF No. 252-3, Am. Compl. ¶ 351.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 64. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

66.    **Simmons has since admitted that she had an expired inspection sticker when she received the ticket. [Compl. ¶ 246.]**

Plaintiffs' Response: Dispute. Plaintiff Simmons did not recall whether she had an expired inspection sticker when she received the ticket. Defendants cited the Amended Complaint, ¶ 246, as support but that paragraph states that Plaintiff Simmons "received a ticket for having an expired inspection sticker," not that she admitted to the sticker being expired. ECF No. 252-32, Simmons May 6, 2023 Dep. at 25:19-26:8.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 66. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

68.    **Evans, Simmons, Bonds, and Redden have adduced no evidence demonstrating that any officer took action against them based on their race. [*See generally*, Evans Dep., Bonds Dep, Redden Dep., Simmons Dep.]**

Plaintiffs' Response:  Dispute. Plaintiffs Evans, Simmons, Bonds, and Redden all endured BPD Checkpoints on the East Side of Buffalo, the locations of which were racially motivated. Each Plaintiff personally observed Checkpoints only in Black neighborhoods, never in non-minority neighborhoods, and felt racially targeted by the Checkpoints based on that observation. *See* Plaintiffs' Responses to Statements 10, 22, and 54, which Plaintiffs incorporate by reference; also Bonds Decl. ¶ 5; Evans Decl. ¶¶ 5, 16; Simmons Decl. ¶¶ 5, 11- 15, 18; Redden Decl. ¶¶ 4, 14.

BPD officers treated Plaintiff Evans disrespectfully during Checkpoint stops. They improperly searched her vehicle, questioned where she was going, and treated her like a criminal. Evans Decl. ¶ 16.

During Checkpoint stops, BPD officers improperly asked Plaintiff Simmons where she was going and used flashlights to peer into her vehicle. Plaintiff Simmons also witnessed BPD officers brutalizing and abusing other Black motorists at Checkpoints, including snatching them out of their cars and breaking the windows of their vehicles. Simmons Decl. ¶¶ 13- 15.

The BPD stopped Plaintiff Bonds and his son for no reason, interrogated them about where they were going, treated them like criminals, and issued Plaintiff Bonds a ticket for expired insurance even though Plaintiff Bonds showed them proof that he had renewed his insurance earlier that day. Plaintiff Bonds believed the stop was based on his race, his son's race and appearance, and the fact that he drove a Cadillac in a Black neighborhood. The BPD also repeatedly and unlawfully ticketed Bonds' car while it was parked at his BMHA residence. Plaintiff Bonds believed these tickets were racially motivated based on his observation that most residents of his housing complex were Black people and people of color, and other people of color in his housing complex also experienced excessive ticketing while parked in the BMHA lot. Bonds Decl. ¶¶ 6-17, 26-32.

At a Checkpoint, Plaintiff Redden observed that BPD officers only pulled over Black drivers, allowing white drivers to pass through. On another occasion, a BPD officer followed and stopped Plaintiff Redden after a vigil for Rafael Rivera, a man the BPD had killed. During the stop, the officer treated Plaintiff Redden disrespectfully, chuckling as he towed her vehicle. He issued her six tickets for an accidental traffic violation (the tickets were later dismissed). Plaintiff Redden believed the officer's rudeness and excessive ticketing were racially motivated. Redden Decl. ¶¶ 11, 14-23.

**DEFENDANTS' RESPONSE:** **Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 68. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

70. **Franklin admitted that her windows were tinted. [Franklin Dep., at 43:13-44:12.]**

Plaintiffs' Response:  Admit with clarification that Plaintiff Franklin's windows were lawfully tinted in connection with a medical condition, and the tickets she received were dismissed on that basis. Franklin Decl. ¶ 21; ECF No. 252-37, Franklin May 13, 2023 Dep. at 44:8-12

**DEFENDANTS' RESPONSE:** **Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph**

**70. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

**71.    Yeldon admitted that her windows were tinted. [Yeldon Dep., at 87:3-87:5.]**

Plaintiffs' Response:  Admit that Plaintiff Yeldon testified that the windows were lightly tinted but dispute that a tint level of 17%, which the officer testified at the BTVA hearing was the level he measured, is a violation of the VTL. Plaintiff Yeldon was driving a taxi owned by Cold Spring Cab Company and was not the owner of the vehicle. ECF No. 252- 3, Am. Compl. ¶¶ 271-81; ECF No. 252-31, Yeldon Dec. 13, 2022 Dep. at 80:7-20; Yeldon Decl. ¶¶ 13-16.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **71. It merely provides immaterial and unnecessary statements that should**
>
> **not be considered by this Court.**

**72.    Palmer admitted his windows were tinted. [Palmer Dep. at 65:10-65:21; 67:2-67:7; 112:11- 112:21]**

Plaintiffs' Response:  Admit with clarification that Plaintiff Palmer is a disabled veteran who tinted his windows for medical reasons related to his vision. Palmer Decl. ¶¶ 1, 8; ECF No. 252-35, Palmer Sept. 14, 2023 Dep. at 65:10-16.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **72. It merely provides immaterial and unnecessary statements that should**
>
> **not be considered by this Court.**

**74.    Yeldon, Franklin, and Palmer have adduced no evidence suggesting that any officer took action against them due to their race. [*See generally*, Yeldon Dep, Franklin Dep., Palmer Dep.]**

Plaintiffs' Response:  Dispute. Plaintiffs Yeldon, Franklin, and Palmer all received multiple tinted windows tickets in a single stop pursuant to the BPD's racially motivated policy and practice of subjecting Black and Latino drivers to such treatment. Yeldon Decl. ¶¶ 9- 11; Franklin Decl. ¶ 21; Palmer Decl. ¶¶ 10-12.

Plaintiff Yeldon received multiple tinted windows tickets while driving her taxi in a predominately white neighborhood. The officer did not use a tint meter and treated her in a "rude and demeaning" manner, telling her she was "lucky" to receive two tickets instead of four. He later testified that her vehicles had a 17% tint, which is not illegal. Yeldon Decl. ¶¶ 6-18; N.Y. Veh. & Traf. Law § 375 (McKinney 2024).

During Plaintiff Franklin's tinted window stop, the officer acted aggressively and seemed to be fishing for a reason to ticket her. He disregarded her explanation that she needed tints for medical reasons, forcing her to go to court to get the tickets dismissed. She felt degraded and treated like a criminal. Franklin Decl. ¶¶ 20-22. The BPD frequently ran Checkpoints outside of her home, causing her to pass through dozens of Checkpoints just to go in and out of her driveway. When she passed through Checkpoints, officers asked her intrusive questions, scrutinized the inside of her vehicle, and checked her passengers' identification. Plaintiff Franklin observed horrific abuse of Black motorists at Checkpoints, while white motorists were waved through, and she perceived the Checkpoints as a form of state-sponsored abuse of Black people. Franklin Decl. ¶¶ 3-18.

The BPD officers who issued multiple tinted windows tickets to Plaintiff Palmer asked him unwarranted questions that had nothing to do with traffic safety. Plaintiff Palmer later learned that other people in his community faced the same kind of ticketing and harassment as he did, which convinced him that the BPD targeted people of color like him. Palmer Decl. ¶¶ 10-11, 16.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph 74. It merely provides immaterial and unnecessary statements that should not be considered by this Court.**

**75.    De'Jon Hall never received a ticket from a Buffalo police officer or received any traffic related penalty for which he is bringing suit. Rather, Hall was briefly stopped at one Checkpoint and did not receive a ticket. [Sahasrabudhe Decl. Exhibit 40 (hereinafter "Hall Dep.") at 31:19-32:21.]**

Plaintiffs' Response:  Dispute in part. Plaintiff Hall received an unjustified, racially motivated ticket from a BPD officer when parked in the Pearl Street Brewery parking lot, where he had briefly stopped to send a text message. The officer looked into the vehicle and ascertained his race before issuing the ticket. Hall Decl. ¶¶ 26-27. Admit that Hall does not seek monetary damages for this incident or for his experience at the Checkpoint.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call into question, or dispute the City's factual proposition set forth in Paragraph**

**75. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

**77.** **Hall has adduced no evidence of any Buffalo police officer taking action against him because of his race. [*See generally* Hall Dep.]**

Plaintiffs' Response:  Dispute. Plaintiff Hall endured a BPD Checkpoint on the East Side of Buffalo, the location of which was racially motivated. Hall also received an unjustified, racially motivated ticket while parked at the Pearl Street Brewery. *See* Plaintiffs' Responses to Statements 10, 22, 54, and 75, which Plaintiffs incorporate by reference.

In February 2025, two white BPD officers subjected Plaintiff Hall to an unjustified, pretextual traffic stop. BPD officers first saw Hall's teenage brother, who is Black and wore a hoodie, get out of Hall's car and go into the corner store. The officers then followed Hall for several blocks before pulling him over for no reason. An officer claimed Hall failed to signal, but Hall had been traveling straight and had no need to signal. The officer ran Hall's license and then let him go without issuing a ticket or a stop receipt. Hall believes the true reason for the stop was racial profiling, based on his and his teenage brother's race and the way that his brother dressed. Hall Decl. ¶¶ 24-25.

    **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**77. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

**79.** **Sarmiento admits that these tickets were for legitimate violations. [Sarmiento Dep., at 45:16-45:18; 46:17-45:22.]**

Plaintiffs' Response:  Admit that Plaintiff Sarmiento acknowledged having an expired inspection sticker. Dispute that the tickets were for "legitimate violations." Plaintiff Sarmiento's vehicle was parked on private property at her residence, Marine Drive Apartments, in her parking space with a valid parking pass. ECF 252-33, Sarmiento Dec. 13, 2022 Dep. at 49:10-16; ECF No. 252-3 ¶¶ 361, 363-65; Sarmiento Decl. ¶¶ 11-17.

    **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**

**into question, or dispute the City's factual proposition set forth in Paragraph**

**79. It merely provides immaterial and unnecessary statements that should**

**not be considered by this Court.**

81.    **Sarmiento has adduced no evidence that a Buffalo police officer took action against her due to her race. [*See generally*, Sarmiento Dep.]**

Plaintiffs' Response:  Dispute. Plaintiff Sarmiento was targeted for ticketing as a BMHA resident because "the BPD tried to get money from the Black residents in Buffalo." Plaintiff Sarmiento only saw Black people when she went to BTVA traffic court. In addition, the BPD took action against Plaintiff Sarmiento and other Black people in Buffalo by operating Checkpoints in Black neighborhoods. Sarmiento Decl. ¶¶ 6-9, 17-18; Bonds Decl. ¶¶ 5-7; Yeldon Decl. ¶ 5.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **81. It merely provides immaterial and unnecessary statements that should**
>
> **not be considered by this Court.**

82.    **There is no evidence that any of the traffic enforcement actions concerning which Plaintiffs complain were carried out pursuant to a federally funded program. [*See* Sahasrabudhe Decl., Ex. 41; Ex. 40; Ex. 39 at pp. 16, 18.]**

Plaintiffs' Response:  Dispute. The BPD has received federal funds from the Department of Justice from at least 2015 to the present. These grants specifically funded the BPD's traffic enforcement activities. For example, the BPD received Justice Assistance Grants ("JAG") from the U.S. Department of Justice. The BPD used JAG funds for "increased directed/tactical patrols targeting high risk crime areas," specifically "assigning officers on overtime to directed patrol activities in 'hot spot' and high crime areas to investigate not only suspicious activities, but to spotlight enforcement strategies on guns, drugs, gangs, and other violent crime." The assigned officers included members of the Strike Force and Housing units. Former Commissioner Lockwood testified that both the Strike Force Unit and the Housing Unit engaged in pretextual traffic stop tactics of conducting "traffic stops for violations like seatbelt and tinted window so that [officers] can check for warrants and search vehicles and seize guns and inhibit the movement of suspected gang members." Ex. 153, Defs.' Mar. 18, 2024 Am. Response to Pls. First Set of RFAs, at 16 (Request No. 40); Ex. 238, COB_INC_00000044, at 1, 7-8; Ex. 239, COB_INC_00000041 at 6; Ex. 240, COB_INC_00000038, at 12-13; Ex. 22, Lockwood Aug. 10, 2023 Dep. at 81:3-23.

> **DEFENDANTS' RESPONSE:  Plaintiffs' response does not contradict, call**
>
> **into question, or dispute the City's factual proposition set forth in Paragraph**
>
> **82. It merely provides immaterial and unnecessary statements that should**
>
> **not be considered by this Court. Plaintiffs' cited evidence only shows that the**

**City receives federal funding, but not that challenged traffic enforcement**

**actions were operated pursuant to a federally funded program.**

Dated:        Buffalo, New York
                August 1, 2025

**HODGSON RUSS LLP**

*Attorneys for Defendants City of Buffalo, NY, Byron B. Brown, Byron C. Lockwood, Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, and Unknown Officers 1-20*

By:  */s/ Peter A. Sahasrabudhe*
         Hugh M. Russ III, Esq.
         Peter Sahasrabudhe, Esq.
         Cheyenne N. Freely, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000
hruss@hodgsonruss.com
psahasra@hodgsonruss.com
cfreely@hodgsonruss.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2025, the above Response to Plaintiffs'

Response to Defendants' Statement Of Undisputed Facts was filed with the Clerk of the Court

and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's

Local Rules, and/or the Western District's Case Filing Rules & Instructions upon all counsel

registered through the ECF System.

*/s/ Peter A. Sahasrabudhe*

Peter A. Sahasrabudhe
