UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

BLACK LOVE RESISTS IN THE RUST, *et al.*,
individually and on behalf of a class of all others
similarly situated,

               Plaintiffs,

      v.

CITY OF BUFFALO, N.Y., *et al.*,

               Defendants.

No. 1:18-cv-00719-CCR

---

### PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGEMENT

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

I.   THE MATERIAL FACTS NECESSARY TO PLAINTIFFS' MOTION
     ARE UNDISPUTED...........................................................................................2

     A.   The Undisputed Evidence Shows that the Checkpoints
          Served an Ordinary Law Enforcement Purpose—VTL
          Enforcement...........................................................................................2

     B.   The Undisputed Evidence Confirms that the Checkpoint
          Program is an Ongoing Municipal Policy of Suspicionless
          Traffic Stops, Staggering in Breadth and Scope.....................................3

     C.   The City's Attempt to Manufacture Factual Disputes Fails
          Under Rule 56........................................................................................4

II.  THE CITY'S LEGAL ARGUMENT FAILS TO ESTABLISH THAT
     THE CHECKPOINTS SERVE SPECIAL NEEDS.......................................................5

     A.   Established Precedent Bars Treating Ordinary Law
          Enforcement Like a Special Need. ..........................................................5

     B.   The City Incorrectly Seeks to Expand the Narrow Special
          Needs Doctrine. .....................................................................................5

     C.   The City Fails to Identify a Precedent for the BPD
          Checkpoint Program. .............................................................................7

III. THE CITY'S CONCLUSORY REASONABLENESS ARGUMENT IS
     IRRELEVANT TO THIS MOTION.......................................................................10

CONCLUSION......................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**

*Association of Independent School of Greater Washington v. D.C.*,
    311 F. Supp. 3d 262 (D.D.C. 2018)......................................................................7

*Board of Education of Pottawatomie County v. Earls*,
    536 U.S. 822 (2002).............................................................................................9

*Bourgeois v. Peters*,
    387 F.3d 1303 (11th Cir. 2004) ...........................................................................7

*Cassidy v. Chertoff*,
    471 F.3d 67 (2d Cir. 2006) ..................................................................................6

*Chandler v. Miller*,
    520 U.S. 30 (1997)...............................................................................................6

*City of Indianapolis v. Edmond*,
    531 U.S. 32 (2000)...............................................................................5, 6, 8, 10

*City of Los Angeles, Calif. v. Patel*,
    576 U.S. 409 (2015)..............................................................................................6

*Ferguson v. City of Charleston*,
    532 U.S. 67 (2001)...............................................................................................6

*Jones v. County of Suffolk*,
    936 F.3d 108 (2d Cir. 2019) .............................................................................6, 7

*MacWade v. Kelly*,
    460 F.3d 260 (2d Cir. 2006) ................................................................................7

*McLennon v. City of New York*,
    171 F. Supp. 3d 69 (E.D.N.Y. 2016) ...................................................................7

*Salahuddin v. Goord*,
    467 F.3d 263 (2d. Cir. 2006) ...............................................................................4

*United States v. Fraire*,
    575 F.3d 929 (9th Cir. 2009) ...............................................................................9

*United States v. Henson*,
    351 F. App'x 818 (4th Cir. 2009) ........................................................................8

*United States v. Johnson*,
    122 F. Supp. 3d 272 (M.D.N.C. 2015) ................................................................9

*United States v. Lifshitz*,
    369 F.3d 173 (2d Cir. 2004) ................................................................................6

*United States v. Regan*,
    218 F. App'x 902 (11th Cir. 2007) ......................................................................8

*United States v. Turner*,
    2020 WL 733187 (M.D. Ala. Jan. 27, 2020) .......................................................9

*Wagner v. Sprague*,
    489 F. App'x 500 (2d Cir. 2012) ..........................................................................9

*Wagner v. Swarts*,
    827 F. Supp. 2d 85 (N.D.N.Y. 2011) ....................................................................9

**INTRODUCTION**

As set forth in Plaintiffs' Motion for Partial Summary Judgment (ECF 253-1) ("PMSJ"), the City's Checkpoint Program is an unconstitutional program of suspicionless traffic stops and seizures, adopted and approved as municipal policy, that has unlawfully targeted motorists in Black and Latino neighborhoods for half a decade. PMSJ at 7.[1] While the Checkpoint Program's true programmatic purpose is general crime control[2] as evidenced by—among other things, its use of crime statistics as its only success metric (DSMF ¶¶ 68–69)—even the pretextual justification proffered by the City is an impermissible law enforcement purpose: broad and indiscriminate New York Vehicle Traffic Law ("VTL") enforcement. PMSJ at 8–18; DSMF ¶¶ 42, 44, 47–56.

The City's Opposition and Response to Plaintiffs' Rule 56(A) Statement confirms that the material facts relevant to Plaintiffs' Summary Judgment Motion remain undisputed. The City even admits that under the Checkpoint Program "vehicle and traffic safety" and "enforcement of the VTL" are "one and the same." Opp'n at 3. Accordingly, there is no *factual* dispute that the Checkpoint Program serves only an ordinary law enforcement purpose: expansive VTL enforcement.

The Parties' only dispute concerns the import of that undisputed fact under relevant caselaw and whether the Checkpoint Program violates the Fourth Amendment *as a matter of law*. FRCP 56(a). For the reasons set forth below and in Plaintiffs' prior submissions, it does. PSMJ at

---

[1] As it appears throughout, "Opp'n" refers to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (ECF 266), "DSMF" refers to their Response to Plaintiffs' Rule 56(A) Statement (ECF 267), and "Ex." refers to Plaintiffs' Summary Judgment exhibits submitted pursuant to the Declaration of Philip Irwin (ECF 254), filed as ECF 254-1 through ECF 254-32. Unless otherwise indicated, all pincites refer to page numbers that appear in document footers, not headers.

[2] *See* Plaintiffs' Opposition to Defendants' Summary Judgment Motion (ECF 266) ("Pls.' SJ Opp'n") at 8–18, and Plaintiffs' Statement of Additional Material Facts (ECF 267) ¶¶ 6–15, 18–35, 88–113, filed under seal.

8–20. The City argues that the Checkpoint Program is constitutional because it purportedly has a traffic safety purpose. But simply invoking traffic safety does not suffice to show a special need, particularly when, as here, the purported traffic safety purpose boils down to an indisputably ordinary law enforcement purpose–enforcing the VTL. Indeed, courts are clear that the special needs doctrine is a narrow and closely guarded exception to the requirement of individualized suspicion. The City's broad, five-year-long Checkpoint Program is unparalleled in the special needs caselaw. And, if permitted, it would provide a blueprint for other municipalities to enact near limitless "traffic safety" or "traffic law enforcement" checkpoint programs that would threaten to swallow the special needs exception whole. Accordingly, Plaintiffs' motion should be granted.

## I.    The Material Facts Necessary to Plaintiffs' Motion Are Undisputed.

The City does not present any evidence creating a factual dispute. Far from it, the City concedes the critical facts supporting Plaintiffs' argument, including that the Checkpoints served the ordinary law enforcement purpose of VTL enforcement and were broad in breadth and scope.

### A.    The Undisputed Evidence Shows that the Checkpoints Served an Ordinary Law Enforcement Purpose—VTL Enforcement.

The undisputed evidence demonstrating that the Checkpoint Program served an ordinary law enforcement purpose, not special "traffic safety" needs, includes the City's: (1) contention interrogatory response (DSMF ¶ 42);[3] (2) policy documents, which state that the purpose of BPD checkpoints was "to stop motorists and *to methodically evaluate their compliance with the law*" (DSMF ¶ 49) (citing Ex. 18, BPD MOP Ch. 8 § 10.5); (3) binding 30(b)(6) testimony that the term

---

[3] While the City accuses Plaintiffs of engaging in "a deliberately selective quotation" of their contention interrogatory response (Opp'n at 4), Plaintiffs' Summary Judgment Motion quoted it accurately in full. *See* PMSJ at 5; DSMF ¶ 42 (admitting same).

2

"traffic safety" means nothing more than "enforcement of the New York State Vehicle and Traffic Law or VTL" (DSMF ¶ 44); (4) binding judicial admissions that "vehicle and traffic safety, *through the proactive enforcement of the VTL*, was the primary purpose of the Checkpoints" (Opp'n at 5) (emphasis added), and that for the BPD, "enforcement of the VTL" and "vehicle and traffic safety" are one and the same, and go "hand and (*sic*) hand" (Opp'n at 3); *and* (5) the City's admission that VTL enforcement is part of BPD officers' ordinary law enforcement duties (DSMF ¶ 54).

Although the City accuses Plaintiffs of offering "a strained reading" of the Checkpoint Program's purported vehicle and traffic safety purpose, it cites no evidence to suggest its VTL enforcement aims are anything less sweeping than Plaintiffs contend. *See* Opp'n 4-5; DSMF ¶¶ 43, 45, 46 (failing to define the terms any more narrowly than the City's 30(b)(6) representative).

## B. The Undisputed Evidence Confirms that the Checkpoint Program is an Ongoing Municipal Policy of Suspicionless Traffic Stops, Staggering in Breadth and Scope.

The City also admits: the Checkpoint Program was a municipal program of suspicionless traffic stops (DSMF ¶¶ 1–5, 19, 22–24); Checkpoints took place almost daily; more than 1,600 Checkpoints were erected over a five-year period (*id.*); the BPD set up Checkpoints in a manner that made them difficult for motorists to avoid and pursued motorists who attempted to bypass them (DSMF ¶¶ 20–21); and the BPD ultimately stopped thousands of motorists including Plaintiffs *(*DSMF ¶¶ 4, 7–10). The City further admits key facts about the Checkpoint Program's operations, including the Strike Force and Housing Unit's involvement (DSMF ¶¶ 30, 32–34); that it was **not** the policy of the BPD to establish Checkpoint locations based on traffic safety data or complaints (and the City failed to proffer **any** evidence showing that traffic safety considerations ever drove checkpoint locations) (DSMF ¶¶ 59–65); that the success of the Checkpoint Program was exclusively measured in terms of its impact on crime (DSMF ¶¶ 68–69); that BPD officers were directed to "impound as many vehicles as legally possible" and "make arrests and write traffic

summonses as many as possible" at Checkpoints, all while Commissioner Derenda scrutinized

their "production" (DSMF ¶¶ 29, 25–38); and that the Checkpoint Program is ***still authorized*** by

the BPD Manual of Procedures (DSMF ¶ 72).

The City also concedes municipal liability by failing to rebut Plaintiffs' *Monell* argument.

Indeed, no rebuttal is possible given Commissioner Derenda's undisputed involvement in creating

and approving the Program (DSMF ¶¶ 1, 11–13, 15) and its codification in the BPD Manual

(DSMF ¶¶ 48, 72)*. See* PSMJ at 20–22.[4]

### C. The City's Attempt to Manufacture Factual Disputes Fails Under Rule 56.

Although there are few places where the City quibbles with facts not dispositive to Plain-

tiffs' Fourth Amendment claim,[5] it otherwise "disputes" Plaintiffs' well-supported factual asser-

tions without presenting any evidence whatsoever, even though Rule 56(c)(1)(B) clearly does not

apply. *See* DSMF ¶¶ 6, 14, 18, 39, 40, 58, 60, 64–68.[6] All such allegations should be deemed

admitted under Rule 56(e)(2). *Id.* (improperly disputed facts can be deemed "undisputed for pur-

poses of the motion"); *Salahuddin*, 467 F.3d at 278 (same).

---

[4] Although the City questions whether Derenda "made final policy" (DSMJ ¶ 14), they only do so on grounds that the statement is vague and do not offer any citations to contrary evidence. That is not sufficient to create a factual dispute. *Salahuddin v. Goord*, 467 F.3d 263, 278 (2d. Cir. 2006).

[5] *See* DSMF ¶ 17 (admitting that Brown supported the Checkpoint Program, but not that he approved it); DSMF ¶¶ 31, 34 (restating the mission of the Strike Force and Housing Units, but admitting their crime control focus); DSMF ¶¶ 26, 28 (modifying wording without disputing facts); DSMF ¶¶ 48, 71 (admitting the Checkpoint Program is still authorized and stating only that it will not be reinstated).

[6] The City cannot rely on Rule 56(c)(1)(B), because every time it asserts "the record citations do not support the stated proposition," its allegation is patently incorrect. *Compare, e.g.*, DSMF ¶ 65 ("The City cannot identify any instances where reports of speeding or DWI violations were actually used to determine a Checkpoint location"), *with* Ex. 14, ECF 254-14 at Response 7 ("Defendants further admit that they cannot identify a specific instance where a checkpoint location was chosen based on data related to the location of speeding violations.") *and* Response 9 ("Defendants further admit that they cannot specially identify any Strike Force or Housing Unit checkpoint which was conducted based on DWI data"); *compare also* DSMF ¶ 66 *with* Ex. 5 *and* Derenda Dep 1 at 96:3–97:2.

II.    **The City's Legal Argument Fails to Establish that the Checkpoints Serve Special Needs.**

The City's core argument that "vehicle and traffic safety" can constitute a special need under certain circumstances (Opp'n. at 6–13) fails to counter Plaintiffs' undisputed evidentiary showing that the BPD Checkpoint Program at issue in this case did *not* serve "special" needs. Rather, the Checkpoint Program's overbroad law enforcement aim sets it well apart from the limited scope traffic safety checkpoints that courts have sanctioned under the "special needs" doctrine. Nothing the City puts forth disproves this argument.

A.    **Established Precedent Bars Treating Ordinary Law Enforcement Like a Special Need.**

The City states with a hint of incredulity that "[a] law enforcement officer's job is to enforce the law . . . Plaintiffs would require officers to act beyond that job description, and the law, in order to satisfy the special needs doctrine." Opp'n at 7. Yet, incredulity aside, that is *precisely* what the Supreme Court has required. In *City of Indianapolis v. Edmond*, the Supreme Court stated the doctrine only applies to "special needs, **beyond** the normal need for law enforcement," and that police departments may *not* "establish checkpoints for virtually any purpose so long as they also include[] a license or sobriety check." 531 U.S. 32, 37, 46 (2000) (emphasis added). Accordingly, simply repeating the mantra of "vehicle and traffic safety," as the City does in its brief, does not turn ordinary VTL enforcement into something "special" that justifies eliminating Fourth Amendment safeguards. After all, enforcing the VTL *is* law enforcement. DSMF ¶ 56.

B.    **The City Incorrectly Seeks to Expand the Narrow Special Needs Doctrine.**

Contrary to the City's argument (Opp'n at 10–11, 16–17), the Supreme Court has insisted time and again that the special needs doctrine be construed narrowly to prevent senseless

governmental intrusions.[7] *Edmond*, 531 U.S. at 41 ("[O]ur checkpoint cases have recognized *only limited exceptions* to the general rule that a seizure must be accompanied by some measure of individualized suspicion.") (emphasis added); *Chandler v. Miller*, 520 U.S. 305, 309 (1997) (calling the doctrine a "closely–guarded" category); *Ferguson v. City of Charleston*, 532 U.S. 67, 79 (2001) (a "special need" is one "divorced from the State's general interest in law enforcement"); *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 420, 424–25 (2015) (adopting *Edmond* in the context of administrative searches but cautioning against abuse of the doctrine). The Second Circuit has affirmed these principles as well. *Jones v. Cnty. of Suffolk*, 936 F.3d 108, 115 (2d Cir. 2019) (doctrine only applies in "exceptional circumstances"); *Cassidy v. Chertoff*, 471 F.3d 67, 81 (2d Cir. 2006) (special needs "must not be isomorphic with law enforcement needs, but rather go beyond them"); *United States v. Lifshitz*, 369 F.3d 173 (2d Cir. 2004) (rejecting "implausible or overbroad assertions of 'special needs'").

*Chandler* and *Ferguson* also go to great lengths to explain why law enforcement goals cannot be disguised as "special needs" based on their ultimate objective, noting that this would immunize virtually all law enforcement activity from the Fourth Amendment's ordinary requirements. PMSJ at 13–15 (discussing cases). While the City attempts to dismiss *Ferguson* and *Chandler* as inapposite because they are "drug testing" cases, (Opp'n at 10–11), and *Patel* because it is an "administrative search" case, their holdings cannot be so confined (Opp'n at 17–18). Each of these cases has been broadly relied upon outside the contexts they arose in the Second Circuit

---

[7] Contrary to yet another of the City's straw-man arguments, Plaintiffs have not argued that the special needs doctrine is limited to the specific factual circumstances at issue in *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976), *Mich. Dep't of State Police v. Sitz*, 496 U.S. 444 (1990), and *Illinois v. Lidster*, 540 U.S. 419 (2004). Opp'n at 16–17. But the fact that courts can recognize additional special needs as they arise does not render the BPD Checkpoint Program constitutional given its vast scope and indiscriminate law enforcement purpose.

and elsewhere—including special needs cases involving checkpoints. *See, e.g.*, *Jones*, 936 F.3d at 115–16 (citing *Ferguson* and *Chandler* outside of drug context, and adopting *Chandler*'s requirement that special needs be "substantial" at the circuit level); *MacWade v. Kelly*, 460 F.3d 260, 269 (2d Cir. 2006) (applying *Ferguson* and *Chandler* in the context of subway checkpoints); *McLennon v. City of New York,* 171 F. Supp. 3d 69, 84–85 (E.D.N.Y. 2016) (citing *Ferguson* and *Chandler* and applying *Ferguson*'s "immediate objective" test in the context of vehicle checkpoints); *Ass'n of Indep. Sch. of Greater Washington v. D.C*., 311 F. Supp. 3d 262, 275 (D.D.C. 2018), *amended by* 317 F. Supp. 3d 355 (D.D.C. 2018) (applying *Patel* outside of the context of administrative searches).

Faithfully applying special needs cases like *Ferguson*—which is precisely what the Eleventh Circuit did in *Bourgeois v. Peters*, 387 F.3d 1303, 1313 (11th Cir. 2004)—does not require "upend[ing] [a] substantial body of case law holding that vehicle and traffic safety checkpoints serve a permissible 'special need.'" Opp'n at 12. It merely precludes checkpoint programs like the BPD's own, that have a broad and indiscriminate law enforcement aim, for which traffic safety is at best an afterthought, rather than the primary programmatic purpose. *See* Sec. I(A)–(B).

C.  **The City Fails to Identify a Precedent for the BPD Checkpoint Program.**

The City also argues that the Checkpoint Program is constitutionally permissible by comparing it to other "traffic safety" checkpoints that courts have upheld. However, these analogies quickly unravel. For instance, the City cites a handful of cases for the unremarkable proposition that license and registration checkpoints may be permissible under the special needs doctrine. Opp'n at 6 & 6 n.4 (collecting cases). But these cases do not and cannot establish that the BPD Checkpoint program—which dwarfs the approved programs in its breadth, scope, and impact—is constitutionally permissible.

Moreover, the City's checkpoint cases showcase a "close connection to roadway safety" utterly lacking here. *Edmond*, 531 U.S. at 43. For instance, *United States v. Henson*, (Opp'n at 6), concerned a *single* license and registration checkpoint conducted in a "primarily commercial area that had generated significant complaints and traffic violations," as part of a patrol initiative focused on "areas defined by traffic violations or community complaints." 351 F. App'x 818, 819–21 (4th Cir. 2009). *United States v. Regan*, (Opp'n at 5–6, 13), upheld a *single* checkpoint established "to respond to complaints of motorists running [a] four-way intersection . . . plagued with intoxicated drivers." 218 F. App'x 902, 904 (11th Cir. 2007). *Regan*'s reference to the checkpoints "enforc[ing] compliance with general traffic laws" is also far narrower than the City suggests, since it merely referred to their mission of stopping motorists from running stop signs at a single intersection. *Id.*; Opp'n at 4. And *United States v. Bernacet* similarly involved a *single* checkpoint at an "accident prone location," the legality of which the defendant did not even question. 724 F.3d 269, 272–73 (2d Cir. 2013).

In contrast, the BPD Checkpoint Program had no empirical or traffic safety justification *whatsoever*. DSMF ¶¶ 57, 59, 61–63, 68–69; Opp'n at 9. Not only has the City failed to produce a single shred of evidence justifying the need for the Checkpoint Program, *id.*, the "evidence" it cites to suggest that citizen complaints motivated the Checkpoint Program or Checkpoint locations mischaracterizes witness testimony.[8] Far from holding such data to be "irrelevant" to the special needs inquiry like the City suggests, (Opp'n at 8), *Board of Education of Pottawatomie County v.*

---

[8] *Compare* ECF 252-11 at 57:4–58:21 (cited at Opp'n at 9) (discussing the alleged impetus for the Strike Force *only*), *with* Pls. SJ Opp'n Ex. 6, Brown Dep. at 71:10–19, 99:2–12 (retracting the testimony as inaccurate), *and* ECF 252-12 at 96:3–97:2 (cited at Opp'n at 9) (discussing Mobile Response Unit ("MRU") checkpoints established at an unspecified date, not the Checkpoint Program at issue here). The City also cites ECF 252-11 at 15:15–22, but this testimony only concerns Mayor Brown's supervisory duties over the BPD and BTVA.

*Earls* explains that empirical evidence "shore[s] up an assertion of special need," even if it is not necessary to establish validity in *all* cases. 536 U.S. 822, 835 (2002). In *United States v. Fraire,* empirical data was not needed because "testimony established there was a significant poaching problem within the park" that the checkpoints were created to thwart. 575 F.3d 929, 934 (9th Cir. 2009). No comparable evidence exists here.

Similarly, *United States v. Turner*, 2020 WL 733187 (M.D. Ala. Jan. 27, 2020), contains no language suggesting that broad VTL enforcement and constitutionally–permissible traffic safety checkpoints are one and the same. Opp'n at 3. Instead, it approved of checkpoints that took place once in a year in an accident-prone location and served a handful of enumerated purposes, *Turner*, 2020 WL 733187, at *1, *4, none of which was to "impound as many vehicles as legally possible" and "make arrests and write traffic summons as many as possible," while using crime statistics, not traffic safety studies, to measure the Checkpoints' success. DSMF ¶¶ 29, 49, 68–69. The same is true of *United States v. Johnson*, 122 F. Supp. 3d 272, 375 (M.D.N.C. 2015), which involved checkpoints "specifically checking for licenses, vehicle registrations, and proof of insurance," and only addressed whether the checkpoints unlawfully targeted Hispanics, not whether they served an impermissible law enforcement purpose. *Id.* at 372.

Finally, the City's reliance on *Wagner* is still misplaced. *Wagner v. Sprague*, 827 F. Supp. 2d 85 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Swarts*, 489 F. App'x 500 (2d Cir. 2012). The 17 checkpoints sustained were focused *only* on motorcycles, and their purpose was to "detect safety violations and ensure proper registration and compliance with New York licensing requirements." Opp'n at 5. It was not to "stop motorists and to methodically evaluate their compliance with the law," which the City acknowledge contains more than 900 provisions. DSMF ¶¶ 49–50. In emphasizing that motorists were issued both traffic and non–traffic tickets at the *Wagner*

checkpoints (Opp'n at 14), the City also attacks a straw man: Plaintiffs have argued that the Checkpoint Program is invalid because its primary purpose was an improperly broad law enforcement purpose, *not* because non-traffic citations were issued.

### III.    The City's Conclusory Reasonableness Argument Is Irrelevant to this Motion.

Plaintiffs did not brief the special needs balancing test in their motion because the absence of a special need renders the Checkpoint Program unconstitutional irrespective of the balancing test. PMSJ at 10 n.2 ("The balancing test is beyond the scope of this motion because Plaintiffs seek summary judgment based on the invalidity of the asserted special need."); *Edmond*, 531 U.S. at 46–48 (courts do not reach the reasonableness test if defendants cannot demonstrate a special need). The City's argument on the balancing test and its criticism that Plaintiffs "bypass" the test (Opp'n at 14) is therefore irrelevant to this motion.[9]

**CONCLUSION**

The record leaves no genuine dispute that the Checkpoint Program was a municipal policy advancing ordinary law enforcement goals and not special needs. Accordingly, Plaintiffs' Motion for Partial Summary Judgment Against the City of Buffalo should be GRANTED.

---

[9] In any event, the City's conclusory and unsupported argument on the balancing test is incorrect. As Plaintiffs' opposition to Defendants' Summary Judgment Motion explains, given the Checkpoint Program's focused targeting of Black and Latino motorists, the "time tax" it imposed on them while driving to and from school, work and church, and the way it stoked fear while burdening their right to travel, the Checkpoint Program cannot pass the special needs balancing test. Pls.' Opp'n at 18–25.

Dated: August 1, 2025

Respectfully submitted,

A. Chinyere Ezie
Baher Azmy
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614–6464
bazmy@ccrjustice.org
cezie@ccrjustice.org

Claudia Wilner
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004
(212) 633–6967
wilner@nclej.org

Matthew A. Parham
WESTERN NEW YORK LAW CENTER
37 Franklin Street, 2nd Floor
Buffalo, NY 14202
(716) 828–8422
mparham@wnylc.net

Philip Irwin (*pro hac vice*)
Jordan S. Joachim (*pro hac vice*)
Christine Nelson (*pro hac vice*)
Andrew Timmick (*pro hac vice*)
COVINGTON & BURLING, LLP
620 Eighth Ave., Suite 4029
New York, NY 10018
212–841–1000
pirwin@cov.com
jjoachim@cov.com
cnelson@cov.com
atimmick@cov.com

*Attorneys for Plaintiffs and
Proposed Intervenors*

11

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2025, the foregoing document and accompanying motion papers were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Case Filing Rules & Instructions upon all counsel registered through the ECF System.

*/s/ Jordan S. Joachim*