UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

BLACK LOVE RESISTS IN THE RUST by and
through its Co-Directors Natasha Soto and Shaketa
Redden and on behalf of its members; DORETHEA
FRANKLIN; TANIQUA SIMMONS; DE'JON HALL;
JOSEPH BONDS; CHARLES PALMER; SHIRLEY
SARMIENTO; EBONY YELDON; and JANE DOE,
individually and on behalf of a class of all others
similarly situated;

                          Plaintiffs,


        v.                                          Civil No.: 1:18-cv-00719-CCR


CITY OF BUFFALO, NY; BYRON B. BROWN,
Mayor of the City of Buffalo, in his individual and
official capacities; BYRON C. LOCKWOOD,
Commissioner of the Buffalo Police Department, in
his individual and official capacities; DANIEL DERENDA,
former Commissioner of the Buffalo Police Department,
in his individual capacity; AARON YOUNG, KEVIN
BRINKWORTH, PHILIP SERAFINI, ROBBIN
THOMAS, UNKNOWN SUPERVISORY
PERSONNEL 1-10, UNKNOWN OFFICERS 1-20,
each officers of the Buffalo Police Department, in their
individual capacities.

                          Defendants.

───────────────────────────────

## <u>CITY OF BUFFALO DEFENDANTS'</u>
## <u>MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'</u>
## <u>MOTIONS TO RECONSIDER AND INTERVENE</u>

**HODGSON RUSS LLP**
*Attorneys for Defendants City of Buffalo, NY, Byron B. Brown, Byron C. Lockwood, Daniel Derenda, Aaron Young, Kevin Brinkworth, Philip Serafini, Robbin Thomas, Unknown Supervisory Personnel 1-10, and Unknown Officers 1-20*
Hugh M. Russ III, Esq.
Peter Sahasrabudhe, Esq.
Cheyenne N. Freely, Esq.
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000
*hruss@hodgsonruss.com*
*psahasra@hodgsonruss.com*
*cfreely@hodgsonruss.com*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .........................................................................................................1

     A.     RECONSIDERATION ..............................................................................1

     B.     INTERVENTION ....................................................................................2

ARGUMENT ..............................................................................................................2

     POINT I.     PLAINTIFFS DELIBERATELY MISCHARACTERIZE THE
                    COURT'S CLASS CERTIFICATION DECISION. ...................................2

     POINT II.     THE LAW IS CLEAR; RECONSIDERATION IS
                    DISFAVORED. THE COURT SHOULD NOT RECONSIDER
                    ITS ORDER HERE ...................................................................................4

     POINT III.     INTERVENTION IS NOT APPROPRIATE HERE. ...............................10

     POINT IV.     THE COURT SHOULD NOT PERMIT INTERVENTION ....................12

CONCLUSION ...........................................................................................................15

## TABLE OF AUTHORITIES

PAGE

**Federal Cases**

*Ahmad v. Int'l Business Machines Corp.*,
　2013 WL 12221829 (D. Vt. Mar. 28, 2013) ................................................................. 6, 7

*Ala. Legis. Black Caucus v. Alabama*,
　575 U.S. 254 (2015) ................................................................................................ 11

*AM Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*,
　60 F.4th 16 (2d Cir. 2023) ........................................................................................ 3

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
　250 F.3d 171 (2d Cir. 2001) ..................................................................................... 14

*Citizens Against Casino Gambling in Erie Cnty. v. Hogen*,
　704 F. Supp. 2d 269 (W.D.N.Y. 2010) ..................................................................... 14

*First State Ins. Co. v. Ferguson Enters., Inc.*,
　2019 WL 2521838 (D. Conn. June 18, 2019) ............................................................ 6, 7

*Jobie O. v. Spitzer*,
　2007 WL 4302921 (S.D.N.Y. Dec. 5, 2007) .............................................................. 6

*Kamdem-Ouaffo v. Pepsico, Inc.*,
　314 F.R.D. 130 (S.D.N.Y. 2016) ............................................................................... 13

*Kopperl v. Bain*,
　2016 WL 310719 (D. Conn. Jan. 26, 2016) ............................................................... 7, 8

*Leslie v. Starbucks Corp.*,
　2022 WL 5434278 (W.D.N.Y. 2022) ........................................................................ 12, 13

*Long Island Trucking v. Brooks Pharm.*,
　219 F.R.D. 53 (E.D.N.Y. 2003) ................................................................................ 14

*Lyons v. City of Los Angeles*,
　461 U.S. 95 (1983) .................................................................................................... 9

*Neubecker v. New York State*,
　387 F. Supp. 3d 302 (W.D.N.Y. 2019) ..................................................................... 4

*New Pac. Overseas Grp. (USA) Inc. v. Excal Intern. Dev. Corp.*,
　2000 WL 377513 (S.D.N.Y. Apr. 12, 2000) ............................................................. 6

*Peregrine Myanmar Ltd v. Segal*,
　89 F.3d 41 (2d Cir. 1996) ......................................................................................... 10

ii

### TABLE OF AUTHORITIES - cont'd

PAGE

*Seils v. Rochester City Sch. Dist.*,
199 F.R.D. 506 (W.D.N.Y. 2001) ................................................. 14

*Shain v. Ellison*,
356 F.3d 211 (2d Cir. 2004) ......................................................... 9

*Sheppard v. Phoenix*,
1998 WL 397846 (S.D.N.Y. July 16, 1998) ............................... 15

*Shrader v. CSX Transp. Inc.*,
70 F.3d 255 (2d Cir. 1995) ............................................................ 4

*TGP Comms., LLC v. Doe*,
2023 WL 4230020 (2d Cir. June 28, 2023) ............................... 14

*U.S. v. Yonkers Bd. of Educ.*,
801 F.2d 593 (2d Cir. 1986) ....................................................... 14

*Van Buskirk v. United Grp. of Cos., Inc.*,
935 F.3d 49 (2d Cir. 2019) ............................................................ 4

*Williams v. Murphy*,
2018 WL 3105109 (D. Conn. June 25, 2018) ................................ 7

*Winkler v. Grant*,
2008 WL 3539898 (W.D.N.Y. Aug. 12, 2008) ........................ 6, 7

iii

## PRELIMINARY STATEMENT

An old saying repeats among farmers, "don't get down off the plow to chase the mouse."  With these motions, Plaintiffs urge the Court to chase two mice: reconsideration and intervention.  But the City Defendants encourage the Court to stay on the plow, to finish the job at hand, and to move the case toward resolution.  Plaintiffs appear to have no genuine desire to resolve this case.  Instead, by repeatedly asking for more discovery — such as endless BPD bodycam footage from 2024 and 2025 — and by seeking the re-hearing of motions already fairly decided — a process that adds six months' delay each time — Plaintiffs resist pursuing their proverbial day in court, apparently in an effort to wear out the City Defendants, and to force them to capitulate and settle.  If Plaintiffs truly believe they have legitimate claims, they should end this procedural maneuvering and seek resolution.  The Court will recognize these two motions for what they are: distractions preventing the ultimate resolution of the case.

## BACKGROUND

### A.    RECONSIDERATION

At VII(A) of their summary judgment brief, Plaintiffs foreshadowed their motion to reconsider the Court's class certification decision: "[e]qually grave, the Court committed a clear error of law…"  Dkt. No. 321, p. 107.   Plaintiffs have now formally made the motion, and they urge the Court to certify the injunctive relief class it originally declined to certify.  The disingenuous nature of this request should be evident.  Incredibly reciting that the Court denied certification only for one reason — "the sole reason that it concluded that the Named Plaintiffs lack standing to seek prospective injunctive relief" (Dkt. No. 327-1, p. 8) — Plaintiffs willfully ignore the extensive discussion had during oral argument and deliberately misread the Court's

decision, dated April 22, 2025. This kind of practice insults the intelligence of the lawyers involved and, bluntly, wastes the Court's time. The Court should reject the request to reconsider and decline the petition to intervene.

The irony of the request to reconsider should not be lost on the Court. Advancing their position concerning the Traffic Enforcement Class actually serves to expose the flaws in the two damages classes actually certified. Plaintiffs' extensive filings on summary judgment and for these motions demonstrate exactly what the Court feared, and Plaintiffs have endeavored to conceal: there simply is no predominance of common issues. The Court will have to conduct countless individual hearings, hearings with virtually no common issues.

## B.    INTERVENTION

Intervention is a procedural device employed to correct some obvious error in the Parties' pleadings. Plaintiffs ostensibly seek intervention to add new Named Plaintiffs for the Traffic Enforcement Class. But the Proposed Intervenors do not change anything — they occupy the same status as the Named Plaintiffs previously designated and found lacking by the Court. There is no certainty that the Proposed Intervenors would ever be stopped by the Buffalo Police Department. Under these circumstances, intervention is futile.

## <u>ARGUMENT</u>

### POINT I.  PLAINTIFFS DELIBERATELY MISCHARACTERIZE THE COURT'S CLASS CERTIFICATION DECISION.

To justify their request for reconsideration, Plaintiffs state, "The Court denied certification of the Traffic Enforcement Class **for the sole reason that it concluded that the Named Plaintiffs lack standing** to seek prospective injunctive relief." Dkt. No. 327-1, p. 8

2

(emphasis added).  This inaccurate statement not only misreads the Court's decision, but it also minimizes the time and effort the Court spent considering the issue, including during oral argument.  During the Court's opening "musings" that day, the Court expressed its greatest concern about the Traffic Enforcement Class, terming it "limitless" and "unmanageable."  Dkt. No. 331-3, pp. 5-6.  The Court heard argument on the issues, with the City advancing the position that the Court would have to "involve" itself with any claimed violation of the injunction and the operations of the BPD.  *Id.* at pp. 69-71.

Before it even addresses the standing issue, the Court's Opinion and Order presents extensive discussion concerning the "obey the law" nature of the desired injunctive relief for the Traffic Enforcement Class.  Dkt. No. 261, pp. 7-9.  The Court found the proposed injunctive relief to be inappropriate under this standard, writing "under Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law."  Dkt. No. 261, p. 8 (citing *AM Soc'y for the Prevention of Cruelty to Animals v. Animal & Plant Health Inspection Serv.*, 60 F.4th 16, 22 (2d Cir. 2023)).  Leaving no doubt, the Court concluded, "to the extent Plaintiffs' injunctive relief requests 'obey the law' relief, it is not available under Rule 65(d)."  Dkt. No. 261, p. 9.  This language clearly expresses the Court's grave concerns about the propriety of the Traffic Enforcement Class.

To assert that the Court only considered the standing flaw of the proposed class is disingenuous.  That position does not justify reconsideration.

3

**POINT II.  THE LAW IS CLEAR; RECONSIDERATION IS DISFAVORED. THE COURT SHOULD NOT RECONSIDER ITS ORDER HERE.**

The Second Circuit does not ordinarily appreciate motions for reconsideration:

> The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data **that the Court overlooked** — matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.

*Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (citing *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (emphasis added).

Nor does the Western District of New York welcome these motions.  As our Chief Judge has written:

> "As explained by the Second Circuit, "the standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the Court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court."
>
> "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice."
>
> "With respect to the third of these criteria, to justify review of a decision, the Court must have 'a clear conviction of error on a point of law that is certain to recur.'"
>
> "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the Court."

*Neubecker v. New York State*, 387 F. Supp. 3d 302, 304 (W.D.N.Y. 2019) (citation omitted).

4

These extensive quotations demonstrate the disdain Second Circuit courts have for motions to reconsider.

Plaintiffs simply cannot satisfy this rigorous standard.  As argued in Point VI of the City Defendants' Reply Memorandum of Law in Further Support of their Motion for Summary Judgment, Dkt. No. 331-13, (the "City Defendants' Reply") the Court properly denied certification of Plaintiffs' Traffic Enforcement Class.[1]  Their motion does not demonstrate a glaring error in the Court's Opinion and Order.   Nor does their motion point to any controlling authority that was ignored.  Plaintiffs' grievances are not genuine.

Still, Plaintiffs advance two reasons to support their request for reconsideration, (1) that the Court overlooked evidence beyond what happened at BPD checkpoints, and (2) that the Opinion and Order contravenes Second Circuit authority.  Neither stated reason provides an appropriate basis to disturb the Court's careful work in denying the certification of the Traffic Enforcement Class.  In asserting these claims, Plaintiffs only further confuse the timing issue.  At one point, Plaintiffs advocate for evaluating the merits of the proposed Traffic Enforcement Class based on the date of the complaint in 2018.  But Plaintiffs also endeavor to introduce evidence of new BPD activity occurring in 2024-2025, the time period when Plaintiffs moved for class certification.  This argument is untimely and erroneous.

Regarding untimeliness, a district court may only modify its decision where the movant "demonstrates that the Court has overlooked factual matters or controlling decisions that

---

[1]    For the sake of brevity, the City Defendants adopt their arguments set forth in pages 54 through 64 of Dkt. No. 331-13 herein.

were presented to it on the underlying motion." *New Pac. Overseas Grp. (USA) Inc. v. Excal Intern. Dev. Corp.*, 2000 WL 377513, at *3 (S.D.N.Y. Apr. 12, 2000) (citation omitted). Since Plaintiffs did not present the Court with this timing issue originally, they should not be permitted to do so now. *See generally* Dkt. No. 211, Dkt. No. 223, pp. 28-32.

Moreover, Plaintiffs' argument is simply incorrect. Where, as here, a complaint and a motion for class certification are not filed simultaneously, the timing of the motion for class certification is the material time for determining whether plaintiffs have standing. *See Jobie O. v. Spitzer*, 2007 WL 4302921, at *10-11 (S.D.N.Y. Dec. 5, 2007) (holding plaintiff lacked standing where he was no longer suffering from the alleged injury at the time of his motion for class certification). Plaintiffs waited nearly six years from the date of commencement, and over four years from the date of amending their Complaint, to move for class certification. At the time of their motion for class certification, they lacked standing. Given this reality, the Court's decision with respect to the Traffic Enforcement Class was not clearly erroneous, did not overlook factual matters or controlling decisions, and should not be reconsidered.

To the extent that Plaintiffs seek to introduce allegedly new evidence that the Court has never considered, the material they present is not truly new. Evidence within a party's possession prior to the Court's ruling is not "newly available evidence." *See Ahmad v. Int'l Business Machines Corp.*, 2013 WL 12221829, at *6 (D. Vt. Mar. 28, 2013) (C.J. Reiss); *Winkler v. Grant*, 2008 WL 3539898, at *1 (W.D.N.Y. Aug. 12, 2008); *First State Ins. Co. v. Ferguson Enters., Inc.*, 2019 WL 2521838, at *5 (D. Conn. June 18, 2019). Plaintiffs argue that their so-called "new evidence" is that of an alleged City "policy, custom, and practice of

conducting pretextual traffic stops of Black and Latino individuals on the basis of race." *See* Dkt. No. 327-1, p. 26. Despite the exhaustive discovery in this case, Plaintiffs claim that they did not have evidence of this alleged policy, custom, and practice until September 2024. *Id.* This claim is incredible. Plaintiffs base their entire suit on this premise of discrimination. To assert that they just discovered the evidence is disingenuous. They claim the evidence is "new" because by September 2024, the Parties had completed briefing on the class certification motion. But that argument ignores the standard for "newly available evidence," which dictates that for evidence to be considered "new" it must not have been in the Plaintiffs' possession prior to the Court's *ruling*—not prior to the close of briefing. *See Ahmad*, 2013 WL 12221829, at *6; *Winkler*, 2008 WL 3539898 at *1; *First State*, 2019 WL 2521838 at *5.

In *First State Ins. Co.*, the Court encountered a similar circumstance. There, the plaintiffs claimed that deposition testimony obtained from witnesses one month prior to the summary judgment hearing and two months before the Court's summary judgment rulings was "new evidence" warranting reconsideration. 2019 WL 2521838, at *5. The Court rejected this argument. *Id.* at *5-6. The plaintiffs failed to move for the Court to consider the additional evidence before the summary judgment hearing and failed to notify the Court of the evidence at the hearing. *Id.* at *5. Because of these failures, the plaintiffs were not entitled to reconsideration based on that evidence. *Id.* at *6 (citing *Williams v. Murphy*, 2018 WL 3105109 (D. Conn. June 25, 2018) ("[A] motion for reconsideration cannot be employed as a vehicle for . . . introducing new evidence that could have been adduced during the pendency of the underlying motion.")). Quoting *Kopperl v. Bain*, 2016 WL 310719, at *3 (D. Conn. Jan. 26, 2016), the Court noted "[n]ewly discovered evidence must not have been available prior to the entry of judgment

7

leading to reconsideration. If that were not the case, the movant in a motion for reconsideration would have a proverbial 'second bite at the apple.'" *Id*. at *5. Here, that is precisely what Plaintiffs seek—that proverbial second bite.

As in *First State Ins. Co.*, Plaintiffs possessed the so-called "new evidence" before the Court's ruling, and even before oral argument on the motion. Yet, they failed to move to have the Court consider the evidence before the Court's ruling. Oral argument on the Class Certification Motion was held on October 23, 2024. Plaintiffs did not raise the alleged new evidence issue then. *See generally* Dkt. No. 331-3. The Court issued its Class Certification Opinion and Order on April 22, 2025. *See* Dkt. No. 261. Accepting their representation, between September 2024 and April 22, 2025—over seven months before the Court's ruling—the Plaintiffs had this evidence within their possession. Plaintiffs did not file their motion for reconsideration until July 11, 2025. *See* Dkt. No. 327. Evidence can hardly be considered "new" nearly ten months after it was acquired and over two months after the Court's Opinion and Order was filed. Try as they may to attribute the alleged "delay" in the presentation of evidence to the City Defendants, the delay and lack of diligence are of their own making. Like the plaintiffs in *First State Ins. Co.*, Plaintiffs failed to properly raise this evidence before the Court's issuance of its Opinion and Order, despite its availability for over seven months before the Court's ruling. They should not be permitted to introduce it now. Viewed in this light, it does not warrant reconsideration of the Court's decision.

Additionally, for the reasons articulated on pages 59 through 60 of the City Defendants' Summary Judgment Reply, the declarations of Plaintiffs Hall and Bonds do not warrant reconsideration.  Dkt. No. 331-13, pp. 59-60.

Plaintiffs also suggest that the Court failed to consider non-Checkpoint evidence, that is, evidence of what transpired during individual stops not associated with a roadblock. Yet, the enormous record which Plaintiffs assembled for class certification purposes was replete with accounts of individual transactions between various plaintiffs and the BPD. By their own pleadings, Plaintiffs presented the stories of dozens of East Side residents who would, if appropriate, be included in the Traffic Enforcement Class. Plaintiffs even concede this point— "Plaintiffs' Motion for Class Certification for the Traffic Enforcement Class was not premised solely on Checkpoints; it advanced a claim of racially discriminatory traffic enforcement both at and outside of Checkpoints." Dkt. No. 327-1, p. 14. As evidenced through its thorough discussion of the proposed Traffic Enforcement Class, the Court did not overlook any evidence. The Court explicitly analyzed the non-Checkpoint evidence and held that such evidence, like the Checkpoint evidence, referred to past harm. *See* Dkt. No. 261, p. 11. Similarly, the Court held that reliance on statistical disparities in both Checkpoint and non-Checkpoint settings also reflected past alleged harm. *See id.* at p. 12. Past harm is insufficient to sustain Plaintiffs' claims for injunctive relief. *See id.* at p. 13 (citing *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004); *Lyons v. City of Los Angeles*, 461 U.S. 95, 101-102 (1983)); *see also Noem v. Vasquez Perdomo*, 606 U.S. ---, 2025 WL 2585637, at *2 (Sep. 8, 2025) (J. Kavanaugh concurring) (applying *Lyons* and holding that plaintiffs' allegations that they were subjected to unlawful law enforcement actions in the past were insufficient to establish standing to seek a forward-looking injunction to enjoin law enforcement from stopping them without reasonable suspicion in the future). Plaintiffs make this strained claim, because they cannot present evidence that is

genuinely new, evidence that would properly trigger reconsideration. Accordingly, Plaintiffs'
motion for reconsideration should be denied.

## POINT III. INTERVENTION IS NOT APPROPRIATE HERE.

Plaintiffs point to the Proposed Intervenors as if they are a panacea for all the ills
the Court identified during the class certification process. The Proposed Intervenors do not cure
the problems, though. That these Plaintiffs might suffer traffic stops in the future remains
entirely speculative. Their potential claims are no more certain than those the original Named
Plaintiffs advanced. They suffer from the same uncertainty that troubled the Court during class
certification. No one can say for certain — or with any competence approaching certainty —
that the BPD will stop the Proposed Intervenors in the future. They complain of past harm; there
is no reasonable probability of future harm.

Nor do the Proposed Intervenors cure the problem of the Court having to involve
itself in the operations of the BPD to manage compliance with any injunction in place. Does the
Court have to review each claimed violation of the requested injunction? Does the Court have to
encourage compliance with the injunction on part of the BPD officers, or discipline those who
fail to comply? Even with the New Plaintiffs, these persistent problems remain.

The Proposed Intervenors offer no new suggestion or language to flesh out the
concept of injunctive relief sought. At best, Plaintiffs still seek an "obey the law" injunction,
which is forbidden. *See Peregrine Myanmar Ltd v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996). The
New Plaintiffs would possess the same status that the Court has already rejected as insufficient.

The Proposed Intervenors do not solve the predominance of common issues problem the original class faced, either.  If anything, by presenting new scenarios to review, the Proposed Intervenors only exacerbate the lack of predominance.  Requiring the Court to include Plaintiffs from both Checkpoint and random stops diminishes the common claims and virtually eliminates any predominance.

Plaintiffs claim they have new evidence proving that the BPD still engages in discriminatory stops.  The BPD strongly denies this allegation, but even assuming the allegation is true, the evidence Plaintiffs present is not new within the meaning of Rule 23.  It does not serve as an appropriate basis for reconsideration.  Plaintiffs offer, in particular, bodycam footage they obtained in 2024-2025.  The supposedly damning footage correlates with documents Plaintiffs have had for years, documents that form the basis of Plaintiffs' discrimination claim. The film hardly presents anything materially new.  To make matters worse Plaintiffs had it when they brought the class certification motion.  To call these videos new is misleading, at best.

Citing *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 263-64 (2015), Plaintiffs suggest that the Court erred by failing "to evaluate all of Plaintiffs' traffic-enforcement claims."  Dkt. No. 327-1, p. 12.  Such an accusation totally disregards the Court's decision, not to mention the work behind it.  The allegation ignores the reality that the Court and its staff traveled from Vermont to Buffalo, at Plaintiffs' request, to conduct an hours-long oral argument. And, it selectively reads the Court's Decision, losing the proverbial forest for the trees.  At best, Plaintiffs argue that the Court should have given more consideration to the specific claims, in a qualitative sense.  That Plaintiffs desire a different balance in the relative weighing of factors considered does not provide an appropriate basis for reconsideration.

11

**POINT IV.  THE COURT SHOULD NOT PERMIT INTERVENTION.**

The City Defendants do not disagree with Plaintiffs' general recitation of the law concerning intervention, but they do disagree with Plaintiffs' position that they are entitled to receive it.

First, the intervenors lack standing for the same reasons the Named Plaintiffs lack standing—their allegations refer to past harm.  Markel Nance attests to May 22, 2021; January 6, 2022; March 2022; November 24, 2023; and March 30, 2024 police encounters.  *See generally* Dkt. No. 327-6.  Similarly, Thomas Christopher Williams, Jr. attests to March 26, 2024 and September 21, 2024 police encounters.  *See generally* Dkt. No. 327-5.  In other words, the Proposed Intervenors occupy no different position than other existing Plaintiffs—they complain of past alleged harm.  The Proposed Intervenors would not cure the problems that prevented certification of the Traffic Enforcement Class, and any intervention would be futile.

Citing various decisions, Plaintiffs announce:

> "Intervention of class representatives to ensure adequate class representation is highly desirable."  Intervention is routinely granted to absent class members "since members of a class are normally bound by the judgment in the class action." And it is common to permit intervention in a class action in order to cure a deficiency in the ability of the named plaintiffs to represent the class.

Dkt. No. 326, p. 12 (citations omitted).  But Plaintiffs' request for intervention fails to cure the deficiency and to foster the ability of the Named Plaintiffs to represent the class.

Plaintiffs point to Judge Sinatra's Decision, *Leslie v. Starbucks Corp.*, 2022 WL 5434278 (W.D.N.Y. 2022), where a union sought both permissive intervention and intervention

as of right, as Plaintiffs have done here, to support their intervention request.  Plaintiffs' citation

is curious, since in that case the Court denied the request to intervene.  *Id.* at *3.  Plaintiffs find

no actual support for their position under the law.

After an extensive recitation of their "qualifications," Plaintiffs suggest that the

Proposed Intervenors cure the deficiencies that prevented certification of the Traffic

Enforcement Class.  What they fail to recognize, however, is that the Proposed Intervenors

occupy the same basic position as the Named Plaintiffs who were unsatisfactory in the first

instance.  In their own words:

> Here, Plaintiffs' and the Intervenors' interests are inherently
> intertwined because their claims target the City's unitary racially
> discriminatory traffic enforcement policies, practices, and
> procedures.  Plaintiffs and the Intervenors rely on the same legal
> theories and actual assertions about the City's conduct (other than
> the facts of their individual stops) to show that Defendants have
> established ongoing policies, patterns, and practices of systematic
> discriminatory traffic policing.  And like Plaintiffs, the Intervenors
> seek injunctive relief aimed at preventing the City and the BPD from
> carrying out discriminatory traffic enforcement policies in the
> future.

Dkt. No. 326-1, p. 17 (citations omitted).  By their own account, therefore, the

Proposed Intervenors have the same status as the original Named Plaintiffs.  As was argued in

greater detail earlier in this brief, the Proposed Intervenors have the same faults preventing class

certification that the Named Plaintiffs had.  Allowing intervention would serve no appropriate

purpose.

Second, Plaintiffs have failed to show that their motion to intervene is timely.

Under Rule 24, "the proposed intervenor bears the burden of demonstrating that [they] meet the

requirements for intervention." *Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (citing *Seils v. Rochester City Sch. Dist.*, 199 F.R.D. 506, 509 (W.D.N.Y. 2001)).  One of those requirements is timeliness.  *Citizens Against Casino Gambling in Erie Cnty. v. Hogen*, 704 F. Supp. 2d 269, 281 (W.D.N.Y. 2010); *see also TGP Comms., LLC v. Doe*, 2023 WL 4230020, at *1 (2d Cir. June 28, 2023) (affirming denial of permissive intervention motion where movants were aware of their interests in the highly publicized action); *U.S. v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986) (denying motion to intervene where movants were on notice of their interest in the case three months before they filed the motion).  "When determining whether a motion to intervene is timely, courts may consider: (1) the length of time the applicant knew of its interest but failed to intervene, (2) prejudice to existing parties from the delay, (3) prejudice to the applicant if the motion is denied, and (4) the presence of any unusual circumstances militating for or against a finding of timeliness." *Hogen,* 704 F. Supp. 2d at 281. (citing *Long Island Trucking v. Brooks Pharm.*, 219 F.R.D. 53, 54-55 (E.D.N.Y. 2003); *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001)).

Notably, neither of the Proposed Intervenors' declarations state the length of time they knew of this case or their interest in it.  That, alone, constitutes grounds to deny the motion for failure to satisfy their intervention burden.  By his allegations, Markel Nance has had an interest in this case for over four years, and yet he has waited until almost three months after the Class Certification ruling and until the tail-end of summary judgment briefing to move to intervene.  Thomas Christopher Williams, Jr. has had an interest in this case for over a year, and yet he also waited three months after the Class Certification ruling and until the tail-end of summary judgment briefing to move to intervene.

14

Plaintiffs' willful delay in bringing this motion will also unduly prejudice the City Defendants by only further delaying the resolution of this action. Class certification has been briefed and decided. The City filed a Rule 23(f) motion with the Second Circuit and the Second Circuit has granted leave to appeal. The Parties have fully, and extensively, briefed summary judgment. To grant the motion to intervene would set this case back to the discovery phase. The City has already expended immense time and financial resources pushing this case through summary judgment. At a minimum, the City Defendants would have to gather paper discovery on the Proposed Intervenors and depose them. Following that discovery, which would add, at a minimum, six months to this action, the Parties would likely have to revisit their summary judgment briefings. Given the late stage of the litigation, the Court should deem the motion to intervene untimely. *See Sheppard v. Phoenix*, 1998 WL 397846, at *2 (S.D.N.Y. July 16, 1998).

In short, Plaintiffs have provided nothing new or different that would entitle them to the relief they seek.

## **CONCLUSION**

For these reasons, the Court should deny Plaintiffs' request for reconsideration. The Court should also deny Plaintiffs' petition for intervention. The City Defendants also respectfully request such other and further relief as the Court deems just and proper.

Dated:        September 26, 2025

        **HODGSON RUSS LLP**
        *Attorneys for Defendants City of Buffalo, NY, Byron*
        *B. Brown, Byron C. Lockwood, Daniel Derenda,*
        *Aaron Young, Kevin Brinkworth, Philip Serafini,*

15

*Robbin Thomas, Unknown Supervisory Personnel 1-10, and Unknown Officers 1-20*


By: /s/ Hugh M. Russ III
       Hugh M. Russ III
       Peter A. Sahasrabudhe
       Cheyenne N. Freely
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

16