UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

BLACK LOVE RESISTS IN THE RUST, *et al.*, individually and on behalf of a class of all others similarly situated,

        Plaintiffs,

    v.

CITY OF BUFFALO, N.Y., *et al.*,

        Defendants.

No. 1:18-cv-00719-CCR

---

**REPLY BRIEF IN SUPPORT OF:**

**PLAINTIFFS' MOTION TO RECONSIDER THE DENIAL OF THE MOTION TO CERTIFY THE TRAFFIC ENFORCEMENT CLASS, OR IN THE ALTERNATIVE TO RENEW THE MOTION TO CERTIFY; AND**

**PLAINTIFFS' AND PROPOSED INTERVENORS' MOTION TO INTERVENE AS PLAINTIFFS AND CLASS REPRESENTATIVES OF THE TRAFFIC ENFORCEMENT CLASS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

I. DEFENDANTS FAIL TO REFUTE PLAINTIFFS' TWO
ARGUMENTS FOR RECONSIDERATION........................................................2

    A.   Defendants Fail to Rebut Plaintiffs' Main Argument for
Reconsideration—that the Court Artificially Constrained
Plaintiffs' Injunctive Claims to Checkpoints..............................................2

    B.   Defendants' Position on the Timing of the Standing
Analysis Conflicts with Second Circuit Precedent.....................................3

    C.   Defendants Fail to Rebut that Plaintiffs Have Standing to
Enjoin the City's Ongoing Discriminatory Traffic
Enforcement Policies and Practices.............................................................6

    D.   Plaintiffs' Motion for Reconsideration Is Not Untimely.............................7

    E.   Defendants' Remaining Arguments Are Meritless.......................................8

II. DEFENDANTS FAIL ENTIRELY TO ADDRESS PLAINTIFFS'
MOTION TO RENEW. ...................................................................................9

III. THE COURT SHOULD GRANT THE MOTION TO INTERVENE
AND APPOINT THE INTERVENORS REPRESENTATIVES OF THE
TRAFFIC ENFORCEMENT CLASS. ...............................................................11

    A.   The Intervenors Show a Substantial Risk of Future Harm
Pursuant to an Ongoing Municipal Policy, Custom, or
Practice. ....................................................................................................11

    B.   The Intervenors' Motion is a Timely Response to the
Court's Class Certification Decision. .......................................................14

    C.   Plaintiffs' Relief is Sufficiently Tailored and Independent
of any Request to Intervene. ....................................................................16

CONCLUSION.......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. by E.H. v. N.Y. Dep't of Health*,
  147 F.4th 270 (2d Cir. 2025) .................................................14

*Ahmad v. Int'l Bus. Machines Corp.*,
  2013 WL 12221829 (D. Vt. Mar. 28, 2013) ...........................10

*Chen-Oster v. Goldman, Sachs & Co.*,
  2015 WL 4619663 (S.D.N.Y. Aug. 3, 2015).......................14, 15

*Cody v. City of St. Louis*,
  103 F.4th 523 (8th Cir. 2024) ...............................................9

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994).....................................................4

*Crown, Cork, & Seal Co. v. Parker*,
  462 U.S. 345 (1983)...............................................................15

*Davis v. Fed. Election Comm'n*,
  554 U.S. 724 (2008)................................................................4

*Democratic Cong. Campaign Comm. v. Kosinski*,
  614 F. Supp. 3d 20 (S.D.N.Y. 2022)....................................12

*Doe v. McDonald*,
  128 F.4th 379 (2d Cir. 2025) .................................................3

*Duke v. Luxottica U.S. Holdings Corp.*,
  2024 WL 4904509 (E.D.N.Y. Nov. 27, 2024).........................3

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
  954 F.3d 118 (2d Cir. 2020).................................................3, 4

*First State Ins. Co. v. Ferguson Enters., Inc.*,
  2019 WL 2521838 (D. Conn. June 18, 2019).........................10

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012) ........................................5, 6

*Guadagna v. Zucker*,
  2021 WL 4150802 (E.D.N.Y. July 9, 2021).........................16

*Hargrove v. Sleepy's LLC*,
  974 F.3d 467 (3d Cir. 2020)................................................................9

*In re Initial Pub. Offering Secs. Litig.*,
  483 F.3d 70 (2d Cir. 2007)................................................................9

*Jobie O. v. Spitzer*,
  2007 WL 4302921 (S.D.N.Y. Dec. 5, 2007) ...................................5, 6

*Maneely v. City of Newburgh*,
  208 F.R.D. 69 (S.D.N.Y. 2002) ......................................................4, 5

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
  819 F.3d 581 (2d Cir. 2016)..............................................................4

*Murthy v. Missouri*,
  603 U.S. 43 (2024)..............................................................6, 12, 13

*Nat'l Ass'n for the Advancement of Colored People v. New York*,
  413 U.S. 345 (1973)........................................................................14

*Nat'l Cong. for Puerto Rican Rts. v. City of New York*,
  75 F. Supp. 2d 154 (S.D.N.Y. 1999)..................................................5

*New Pacific Overseas Grp. (USA) Inc. v. Excal Int'l Dev. Corp.*,
  2000 WL 377513 (S.D.N.Y. Apr. 12, 2000)........................................7

*Pike Co. v. Universal Concrete Prods., Inc.*,
  284 F. Supp. 3d 376 (W.D.N.Y. 2018) .............................................15

*Range v. Nat'l R.R. Passenger Corp.*,
  176 F.R.D. 85 (W.D.N.Y. 1997)......................................................15

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).............................................................4

*Shain v. Ellison*,
  356 F.3d 211 (2d Cir. 2004)............................................................12

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) .......................................................4

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..........................................................................6

*Trief v. Dun & Bradstreet Corp.*,
  144 F.R.D. 193 (S.D.N.Y. 1992) .....................................................11

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ............................................................................16

*United States v. State of New York*,
    820 F.2d 554 (2d Cir. 1987) ........................................................................14

*Winkler v. Grant*,
    2008 WL 3539898 (W.D.N.Y. Aug. 12, 2008) ............................................10

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 24 .................................................................................11, 16

Fed. R. Civ. P. 59 ...........................................................................................10

Fed. R. Civ. P. 60 ...........................................................................................10

Fed. R. Civ. P. 65 .........................................................................................8, 16

## INTRODUCTION

Plaintiffs and Intervenors request an array of relief—reconsideration, renewal in the alternative, and intervention—aimed at showing that the Traffic Enforcement Class should proceed as a certified class with Named Plaintiffs who have standing to pursue the class's injunctive claims. Reconsideration should be granted for two reasons. First, Plaintiffs' allegations and evidence presented at class certification encompass claims of an ongoing municipal policy, practice, and custom of racially discriminatory traffic enforcement far beyond the bounds of the Checkpoint program. Second, controlling Second Circuit authority requires that the Court assess Plaintiffs' injunctive standing as of the date they joined the action. Defendants' opposition largely avoids both of these central points and fails to show why Plaintiffs' request for reconsideration should not be granted.

In the alternative, the Court should grant Plaintiffs' renewed motion to certify the traffic enforcement class based on the intervention of new plaintiffs and the discovery of new facts not available to Plaintiffs at the time of class certification. Defendants do not contest that intervention of new plaintiffs justifies renewal under Rule 23(c)(1)(C), nor do they argue that Plaintiffs' new evidence is insufficient to justify renewal. Defendants present no argument as to why renewal is not appropriate here.

The Court should likewise grant the Intervenors' motion to join the case as additional class representatives for the Traffic Enforcement Class. The Intervenors, each a member of the putative class, timely intervened in this action to protect their interests in response to the Court's April 22, 2025 decision denying certification of that class. Intervention is particularly appropriate where, as here, additional plaintiffs request to intervene on behalf of a putative class in order to protect their interests and those of the class. Defendants do not challenge that Intervenors have an interest in the action, instead focusing their critique on the timeliness of Intervenors' motion. But that critique

fails to take into account that Intervenors moved promptly in response to the denial of class certification, and Defendants wholly fail to show why the "highly desirable" outcome of intervention to ensure adequate class representation should be rejected here.

## I.    Defendants Fail to Refute Plaintiffs' Two Arguments for Reconsideration.

Plaintiffs argued for reconsideration of Section II.B of the Court's Decision and Order (ECF 261) on two grounds: (1) the Court incorrectly limited its standing analysis to Checkpoints, overlooking Plaintiffs' broader claim that the City has maintained and continues to maintain a policy, custom, and practice of racially discriminatory traffic enforcement *generally*; and (2) the Court did not follow controlling Second Circuit authority requiring courts to assess a plaintiff's injunctive standing as of the date they joined the action and not based on later events. *See* ECF 327-1 at 3–12.[1] Defendants fail to rebut these arguments and instead focus much of their opposition on arguments that Plaintiffs did not make, such as the extent to which new evidence justifies reconsideration.

### A.    Defendants Fail to Rebut Plaintiffs' Main Argument for Reconsideration— that the Court Artificially Constrained Plaintiffs' Injunctive Claims to Checkpoints.

Plaintiffs' opening brief detailed both the allegations in the complaint and the evidence in the class certification record establishing their challenge to an ongoing municipal policy, practice, and custom of racially discriminatory traffic enforcement that extended far beyond Checkpoints. *See* ECF 327-1 at 5–9. Plaintiffs argued that the Court should grant reconsideration because it did not consider the full scope of their claims and much of the evidence in the class certification record. *See id.*

_____

[1] References to page numbers in this Reply Brief correspond to the document page numbers at the bottom of a given document, rather than the stamped ECF page numbers at the top.

In support of this argument, Plaintiffs relied on *Duke v. Luxottica U.S. Holdings Corp.*, 2024 WL 4904509, at \*5–\*8 (E.D.N.Y. Nov. 27, 2024). In *Duke*, the plaintiff sought reconsideration of the court's ruling that she lacked standing to pursue her retirement benefits claims. 2024 WL 4904509 at \*5–\*6. The court initially dismissed the plaintiff's claims, finding her factual allegations of injury and request for relief insufficient. *Id.* Upon reconsideration, the court found that the initial decision had improperly overlooked well-pled allegations establishing injury, along with specific requests for relief that would redress the injury. *Id.* That is exactly the situation here. ECF 327-1 at 5–9.

Defendants failed to respond in any substantive manner, instead resorting to flattery. *See* ECF 338 at 9, 11 (lauding the Court for its "thorough discussion" and for travelling from Vermont to Buffalo to hear oral argument). Plaintiffs and class members appreciate the time the Court has devoted to this matter and the opportunity to attend an important hearing in their case. But a fair reading of the Court's Decision indicates that the Court misconstrued Plaintiffs' claims as limited to Checkpoints and overlooked Plaintiffs' allegations in the Amended and Supplemental Complaint concerning discriminatory ticketing outside of Checkpoints, as well as evidence in the class certification record establishing common municipal traffic enforcement policies that go well beyond Checkpoints, impacting both stops and ticketing. Reconsideration is appropriate, and Defendants do not demonstrate otherwise.

### B.    Defendants' Position on the Timing of the Standing Analysis Conflicts with Second Circuit Precedent.

In the Second Circuit, "[s]tanding is determined as of the filing of the complaint," and "events occurring after that time do not pertain to standing," but rather to mootness. *Doe v. McDonald*, 128 F.4th 379, 384 (2d Cir. 2025); *accord Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020). The standing of intervenors is assessed as of the date

of their intervention. *Comer v. Cisneros*, 37 F.3d 775, 791, 801 (2d Cir. 1994); *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993). The standing inquiry asks whether Plaintiffs had a personal stake in the case at the start of litigation, defined as an injury that is "concrete and particularized" and "actual or imminent"; "fairly traceable to the [defendant's] challenged action"; and "likely . . . [to] be redressed by a favorable decision." *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 600 (2d Cir. 2016); *Stinson v. City of New York*, 282 F.R.D. 360, 381 (S.D.N.Y. 2012) (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)). To obtain prospective injunctive relief against a municipality, Plaintiffs must show "the existence of a citywide policy that poses a legitimate, non-speculative threat" of future harm. *Stinson*, 282 F.R.D. at 381–82.

Mootness, on the other hand, assesses whether Plaintiffs' personal interest in the case persists throughout the litigation. *Fed. Defs. of N.Y.*, 954 F.3d at 126 ("While standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, '[m]ootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation.'"). For this reason, post-filing events implicate mootness, not standing.

As explained in Plaintiffs' opening brief, the Court's analysis of Checkpoint injunctive standing conflicted with this precedent by analyzing standing based on 2024 facts rather than 2018 facts. In 2018, when Plaintiffs Franklin, Hall, Simmons, and Evans filed their original Complaint, they each had standing to enjoin the Checkpoint Program. ECF 327-1 at 16–17. At that time, the Checkpoint Program was an established BPD policy, authorized by and partially codified in the BPD's Manual of Procedures, as it is today. ECF 327-1 at 17.[2]

---

[2] Even though Defendants had temporarily paused the Checkpoints under threat of litigation, under the voluntary cessation doctrine, that pause does not moot Plaintiffs' claims. *Maneely v. City of* (continued…)

In their opposition, Defendants ignore the published and binding Second Circuit precedent cited above. Instead, Defendants assert, citing *Jobie O. v. Spitzer*, 2007 WL 4302921, at *10–*11 (S.D.N.Y. Dec. 5, 2007), that "the timing of the motion for class certification is the material time for determining whether plaintiffs have standing," ECF 338 at 6. But *Jobie O.* does not stand for this incorrect proposition. The bulk of the *Jobie O.* decision actually analyzes "whether Jobie O.'s claim falls within the exceptions to the general rule for **mootness**." 2007 WL 4302921 at *6 (emphasis added). The court held that Jobie O. could not serve as a class representative because, by the time he moved for class certification, his claims were moot, and no mootness exception applied. *Id.* at *6–*14. Separately, the court *also* found that Jobie O. lacked standing to seek prospective injunctive relief because his likelihood of future injury depended on a chain of unlikely contingencies. *Id.* at *15. The court's finding that Jobie O lacked standing, however, did not turn on the timing of the class certification motion. The same chain of unlikely contingencies existed from the moment Jobie O. intervened in the lawsuit, a year prior to class certification.[3]

---

*Newburgh*, 208 F.R.D. 69, 73–74 (S.D.N.Y. 2002) (finding Plaintiff's claim for injunctive relief was not moot after Defendants suspended their strip search policy seven months before litigation where Defendants was aware of the impending lawsuit). Defendants have never made any attempt to meet the heavy burden of establishing that Plaintiffs' injunctive claims are moot, *see id.* at 73.

[3] In *Jobie O*, the chain of contingencies included "that Mr. O. will again be paroled after serving his current twelve-month prison sentence, that he will then be arrested on a parole violation in New York City and taken to a New York City jail, and that, despite his track record with treatment alternatives to incarceration, he will again be deemed appropriate for placement in a MICA program in lieu of incarceration (which is a discretionary determination)." 2007 WL 430292 at *15. Here, Plaintiffs face a far more direct risk of harm: Plaintiffs and class members have repeatedly experienced discriminatory traffic stops while going about their everyday lives. *See* ECF 327-1 at 15–16, 21–22; *see also Floyd v. City of New York*, 283 F.R.D. 153, 169–70 (S.D.N.Y. 2012) ("[The plaintiff's] risk of injury is not based on a string of unlikely contingencies . . . [as he] was stopped and frisked while going about his daily life."); *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 75 F. Supp. 2d 154, 161 (S.D.N.Y. 1999) ("The fact that plaintiffs were stopped while engaging in everyday tasks further illustrates a realistic risk of future harm.").

Moreover, the *Jobie O.* court's remedy for his lack of standing was to "grant[] leave to substitute an appropriate named plaintiff who has standing to seek injunctive relief, and [allow plaintiff] to move again for class certification" despite the defendants arguing that the "case was filed more than four years ago and that repeated efforts to find a viable class plaintiff have failed." 2007 WL 4302921 at *1, *16. *Jobie O.* thus does <u>not</u> support Defendants' incorrect contention that standing is determined as of the date of class certification, but it <u>does</u> support Plaintiffs' motions for intervention and renewal, discussed further below.

### C.    Defendants Fail to Rebut that Plaintiffs Have Standing to Enjoin the City's Ongoing Discriminatory Traffic Enforcement Policies and Practices.

Defendants also continue to misconstrue the role that past harms play in establishing standing for injunctive relief, incorrectly suggesting that past harms cannot support standing for injunctive relief. *See* ECF 338 at 9. That is not the law. As the Supreme Court recently explained, past harms that are "likely traceable" to a governmental policy "can serve as evidence of expected future harm" so long as the policy persists. *Murthy v. Missouri*, 603 U.S. 43, 70 (2024); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) ("past enforcement" is "good evidence" that future enforcement is likely and not "chimerical"); *Floyd*, 283 F.R.D. at 169; ECF 327-1, at 13–14 (collecting cases).

That is exactly the situation here. Not only do Plaintiffs demonstrate repeated discriminatory traffic enforcement incidents, but extensive record evidence supports that these past incidents are traceable to municipal policies, customs, and practices that remain in place today. ECF 327-1 at 13–16. Plaintiffs Hall's and Bonds' recent 2025 traffic stops further demonstrate that the City's practices and policies remain ongoing and that, in 2018 and 2020, their likelihood of experiencing future discriminatory traffic stops was not speculative but certain.

Indeed, in 2018 and 2020, Plaintiffs faced an undeniable, non-speculative risk of racially discriminatory traffic stops and ticketing. *Id.* The class certification record contains ample evidence supporting injunctive standing, including repeated traffic stops and ticketing of Plaintiffs and other Black and Latino drivers as documented in Appendix C of Michael Gennaco's police practices expert report; extensive proof of the City's deliberate indifference to discriminatory traffic enforcement; and statistical and historical expert reports showing that the discriminatory traffic enforcement practices existed before 2018 and 2020 and outside of Checkpoints. *Id.*

Defendants' argument that the Court should simply disregard all of this evidence because it reflects "past harm" misunderstands Supreme Court precedent. Reconsideration is appropriate so that the Court can assess this previously overlooked evidence and determine that Plaintiffs have standing to seek injunctive relief against Defendants' racially discriminatory traffic enforcement.

**D.    Plaintiffs' Motion for Reconsideration Is Not Untimely.**

Defendants argue that Plaintiffs' timing argument is itself untimely because it presents a new issue not previously presented to the Court. ECF 338 at 5–6. But Plaintiffs argued at length that they had standing to seek injunctive relief in connection with class certification. *See* ECF 211 at 48–50; ECF 223 at 21–24. Plaintiffs could not reasonably have anticipated that the Court would overlook Second Circuit law governing the timing of the standing analysis.

Defendants rely on *New Pacific Overseas Group (USA) Inc. v. Excal International Development Corporation*, 2000 WL 377513, at *3 (S.D.N.Y. Apr. 12, 2000), but that case is inapposite. In *New Pacific*, the plaintiffs had multiple opportunities to contest the imposition of monetary sanctions against them and thus were not entitled to reconsideration. Here, however, the motion for reconsideration was Plaintiffs' *first* opportunity to raise this error, which Plaintiffs could

not have predicted in advance. Plaintiffs' motion for reconsideration based on the timing of the standing analysis is therefore not untimely.

E.    **Defendants' Remaining Arguments Are Meritless.**

Defendants' arguments about the Court's discussion of "obey the law" relief in the Decision and about delay are unavailing.

Contrary to Defendants' argument, the Court did not deny certification of the Traffic Enforcement Class on the grounds that it sought "obey the law" relief. Rather, the Court stated that "[t]o the extent Plaintiffs' injunctive relief requests 'obey the law' relief, it is not available under Rule 65(d)." ECF 261 at 7–9. As detailed in the Amended Complaint, Plaintiffs seek specific and concrete injunctive relief, not "obey the law" relief. *See* ECF 321 at 117–18. But even assuming *arguendo* that some of the relief was obey the law relief, that would mean only that the relief is not available under Rule 65(d), not that the Traffic Enforcement Class cannot be certified under Rule 23.

Nor did the Court deny certification of the Traffic Enforcement Class based on its "musings" at oral argument. While the Court's Decision does describe the class as "virtually limitless," the Court noted that "Plaintiffs are correct that the inclusion of future members does not defeat class certification" and proceeded to the standing analysis. ECF 261 at 9.

Finally, Defendants accuse Plaintiffs of seeking to delay the litigation, but granting reconsideration and certifying the Traffic Enforcement Class would not cause any delay. The parties' summary judgment motions remain pending, just as they did at the time of the Decision. Indeed, if anyone is seeking to delay this litigation, it is Defendants. Not only did Defendants appeal the Court's Class Certification Decision, but they also requested a stay of all proceedings pending the Second Circuit's review. *See City of Buffalo v. Black Love Resists in the Rust*, 25-

1191 (2d Cir.), Petition for Permission to Appeal at 20 (arguing that "The [Second Circuit] Should Stay the District Court Proceedings").

## II.    Defendants Fail Entirely to Address Plaintiffs' Motion to Renew.

Defendants completely ignore Plaintiffs' alternative motion to renew their motion to certify the Traffic Enforcement Class pursuant to Rule 23(c)(1)(C). *See* ECF 327-1 at 17–22. Plaintiffs premised their motion to renew on two bases: the proposed intervention of two additional named plaintiffs and new evidence of the BPD's ongoing program of racially discriminatory pretext stops, along with the additional 2025 traffic stops of Plaintiffs Hall and Bonds. ECF 327-1 at 18–22.

A renewal motion under Rule 23(c)(1)(C), a more lenient avenue than reconsideration, allows plaintiffs to address and resolve a court's concerns after an initial denial of class certification. Rule 23(c)(1)(C) "allows for multiple bites at the apple throughout the litigation," and "does not impose an additional requirement on parties to prove a change in law or show new evidence to succeed on a renewed motion for certification." *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 476 (3d Cir. 2020); *accord Cody v. City of St. Louis*, 103 F.4th 523, 529 (8th Cir. 2024); *see also In re Initial Pub. Offering Secs. Litig.*, 483 F.3d 70, 73 (2d Cir. 2007) ("District courts have ample discretion to consider . . . a revised class certification motion after an initial denial."). Here, while not required to justify renewal, the new evidence fills out the evidentiary picture, carrying forward the common evidence of Defendants' discriminatory policies and practices to the present day.

Defendants do not contest that intervention of new plaintiffs justifies renewal under Rule 23(c)(1)(C). Nor do Defendants argue that Plaintiffs' new evidence presents an invalid basis for renewal. In fact, Defendants fail to cite a single Rule 23(c)(1)(C) case.

Instead, Defendants rely on three reconsideration cases to paint Plaintiffs' evidence as not "new," but all of these cases apply the more demanding standard for reconsideration under Rules 59 and 60, rather than the standard for renewal under Rule 23(c)(1). The legal analysis in these cases is thus irrelevant to Plaintiffs' renewal motion.

Further, as a factual matter, the evidence in those cases was far less "new" than the new evidence here. In *Ahmad v. International Business Machines Corp.*, 2013 WL 12221829, at *5–6 (D. Vt. Mar. 28, 2013), the plaintiff had the "new" evidence for two years prior to the court's decision. In *Winkler v. Grant*, 2008 WL 3539898, at *1–2 (W.D.N.Y. Aug. 12, 2008), the plaintiff did "not allege the existence of new evidence . . . but instead s[ought] to relitigate issues already decided." And in *First State Insurance Co. v. Ferguson Enterprises, Inc.*, 2019 WL 2521838, at *5–6 (D. Conn. June 18, 2019), the "new" evidence was a deposition transcript obtained two months prior to summary judgment and a second deposition of the plaintiffs' own witness. Even so, the court acknowledged that a deposition of the *opposing* party's witness "could arguably be considered 'newly available,' given that it was only obtained after the hearing, and therefore was not part of the record before the Court." *Id.* at *6.

Defendants' argument that Plaintiffs evidence is not "new" also ignores reality and their own role in withholding important evidence until after the class certification record had closed. Contrary to Defendants' assertions, August and September 2024 marked the *start* of the relevant disclosures, not the *end*. ECF 327-1 at 20–21. Defendants failed to produce body camera footage until December 2024, well after oral argument and supplemental briefing closed, and much of the video evidence still remained unproduced at the time of the summary judgment briefing. ECF 287 ¶¶ 23–26, 30. Even after production, Plaintiffs required time to analyze the new evidence, which they now know contains extensive documentation of Defendants' ongoing program of

racially discriminatory pretext stops. The 2025 traffic stops of Plaintiffs Hall and Bonds similarly had not yet occurred at the time of oral argument or even when the parties submitted their post-hearing supplemental briefing. *Id.* at 21–22.

Rule 23(c)(1)(C) permits the Court to alter or amend a denial of class certification at any time before entry of final judgment. Here, to address the Court's standing concerns, Plaintiffs seek to add new class representatives and presented new evidence demonstrating an ongoing, common practice of discriminatory traffic enforcement. Because the class meets all elements of Rule 23(b)(2), the Court should certify the Traffic Enforcement Class.

### III. The Court Should Grant the Motion to Intervene and Appoint the Intervenors Representatives of the Traffic Enforcement Class.

Defendants also fail to rebut Plaintiffs' and Intervenors' showing that they meet the requirements for intervention as of right under Rule 24(a)(2) and for permissive intervention under Rule 24(b). Defendants do not dispute that Intervenors have a "direct, substantial, and legally protectable" interest in the action; that this interest will be impaired if intervention is denied; and that, as members of the Traffic Enforcement Class, the Intervenors lack adequate representation if the existing Named Plaintiffs lack standing. Instead, Defendants argue that (A) the Intervenors' harm is equally as speculative as the original proposed class representatives' harm; (B) the Intervenors' motion is untimely; and (C) the Intervenors provide no further clarity to the relief sought by Plaintiffs. *See* ECF 338 at 12–15. As explained below, none of these arguments should prevent the "highly desirable" outcome of intervention. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 202 (S.D.N.Y. 1992) (citing MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.15).

### A. The Intervenors Show a Substantial Risk of Future Harm Pursuant to an Ongoing Municipal Policy, Custom, or Practice.

Defendants' rehashed argument that the Intervenors "complain of past harm," ECF 338 at 10, fails for the same reasons discussed above in Part I.C. Defendants argue that "no one can say

for certain—or with any competence approaching certainty—that the BPD will stop the Proposed Intervenors in the future." ECF 338 at 10.

But the Intervenors need not prove with "certainty" that they will be subject to future harm—a standard that would be impossible to meet. To demonstrate standing, the Intervenors must only show that they have suffered "injury in fact," defined as a "substantial risk of future harm" arising from the Defendants' "official policy or its equivalent." *Democratic Cong. Campaign Comm. v. Kosinski*, 614 F. Supp. 3d 20, 38 (S.D.N.Y. 2022) (citing *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004)); *see also* ECF 327-1 at 13–16. Moreover, for the purposes of establishing standing for injunctive relief, Intervenors' recent incidents of racially discriminatory traffic at the hands of the BPD "can serve as evidence of expected future harm" as long as the policy permitting the stops persists. *Murthy*, 603 U.S. at 70.

The Intervenors easily meet these requirements. As explained above and in Plaintiffs' opening brief, Defendants' policy of racially discriminatory traffic enforcement is ongoing and has survived the cessation of the BPD's Checkpoints. *See* ECF 327-1 at 13–16. The Intervenors have been subjected to that ongoing policy repeatedly in recent years, including as recently as September 2024. *See* ECF 326-1 at 1–6.

Mr. Nance was stopped by the BPD four times between May 2021 and November 2023. During these encounters, he repeatedly experienced discriminatory treatment including being subjected to racially discriminatory language and pulled over when he had committed no visible traffic infraction. *See* ECF 326-6 ¶¶ 8–15 (white BPD officer repeatedly used racially discriminatory language such as "peace out, homie" and "dog" during the traffic stop), 18–20 (BPD officers pulled Mr. Nance over after he simply leaned his head out the window of his vehicle near different ongoing traffic stop).

Similarly, the BPD stopped Mr. Williams multiple times in 2024, including as recently as September 2024, and likewise subjected him to discriminatory treatment during the stops. ECF 326-5 ¶¶ 11 (officer called Mr. Williams by the incorrect name even though he had already provided his documentation), 15 (continuing to check Mr. Williams for any warrants despite Mr. Williams' vehicle not matching the description of the stolen vehicle the officers were searching for), 17 (officers failed to issue Mr. Williams a traffic summons or stop receipt in violation of BPD rules).

These recent encounters with the BPD are of the same type as Plaintiffs' and, as recent harms traceable to an ongoing government policy, evince "expected future harm" such that Intervenors are proper representatives of the injunctive class.[4] *See* ECF 327-1 at 13–14 (citing *Murthy*, 603 U.S. at 70).

Nor do the Intervenors show only past harm. Contrary to Defendants' assertions, *see* ECF 331 at 10, both Intervenors demonstrate a substantial risk of experiencing future racially discriminatory stops by BPD officers. *See* ECF 326-5 at ¶¶ 24, 27–32; ECF 326-6 at ¶¶ 8–15, 18–20, 24–31. Plaintiffs presented evidence from Mr. Gennaco's expert report detailing the City's ongoing failure to prevent BPD officers from engaging in racially discriminatory traffic enforcement, in part due to the City's inadequate complaint investigations and lack of training, supervision, and discipline. ECF 211 at 16–21. In line with the City's practices, none of the officers

---

[4] Defendants argue that the Intervenors "do not solve the predominance of common issues problem the original class faced, either." ECF 338 at 11. But the Intervenors seek only to represent the Traffic Enforcement Class, an injunctive class for certification under Rule 23(b)(2), which does not require that common questions predominate. *Compare* Fed. R. Civ. P. 23(b)(2) (requiring that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole") *with* Fed. R. Civ. P. 23(b)(3) (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members"). The Intervenors therefore have no predominance problem to solve.

involved in Intervenors' stops were formally disciplined for their discriminatory conduct and continue to patrol the same areas in the City where Intervenors work and live, increasing the likelihood of future harm.[5] Defendants offer no evidence that the BPD's discriminatory practices have ceased, nor any rebuttal to the additional evidence of recent, ongoing harm the Intervenors detail. The Intervenors' additional recent evidence of racially biased treatment by the BPD is sufficient to show "expected future harm" such that intervention to serve as representatives of the Traffic Enforcement Class should be granted.

### B. The Intervenors' Motion is a Timely Response to the Court's Class Certification Decision.

Defendants' argument that the motion to intervene is untimely similarly gets the legal standard wrong. Defendants assert that Intervenors' motion is untimely because Intervenors have had interests in this action for years. ECF 338 at 14. But that argument is premised on an erroneous reading of the law within this Circuit, which analyzes timeliness based on "when the intervenor became aware that its interest would *no longer be adequately protected* by the parties" rather than a strict analysis of when "the part[ies] seeking intervention became aware of the litigation itself." *Chen-Oster v. Goldman, Sachs & Co.*, 2015 WL 4619663, at *6 (S.D.N.Y. Aug. 3, 2015); *see also United States v. State of New York*, 820 F.2d 554, 557 (2d Cir. 1987) (stating that a court's decision on intervention should be "based on all the circumstances of the case") (citing *Nat'l Ass'n for the Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973)); *A.H. by E.H. v. N.Y. Dep't of Health*, 147 F.4th 270, 281 (2d Cir. 2025) ("The timeliness requirement is flexible and the

---

[5] ECF 326-5 ¶¶ 23 (officers involved in discriminatory stop were exonerated), 24, 27–32 (detailing Mr. Williams' repeated discriminatory traffic stops, substantial risk for future stops, and continued need to drive in Buffalo); ECF 326-6 ¶¶ 23 (Mr. Nance was never informed of the outcome of his complaint), 25–31 (Mr. Nance faced additional racially discriminatory traffic stops and continues to drive in Buffalo such that he is at risk of further discriminatory stops by the BPD).

decision is one entrusted to the district judge's sound discretion.") (internal citation omitted). Indeed, Defendants entirely ignore that this case is a class action and cite no case law applying intervention in the context of a class action. *See* ECF 338 at 14–15.

Until the Court's denial of Plaintiffs' motion to certify the Traffic Enforcement Class, ECF 261, the Intervenors' interests were "subsumed by [those] of the representative litigant[s]" such that the Intervenors had "no incentive, and therefore no obligation, to intervene." *Chen-Oster*, 2015 WL 4619663, at *6–*7 (citing *Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 352–53 (1983) ("Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims."). As set forth in the Intervenors' opening brief, the earliest the Intervenors could have become aware that their interests were no longer protected was when the Court denied certification of the Traffic Enforcement Class on April 22, 2025. *See* ECF 326-1 at 9–10. Intervention within three months of that date is well within the period considered timely in this district. *See Pike Co. v. Universal Concrete Prods., Inc.*, 284 F. Supp. 3d 376, 394–96 (W.D.N.Y. 2018) (motion timely filed within approximately five months after notice); *Range v. Nat'l R.R. Passenger Corp.*, 176 F.R.D. 85, 88–89 (W.D.N.Y. 1997) (motion timely filed less than three months after receiving notice).

Moreover, Defendants fail to demonstrate any prejudice from granting intervention. Like reconsideration and renewal, intervention will not result in delay. The Intervenors have few, if any, relevant documents. Depositions of the Intervenors can be scheduled and completed in short order. And given the similarities between the Intervenors and Plaintiffs, granting intervention is unlikely to impact the Court's consideration of summary judgment. With summary judgment motions still pending, intervention will not result in any delay to the ultimate resolution of the action. And given

Defendants' own request for delay, as described above in Part I.D, they would not be prejudiced by intervention.

>    **C.    Plaintiffs' Relief is Sufficiently Tailored and Independent of any Request to Intervene.**

Finally, Defendants argue that the Intervenors "offer no new suggestion or language" regarding the injunctive relief sought in the case. ECF 338 at 10. But neither intervention as of right nor permissive intervention turn on the characterization of the relief that Plaintiffs and Intervenors seek. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). That Intervenors seek the same relief as Plaintiffs only underscores their common interests shared with Plaintiffs and putative class members and the relatively low burden that intervention would place on Defendants given the similarity in Plaintiffs' and Intervenors' claims and requested relief. *See* ECF 326-1 at 11 (citing *Guadagna v. Zucker*, 2021 WL 4150802, at *6 (E.D.N.Y. July 9, 2021)), 15 n.2.

Nor does Plaintiffs' (and Intervenors') requested injunctive relief provide a basis to deny certification of the Traffic Enforcement Class. As explained above in Part I.D, Plaintiffs seek appropriately tailored injunctive relief and not merely "obey the law" relief. And, regardless, this issue concerns only whether the Court may order Plaintiffs' requested injunctive relief under Rule 65(d), not whether the Court may grant intervention under Rule 24 and certify the Traffic Enforcement Class under Rule 23. Defendants do not dispute that the Intervenors meet all the other Rule 23 requirements.

>    **CONCLUSION**

Plaintiffs respectfully request that the Court grant the motion to reconsider or renew, certify the Traffic Enforcement Class, and grant the motion to intervene and appoint the Intervenors as representatives of the Traffic Enforcement Class.

Dated: October 10, 2025

Respectfully submitted,

/s/ *Andrew Timmick*
Philip Irwin (*pro hac vice*)
Jordan S. Joachim (*pro hac vice*)
Christine Nelson (*pro hac vice*)
Andrew Timmick (*pro hac vice*)
COVINGTON & BURLING, LLP
30 Hudson Yards
New York, NY 10001
212–841–1000
pirwin@cov.com
jjoachim@cov.com
cnelson@cov.com
atimmick@cov.com

Matthew A. Parham
WESTERN NEW YORK LAW CENTER
37 Franklin Street, 2nd Floor
Buffalo, NY 14202
(716) 828–8422
mparham@wnylc.net

Claudia Wilner
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004
(212) 633–6967
wilner@nclej.org

A. Chinyere Ezie
Baher Azmy
A. Chinyere Ezie
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614–6464
bazmy@ccrjustice.org
cezie@ccrjustice.org

*Attorneys for Plaintiffs and
Proposed Intervenors*