UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

DORETHEA FRANKLIN, *et al.*, individually and on behalf of a class of all others similarly situated,

Plaintiffs,

v.

CITY OF BUFFALO, N.Y., *et al.*,

Defendants.

No. 1:18-cv-00719-CCR

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL ENTRY OF JUDGMENT PURSUANT TO RULE 54(b)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. Defendants Misstate the Legal Standard Applicable to Rule 54(b) Motions ........ 3

II. Rule 54(b) Certification is Supported by the Equities and Will Promote—Not Undermine—Sound Judicial Administration ........ 4

A. Immediate Appeal Would Prevent Piecemeal Appeals by Allowing the Second Circuit to Hear All Related Appeals Together ........ 4

B. The Damages and Injunctive Claims Are Separable—Not Inextricably Interrelated ........ 5

C. The Equities Support Immediate Appeal ........ 8

CONCLUSION ........ 9

# TABLE OF AUTHORITIES

## CASES


| Authority | Page(s) |
|---|---|
| *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11 (2d Cir. 1997) | 5, 6, 7, 8 |
| *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959) | 7 |
| *Burwell v. Peyton*, 2016 WL 9334708 (D. Vt. Feb. 4, 2016) | 7 |
| *Crespo v. Carvajal*, 2021 WL 4237002, (E.D.N.Y. Sept. 14, 2021) | 7 |
| *Cuoco v. Mortisugu*, 222 F.3d 99 (2d Cir. 2000) | 5, 8 |
| *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) | 3, 4, 5 |
| *Davis v. Eastman Kodak Co.*, 2007 WL 8098431 (W.D.N.Y. Jul. 19, 2007) | 6 |
| *In re Energetic Tank, Inc.*, 110 F.4th 131 (2d Cir. 2024) | 2, 3 |
| *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2d Cir. 1992) | 3, 5, 6 |
| *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627 (2d Cir. 1991) | 2, 3 |
| *Horn v. Med. Marijuana, Inc.*, 2022 WL 206235 (W.D.N.Y. Jan. 24, 2022) | 1, 7 |
| *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414 (2d Cir. 1989) | 3, 4, 7, 9 |
| *Huminski v. Rutland City Police Department*, 221 F.3d 357 (2d Cir. 2000) | 2 |
| *Leise v. Vermont Human Rights Comm'n*, 2023 WL 5152663 (D. Vt. Aug. 10, 2023) | 5, 8, 9 |
| *Roebuck v. Guttman*, 678 F. Supp. 68 (S.D.N.Y. 1988) | 6 |
| *TADCO Constr. Group Corp. v. Dormitory Auth. of N.Y.*, 2012 WL 3011735 (E.D.N.Y. Jul. 23, 2012) | 7 |
| *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 3360665 (S.D.N.Y. July 10, 2024) | 7 |
| *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) | 6 |

**STATUTES AND RULES**


| Authority | Page(s) |
| --- | --- |
| Fed. R. Civ. P. 23(b)(2) | 2 |
| Fed. R. Civ. P. 23(f) | 1, 2, 4, 6, 9 |
| Fed. R. Civ. P. 54(b) | 1, 2, 3, 4, 5, 6, 7, 8 |
| 28 U.S.C. § 1292(a)(1) | 2, 4 |


**OTHER AUTHORITIES**


| Authority | Page(s) |
| --- | --- |
| Defendants' Opposition Brief (Dkt. No. 369) | 3, 4, 5, 8 |

## INTRODUCTION

This case is not about chocolate chip cookies. It is about the City of Buffalo's longstanding policy, custom and practice of engaging in unlawful, unconstitutional and racially discriminatory traffic enforcement—a practice that has harmed and continues to harm thousands of Black and Latino motorists in Buffalo. Defendants' attempt to dismiss Plaintiffs' legitimate grievances as the whining of disobedient children is offensive and, frankly, emblematic of the City's deliberate indifference to racial discrimination.

Defendants' opposition ignores the complex procedural realities of this case—including the fact that Defendants' Rule 23(f) appeal of the court's class certification decision has *already* brought the adjudication of Plaintiffs' damages case to a standstill, making a 2026 trial date all but impossible. Defendants also discount that two appeals related to the Court's standing decision are *already* pending before the Second Circuit. Given the unique procedural posture of this case, granting Plaintiffs' Rule 54(b) motion will *not* lead to the piecemeal adjudication of Plaintiffs' claims; instead, it is the ***only thing that stands to prevent it***. *Horn v. Med. Marijuana, Inc.*, 2022 WL 206235, at *1 (W.D.N.Y. Jan. 24, 2022) (granting Rule 54(b) certification in light of "the unusual procedural history of this case, the discreteness of the issue to be appealed, and plaintiff's unique circumstances").

Defendants obfuscate by suggesting that Plaintiffs' efforts to appeal this court's standing decision are somehow improper. They are not. Plaintiffs have pursued this litigation for the last eight years with the goal of securing reforms to Defendants' policies and practices that will address and curtail racially discriminatory traffic enforcement by the City of Buffalo. Plaintiffs are ready to prove at trial that racially discriminatory traffic enforcement is entrenched within the Buffalo Police Department, and that City policies, practices and deliberate indifference are the moving force behind their continuance. Plaintiffs remain at risk from these practices, and they want to put

an end to them as soon as possible—for their own benefit and for the benefit of thousands of Black and Latino motorists who drive throughout the City. So, yes, Plaintiffs have sought every available opportunity to appeal the court's standing decision.

Plaintiffs' exhaustive attempts to obtain appellate review—including via the instant Rule 54(b) motion, a Rule 23(f) petition, and an interlocutory appeal under 28 U.S.C. § 1292(a)(1)—are not procedural gamesmanship as Defendants suggest. Nor are they a basis to deny their certification motion. Instead, they are a factor supporting the grant of Plaintiffs' Rule 54(b) motion under Circuit precedent. *Huminski v. Rutland City Police Dep't*, 221 F.3d 357, 361 (2d Cir. 2000) (treating multiple petitions as evidence of the urgency supporting appellate review). This is because they demonstrate the severe and irreparable prejudice that Plaintiffs will face if their standing appeal is heard at the end of the case, years after the Intervenor's appeal as of right. *Id.* Further, the "danger of hardship or injustice through delay" present here is precisely what Rule 54(b) and principles of judicial economy are designed to avert. *In re Energetic Tank, Inc.*, 110 F.4th 131, 148 (2d Cir. 2024) (citing *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991)), *cert. denied sub nom. Energetic Tank, Inc. v. United States*, 145 S. Ct. 2681 (2025).[1]

Because the issue of injunctive standing is already squarely before the Second Circuit in the Intervenor Appeal, the judicial administrative interests and the equities involved strongly support allowing Plaintiffs to appeal alongside the Intervenors. An immediate appeal will pave the way for streamlined, consolidated trials on liability: a jury trial that dispenses with Plaintiffs' damages claims, followed by a bench trial that resolves the injunctive claims of Plaintiffs, Intervenors, and the Rule 23(b)(2) injunctive class they seek to represent. Accordingly, this Court

[1] And if granted partial judgment, Plaintiffs will seek to consolidate all of their efforts into a single appeal that will finally determine whether they have injunctive standing.

should grant partial judgment under Rule 54(b) and reject Defendants' request for further delay so that this case may proceed as fairly and efficiently as possible.

**ARGUMENT**

**I. Defendants Misstate the Legal Standard Applicable to Rule 54(b) Motions**

Rule 54(b) permits the entry of partial final judgment where it would "serve the interests of sound judicial administration" ***or*** "avoid some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *In re Energetic Tank, Inc.*, 110 F.4th at 148 (quoting *Harriscom Svenska*, 947 F.2d at 629). The Supreme Court has long rejected the "infrequent harsh case" standard as "neither workable nor entirely reliable as a benchmark for appellate review." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980); *see also Ginett v. Comput. Task Grp., Inc.,* 962 F.2d 1085, 1095 (2d Cir. 1992) ("[W]e cannot, as the Supreme Court has recognized, hide behind the old 'infrequent harsh case' chestnut."); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 419 (2d Cir. 1989) (noting Supreme Court rejection of the "infrequent harsh case" standard). Because *Curtiss-Wright* and *Ginett* establish that the "infrequent harsh case" is not the controlling legal standard for certification motions under Rule 54(b), Defendants were incorrect to treat it as an independent, mandatory requirement that Plaintiffs must satisfy. Instead, the "proper guiding star, as the Supreme Court has recognized, is 'the interest of sound judicial administration.'" *Ginett*, 962 F.3d at 1095 (quoting *Curtiss-Wright*, 446 U.S. at 8). Defendants' assertion that 54(b) certification should be granted "only in the infrequent harsh case" is therefore erroneous as a matter of law. Dkt. No. 369, at 2. *See Ginett*, 962 F.3d at 1095.

## II. Rule 54(b) Certification is Supported by the Equities and Will Promote—Not Undermine—Sound Judicial Administration

Plaintiffs' motion should be granted because it advances the most important interest encompassed by Rule 54(b): the interest in sound judicial administration.

### A. Immediate Appeal Would Prevent Piecemeal Appeals by Allowing the Second Circuit to Hear All Related Appeals Together

Granting Plaintiffs' motion would promote sound judicial administration by preventing piecemeal appeals. Specifically, entering final judgment on Plaintiffs' injunctive claims would allow the Second Circuit to hear Plaintiffs' standing appeal together with the currently pending Intervenor's Appeal, which raises similar questions of law related to standing on the same record.[2] Denying certification of the standing decision as to Plaintiffs, when the Intervenors' appeal is already pending as of right, will contravene "the historic federal policy against piecemeal appeals." *Curtiss-Wright*, 446 U.S. at 8. This is because denying certification will guarantee "redundant review of multiple appeals based on the same underlying facts and similar issues of law"—Intervenors' injunctive standing and then Plaintiffs' injunctive standing. *Hudson River*, 891 F.2d at 418.

Entering partial judgment would result in significant savings of judicial resources because it would allow a single Second Circuit panel to decide Plaintiffs' and the Intervenors' standing at the same time on the same record. The Second Circuit could make a final decision as to *all* the standing questions in the case; there would be no need to raise standing again in an appeal after trial so, contrary to Defendants' argument (Dkt. No. 369 at 7), immediate appeal would satisfy the

[2] Also currently pending in the Second Circuit—and raising similar standing questions—are Plaintiffs' Rule 23(f) petition, and 1292(a)(1) appeal. However, since these are permissive appeals, it is unclear whether they will move forward. If they do, Plaintiffs will seek to consolidate all their pending appeals.

rule that "no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Curtiss-Wright*, 446 U.S. at 8. By contrast, Defendants' proposed procedure of appealing injunctive standing after the conclusion of the damages trial would require ***two separate appeals of injunctive standing***. This is a transparent waste of judicial resources. *Id.*

This Court's decision in *Leise v. Vermont Human Rights Comm'n*, 2023 WL 5152663 (D. Vt. Aug. 10, 2023) (Reiss, C.J.), supports Plaintiffs' position. There, this Court granted partial judgment under Rule 54(b) so that plaintiff's appeal of the dismissal of one defendant on sovereign immunity grounds could be consolidated with a pending interlocutory appeal filed by two other defendants challenging the denial of qualified immunity. *Id.* at *2. This Court noted that resolving all of the threshold immunity questions at once would "prevent potentially expensive and duplicative proceedings at a later date." *Id.* Citing *Cuoco v. Mortisugu*, 222 F.3d 99, 110 (2d Cir. 2000) and *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997), this Court reasoned that when a pending, permissible interlocutory appeal presents a substantive issue that can dispose of both the interlocutory appeal and the dismissed claims, Rule 54(b) certification is appropriate so that the related issues can be adjudicated together. *Id.* at *2. The same reasoning applies here. Because the Intervenors' appeal raises questions of injunctive standing that overlap with Plaintiffs' dismissed injunctive claims, Rule 54(b) judgment is appropriate.

### B. The Damages and Injunctive Claims Are Separable—Not Inextricably Interrelated

Defendants argue that 54(b) certification is improper because Plaintiffs' damages and injunctive claims are "inextricably interrelated." Dkt. No. 369 at 6. Once again, Defendants err. The Second Circuit considers claims to be inextricably intertwined only when the appellate court would have to reach the merits of one or more of the claims still pending in the district court or the disposition of the remaining claims in the district court would render the appeal moot. *Ginett*, 962

F.2d at 1095. Conversely, claims are *separable* when "they involve at least some different questions of fact and law and could be separately enforced." *Advanced Magnetics*, 106 F.3d at 21.

Here, the damages trial and injunctive appeal are separable, not inextricably interrelated, because the appeal would be limited to threshold questions of standing. This means there is no possibility of overlapping or conflicting decisions between the damages trial and the injunctive standing appeal. The Second Circuit's decision as to Plaintiffs' injunctive standing will have no impact on the trial of their damages claims. And the district court's resolution of the damages claims cannot possibly moot an appeal that decides only whether Plaintiffs have injunctive standing. *Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).").

Rule 54(b) certification is appropriate when the dismissed claims and the remaining claims are separable in this way. *See Davis v. Eastman Kodak Co.*, 2007 WL 8098431, at *7 (W.D.N.Y. Jul. 19, 2007) (certifying claims under Rule 54(b) where dismissal "rested on the application of distinct legal doctrines unrelated to the substantive merits of [plaintiffs'] discrimination allegations"); *Roebuck v. Guttman*, 678 F. Supp. 68, 70 (S.D.N.Y. 1988) (granting Rule 54(b) motion where the certified claim is "unrelated to the question of whether the legally sufficient claims against the remaining defendants will be proved at trial").

Meanwhile, Plaintiffs are prepared to proceed with the damages trial as soon as Defendants' Rule 23(f) appeal is resolved, without waiting for a decision on the injunctive appeals, so the pending injunctive appeals need not delay resolution of the damages claims. If Plaintiffs prevail on their injunctive appeal, the injunctive trial can follow the damages trial just as it would in the ordinary course. *Cf. Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959) (holding that

when a case involves claims for damages and injunctive relief, the damages claims must be tried first to the jury before the injunctive claims are tried to the court).

Finally, the possibility remains that either party could appeal after trial. However, if the court grants Rule 54(b) certification, paving the way for all questions of standing to be resolved now, post-trial appeals will be limited to the merits. This advances the policy against piecemeal appeals because the Second Circuit will never have to decide the same questions twice. *See Advanced Magnetics*, 106 F.3d at 17 (affirming Rule 54(b) certification where potential future appeals would "present virtually no overlapping issues" with the interlocutory appeal); *Hudson River*, 891 F.2d at 418 ("[A]ny subsequent appeals . . . will involve questions of fact and law entirely distinct from the issues now before us."); *Horn*, 2022 WL 206235, at *3 (noting "little risk that successive appellate panels would need to retread the same factual ground"). Defendants' proposal, in contrast, guarantees that successive Second Circuit panels will have to review the same questions of injunctive standing—once as to the Intervenors, and then again as to Plaintiffs.

The cases Defendants cite are all distinguishable because they involved situations in which the dismissed claims were not actually separable from the claims proceeding to trial. For example, in *Burwell v. Peyton*, 2016 WL 9334708, at *3 (D. Vt. Feb. 4, 2016) (Reiss, C.J.) the plaintiff sought Rule 54(b) certification for one false arrest claim even as other false arrest claims arising out of the same incident remained pending. In *Terry v. Charitable Donor Advised Fund, L.P.*, 2024 WL 3360665, at *3 (S.D.N.Y. Jul. 10, 2024), the dismissed claims and the pending claims both required determining whether a single settlement agreement was valid and enforceable. *Crespo v. Carvajal*, 2021 WL 4237002, at *4 (E.D.N.Y. Sept. 14, 2021) similarly involved claims with "largely overlapping factual allegations," as did *TADCO Construction Group. Corp. v. Dormitory Authority of N.Y.*, 2012 WL 3011735, at *6 (E.D.N.Y. Jul. 23, 2012). In none of these cases were

the dismissed claims intertwined with a pending appeal, so that Rule 54(b) certification would provide the opportunity to present all related claims to the appellate court at the same time. Under such circumstances, judicial economy favors Rule 54(b) certification. *Advanced Magnetics,* 106 F.3d at 17; *Cuoco*, 222 F.3d at 110; *Leise*, 2023 WL 5152663, at *3.

### C. The Equities Support Immediate Appeal

The equities also strongly support certification, despite Defendants' arguments to the contrary. If Plaintiffs are not allowed to appeal now, they will lose a full and fair opportunity to argue their own injunctive standing to the Second Circuit. While Plaintiffs could still appeal the denial of injunctive standing after the conclusion of the damages trial—resulting in successive appeals of injunctive standing—the outcome of their appeal would inevitably be shaped by the results of the Intervenor Appeal. While Defendants assert that "it is not uncommon for the outcome of a pending appeal to determine or affect an issue in a separate or related case at the district court level," Dkt. No. 369 at 4, they cite no case law supporting the notion that litigants should be denied the opportunity to present full, fair and timely appellate arguments in favor of their own injunctive standing when a procedure exists that would reasonably allow them to do so.

Defendants also criticize Plaintiffs for not specifying how delay will increase the risk that evidence will become stale. *Id.* Defendants ignore that, in order to obtain an injunction, Plaintiffs bear the burden of establishing that constitutional violations are ongoing at the time of trial. Evidence gathered in 2024 may not be sufficient for this purpose. Under Defendants' proposed schedule, the injunctive trial could not possibly occur until *after* two rounds of appeals and a damages trial, and this would take years. Accordingly, Plaintiffs would need to gather and review years of additional data, complaint files and body camera footage, take supplemental 30(b)(6) testimony and commission supplemental expert reports, all of which would vastly increase the

burden and cost of litigation for all parties. Although some duplicative discovery and extra cost is inherent in every denial of Rule 54(b) certification, *see Leise*, 2023 WL 5152663, at *3, this burden goes beyond what is typical and is all the more unjust because it is unnecessary.

Finally, the Second Circuit has recognized "no just cause for delay" when, as here, an appeal involves injunctive claims of public import. *Hudson River*, 891 F.2d at 419. When the "very threat that appellants seek to enjoin through litigating the certified claims . . . could become a reality in the time that it takes to try the remaining claims in the district court," Plaintiffs demonstrate a "sufficient showing of hardship" to justify immediate appellate review. *Id*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court direct entry of final judgment as to the injunctive claims of Plaintiffs and the Traffic Enforcement Class. To ensure that Plaintiffs' appeal may be heard by the Second Circuit at the same time as the Intervenor appeal and the Rule 23(f) petition, Plaintiffs respectfully request a prompt resolution of this motion.

Dated: July 20, 2026

Respectfully submitted,

*/s/ A. Chinyere Ezie*
A. Chinyere Ezie
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614–6464
bazmy@ccrjustice.org
cezie@ccrjustice.org

Matthew A. Parham
WESTERN NEW YORK LAW CENTER
37 Franklin Street, 2nd Floor
Buffalo, NY 14202
(716) 828–8422
mparham@wnylc.net

Claudia Wilner
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
50 Broadway, Suite 1500
New York, NY 10004
(212) 633–6967
wilner@nclej.org

Philip Irwin (*pro hac vice*)
Jordan S. Joachim (*pro hac vice*)
Christine Nelson (*pro hac vice*)
COVINGTON & BURLING LLP
30 Hudson Yards
New York, New York 10001
(212) 841-1000
pirwin@cov.com
jjoachim@cov.com
cnelson@cov.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2026, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Western District's Local Rules, and/or the Western District's Case Filing Rules & Instructions upon all counsel registered through the ECF System.

*/s/ A. Chinyere Ezie*