UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DORETHEA FRANKLIN, TANIQUA SIMMONS, DE'JON HALL, JANE DOE, individually and on behalf of a class of others similarly situated, SHIRLEY SARMIENTO, EBONY YELDON, CHARLES PALMER, SHAKETA REDDEN, and JOSEPH BONDS, Plaintiffs, v. CITY OF BUFFALO, N.Y., BYRON B. BROWN, Mayor of the City of Buffalo, in his individual and official capacities, BYRON C. LOCKWOOD, Commissioner of the Buffalo Police Department, in his individual capacity, DANIEL DERENDA, former Commissioner of the Buffalo Police Department, in his individual capacity, Defendants. | Case No. 1:18-cv-00719 |

**ENTRY ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL ENTRY OF JUDGMENT PURSUANT TO RULE 54(B)**
(Doc. 365)

## I. Factual and Procedural Background.

Plaintiffs Dorethea Franklin, Taniqua Simmons, De'Jon Hall, Shirley Sarmiento, Ebony Yeldon, Charles Palmer, Shaketa Redden, Joseph Bonds, and Jasmine Evans[1] bring this action against the City of Buffalo, New York (the "City"); former City of Buffalo Mayor Byron B. Brown; Buffalo Police Department ("BPD") Commissioner

[1] In a declaration filed May 20, 2025, Ms. Evans identified herself as "one of the Plaintiffs in this action (formerly known as 'Jane Doe')." (Doc. 298 at 1, ¶ 1.)

Byron C. Lockwood; and former BPD Commissioner Daniel Derenda (collectively, "Defendants") on behalf of themselves and other Black and Latino motorists in the city.

Plaintiffs claim that the City has unlawfully targeted Black and Latino motorists through the use of administrative traffic checkpoints (the "Checkpoints"). Even after the Checkpoints were discontinued, they assert City police officers continue to systematically target Black and Latino motorists for traffic enforcement, fines, and penalties. Plaintiffs allege violations under the Fourth Amendment, Fourteenth Amendment Equal Protection Clause, Fourteenth Amendment Due Process Clause, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.

Plaintiffs filed an amended class action complaint ("Amended Complaint"), (Doc. 63), on May 21, 2020, and a motion for class certification on May 29, 2024. (Doc. 202.) On April 22, 2025, the court certified two classes: (1) a "Checkpoint Class"[2] and (2) a "Tinted Windows Class."[3] (Doc. 261.) The court denied certification for a third class, the "Traffic Enforcement Class,"[4] finding the class lacked standing, was unascertainable, and the injunctive relief primarily requested an "obey the law" injunction. *Id.* at 8 (internal quotation marks omitted).

On July 11, 2025, Plaintiffs filed a motion to reconsider the denial of the motion to certify the Traffic Enforcement Class or, in the alternative, to renew the motion to certify. (Doc. 327.) Simultaneously, Plaintiffs filed a motion to intervene on behalf of two proposed intervenors as plaintiffs and representatives of the Traffic Enforcement Class.

---

[2] Plaintiffs define the Checkpoint Class as: "All individuals who received a ticket or were arrested at a BPD 'traffic safety' vehicle checkpoint on or after June 28, 2015." (Doc. 211 at 12.)

[3] Plaintiffs define the Tinted Windows Class as: "All Black and/or Latino individuals who received multiple tinted windows tickets from the BPD in a single traffic stop on or after June 28, 2015." *Id.*

[4] Plaintiffs define the Traffic Enforcement Class as: "All Black and/or Latino individuals who have been or will be subjected to traffic stops, traffic tickets, and 'traffic safety' vehicle checkpoints by the BPD." *Id.*

(Doc. 326.) On March 27, 2026, the court denied the motions for reconsideration and to intervene. (Doc. 357.) Plaintiffs sought an interlocutory appeal of those decisions.[5]

On February 7, 2025, Defendants filed a motion for summary judgment, (Doc. 252), and Plaintiffs cross-moved for partial summary judgment on their Fourth Amendment claims for the Checkpoint Class. (Doc. 253.) On May 29, 2026, the court granted in part and denied in part Defendants' motion for summary judgment and denied Plaintiffs' motion for partial summary judgment. The court observed that "Plaintiffs' requests for injunctive relief have been dismissed[]" and denied as moot Defendants' motion for summary judgment on Plaintiffs' claims for injunctive relief. (Doc. 364 at 50.) Plaintiffs have appealed the court's summary judgment decision, as have Defendants.

On June 29, 2026, Plaintiffs moved for entry of final judgment under Fed. R. Civ. P. 54(b) on their injunctive claims, including those brought by the Traffic Enforcement Class, (Doc. 365,) and Defendants opposed the motion on July 13, 2026. (Doc. 369.) Plaintiffs filed a reply on July 20, 2026, (Doc. 370), at which time the court took the pending motion under advisement.

Plaintiffs are represented by Andrea Chinyere Ezie, Esq., Baher Azmy, Esq., Christine Adrienne Nelson, Esq., Claudia Wilner, Esq., Joseph A. Kelemen, Esq., Matthew Alan Parham, Esq., Philip A. Irwin, Esq., and Jordan Scott Joachim, Esq. Defendants are represented by Ava J. Horgan, Esq., Robert Emmet Quinn, Esq., Cheyenne Nicole Freely, Esq., and Hugh M. Russ, III, Esq.

## II. Conclusions of Law and Analysis.

Pursuant to Fed. R. Civ. P. 54(b), a court may "enter partial final judgment when three requirements have been satisfied:"

> (1) there are multiple claims or parties, (2) at least one claim or the rights and liabilities of at least one party has been finally determined, and (3) the court makes an express determination that there is no just reason for delay of entry of final judgment as to fewer than all of the claims or parties involved in the action.

[5] Plaintiffs filed a Rule 23(f) petition for leave to appeal the denial of their renewed motion for class certification. The Second Circuit has not yet ruled on their petition.

*Linde v. Arab Bank, PLC*, 882 F.3d 314, 322-23 (2d Cir. 2018) (alterations adopted) (citation and internal quotation marks omitted).

"[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments in [a] setting such as this, a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980). A court should also "consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.* (footnote omitted).

Where the adjudicated and remaining claims may be decided separately, an entry of partial final judgment is not reserved for the "infrequent harsh case" because that standard is "neither workable nor entirely reliable as a benchmark for appellate review." *Id.* at 10 (internal quotation marks omitted); *see also Ginett v. Comput. Task Grp., Inc.*, 962 F.2d 1085, 1095 (2d Cir. 1992) (observing "we cannot, as the Supreme Court has recognized, hide behind the old 'infrequent harsh case' chestnut.") Instead, a danger of hardship exists "where a plaintiff might be prejudiced by a delay in recovering a monetary award[] or where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with the other claims[.]" *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997) (citations and internal quotation marks omitted).

"The matter of whether to direct the entry of a partial final judgment in advance of the final adjudication of all of the claims in the suit must [also] be considered in light of the goal of judicial economy as served by the 'historic federal policy against piecemeal appeals.'" *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29 at 40-41 (quoting *Curtiss-Wright Corp.*, 446 U.S. at 8). "Respect for that policy requires that the court's power . . . be exercised sparingly[,]" bearing in mind "that 'not all' dismissals of 'individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims.'" *Id.* at 41 (alteration adopted) (quoting *Curtiss-Wright*

*Corp.*, 446 U.S. at 8). "Within this framework, the determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court and will be set aside only for an abuse of discretion." *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991).

Plaintiffs seek partial final judgment in Defendants' favor regarding their injunctive claims, including those of the Traffic Enforcement Class, so that they may appeal the court's dismissal of those claims "alongside the pending appeal of the proposed [i]ntervenors" and "avoid[] piecemeal appeals." (Doc. 365-1 at 4.) Plaintiffs assert that their injunctive claims are separable from their damages claims because they turn on the question of standing and argue that because the proposed intervenors "raise nearly identical claims arising out of the same record[,]" "absent a Rule 54(b) judgment[,] Plaintiffs' right to injunctive relief may be determined without their participation by the outcome of the [i]ntervenor appeal." *Id.* Observing that the case has already been pending for eight years, Plaintiffs claim that "witness testimony and evidence [is] at risk of being lost or growing stale[.]" *Id.* at 9. Defendants contend that the factual and legal overlap between Plaintiffs' injunctive and damages claims would inevitably result in piecemeal appeals, that Plaintiffs are attempting to cure an untimely and improper appeal, and that Plaintiffs have not established they would suffer unusual hardship or injustice if the court denies their motion.

Plaintiffs' injunctive claims arise from three alleged practices of the BPD: (1) the Checkpoints; (2) the issuance of multiple tickets for tinted windows violations; and (3) general traffic enforcement. The same practices give rise to Plaintiffs' damages claims. "Claims are generally treated as separable within the meaning of Rule 54(b) if they involve at least some different questions of fact and law and could be separately enforced[.]" *Read v. Corning Inc.*, 371 F. Supp. 3d 87, 93 (W.D.N.Y. 2019) (internal quotation marks omitted); *see also Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989) ("When the certified claims are based upon factual and legal questions that are distinct from those questions remaining before the trial court[,] the certified claims may be considered separate claims under Rule 54(b).").

A "common nucleus of operative facts" weighs against entry of partial final judgment. *Andres v. Town of Wheatfield,* 2021 WL 6550086, at *3 (W.D.N.Y. Apr. 14, 2021); *see also Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1026 (2d Cir. 1992) ("[T]he interrelationship of the dismissed and surviving claims is generally a reason for *not* granting a Rule 54(b) certification, not a reason for granting it[.]") (emphasis in original); *Crespo v. Carvajal*, 2021 WL 4237002, at *5 (E.D.N.Y. Sept. 14, 2021) (finding judicial administrative interests did not weigh in favor of Rule 54(b) certification of damages claims where plaintiffs "rel[ied] on the same factual allegations to support both the [d]amages and [i]njunctive [r]elief claims[]").

Because the court dismissed Plaintiffs' injunctive claims on standing grounds,[6] "the issue presented by an appeal of that decision is legally separable from the substantive legal issues presented by an appeal filed after Plaintiff[s'] claims are decided on the merits." *Leise v. Vt. Hum. Rts. Comm'n*, 2023 WL 5152663, at *2 (D. Vt. Aug. 10, 2023). There are also "countervailing equities that would justify partial judgment notwithstanding the relatedness of the claims at issue." *Horn v. Med. Marijuana Inc.*, 2019 WL 4871499, at *2 (W.D.N.Y. Oct. 3, 2019). Plaintiffs have sought interlocutory appeal of the court's determination that the proposed intervenors lacked standing to intervene, an analysis that raised similar questions of law as the court's examination of Plaintiffs' standing to pursue their injunctive claims. Entering partial final judgment on Plaintiffs' injunctive claims would therefore "promote judicial efficiency by allowing the Second Circuit to consolidate any potential appeal of the court's [standing] decision regarding [Plaintiffs] with the pending interlocutory appeal by" the proposed intervenors. *Leise*, 2023 WL 5152663, at *2. Resolving a threshold question like standing "would prevent potentially expensive and duplicative proceedings at a later date[,]" *id.*, and weighs in favor of partial final judgment (internal quotation marks omitted).

---

[6] Contrary to Defendants' characterization, dismissal of Plaintiffs' injunctive claims was not based on "the issue of liability." (Doc. 369 at 10.)

A Rule 54(b) certification is not warranted, however, merely because "delaying th[e] appeal could well risk witnesses forgetting events or . . . otherwise becoming unavailable to testify." *Chapman v. Dunn*, 129 F.4th 1307, 1315 (11th Cir. 2025). "A delayed response to an appeal, administrative burdens, and the cost of re-engagement post-trial are not hardships that justify certification." *Barrette v. Vill. of Swanton*, 2024 WL 4108525, at *3 (D. Vt. Sept. 6, 2024). Similarly, "the protracted nature of the litigation" and fading witness memories do not "warrant Rule 54(b) certification as the delay caused by having to wait to appeal until after final judgment is entered is inherent in every denial of Rule 54(b) certification." *Crespo*, 2021 WL 4237002, at *6; *see also Timperio v. Bronx-Lebanon Hosp. Ctr.*, 2020 WL 9211177, at *3 (S.D.N.Y. Mar. 9, 2020) (denying motion for entry of partial final judgment where plaintiff failed to articulate "any unusual hardship or injustice [that] it, or any other party, would endure if required to await, in accordance with normal federal practice, the disposition of the entire case before obtaining a final judgment[]") (alteration in original) (internal quotation marks and citation omitted).

Although the threat of stale evidence is insufficient to warrant a Rule 54(b) certification, the Second Circuit's consideration of Plaintiffs' standing to seek injunctive relief may "limit piecemeal litigation" and "maximize judicial efficiency." *Cuoco v. Moritsugu*, 222 F.3d 99, 110 (2d Cir. 2000). The court agrees with Defendants that Plaintiffs' use of Rule 54(b) partial final judgment may be a strategic attempt to advance a permissive Rule 23(f) petition and 28 U.S.C. § 1292(a)(1) appeal. Plaintiffs concede as much. (Doc. 370 at 8 n.2.). However, it remains true that the Second Circuit is best suited to determine how it wants to proceed. To the extent the lack of a final judgment on the issue of Plaintiffs' entitlement to injunctive relief is an obstacle, Rule 54(b) is a proper mechanism to remove that obstacle in "the interest of sound judicial administration[.]" *Ginett*, 962 F.2d at 1095 (citation and internal quotation marks omitted).

For the reasons stated above, the court therefore GRANTS Plaintiffs' motion to enter partial judgment in Defendants' favor for Plaintiffs' injunctive claims pursuant to Rule 54(b).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial entry of judgment under Fed. R. Civ. P. 54(b) is GRANTED. (Doc. 365.)

SO ORDERED.

Dated this 1st day of October, 2026.

Christina Reiss, District Judge
United States District Court